APPEAL,CLOSED,LC−2

# U.S. District Court
## U.S. District Court for the Northern District of Oklahoma (Tulsa)
## CIVIL DOCKET FOR CASE #: <u>4:24−cv−00216−JDR−CDL</u>

| | |
|---|---|
| Stephens v. Child Support Services of Oklahoma Department of Human Services et al | Date Filed: 05/08/2024 |
| Assigned to: Judge John D Russell | Date Terminated: 04/24/2025 |
| Referred to: Magistrate Judge Christine D Little | Jury Demand: Plaintiff |
| Case in other court:  10th Circuit, 25−05063 (#63) | Nature of Suit: 480 Consumer Credit |
| Cause: 15:1692 Fair Debt Collection Act | Jurisdiction: Federal Question |

**Plaintiff**

| | | |
|---|---|---|
| **Linh Tran Stephens**<br>*an individual* | represented by | **Linh Tran Stephens**<br>1964 ASHLEY RIVER RD<br>ST B UNIT 80112<br>CHARLESTON, SC 29407<br>(817) 631−3223<br>PRO SE |

V.

**Defendant**

| | | |
|---|---|---|
| **Child Support Services of Oklahoma Department of Human Services**<br>*(CSS of OKDHS)* | represented by | **John K.F. Langford**<br>John Langford<br>Oklahoma Department of Human Services<br>P.O. Box 25352<br>Oklahoma City, OK 73125−0000<br>405−521−3638<br>Email: john.langford@okdhs.org<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Charles Schwab and Co., Inc.** | represented by | **Jennifer N. Lamirand**<br>Bressler, Amery & Ross, P.C.<br>6608 N. Western Ave.<br>#1213<br>Oklahoma City, OK 73116<br>405−901−5982<br>Email: jlamirand@bressler.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Mary H (Molly) Tolbert**<br>Fuller Tubb Bickford Warmington &<br>Panach PLLC<br>201 Robert S. Kerr Avenue<br>Suite 1000 |

Oklahoma City, OK 73102
405−604−3005
Email: molly.tolbert@fullertubb.com
*TERMINATED: 02/03/2025*
*LEAD ATTORNEY*

**Tara A LaClair**
Bressler, Amery & Ross, P.C.
6608 N. Western Avenue
Suite 1213
Oklahoma City, OK 73116
405−901−5981
Email: tlaclair@bressler.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Cierra Freeman**                       represented by   **Andrew Charles Jayne**
*individual capacity, official capacity as*              Baum Glass Jayne Carwile & Peters PLLC
*court− appointed attorney for*                          401 S. Boston Avenue
*child−support enforcement*                              Ste 2000
                                                         Tulsa, OK 74103
                                                         918−938−7944
                                                         Fax: 918−938−7966
                                                         Email: ajayne@bgjclaw.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Shelby Brunette**
                                                         Baum Glass Jayne Carwile
                                                         401 S Boston Ave
                                                         Ste 2000
                                                         Tulsa, OK 74103
                                                         918−938−7944
                                                         Email: sbrunette@bgjclaw.com
                                                         *TERMINATED: 08/20/2024*
                                                         *LEAD ATTORNEY*

**Defendant**

**Mary Johnmeyer**                       represented by   **Jennifer N. Lamirand**
*individual capacity, official capacity as*              (See above for address)
*legal counsel of Charles Schwab*                        *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Mary H (Molly) Tolbert**
                                                         (See above for address)
                                                         *TERMINATED: 02/03/2025*
                                                         *LEAD ATTORNEY*

                                                         **Tara A LaClair**
                                                         (See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Renee Banks**
*individual capacity, official capacity as*
*CSS Director*

represented by **Daniel James Card**
Gordon Rees
Legal
2200 Ross Avenue
Ste 3700
Dallas, TX 75201
214–813–3441
Email: dcard@grsm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jason Hoenshell**
*individual capacity, official capacity as*
*Oklahoma FIDM Coordinator*

represented by **John K.F. Langford**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Emmalene Stringer**
*individual capacity, official capacity as*
*State's attorney for CSS*

represented by **John K.F. Langford**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Does**
*sued as Does #1–10, known but*
*unidentified CSS employees*

**Defendant**

**Does**
*sued as Does #11–20, known but*
*unidentified Charles Schwab and Co.,*
*Inc. employees*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/08/2024 | 1 | CIVIL COVER SHEET by Linh Tran Stephens (dla, Dpty Clk) (Entered: 05/08/2024) |
| 05/08/2024 | 2 | COMPLAINT with Jury Demand against All Defendants by Linh Tran Stephens (dla, Dpty Clk) (Entered: 05/08/2024) |
| 05/08/2024 | 3 | MOTION for Leave to Proceed in Forma Pauperis by Linh Tran Stephens (dla, Dpty Clk) (Entered: 05/08/2024) |
| 05/08/2024 | 4 | DISCLOSURE STATEMENT by Linh Tran Stephens (dla, Dpty Clk) (Entered: 05/08/2024) |

| 05/08/2024 | 5 | MOTION to Obtain Electronic Case Filing Rights for Non−Attorneys by Linh Tran Stephens (dla, Dpty Clk) (Entered: 05/08/2024) |
|---|---|---|
| 05/08/2024 | 6 | MINUTE ORDER by Court Clerk , directing Linh Tran Stephens to file a Disclosure Statement pursuant to FRCvP 7.1 and LCvR 7.1−1, if applicable. The parties shall use the form entitled Disclosure Statement available on the Courts website. (This entry is the Official Order of the Court. No document is attached.) (dla, Dpty Clk) (Entered: 05/08/2024) |
| 05/23/2024 | 7 | ORDER by Judge John D Russell ; directing court clerk to take action; granting 3 Motion for Leave to Proceed in Forma Pauperis (Re: 3 MOTION for Leave to Proceed in Forma Pauperis ) (pll, Dpty Clk) (Entered: 05/23/2024) |
| 05/23/2024 | 8 | ORDER by Judge John D Russell ; directing court clerk to take action; granting 5 Motion for Miscellaneous Relief (Re: 5 MOTION to Obtain Electronic Case Filing Rights for Non−Attorneys ) (pll, Dpty Clk) (Entered: 05/23/2024) |
| 05/23/2024 | | ***Remark: *Seven blank USM−285 forms mailed to Linh Tran Stephens 11063 S Memorial Dr Ste D #235 Tulsa, OK 74133−7366 (Re: 7 Order, Directing Court Clerk to Take Action, Ruling on Motion to Proceed in Forma Pauperis )* (dla, Dpty Clk) (Entered: 05/23/2024) |
| 06/03/2024 | 9 | SUMMONS Issued by Court Clerk as to Renee Banks, Charles Schwab and Co., Inc., Child Support Services of Oklahoma Department of Human Services, Cierra Freeman, Jason Hoenshell, Mary Johnmeyer, Emmalene Stringer (sna, Dpty Clk) (Entered: 06/04/2024) |
| 06/06/2024 | 10 | SUMMONS Returned Unexecuted re: Renee Banks, Jason Hoenshell (Re: 2 Complaint ) (sna, Dpty Clk) (Entered: 06/06/2024) |
| 06/12/2024 | 11 | SUMMONS Returned Executed re: Charles Schwab and Co., Inc., Mary Johnmeyer (Re: 2 Complaint ) (drw, Dpty Clk) (Entered: 06/12/2024) |
| 06/21/2024 | 12 | SUMMONS Returned Unexecuted re: Renee Banks, Jason Hoenshell (Re: 2 Complaint ) (dla, Dpty Clk) (Entered: 06/21/2024) |
| 06/21/2024 | 13 | SUMMONS Returned Executed re: Charles Schwab and Co., Inc., Child Support Services of Oklahoma Department of Human Services, Cierra Freeman, Mary Johnmeyer, Emmalene Stringer (Re: 2 Complaint ) (dla, Dpty Clk) (Entered: 06/21/2024) |
| 07/01/2024 | 14 | ATTORNEY APPEARANCE by Andrew Charles Jayne on behalf of Cierra Freeman [Note: Attorney Andrew Charles Jayne added to party Cierra Freeman (pty:dft).] (Jayne, Andrew) (Entered: 07/01/2024) |
| 07/01/2024 | 15 | MOTION to Dismiss for Failure to State a Claim by Cierra Freeman (Jayne, Andrew) (Entered: 07/01/2024) |
| 07/01/2024 | 16 | ATTORNEY APPEARANCE by Shelby Brunette on behalf of Cierra Freeman [Note: Attorney Shelby Brunette added to party Cierra Freeman (pty:dft).] (Brunette, Shelby) (Entered: 07/01/2024) |
| 07/01/2024 | 17 | ATTORNEY APPEARANCE by Mary H (Molly) Tolbert on behalf of Charles Schwab and Co., Inc., Mary Johnmeyer [Note: Attorney Mary H (Molly) Tolbert added to party Charles Schwab and Co., Inc.(pty:dft), Attorney Mary H (Molly) Tolbert added to party Mary Johnmeyer(pty:dft).] (Tolbert, Mary) (Entered: |

| | | 07/01/2024) |
|---|---|---|
| 07/01/2024 | 18 | ATTORNEY APPEARANCE by Tara A LaClair on behalf of Charles Schwab and Co., Inc., Mary Johnmeyer [Note: Attorney Tara A LaClair added to party Charles Schwab and Co., Inc.(pty:dft), Attorney Tara A LaClair added to party Mary Johnmeyer(pty:dft).] (LaClair, Tara) (Entered: 07/01/2024) |
| 07/01/2024 | 19 | First DISCLOSURE STATEMENT (identifying: Corporate Parent Charles Schwab & Co., Inc. for Charles Schwab and Co., Inc.) by Charles Schwab and Co., Inc. (LaClair, Tara) (Entered: 07/01/2024) |
| 07/01/2024 | 20 | MOTION to Dismiss by Charles Schwab and Co., Inc., Mary Johnmeyer (With attachments) (LaClair, Tara) (Entered: 07/01/2024) |
| 07/03/2024 | 21 | MINUTE ORDER by Court Clerk , directing Charles Schwab and Co., Inc., Cierra Freeman, and Mary Johnmeyer to file a Disclosure Statement pursuant to FRCvP 7.1 and LCvR 7.1−1, if applicable. The parties shall use the form entitled Disclosure Statement available on the Courts website. (This entry is the Official Order of the Court. No document is attached.) (lmt, Dpty Clk) (Entered: 07/03/2024) |
| 07/03/2024 | 22 | DISCLOSURE STATEMENT by Cierra Freeman (Jayne, Andrew) (Entered: 07/03/2024) |
| 07/03/2024 | 23 | ATTORNEY APPEARANCE by John K.F. Langford on behalf of Child Support Services of Oklahoma Department of Human Services, Emmalene Stringer [Note: Attorney John K.F. Langford added to party Child Support Services of Oklahoma Department of Human Services(pty:dft), Attorney John K.F. Langford added to party Emmalene Stringer(pty:dft).] (Langford, John) (Entered: 07/03/2024) |
| 07/03/2024 | 24 | MOTION to Dismiss by Child Support Services of Oklahoma Department of Human Services (Langford, John) (Entered: 07/03/2024) |
| 07/03/2024 | 25 | MOTION to Dismiss by Emmalene Stringer (Langford, John) (Entered: 07/03/2024) |
| 07/03/2024 | 26 | DISCLOSURE STATEMENT by Mary Johnmeyer (LaClair, Tara) (Entered: 07/03/2024) |
| 07/08/2024 | 27 | MINUTE ORDER by Court Clerk , directing Child Support Services of Oklahoma Department of Human Services and Emmalene Stringer to file a Disclosure Statement pursuant to FRCvP 7.1 and LCvR 7.1−1, if applicable. The parties shall use the form entitled Disclosure Statement available on the Courts website. (This entry is the Official Order of the Court. No document is attached.) (drw, Dpty Clk) (Entered: 07/08/2024) |
| 07/29/2024 | 28 | MOTION for Confession of Judgment of Her Motion to Dismiss [DKT.15] (Re: 15 MOTION to Dismiss for Failure to State a Claim ) by Cierra Freeman (Jayne, Andrew) (Entered: 07/29/2024) |
| 08/01/2024 | 29 | MOTION For Extension of Time to Response by Linh Tran Stephens (dla, Dpty Clk) (Entered: 08/01/2024) |
| 08/01/2024 | 30 | ORDER by Judge John D Russell : *Plaintiff Stephens shall respond to the four pending motions to dismiss by Friday, September 6, 2024* ; setting/resetting deadline(s)/hearing(s): ( Responses due by 9/6/2024); granting 29 Motion for Miscellaneous Relief (Re: 15 MOTION to Dismiss for Failure to State a Claim , 25 MOTION to Dismiss , 20 MOTION to Dismiss , 24 MOTION to Dismiss , 29 |

| | | MOTION For Extension of Time to Response ) (clb, Dpty Clk) (Entered: 08/01/2024) |
|---|---|---|
| 08/01/2024 | 31 | ORDER by Judge John D Russell ; denying 28 Motion for Miscellaneous Relief (Re: 28 MOTION for Confession of Judgment of Her Motion to Dismiss [DKT.15] ) (clb, Dpty Clk) (Entered: 08/01/2024) |
| 08/03/2024 | 32 | MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) by Linh Tran Stephens (lmt, Dpty Clk) (Entered: 08/05/2024) |
| 08/05/2024 | 33 | MINUTE ORDER by Judge John D Russell *: Per this Court's order at Dkt. 30 , Plaintiff's initial request for extension of time, Dkt. 29 , was granted. Plaintiff shall respond to the pending motions to dismiss by September 6, 2024* ; finding as moot 32 Motion to Accelerate/Extend/Reset Hearing(s)/Deadline(s) (Re: 30 Order,,, Setting/Resetting Deadline(s)/Hearing(s),,, Ruling on Motion for Miscellaneous Relief,, 32 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) )  (This entry is the Official Order of the Court. No document is attached.) (clb, Dpty Clk) (Entered: 08/05/2024) |
| 08/16/2024 | 34 | ATTORNEY APPEARANCE by Daniel James Card on behalf of Renee Banks [Note: Attorney Daniel James Card added to party Renee Banks(pty:dft).] (Card, Daniel) (Entered: 08/16/2024) |
| 08/16/2024 | 35 | MOTION to Dismiss *for lack of jurisdiction and failure to state a claim* by Renee Banks (Card, Daniel) (Entered: 08/16/2024) |
| 08/16/2024 | 36 | ATTORNEY APPEARANCE by John K.F. Langford on behalf of Jason Hoenshell [Note: Attorney John K.F. Langford added to party Jason Hoenshell(pty:dft).] (Langford, John) (Entered: 08/16/2024) |
| 08/16/2024 | 37 | MOTION to Dismiss for Failure to State a Claim , MOTION to Dismiss for Lack of Jurisdiction by Jason Hoenshell (Langford, John) (Entered: 08/16/2024) |
| 08/19/2024 | 38 | MOTION to Withdraw Attorney(s) by Cierra Freeman (Brunette, Shelby) (Entered: 08/19/2024) |
| 08/20/2024 | 39 | MINUTE ORDER by Court Clerk , directing Renee Banks and Jason Hoenshell to file a Disclosure Statement pursuant to FRCvP 7.1 and LCvR 7.1−1, if applicable. The parties shall use the form entitled Disclosure Statement available on the Courts website. (This entry is the Official Order of the Court. No document is attached.) (atn, Dpty Clk) (Entered: 08/20/2024) |
| 08/20/2024 | 40 | ORDER by Judge John D Russell ; terminating attorney Shelby Brunette ; granting 38 Motion to Withdraw Attorney(s) (Re: 38 MOTION to Withdraw Attorney(s) ) (clb, Dpty Clk) (Entered: 08/20/2024) |
| 09/06/2024 | 41 | RESPONSE in Opposition to Motion (Re: 24 MOTION to Dismiss , 35 MOTION to Dismiss *for lack of jurisdiction and failure to state a claim*, 15 MOTION to Dismiss for Failure to State a Claim , 37 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction , 25 MOTION to Dismiss , 20 MOTION to Dismiss ) by Linh Tran Stephens ; (lmt, Dpty Clk) (Entered: 09/06/2024) |
| 09/18/2024 | 42 | REPLY to Response to Motion (Re: 20 MOTION to Dismiss ) by Charles Schwab and Co., Inc., Mary Johnmeyer ; (Tolbert, Mary) (Entered: 09/18/2024) |
| 09/20/2024 | 43 | REPLY to Response to Motion (Re: 15 MOTION to Dismiss for Failure to State a Claim ) by Cierra Freeman ; (Jayne, Andrew) (Entered: 09/20/2024) |

| 09/24/2024 | 44 | RESPONSE (Re: 43 Reply to Response to Motion, 42 Reply to Response to Motion ) by Linh Tran Stephens (dla, Dpty Clk) (Entered: 09/24/2024) |
| 10/04/2024 | 45 | MOTION to Strike Document(s) (Re: 44 Response ) by Charles Schwab and Co., Inc., Mary Johnmeyer (With attachments) (Tolbert, Mary) (Entered: 10/04/2024) |
| 10/04/2024 | 46 | MOTION to Strike Document(s) (Re: 44 Response ) by Cierra Freeman (Jayne, Andrew) (Entered: 10/04/2024) |
| 11/22/2024 | 47 | OBJECTION (Re: 46 MOTION to Strike Document(s) , 45 MOTION to Strike Document(s) ) by Linh Tran Stephens (atn, Dpty Clk) (Entered: 11/25/2024) |
| 01/31/2025 | 48 | MOTION to Withdraw Attorney(s) *Mary H. Tolbert* by Charles Schwab and Co., Inc., Mary Johnmeyer (Tolbert, Mary) (Entered: 01/31/2025) |
| 02/03/2025 | 49 | MINUTE ORDER by Judge John D Russell ; terminating attorney Mary H (Molly) Tolbert ; granting 48 Motion to Withdraw Attorney(s) (This entry is the Official Order of the Court. No document is attached.) (clb, Dpty Clk) (Entered: 02/03/2025) |
| 02/12/2025 | 50 | NOTICE Criminal complaint by Linh Tran Stephens (mm, Dpty Clk) (Entered: 02/12/2025) |
| 03/05/2025 | 51 | ATTORNEY APPEARANCE by Jennifer N. Lamirand on behalf of Charles Schwab and Co., Inc., Mary Johnmeyer [Note: Attorney Jennifer N. Lamirand added to party Charles Schwab and Co., Inc.(pty:dft), Attorney Jennifer N. Lamirand added to party Mary Johnmeyer(pty:dft).] (Lamirand, Jennifer) (Entered: 03/05/2025) |
| 03/05/2025 | 52 | MOTION to Strike Document(s) *Criminal Complaint Filed by Plaintiff Linh Tran Stephens* (Re: 50 Notice (Other) ) by Charles Schwab and Co., Inc., Mary Johnmeyer (Lamirand, Jennifer) (Entered: 03/05/2025) |
| 03/28/2025 | 53 | RESPONSE in Opposition to Motion (Re: 52 MOTION to Strike Document(s) *Criminal Complaint Filed by Plaintiff Linh Tran Stephens* ) by Linh Tran Stephens ; (cjb, Dpty Clk) (Entered: 03/31/2025) |
| 04/08/2025 | 54 | MOTION for emergency injunction relief and removal from state court proceedings, permanent restraining order, supplemental claims, termination of state's child support orders, undue hardship exemption, and stop all garnishments, levying, liquidation by Linh Tran Stephens (mm, Dpty Clk) (Entered: 04/09/2025) |
| 04/14/2025 | 55 | NOTICE of Change of Address by Tara A LaClair by on behalf of Charles Schwab and Co., Inc., Mary Johnmeyer (LaClair, Tara) (Entered: 04/14/2025) |
| 04/16/2025 | 56 | MOTION to Disqualify opposing counsel by Linh Tran Stephens (mm, Dpty Clk) (Entered: 04/16/2025) |
| 04/18/2025 | 57 | NOTICE titled: Special Entry of Special Appearance (Tulsa County District Court filing) by Linh Tran Stephens (atn, Dpty Clk) (Entered: 04/18/2025) |
| 04/21/2025 | 58 | MOTION to dismiss all state actions by Linh Tran Stephens (cjb, Dpty Clk) (Entered: 04/22/2025) |
| 04/21/2025 | 59 | NOTICE of rights and jurisdiction by Linh Tran Stephens (cjb, Dpty Clk) (Entered: 04/22/2025) |
| 04/22/2025 | 60 | MOTION to Stay *enforcement of child support orders* by Linh Tran Stephens (cjb, Dpty Clk) (Entered: 04/22/2025) |

| 04/24/2025 | 61 | OPINION AND ORDER by Judge John D Russell ; dismissing/terminating case (terminates case) ; granting 35 Motion to Dismiss; granting 37 Motion to Dismiss for Failure to State a Claim; granting 37 Motion to Dismiss for Lack of Jurisdiction; denying 45 Motion to Strike Document(s); denying 46 Motion to Strike Document(s); denying 52 Motion to Strike Document(s); finding as moot 54 Motion for Miscellaneous Relief; finding as moot 56 Motion to Disqualify; finding as moot 58 Motion for Miscellaneous Relief; finding as moot 60 Motion to Stay; granting 15 Motion to Dismiss for Failure to State a Claim; granting 20 Motion to Dismiss; granting 24 Motion to Dismiss; granting 25 Motion to Dismiss (clb, Dpty Clk) (Entered: 04/24/2025) |
| --- | --- | --- |
| 04/24/2025 | 62 | JUDGMENT by Judge John D Russell , entering judgment in favor of Defendants against Plaintiff (terminates case) (Re: 61 Opinion and Order,,,, Dismissing/Terminating Case,,,, Ruling on Motion to Dismiss,,,, Ruling on Motion to Dismiss for Failure to State a Claim,,,, Ruling on Motion to Dismiss for Lack of Jurisdiction,,,, Ruling on Motion to Strike Document(s),,,,,,,,,,, Ruling on Motion for Miscellaneous Relief,,,, Ruling on Motion to Disqualify,,,,,,,, Ruling on Motion to Stay,,,,,,,,,,,,,,, ) (clb, Dpty Clk) (Entered: 04/24/2025) |
| 04/24/2025 | | ***Civil Case Terminated (see document number 62 ) (dla, Dpty Clk) (Entered: 04/25/2025) |
| 04/29/2025 | 63 | NOTICE OF APPEAL to Circuit Court (Re: 61 Opinion and Order,,,, Dismissing/Terminating Case,,,, Ruling on Motion to Dismiss,,,, Ruling on Motion to Dismiss for Failure to State a Claim,,,, Ruling on Motion to Dismiss for Lack of Jurisdiction,,,, Ruling on Motion to Strike Document(s),,,,,,,,,,, Ruling on Motion for Miscellaneous Relief,,,, Ruling on Motion to Disqualify,,,,,,,, Ruling on Motion to Stay,,,,,,,,,,,,,,, 62 Judgment,,, Entering Judgment,,,,, ) by Linh Tran Stephens (dla, Dpty Clk) (Main Document 63 replaced on 4/29/2025) (dla, Dpty Clk). (Main Document 63 replaced on 4/29/2025) to add notation (dla, Dpty Clk). (Entered: 04/29/2025) |
| 04/29/2025 | 64 | PRELIMINARY RECORD Sent to Circuit Court (Re: 63 Notice of Appeal to Circuit Court,, ) (With attachments) (dla, Dpty Clk) (Entered: 04/29/2025) |
| 04/29/2025 | 65 | MOTION for Leave to Appeal in Forma Pauperis (Re: 63 Notice of Appeal to Circuit Court,, ) by Linh Tran Stephens (dla, Dpty Clk) (Entered: 04/29/2025) |
| 04/29/2025 | 66 | APPEAL NUMBER INFORMATION from Circuit Court assigning Case Number 25–5063 (#63) (Re: 63 Notice of Appeal to Circuit Court,, ) (dla, Dpty Clk) (Entered: 04/29/2025) |
| 04/30/2025 | 67 | Amended NOTICE OF APPEAL to Circuit Court (Re: 61 Opinion and Order,,,, Dismissing/Terminating Case,,,, Ruling on Motion to Dismiss,,,, Ruling on Motion to Dismiss for Failure to State a Claim,,,, Ruling on Motion to Dismiss for Lack of Jurisdiction,,,, Ruling on Motion to Strike Document(s),,,,,,,,,,, Ruling on Motion for Miscellaneous Relief,,,, Ruling on Motion to Disqualify,,,,,,,, Ruling on Motion to Stay,,,,,,,,,,,,,,, 62 Judgment,,, Entering Judgment,,,,, 63 Notice of Appeal to Circuit Court,, ) by Linh Tran Stephens (atn, Dpty Clk) (Entered: 04/30/2025) |
| 04/30/2025 | 68 | Amended PRELIMINARY RECORD Sent to Circuit Court (Re: 67 Notice of Appeal to Circuit Court,, ) (With attachments) (atn, Dpty Clk) (Entered: 04/30/2025) |

# FILED

MAY 0 8 2024

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

24 CV - 216 JDR - CDL

(1) Linh Tran Stephens, an individual;
*Plaintiff,*

Vs.

(2) CHILD SUPPORT SERVICES OF
OKLAHOMA DEPARTMENT OF HUMAN
SERVICES (CSS of OKDHS),
*and*

(3) CHARLES SCHWAB AND CO., INC.,

(4) Cierra Freeman, in individual capacity
and official capacity as court-appointed
attorney for child-support enforcement,

(5) Mary Johnmeyer, in individual capacity
and in official capacity as legal counsel of
Charles Schwab,

(6) Renee Banks, in individual capacity
and official capacity as CSS Director,

(7) Jason Hoenshell, in individual capacity
and in official capacity as Oklahoma FIDM
Coordinator,

(8) Emmalene Stringer, in individual
capacity and in official capacity as State's
attorney for CSS,

(9) DOES #1-10 known but unidentified
CSS employees,

(10) DOES #11-20 known but unidentified
Charles Schwab and Co., Inc., employees
*Defendants.*

Case No.: _____

Judge: _____

**EXPEDITED HEARING REQUESTED**
**JURY TRIAL DEMANDED**

**–CLAIM #1: VERIFIED COMPLAINT FOR
DAMAGES, REQUEST FOR INJUNCTION
RELIEF, AND CLAIM FOR EXEMPTION TO
STOP ALL GARNISHMENT, LEVYING, AND
LIQUIDATION;**
**–CLAIM #2: FDCPA (Fair Debt Collection
Practices Act, 15 U.S.C. § 1692, et seq.)**
**–CLAIM #3: MAIL AND WIRE FRAUD; BANK
FRAUD; IMPOSTERORS IMPERSONATING
IRS AGENT, PRETEND TO BE JUDGES, 18
U.S.C. § 912)**
**–CLAIM #4: R.I.C.O. CONSPIRACY,
Conspiracy Against Rights (18 U.S.C. §241)**
**–CLAIM #5: Violation of Civil Rights (42
U.S.C. §1983) and Deprivation of Rights
Under Color of Law (18 U.S.C. §242) -
Fourteenth Amendment**
**–CLAIM #6: Violation of Civil Rights (42
U.S.C. §1983) and Deprivation of Rights
Under Color of Law (18 U.S.C. §242) -
Fourth Amendment - Unwarranted Seizure
of bank accounts' money, of bank info, and
of Plaintiff (False imprisonment, Unlawful
Arrest 25 CFR § 11.404)**
**–CLAIM #7: Fraudulently obtained bank
accounts information not disclosed to
anyone; Confidentiality of financial records
(12 U.S.C § 3403)**
**–CLAIM #8: Deprivation Of Rights Under
Color Of Law (18 USC §242 and §1201 and
§641) and 22 USC §7102(1) - Abuse or
threatened abuse of law or legal process
(Unlawfully Converting the Courts and CPS
and CSS into an instrument of crime),
Malicious Prosecution, Harassments,**
**–CLAIM #9: IIED claim (intentional infliction
of emotional distress) 18 U.S.C. § 2340**

Page 1 out of 33 followed by 9 exhibits

–CLAIM #10: <u>Misappropriation of State
Funds</u> 18 U.S.C. §§ 643, 644, 648, 649, 650,
651, 652, and 653
–CLAIM #11: Extortion, Abusive
Debt-Collection Practices
–CLAIM #12: Defamation (alleging Plaintiff
is an abuser and irresponsible not
supporting her first born daughter) 28
U.S.C. § 4101(1)

<u>VERIFIED COMPLAINT FOR DAMAGES, REQUEST FOR INJUNCTION RELIEF, AND
CLAIM FOR EXEMPTION TO STOP ALL GARNISHMENT, LEVYING, AND LIQUIDATION</u>

<u>***Notice to Principal is Notice to Agent and Notice to Agent is Notice to Principal***</u>

I. INTRODUCTION:

1. This is a federal claim for financial damages and personal injuries brought by an individual
consumer for Defendants' violations of the **Fair Debt Collection Practices Act, 15 U.S.C. §
1692, et seq.** (hereinafter "**FDCPA**"), which prohibit debt collectors from engaging in
abusive, deceptive, and unfair practices. This is also a claim for damages against
Defendants for conspiring and committing the following crimes against Plaintiff: Frauds
including mail and wire fraud, bank fraud, imposters impersonating IRS agent or Federal
Judges (**18 U.S.C. § 912**), violation of civil rights under color of law (4th Amendment <u>and</u>
14th Amendment) **42 U.S.C. §1983**, deprivation of rights under color of law **18 U.S.C. §242**,
violation of privacy **12 U.S.C. §3403** (confidentiality financial records), IIED (intentional
infliction of emotional distress) **18 U.S.C. § 2340**, misappropriation of public fund (**18 U.S.C.
§§ 643, 644, 648, 649, 650, 651, 652, and 653**), Extortion, Abusive Debt-Collection
Practices, Defamation **28 USC § 4101(1)** (alleging Plaintiff is an abuser and irresponsible
not supporting her first born daughter), <u>Malicious Prosecution (**falsely imprisonment 25
CFR § 11.404 and unlawful arrests** in unconstitutional debtor-jail for two months</u> despite
Plaintiff's inability to pay, despite clear breach-of-contract and clear violation of

judicial-estoppel of child support order where fraudulent custody change was in 2021, yet child support order erroneously applied all the way back to 2017 against Plaintiff's objection followed by imputation of Plaintiff's income without meeting any burden of proof for imputation required by law, and many other crimes too many to list here (see claims herein and claims listed on page 1 top right corner).

<u>II. THE PARTIES</u>:

2.  Plaintiff: Linh Tran Stephens, is a natural person with citizenship of Viet Nam residing in the State of Oklahoma, mailing address 11063 S Memorial Dr Ste D #235, Tulsa, OK 74133-7366; Tel: 817-631-3223; email: linhstephens7@gmail.com.

3.  Defendants #1 and #2 listed below are corporations engaged in the business of collecting unvalidated debts in this state with its principal place of business located as below. The principal purpose of Defendants is the collection of debts using mails and telephone or email, and Defendants regularly attempt to collect debts alleged to be due another. Defendants #4-9 listed below are natural persons employed by Defendant #1 or Defendant #2 as a collector at all times relevant to this complaint. These Defendants are "debt collectors" as defined by FDCPA, 15 U.S.C. §1692a(6). At the present time, Plaintiff does not know the true names and capacities of Defendants sued as "DOES 1 through 10" or "DOES 11 through 20", inclusive, and Plaintiff therefore sues these Defendants by such fictitious names. Plaintiff will seek leave of Court to amend this complaint to allege their true names and capacities when ascertained.

4.  Defendant #1: CHILD SUPPORT SERVICES OF OKLAHOMA DEPARTMENT OF HUMAN SERVICES (CSS of OKDHS), P.O. Box 27068, Tulsa OK 74149, or Oklahoma Centralized Support Registry, P.O. Box 268849, Oklahoma City, OK 73126; Tel: 405-522-2273; email: OCSS.contact.TulsaEast@okdhs.org

5.  Defendant #2: CHARLES SCHWAB AND CO., INC., 3000 Schwab Way, Westlake, TX

Page 3 out of 33 followed by 9 exhibits

76262; Tel: 1800-435-4000; email: TPLPLevy@schwab.com

6. Defendant #3: Cierra Freeman, an individual in her personal capacity, and in official capacity as court-appointed attorney for child support enforcement, Boeheim Freeman Law, 616 S Boston Ave, Suite 307, Tulsa OK 74119; Tel: 918-884-7791; email: cfreeman@boeheimfreeman.com

7. Defendant #4: Mary Johnmeyer, an individual in her personal capacity, and in official capacity as legal counsel of Charles Schwab and Co., Inc.; 3000 Schwab Way, Westlake, TX 76262; Tel: 800-435-4000; email: TPLPLevy@schwab.com

8. Defendant #5: Renee Banks, an individual in her personal capacity, and in official capacity as CSS Director, PO Box 248822, Oklahoma City, OK 73124; Tel: 918-295-3500; email: renee.banks@okdhs.org

9. Defendant #6: Jason Hoenshell, an individual in his personal capacity, and in official capacity as Oklahoma FIDM Coordinator, PO Box 248822, Oklahoma City, OK 73124; Tel: 405-982-1530; email: jason.hoenshell@okdhs.org

10. Defendant #7: Emmalene Stringer, an individual in her personal capacity, and in official capacity as State's Attorney for CSS, 3666 N Peoria Ave, Tulsa, OK 74106, or PO BOX 27068, Tulsa, OK 74149; Tel: 918-295-3500, Fax: 918-430-2364, email: emmalene.stringer@okdhs.org and OCSS.contact.TulsaEast@okdhs.org

11. Defendant #8: DOES #1-10 known but unidentified employees of OKDHS CSS

12. Defendant #9: DOES #11-20 known but unidentified employees of Charles Schwab and Co., Inc.

### III. JURISDICTION AND VENUE:

13. Jurisdiction of this Court for FDCPA complaint arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1337, its Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202. Jurisdiction is also conferred by 28 U.S.C. §1331 (Federal Question Jurisdiction) because

Page 4 out of 33 followed by 9 exhibits

the claims for relief derive from the United States Constitution and the laws of the United States, including Violation of Civil Rights (42 U.S.C. §1983) and Deprivation of Rights Under Color of Law (18 U.S.C. §242) and **Confidentiality of financial records (12 U.S.C § 3403)**.

14. Independently, even "if" without Federal Question Jurisdiction above, jurisdiction for this case is conferred by 28 U.S.C. § 1332 because (a) there is diversity of citizenship as Plaintiff has Vietnamese citizenship while Defendants have citizenship of the United States, and the amount at stake is more than $75,000 as Plaintiff is currently 40 years old, thus many years away from retirement and she does NOT consent to forced early-retirement.

15. Because there are both federal question jurisdiction *and* diversity jurisdiction in this case, Plaintiff may also include relevant claims in complaint that would not independently belong in federal court because a federal court's authority to hear related non-federal claims is called **supplemental jurisdiction (28 U.S.C. §1367)**.

16. The acts and omissions complained of herein occurred in the County of Tulsa, and it is believed that majority of living Defendants and living non-retiring Plaintiff currently reside in the County of Tulsa at the time of the occurrences herein.

17. Venue is proper in the U.S. District Court for the Northern District of Oklahoma because the defendants transact business here and the conduct complained of occurred here.

18. The Rooker-Feldman doctrine does NOT bar the exercise of subject matter jurisdiction over this case. Obviously, Plaintiff's claims were NOT a de facto appeal from lower court orders.

## IV. SUMMARY OF ALLEGATIONS:

### CLAIM FOR EXEMPTION TO STOP ALL GARNISHMENTS & ALL 12 CLAIMS ON PAGE 1

19. Plaintiff states under the penalty of perjury under state laws that the statements/ allegations/ pleadings set forth therein are true and correct to the best of her knowledge and belief:

20. Plaintiff is a living breathing woman individual with all her rights reserved, who is NOT dead to have her retirement account being passed onto any children. Her last living will and

testament specified that she left behind $1,000.00 for her daughter G.L.Stephens (of the

fraudulent child support case) if Plaintiff passes away–which Plaintiff is still alive and is 40

year-old today and NOT retiring, and NOT consenting to being forced early-retirement by

Defendants.

21. Plaintiff has NEVER disclosed any financial information to OKDHS CSS other than her bank

of america print-out final balance of $0.00, and her court appointed attorney is simply a

"dictionary only attorney" (named **Cierra Freeman, Defendant #3**) without any power of

attorney nor ability to file anything or any consent on Plaintiff's behalf, but somehow CSS

illegally obtained the information and the bank accounts numbers of other banks e.g.

Charles Schwab retirement account, possibly by collusions between lawyers and DHS

employees who are not judges yet pretending to be judges, violating exclusionary rules of

evidence which is based in constitutional rights, it is a court-created remedy and deterrent,

not an independent constitutional right–the purpose of the rule is to deter law enforcement

officers from conducting searches or seizures in violation of the **Fourth Amendment** and to

provide remedies to defendants whose rights have been infringed. These alleged orders to

levy and liquidate all Plaintiff's IRA accounts are VOID court orders as the judge did NOT

sign off on any of them. Even after requesting proof of the actual order signed by a judge,

Defendants did NOT produce any proof. These alleged orders are being produced

fraudulently by lawyers and by DHS administrative employees thus are all **frauds and**

**R.I.C.O. Conspiracy (Racketeering Influenced and Corrupt Organizations)**.

22. Alleged child-support debt of OAH No.: 23-00313-73, OK IV-D FGN: 000948641001

Stephens vs. Stephens was already finalized in January 2016 in the state of Oregon "Jeep

and Trailer [fully loaded] in lieu of child support from Mother to Father", and that finalized

divorce/agreement/court-order/court-decree was incorporated into Oklahoma Court on

07/11/2017. Plaintiff did NOT agree to any **breaching of that contract**. Plaintiff requested

numerous times for **offset and counterclaims** to CSS but were deprived of any due process.

23. Plaintiff remarried in 2017 to a nonparty to this case and a nonparty to the child-support case. All of Plaintiff's Charles Schwab accounts in dispute (which are currently all being liquidated) were all earned during the subsequent marriage from Summer of 2018 to 2020 and onward, and therefore belong to that marriage's marital asset, and that second marriage is still alive and healthy and is NOT a party to any divorce nor child-support proceeding.

24. Specifically, all of the accounts were retirement accounts (one was 401k rollover IRA, another was regular IRA, another was Roth IRA), except one small brokerage account of $472.69 because Plaintiff has NOT contributed to retirement since she was laid off by Indian Health Services Cherokee Nation (as a federal employee) and prior to that only worked for the Veteran Affairs office and worked for U.S. Navy, all federally protected retirements.

25. All of Plaintiff's retirement accounts are federally protected from child support before retirement age, yet ignored and violated by Defendants who **literally started to liquidate Plaintiff's accounts today May 07, 2024 @ 10AM Central Time [see Exhibit 08 for evidence of crimes committed against Plaintiff without Plaintiff's consent while ignoring Plaintiff's continual objection and rebuttal]** against Plaintiff's numerous FINAL NOTICES and CEASE AND DESIST CERTIFIED LETTERS+email+phone calls+faxes+complaints, **liquidation started even before the "Administrative Review Hearing regarding levying and liquidation" that has NOT even taken place, which was scheduled two day from now, for May 09, 2024 @ 08:30AM**. These actions showed that the Defendants have pre-decided to commit frauds together, preplanning to deprive Plaintiff of due process rights, therefore showing willfulness and carefully planned violation of rights.

26. These Charles Schwab accounts especially the highest value one (the one ending in **x2605 Rollover IRA** is NOT a marital asset with the ex-husband Adam Sylvester Stephens, who

Page 7 out of 33 followed by 9 exhibits

allegedly is the father of the child while Father and OKDHS refusing Plaintiff's demand for

paternity testing numerous times in court filed under FD-2015-2228.

27. For the first time Plaintiff was made of levying attempt was on <u>Apr 10, 2024, at 06:51</u>, where

TPLP Levy <TPLPLevy@schwab.com> emailed Plaintiff:

"Re:    Tax Levy/Order to Withhold/Freeze of Assets/Lien Notice/Restraining Notice
Account Number(s) ending in 2605 / 5472 / 8811 / 4317 Scheduled Levy Payment Date:
04/30/2024
        Dear Client: Charles Schwab & Co., Inc. ("Schwab") has received the enclosed
document.  As required by law we have frozen the assets in your account(s), up to the
amount specified in the document, and will deliver those proceeds to the agency on the
specified payment date.  If your account contains enough cash to pay the levy in full, you
will be allowed to access any cash and securities above that amount. However, if there
is not enough cash available in your account(s) to cover the full amount of the levy, all
securities in your account(s) will be frozen and further activity will be limited to the
sale/closure of existing investment positions, until the levy is resolved.  The restriction,
which will adversely affect your ability to make deposits and withdrawals, may also
impact your use of available margin, Schwab One® checking, or VISA debit card
features.  As a courtesy, we have included an Explanation of a Levy, to help you better
understand how your account(s) will be affected. In order for the restrictions to be
removed, you must obtain a Release Notice from the issuing agency.  Unless we receive
a Release Notice from the issuing agency, we are required by law to comply with the
demands as outlined in the document.  The Release Notice should be faxed to Schwab
at 888-368-6355 before payment is due. If you have additional questions or feel this
notice has been issued in error, you must contact the issuing agency directly at the
number listed on the document.  Schwab will only act on instructions provided by the
agency itself. We regret having to take this action, but we are required to comply with the
law.  You should advise your portfolio manager or financial planner about the restrictions
to your account. Respectfully, Legal Services"

Whose attached alleged "court order" was sim Jo ply a three-pages letter from DHS CSS [see

**Exhibit 01]**, which said:

"Notice of Levy **56 O.S. §240.22 through 240.22G**. Amount of Levy: $ 64,445.92 (This
amount may not include all delinquent support owed and/or interest owed as of the date
this levy is paid.) All accounts associated with the above named person, including but
not limited to, the following accounts: xxxxx2605.
You are notified that all property, rights to property, monies, and credits belonging to the
obligor, or for which you are obligated to the obligor, and currently in your possession are
levied in the amount listed above. This levy attaches to the following types of accounts
and funds of the obligor: a demand deposit account, checking or negotiable withdrawal
order account
saving account, individual retirement account (IRA); time deposit account; money market

Page 8 out of 33 followed by 9 exhibits

mutual fund account or brokerage accounts; public and private retirement funds, including any retirement plan benefiting self-employed individuals; union retirement fund; railroad retirement; and any other type of account or retirement plan.

Notice of Right to Garnish Federal Benefits

This levy was issued by Oklahoma Human Services, Child Support Services, pursuant to authority to attach or seize assets of noncustodial parents in financial institutions, 42 U.S.C. §666.

**Accordingly, the financial institution is hereby notified that the procedures established under 31 CFR Part 212 for identifying and protecting Federal benefits deposited to accounts at financial institutions do not apply to this garnishment order.**

The financial institution should comply with the terms of this order, including instructions for withholding and retaining any funds deposited to any accounts) covered by this order pending further order of Child Support Services.

Upon receipt of the levy, you shall immediately freeze all accounts of the obligor, up to the amount of the levy. You must notify CSS if the account(s) has been closed. You shall hold the encumbered funds for twenty-one (21) days. You shall suspend any and all activity with respect to and payments from the levied accounts up to the amount levied. Additional deposits may be made into the accounts), but no withdrawals may be made upon deposits or other property during the 21-day holding period.

Twenty-one (21) days after receiving the levy, you shall remit the funds to CSS, up to the amount of the levy, unless CSS has notified you that the levy has been released in part or in full. Payments shall be made payable to Oklahoma Human Services and shall be annotated with the obligor's name, Social Security Number, and child support family group number ("FGN").

This levy will remain in effect for sixty (60) days from the date of receipt or until the amount due is paid in full to CSS. You shall remit any additional deposit made to a levied account, up to the amount of the levy, for a period of sixty (60) days after receiving the levy.

You may charge a fee not to exceed $20.00 for each levied account, which shall be deducted from such account prior to remitting any payments to CSS. Any remittance to CSS should equal or exceed the minimum remittance amount of 50.00. If the amount of the remittance does not equal or exceed $50.00, do not remit to CSS.

Any person or institution who fails or refuses to surrender property subject to this levy shall be liable in a sum equal to the value of the property not so surrendered, together with costs and fees.

[NO SIGNATURE OF ANY PERSON, AND NO JUDGE'S NAME NOR SIGNATURE]
Renee Banks

Director, Child Support Services Oklahoma Human Services"

28. Emphasized the following facts: despite OKDHS quoted "Accordingly, the financial institution

is hereby notified that the procedures established under 31 CFR Part 212 for identifying and

protecting Federal benefits deposited to accounts at financial institutions do not apply to this

garnishment order" they ignored their own words, and this Rollover IRA account x2605 is my

Page 9 out of 33 followed by 9 exhibits

federal retirement from Cherokee Nation Indian Health Services that rolled over from

**Lincoln Retirement Services Company, LLC**, which is EXEMPTED FROM ALL

GARNISHMENT. This has been relayed over and over to all Defendants who seemed to

ignore the federal laws and think they are above the law!

29. To which Plaintiff replied on Apr 10, 2024, 9:56 AM:

> "First of all that's NOT a court order but just a crazy lunatic and thief named Renee
> Banks who is a thief and a liar and works for OKDHS, likely the same convicted felon
> like their DHS caseworker Bridget O'Brien/Menser with her DHS job. If it was a court
> order, it would have a proper court listed, an FILED DATE and signature of a district
> judge that is NOT special judge (as I have objected to special judges rulings because
> those judges cannot address more than $1,000 of disputes) from outside family court
> and from outside of OKDHS such as civil desk division elected district judges. Third,
> child support order is currently on appeal (see attached case No. DF-120849) so they
> are NOT to be enforced ( except for the purpose of violating laws and theft ) and you do
> NOT want to participate to any of it else you shall be liable for damages alongside with
> these Oklahoma criminals. Please consult with your legal department and let me know if
> you have any questions. Even contempt of child support is also on appeal too, case No.
> DF-122022 (see attached) You guys need to Cease and Desist freezing or levying
> anything related to this NONCOURTORDER from OKDHS. Despite having no money, it
> is the principle that counts, and you must stop obeying an alleged order from a nobody
> of DHS—NOT a court order. You must do what is right and just. Sincerely, Linh
> Stephens"

And additionally same date, Plaintiff emailed on Apr 10, 2024, 12:37 PM

> "Please provide valid judgment ID # filed with county court clerk office and also the court
> order for levying of banks from district court judge with a VALID SEAL OF THE COURT
> and VALID SIGNATURE of a Judge. While you're verifying, you MUST UNFREEZE my
> accounts IMMEDIATELY to avoid liability. First of all, what you attached and alleged to
> be a Court Order is NOT a court order but just a letter from a crazy lunatic and thief
> named Renee Banks who is a thief and a liar and works for OKDHS, likely the same
> convicted felon like their DHS caseworker Bridget O'Brien/Menser with her DHS job who
> was fired by now from her job.  If it was a court order, it would have a proper court listed,
> an FILED DATE STAMP and SIGNATURE of a district judge and a SEAL of the Court.
> Second of all, a judge for such an order must NOT be a special judge (as I have
> objected to special judges rulings because those judges cannot address more than
> $1,000 of disputes) and must be from outside family court and from outside of OKDHS;
> such as civil desk division with elected district judge names. Third, the child support
> order is currently on appeal (see attached case No. DF-120849) so they are NOT to be
> enforced ( except for the purpose of violating laws and theft ) and you do NOT want to
> participate in any of it, else you shall be liable for damages alongside these Oklahoma
> criminals. Please consult with your legal department and let me know if you have any
> questions. Even contempt of child support is also on appeal too, case No. DF-122022
> (see attached) AGAIN, You guys need to Cease and Desist freezing or levying anything

related to this NONCOURTORDER from OKDHS. Despite having no money, it is the principle that counts, and you must stop obeying an alleged order from a nobody of DHS—NOT a court order. You must do what is right and just. Sincerely,"

30. Defendant Charles Schwab defendants replied on <u>Apr 10, 2024, 12:55 PM</u>

"We received your inquiry regarding the levy on your Schwab account. For questions regarding the levy, please contact the levying agency. Schwab is legally obligated to comply with a levy, and can only take direction from the levying agency. In order to release the tax levy, Schwab either needs to be able to pay off the levy in full or empty the account; or, if the levy has been satisfied, you can request that the agency send Schwab a Release of Levy notice.  A notice can be faxed or mailed to the address listed below. Restrictions will remain in place until further instructions are received from the same court or government agency that issued the levy. Thank you, Operational Services | Third Party Legal Process Main (877) 243-9263 Fax (888) 368-6355 Charles Schwab & Co. Inc./TD Ameritrade, Inc. Attn: Third Party Legal Process PO Box 981484 El Paso, TX 79998"

31. Plaintiff replied to Charles Schwab defendants on <u>Apr 10, 2024, 1:57 PM</u>

"What Tax LEVY are you talking about? I paid my taxes every year. Did you actually look at the LETTER you attached to me that is NOT a Court Order, if so what is the name of the Judge and what is the court date and where was the hearing about this alleged "levy court order"? Thank you and have a wonderful day! Sincerely,"

Proof that no tax owed by me can be found in IRS transcripts of 2022 and 2023, in Oklahoma tax return 2023 which are attached under redacted **Exhibit 06**, by contacting the IRS and Oklahoma Tax Commission, by NOT impersonating IRS Agent and Oklahoma Commission Tax Agent. These Defendants are committing a crime violating **18 U.S. Code § 912**, which said "Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such, or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined under this title or imprisoned", as **these Defendants impersonated IRS Agent levying falsely alleged tax, and these Defendants also impersonated Judges claiming there is a levying/liquidating order for child-support, pretending their typed-letters from CSS employee are Judge's orders for child support–yet no seal of the Court, no file-stamp, no wet signature and name of any Judge on them. There was no such**

court-order existed nor served to Plaintiff nor held in any Court; Plaintiff repeatedly

requested Defendants to prove Court Order signed by a legitimate judge, and they have

failed to do so because they are imposters (of Federal Judge if <u>IRS</u> tax levying involved).

32. On <u>April 22, 2024</u>, Plaintiff mailed, faxed, and emailed the following to Defendants at CSS

and CC: many authorities including but not limited to: (3) **CWS Appeals Unit** Oklahoma

Department of Human Services, P.O. Box 25352, Oklahoma City, OK 73125

CWS.appeals@okdhs.org; (4) **Oklahoma Commission on Children and Youth (OCCY)**,

2915 N Classen Blvd #300, Oklahoma City, OK 73106, (5) **Oklahoma Attorney General**

**Gentner Drummond**, 313 NE 21st Street, Oklahoma City, OK 73105 (6) Tulsa County

District Court, **Presiding District Judge Dawn Moody**, 500 S Denver Ave, Tulsa OK 74103

(7) **Tulsa Grand Jury**, 15 W 6th St Ste 1000, Tulsa, OK 74119 (8) **Tulsa County Clerk's**

**Office**, 218 W. 6th St., 7th Floor, Tulsa, OK 74119 (9) **Tulsa County County**

**Commissioners**, 218 W. 6th St., 7th Floor, Tulsa, OK 74119:

> "DEMAND FOR JUSTICE AND ADMINISTRATIVE REVIEW RE: BANK LEVY AND
> CHILD-SUPPORT AMOUNT; DEMAND TO CEASE AND DESIST;
> RE: Letter of Notice of Levy and Right to Administrative Review received on Friday,
> 04/19/2024 in mailbox, whose footnote referenced "CSF02 v9 U82539/TUE Pkg
> 2024040908075700-001" Dated: April 21, 2024 To Whom This May Concern,
>     Today, April 21, 2024, is two calendar days from the date "The Letter" (Notice of
> Levy and Right to Administrative Review) was received by this individual named Linh
> Tran Stephens. I disagree with the levy and with the **alleged child support amount**
> **$64,445.92**, and therefore **demand** a thorough, complete, and honest review within 15
> days from the date above <u>in front of a NONspecial judge and in common law courts</u>
> since alleged child support amount is larger than $10,000 amount (forbade by O.S.
> §20-123 Jurisdiction of special judges) and since I have been objecting to having a
> special judge for my case pursuant to O.S. § 20-124.
>     It is to my belief and information that the Oklahoma child support order and
> demand for payment is a rush to judgment into a default judgment, and both are a
> violation of my constitutionally protected rights. **Please validate this alleged claim**
> **against me by having it signed by a man or woman and notarized under a penalty**
> **of perjury and send the sealed original to me**.
>     I refuse to contract with the State, DHS, any of its agencies. By completing and
> returning the attached protesting/refuting form per your instruction in "The Letter", it does
> NOT mean that I am contracting nor having any implied contracts in any shape or form
> with any of the aforementioned. Any past alleged contracts between us were fraudulent
> because of your actions and omissions; they were without my consent, without my

Page 12 out of 33 followed by 9 exhibits

knowledge, and definitely without informing me nor providing any due-process to me, while you guys deprived my substantive rights, constitutional rights, unalienable rights, etc. AGAIN, I am NOT agreeing to, have NOT agreed to, and will NEVER agree to have any contract with OKDHS or any of its entities/agencies/corporations or its personnel. I have NEVER approved any violation or waiver of rights against me or against my daughter–any lawyers, any DHS employee, any transcript, or any documents saying otherwise is fraudulent, fake, altered, likely photoshopped, or done without my expressed written notarized consent. <u>"Implied consent" WITHOUT being fully informed, served, court-reporter-recorded, notarized, signed is NOT consent. Signing under threats, duress, misinformation also is NOT consent</u>.

There are an active appeals (DF-120849 and DF-122022 in Oklahoma Supreme Court) against these **unlawful child-support orders (my parental rights are protected by the U.S. Constitution and must NOT be infringed upon, and my divorce/custody does NOT meet any SSA title iv criteria**), therefore OKDHS CSS who is NOT above the law must cease and desist from enforcing unlawful and erroneous orders, especially when there are active appeals in higher courts. Attorney General Drummond said, "The Legislature is vested with policymaking authority. I will not allow any state agency, board or commission to usurp the Legislature's rightful role, even if they have the best of intentions."

**My inability to pay and undue hardship are irrefutable as well.** I did NOT agree to pay child support despite my personal circumstances–that makes the child support order unconstitutional, especially for an unlawful and malicious order that inflated/fabricated numbers against my actual income while deflated against his actual income, actual numbers in tax documents (most updated one 2023 in attached Exhibits) and in actual accountant's records, and judicial estoppel violation of STANDING finalized divorce/custody/child-support decree/order/judgment of 2016 ("Jeep and Trailer in lieu of child support") which I NEVER agreed to be modified without fair compensation/offsets/ returns of properties, without fair second-accord-and-satisfaction, without proven me abusive to deserve less than 50/50 custody, without proven alleged title IV services was provided at all to my case to me the indigent mother, the alleged obligor, being unjustly ordered to enrich the already rich father whose custody should be taken away as his previous children ALL spoke against him per OKDHS records except 1 out of 7 (Alexis) who never lived with father (only lived with paternal grandmother). **I was deemed indigent and affirmed indigent (after overruling ex-husband's Objection-Motion of Mother's In Forma Pauperis) by superior Court Order of Oklahoma Supreme Court case No. DF - 120849 on 01/23/2023 on page 2 (attached Exhibits), and affirmed again indigent by U.S. District Court Northern District of Oklahoma, case No. 23-CV-553-GKF-SH on 02/01/2024 (see its Federal Court Order open to the public and attached Exhibits), and by David L. Moss Criminal Justice Center, inmate ID # DLM # 1282383 on 03/07/2024 (their 30-day mark for decision regarding indigent-status for inmates), as I have received Indigent Supplies while in jail there–time served as I cannot bond myself out either due to being indigent!** Remember also, the sole custody order by Adam Sylvester Stephens SR was obtained by fraud-upon-the-court (without due process, without substantive rights, violating my unalienable rights), his witness Bridget O'brien who disqualified herself being a felon for hurting children (Bridget Menser is her maiden name, is a felon for hurting children per CF-1999-2911) and she was also impeached by evidence and NEVER showed up for final trial of 02/2024, thereby father lost his case but Judge April Seibert abused her discretions and took custody away from good/fit/loving mother like me, thus violating my

Page 13 out of 33 followed by 9 exhibits

equal protection rights, substantive rights, civil rights, etc.

If ignoring my demand for justice & administrative review and **if NOT providing a hearing within 15 days from the date of this letter, your OKDHS Department and each employee in your individual capacity and everyone above you in the State are automatically consented that you all have been willfully harming this individual Linh Tran Stephens,** violating all my rights under colors of law, and you have been willfully committing frauds via complicit or omission or accomplice, **failure to protect me and my daughter, failure of fiduciary duties, failure to supervise, violating 15 U.S.C. 1673(a)**, actively participating in breach-of-contract against original child-support contract/decree/judgment/court-order signed by a judge in Oregon State in January 2016 and was upheld/signed again on 07/11/2016 by Oklahoma Judge, etc.

Your harassment and malicious persecutions and harassments via phone calls, mails, collection methods, hurting my credit score reports, levying ('frozen') my banks, telling U.S Passport Department to take away my U.S. Passports robbing me of freedom, putting me in jail in David L. Moss Criminal Justice Center for debtor-imprisonment (unconstitutional and cruel/unusual punishment), rendering my work license useless as no one will hire a wrongfully-substantiated child-abuser ever, etc., must CEASE AND DESIST and return JUSTICE TO ME, else you are WILLFULLY committing crimes against me, liability of severe harm, emotional/physical distress/torment against me!

I also demand that you mail me the Oath of Office, Public Official Bond Certificate and its monetary amount (74 O.S. § 85.29 Schedule of Amounts of Surety Required), or the equivalent Errors and Omissions and Malpractice Insurance (if you are an attorney or judge) of all DHS employees/supervisors/attorneys that touched my case. ANY deprivation of any of my rights MUST CEASE AND DESIST IMMEDIATELY ELSE FACE LIABILITY FOR YOU, THE COUNTY, AND THE STATE. I trust that you don't want to be criminally charged for frauds against the federal government via SSA title IV-D nor wanting to face qui-tam lawsuits among other civil rights lawsuits."

Above Letter dated 4/21/2024 with its four attached Exhibits **[see Exhibit 02]** including the filled

out **Request for Administrative Review of Bank Levy form (whose relevant proof of**

**service certified mail receipt will be attached also under Exhibit 02 by Plaintiff today)** to

which Defendant Emmalene Stringer of CSS perjured herself to the local Tulsa court in her filing

in FD-2015-2228 falsely alleging "Mother has failed to return that form" on page 2 of her court

filing on May 03, 2024 "DEPARTMENT OF HUMAN SERVICES' COMBINED RESPONSE TO

MOTHER'S REQUEST TO STOP GARNISHMENT AND UNDUE HARDSHIP EXEMPTION

CLAIM AND MOTHER'S DEMAND FOR JUSTICE AND ADMINISTRATIVE REVIEW RE: BAN

EVY AND CHILD SUPPORT AMOUNT; DEMAND TO CEASE AND AST FILED APRIL 22,

2024".  Again, proof that it was sent is USPS tracking # 7022 2410 0002 8190 1322 and 7022

Page 14 out of 33 followed by 9 exhibits

2410 0002 8190 1339 and email inboxes [see Exhibit 02].

**33. There was NEVER any reply or answer to any of the above questions of law and of**

**rights from Plaintiff from any of the defendants.**

34. Then evening of April 30th, 2024, Plaintiff received email from Charles Schwab TPLP Levy

<TPLPLevy@schwab.com> and has NOT received any mail of same from Charles Schwab:

> "* IMMEDIATE ACTION REQUESTED *
> RE:    Tax Levy/Notice of Levy on Charles Schwab Account No(s). 2605/ 5472 /
> 8811 / 4317 Dear Client(s): Charles Schwab & Co., Inc. ("Schwab") has received
> the enclosed notice directing Schwab to liquidate securities in your account(s)
> referenced above.  Notification of this notice was first mailed to you on April 10,
> 2024. As a courtesy, Schwab will refrain from acting upon the order for a short
> period to give you an opportunity to liquidate securities to generate enough cash to
> satisfy the notice. However, if Schwab does not receive instructions from you by
> May 7, 2024, Schwab shall execute security sales in alphabetical order until
> sufficient cash has been generated to satisfy the order. The sale of securities may
> have a significant impact upon your future portfolio performance and may cause
> tax consequences for which you will be responsible. Please contact us at (800)
> 435-4000 to liquidate sufficient security positions in your account(s) to satisfy the
> order. Sincerely, Operational Services Charles Schwab & Co., Inc. Enclosure"

Which has attached letter **[Exhibit 03]** from CSS that is obviously NOT a court order, **which**

**was NOT served upon Plaintiff by CSS** despite its back-dated April 09, 2024 and sent directly

only to Charles Schwab which forwarded to me on April 30th, 2024 via email attachment:

> "Dear Ms. Johnmeyer, Please liquidate assets belonging to Mrs. Stephens to
> satisfy our financial institution levy action. **Please begin by liquidating** the assets
> found in **account number 2605** in alphabetical order until Mrs Stephens' child
> support obligation has been met or until no funds are available. Thank you for your
> assistance with this matter. If you have any questions you may contact me at (405)
> 982-1530. Sincerely, Jason Hoenshell, Oklahoma FIDM Coordinator, PO Box
> 248822, Oklahoma City, OK 73124."

35. Plaintiff replied to email above on May 01, 2024 @ 10:38 AM to Charles Schwab, its TPLP

email, and also to OKDHS OCSS ocss.contact.tulsaeast@okdhs.org @ 11:18 AM

> "I will sue you guys in federal courts if you DON'T STOP THIS RIGHT NOW
> because what you called an "order" in your attachment is NOT an order but simply
> a letter from administrative department and its employee, which is NOT signed by
> any court nor any judge and has NOT been filed in any courts! Additionally,
> account x2605 is my retirement account Roth IRA of Cherokee Nation (Indian
> Health Services) employment and I'm 40 year-old, NOT retirement age. Last but

Page 15 out of 33 followed by 9 exhibits

not least, it is against federal laws to liquidate retirement accounts for any kind of debt including child support! Sources listed below are protected and cannot be garnished per state laws and federal laws: Public Employee's Retirement Funds – 74 O.S. § 923, AND Interest in Retirement, Pension and Profit Sharing Plans 60 O.S. § 327, 60 O.S. § 328…."

36. On May 01, 2024 at around 2:00PM, Plaintiff even went to the local Charles Schwab branch in Tulsa, Oklahoma to escalate things up with its manager, and to file an internal complaint with Charles Schwab against its lawyer committing frauds and needed to be investigated, and gave them notice by bringing this drafted lawsuit in my hand and asked Charles Schwab to cease and desist, giving them plenty of warning and notices, which they ignored/complicit.

37. Next, Plaintiff received a letter from CSS and Emmalene Stringer on May 02, 2024 **[Exhibit 04]**: "Notice of Administrative Review Decision - Levy Child Support Services (CSS) has reviewed the levy of your accounts). The following decision was made **[BLATANT ABUSE OF POWER AND ABUSE OF PROCESS WITHOUT A HEARING AS PLAINTIFF HAS ALREADY DEMANDED PER HER LETTER OF APRIL 21, 2024]**: No change is necessary. The levy will remain in effect… If you do not agree with this decision, you must make a written request for a hearing **[AGAIN!?! Plaintiff already did this but was ignored, this is deceptive practices by CSS Defendant to get defaulted judgment and is abusive of Plaintiff's precious time and opportunistic cost were forever lost and could never get back]** to the child support office indicated below within twenty (20) days of the date of this notice. The request for a hearing may be submitted by email, fax, or mail to the office listed below. If you fail to request a hearing within 20 days, you waive your right to a hearing and this decision shall stand as the final agency determination.If you do not agree with this decision, you must make a written request for a hearing to the child support office indicated below within twenty (20) days of the date of this notice. The request for a hearing may be submitted by email, fax, or mail to the office listed below. If you fail to request a hearing within 20 days, you waive your right to a hearing and this decision shall stand as the final

agency determination."

38. Notice how the letter dated April 21, 2024 the Plaintiff demanded a hearing numerous times, yet was completely ignored by Defendant CSS per above paragraphs 29, 31, and 32. Defendant CSS then send a second letter in hope that Plaintiff would "fail to reply" to the same thing, and also in hope to wear out Plaintiff from paperwork strain, time strain, and monetary strain of printing, paper, and stamps, and certified mailing. This is harassment and malicious in nature!

39. On May 01, 2024, Plaintiff certified emailed, and faxed and certified mailed her *FINAL NOTICE OF CLAIM OF IMPENDING HARM AND TRESPASS* after several notices being ignored by Renee Banks, Jason Hoenshell, Emmalene Stringer, and Mary Johnmeyer et. al. personally and via their respective employer/agency/entity, which said:

> To: (1) **CSS DEPARTMENT** OF HUMAN SERVICES STATE OF OKLAHOMA (3666 N Peoria Ave)
> PO Box 27068, Tulsa, OK 74149; OCSS.CONTACT.TULSAEAST@okdhs.org; Fax: 918-430-2364;
> ATTN: **Emmalene Stringer** (CSS Attorney), **Renee Banks** (Director);
> (2) ATTN: **Jason Hoenshell** (Oklahoma FIDM Coordinator) @ PO Box 248822, Oklahoma City, OK 73124, renee.banks@okdhs.org, Jason.Hoenshell@okdhs.org; Emmalene.Stringer@okdhs.org,
> (3) **OKLAHOMA CENTRALIZED SUPPORT REGISTRY**, PO BOX 268849, Oklahoma City, OK 73126;
> (4) **CHARLES SCHWAB & CO., INC.**, 3000 Schwab Way, Westlake, TX 76262,
> ATTN: **Mary Johnmeyer** (legal services) and "**TPLPLevy@schwab.com**"
> CC : see certificate of service at the end
>
> Dated: May 01, 2024
>
> RE: (1) "**Tax Levy**/Order to Withhold/Freeze of Assets/Lien Notice/Restraining Notice Account Number(s) ending in 2605 /xxxx/xxxx/xxxx Scheduled Levy Payment Date: 04/30/2024" from Charles Schwab with attached letter #2 below and **said they will liquidate x2605 by 05/07/2024 (while DHS scheduled their fake administrative hearing 05/09/2024 after the liquidation date)**
> (2) "Obligor Linh Stephens, Oklahoma case number 948641001, Charles Schwab Account number …2605", where Jason Hoenshell (Oklahoma FIDM Coordinator) wrote to Mary Johnmayer (lawyer of Charles Schwab), "**Please liquidate the assets found in account number x2605** in alphabetical order until Mrs. Stephens' child support

obligation has been met or until no funds are available"--without service of process to me/Linh Tran Stephens from Jason Hoenshell (I got this letter from the bank 21 days later).

(3) "Notice of Administrative Review Decision - Levy dated <u>April 24, 2024</u>" ["the letter"] whose footnote referenced "CSF08 v8 U82539/TUE Pkg 2024042408062805-001" which was received on 04/29/2024 in mailbox

(4) "Letter of Notice of Levy and Right to Administrative Review dated April 21, 2024" whose footnote referenced "CSF02 v9 U82539/TUE Pkg 2024040908075700-001"

Dear Sir/Madam and Entities that you work for:

      Please cease and desist from attempting wrongful seizure of bank account ending x2605, from trying to liquidate it, which is a retirement account that is federally protected, also please stop your fraudulent activity as there was **no IRS letter sent to Charles Schwab and no debt owed to IRS** (my accountant and the IRS have confirmed this) about tax-levying, and there was **no court order** by any judges with any court (there were no documents file-stamped) in Letters from OKDHS to Charles Schwab legal team falsely alleging these are legitimate court orders and "the law"--these are letters sent personally from DHS employees Renee Banks and Jason Hoenshell <u>fraudulently pretend to be judicial members/judges giving a court-order</u> and then the lawyers from Charles Schwab, specifically Mary Johnmeyer,
"**TPLPLevy@schwab.com**", and others that are unknown to me at this time, <u>fraudulently pretend to work on behalf of IRS</u>, alleging "collecting tax for IRS" per their "**tax levy**" letterhead **despite no tax owed by me**, and despite aforementioned <u>individuals and entities that do NOT work for the IRS nor did they receive any letters from the IRS instructing them to do so.</u>

      I contend that this account, which you are fraudulently attempting to liquidate and garnish is a **Rollover IRA (which are exempted from garnishment)** account that was rolled-over from a **Federal Employer: Cherokee Nation Indian Health Services** and received at Charles Schwab on 10/14/2020 from **Lincoln Retirement Services Company, LLC**, after I was laid off from the Indian Health Services after working for them from 2018 to September of 2020. I went on to collect unemployment benefits and was next self-employed with LLCs.

      This Charles Schwab account also does NOT belong to the ex-husband Adam Sylvester Stephens of <u>Stephens vs. Stephens child support case</u> as incorrectly asserted by the opposing party and by OKDHS. That divorce, custody, and child support were finalized in January 2016 in the state of Oregon. I remarried in 2017 to another individual who is NOT a party to the child support case. Any retirement account during this subsequent marriage and ongoing marriage CANNOT be garnished to pay for a child from a previous marriage that was finalized. My current spouse did NOT adopt G.L.Stephens--the child of an alleged child support case against me and the same child who was given sole custody to her biological father who is actively barring me from seeing her. As my current spouse (nonparty to the child support case and nonparty to the divorce) has an interest in this marital asset retirement account ending in x2605, any

attempts to liquidate, levy, or garnish it should be ceased and desisted. In the event of a future divorce, this retirement account would be subject to equitable distribution. We did NOT consent to the violation of any of our rights for the account to be liquidated/garnished.

I am NOT retired, I am NOT dead but still very alive. My last will and testament said I will leave $1,000.00 (one thousand dollars) for my daughter G.L.S. if I die, not the whole retirement account. I do NOT meet SSA title IV-D criteria nor criteria to be put on child support garnishment. Again, I am 40 years old and NOT at retirement age. I have NOT, did NOT, do NOT, and will NOT consent to early retirement-withdrawal nor its penalty nor the violation of any of my rights nor for anyone/any entities to liquidate, garnish, or levy my federally protected accounts. **Alleged implied consent (e.g. without written court-transcripts) or alleged default consent (e.g. without proper service) is considered fraud especially when I am contesting such!!!**

Furthermore, my most recent only source(s) of income was from Peace Joy Clinic PLLC up until 02/07/2024, which does NOT do banking with Charles Schwab, and if any income, it goes into another bank outside of Charles Schwab.

All the money in any of my bank accounts is **completely exempt** from debt collection.

If you attempt to restrain/garnish/liquidate/levying my exempt funds, you will cause me a severe hardship. **If you attempt to restrain/garnish/liquidate and levying my exempt funds in disregard of this notice, I reserve the right to seek compensation from you for any damages** caused by the restraint/levying/liquidation/garnishment.

**This letter is NOT meant in any way to be an acknowledgment that I owe this money (the alleged debt).** Thank you for your attention to this matter.
Sincerely,.."

40. On May 7, 2024, at 07:54, CSS ocss.contact.tulsaeast@okdhs.org emailed Plaintiff: "Good morning, I have attached the link for the hearing on Thursday, May 9th which will start at 8:30am. Please use the link below to join that says "join the meeting now". You should be able to join as a guest without downloading the application. You will then wait in the lobby until the Judge lets you in. **If you fail to join the hearing by 8:30am, you may be held in default.** Microsoft Teams Need help? Join the meeting now Meeting ID: 259 442 085 972 Passcode: uQbcLB, Dial-in by phone +1 405-898-0717,,823842882# United States, Oklahoma City Find a local number Phone conference ID: 823 842 882# Join on a video conferencing device Tenant key: 831653214@t.plcm.vc Video ID: 111 039 917 5"

41. Plaintiff replied immediately via same method of emailing on Tuesday, May 7, 2024 8:49 AM

Dear OKDHS, I DEMAND A COURT REPORTER AND A VIETNAMESE

TRANSLATOR THERE IN CASE THERE ARE WORDS I DON'T UNDERSTAND CLEARLY. Additionally you better let my ADA advocates in as Kim Hall approved my ADA request already (American disability act) else you are willfully violating American Disability Act **[many times before CSS have violated Plaintiff's ADA rights without remorse]** and shall be sued. My advocates are CC above and could be any of them that will be available. I'm OBJECTING to any and all default as default means lack of due process of law, presence of fraud-upon-the-court, and is also unconstitutional/unlawful! I always show up, and if I "allegedly" don't show up from your end, it is simply because you guys block me out of the hearing, mess with internet signal, mute me, kidnap me, or there is a medical emergency as your pattern of practice with other cases. Let it be clear on the record that I am always objecting to all your illegal activities and to any violation of my rights as I am a living breathing person (NOT an entity and not a corporation and not your slave) with all my God given rights to parent (which your department failed to prove me abusive) and to support my child without any state interference/restraint. Every day you separating me from my daughter, I am charging you $500/day for damages and you are defaulting today if NOT returning my daughter to my house TODAY 05/07/2024 where you unlawfully taken her from me since 12/03/2021. AGAIN, "if" you don't see me in that fake hearing of yours, you better call me on my cell phones to ensure I am let into the hearing (else you guy and your crooked DHS department is defaulted $2million debt charged to you by we the people for not letting me in and for violations of rights under color of law)—you better make tremendous efforts to find out why I am not in that hearing and reschedule the hearing as there is always a legitimate reason "if" I don't show up **because facts are:** I always show up and stand up against evil, and evil always run from me and from Jesus Christ Holy Spirit living in me. Sincerely, Linh Tran Stephens cell phone 817-631-3223 LinhStephens7@gmail.com
~~~ Food gained by fraud tastes sweet, but one ends up with a mouth full of gravel (Proverbs 20:17). Do not trust in extortion or put vain hope in stolen goods; though your riches increase, do not set your heart on them (Psalms 62:10). "Woe [judgment is coming] to those judges who issue evil statutes, And to those [magistrates] who constantly record unjust and oppressive decisions, Now what will you do in the day of [God's] punishment, And in the storm of devastation which will come from far away? To whom will you flee for help? And where will you leave your wealth [for safekeeping]?" (Isaiah 10:1, 3 AMP). "and this is what the Lord of Heaven's Armies says: I am sending this curse into the house of every thief [THEFT] and into the house of everyone who swears falsely using my name [PERJURY]. And my curse will remain in that house and completely destroy it—even its timbers and stones." (Zechariah 5:4). "You twist justice, making it a bitter pill for the oppressed. You treat the righteous like dirt... Therefore, though you build beautiful stone houses, you will never live in them. Though you plant lush vineyards, you will never drink wine from them. For I know the vast number of your sins and the depth of your rebellions. You oppress good people by taking bribes and deprive the poor of justice in the courts. Do what is good and run from evil so that you may live!.. Hate evil and love what is good; turn your courts into true halls of justice. Perhaps even yet the Lord God of Heaven's Armies will have mercy on the remnant of his people…I hate all your show and pretense— the hypocrisy of your religious festivals and solemn assemblies… Away with your noisy hymns of praise! I will not listen to the music of your harps. Instead, I want to see a mighty flood of justice, an endless river of righteous living." (Amos 5:7, 11-12, 14-15, 21, 23-24 NLT). The Lord detests double standards; he is not pleased by dishonest scales (Proverbs 20:23). "He has told you, O man, what is good; and what does the Lord require of you but to do justice, and to love

Page 20 out of 33 followed by 9 exhibits

kindness, and to walk humbly with your God?" (Micah 6:8). Those who plant injustice will harvest disaster, and their reign of terror will come to an end (Proverbs 22:8). Woe to those who call evil good and good evil, who put darkness for light and light for darkness, who put bitter for sweet and sweet for bitter… who acquit the guilty for a bribe, but deny justice to the innocent (Isaiah 5:20,23). "Whoever causes one of these little ones who believe in Me to stumble, it would be better for him to have a heavy millstone hung around his neck, and to be drowned in the depth of the sea", Jesus said (Matthew 18:6). The greedy bring ruin to their households, but the one who hates bribes will live (Proverbs 15:27). People do not despise a thief if he steals to satisfy his appetite when he is hungry, but if he is caught, he will pay sevenfold; he will give all the goods of his house (Proverbs 6:30-31). May the Lord judge between you and me. And may the Lord avenge the wrongs you have done to me, but my hands will not touch you (1Samuel 24:12). If you said, "But we knew nothing about this," does not He who weighs the heart perceive it? Does not He who guards your life know it? Will He not repay everyone according to what they have done? (Proverbs 24:12). GOD said "I will take revenge; I will pay them back. In due time their feet will slip. Their day of disaster will arrive, and their destiny will overtake them.'" (Deuteronomy 32:35). My enemies did their best to kill me, but the Lord rescued me. The Lord is my strength and my song; he has given me victory. I will not die; instead, I will live to tell what the Lord has done (Psalm 118:13-14,17). "Don't be intimidated in any way by your enemies. This will be a sign to them that they are going to be destroyed but that you are going to be saved, even by God himself." (Philippians 1:28). "If anyone does attack you, it will not be my doing; whoever attacks you will surrender to you… But in that coming day no weapon turned against you will succeed. You will silence every voice raised up to accuse you. These benefits are enjoyed by the servants of the Lord; their vindication will come from me. I, the Lord, have spoken!" (Isaiah 54:15,17). "God blesses those who hunger and thirst for justice, for they will be satisfied" (Matthew 5:6) ~~~"

42. **As a result of these acts, Plaintiff suffered headaches, lost weight, nausea, embarrassment, mental anguish, emotional distress, interruption of work, closure of small businesses, lost time, and expenses, inability to visit dying relatives in Viet Nam, inability to travel and have freedom to travel to Canada or adjacent countries with family/relatives/friends or business trips, damage to Plaintiff's reputation.**

43. **CLAIM FOR UNDUE HARDSHIP EXEMPTION AND REQUEST TO STOP ALL GARNISHMENT, LEVYING, LIQUIDATION**: Per law, any money from any of the sources listed below is protected and CANNOT be garnished, and my Charles Swab accounts all of them including the one ending in x2605 Rollover IRA account retirement account started during Cherokee Nation employment (Indian Health Services federal employee) are

EXEMPTED, as it is also considered **public employee's retirement**:

A.  Social Security benefits
*42 U.S.C. § 407.*
B.  Supplemental security income
*42 U.S.C. § 1383(d)i*
C.  Unemployment benefits
*40 O.S. § 2-303.*
D.  Workmen's Compensation benefits
*85A O.S. § 10.*
E.  Welfare benefits
*56 O.S. § 173.*
F.  Veteran's benefits
38 U.S.C. § 3101, 31 O.S. § 7.
G.  Police Pension Funds
*11 O.S. § 50-124.*
H.  Firemen's Relief & Pension Fund
*11 O.S. § 49-26.*
I.   County Employee's Retirement
System Funds – *19 O.S. § 959.*
**J.  Public Employee's Retirement
Funds – *74 O.S. § 923.***
K.  Teacher's Annuities or Retirement
Allowance – *70 O.S. § 17-109.*
L.   Railroad Retirement Act Annuities and pension payments
*45 U.S.C. § 231(m).*
M.  U.S. Civil Service Retirement and Disability Pension Fund Payments
*5 U.S.C. § 8346.*
N. U.S. Civil service Survivor Annuities
*5 U.S.C § 8346.*
**O. Interest in Retirement, Pension and Profit Sharing Plans**
*60 O.S. § 327, 60 O.S. § 328.*
P. The Wages of Seamen
*46 U.S.C. § 601.*
Q. Funds vested in the Alien Property Custodian – *50 U.S.C. Appx. § 9(f).*
R. Prepaid Burial Benefits
*36 O.S. § 6125.*
S. Proceeds of Group-Life Insurance Policy – *36 O.S. § 3632, 4026.*
T. Alimony, support, separate maintenance, or child support necessary for support of judgment
debtor or dependent – *31 O.S. § 1.1.*
U. **Personal wage exemption because of undue hardship – *31 O.S. § 1.1.***

44.  Funds that are exempt (check one):

All funds listed above all applied or applicable.

The amount of money that is exempt is: <u>$ all of whatever is levied up in my bank accounts</u>

Page 22 out of 33 followed by 9 exhibits

and all of whatever has been liquidated via fraud and via deprivation of rights and abusive

debt-collection practices and FDCPA violations

45. Check if applicable:

**X** Check here if you are attaching proof of your funds being exempt and proof of your

undue hardship (**Exhibit 05**): (1) **Letter of Being laid off from Cherokee Nation Indian**

**Health Services (CN IHS) end of 09/2020, (2) evidence of CN**

**exempted-from-garnishment-and-child-support retirement account 401k from Lincoln**

**Financial (earned as marital asset during another marriage who is nonparty to**

**child-support case and we are not divorced and do not have child support case) after**

**being laid off has to be rolled over into Rollover IRA account x2605 with Charles**

**Schwab; (3) Unemployment benefits 2020-2021; (4) tax returns and schedule C of**

**2022 and 2023 showing financial hardship.**

See also **[Exhibit 09]** for **additional** evidence of exemption of bank account x2605

46. If garnishment is for money you earn, what pay period do you say is exempt?

Starting: October 2020, and ending ONGOING including today

**47. INCOME AND EXPENSE WORKSHEET**

Dated: April 21, 2024                    Case Number: as above

Creditor: Child Support Services of Oklahoma Department of Human Services, and Oklahoma
Centralized Support Registry, PO BOX 268849, OKLAHOMA CITY, OK 73126
Garnished Debtor: Linh Stephens

| **UNDUE HARDSHIP** | Amount of Garnishment **$64,445.92** |
|---|---|
| Total Family Members: **3** | # of Children and ages: 1, age(s): 10 y/o for this case; |
| Bank account balances: | $ 0.00 |

Monthly wages net: zero dollars;

**ADJUSTED GROSS INCOME negative $ below zero dollars**, specifically (-11,948.00) in 2023
tax year filed on April 15, 2024, and prior to that was (-12,163.00) in 2022 tax year filed by
certified and licensed accountant, see IRS Transcripts Record of Account, its first 2 pages of

Page 23 out of 33 followed by 9 exhibits

2023 and first 2 pages of 2022 **[Exhibit 06]**

Additional Sources of Income:     $0.00          Source:

Alimony/Child Support Income:     $0.00

    **Total Monthly Income:**     $negative and fluctuates, see small business Schedule C

Housing Expenses:

    Rent:          $1030.00     Electricity:     $200.00

    Natural Gas:          $90.00     Water & Trash     $70.00

    Telephone:          $350.00     Med. Ins.:     $0.00

    Medication:          $don't keep track of over the counter meds

Food:

    Food:          $500.00

    School lunches:          $0.00     Baby formula:     $0.00

Clothing:

    Clothing:          $0.00     Laundry:     $0.00

Transportation:

    Car Payment:          $unable to afford car          Gas:     $100.00

    Car Insurance:          $60.00     Bus:     $0.00

Other expenses:          $600 visitations related to child $150/hour

Source of Other expense: unlawful custody order change despite no abuse proven

**Total Monthly Expenses:          $3,000.00 or more, not including small business
debts/expenses**

## V. CLAIM FOR RELIEF FOR ALL 12 CLAIMS LISTED ABOVE:

48. Plaintiff repeats and realleges and incorporates by reference all paragraphs above.
Defendants violated the FDCPA. Defendants' violations include, but are not limited to, the
following: (a) The Defendants violated **15 U.S.C. § 1692c(b)** by contacting a third party, the
Plaintiff's banks, employer/workplace (with numerous phone calls and mails), credit report
agencies, passport department, work licensing agency, etc., without the Plaintiff's prior
consent, also without disclosures of where Plaintiff banks thus privacy has been breached
also by Defendants, who fraudulently use court-appointed attorney "standby counsel"
impostering as full power of attorney over Plaintiff waiving all her rights and her privacy (b)
The Defendants violated **15 U.S.C. § 1692(c)** by contacting the Plaintiff after the Plaintiff had
requested the Defendants cease all harassments and persecution towards the Plaintiff. (c)
The Defendants violated 15 U.S.C. **§ 1692g(b)** by failing to provide verification of the debt
and continuing its debt collection efforts after the Plaintiff had disputed the debt in writing
within thirty days of receiving notice of the **15 U.S.C. § 1692g** debt validation rights. As a
result of the above violations of the FDCPA, the Defendants are liable to the Plaintiff for
declaratory judgment that defendants' conduct violated the FDCPA, injunctive relief, and
Plaintiff's actual damages, statutory damages, and costs and attorney's fees.

49. Previously Defendant CSS has done the same pattern of deception as this time: pretending
to schedule a hearing promising "due process", and then when Plaintiff showed up for the
hearing to contest about passport being suspended for alleged child support order with
extensive preparation, submitted clear and convincing evidence, turned into CSS prior to
hearing, then CSS Attorney Emmalene Stringer Defendant #8 argued "no jurisdiction" in the
administrative court the very court that she scheduled the hearing for and the very court she
told Plaintiff that has jurisdiction and not family court, again to deny due process, to delay
justice, to waste Plaintiff's time, money, and energy, to waste tax-payers' hard-earned

money (**misappropriation of public fund**), after denying same passport suspension

hearing to be addressed in family court, so then there is no actual hearing ever to be taken

anywhere–See Passport Letter dated March 02, 2023, and subsequent Administrative order

filed May 03, 2023 in **Exhibit 07**. This is obstruction of justice!

50. Plaintiff reserves her right to amend this Verified Complaint any time during the lawsuit.

<div align="center">

**VI. JURY TRIAL DEMAND**:

</div>

51. Please take notice that Plaintiff demands trial by jury in this action

<div align="center">

**VII. EXPEDITED TRIAL REQUEST**:

</div>

52. Plaintiff requests for Expedited Trial to prevent further damages and additional risks to

Plaintiff including but not limited to: unwanted forced-early-retirement with unwanted tax

penalties and false income inflation from liquidation of exempted assets, additional false

imprisonment and unlawful arrests, malicious prosecution, intentional harassment and

intentional infliction of emotional and physical and financial injury, permanent physical health

damages, ongoing effect of imputed income despite zero evidence presented for

purposefully underemployment (while Defendant CSS ignoring Plaintiff's tax paperwork from

IRS, Plaintiff's actual earnings, and reliable witnesses), ongoing harassments and

discriminations by all Defendants.

53. Plaintiff requests the Court to approve the accompanying pauper affidavit (pauper status

affirmed by Oklahoma Supreme Court in 2023 even after Father of child filed objection to

plaintiff's pauper affidavit), issue Summons, and to be served by U.S. Marshalls.

<div align="center">

**VIII. PRAYER**:

</div>

54. WHEREFORE, Plaintiff Linh Tran Stephens respectfully prays that judgment be entered

against the Defendants for the following:

A.  Judgments for General damages and special Judgment that Defendants' conduct and

failure to act caused egregious/severe injuries to Plaintiff in no event less than **$500,000,000**

Page 26 out of 33 followed by 9 exhibits

**(500 million dollars)**, including **compensatory, nominal, punitive (for IIED), special and/or consequential damages** that are reasonably foreseeable, and damages for detriment certain to result in the future—examples of which include but not limited to:

a. Overpayment of child support by way of conventional child support that unjustly enriches Defendant Adam Sylvester Stephens and unjustly enriches the State of Oklahoma;

b. Opportunistic investment loss: Financial losses from alternatively the values of the properties in cash would be put in high-interest investment accounts producing profits for Plaintiff, or giving out as personal loans with 10% to 20% interest all these years;

c. Loss of costly time and energy from work for preparing and attending hearings;

d. Court costs, transcripts costs, and fees;

e. Plaintiff's mental anguish and emotional distress and other injuries mentioned extensively above in paragraph 42 and much more shall be disclosed at jury trial date;

f. Damage to Plaintiff's reputation in the community and nationwide

g. Permanent damage to Plaintiff's lifelong career as a general medical practitioner.

B. As against the individual-being Defendants, **punitive damages** as allowed by law;

C. Declaratory judgment that defendants' conduct violated the FDCPA and injunctive relief for the defendants' violations; its actual damages; its **Statutory damages** pursuant to 15 U.S.C. § 1692k.; its Costs and reasonable attorney's fees equivalent or opportunistic cost lost pursuant to 15 U.S.C. § 1692k.;

D. Grant Plaintiff's **Claim for Undue Hardship Exemption** and Grant Plaintiff's **Request to Stop All Garnishment, Levying, Liquidation**–which has been completely prevented from being heard from all lower courts since its initial filing 04/22/2024 in family court and

Page 27 out of 33 followed by 9 exhibits

035

by OKDHS CSS' fabricative response filed May 03, 2024 [see paragraph 32 above]

E.  "Future damages" per *23 OK Stat § 23-9.3*, meaning damages that are incurred after the date of judgment for:

    a.  medical, health care, or custodial care services;

    b.  Additional and compounded physical pain and mental anguish, or physical impairment;

    c.  continuing of loss of consortium, companionship, or society, or

    d.  loss of earnings and loss of potential earnings while being harassed in courts

    e.  loss of all future earning potential for the rest of Plaintiff's life

F.  Pre-judgment and post-judgment interest, pursuant to State Statute *12 OK Stat § 12-727.1 (2022) Interest on judgments rendered on or after January 1, 2005*, on damages at the statutory annual interest rate, and continuing until judgment from this civil lawsuit;

G.  A Summary Judgment drafted by Plaintiff and NOT by Defendants;

H.  For Injunctive Relief, both preliminary and permanent, as allowed by law and/or by **supplemental jurisdiction (28 U.S.C. §1367)**, including but not limited to:

    a.  ordering offending Defendants to end **harassments** (including unlawful Child-Support Collection practices/efforts via OKDHS CSS; malicious prosecution by Tulsa County for Indirect Contempt of Court charges for child support) and **defamation** of Plaintiff (including but not limited defamation alleging "contempt of court", "not paying child support", "willful violation of court order", "abusive parent with substantiation of abuse" without any evidence and without any witnesses during any trial including jury trial);

    b.  Vacate *Child Support Order* of October 14, 2022 and *Order Modifying The Decree of Dissolution of Marriage* of February 20, 2024 that breached previous contracts of

child support finalized in another State and previously upheld by previous judges of

Tulsa County Court;

c.  uphold original Child Support Contract of January 2016 in Oregon and upheld in

Oklahoma 07/2017 and again in 2019 to comply with judicial estoppel

d.  ordering there shall never be any child support order to be issued against Mother

unless Father give Mother back her paid-in-full brand-new-fully-loaded Jeep

Wrangler and brand-new fully loaded Baja 18-feet Trailer;

e.  ordering the reversal of Defendant's passport-suspension/revocation and

licensures-suspension stemmed from OKDHS CSS' persecutory actions

I.  Attorneys, consultants, paralegals, legal research fees, court costs, and other costs

pursuant to 42 U.S.C. §1983, and any other appropriate statute;

J.  Costs of suit incurred herein;

K.  For such other and further relief as the Court deems just and proper.

Linh Tran Stephens, or Stephens:Linh-Tran
Reserving all my rights without prejudice **UCC 1-308**,
In propria persona, sui juris, a natural living woman,
Attorney-in-fact, Agent, Acting as Fiduciary and Beneficiary
of LINH TRAN STEPHENS;
11063 S Memorial Dr Ste D #235, Tulsa, OK 74133-7366
Cell # (817) 631-3223; LinhStephens7@gmail.com

**VERIFICATION  12 O.S. 246**

STATE OF <u>OKLAHOMA</u>          )
                                 ) ss
COUNTY OF <u>TULSA</u>             )

Pursuant to Title 18 USC 1001, I, Linh Tran Stephens, states under the penalty of perjury under
state laws that the statements/allegations/pleadings set forth herein are true and correct to the
best of my knowledge and belief,

Dated <u>07 MAY 2024</u>

Page 29 out of 33 followed by 9 exhibits

 Linh Tran Stephens

**SUBSCRIBED** and sworn to before me this _07_ day of _May_, 20_24_ by _Linh Tran Stephens_, proved to me on the basis of satisfactory evidence to be the person(s) who appeared remotely before me.

STATE OF _MINNESOTA_ )
                        ) ss
COUNTY OF _SHERBURNE_ )

_Melissa K. Vagle_____
**NOTARY PUBLIC**: _Melissa K Vagle_

MELISSA K VAGLE
Notary Public
State of Minnesota
My Commission Expires
January 31, 2028

My commission expires: _01/31/2028_

<u>CERTIFICATION AND CLOSING</u>

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A.       For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: <u>May 07, 2024</u>.

Linh Tran Stephens

Page 30 out of 33 followed by 9 exhibits

038

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 08th day of May, 2024, a true, correct, and exact copy of the above and foregoing instrument was filed face-to-face with Court Clerk at United States District Court Northern District of Oklahoma, 333 W 4th St, Suite 411, Tulsa, OK 74103; previously efiling and In Forma Pauperis (IFP) were approved on 02/01/2024 in another case 23-CV-553-GKF-SH, thus Court Clerk to issue summons and to direct U.S. Marshall to serve on all defendants listed above and copied below.

1. Defendant #1: CHILD SUPPORT SERVICES OF OKLAHOMA DEPARTMENT OF HUMAN SERVICES (CSS of OKDHS), P.O. Box 27068, Tulsa OK 74149, or Oklahoma Centralized Support Registry, P.O. Box 268849, Oklahoma City, OK 73126; Tel: 405-522-2273; email: OCSS.contact.TulsaEast@okdhs.org
2. Defendant #2: CHARLES SCHWAB AND CO., INC., 3000 Schwab Way, Westlake, TX 76262; Tel: 1800-435-4000; email: TPLPLevy@schwab.com
3. Defendant #3: Cierra Freeman, an individual in her personal capacity, and in official capacity as court-appointed attorney for child support enforcement, Boeheim Freeman Law, 616 S Boston Ave, Suite 307, Tulsa OK 74119; Tel: 918-884-7791; email: cfreeman@boeheimfreeman.com
4. Defendant #4: Mary Johnmeyer, an individual in her personal capacity, and in official capacity as legal counsel of Charles Schwab and Co., Inc.; 3000 Schwab Way, Westlake, TX 76262; Tel: 800-435-4000; email: TPLPLevy@schwab.com
5. Defendant #5: Renee Banks, an individual in her personal capacity, and in official capacity as CSS Director, PO Box 248822, Oklahoma City, OK 73124; Tel: 918-295-3500; email: renee.banks@okdhs.org
6. Defendant #6: Jason Hoenshell, an individual in his personal capacity, and in official capacity as Oklahoma FIDM Coordinator, PO Box 248822, Oklahoma City, OK 73124; Tel: 405-982-1530; email: jason.hoenshell@okdhs.org
7. Defendant #7: Emmalene Stringer, an individual in her personal capacity, and in official capacity as State's Attorney for CSS, 3666 N Peoria Ave, Tulsa, OK 74106, or PO BOX 27068, Tulsa, OK 74149; Tel: 918-295-3500, Fax: 918-430-2364, email: emmalene.stringer@okdhs.org and OCSS.contact.TulsaEast@okdhs.org
8. Defendant #8: DOES #1-10 known but unidentified employees of OKDHS CSS
9. Defendant #9: DOES #11-20 known but unidentified employees of Charles Schwab and Co., Inc.

*/s/ Linh Stephens, or Stephens:Linh-Tran*

Page 31 out of 33 followed by 9 exhibits

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1) Linh Tran Stephens, an individual;<br>　　*Plaintiff,*<br>Vs.<br><br>(2) CHILD SUPPORT SERVICES OF OKLAHOMA DEPARTMENT OF HUMAN SERVICES (CSS of OKDHS),<br>*and*<br>(3) CHARLES SCHWAB AND CO., INC.,<br>(4) Cierra Freeman, in individual capacity and official capacity as court-appointed attorney for child-support enforcement,<br>(5) Mary Johnmeyer, in individual capacity and in official capacity as legal counsel of Charles Schwab,<br>(6) Renee Banks, in individual capacity and official capacity as CSS Director,<br>(7) Jason Hoenshell, in individual capacity and in official capacity as Oklahoma FIDM Coordinator,<br>(8) Emmalene Stringer, in individual capacity and in official capacity as State's attorney for CSS,<br>(9) DOES #1-10 known but unidentified CSS employees,<br>(10) DOES #11-20 known but unidentified Charles Schwab and Co., Inc., employees<br>　　*Defendants.* | Case No.: _____<br><br>Judge: _____<br><br>**EXPEDITED HEARING REQUESTED**<br>**JURY TRIAL DEMANDED**<br><br>**VERIFIED COMPLAINT FOR DAMAGES,**<br>**REQUEST FOR INJUNCTION RELIEF, AND**<br>**CLAIM FOR EXEMPTION TO STOP ALL**<br>**GARNISHMENT, LEVYING, AND**<br>**LIQUIDATION** |

**[PROPOSED] ORDER ON CLAIM FOR EXEMPTION**
**AND ORDER TO DISBURSE**

NOW on this _____ day of _____, 2024, this matter comes on for hearing upon the Plaintiff's Claim for Exemption and Request for Expedited Jury Trial. The Court having reviewed the pleadings, and otherwise being fully advised in the premises **FINDS, ORDERS, ADJUDGES, AND DECREES:**

_____ Defendant's claim for exemption is approved. Funds held by the Court Clerk, Plaintiff, or Garnishee are ordered released to Defendant within _____ days of the date of this Order.

_____ Defendant's claim for exemption is denied.

_____ Defendant's claim for exemption is approved in part. Plaintiff may keep $_____ of

Page 32 out of 33 followed by 9 exhibits

040

Defendant's funds. Funds over this amount held by the Court Clerk, Plaintiff, or Garnishee are ordered released to Defendant within _____ days of the date of this Order.

_____ The Court orders that Plaintiff may only be allowed to garnish $_____ from each of Defendant's pay periods, for not more than 180 days from the date of filing of the garnishment affidavit.

_____ Plaintiff and Defendant agree and the Court Orders that Defendant shall make payments starting the _____ day of _____, 20_____, in the amount of $_____, continuing every:

- 2 weeks
- Month
- Other _____

Until the judgment, interest, and all costs allowed by law have been paid in full.

_____ Other _____

_____

_____

Dated this _____ day of _____, 20_____.


_____
JUDGE OF U.S. DISTRICT COURT OF
NORTHERN DISTRICT OF OKLAHOMA

# EXHIBIT 01

CSS
3666 N PEORIA AVE
PO BOX 27068
TULSA, OK 74149



State of Oklahoma
Oklahoma Human Services
Child Support Services
oklahoma.gov/okdhs
www.okbenefits.org
(918) 295-3500
FAX: (918) 430-2364
Date of Mailing:
FGN:000948641001



LINH TRAN STEPHENS
11063 S Memorial Dr
Suite D # 235
Tulsa, OK 74133

## Notice of Levy and Right to Administrative Review

Child Support Services (CSS) has levied (frozen) your Financial Institution account(s). This means your Financial Institution must hold the money in your account to pay the past-due support plus interest that you owe.

Your account is frozen because CSS records show that you owe past-due child support equal to at least three months of support. CSS can levy your account even if you have been making regular payments on the past-due support. CSS can levy your account even it is a joint account.

**If you disagree with the levy, you must request a review within 15 days from the date above.** Complete and return the attached form. If you do not request a review in this time period, you give up your right to a review and this notice will become a final agency action.

CSS will review your request when we receive it. We will notify you of the results of the administrative review. If your claim is denied, you will have 20 days to request an administrative hearing.

**Notice to joint account holder:** If you are claiming ownership of the levied funds, you may request an administrative review by completing and returning this form within 15 days of the above-stated date. Any supporting documentation should accompany your request for a review. If you do not request a review, you give up your rights to a review.

1

FGN: 000948641001

LINH TRAN STEPHENS
Date of Mailing:

**Request for Administrative Review of Bank Levy**

*If you disagree with this levy, you have **15 days from the date of mailing** to return this form*. You may return this form by email, fax, or mail to the office listed below. Your request for a review must be made in writing. **CSS will not review the action over the telephone.** Return this form to CSS at the address below if you believe that:

- you are not the person ordered to pay support in this case;
- you do not owe three months of past-due child support;
- the amount taken by the levy is more than you owe; or
- any reason that would legally justify release of the levy.

We may need additional information from you. Please tell us how to contact you:

_____        _____
Name                                     Social Security Number

_____        _____
Street Address                           Phone

_____        _____
City                    State    Zip     Work Phone

☐  The amount of past-due support I owe is $ _____ (attach documents, including payment receipts, in support of your claim); or

☐  The seized funds should not be levied because they do not belong to me. (Explain your claim below and attach paperwork to help prove your claim, such as bank statements, conservator papers, trust papers or other proof that the money does not belong to you.)

Explain: _____

_____

Other: _____

_____

_____

_____

Return To: CSS
           3666 N PEORIA AVE
           PO BOX 27068
           TULSA, OK 74149

               (918) 295-3500
        FAX: (918) 430-2364
               OCSS.CONTACT.TULSAEAST@OKDHS.ORG
                              2

CSF02 v9        U82539/TUE      Pkg 2024040908075700-001

044



State of Oklahoma
Oklahoma Human Services
Child Support Services
oklahoma.gov/okdhs
www.okbenefits.org
(918) 295-3500
FAX: (918) 430-2364
FGN: 000948641001
Date of Mailing:



**Notice of Levy**
56 O.S. §§240.22 through 240.22G
**Obligor Copy**

To:  Charles Schwab & Co., Inc.
     9800 Schwab Way

     Lone Tree, CO 80124

**Obligor's Name:**                    **FGN:**  000948641001
LINH TRAN STEPHENS                     **SSN:**  ●●●●●●5094

**Amount of Levy: $  64,445.92**

(This amount may not include all delinquent support owed and/or interest owed as of the date
this levy is paid.)

---

**Account Numbers**

---

All accounts associated with the above named person, including but not limited
to, the following accounts: ●●●●2605.

You are notified that all property, rights to property, monies, and credits belonging to the
obligor, or for which you are obligated to the obligor, and currently in your possession are
levied in the amount listed above. **This levy attaches to the following types of accounts
and funds of the obligor: a demand deposit account; checking or negotiable withdrawal
order account; savings account; individual retirement account (IRA); time deposit
account; money market mutual fund account or brokerage accounts; public and private
retirement funds, including any retirement plan benefiting self-employed individuals;
union retirement fund; railroad retirement; and any other type of account or retirement
plan.**

CSF02 v9        U82539/TUE    Pkg 2024040908075700-001

045

# EXHIBIT 02



047



*1058275766*

From:  Linh Tran Stephens, 8214 E 111TH PL S Unit 100, Bixby, OK 74008-2452 (FD-2015-2228)
To:    CSS DEPARTMENT OF HUMAN SERVICES STATE OF OKLAHOMA (3666 N Peoria Ave)
       PO Box 27068, Tulsa, OK 74149; OCSS.CONTACT.TULSAEAST@okdhs.org ,
       renee.banks@okdhs.org ; Fax: 918-430-2364; CC: see certificate of service below

*DISTRICT COURT*
*F I L E D*
APR 22 2024
DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

### DEMAND FOR JUSTICE AND <u>ADMINISTRATIVE REVIEW</u> RE: <u>BANK LEVY AND CHILD-SUPPORT AMOUNT</u>; DEMAND TO CEASE AND DESIST;

<u>RE</u>: Letter of Notice of Levy and Right to Administrative Review received on Friday, 04/19/2024 in mailbox, whose footnote referenced "CSF02 v9    U82539/TUE   Pkg 20240409080757AM-NG"
<u>Dated: April 21, 2024</u>

To Whom This May Concern,

Today, April 21, 2024, is two calendar days from the date "**The Letter**" (*Notice of Levy and Right to Administrative Review*) was received by this individual named Linh Tran Stephens. **I disagree with the levy and with the alleged child support amount $64,445.92, and therefore demand a thorough, complete, and honest review** within 15 days from the date above in front of a NONspecial judge and in common law courts since alleged child support amount is larger than $10,000 amount (forbade by O.S. §20-123 *Jurisdiction of special judges*) and since I have been objecting to having a special judge for my case pursuant to *O.S. § 20-124.*

It is to my belief and information that the Oklahoma child support order and demand for payment is a rush to judgment into a default judgment, and both are a violation of my constitutionally protected rights. **Please validate this alleged claim against me by having it signed by a man or woman and notarized under a penalty of perjury** and send the sealed original to me.

I refuse to contract with the State, DHS, any of its agencies. By completing and returning the attached protesting/refuting form per your instruction in "The Letter", it does NOT mean that I am contracting nor having any implied contracts in any shape or form with any of the aforementioned. Any past alleged contracts between us were fraudulent because of your actions and omissions; they were without my consent, without my knowledge, and definitely without informing me nor providing any due-process to me, while you guys deprived my substantive rights, constitutional rights, unalienable rights, etc. AGAIN, I am NOT agreeing to, have NOT agreed to, and will NEVER agree to have any contract with OKDHS or any of its entities/agencies/corporations or its personnel. I have NEVER approved any violation or waiver of rights against me or against my daughter–**any lawyers, any DHS employee, any transcript, or any documents saying otherwise is fraudulent, fake, altered, likely photoshopped, or done without my expressed written notarized consent.** "Implied consent" WITHOUT being fully informed, served, court-reporter-recorded, notarized, signed is NOT consent. Signing under threats, duress, misinformation also is NOT consent.

There are an **active appeals (DF-120849 and DF-122022** in Oklahoma Supreme Court) against these unlawful child-support orders (my parental rights are protected by the U.S. Constitution and must NOT be infringed upon, and my divorce/custody does NOT meet any SSA title iv criteria), therefore **OKDHS CSS who is NOT above the law must cease and desist** from enforcing unlawful and erroneous orders, especially when there are active appeals in higher courts. **Attorney General Drummond said,** "*The Legislature is vested with policymaking authority. I will not allow any state agency, board or commission to usurp the Legislature's rightful role, even if they have the best of intentions.*"

My inability to pay and undue hardship are irrefutable as well. I did NOT agree to pay child support despite my personal circumstances–that makes the child support order unconstitutional, especially for an unlawful and malicious order that inflated/fabricated numbers against my *actual*

From:  Linh Tran Stephens, 8214 E 111TH PL S Unit 100, Bixby, OK 74008-2452; <u>FD-2015-2228</u>
To:     CSS DEPARTMENT OF HUMAN SERVICES STATE OF OKLAHOMA (3666 N Peoria Ave)
        <u>PO Box 27068, Tulsa, OK 74149;</u> OCSS.CONTACT.TULSAEAST@okdhs.org ,
        renee.banks@okdhs.org ; Fax: 918-430-2364; <u>CC</u>: see certificate of service below

<div align="center">

**DEMAND FOR JUSTICE AND <u>ADMINISTRATIVE REVIEW</u> RE: <u>BANK LEVY AND
CHILD-SUPPORT AMOUNT</u>; DEMAND TO CEASE AND DESIST;**
</div>

<u>RE</u>: Letter of Notice of Levy and Right to Administrative Review received on Friday, 04/19/2024 in
mailbox, whose footnote referenced "CSF02 v9     U82539/TUE  Pkg 2024040908075700-001"
<u>Dated: April 21, 2024</u>
To Whom This May Concern,

     Today, April 21, 2024, is two calendar days from the date "**The Letter**" (*Notice of Levy and
Right to Administrative Review*) was received by this individual named Linh Tran Stephens. **I
disagree with the levy and with the alleged child support amount $64,445.92, and therefore
demand a thorough, complete, and honest review** within 15 days from the date above in front of
a NONspecial judge and in common law courts since alleged child support amount is larger than
$10,000 amount (forbade by *O.S. §20-123 Jurisdiction of special judges*) and since I have been
objecting to having a special judge for my case pursuant to *O.S. § 20-124*.

     <u>It is to my belief and information that the Oklahoma child support order and demand for
payment is a rush to judgment into a default judgment, and both are a violation of my constitutionally
protected rights.</u> **Please validate this alleged claim against me by having it signed by a man or
woman and notarized under a penalty of perjury** and send the sealed original to me.

     I refuse to contract with the State, DHS, any of its agencies. <u>By completing and returning the
attached protesting/refuting form per your instruction in "The Letter", it does NOT mean that I am
contracting</u> nor having any implied contracts in any shape or form with any of the aforementioned.
Any past alleged contracts between us were fraudulent because of your actions and omissions; they
were without my consent, without my knowledge, and definitely without informing me nor providing
any due-process to me, while you guys deprived my substantive rights, constitutional rights,
unalienable rights, etc. AGAIN, I am NOT agreeing to, have NOT agreed to, and will NEVER agree
to have any contract with OKDHS or any of its entities/agencies/corporations or its personnel. I have
NEVER approved any violation or waiver of rights against me or against my daughter–**any lawyers,
any DHS employee, any transcript, or any documents saying otherwise is fraudulent, fake,
altered, likely photoshopped, or done without my expressed written notarized consent.**
<u>"Implied consent" WITHOUT being fully informed, served, court-reporter-recorded, notarized, signed
is NOT consent</u>. <u>Signing under threats, duress, misinformation also is NOT consent</u>.

     There are an **active appeals (DF-120849 and DF-122022** in Oklahoma Supreme Court**)**
against these unlawful child-support orders (my parental rights are protected by the U.S. Constitution
and must NOT be infringed upon, and my divorce/custody does NOT meet any SSA title iv criteria),
therefore **OKDHS CSS who is NOT above the law must cease and desist** from enforcing unlawful
and erroneous orders, especially when there are active <u>appeals</u> in higher courts. **Attorney General
Drummond** said, "*The Legislature is vested with policymaking authority. I will not allow any state
agency, board or commission to usurp the Legislature's rightful role, even if they have the best of
intentions.*"

     <u>My inability to pay and undue hardship are irrefutable as well.</u> I did NOT agree to pay child
support despite my personal circumstances–that makes the child support order unconstitutional,
especially for an unlawful and malicious order that inflated/fabricated numbers against my *actual*

income while deflated against his actual income, actual numbers in tax documents (most updated one 2023 in *attached **Exhibits***) and in *actual* accountant's records, and judicial estoppel violation of STANDING finalized divorce/custody/child-support decree/order/judgment of 2016 ("Jeep and Trailer in lieu of child support") which I NEVER agreed to be modified without fair compensation/offsets/ returns of properties, without fair second-accord-and-satisfaction, without proven me abusive to deserve less than 50/50 custody, without proven alleged title IV services was provided at all to my case to me the indigent mother, the alleged obligor, being unjustly ordered to enrich the already rich father whose custody should be taken away as his previous children ALL spoke against him per OKDHS records except 1 out of 7 (Alexis) who never lived with father (only lived with paternal grandmother). I was deemed indigent and *affirmed* indigent (after overruling ex-husband's Objection-Motion of Mother's In Forma Pauperis) by *superior* Court Order of <u>Oklahoma Supreme Court case No. **DF - 120849**</u> on <u>01/23/2023</u> on page 2 (*attached **Exhibits***), and *affirmed again* indigent by <u>U.S. District Court Northern District of Oklahoma, case No. **23-CV-553-GKF-SH**</u> on <u>02/01/2024</u> (see its Federal Court Order open to the public and *attached **Exhibits***), and by <u>David L. Moss Criminal Justice Center</u>, inmate ID **# DLM # 1282383** on <u>03/07/2024</u> (their 30-day mark for decision regarding indigent-status for inmates), as I have *received Indigent Supplies while in jail there*—**time served** as I *cannot* bond myself out either due to being indigent! Remember also, the sole custody order by Adam Sylvester Stephens SR was obtained by fraud-upon-the-court (without due process, without substantive rights, violating my unalienable rights), his witness **Bridget O'brien** who disqualified herself being a felon for hurting children (**Bridget Menser is her maiden name, is a felon for hurting children per CF-1999-2911**) and she was also impeached by evidence and NEVER showed up for final trial of 02/2024, thereby father lost his case but Judge April Seibert abused her discretions and took custody away from good/fit/loving mother like me, thus violating my equal protection rights, substantive rights, civil rights, etc.

     **If ignoring my demand for justice & administrative review and if NOT providing a hearing within 15 days from the date of this letter, your OKDHS Department and each employee in your individual capacity and everyone above you in the State are automatically consented** that you all have been willfully harming this individual Linh Tran Stephens, violating all my rights under colors of law, and you have been willfully committing frauds via complicit or omission or accomplice, failure to protect me and my daughter, failure of fiduciary duties, failure to **supervise**, violating **15 U.S.C. 1673(a)**, actively participating in breach-of-contract against original child-support contract/decree/judgment/court-order signed by a judge in Oregon State in January 2016 and was upheld/signed again on 07/11/2016 by Oklahoma Judge, etc.

     Your harassment and malicious persecutions via phone calls, mails, collection methods, hurting my credit score reports, <u>levying ('frozen') my banks</u>, <u>telling U.S Passport Department to take away my U.S. Passports robbing me of freedom</u>, <u>putting me in jail in David L. Moss Criminal Justice Center for debtor-imprisonment (unconstitutional and cruel/unusual punishment)</u>, <u>rendering my work license useless as no one will hire a wrongfully-substantiated child-abuser ever</u>, etc., must CEASE AND DESIST and return JUSTICE TO ME, else you are WILLFULLY committing crimes against me, liability of severe harm, emotional/physical distress/torment against me!

     I also demand that you mail me the **Oath of Office, Public Official Bond Certificate** and its monetary amount (*74 O.S. § 85.29 Schedule of Amounts of Surety Required*), or the equivalent **Errors and Omissions and Malpractice Insurance** (if you are an attorney or judge) of <u>all</u> DHS employees/supervisors/attorneys that touched my case. ANY deprivation of any of my rights MUST CEASE AND DESIST IMMEDIATELY ELSE FACE LIABILITY FOR YOU, THE COUNTY, AND THE

STATE. I trust that you don't want to be criminally charged for frauds against the federal government via SSA title IV-D nor wanting to face qui-tam lawsuits among other civil rights lawsuits.

Sincerely,

*Linh Stephens*

Linh Tran Stephens, or Stephens:Linh-Tran
Reserving all my rights without prejudice/recourse **UCC 1-308**,
In propria persona, sui juris, a natural living woman,
Attorney-in-fact, Agent, Acting as Fiduciary of LINH TRAN STEPHENS [POA in County Recorder],
Mailing address: 11063 S Memorial Dr, Ste D #235, Tulsa, Oklahoma 74133
LinhStephens7@gmail.com
**VERIFICATION 12 O.S. 246**
STATE OF OKLAHOMA            )
                            ) *ss*
COUNTY OF TULSA             )
I, Linh Stephens, swear under the penalty of perjury under the penalty of perjury under state laws that the statements/allegations/pleadings set forth therein are true and correct to the best of my knowledge/belief,
Signed 21st day of April, 2024, in Tulsa County, Oklahoma,

*Linh Stephens*  Linh Stephens

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 21st day of April, 2024, a true, correct, and exact copy of the above and foregoing instrument was
filed into FD-2015-2228 for records/review purposes, mailed, faxed, and emailed to:
(1) OKDHS CSS, PO Box 27068, Tulsa, OK 74149, renee.banks@okdhs.org,
OCSS.CONTACT.TULSAEAST@okdhs.org , fax 918-430-2364; and additionally:
(2) Oklahoma Child Support Services Attn: Center for Customer Services, Capitol Station, Box 53552, Oklahoma City OK 73152;
(3) CWS Appeals Unit Oklahoma Department of Human Services, P.O. Box 25352, Oklahoma City, OK 73125 CWS.appeals@okdhs.org;
(4) Oklahoma Commission on Children and Youth (OCCY), 2915 N Classen Blvd #300, Oklahoma City, OK 73106,
(5) Oklahoma Attorney General Drummond, 313 NE 21st Street, Oklahoma City, OK 73105
(6) Tulsa County District Court, District Judge **Dawn Moody** Presiding Judge, 500 S Denver Ave, Tulsa OK 74103
(7) Tulsa Grand Jury, 15 W 6th St Ste 1000, Tulsa, OK 74119
(8) Tulsa County Clerk's Office, 218 W. 6th St., 7th Floor, Tulsa, OK 74119
(9) Tulsa County County Commissioners, 218 W. 6th St., 7th Floor, Tulsa, OK 74119

*Linh Stephens*  Linh Stephens

**ORIGINAL**

IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

IN RE THE MARRIAGE OF:
LINH TRAN STEPHENS,

    Appellant,

v.

ADAM SYLVESTER STEPHENS,

    Appellee.

No. 120,849

FILED
SUPREME COURT
STATE OF OKLAHOMA
JAN 23 2023
JOHN D. HADDEN
CLERK

Rec'd (am) 1-23-23
Posted
Mailed
Distrib
Publish _____ yes  X  no

**ORDER**

Appellee's Motion to Dismiss Appeal for lack of an appealable order is granted in part, and denied in part. 12 O.S. 2021, §§ 952 & 953.

The motion to dismiss is granted as to the October 17, 2022 order awarding temporary child support in accordance with the temporary custody order and the October 31, 2022 order denying Appellant's objection and motion to recalculate. Such orders are interlocutory and not immediately appealable. *S.W. v. Duncan,* 2001 OK 39, ¶ 11, 24 P.3d 846. Moreover, the orders do not fall into any of the statutory or rule-based categories of orders appealable by right. *See* 12 O.S. 2021, §§ 952(b)(2), 993(A), and Rule 1.60, *Oklahoma Supreme Court Rules,* Tit. 12, ch. 15,

*More unlawful Order by lower court for RECORDS TO BE SEALED (01-17-2023)*

App. 1. *See also Kantor v. Kantor,* 1994 OK 132, ¶ 2, 886 P.2d 480.

To the extent Appellant challenges the November 2, 2022 order sealing records, Appellee's motion to dismiss is denied. The order sealing records is the functional equivalent of an injunction, therefore the appeal of this order shall proceed

as an appeal from an order appealable by right. *Collier v. Reese,* 2009 OK 86, ¶ 11, 222 P.3d 966. *See* Rule 1.60(c), *Oklahoma Supreme Court Rules,* Tit. 12, ch. 15, App. 1.

Appellant will have the opportunity to seek review of the October 17, 2022 and October 31, 2022 orders upon a final adjudication of the parties' motions to modify custody filed in the district court case. Appellee's Objection to Appellant's Pauper's Affidavit is denied.

*Mother = Appellant*

DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THIS 23RD DAY OF JANUARY, 2023.

CHIEF JUSTICE

ALL JUSTICES CONCUR

-2-

Case 4:24-cv-00216-JDR-CDL    Document 2    Filed 05/08/24    Page 45 of 90
Appellate Case: 25-5063    Document: 7-1    Date Filed: 05/09/2025    Page: 53
Case 4:23-cv-00553-GKF-SH    Document 7 Filed in USDC ND/OK on 02/01/24    Page 1 of 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

LINH TRAN STEPHENS,

          Plaintiff,

v.

                                           Case No. 23-CV-553-GKF-SH

APRIL SEIBERT,
GIL PILKINGTON, JR., and
ADAM SYLVESTER STEPHENS,

          Defendants.

### ORDER

Before the court is the Motion for Leave to Proceed *in Forma Pauperis* and Supporting Affidavit [Doc. 4] of plaintiff Linh Tran Stephens. She states that her monthly gross pay is less than $0.00, she received a $200.00 gift within the past twelve months, she has $0.00 in her checking account and $20.00 in cash, and that her total monthly expenses equal $3,270.00. [*Id.*]. Having reviewed the affidavit, the court finds that plaintiff is entitled to proceed without full prepayment of the $350.00 filing fee and $52.00 administrative fee. Plaintiff's motion [Doc. 4] is therefore granted.

Plaintiff is advised that the court shall dismiss all or part of the Complaint if it is determined that (A) the allegation of poverty is untrue; or (B) that the action: (1) is frivolous or malicious, (2) fails to state a claim on which relief can be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

IT IS THEREFORE ORDERED that plaintiff's Motion for Leave to File In Forma Pauperis [Doc. 4], is granted.

Form **1040** Department of the Treasury-Internal Revenue Service
**U.S. Individual Income Tax Return** **2023** OMB No. 1545-0074 IRS Use Only-Do not write or staple in this space.

For the year Jan. 1–Dec. 31, 2023, or other tax year beginning _____ , 2023, ending _____ See separate instructions.

| Your first name and middle initial | Last name | Your social security number |
|---|---|---|
| Linh T | Stephens | XXX–XX–XXXX |
| If joint return, spouse's first name and middle initial | Last name | Spouse's social security number |
| | | XXX–XX–XXXX |

Home address (number and street). If you have a P.O. box, see instructions. — Apt. no.
8214 E 111th PL S Unit 100

City, town, or post office. If you have a foreign address, also complete spaces below. — State OK — ZIP code 74008–2452
Bixby

Foreign country name — Foreign province/state/county — Foreign postal code

**Presidential Election Campaign**
Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund. ☐ You ☐ Spouse

**Filing Status**
Check only one box.
- ☐ Single
- ☐ Married filing jointly (even if only one had income)
- ☒ Married filing separately (MFS)
- ☐ Head of household (HOH)
- ☐ Qualifying surviving spouse (QSS)

If you checked the MFS box, enter the name of your spouse. If you checked the HOH or QSS box, enter the child's name if the qualifying person is a child but not your dependent: XXXXX B

**Digital Assets** At any time during 2023, did you: (a) receive (as a reward, award, or payment for property or services); or (b) sell, exchange, or otherwise dispose of a digital asset (or a financial interest in a digital asset)? (See instructions.) ☐ Yes ☒ No

**Standard Deduction** Someone can claim: ☐ You as a dependent ☐ Your spouse as a dependent
☐ Spouse itemizes on a separate return or you were a dual-status alien

**Age/Blindness** You: ☐ Were born before January 2, 1959 ☐ Are blind **Spouse:** ☐ Was born before January 2, 1959 ☐ Is blind

**Dependents** (see instructions):

| (1) First name    Last name | (2) Social security number | (3) Relationship to you | (4) Check if qualifies for: Child tax credit | Credit for other dependents |
|---|---|---|---|---|
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |

If more than four dependents, see instructions and check here ☐

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

| | | |
|---|---|---|
| 1a | Total amount from Form(s) W-2, box 1 (see instructions) | 1a |
| b | Household employee wages not reported on Form(s) W-2 | 1b |
| c | Tip income not reported on line 1a (see instructions) | 1c |
| d | Medicaid waiver payments not reported on Form(s) W-2 (see instructions) | 1d |
| e | Taxable dependent care benefits from Form 2441, line 26 | 1e |
| f | Employer-provided adoption benefits from Form 8839, line 29 | 1f |
| g | Wages from Form 8919, line 6 | 1g |
| h | Other earned income (see instructions) | 1h |
| i | Nontaxable combat pay election (see instructions) ... 1i | |
| z | Add lines 1a through 1h | 1z |

| 2a | Tax-exempt interest | 2a | | b Taxable interest | 2b |
| 3a | Qualified dividends | 3a | | b Ordinary dividends | 3b |
| 4a | IRA distributions | 4a | | b Taxable amount | 4b |
| 5a | Pensions and annuities | 5a | | b Taxable amount | 5b |
| 6a | Social security benefits | 6a | | b Taxable amount | 6b |
| c | If you elect to use the lump-sum election method, check here ☐ | | | |
| 7 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ☐ | | 7 | |

If you did not get a Form W-2, see instructions.

Attach Sch. B if required.

**Standard Deduction for—**
- Single or Married filing separately, $13,850
- Married filing jointly or Qualifying surviving spouse, $27,700
- Head of household, $20,800
- If you checked any box under Standard Deduction, see instructions.

| 8 | Additional income from Schedule 1, line 10 | 8 | (11,948) |
| 9 | Add lines 1z, 2b, 3b, 4b, 5b, 6b, 7, and 8. This is your **total income** | 9 | (11,948) |
| 10 | Adjustments to income from Schedule 1, line 26 | 10 | |
| 11 | Subtract line 10 from line 9. This is your **adjusted gross income** | 11 | (11,948) |
| 12 | Standard deduction or itemized deductions (from Schedule A) | 12 | 13,850 |
| 13 | Qualified business income deduction from Form 8995 or Form 8995-A | 13 | |
| 14 | Add lines 12 and 13 | 14 | 13,850 |
| 15 | Subtract line 14 from line 11. If zero or less, enter -0-. This is your **taxable income** | 15 | 0 |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions. — Form **1040** (2023)

EEA

FGN: 000948641001

LINH TRAN STEPHENS
Date of Mailing:

### Request for Administrative Review of Bank Levy

*If you disagree with this levy, you have 15 days from the date of mailing to return this form*. You may return this form by email, fax, or mail to the office listed below. Your request for a review must be made in writing. **CSS will not review the action over the telephone.**
Return this form to CSS at the address below if you believe that:
- you are not the person ordered to pay support in this case;
- you do not owe three months of past-due child support;
- the amount taken by the levy is more than you owe; or
- any reason that would legally justify release of the levy.

We may need additional information from you. Please tell us how to contact you:

| | |
|---|---|
| **Linh Tran Stephens** | **x5094** |
| Name | Social Security Number |
| **8214 E 111th PL S Unit 100** | **817-631-3223 (cell)** |
| Street Address | Phone |
| **Bixby,**            **OK**    **74008-2452** | N/A |
| City            State    Zip | Work Phone |

[X] The amount of past-due support I owe is $ 0.00 (zero)             (attach documents, including payment receipts, in support of your claim); or

[ ] The seized funds should not be levied because they do not belong to me. (Explain your claim below and attach paperwork to help prove your claim, such as bank statements, conservator papers, trust papers or other proof that the money does not belong to you.)

Explain: child support orders were unlawful, abuse of discretions where discretions not allowed, imputed income without just cause failing laws for imputation; without proper jurisdiction; without equal protection rights, and malicious, ignoring actual incomes and tax paperwork; SEE ATTACHED LETTER dated 04/21/2024 "DEMAND FOR JUSTICE AND ADMINISTRATIVE REVIEW RE: LEVYING BANKS AND CURRENT CHILD SUPPORT AMOUNT; DEMAND TO CEASE AND DESIST" for actual extensive details. I am deemed indigent by superior courts of Oklahoma Supreme Court, Federal Court Northern District of Oklahoma, also by David L Moss Criminal Justice Center; I met undue hardship exemption criteria; my tax returns since 2021 including 2023 were all below poverty line and mostly below zero dollars. It is to my belief and information that the Oklahoma child support order and demand for payment is a rush to judgment into a default judgment, and both are a violation of my constitutionally protected rights. Please validate this alleged claim against me by having it signed by a man or woman and notarized under a penalty of perjury and send the sealed original to me.

Return To: CSS
              3666 N PEORIA AVE
              PO BOX 27068
              TULSA, OK 74149

                   (918) 295-3500
              FAX: (918) 430-2364
                   OCSS.CONTACT.TULSAEAST@OKDHS.ORG
                                     2

CSF02 v9          U82539/TUE      Pkg 2024040908075700-001

055

# EXHIBIT 03



**OKLAHOMA DEPARTMENT OF HUMAN SERVICES**
**OKLAHOMA CHILD SUPPORT SERVICES**
**Center for Coordinated Programs**
P.O. Box 248822
Oklahoma City, OK 73124
Customer Assistance: 1-800-522-2922
FAX (405)-522-4570

*www.okdhs.org*



April 9, 2024

Mary Johnmeyer
Charles Schwab and Co., Inc.
Legal Services
3000 Schwab Way
Westlake TX 73136

Re: Obligor Linh Stephens, Oklahoma case number 948641001, Charles Schwab
account number █████2605.

Dear Ms. Johnmeyer

Please liquidate assets belonging to Mrs. Stephens to satisfy our financial institution
levy action. Please begin by liquidating the assets found in account number █████2605
in alphabetical order until Mrs Stephens' child support obligation has been met or until
no funds are available.

Thank you for your assistance with this matter.

If you have any questions you may contact me at (405) 982-1530.

Sincerely,

Jason Hoenshell
Oklahoma FIDM Coordinator
PO Box 248822
Oklahoma City OK 73124



# EXHIBIT 04

CSS
3666 N PEORIA AVE
PO BOX 27068
TULSA, OK 74149

State of Oklahoma
Oklahoma Human Services
Child Support Services
oklahoma.gov/okdhs
www.okbenefits.org
(918) 295-3500
FAX: (918) 430-2364

Date of Mailing: 04/24/24
FGN: 000948641001

TO:  LINH TRAN STEPHENS

### Notice of Administrative Review Decision - Levy

Child Support Services (CSS) has reviewed the levy of your account(s). The following decision was made:

☒ **No change is necessary. The levy will remain in effect.**

☐ **The levy is released in full.**

☐ **The levy is partially released. The levy will remain in effect for $_____.**

Even if the levy is released, you still owe any unpaid child support. CSS may levy your account in the future as long as you owe child support or interest.

**If you do not agree with this decision, you must make a written request for a hearing to the child support office indicated below within twenty (20) days of the date of this notice.**

The request for a hearing may be submitted by email, fax, or mail to the office listed below. If you fail to request a hearing within 20 days, you waive your right to a hearing and this decision shall stand as the final agency determination.

*Emmalene Stringer*
**EMMALENE STRINGER**
OBA No. 31690
State's Attorney
OKDHS, CSS
CSS
3666 N PEORIA AVE
PO BOX 27068
TULSA, OK 74149
(918) 295-3500
Fax: (918) 430-2364
OCSS.CONTACT.TULSAEAST@OKDHS.ORG

CSF08 v8        U82539/TUE        Pkg 2024042408062805-001

059

# EXHIBIT 05

DocuSign Envelope ID: 5444D78C-558F-48D1-8677-F5AFF454656F



**GWY ᎠᎦᏍᏛ**
# CHEROKEE NATION®

P.O. Box 948 • Tahlequah, OK 74465-0948
918-453-5000 • www.cherokee.org

Office of the Chief

**Chuck Hoskin Jr.**
*Principal Chief*

**Bryan Warner**
*Deputy Principal Chief*

August 12, 2020

Linh Stephens
✖✖✖✖✖✖✖✖✖✖✖
Tulsa, OK ✖✖✖✖✖

Dr. Stephens,

This letter is to provide notice that Cherokee Nation will not renew your agreement at the end of the term. Article VII, Section A. and Article VIII, Section B. allows for non-renewal at the end of the term of the agreement by 30 days notice. The end of the term of your agreement is September 30, 2020. Effective August 13, 2020 you will be placed on administrative leave through September 30, 2020. You will continue to receive any compensation due to you according to your agreement through the end of the term. Your remaining annual leave balance on September 30, 2020 will be paid to you after the term of your agreement. We appreciate your time and contribution to Cherokee Nation Health Services.

Sincerely,

DocuSigned by:

*R. Stephen Jones DDS*

FD020D4B7D48440

R. Stephen Jones
Executive Director
Cherokee Nation Health Services

cc:    file

EXHIBIT #18
Page 1 of 1

From: **Lincoln Financial Corporation** DoNotReply@lfg.com
Subject: **Online Lincoln Retirement Statements Available**
Date: **Jul 7, 2020 at 21:36:23**
To: **linhstephens7@gmail.com**

Click here

?

Your quarterly retirement
plan statement is now
available.

**LOG IN NOW**

## Keeping track of your account balance can help make sure you're on the path to the retirement you envision.

Log in to LincolnFinancial.com/Retirement today to check your account progress. Complete these steps for each plan:

• Select **View Statements**.
• Select a quarterly statement from the list.

## Are you saving enough for retirement?

Log in and use the retirement income estimator to see if you're on track to reach your goals.

## View our annual privacy notice

To view our current privacy notice, visit LincolnFinancial.com/Privacy and select **Online privacy policy**.

**Please note:** Because you elected to receive statements through eDelivery, you won't receive a

062

From: **Cherokee Tehee** cherokee-tehee@cherokee.org
Subject: **RE: <EXTERNAL>  Re: Linh Stephens 401k**
Date: **Oct 7, 2020 at 09:38:20**
To: **Linh Stephens** linhstephens7@gmail.com

Hello Linh!
We have sent it to Lincoln Financial.  You will need to contact Lincoln Financial 1 800 234 3500
Thank You! Have a Great Day!

**From:** Linh Stephens <linhstephens7@gmail.com>
**Sent:** Tuesday, October 6, 2020 7:41 PM
**To:** Cherokee Tehee <cherokee-tehee@cherokee.org>
**Cc:** Husband X████h H███████████████
**Subject:** <EXTERNAL> Re: Linh Stephens 401k

I'm checking on the status of my CN 401k to "rollover IRA" in Charles Schwab because the money still hasn't transferred yet.

Thank you.


On Sep 28, 2020, at 17:11, H█, X██████████████ wrote:


For clarification, please proceed with sending all of Linh's 401k money from Linhcoln Financial over to Schwab 401k rollover IRA. The only part that I took care of was changing Linh's contribution to 0% for her last pay check.

12/3/21, 10:56 AM                                      Payment Information

 **OKLAHOMA**
w w w . o k . g o v

**Oklahoma Employment Security Commission** 

Payment Information

ClaimID:595792791    Page:P5.7

| Week-date-end | Amount Paid | | Amount Deductible | | Total Weekly Benefits |
|---|---|---|---|---|---|
| 6/26/2021 | 274.00 | + | 380.00 | = | 654.00 |
| 6/19/2021 | 730.00 | + | 109.00 | = | 839.00 |
| 6/12/2021 | 291.00 | + | 548.00 | = | 839.00 |
| 6/5/2021 | 561.00 | + | 278.00 | = | 839.00 |
| 5/29/2021 | 0 | + | 0 | = | 0 |
| 5/22/2021 | 421.00 | + | 418.00 | = | 839.00 |
| 5/15/2021 | 0 | + | 0 | = | 0 |
| 5/8/2021 | 730.00 | + | 109.00 | = | 839.00 |
| 5/1/2021 | 448.00 | + | 391.00 | = | 839.00 |
| 4/24/2021 | 556.00 | + | 283.00 | = | 839.00 |
| 4/17/2021 | 387.00 | + | 452.00 | = | 839.00 |
| 4/10/2021 | 558.00 | + | 281.00 | = | 839.00 |
| 4/3/2021 | 338.00 | + | 501.00 | = | 839.00 |
| 3/27/2021 | 730.00 | + | 109.00 | = | 839.00 |
| 3/20/2021 | 0 | + | 0 | = | 0 |
| 3/13/2021 | 462.00 | + | 377.00 | = | 839.00 |
| 3/6/2021 | 394.00 | + | 445.00 | = | 839.00 |
| 2/27/2021 | 730.00 | + | 109.00 | = | 839.00 |
| 2/20/2021 | 730.00 | + | 109.00 | = | 839.00 |
| 2/13/2021 | 730.00 | + | 109.00 | = | 839.00 |
| 2/6/2021 | 326.00 | + | 513.00 | = | 839.00 |
| 1/30/2021 | 0 | + | 0 | = | 0 |
| 1/23/2021 | 300.00 | + | 539.00 | = | 839.00 |
| 1/16/2021 | 431.00 | + | 408.00 | = | 839.00 |
| 1/9/2021 | 730.00 | + | 109.00 | = | 839.00 |
| 1/2/2021 | 543.00 | + | 296.00 | = | 839.00 |
| 12/26/2020 | 469.00 | + | 70.00 | = | 539.00 |
| 12/19/2020 | 469.00 | + | 70.00 | = | 539.00 |
| 12/12/2020 | 469.00 | + | 70.00 | = | 539.00 |
| 12/5/2020 | 282.00 | + | 257.00 | = | 539.00 |
| 11/28/2020 | 469.00 | + | 70.00 | = | 539.00 |
| 11/21/2020 | 164.00 | + | 375.00 | = | 539.00 |
| 11/14/2020 | 469.00 | + | 70.00 | = | 539.00 |
| 11/7/2020 | 469.00 | + | 70.00 | = | 539.00 |
| 10/31/2020 | 184.00 | + | 355.00 | = | 539.00 |
| 10/24/2020 | 144.00 | + | 395.00 | = | 539.00 |
| 10/17/2020 | 469.00 | + | 70.00 | = | 539.00 |
| 10/10/2020 | 469.00 | + | 70.00 | = | 539.00 |
| 10/3/2020 | 0 | + | 0 | = | 0 |

Return to Menu    Return to Previous Page



Form **1040**  Department of the Treasury-Internal Revenue Service
**U.S. Individual Income Tax Return** **2022**  OMB No. 1545-0074   IRS Use Only-Do not write or staple in this space.

**Filing Status**
Check only one box.
☐ Single  ☐ Married filing jointly  ☒ Married filing separately (MFS)  ☐ Head of household (HOH)  ☐ Qualifying surviving spouse (QSS)

If you checked the MFS box, enter the name of your spouse. If you checked the HOH or QSS box, enter the child's name if the qualifying person is a child but not your dependent: X███████ █

| Your first name and middle initial | Last name | | Your social security number |
|---|---|---|---|
| **Linh T** | **Stephens** | | XXX-XX-**5094** |
| If joint return, spouse's first name and middle initial | Last name | | Spouse's social security number |
| | | | XXX-XX-████ |

Home address (number and street). If you have a P.O. box, see instructions.   Apt. no.

**8214 E 111th PL S Unit 100**

City, town, or post office. If you have a foreign address, also complete spaces below.   State   ZIP code

**Bixby**   **OK**   **74008-2452**

Foreign country name   Foreign province/state/county   Foreign postal code

**Presidential Election Campaign**
Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund.
☐ You  ☐ Spouse

**Digital Assets**  At any time during 2022, did you: (a) receive (as a reward, award, or payment for property or services); or (b) sell, exchange, gift, or otherwise dispose of a digital asset (or a financial interest in a digital asset)? (See instructions.)  ☐ Yes  ☒ No

**Standard Deduction**
Someone can claim:  ☐ You as a dependent  ☐ Your spouse as a dependent
☐ Spouse itemizes on a separate return or you were a dual-status alien

**Age/Blindness**  You:  ☐ Were born before January 2, 1958  ☐ Are blind  Spouse:  ☐ Was born before January 2, 1958  ☐ Is blind

**Dependents** (see instructions):
If more than four dependents, see instructions and check here ☐

| (1) First name   Last name | (2) Social security number | (3) Relationship to you | (4) Check if qualifies for (see instructions): |
|---|---|---|---|
| | | | Child tax credit ☐   Credit for other dependents ☐ |
| | | | ☐   ☐ |
| | | | ☐   ☐ |
| | | | ☐   ☐ |

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a Form W-2, see instructions.

| | | | |
|---|---|---|---|
| 1a | Total amount from Form(s) W-2, box 1 (see instructions) | 1a | |
| b | Household employee wages not reported on Form(s) W-2 | 1b | |
| c | Tip income not reported on line 1a (see instructions) | 1c | |
| d | Medicaid waiver payments not reported on Form(s) W-2 (see instructions) | 1d | |
| e | Taxable dependent care benefits from Form 2441, line 26 | 1e | |
| f | Employer-provided adoption benefits from Form 8839, line 29 | 1f | |
| g | Wages from Form 8919, line 6 | 1g | |
| h | Other earned income (see instructions) | 1h | |
| i | Nontaxable combat pay election (see instructions) | 1i | |
| z | Add lines 1a through 1h | 1z | |

Attach Sch. B if required.

| | | | | | |
|---|---|---|---|---|---|
| 2a | Tax-exempt interest | 2a | b Taxable interest | 2b | 1 |
| 3a | Qualified dividends | 3a | 13 | b Ordinary dividends | 3b | 13 |
| 4a | IRA distributions | 4a | b Taxable amount | 4b | |
| 5a | Pensions and annuities | 5a | b Taxable amount | 5b | |
| 6a | Social security benefits | 6a | b Taxable amount | 6b | |
| c | If you elect to use the lump-sum election method, check here (see instructions) ☐ | | | | |

**Standard Deduction for-**
- Single or Married filing separately, $12,950
- Married filing jointly or Qualifying surviving spouse, $25,900
- Head of household, $19,400
- If you checked any box under Standard Deduction, see instructions.

| | | | |
|---|---|---|---|
| 7 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ☐ | 7 | 3,496 |
| 8 | Other income from Schedule 1, line 10 | 8 | (15,673) |
| 9 | Add lines 1z, 2b, 3b, 4b, 5b, 6b, 7, and 8. This is your **total income** | 9 | (12,163) |
| 10 | Adjustments to income from Schedule 1, line 26 | 10 | |
| 11 | Subtract line 10 from line 9. This is your **adjusted gross income** | 11 | (12,163) |
| 12 | **Standard deduction or itemized deductions** (from Schedule A) | 12 | 12,950 |
| 13 | Qualified business income deduction from Form 8995 or Form 8995-A | 13 | |
| 14 | Add lines 12 and 13 | 14 | 12,950 |
| 15 | Subtract line 14 from line 11. If zero or less, enter -0-. This is your **taxable income** | 15 | 0 |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.   Form **1040** (2022)
EEA

| SCHEDULE C (Form 1040) | Profit or Loss From Business | OMB No. 1545-0074 |
|---|---|---|
| Department of the Treasury Internal Revenue Service | (Sole Proprietorship) Go to *www.irs.gov/ScheduleC* for instructions and the latest information. Attach to Form 1040, 1040-SR, 1040-NR, or 1041; partnerships must generally file Form 1065. | **2022** Attachment Sequence No. **09** |

| Name of proprietor | Social security number (SSN) |
|---|---|
| Linh T Stephens | XXX-XX-5094 |

**A** Principal business or profession, including product or service (see instructions)
Medical Office

**B** Enter code from instructions
621111

**C** Business name. If no separate business name, leave blank.
Peace Joy Clinic PLLC

**D** Employer ID number (EIN) (see instr.)
85-3690068

**E** Business address (including suite or room no.)  8214 E 111th PL S Untie 100
City, town or post office, state, and ZIP code  Bixby, OK 74008-2452

**F** Accounting method:  (1) [X] Cash  (2) [ ] Accrual  (3) [ ] Other (specify)

**G** Did you "materially participate" in the operation of this business during 2022? If "No," see instructions for limit on losses . . . . .  [X] Yes  [ ] No

**H** If you started or acquired this business during 2022, check here . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ [ ]

**I** Did you make any payments in 2022 that would require you to file Form(s) 1099? See instructions . . . . . . . . . . . [ ] Yes  [X] No

**J** If "Yes," did you or will you file required Form(s) 1099? . . . . . . . . . . . . . . . . . . . . . . . . . . . . [ ] Yes  [ ] No

## Part I   Income

| | | | |
|---|---|---|---|
| 1 | Gross receipts or sales. See instructions for line 1 and check the box if this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked . . . . . . . . . ▶ [ ] | 1 | 8,485 |
| 2 | Returns and allowances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 | 0 |
| 3 | Subtract line 2 from line 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 | 8,485 |
| 4 | Cost of goods sold (from line 42) . . . . . . . . . . . . . . . . . . . . . . . . . | 4 | |
| 5 | **Gross profit.** Subtract line 4 from line 3 . . . . . . . . . . . . . . . . . . . . . | 5 | 8,485 |
| 6 | Other income, including federal and state gasoline or fuel tax credit or refund (see instructions) . . . . . . . | 6 | |
| 7 | **Gross income.** Add lines 5 and 6 . . . . . . . . . . . . . . . . . . . . . . . . ▶ | 7 | 8,485 |

## Part II   Expenses. Enter expenses for business use of your home **only** on line 30.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 8 | Advertising | 8 | 5,033 | 18 | Office expense (see instructions) . . | 18 | |
| 9 | Car and truck expenses (see instructions) . . . . | 9 | | 19 | Pension and profit-sharing plans . . | 19 | |
| | | | | 20 | Rent or lease (see instructions): | | |
| 10 | Commissions and fees . . . | 10 | | a | Vehicles, machinery, and equipment . . | 20a | |
| 11 | Contract labor (see instructions) | 11 | | b | Other business property . . . . | 20b | 6,000 |
| 12 | Depletion . . . . | 12 | | 21 | Repairs and maintenance . . . . | 21 | |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see instructions) . . . . | 13 | | 22 | Supplies (not included in Part III) . . | 22 | 8,521 |
| | | | | 23 | Taxes and licenses . . . . . . | 23 | 465 |
| | | | | 24 | Travel and meals: | | |
| 14 | Employee benefit programs (other than on line 19) . . | 14 | | a | Travel . . . . . . . . . | 24a | |
| 15 | Insurance (other than health) | 15 | 2,827 | b | Deductible meals (see instructions) . . . . . . . | 24b | |
| 16 | Interest (see instructions): | | | 25 | Utilities . . . . . . . . . | 25 | |
| a | Mortgage (paid to banks, etc.) | 16a | | 26 | Wages (less employment credits) . | 26 | |
| b | Other . . . . . . | 16b | | 27a | Other expenses (from line 48) . . | 27a | 2,363 |
| 17 | Legal and professional services | 17 | 380 | b | Reserved for future use . . . . | 27b | |

| 28 | **Total expenses** before expenses for business use of home. Add lines 8 through 27a . . . . . . . . . ▶ | 28 | 25,589 |
|---|---|---|---|
| 29 | Tentative profit or (loss). Subtract line 28 from line 7 . . . . . . . . . . . . . . . . . . . . | 29 | (17,104) |
| 30 | Expenses for business use of your home. Do not report these expenses elsewhere. Attach Form 8829 unless using the simplified method. See instructions. **Simplified method filers only:** Enter the total square footage of (a) your home: _____ and (b) the part of your home used for business: _____ . Use the Simplified Method Worksheet in the instructions to figure the amount to enter on line 30 . . . . . . . . . . . . . . | 30 | |
| 31 | **Net profit or (loss).** Subtract line 30 from line 29. ● If a profit, enter on both **Schedule 1 (Form 1040), line 3,** and on **Schedule SE, line 2.** (If you checked the box on line 1, see instructions.) Estates and trusts, enter on **Form 1041, line 3.** ● If a loss, you **must** go to line 32. | 31 | (17,104) |

**32** If you have a loss, check the box that describes your investment in this activity. See instructions.
● If you checked 32a, enter the loss on both **Schedule 1 (Form 1040), line 3,** and on **Schedule SE, line 2.** (If you checked the box on line 1, see the line 31 instructions.) Estates and trusts, enter on **Form 1041, line 3.**
● If you checked 32b, you **must** attach **Form 6198.** Your loss may be limited.

32a [X] All investment is at risk.
32b [ ] Some investment is not at risk.

For Paperwork Reduction Act Notice, see the separate instructions.    Schedule C (Form 1040) 2022
EEA

Schedule C (Form 1040) 2022          **Medical Office 621111**                                                      Page **2**

| Name(s) | SSN |
|---|---|
| Linh T Stephens | XXX-XX-5094 |

| Part III | Cost of Goods Sold (see instructions) |
|---|---|

**33** Method(s) used to
value closing inventory:   **a** ☐ Cost   **b** ☐ Lower of cost or market   **c** ☐ Other (attach explanation)

**34** Was there any change in determining quantities, costs, or valuations between opening and closing inventory?
If "Yes," attach explanation · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ☐ **Yes**      ☐ **No**

| | | | |
|---|---|---|---|
| **35** | Inventory at beginning of year.  If different from last year's closing inventory, attach explanation · · · · · | **35** | |
| **36** | Purchases less cost of items withdrawn for personal use · · · · · · · · · · · · · · | **36** | |
| **37** | Cost of labor.  Do not include any amounts paid to yourself · · · · · · · · · · · · · | **37** | |
| **38** | Materials and supplies · · · · · · · · · · · · · · · · · · · · · · · · · · · · | **38** | |
| **39** | Other costs · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · | **39** | |
| **40** | Add lines 35 through 39 · · · · · · · · · · · · · · · · · · · · · · · · · · · | **40** | |
| **41** | Inventory at end of year · · · · · · · · · · · · · · · · · · · · · · · · · · · | **41** | |
| **42** | **Cost of goods sold.**  Subtract line 41 from line 40. Enter the result here and on line 4 · · · · · · · · | **42** | |

| Part IV | Information on Your Vehicle. Complete this part **only** if you are claiming car or truck expenses on line 9 and are not required to file Form 4562 for this business.  See the instructions for line 13 to find out if you must file Form 4562. |
|---|---|

**43** When did you place your vehicle in service for business purposes?  (month/day/year) _____

**44** Of the total number of miles you drove your vehicle during 2022, enter the number of miles you used your vehicle for:

**a** Business _____ **b** Commuting (see instructions) _____ **c** Other _____

**45** Was your vehicle available for personal use during off-duty hours? · · · · · · · · · · · · · · · · · ☐ **Yes**      ☐ **No**

**46** Do you (or your spouse) have another vehicle available for personal use? · · · · · · · · · · · · · · ☐ **Yes**      ☐ **No**

**47a** Do you have evidence to support your deduction? · · · · · · · · · · · · · · · · · · · · · ☐ **Yes**      ☐ **No**

**b** If "Yes," is the evidence written? · · · · · · · · · · · · · · · · · · · · · · · · · · ☐ **Yes**      ☐ **No**

| Part V | Other Expenses. List below business expenses not included on lines 8-26 or line 30. |
|---|---|

| | |
|---|---|
| Software | 230 |
| Credit Card Fees | 717 |
| Small Tool | 669 |
| Postage | 60 |
| Labs | 501 |
| Credit Card Fees to gross up | 186 |
| | |
| | |
| | |

| **48** | Total other expenses. Enter here and on line 27a · · · · · · · · · · · · · · · · · · | **48** | **2,363** |
|---|---|---|---|

EEA                                                                                                      Schedule C (Form 1040) 2022

Client Copy

# Form 1040

Department of the Treasury–Internal Revenue Service

## U.S. Individual Income Tax Return 2023

OMB No. 1545-0074    IRS Use Only-Do not write or staple in this space.

For the year Jan. 1–Dec. 31, 2023, or other tax year beginning _____, 2023, ending _____    See separate instructions.

| | |
|---|---|
| Your first name and middle initial | Last name |
| Linh T | Stephens |

Your social security number: XXX–XX–XXXX

If joint return, spouse's first name and middle initial / Last name

Spouse's social security number: XXX–XX–XXXX

Home address (number and street). If you have a P.O. box, see instructions.    Apt. no.

8214 E 111th PL S Unit 100

**Presidential Election Campaign**
Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund.

City, town, or post office. If you have a foreign address, also complete spaces below.    State    ZIP code

Bixby    OK    74008–2452

☐ You    ☐ Spouse

Foreign country name    Foreign province/state/county    Foreign postal code

**Filing Status**
Check only one box.

☐ Single
☐ Married filing jointly (even if only one had income)
☒ Married filing separately (MFS)
☐ Head of household (HOH)
☐ Qualifying surviving spouse (QSS)

If you checked the MFS box, enter the name of your spouse. If you checked the HOH or QSS box, enter the child's name if the qualifying person is a child but not your dependent: XXXXX B

**Digital Assets**
At any time during 2023, did you: (a) receive (as a reward, award, or payment for property or services); or (b) sell, exchange, or otherwise dispose of a digital asset (or a financial interest in a digital asset)? (See instructions.)    ☐ Yes    ☒ No

**Standard Deduction**
Someone can claim: ☐ You as a dependent    ☐ Your spouse as a dependent
☐ Spouse itemizes on a separate return or you were a dual-status alien

**Age/Blindness**    You: ☐ Were born before January 2, 1959    ☐ Are blind    Spouse: ☐ Was born before January 2, 1959    ☐ Is blind

**Dependents** (see instructions):
If more than four dependents, see instructions and check here ☐

| (1) First name    Last name | (2) Social security number | (3) Relationship to you | (4) Check if qualifies for (see instructions): |
|---|---|---|---|
| | | | Child tax credit ☐    Credit for other dependents ☐ |
| | | | ☐    ☐ |
| | | | ☐    ☐ |
| | | | ☐    ☐ |

## Income

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a Form W-2, see instructions.

Attach Sch. B if required.

**Standard Deduction for—**
• Single or Married filing separately, $13,850
• Married filing jointly or Qualifying surviving spouse, $27,700
• Head of household, $20,800
• If you checked any box under Standard Deduction, see instructions.

| | | |
|---|---|---|
| 1a | Total amount from Form(s) W-2, box 1 (see instructions) | 1a |
| b | Household employee wages not reported on Form(s) W-2 | 1b |
| c | Tip income not reported on line 1a (see instructions) | 1c |
| d | Medicaid waiver payments not reported on Form(s) W-2 (see instructions) | 1d |
| e | Taxable dependent care benefits from Form 2441, line 26 | 1e |
| f | Employer-provided adoption benefits from Form 8839, line 29 | 1f |
| g | Wages from Form 8919, line 6 | 1g |
| h | Other earned income (see instructions) | 1h |
| i | Nontaxable combat pay election (see instructions)    1i | |
| z | Add lines 1a through 1h | 1z |
| 2a | Tax-exempt interest    2a | b Taxable interest    2b |
| 3a | Qualified dividends    3a | b Ordinary dividends    3b |
| 4a | IRA distributions    4a | b Taxable amount    4b |
| 5a | Pensions and annuities    5a | b Taxable amount    5b |
| 6a | Social security benefits    6a | b Taxable amount    6b |
| c | If you elect to use the lump-sum election method, check here (see instructions)    ☐ | |
| 7 | Capital gain or (loss). Attach Schedule D if required. If not required, check here    ☐ | 7 |
| 8 | Additional income from Schedule 1, line 10 | 8    (11,948) |
| 9 | Add lines 1z, 2b, 3b, 4b, 5b, 6b, 7, and 8. This is your **total income** | 9    (11,948) |
| 10 | Adjustments to income from Schedule 1, line 26 | 10 |
| 11 | Subtract line 10 from line 9. This is your **adjusted gross income** | 11    (11,948) |
| 12 | **Standard deduction or itemized deductions** (from Schedule A) | 12    13,850 |
| 13 | Qualified business income deduction from Form 8995 or Form 8995-A | 13 |
| 14 | Add lines 12 and 13 | 14    13,850 |
| 15 | Subtract line 14 from line 11. If zero or less, enter -0-. This is your **taxable income** | 15    0 |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.

EEA

Form **1040** (2023)

**SCHEDULE C**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service

# Profit or Loss From Business
### (Sole Proprietorship)

Attach to Form 1040, 1040-SR, 1040-SS, 1040-NR, or 1041; partnerships must generally file Form 1065.

Go to *www.irs.gov/ScheduleC* for instructions and the latest information.

OMB No. 1545-0074

**2023**

Attachment
Sequence No. **09**

Name of proprietor

**Linh T Stephens**

Social security number (SSN)

**XXX-XX-XXXX**

| | | |
|---|---|---|
| A | Principal business or profession, including product or service (see instructions) | B Enter code from instructions |
| | **Medical Office** | |
| C | Business name. If no separate business name, leave blank. | D Employer ID number (EIN) (see instr.) |
| | **Peace Joy Clinic PLLC** | XXXXXX |
| E | Business address (including suite or room no.) ▶ **8214 E 111th PL S Untie 100** | |
| | City, town or post office, state, and ZIP code **Bixby, OK 74008-2452** | |

F  Accounting method: **(1)** [X] Cash  **(2)** [ ] Accrual  **(3)** [ ] Other (specify) ▶

G  Did you "materially participate" in the operation of this business during 2023? If "No," see instructions for limit on losses . . . . . [X] Yes  [ ] No

H  If you started or acquired this business during 2023, check here . . . . . . . . . . . . . . . . . . . ▶ [ ]

I  Did you make any payments in 2023 that would require you to file Form(s) 1099? See instructions . . . . . . . . . . [ ] Yes  [X] No

J  If "Yes," did you or will you file required Form(s) 1099? . . . . . . . . . . . . . . . . . . . . . . [ ] Yes  [ ] No

## Part I    Income

| | | | |
|---|---|---|---:|
| 1 | Gross receipts or sales. See instructions for line 1 and check the box if this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked . . . . . . . . . . . ▶ [ ] | 1 | 5,592 |
| 2 | Returns and allowances . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 | 0 |
| 3 | Subtract line 2 from line 1 . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 | 5,592 |
| 4 | Cost of goods sold (from line 42) . . . . . . . . . . . . . . . . . . . . . . . | 4 | |
| 5 | **Gross profit.** Subtract line 4 from line 3 . . . . . . . . . . . . . . . . . . . . | 5 | 5,592 |
| 6 | Other income, including federal and state gasoline or fuel tax credit or refund (see instructions) . . . . . . | 6 | |
| 7 | **Gross income.** Add lines 5 and 6 . . . . . . . . . . . . . . . . . . . . . . ▶ | 7 | 5,592 |

## Part II    Expenses. Enter expenses for business use of your home **only** on line 30.

| | | | | | | | |
|---|---|---:|---|---|---|---|---:|
| 8 | Advertising | 8 | 439 | 18 | Office expense (see instructions) . . | 18 | |
| 9 | Car and truck expenses (see instructions) . . . . . | 9 | | 19 | Pension and profit-sharing plans . . | 19 | |
| | | | | 20 | Rent or lease (see instructions): | | |
| 10 | Commissions and fees . . . | 10 | | a | Vehicles, machinery, and equipment . | 20a | |
| 11 | Contract labor (see instructions) | 11 | | b | Other business property . . . . . | 20b | 6,500 |
| 12 | Depletion . . . . . . | 12 | | 21 | Repairs and maintenance . . . . | 21 | |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see instructions) . . . . . . . | 13 | | 22 | Supplies (not included in Part III) . . | 22 | 3,852 |
| | | | | 23 | Taxes and licenses . . . . . . | 23 | 408 |
| | | | | 24 | Travel and meals: | | |
| 14 | Employee benefit programs (other than on line 19) . . | 14 | | a | Travel . . . . . . . . . . | 24a | |
| | | | | b | Deductible meals (see instructions) | 24b | |
| 15 | Insurance (other than health) | 15 | 4,070 | 25 | Utilities . . . . . . . . . | 25 | 339 |
| 16 | Interest (see instructions): | | | 26 | Wages (less employment credits) | 26 | |
| a | Mortgage (paid to banks, etc.) | 16a | | 27a | Other expenses (from line 48) . . . | 27a | 1,732 |
| b | Other . . . . . . . . . | 16b | | b | Energy efficient commercial bldgs deduction (attach Form 7205) . . | 27b | |
| 17 | Legal and professional services | 17 | 200 | | | | |
| 28 | **Total expenses** before expenses for business use of home. Add lines 8 through 27b . . . . . . . . . . ▶ | | | | | 28 | 17,540 |
| 29 | Tentative profit or (loss). Subtract line 28 from line 7 . . . . . . . . . . . . . . . . . . . . | | | | | 29 | (11,948) |

30  Expenses for business use of your home. Do not report these expenses elsewhere. Attach Form 8829
unless using the simplified method. See instructions.

**Simplified method filers only:** Enter the total square footage of (a) your home:

and (b) the part of your home used for business:                     . Use the Simplified

Method Worksheet in the instructions to figure the amount to enter on line 30 . . . . . . . . . . . . | 30 |

31  **Net profit or (loss).** Subtract line 30 from line 29.

• If a profit, enter on both **Schedule 1 (Form 1040), line 3,** and on **Schedule SE, line 2.** (If you
checked the box on line 1, see instructions). Estates and trusts, enter on **Form 1041, line 3.**   ▶ | 31 | (11,948)

• If a loss, you **must** go to line 32.

32  If you have a loss, check the box that describes your investment in this activity. See instructions.

• If you checked 32a, enter the loss on both **Schedule 1 (Form 1040), line 3,** and on **Schedule
SE, line 2.** (If you checked the box on line 1, see the line 31 instructions.) Estates and trusts, enter on
**Form 1041, line 3.**

32a [X] All investment is at risk.

• If you checked 32b, you **must** attach Form 6198. Your loss may be limited.

32b [ ] Some investment is not at risk.

**For Paperwork Reduction Act Notice, see the separate instructions.**

Schedule C (Form 1040) 2023

EEA

Schedule C (Form 1040) 2023      **Medical Office 621111**                                    Page **2**

| Name(s) | SSN |
|---|---|
| Linh T Stephens | XXX-XX-XXXX |

**Part III**    **Cost of Goods Sold** (see instructions)

33   Method(s) used to
value closing inventory:    **a** ☐ Cost    **b** ☐ Lower of cost or market    **c** ☐ Other (attach explanation)

34   Was there any change in determining quantities, costs, or valuations between opening and closing inventory?
If "Yes," attach explanation   · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   ☐ Yes     ☐ No

| | | |
|---|---|---|
| 35   Inventory at beginning of year.  If different from last year's closing inventory, attach explanation · · · · · · | **35** | |
| 36   Purchases less cost of items withdrawn for personal use   · · · · · · · · · · · · · · · · | **36** | |
| 37   Cost of labor.  Do not include any amounts paid to yourself   · · · · · · · · · · · · · · · | **37** | |
| 38   Materials and supplies   · · · · · · · · · · · · · · · · · · · · · · · · · · · · | **38** | |
| 39   Other costs   · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · | **39** | |
| 40   Add lines 35 through 39   · · · · · · · · · · · · · · · · · · · · · · · · · · | **40** | |
| 41   Inventory at end of year   · · · · · · · · · · · · · · · · · · · · · · · · · · | **41** | |
| 42   **Cost of goods sold.** Subtract line 41 from line 40. Enter the result here and on line 4 · · · · · · · · | **42** | |

**Part IV**    **Information on Your Vehicle.** Complete this part **only** if you are claiming car or truck expenses on line 9 and
are not required to file Form 4562 for this business.  See the instructions for line 13 to find out if you must file
Form 4562.

43   When did you place your vehicle in service for business purposes?  (month/day/year) _____

44   Of the total number of miles you drove your vehicle during 2023, enter the number of miles you used your vehicle for:

**a**   Business  _____    **b** Commuting (see instructions) _____    **c** Other  _____

45   Was your vehicle available for personal use during off-duty hours?  · · · · · · · · · · · · · · · · · · · · · ·   ☐ Yes     ☐ No

46   Do you (or your spouse) have another vehicle available for personal use?   · · · · · · · · · · · · · · · ·   ☐ Yes     ☐ No

47a   Do you have evidence to support your deduction?  · · · · · · · · · · · · · · · · · · · · · · · · · · ·   ☐ Yes     ☐ No

**b**   If "Yes," is the evidence written?  · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   ☐ Yes     ☐ No

**Part V**    **Other Expenses.** List below business expenses not included on lines 8-26, line 27b, or line 30.

| | |
|---|---|
| Apps/Software | 1,116 |
| Merchant Fees | 616 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| 48   **Total other expenses.** Enter here and on line 27a · · · · · · · · · · · · · · · · · · · · ·   **48** | **1,732** |

# EXHIBIT 06

 **Internal Revenue Service**
United States Department of the Treasury

This Product Contains Sensitive Taxpayer Data

Request Date: 05-07-2024
Response Date: 05-07-2024
Tracking Number: 105948458748

Record of Account

FORM NUMBER: 1040          TAX PERIOD: Dec. 31, 2023

TAXPAYER IDENTIFICATION NUMBER:          XXX-XX-5094

LIN T STEP
8214 E


--- ANY MINUS SIGN SHOWN BELOW SIGNIFIES A CREDIT AMOUNT ---

ACCOUNT BALANCE:          0.00
ACCRUED INTEREST:         0.00          AS OF: May  13, 2024
ACCRUED PENALTY:          0.00          AS OF: May  13, 2024

ACCOUNT BALANCE
  PLUS ACCRUALS
  (this is not a
  payoff amount):     0.00

** INFORMATION FROM THE RETURN OR AS ADJUSTED **

EXEMPTIONS:               01
FILING STATUS:            Married Filing Separate
ADJUSTED GROSS
  INCOME:                 -11,948.00
TAXABLE INCOME:           0.00
TAX PER RETURN:           0.00
SE TAXABLE INCOME
  TAXPAYER:               0.00
SE TAXABLE INCOME
  SPOUSE:                 0.00
TOTAL SELF
  EMPLOYMENT TAX:         0.00

RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER)  Apr. 15, 2024
PROCESSING DATE                                               May  13, 2024

TRANSACTIONS
CODE EXPLANATION OF TRANSACTION          CYCLE     DATE              AMOUNT
150  Tax return filed                    20241703  05-13-2024        $0.00
     14211-517-34065-4

460  Extension of time to file tax return          04-05-2024        $0.00
     ext. Date 10-15-2024

SSN Provided: XXX-XX-5094
Tax Period Ending: Dec. 31, 2023

The following items reflect the amount as shown on the return (PR), and
the amount as adjusted (PC), if applicable.  They do not show subsequent
activity on the account.


SSN: XXX-XX-5094                          SPOUSE SSN:
NAME(S) SHOWN ON RETURN: LIN T STEP

ADDRESS: 8214 E


FILING STATUS:                           Married Filing Separate
FORM NUMBER:                                                 1040
CYCLE POSTED:                                            20241703
RECEIVED DATE:                                      Apr.15, 2024
REMITTANCE:                                                $0.00
EXEMPTION NUMBER:                                              1
DEPENDENT 1 NAME CTRL:
DEPENDENT 1 SSN:
DEPENDENT 2 NAME CTRL:
DEPENDENT 2 SSN:
DEPENDENT 3 NAME CTRL:
DEPENDENT 3 SSN:
DEPENDENT 4 NAME CTRL:
DEPENDENT 4 SSN:
IDENTITY THEFT PERSONAL ID NUMBER:
PTIN:                                               XXX-XX-6716
PREPARER EIN:                                       XX-XXX2201

Income

TOTAL WAGES:.................................................$0.00
FORM W-2 WAGES:..............................................$0.00
TAXABLE INTEREST INCOME: SCH B:.............................$0.00
TAX-EXEMPT INTEREST:........................................$0.00
ORDINARY DIVIDEND INCOME: SCH B:............................$0.00
QUALIFIED DIVIDENDS:........................................$0.00
REFUNDS OF STATE/LOCAL TAXES:...............................$0.00
ALIMONY RECEIVED:...........................................$0.00
BUSINESS INCOME OR LOSS (Schedule C):.................$-11,948.00
BUSINESS INCOME OR LOSS: SCH C PER COMPUTER:.........$-11,948.00
CAPITAL GAIN OR LOSS: (Schedule D):.........................$0.00
CAPITAL GAINS OR LOSS: SCH D PER COMPUTER:..................$0.00
OTHER GAINS OR LOSSES (Form 4797):..........................$0.00
TOTAL IRA DISTRIBUTIONS:....................................$0.00
TAXABLE IRA DISTRIBUTIONS:..................................$0.00
TOTAL PENSIONS AND ANNUITIES:...............................$0.00
TAXABLE PENSION/ANNUITY AMOUNT:.............................$0.00
ADDITIONAL INCOME:...................................$-11,948.00
ADDITIONAL INCOME PER COMPUTER:......................$-11,948.00
REFUNDABLE CREDITS PER COMPUTER:............................$0.00
REFUNDABLE EDUCATION CREDIT PER COMPUTER:...................$0.00
QUALIFIED BUSINESS INCOME DEDUCTION:........................$0.00
RENT/ROYALTY/PARTNERSHIP/ESTATE (Schedule E):...............$0.00
RENT/ROYALTY/PARTNERSHIP/ESTATE (Schedule E) PER COMPUTER:..$0.00
RENT/ROYALTY INCOME/LOSS PER COMPUTER:......................$0.00
ESTATE/TRUST INCOME/LOSS PER COMPUTER:......................$0.00
PARTNERSHIP/S-CORP INCOME/LOSS PER COMPUTER:................$0.00
FARM INCOME OR LOSS (Schedule F):...........................$0.00
FARM INCOME OR LOSS (Schedule F) PER COMPUTER:..............$0.00
UNEMPLOYMENT COMPENSATION:..................................$0.00
TOTAL SOCIAL SECURITY BENEFITS:.............................$0.00
TAXABLE SOCIAL SECURITY BENEFITS:...........................$0.00

State of Oklahoma
# Claim for Credit/Refund of Sales Tax



**FORM 538-S** 2023

| | | | |
|---|---|---|---|
| Taxpayer's Social Security Number: | XXX-XX-XXXX | If died in 2023 or 2024, enter date of death: | |
| Spouse's Social Security Number: | | If died in 2023 or 2024, enter date of death: | |

Instructions on page 3. Please read carefully as an incomplete form may delay your refund.

| Taxpayer's First Name | Middle Initial | Last Name | Spouse's First Name (If a Joint Return) | Middle Initial | Last Name |
|---|---|---|---|---|---|
| LINH | T | STEPHENS | | | |

| Mailing Address (Number and street, including apartment number, or rural route) | City | State | ZIP |
|---|---|---|---|
| 8214 E 111TH PL S UNIT 100 | BIXBY | OK | 74008-2452 |

## PART 1: TAXPAYER INFORMATION

Physical Address in 2023 (If different than shown in mailing address section):

[ ] Place an "X" if you or your spouse have a physical disability constituting a substantial handicap to employment (submit proof)

[ ] Place an "X" if you or your spouse are 65 years of age or over    Oklahoma resident for the entire year?   [X] yes   [ ] no

## PART 2: DEPENDENT  Note: Do not enter the taxpayer or spouse as a dependent.

See Instructions

| 1. Dependents (first name, middle initial, last name) If you have additional dependents, **provide** schedule. | 2. Age | 3. Social Security Number | 4. Relationship | 5. Yearly Income |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

### EXEMPTION INFORMATION QUALIFIED EXEMPTIONS...

| | |
|---|---|
| A. Yourself . . . . . . | 1 |
| B. Spouse . . . . . . | 0 |
| C. Number of dependents . . . . . | 0 |
| D. Total exemptions claimed (add A-C) . . | 1 |

## PART 3: GROSS INCOME: Enter taxable and nontaxable gross income and assistance received by ALL members of your household in the year 2023.

See "Total gross household income" definition on page 3 for examples of income.

**YEARLY INCOME**
YOU MAY NOT ENTER NEGATIVE AMOUNTS.

| | | | |
|---|---|---|---|
| 1 | Enter total wages, salaries, fees, commissions, bonuses, and tips (including **nontaxable** income from your W-2s) . . . . . . . . . . . . . . | 1 | 00 |
| 2 | Enter total interest and dividend income received . . . . . . . . . . . . . . | 2 | 00 |
| 3 | Total of all dependents' income (from Part 2, column 5) . . . . . . . . . | 3 | 00 |
| 4 | Social Security payments (total including Medicare) . . . . . . . . . . | 4 | 00 |
| 5 | Railroad Retirement benefits . . . . . . . . . . . . . . . . . . . | 5 | 00 |
| 6 | Other pensions, annuities and IRAs . . . . . . . . . . . . . . . . | 6 | 00 |
| 7 | Alimony . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7 | 00 |
| 8 | Unemployment benefits . . . . . . . . . . . . . . . . . . . . . . | 8 | 00 |



2023 Form 538-S - Claim for Credit/Refund of Sales Tax - Page 2

| Name(s) Shown on Form 538-S: | Your Social Security Number: |
|---|---|
| LINH          T STEPHENS | XXX-XX-XXXX |

**PART 3: GROSS INCOME:** Enter taxable and nontaxable gross income and assistance received by ALL members of your household in the year 2023.

See "Total gross household income" definition on page 3 for examples of income.

**YEARLY INCOME**
YOU MAY NOT ENTER NEGATIVE AMOUNTS.

| | | | |
|---|---|---|---|
| 9 | Earned Income Credit (EIC) received in 2023 . . . . . . . . . . . . . . . . . | 9 | 00 |
| 10 | Nontaxable sources of income (specify) _____ . . . | 10 | 00 |
| 11 | Enter **gross** (positive) income from rentals, royalties, partnerships, estates & trusts, and gains from the sale or exchange of property  (taxable & nontaxable) (provide Federal return including schedules) . | 11 | 00 |
| 12 | Enter **gross** (positive) income from business and farm (provide Federal return including schedules) . . . | 12 | 5592 00 |
| 13 | Other income-including income of others living in your household (specify) _____ | 13 | 00 |
| 14 | **Total gross household income** (Add lines 1-13) . . . . . . . . . . . . . . . . | 14 | 5592 00 |

If line 14 is over income limits shown in steps 2 and 3 on page 3, no credit is allowed.

**PART 4:  SALES TAX CREDIT COMPUTATION** (For households with gross income below allowable limits, see steps 2 and 3 on page 3.)

| | | | |
|---|---|---|---|
| 15 | Total qualified exemptions claimed in Box D on page 1 | 1  x $40 (credit claimed) | 15 | 40 00 |

**DIRECT DEPOSIT OPTION:** For those NOT filing a Form 511. See page 3 for Refund Information.

**If you are filing a Form 511, carry the credit to Form 511, line 25.**

**Refund Note:** For Direct Deposit, verify your account and routing numbers are correct. If your direct deposit fails to process, you will receive a debit card. You can also choose to receive either a debit card or a paper check by placing an 'X' in the appropriate box below. **Note:** A minimum refund of $10.00 is required to receive a paper check. If you request a paper check for an amount less than $10.00, a debit card will be issued. If no options are selected, you will receive a debit card. Due to electronic banking rules, the Oklahoma Tax Commission (OTC) will not allow direct deposits to or through foreign financial institutions. If you use a foreign financial institution you will be issued a paper check

**Send my refund as a:**
Is this refund going to or through an account that is located outside of the United States?   Yes   No

**Direct Deposit my refund in my:**

Debit Card

Checking Account    Routing Number:

Paper Check

Savings Account    Account Number:

If the OTC may discuss this return with your tax preparer, place an 'X' here:

Under penalty of perjury, I declare the information contained in this document and any attachments is true and correct to the best of my knowledge and belief.

| Taxpayer's Signature and Date | Spouse's Signature and Date |
|---|---|
| Occupation | Occupation |

| Preparer's Signature and Date |
|---|


**Internal Revenue Service**
United States Department of the Treasury

This Product Contains Sensitive Taxpayer Data

Request Date: 05-07-2024
Response Date: 05-07-2024
Tracking Number: 105948470862

Record of Account

FORM NUMBER: 1040          TAX PERIOD: Dec. 31, 2022

TAXPAYER IDENTIFICATION NUMBER:          XXX-XX-5094

LIN T STEP
8214 E

--- ANY MINUS SIGN SHOWN BELOW SIGNIFIES A CREDIT AMOUNT ---

ACCOUNT BALANCE:          0.00
ACCRUED INTEREST:         0.00          AS OF: Mar. 13, 2023
ACCRUED PENALTY:          0.00          AS OF: Mar. 13, 2023

ACCOUNT BALANCE
   PLUS ACCRUALS
   (this is not a
   payoff amount):     0.00

** INFORMATION FROM THE RETURN OR AS ADJUSTED **

EXEMPTIONS:               01
FILING STATUS:            Married Filing Separate
ADJUSTED GROSS
   INCOME:                -12,163.00
TAXABLE INCOME:           0.00
TAX PER RETURN:           0.00
SE TAXABLE INCOME
   TAXPAYER:              0.00
SE TAXABLE INCOME
   SPOUSE:                0.00
TOTAL SELF
   EMPLOYMENT TAX:        0.00

RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER)  Apr. 15, 2023
PROCESSING DATE                                               Mar. 13, 2023

                          TRANSACTIONS
CODE EXPLANATION OF TRANSACTION          CYCLE     DATE              AMOUNT
150  Tax return filed                    20230801  03-13-2023        $0.00
     16211-446-66072-3

SSN Provided: XXX-XX-5094
Tax Period Ending: Dec. 31, 2022

The following items reflect the amount as shown on the return (PR), and
the amount as adjusted (PC), if applicable.  They do not show subsequent
activity on the account.

```
SSN: XXX-XX-5094                          SPOUSE SSN:
NAME(S) SHOWN ON RETURN: LIN T STEP

ADDRESS: 8214 E


FILING STATUS:                           Married Filing Separate
FORM NUMBER:                                             1040
CYCLE POSTED:                                        20230801
RECEIVED DATE:                                  Apr.15, 2023
REMITTANCE:                                            $0.00
EXEMPTION NUMBER:                                          1
DEPENDENT 1 NAME CTRL:
DEPENDENT 1 SSN:
DEPENDENT 2 NAME CTRL:
DEPENDENT 2 SSN:
DEPENDENT 3 NAME CTRL:
DEPENDENT 3 SSN:
DEPENDENT 4 NAME CTRL:
DEPENDENT 4 SSN:
IDENTITY THEFT PERSONAL ID NUMBER:
PTIN:                                          XXX-XX-6716
PREPARER EIN:


Income

TOTAL WAGES:.................................................$0.00
FORM W-2 WAGES:..............................................$0.00
TAXABLE INTEREST INCOME: SCH B:..............................$1.00
TAX-EXEMPT INTEREST:.........................................$0.00
ORDINARY DIVIDEND INCOME: SCH B:............................$13.00
QUALIFIED DIVIDENDS:........................................$13.00
REFUNDS OF STATE/LOCAL TAXES:................................$0.00
ALIMONY RECEIVED:...........................................$0.00
BUSINESS INCOME OR LOSS (Schedule C):.................$-15,673.00
BUSINESS INCOME OR LOSS: SCH C PER COMPUTER:..........$-15,673.00
CAPITAL GAIN OR LOSS: (Schedule D):....................$3,496.00
CAPITAL GAINS OR LOSS: SCH D PER COMPUTER:.............$3,496.00
OTHER GAINS OR LOSSES (Form 4797):..........................$0.00
TOTAL IRA DISTRIBUTIONS:.....................................$0.00
TAXABLE IRA DISTRIBUTIONS:...................................$0.00
TOTAL PENSIONS AND ANNUITIES:................................$0.00
TAXABLE PENSION/ANNUITY AMOUNT:..............................$0.00
ADDITIONAL INCOME:...................................$-15,673.00
ADDITIONAL INCOME PER COMPUTER:......................$-15,673.00
REFUNDABLE CREDITS PER COMPUTER:.............................$0.00
REFUNDABLE EDUCATION CREDIT PER COMPUTER:....................$0.00
QUALIFIED BUSINESS INCOME DEDUCTION:.........................$0.00
RENT/ROYALTY/PARTNERSHIP/ESTATE (Schedule E):...............$0.00
RENT/ROYALTY/PARTNERSHIP/ESTATE (Schedule E) PER COMPUTER:...$0.00
RENT/ROYALTY INCOME/LOSS PER COMPUTER:.......................$0.00
ESTATE/TRUST INCOME/LOSS PER COMPUTER:.......................$0.00
PARTNERSHIP/S-CORP INCOME/LOSS PER COMPUTER:.................$0.00
FARM INCOME OR LOSS (Schedule F):............................$0.00
FARM INCOME OR LOSS (Schedule F) PER COMPUTER:...............$0.00
UNEMPLOYMENT COMPENSATION:...................................$0.00
TOTAL SOCIAL SECURITY BENEFITS:..............................$0.00
TAXABLE SOCIAL SECURITY BENEFITS:............................$0.00
TAXABLE SOCIAL SECURITY BENEFITS PER COMPUTER:...............$0.00
OTHER INCOME:...............................................$0.00
SCHEDULE EIC SE INCOME PER COMPUTER:.........................$0.00
```

# EXHIBIT 07

OFFICE OF ADMINISTRATIVE HEARINGS
STATE OF OKLAHOMA
DEPARTMENT OF HUMAN SERVICES
5/1/2024
FILED

05/09/24

## OFFICE OF ADMINISTRATIVE HEARINGS: CHILD SUPPORT
## DEPARTMENT OF HUMAN SERVICES
## STATE OF OKLAHOMA

| | |
|---|---|
| IN RE THE MARRIAGE OF: ) | |
| LINH TRAN STEPHENS ) | Dist. Court No.: FD-2015-2228 |
| ) | OAH No.: 23-00313-73 |
| ) | |
| ) | FGN: 000948641001 |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | |
| ADAM SYLVESTER STEPHENS ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| Respondent. ) | |

**Notice of Hearing**

A request for Administrative Hearing on a Bank Levy has been filed in this court.

The Court will hold a hearing on: 05/09/24 at 08:30AM CT by telephone or video. You must provide contact information to CSS 10 days before your hearing by calling (918) 295-3500 and CSS will provide your further hearing details that may require you to download an application to your phone or computer.

- You have the right to have an attorney represent you or you may represent yourself in this matter. If you hire an attorney to represent you, your attorney must make an Entry of Appearance with the court.

- Submit all documents requested by Child Support Services (CSS) and any evidence you wish to present at the hearing to OCSS.CONTACT.TULSAEAST@OKDHS.ORG.

Failure to be available on the day of the hearing or to provide CSS with contact information may result in a default order being entered against you.

Presented By:
EMMALENE STRINGER
OBA No. 31690
State's Attorney
OKDHS, CSS
CSS
3666 N PEORIA AVE
PO BOX 27068
TULSA, OK 74149
(918) 295-3500
Fax: (918) 430-2364
OCSS.CONTACT.TULSAEAST@OKDHS.ORG



United States Department of State

*National Passport Center*
*44132 Mercure Circle*
*PO Box 1108*
*Sterling, Virginia 20166-1108*

March 2, 2023

Linh Tran Stephens
737 NW 23rd St
Oklahoma City, OK 73103

RE: 696669556

Dear Ms. Stephens:

Thank you for your recent passport application. Unfortunately, at this time you are ineligible to receive passport services because the Department of Health and Human Services (HHS) certified that you owe child support. **Your application will remain active with our office for 90 days to provide additional time to resolve your outstanding balance with the relevant state child support agency.**

- ♦ Section 51.60(a)(2) of Title 22 of the Code of Federal Regulations reads as follows:

    51.60 – Denial of Passports
    (a) The Department may not issue a passport, except a passport for direct return to the United States, in any case in which the Department determines or is informed by a competent authority that:
    (2) The applicant has been certified by the Secretary of Health and Human Services as notified by a state agency under 42 U.S.C. 652(k) to be in arrears of child support in an amount determined by the statute.

*Neither this passport agency nor the Department of State has information concerning your child support obligation.* A list of state child support enforcement agencies and their contact information can be found on-line at https://www.acf.hhs.gov/css/resource/state-and-tribal-child-support-agency-contacts.

You must contact and make appropriate arrangements with the relevant state child support agency within ninety (90) days from the date of this letter.

Once the Secretary of Health and Human Services has certified to the Secretary of State that you have satisfied the child support arrearage, your name will be removed from the certified list. Please note that several states require a zero-dollar ($0.00) balance before allowing passport issuance to an individual who was previously in arrearage. **All questions regarding such policies must be addressed to the appropriate state child support office.** If satisfactory payment arrangements have not been made with the relevant state within 90 days of the date of this letter, your application will be denied. The Department of State cannot change, override, or appeal this policy.

**For general passport information or to check the status of your passport application, please
visit us on-line at travel.state.gov.**

**PLEASE RETURN A COPY OF THIS LETTER WITH YOUR REPLY TO THE
ADDRESS LISTED ABOVE.**

Sincerely,


Customer Service Department



**\* 1 0 5 5 1 2 2 0 5 3 \***

### OFFICE OF ADMINISTRATIVE HEARINGS: CHILD SUPPORT
### DEPARTMENT OF HUMAN SERVICES
### STATE OF OKLAHOMA

In re the Marriage of:

LINH TRAN STEPHENS

Petitioner,

vs.

ADAM SYLVESTER STEPHENS

Respondent.

Case No. FD-2015-228

OAH No. 23-00313-73

OK IV-D No. 948641001

Obligor: Linh Tran Stephens

Custodian:  Adam Sylvester Stephens Sr

> OFFICE OF ADMINISTRATIVE HEARINGS
> STATE OF OKLAHOMA
> DEPARTMENT OF HUMAN SERVICES
> 4/13/2023
> FILED

### COURT ORDER

Now on <u>4/12/2023</u> this matter comes before me, the undersigned Administrative Law Judge, pursuant to the:

☒ Custodian's Request for Hearing: (1) Demand for Administrative Review Hearing: Demand to Cease and Desist and (2) Motion to Modify Child Support

☐ State's Motion to Modify Child Support

☐ State's Motion to Determine Arrears

☐ State's Annual Notice/Order of Child Support Lien

☐ State's Notice of Registration of Foreign Support Order

☐ State's Notice of Intent to Revoke Obligor's License(s)

☐ State's Motion to Reinstate Licenses(s)

☐ Notice of Hearing to:

☐ Signature Docket Agreed Order

**DISTRICT COURT**
**F I L E D**

**MAY 09 2023**

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

filed herein.  A hearing has been conducted in accordance with Titles 43, 46, and 75 of the Oklahoma Statutes, other states statutes and regulations, and federal statutes and regulations, and the Rules and Regulations of Office of Administrative Hearings: Child Support.

Child Support Services (CSS) appears by and through the State's Attorney.

The custodian appears:

☐ telephonically, pro se.

☒ telephonically, with counsel: Gilbert Pilkington

☐ not.        ☐ not required.

☐ not, having previously signed this order.

☐ not, represented by counsel:

The obligor appears:

☒ telephonically, pro se.

☐ telephonically, with counsel:

☐ not, and is in default after being properly served.

☐ not, having previously signed this order.

☐ not, represented by counsel:

Court Minute Order
Rev. 11/3/2022

Other persons appearing: Marieke Randoy- ADA advocate for the Mother and Rhonda Vicker- Court Observer

Upon due consideration given the testimony of the parties, the relevant authorities of law, the court finds:  The Court has subject matter and personal jurisdiction of the parties in this action pursuant to 56 Oklahoma Statute § 237 Sec. 240.23 and Titles 12, 43, 68, and 75 of the Oklahoma Statute.

Having examined the files and records in this case, and having fully considered the evidence, and being fully advised in the premises, the Court makes the following findings and enters the following orders: <u>A hearing was held on the record.  The Mother was present pro se via video.  The Father was present via video with his counsel Gilbert Pilkington.  Two witnesses were sworn.  The State raised a question regarding subject matter jurisdiction.  The Court heard argument from all parties.  The Court grants the State's motion to dismiss based on lack of subject matter jurisdiction and based on the failure of the Mother to state a claim upon which relief could be granted by this Court.  Signatures of the parties are waived on the record.</u>

**APPEAL.** An administrative order may be appealed by filing a Petition in Error with the District Court WITHIN THIRTY (30) DAYS, as provided in 56 O.S. § 240.3. Copies of the petition should be served upon the Office of Administrative Hearings, Child Support, PO Box 25352, Oklahoma City, Oklahoma 73125-0352, AND upon the local child support office. CONTACTING DHS, CHILD SUPPORT SERVICES DOES <u>NOT</u> CONSTITUTE AN APPEAL. APPEALS MUST BE <u>FILED IN DISTRICT COURT</u> AND THEN SERVED ON THE OFFICE OF ADMINISTRATIVE HEARINGS, DHS CHILD SUPPORT SERVICES AND ALL OTHER PARTIES. *ord,*

IT IS SO ORDERED.

> The digital signature of the undersigned Administrative Law Judge is authorized pursuant to 56 O.S.§ 237.9a. All true and correct copies of this Order, as it appears in the record of the Office of Administrative Hearings: Child Support, Oklahoma Department of Human Services, are deemed certified pursuant to OAC: 340:2-28-57.

**4/13/2023**
_____                    _____
DATED:                                      ADMINISTRATIVE LAW JUDGE
                                            Robert Perugino

APPROVED AS TO FORM:

**SIGNATURE WAIVED BY THE COURT ON THE RECORD**

**SIGNATURE WAIVED BY THE COURT ON THE RECORD**

Court Minute Order
Rev. 11/3/2022

084

OBLIGOR/ NON-CUSTODIAN                    OBLIGEE/ CUSTODIAN

## SIGNATURE WAIVED BY THE COURT ON
_____
## THE RECORD
                                          ATTORNEY FOR OBLIGEE
ATTORNEY FOR OBLIGOR
NAME:                                     NAME:
OBA:                                      OBA:
ADDRESS:                                  ADDRESS:

PHONE:                                    PHONE:

By: _Emmalene Stringer_____

Emmalene Stringer, OBA# 31690
State's Attorney
DHS, Child Support Services
Tulsa East Office
P.O. Box 27068
Tulsa, OK 74149
Tel: 918-295-3500
Fax: 918-430-2364

### CERTIFICATE OF MAILING

This is to certify that on **4/18/2023** a true and correct copy of the above and foregoing order was mailed to:

☒Obligor at address of Record          ☐Custodian at Address of Record

☐Obligor at Address on File            ☐Custodian at Address on File

☐Obligor Attorney                      ☒Custodian Attorney

☐Interstate Office:

☐Other:

_Emmalene Stringer_____
OKDHS/CSS REPRESENTATIVE

Court Minute Order
Rev. 11/3/2022

# EXHIBIT 09

From: **Schwab Alerts** donotreply@mail.schwab.com
Subject: **Your trade was executed in your Schwab account ending in 605** AGAINST PLAINTIFF'S OBJECTIONS AND WITHOUT HER CONSENT
Date: May 7, 2024 at 10:05:21
To: linhstephens7@gmail.com



Account ending: 605
May 7, 2024

We executed a trade in your account.

Welcome to Schwab Trade Notifications! As a Trading Services client, you'll receive a notification for each trade made in your account, letting you know the trade was executed successfully and providing basic details of the transaction.

**Don't wish to receive trade notifications**? Just select **Unsubscribe** below at any time.

Here are the details for the trade executed on 05/07/2024 in your account ending in 605:

| | |
|---|---|
| Settlement date: | **05/09/2024** |
| Action: | **Sold** |
| Quantity: | **200** |
| Symbol: | **ARKQ** |
| Unit price: | **$54.9167** |
| Principal amount | **$10,983.34*** |

**Watch for your official trade confirmation** via U.S. mail or email, detailing commissions and fees not included in the principal amount listed above.*

087

From: **Schwab Alerts** donotreply@mail.schwab.com
Subject: **Schwab eConfirms for account ending in 605**
Date: **May 8, 2024 at 05:01:23**
To: **linhstephens7@gmail.com**



**Account ending: 605**
May 8, 2024

Schwab eConfirms™

This email contains your trade confirmation(s) for 05/07/2024.

View your eConfirms

Or go to schwab.com/reports.

| Symbol: | Security Description: | **Advanced Micro Devic** |
|---|---|---|
| **AMD** | Action: | **Sale** |
| | Security No./CUSIP: | **007903107** |
| | Type: | **Cash** |
| | Trade Date: | **05/07/24** |
| | Settle Date: | **05/09/24** |

| Quantity | Price | Principal | Charge and/or Interest | | Total Amount |
|---|---|---|---|---|---|
| 45 | $157.045 | $7,067.03 | Exchange Processing Fee: | $0.07 | $7,066.96 |

Additional information for this security:
- Exch Process Fee: This fee offsets costs incurred by Schwab for the exchange of securities - including those relating to assessments on broker-dealers by an exchange or other SRO - for equity, option, or other covered security sell transactions and option security buy transactions.
- Schwab acted as your agent.
- The cost basis method requested was FIFO. Please view the cost Basis Disclosure Statement for additional information on cost basis method choices and how Schwab reports adjusted cost basis information to the IRS.

| Symbol: | Security Description: | **Amc Entertainment A** |
|---|---|---|
| **AMC** | Action: | **Sale** |
| | Security No./CUSIP: | **00165C302** |
| | Type: | **Cash** |
| | Trade Date: | **05/07/24** |
| | Settle Date: | **05/09/24** |

| Quantity | Price | Principal | Charge and/or Interest | Total Amount |
|---|---|---|---|---|
| 14 | $3.1511 | $44.12 | N/A | $44.12 |

Additional information for this security:

- Schwab acted as your agent.

- The cost basis method requested was FIFO. Please view the cost Basis Disclosure Statement for additional information on cost basis method choices and how Schwab reports adjusted cost basis information to the IRS.

| Symbol: | Security Description: | **Apple Inc** |
|---|---|---|
| **AAPL** | Action: | **Sale** |
| | Security No./CUSIP: | **037833100** |
| | Type: | **Cash** |
| | Trade Date: | **05/07/24** |
| | Settle Date: | **05/09/24** |

| Quantity | Price | Principal | Charge and/or Interest | | Total Amount |
|---|---|---|---|---|---|
| 135 | $182.4001 | $24,624.01 | Exchange Processing Fee: | $0.22 | $24,623.79 |

Additional information for this security:

- Exch Process Fee: This fee offsets costs incurred by Schwab for the exchange of securities - including those relating to assessments on broker-dealers by an exchange or other SRO - for equity, option, or other covered security sell transactions and option security buy transactions.

- Schwab acted as your agent.

- The cost basis method requested was FIFO. Please view the cost Basis Disclosure Statement for additional information on cost basis method choices and how Schwab reports adjusted cost basis information to the IRS.

| Symbol: | Security Description: | **ARK AUTONOMOUS TECH RBTCS ETF** |
|---|---|---|
| **ARKQ** | Action: | **Sale** |
| | Security No./CUSIP: | **00214Q203** |
| | Type: | **Cash** |
| | Trade Date: | **05/07/24** |
| | Settle Date: | **05/09/24** |

| Quantity | Price | Principal | Charge and/or Interest | | Total Amount |
|---|---|---|---|---|---|
| 200 | $54.9167 | $10,983.34 | Exchange Processing | $0.12 | $10,983.22 |

200    $54.0107    $10,803.34    Exchange Processing    $0.12    $10,803.22
                                                     Fee:

Additional information for this security:
- Exch Process Fee: This fee offsets costs incurred by Schwab for the exchange of securities -
including those relating to assessments on broker-dealers by an exchange or other SRO - for equity,
option, or other covered security sell transactions and option security buy transactions.
- Schwab acted as your agent.
- The cost basis method requested was FIFO. Please view the cost Basis Disclosure Statement for
additional information on cost basis method choices and how Schwab reports adjusted cost basis
information to the IRS.

| Symbol: | Security Description: | **ARK NEXT GENERATION INTERNET ETF** |
|---------|----------------------|---------------------------------------|
| **ARKW** | Action: | **Sale** |
| | Security No./CUSIP: | **00214Q401** |
| | Type: | **Cash** |
| | Trade Date: | **05/07/24** |
| | Settle Date: | **05/09/24** |

| Quantity | Price | Principal | Charge and/or Interest | | Total Amount |
|----------|-------|-----------|------------------------|---|--------------|
| 100 | $78.36 | $7,836 | Exchange Processing Fee: | $0.08 | $7,835.92 |

Additional information for this security:
- Exch Process Fee: This fee offsets costs incurred by Schwab for the exchange of securities -
including those relating to assessments on broker-dealers by an exchange or other SRO - for equity,
option, or other covered security sell transactions and option security buy transactions.
- Schwab acted as your agent.
- The cost basis method requested was FIFO. Please view the cost Basis Disclosure Statement for
additional information on cost basis method choices and how Schwab reports adjusted cost basis
information to the IRS.

| Symbol: | Security Description: | **PELOTON INTERACTIVE** |
|---------|----------------------|-------------------------|
| **PTON** | Action: | **Sale** |
| | Security No./CUSIP: | **70614W100** |
| | Type: | **Cash** |
| | Trade Date: | **05/07/24** |
| | Settle Date: | **05/09/24** |

| Quantity | Price | Principal | Charge and/or Interest | | Total Amount |
|----------|-------|-----------|------------------------|---|--------------|
| 70 | $4.0101 | $280.71 | Exchange Processing Fee: | $0.01 | $280.7 |

Additional information for this security:
- Exch Process Fee: This fee offsets costs incurred by Schwab for the exchange of securities -
including those relating to assessments on broker-dealers by an exchange or other SRO - for equity,
option, or other covered security sell transactions and option security buy transactions.
- Schwab acted as your agent.
- The cost basis method requested was FIFO. Please view the cost Basis Disclosure Statement for
additional information on cost basis method choices and how Schwab reports adjusted cost basis
information to the IRS.

| Symbol: | Security Description: | **Tesla Inc** |
|---|---|---|
| **TSLA** | Action: | **Sale** |
| | Security No./CUSIP: | **88160R101** |
| | Type: | **Cash** |
| | Trade Date: | **05/07/24** |
| | Settle Date: | **05/09/24** |

| Quantity | Price | Principal | Charge and/or Interest | | Total Amount |
|---|---|---|---|---|---|
| 26 | $180.245 | $4,686.37 | Exchange Processing Fee: | $0.04 | $4,686.33 |

Additional information for this security:
- Exch Process Fee: This fee offsets costs incurred by Schwab for the exchange of securities -
including those relating to assessments on broker-dealers by an exchange or other SRO - for equity,
option, or other covered security sell transactions and option security buy transactions.
- Schwab acted as your agent.
- The cost basis method requested was FIFO. Please view the cost Basis Disclosure Statement for
additional information on cost basis method choices and how Schwab reports adjusted cost basis
information to the IRS.

If you have any questions about this report, please contact Schwab at **800-435-4000**.

**Thank you for investing with Schwab.**

UNSUBSCRIBE

PRIVACY

CONTACT US

LOG IN

# EXHIBIT 09



**charles SCHWAB**

Rollover IRA of
LINH STEPHENS
CHARLES SCHWAB & CO INC CUST
IRA ROLLOVER

Account Number
2605

Statement Period
October 1-31, 2020

## Transaction Detail - Deposits & Withdrawals

| Transaction Date | Process Date | Activity | Description | Location |
|---|---|---|---|---|
| 10/14/20 | 10/14/20 | Funds Received | IRA ROLLOVER CONT | |

**Total Dividends & Interest**

## Transaction Detail - Dividends & Interest (including Money Market Fund dividends reinvested)

| Transaction Date | Process Date | Activity | Description | Location |
|---|---|---|---|---|
| 10/15/20 | 10/16/20 | Bank Interest $^{x,z}$ | BANK INT 091620-101520 · SCHWAB BANK | |

**Total Transaction D**

## Bank Sweep Activity

| Transaction Date | Transaction | Description |
|---|---|---|
| | | |

**Opening Balance $^{x,z}$**

| 10/15/20 | Interest Paid $^{x,z}$ | BANK INTEREST - CHARLES SCHWAB BANK |
| 10/15/20 | Auto Transfer | BANK CREDIT FROM BROKERAGE $^x$ |
| 10/19/20 | Auto Transfer | BANK TRANSFER TO BROKERAGE |

**Total Activity**

**Ending Balance $^{x,z}$**

*Bank Sweep: Interest Rate as of 10/30/20 was 0.01%. z*

Schwab has provided accurate gain and loss information wherever possible for most investments. Cost basis data may be incomplete or unavailable for some of your holdings. Please see "Endnotes for Your Account" section for an explanation of the endnote codes and symbols on this statement.



093

# Linh Stephens, DO

**primary care clinic**

**Broken Arrow, OK**                    **F: 918-228-0156**

---

**To:** (260) 455-9975                **Date:** 9/19/2020

**Fax:** 2604559975                  **Pages:**

**Subject:**

---

This fax may contain privileged or confidential information and is intended for the exclusive use of the addressee(s).
If you are not an intended recipient, please notify sender and destroy all copies. Failure to do so may result in legal sanction.


Lincoln
Financial Group

# Request a distribution to another company

If you have questions or need assistance completing this form, call the Lincoln Customer Contact Center at 1-800-234-3500 or contact your retirement plan representative.

**Is this the correct form?**
This form can be used for the most common distribution reasons. This will result in a payment to another company.

If you would like to request a distribution for another reason, please refer to the Lincoln website for the applicable form.

**DO NOT** use this form for:
- Hardship or Unforeseeable emergency
- Required minimum distribution (RMD)
- Excess withdrawal (refund)
- Death claim (you are the beneficiary)
- Plan termination
- In-plan Roth conversion

 **Marital status:** Please provide your marital status in order to ensure timely processing of your distribution.

 **Restrictions may apply depending on your plan provisions.** Please contact Lincoln or your plan administrator/employer to discuss what options are available.

 **If you are totally and permanently disabled:** A letter from the Social Security Administration is required.

**For Qualified Domestic Relations Orders:** A copy of the court order, decree, or legal separation is required.

 **If you have Roth and/or after tax money:** Please verify that your receiving company will accept your rollover.

 **When requesting a rollover of pre-tax money to a Roth IRA** you will still be liable for payment of federal and state income tax, if applicable. At the time you prepare your personal tax filing. You may wish to discuss your personal tax liability with a qualified tax advisor.

**Receiving company information:** Your receiving company information is important for accurate processing. We will issue the check to the receiving company but mail it to your address. You will be responsible for mailing the check to the receiving company to complete this transaction.

## ① Tell us about yourself.

**Name (first, MI, last, suffix)**
Link T Stephens

**SSN**
XXX XX 5054

**Mailing address**
[redacted]

**Plan ID (refer to your statement)**
[blank]

**City**
[redacted]

**State**
OK

**Zip**
[redacted]

**Mobile**
817 631 3223

**Email**
[redacted]

**Phone**
[blank]

**Marital status** ①
☐ I do not have a living spouse
☒ I have a living spouse [redacted]

**Date of birth (mm/dd/yyyy)**
[redacted]

**Employment status (choose one)**
☐ I retired on (mm/dd/yyyy) [blank]
☒ I am no longer working for the employer that administers this plan as of (mm/dd/yyyy) 09/30/2020 (last day of employment)
☐ I am currently employed with the employer that administers this plan. (Restrictions may apply.) 🕿
☐ I am totally and permanently disabled.
☐ I am not an employee. (Not we the alternate payee due to a Qualified Domestic Relations Order.)

## ② How should we move your funds to another company?

Please refer to "Requesting a distribution to another company" included with this form.

I would like to distribute my money in the form of a (choose one)
☒ Rollover
    If you have after tax contributions and you want a rollover, Lincoln will automatically include your after tax contributions unless you tell us otherwise by checking this box. ☐ Do not include my after tax contributions in the rollover. ①
☐ Contract exchange (restrictions may apply.) 🕿
☐ Plan-to-plan transfer (restrictions may apply.) 🕿
☐ Permissive service credit transfer (restrictions may apply.) 🕿

**Type of receiving plan/account (choose one)**
☐ 403(b)    ☐ 403(b)    ☐ 401(a)    ☐ 457(b) governmental
☒ Individual Retirement Account (IRA) (traditional, SEP, SIMPLE, etc.)
☐ Roth IRA ① ☐    ☐ Defined benefit plan

## Provide information about the receiving company.

**Receiving company name (payable to)**
Charles Schwab & Co, Inc

**Account number**
XXX-2605

**Street address**
P.O. Box 982600

**City**
El Paso, TX 79998 - 2600

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates. Affiliates are separately responsible for their own financial and contractual obligations.

PM0-2020C01-011419
RPS092018-AL 4-PA (1/20)

# Request a distribution to another company

## ❸ How much should we send?

Amounts will be distributed from your available vested balance and may be limited to certain contribution types. The total amount you receive may be less than the amount requested, depending on your available balance and tax withholding.

Amount options (choose one)

☒ Send 100% of my account balance to another company as described in Step 2 (Skip to Step 2)

☐ Send part of my account balance in the amount of $ _____ to another company as described in Step 2 and leave the remainder in my account. (Dollar amount must be provided. Skip to Step 2.) Restrictions may apply.) ☎

☐ Send me a partial cash payment of $ _____ and send the remainder of my account balance to another company as described in Step 2. (Dollar amount must be provided. Continue to Step 4.)

If applicable, your distribution will automatically include the Lincoln Secured Retirement Income℠ investment option. This may result in an excess withdrawal. An excess withdrawal may reduce your income base. Please let us know if you want to exclude it from your distribution.

☐ I do not want to include the Secured Retirement Income℠ option in my distribution.

**Restrictions may apply to options (where noted) on this form depending on your plan.** Please contact Lincoln or your plan administrator/employer to discuss what options are available.

**Direct Deposit:** If your bank account information is illegible or incomplete, Lincoln will issue a check and mail it to your address on file.

**Please note:** We cannot direct deposit to reloadable debit cards.

**If you direct deposit to a checking account:** To ensure accuracy, please include a photo copy of a voided check.

**If you direct deposit to a savings account:** To ensure accuracy please include a verification of deposit from your financial institution.

**The amount you receive:** The total amount you receive from this distribution will be reduced by the total amount of taxes withheld. Depending on your available balance, you may adjust your requested distribution amount to account for additional taxes that may be assessed as part of your tax liability.

**Federal tax withholding elections:** If you do not provide a rate, or if you provide a federal tax withholding rate that is less than 20% we are and required to withhold the applicable minimum.

**Please note:** Your distribution may be subject to an additional 10% early distribution penalty tax. This penalty tax will be assessed when you file your tax returns as part of your tax liability and is not automatically excluded in your tax withholding for this distribution.

## ❹ How would you like to receive your payment? N/A

I would like my payment to be sent as a (choose one)

☐ Direct deposit to my personal bank account as described here ❶ 🏦
    Select this box if this is a savings account ☐

| Name as it appears on your account | Bank transit/ABA number (9 digits) |
|---|---|
| | |

| Financial institution | Account number |
|---|---|
| | |

☐ Check, mailed to my address on file.

## ❺ How do taxes impact your partial cash payment? N/A

Only complete this section if you are receiving a partial cash payment.

Lincoln will withhold taxes from your distribution at the rates detailed below and automatically send the withholding to the IRS on your behalf. Please refer to the Special Tax Notice for more information.

Taxes withheld from your distribution will include

• **Federal tax (if applicable)** 🏦
  20% mandatory withholding applies to distributions that are eligible for rollover.
  Indicate here if you would like to withhold federal taxes at a higher rate than the mandatory 20%:
  ☐ Withhold federal taxes at the rate of (minimum 20%) _____ %.

• **State tax (if applicable)**
  State tax is automatically calculated and based on your residence on file

# Request a distribution to another company

## Sign and date this form.

**By signing below, I certify that:**

- I have read and understand the Important Fraud Notice and Important Information sections on the last page of this form.
- I have received the Special Tax Notice, and if applicable, I waive the required 30-day notice period before receiving my distribution.
- I am responsible for meeting the federal tax law requirements to qualify for this distribution.
- My answers on this form and any documents I have attached are true and accurate.
- If there are not enough funds in my retirement account for the amount requested, Lincoln will process the withdrawal from the amount available.
- If applicable to this plan, I have received the Qualified Joint and Survivor Annuity (QJSA) notice, waive the 30-day review period and normal QJSA form of payment, and instead elect to receive this distribution as detailed on this form.
- If I am a New York resident, I understand that any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and shall also be subject to civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Your signature** (Please sign with a pen. We cannot accept electronic signatures.)

*[signature]*

**Today's date** (mm/dd/yyyy): 09 / 17 / 2020

### Did you know?

**If you move this year:** Please update your address to receive your tax documents for use when you file your income taxes.

**To update your address:** If you are an active employee, contact your employer. If you are no longer employed, call Lincoln.

**Fees may apply to your distribution:** To determine if fees apply, refer to your 404(a)(5) fee disclosure (if applicable) and contact Lincoln with any questions.

## Your spouse's signature may be required.

In some instances, your spouse may be required to sign this form. Please call Lincoln or your plan administrator/employer to determine if this is required for your plan. This section is not needed for distributions due to Qualified Domestic Relations Order.

**By signing below, I certify that I am the spouse of the individual named above and that:**

- If applicable to this plan, I have received the QJSA notice, consent to my spouse's election to waive the normal QJSA form of payment, and consent to my spouse's election to an immediate distribution as detailed on this form.

**Spouse's signature** (if required)

*[signature]*

**Today's date** (mm/dd/yyyy): 9 / 17 / 2020

**Plan administrator's signature or notary's signature**

*Mllissa Elliott*

**Today's date** (mm/dd/yyyy): 09 / 17 / 2020

If spousal consent is required and if your plan administrator does not sign here as a witness to your spouse's signature, you must have a notary sign, seal, and date where noted to the right.

**Notary's seal:**

*[Notary seal: MELISSA ELLIOTT, NOTARY PUBLIC, Commission # 17006843, My Commission Expires 06-22-2021, STATE OF OKLAHOMA]*

**Notary's commission expires** (mm/dd/yyyy): 06 / 22 / 2021

→ Continue to the next page for additional instructions.

# Request a distribution to another company

**Did you remember to:**
 Print, sign and date this form?

[X] Attach any necessary documents?  **N/A**

 If faxing, include both the front and back of ALL pages of the form?

## Questions?

**VISIT**
LincolnFinancial.com or

**CALL**
1-800-234-3500
M - F, 8 am - 8 pm ET

## Return all documents to:

**FAX**
Lincoln Retirement Services Company, LLC
260-455-9975

**MAIL**
Lincoln Retirement Services Company, LLC
P.O. Box 7876
Fort Wayne, IN 46801-7876

**EXPRESS MAIL**
Lincoln Retirement Services Company, LLC
1300 South Clinton St.
Fort Wayne, IN 46802-0506

## What you can expect:

- **Log in to your account** at LincolnFinancial.com to verify when funds are removed from your retirement account.
- **For ACH deposits**, it takes up to two business days to see your payment posted to your bank account once the funds have left your retirement account.
- **For checks**, your payment will arrive depending on the United States Postal Service delivery schedule. This generally takes 2-5 business days once the funds have left your retirement account.

---

**Participant information:**
If participant information is incomplete, Lincoln will use the information currently on file.

## Plan administrator/employer use only.

Complete the following participant information: ❶

- If the employee is no longer working, provide the date of severance

  (mm/dd/yyyy) [      ] / [      ] / [          ]

- Is the employee 100% vested?   ☐ Yes   ☐ No

  If no, please provide the vested percentage.

  - The employee's vested percentage in employer match contributions is [          ] %

  - The employee's vested percentage in other employer contributions is [          ] %

I authorize Lincoln to proceed with the elections made on this form.

Plan administrator's name

[                                                                      ]

Plan administrator's signature                              Today's date (mm/dd/yyyy)

[                                                  ]     [      ] / [      ] / [          ]

---

➡ **Continue to the next page for additional information.**

PAD-2876231-111419
RPS92518-AL-FPA (1/20)

Questions? Visit LincolnFinancial.com or call 1-800-234-3500, M - F, 8 am - 8 pm ET

Page 4 of 5

098

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **LINH TRAN STEPHENS, an individual,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | **Case No. 24 CV-216-JDR-CDL** |
| **v.** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **CHILD SUPPORT SERVICES OF** ) | |
| **OKLAHOMA DEPARTMENT OF HUMAN** ) | |
| **SERVICES (CSS OF OKDHS),** *et. al.* ) | |
| ) | |
| **Defendants.** ) | |

**DEFENDANT CIERA FREEMAN'S
<u>MOTION TO DISMISS</u>**

**COMES NOW** Defendant Ciera Freeman, pursuant to Fed. R. Civ. P.12(b)(6), and hereby moves the Court to dismiss the claims against her because the Plaintiff has failed to state a claim upon which relief may be granted. In support of her Motion, Ciera Freeman would show the Court as follows:

### INTRODUCTION

This action is the perfect example of "no good deed goes unpunished." Defendant Ciera Freeman was appointed by Judge Ludi-Leitch in Tulsa County, case no. FD-2015-2228, to be Plaintiff Linh Tran Stephens's standby counsel. Defendant Ciera Freeman was to assist Plaintiff in understanding the Court's orders and rulings, in conforming to the procedures applicable to an upcoming trial, and in presenting Plaintiff's case during a contempt for non-payment of child support jury trial. Defendant Ciera Freeman did her job and properly assisted Plaintiff during the two day jury trial in which Plaintiff was found in contempt for failing to pay child support.

Plaintiff asserts twelve various claims in her Complaint, yet Defendant Ciera Freeman is only mentioned one time on one page without any designation to any claim. The lack of clarity of

any of Plaintiff's claims being asserted against Defendant Ciera Freeman prevents Defendant Ciera Freeman from submitting a responsive pleading, even with her best efforts. Defendant Ciera Freeman should be dismissed from this case because there is no cognizable cause of action asserted against her in Plaintiff's Complaint.

## THE COMPLAINT

1.      The Complaint in this action was filed on May 8, 2024. (Doc. No. 2).

2.      The Complaint alleges federal question jurisdiction based on claimed violations of the Fair Debt Collection Practices Act, Confidentiality of Financial Records, Violation of Civil Rights, and Deprivation of Rights under Color of Law. (Doc. No. 2, at p. 5).

3.      The Complaint appears to relate to the Plaintiff's family law case in State Court. (Doc. No. 2, at p. 2).

4.      The Complaint includes a nineteen-page long summary of allegations, which includes a large number of emails to support her allegations. None of the emails or notices provided are from Defendant Ciera Freeman or name Defendant Ciera Freeman. (Doc. No. 2, at p. 5-24).

5.      The Complaint mentions Defendant Ciera Freeman once, and there is a vague reference to disclosure of financial records, but there is no assertion of claims against Defendant. (Doc. No. 2, at p. 6).

6.      The Complaint does not allege a cause of action against Defendant Ciera Freeman for professional negligence. (Doc. No. 2).

7.      The Complaint does not allege a cause of action, the facts giving rise to a cause of action, or the alleged damages Plaintiff has suffered as a result of any conduct of Defendant Ciera Freeman. Nor does the Complaint state any claims against or any facts supporting claims

against Defendant Ciera Freeman. (*Id.*).

### ARGUMENT & AUTHORITIES

FED. R. CIV. P. 12(b)(6) allows the court to grant a dismissal for a plaintiff's failure to state a claim upon which relief may be granted. When considering a dismissal on such grounds, the court must assume as true all well-pleaded factual allegations in a complaint, viewing them in a light most favorable to the plaintiff and resolving all reasonable inferences in the plaintiff's favor. *Seamons v. Snow*, 84 F.3d 1226, 1231-32 (10th Cir. 1996). The court must then determine whether the complaint contains enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007).

In *Twombly*, the United States Supreme Court held that "[w]hile a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although *pro se* pleadings are to be liberally construed, "the court should not assume the role of advocate and should dismiss claims which are supported only by vague and conclusory allegations." *Ciempa v. Jones*, 745 F. Supp. 2d 1171, 1187 (N.D. Okla. Aug. 23, 2010) (citations omitted). Neither should the court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

There is no claim stated in the Complaint with respect to Defendant Ciera Freeman. The Complaint does not allege any wrongdoing on the part of Defendant Ciera Freeman that is or can be connected to any cause of action.  While the Court must liberally construe the pleadings of *pro se* plaintiffs such as Plaintiff, the Court cannot function as counsel for the Plaintiff. Like all other parties who come before this Court, Plaintiff must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Under *Twombly* and its progeny, Plaintiff has failed to state a claim against Defendant Ciera Freeman. Thus, the Complaint should be dismissed for failure to state a claim pursuant to FED. R. Civ. P. 12(b)(6).

## CONCLUSION

**WHEREFORE**, premises considered, Defendant Ciera Freeman respectfully requests an order granting her Motion to Dismiss with prejudice as to the Plaintiff's right to refiling, and any such other and further relief the Court deems equitable and just.

Respectfully submitted,

s// Andrew C. Jayne
Andrew C. Jayne, OBA #19493
Shelby N. Brunette, OBA #33951
BAUM GLASS JAYNE CARWILE & PETERS
2000 Mid-Continent Tower
401 S. Boston Avenue
Tulsa, Oklahoma 74103
(T) 918/938.7944; (F) 918/938.7966
Email: ajayne@bgjclaw.com
        sbrunette@bgjclaw.com
ATTORNEY FOR DEFENDANT CIERA
FREEMAN

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 1st day of July, 2024, a true and correct copy of the above and foregoing instrument was served upon the following persons in the manner indicated below:

| | |
|---|---|
| **X**   mailed first class, U.S. mail, proper postage prepaid thereon<br>☐ transmitted via facsimile<br>☐ hand-delivered<br>☐ e-mailed<br>☐ mailed certified, return receipt no.<br>_____ | Linh Tran Stephens,<br>11063 S. Memorial Dr. Ste. D #235<br>Tulsa, OK 74133-7366<br>(c)817/631-3223<br><u>Linhstephens7@gmail.com</u> |

s//Andrew C. Jayne
_____

5

103

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

LINH TRAN STEPHENS,                    )
                                       )
              Plaintiff,               )
                                       )
v.                                     )          Case No. 24-CV-216-JDR-CDL
                                       )
CHILD SUPPORT SERVICES OF              )
OKLAHOMA DEPARTMENT OF                 )
HUMAN SERVICES, *et al.*               )
                                       )
              Defendants.              )

---

## DEFENDANTS CHARLES SCHWAB & CO. AND MARY JOHNMEYER'S MOTION TO DISMISS AND BRIEF IN SUPPORT

---

Tara A. LaClair, OBA #21903 (Lead Trial Counsel)
Mary H. Tolbert, OBA #17353
**STEPTOE & JOHNSON, PLLC**
210 Park Avenue, Suite 2300
Oklahoma City, Oklahoma 73102
Telephone: (405) 930-5166
tara.laclair@steptoe-johnson.com
molly.tolbert@steptoe-johnson.com
**ATTORNEYS FOR DEFENDANTS
CHARLES SCHWAB & CO., INC.
AND MARY JOHNMEYER**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ......................................................................................... i

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION ................................................................................................1

FACTUAL BACKGROUND .............................................................................2

    I.  Plaintiff's Schwab Accounts ...................................................................2

    II.  The Tulsa County District Court's Child Support Orders .............................3

    III. CSS's Levy of Plaintiff's Schwab Accounts for Past-Due Child Support ...................4

ARGUMENT AND AUTHORITIES .................................................................6

    I.  THE COURT SHOULD DISMISS CLAIM #1 FOR LACK OF SUBJECT MATTER JURISDICTION BASED ON *YOUNGER* ABSTENTION .........................................6

    II.  PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE SCHWAB DEFENDANTS UNDER ANY FEDERAL STATUTE .................................................8

        A. The Court should dismiss Claim #2 because unpaid child support is not a "debt" within the meaning of the FDCPA ........................................................8

        B. The Court should dismiss Claim #3 because there is no civil cause of action for mail fraud, wire fraud, bank fraud, or impersonating a judge or IRS agent ..........10

        C. The Court should dismiss Claim #4 because "conspiracy to violate rights" is not a valid predicate act under RICO ............................................................11

        D. The court should dismiss Claim #5 and Claim #6 because private parties   such as the Schwab Defendants may not be liable under § 1983 and there is no civil cause of action for "deprivation of rights" ..................................................11

        E. The Court should dismiss Claim #7 because RFPA applies only where information is provided to the federal government .................................................12

F.  The Court should dismiss Claim #8 because there is no civil cause of action for deprivation of rights under color of law ...............................................................13

G.  The Court should dismiss Claim #9 because there is no civil cause of action for violation of 18 U.S.C. § 2340 ................................................................................14

H.  The Court should dismiss Claim #10 because there is no civil cause of action for misappropriation of state funds................................................................................14

I.  The Court should dismiss Claim #11 because there is no civil cause of action for extortion .......................................................................................................................14

J.  The Court should dismiss Claim #12 because there is no civil cause of action under 28 U.S.C. § 4101(1) ................................................................................................15

K.   The Complaint contends no allegations regarding any actions taken by Ms. Johnmeyer and therefore all claims against her should be dismissed....................15

III.      CONCLUSION.........................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Amanatullah v. State Bd. of Med. Exam'rs*,
  187 F.3d 1160 (10th Cir. 1999) ................................................................. 7

*Andrews v. Heaton*,
  483 F.3d 1070 (10th Cir. 2007) ............................................................... 13

*Ankenbrandt v. Richards*,
  504 U.S. 689 (1992) ................................................................................. 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................. 6

*Beck v. Prupis*,
  529 U.S. 494 (2000) ............................................................................... 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................. 6

*Brown v. Child Support*,
  878 F. Supp. 1451 (D. Utah 1994) .......................................................... 9

*Campbell v. Baldwin*,
  90 F. Supp. 2d 754 (E.D. Tex. 2000) ...................................................... 9

*Chapman v. Chase Manhattan Mortg. Corp.*,
  2007 WL 2815246 (N.D. Okla. Sept. 24, 2007) ..................................... 15

*Conforth v. Goldman*,
  2010 WL 11565115 (W.D. Okla. Nov. 29, 2010) .................................... 9

*Conry v. Barker*,
  2015 WL 5636405 ................................................................................. 10

*Corley v. Vance*,
  365 F. Supp. 3d 407 (S.D.N.Y. 2019) .................................................... 13

*Diaz v. Paul J. Kennedy L. Firm*,
  2001 WL 37125148 (D.N.M. Feb. 27, 2001) .......................................... 11

*Eliahu v. Jewish Agency for Israel*,
  919 F.3d 709 (2d Cir. 2019) .................................................................. 15

iii

*Farris v. Poppell*,
  221 F.3d 1351 (10th Cir. 2000)...................................................................... 12

*Fullerton v. Monongahela Connecting R. Co.*,
  242 F. Supp. 622 (W.D. Pa. 1965) ............................................................... 10

*Gee v. Pacheco*,
  627 F.3d 1178 (10th Cir. 2010)........................................................................ 2

*Graham v. Tennessee Dep't of Lab. & Workforce Dev.*,
  556 F. Supp. 2d 1298 (N.D. Okla. 2008) ..................................................... 10

*Hicken v. Arnold, Anderson & Dove, PLLP*,
  137 F. Supp. 2d 1141 (D. Minn. 2001) .......................................................... 9

*Kenney v. Helix TCS, Inc.*,
  939 F.3d 1106 (10th Cir. 2019)........................................................................ 6

*Knight v. Mooring Cap. Fund, LLC*,
  749 F.3d 1180 (10th Cir. 2014)........................................................................ 8

*Lindke v. Freed*,
  601 U.S. 187 (2024) ....................................................................................... 12

*Mabe v. G.C. Servs. Ltd. P'ship*,
  32 F.3d 86 (4th Cir. 1994) ............................................................................... 9

*Marx v. Gen. Revenue Corp.*,
  568 U.S. 371 (2013) ......................................................................................... 8

*Moore v. Sims*,
  442 U.S. 415 (1979) ......................................................................................... 7

*Morrow v. Winslow*,
  94 F.3d 1386 (10th Cir.1996)........................................................................... 8

*Okoro v. Garner*,
  21 F. App'x 486 (7th Cir. 2001) ...................................................................... 9

*Patterson v. Vanguard Car Rental USA, Inc.*,
  2009 WL 10706318 (E.D.N.Y. June 30, 2009)............................................... 9

*Phillips v. Martin*,
  315 Fed. App'x 43 (10th Cir. 2008)................................................................. 8

iv

*Serna v. Denver Police Dep't,*
  58 F.4th 1167 (10th Cir. 2023) ............................................................................. 13

*Serna v. Webster,*
  2023 WL 6382099 (10th Cir. Oct. 2, 2023) ......................................................... 13

*Silver v. Dystrup-Chiang,*
  2022 WL 741903 .................................................................................................... 9

*Tucker v. United States Court of Appeals for Tenth Circuit,*
  815 Fed. App'x 292 (10th Cir. 2020) .................................................................. 14

*Williams v. Jewell,*
  107 F.3d 881, 1997 WL 100929 (10th Cir. Mar. 7, 1997) ................................... 7

*Wisdom v. First Midwest Bank, of Poplar Bluff,*
  167 F.3d 402 (8th Cir. 1999) ............................................................................... 15

*Wright v. Serrano,*
  2013 WL 183722 (N.D. Okla. Jan. 17, 2013) ..................................................... 10

*Younger v. Harris,*
  401 U.S. 37 (1971) ................................................................................................. 2

## Federal Statutes

12 U.S.C. § 3401(3) ...................................................................................................... 13
12 U.S.C. § 3403 ........................................................................................................... 12
15 U.S.C. §§ 1692 ........................................................................................................... 8
18 U.S.C. § 241 ............................................................................................................. 11
18 U.S.C. § 242 ............................................................................................... 11, 12, 13
18 U.S.C. § 641 ............................................................................................................. 13
18 U.S.C. § 643 ............................................................................................................. 14
18 U.S.C. § 644 ............................................................................................................. 14
18 U.S.C. § 648 ............................................................................................................. 14
18 U.S.C. § 649 ............................................................................................................. 14
18 U.S.C. § 650 ............................................................................................................. 14
18 U.S.C. § 651 ............................................................................................................. 14
18 U.S.C. § 652 ............................................................................................................. 14
18 U.S.C. § 653 ............................................................................................................. 14
18 U.S.C. § 912 ............................................................................................................. 10
18 U.S.C. § 1201 ........................................................................................................... 13
18 U.S.C. § 1341 ........................................................................................................... 10
18 U.S.C. § 1343 ........................................................................................................... 10
18 U.S.C. § 1951 ........................................................................................................... 15

v

18 U.S.C. § 1962(d) ........................................................................... 11
18 U.S.C. § 2340 ............................................................................... 14
18 U.S.C. § 2340A ............................................................................. 14
18 U.S.C. § 2340B ............................................................................. 14
22 U.S.C. § 7102 ............................................................................... 13
22 U.S.C. § 7102(1) ........................................................................... 13
28 U.S.C. § 4101(1) ........................................................................... 15
28 U.S.C. § 4102 ...............................................................................15
42 U.S.C. § 666 ................................................................................... 4
42 U.S.C. § 1983 .......................................................................... 11, 12

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................... 2, 6

**Regulations**

25 C.F.R. § 11.404 ....................................................................... 11, 12

Defendants Charles Schwab & Co. ("Schwab") and Mary Johnmeyer [collectively "the Schwab Defendants"] move the Court to dismiss Claim #1 of the Complaint (ECF No. 2) for lack of subject matter jurisdiction based on the *Younger* abstention doctrine, and further move the Court to dismiss with prejudice all remaining claims in the Complaint under Rule 12(b)(6) for failure to state a claim on which relief may be granted. In support of this Motion, the Schwab Defendants would show the Court as follows:

## INTRODUCTION

Plaintiff has, since 2015, been a party to a family law proceeding in the District Court for Tulsa County, Oklahoma. *See Stephens v. Stephens*, Case No. FD-2015-2228 (Tulsa County). On October 14, 2022, the Tulsa County District Court ordered Plaintiff to pay child support to her ex-husband and Plaintiff thereafter failed to comply with that order. Accordingly, a child support proceeding was opened by Defendant Child Support Services of the Oklahoma Department of Human Services ("CSS") and CSS issued a Notice of Levy to Schwab requiring, first, that it freeze Plaintiff's accounts and, later, that it liquidate securities owned by Plaintiff in order to satisfy the levy.

On February 20, 2024, the Tulsa County District Court issued an Order Modifying the Decree of Dissolution of Marriage, which included findings of fact and conclusions of law regarding Plaintiff's non-compliance with her past child support obligations and set the amount of those obligations moving forward. Since that time, Plaintiff has filed several pleadings demanding that the District Court find that her Schwab accounts were exempt from garnishment and that she is entitled to a hardship exemption to relieve her of the obligation to pay of child support. Plaintiff alleges that appeals of the child-support orders are currently on appeal.

Despite the on-going state court and administrative proceedings, Claim #1 of Plaintiff's Complaint asks this Court to vacate the child support orders of the District Court, hold that child support was improperly awarded, and stay all garnishment proceedings by CSS and its employees [collectively "the State Defendants"]. Plaintiff thus plainly asks this Court to interfere with ongoing state civil and administrative proceedings involving matters which traditionally look to state law for their resolution and/or implicate significant state policies. Under such circumstances, and as described more fully below, this Court should abstain from exercising jurisdiction over Claim #1 under *Younger v. Harris*, 401 U.S. 37 (1971).

Plaintiff's remaining claims are based either on federal criminal statutes for which no private civil cause of action exists (Claims #3, 7, 8, 9, 10, 11, 12), or on facially inapplicable civil statutes (Claims # 2, 4, 5, 6). Pursuant to Rule 12(b)(6), this Court should dismiss these claims for failure to state a claim for which relief may be granted. Further, because there are no circumstances under which Plaintiff could state a claim against the Schwab Defendants under these statutes, amendment would be futile, and the claims should be dismissed with prejudice.

## **FACTUAL BACKGROUND**

The following is a summary of the facts alleged by Plaintiff in the Complaint (ECF No. 2), along with the terms of (1) documents that Plaintiff relies on and incorporates into the Complaint, (2) documents referenced in the complaint that are central to Plaintiff's claims and whose authenticity cannot be disputed, and (3) matters of which the Court may take judicial notice. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). While the Schwab Defendants dispute many of the facts alleged by Plaintiff, they are accepted herein in accordance with Fed. R. Civ. P. 12(b)(6).

### **Plaintiff's Schwab Accounts:**

2

1.      Plaintiff is the owner of multiple Schwab accounts, including a Schwab Rollover Contributory IRA with the last 4 digits 2605. Compl., ¶¶ 24, 26, 27.

**The Tulsa County District Court's Child Support Orders:**

2.      Plaintiff is a party to a family law proceeding in the District Court of Tulsa County known as *Stephens v. Stephens*, Case No. FD-2015-2228 [hereinafter the "Tulsa County Case"]. *See* Compl., ¶ 26 (acknowledging filings in Case No. FD-2015-2228); Compl., Exh. 2 at pp. 40-47[1] (pleading entitled "Demand for Justice and Administrative Review re: Bank Levy and Child-Support Amount; Demand to Cease and Desist," filed by Plaintiff in Case No. FD-2015-2228).

3.      On October 14, 2022, the District Court issued a Child Support Order in the Tulsa County Case. *See* Exh. A (LaClair Decl.) at Exh. 1.[2] This Order established Plaintiff's obligation to pay child support to her ex-husband for the support of their daughter.

4.      On February 20, 2024, the District Court issued an Order Modifying the Decree of Dissolution of Marriage in the Tulsa County Case. *See* Exh. A at Exh. 2.[3] In addition to providing a lengthy history of the divorce and child support proceedings, the Order modified the amount of child support payable by Plaintiff to her ex-husband going forward and also found that Plaintiff owed "an arrearage judgment in the principal amount of $61,794.52 for the period August, 2017 to March 1, 2024." *Id*. at 25.

5.      On April 22, 2024, Plaintiff filed a document in the Tulsa County Case entitled "Request to Stop Garnishment and Undue Hardship Exemption Claim." *See* Exh. A at Exh. 3. The contents of the Request to Stop Garnishment are referenced in the Complaint in that they are

---

[1] Reference is to pagination reflected on the ECF filing.

[2] This document is referenced at page 28 of the Complaint and is central to Plaintiff's claims in that Plaintiff asks the Court to vacate the Order.

[3] This document is referenced at pages 28-29 of the Complaint and is central to Plaintiff's claims in that Plaintiff asks the Court to vacate the Order.

substantially identical to the material set forth at ¶¶ 43-47 and Exhibit 5 of the Complaint here. This request apparently remains pending in the Tulsa District Court.

6.      On April 22, 2024, Plaintiff also filed a document in the Tulsa County Case entitled "Demand for Justice and Administrative Review re Bank Levy and Child-Support Amount; Demand to Cease and Desist," which is attached as Exh. 2 to the Complaint. This Demand apparently remains pending in the Tulsa District Court.

7.      The child support orders are currently on appeal. Compl., ¶¶ 29, 32.

**CSS's Levy of Plaintiff's Schwab Accounts for Past-Due Child Support:**

8.      Plaintiff acknowledges that she is a party to a child support proceeding in CSS identified as Case No. 948641001. *See, e.g.,* Compl., at Exh. 3, p. 49; Compl., at Exh. 4, p. 51; Compl., at Exh. 7, pp. 71-72.

9.      On April 10, 2024, Schwab emailed Plaintiff and informed her that Schwab had received a Notice of Levy from CSS relating to Case No. 948641001. Compl., ¶ 27 & Exh. 1. The Notice, which Schwab attached to its email, indicated that CSS had levied Plaintiff's Schwab account ending in 2605 because she owed past-due child support in the amount of $64,445.92. Compl., ¶ 27 & Exh. 1. The levy was issued by CSS "pursuant to authority to attach or seize assets of noncustodial parents in financial institutions, 42 U.S.C. § 666." *Id*. Schwab's email stated:

> <u>As required by law</u> we have frozen the assets in your account(s), up to the amount specified in the document, and will deliver those proceeds to the agency on the specified payment date . . . As a courtesy, we have included an Explanation of a Levy, to help you better understand how your account(s) will be affected. In order for the restrictions to be removed, you must obtain a Release Notice from the issuing agency. Unless we receive a Release Notice from the issuing agency, <u>we are required by law to comply with the demands as outlined in the document</u>.

Compl., ¶ 27 (emphasis added).

10.      Plaintiff emailed Schwab twice on April 10, 2024, to object to the levy. Compl., ¶ 29.

11.    Schwab replied less than an hour after receiving Plaintiff's second email, advising Plaintiff that she needed to contact the levying agency (*i.e.*, CSS) and stating that "Schwab is legally obligated to comply with a levy, and can only take direction from the levying agency." Compl., ¶ 30 (emphasis added).

12.    On April 30, 2024, Plaintiff received an email from Schwab with the heading "IMMEDIATE ACTION REQUESTED." Compl., ¶ 34 & Exh. 3. Schwab notified Plaintiff that it had received a notice from CSS requiring Schwab to liquidate the securities in her account. *Id*. "As a courtesy, Schwab will refrain from acting upon the order for a short period to give you an opportunity to liquidate securities to generate enough cash to satisfy the notice. However, if Schwab does not receive instructions from you by May 7, 2024, Schwab shall execute security sales in alphabetical order until sufficient cash has been generated to satisfy the order." *Id*. (emphasis added).

13.    Plaintiff responded to Schwab the next day, repeating the objections raised in her original April 10th email. Compl., ¶ 35. Plaintiff also went to a local Schwab branch office to file an internal complaint about the levy. Compl., ¶ 36.

14.    Consistent with its email to Plaintiff, and having received no instructions to the contrary, on May 7, 2024, Schwab executed securities sales on Plaintiff's account -2605 to satisfy the CSS levy. *See* Compl., ¶ 25 & Exh. 8.

15.    Plaintiff filed her Complaint against CSS, the Schwab Defendants, and others on May 8, 2024.[4]

---

[4] Plaintiff has filed two additional lawsuits relating to the Tulsa County Case: (1) *Stephens v. Seibert*, Case No. 23-cv-553-GKF-SH (N.D. Okla.), against the judge of the Tulsa County District Court as well as Plaintiff's ex-husband and his attorney; and (2) *Stephens v. Parks*, Case No. 24 cv-2590-GKF-MTS (N.D. Okla.), against several of Plaintiff's former attorneys.

16. The Schwab Defendants move the Court to dismiss Claim #1 of the Complaint (ECF No. 2) for lack of subject matter jurisdiction based on the *Younger* abstention doctrine. The Schwab Defendants further move the Court to dismiss with prejudice all remaining claims brought against them in the Complaint under Rule 12(b)(6) for failure to state a claim on which relief may be granted.

## ARGUMENT AND AUTHORITIES

On a motion to dismiss, courts require "enough facts to state a claim to relief that is plausible on its face." *Kenney v. Helix TCS, Inc*., 939 F.3d 1106, 1109 (10th Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 570. When deciding a motion to dismiss under Rule 12(b)(6), the Court should accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor. *See Kenney*, 939 F.3d at 1109. However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## I.   THE COURT SHOULD DISMISS CLAIM #1 FOR LACK OF SUBJECT MATTER JURISDICTION BASED ON *YOUNGER* ABSTENTION.

In Claim # 1 of her Complaint, as set forth in ¶¶ 43-47, Plaintiff asks this Court to hold that her Schwab accounts are exempt from garnishment and that she is entitled to a hardship exemption from payment of child support. Plaintiff also asks the Court to grant her "claim for Undue Hardship Exemption" and her "Request to Stop All Garnishment, Levying, Liquidation," which have not yet been heard by the Tulsa District Court. *See* Compl., at p. 27. Plaintiff also asks the Court to vacate the October 14, 2022, and February 20, 2024, child support orders, and to reinstate a prior child support order entered by a court in Oregon in 2016. *Id*., pp. 28-29. Plaintiff further asks the

6

Court to prohibit any further garnishment proceedings by CSS and the Schwab Defendants. *Id.*, p.

21.

The *Younger* abstention doctrine recognizes that principles of equity, comity, and federalism motivate a "longstanding public policy against federal court interference with state court proceedings." *Younger*, 401 U.S. at 43-45.

> *Younger* dictates that a federal district court abstain from exercising jurisdiction over federal claims when (1) a state criminal, civil or administrative proceeding is pending; (2) the state court provides an adequate forum to hear the claims raised in the federal complaint; and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies. Id.

*Amanatullah v. State Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999) Absent extraordinary circumstances, abstention is mandatory when these elements are satisfied. *Id*.

Here, the three factors are clearly satisfied. First, Plaintiff concedes that there are both ongoing state civil proceedings (Case No. FD-2015-2228) and ongoing state administrative proceedings (Case No. 948641001) addressing Plaintiff's child support obligations and her failure to meet those obligations. Second, the Complaint contains no allegation that the Tulsa County District Court and the Oklahoma Court of Civil Appeals/Oklahoma Supreme Court do not provide an adequate forum for the review of the child support orders and any garnishment actions taken by the State Defendants. In fact, Plaintiff states that she is currently appealing the child support orders and the order finding her in contempt for failure to pay child support. *See, e.g.,* Compl., ¶¶ 29, 32.

Finally, domestic relations, including child support obligations, are traditional areas of state concern that involve important state interests. *See, e.g., Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (whole subject of domestic relations of husband and wife, parent and child, belongs to laws of states and not laws of United States); *Moore v. Sims*, 442 U.S. 415, 435 (1979) (family relations are traditional area of state concern); *Williams v. Jewell*, 107 F.3d 881, 1997 WL 100929,

7

at *2 (10th Cir. Mar. 7, 1997) (issues involving family relations pose questions of important state interest); *Morrow v. Winslow*, 94 F.3d 1386, 1397 (10th Cir.1996) (state has interest in orderly conduct of proceedings in its courts in manner which protects interest of child and family).

Because all three factors for *Younger* abstention are present here, this Court should decline to exercise jurisdiction over Claim #1, which <u>directly</u> asks the Court to interfere with the state civil and administrative proceedings. *See Phillips v. Martin*, 315 Fed. App'x 43 (10th Cir. 2008) (affirming order of district court abstaining from hearing lawsuit asking court to enjoin plaintiff's ex-wife from efforts to collect child support). If the child support orders or garnishment efforts are incorrect, Plaintiff will have her claims heard by the appellate courts of the State of Oklahoma. This Court should not interfere with the progress of those claims in the state courts.

## II. PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE SCHWAB DEFENDANTS UNDER ANY FEDERAL STATUTE.

The Complaint purports to state 11 additional claims against the Schwab Defendants under a variety of federal statutes. As shown below, none of these statutes creates a cause of action under which Plaintiff could possibly recover from the Schwab Defendants. Therefore, these claims should be dismissed. And because amendment could not cure the defects with these claims, the Schwab Defendants ask the Court to dismiss these claims with prejudice. *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (dismissal with prejudice appropriate where it would be futile to give pro se plaintiff an opportunity to amend).

### A. The Court should dismiss Claim #2 because unpaid child support is not a "debt" within the meaning of the FDCPA.

In Claim #2, Plaintiff alleges that the actions of the Schwab Defendants and the State Defendants to collect Plaintiff's overdue child support violate the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*. "The FDCPA is a consumer protection statute that prohibits certain abusive, deceptive, and unfair debt collection practices." *Marx v. Gen. Revenue*

*Corp.*, 568 U.S. 371, 374 n.1 (2013). A threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a "debt." *Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86, 87-88 (4th Cir. 1994). "When an obligation is created by something other than a consumer transaction, the obligation is not a 'debt' as defined by the FDCPA." *Conforth v. Goldman*, No. CIV-10-1003-R, 2010 WL 11565115, at *1 (W.D. Okla. Nov. 29, 2010) (holding that "Plaintiff's obligations to pay alimony and attorney's fees set forth in the Decree of Dissolution of Marriage … are not 'debts' within the meaning of the Fair Debt Collection Practices Act") (citations omitted).

Although apparently not yet addressed by the Tenth Circuit, other "courts have been unanimous in holding that child support payments are not a 'debt' covered by the [FDCPA]." *Campbell v. Baldwin*, 90 F. Supp. 2d 754, 757 (E.D. Tex. 2000). *See also, e.g., Mabe*, 32 F.3d at 88 (child support obligations "do not qualify as 'debts' under the FDCPA because they were not incurred to receive consumer goods or services"); *Okoro v. Garner*, 21 F. App'x 486, 488 (7th Cir. 2001) (child support obligation not a "debt" under the FDCPA); *Silver v. Dystrup-Chiang*, Case No. 2:20-cv-01339-RAJ, 2022 WL 741903, at *2 ("courts have held that an obligation to pay child support does not constitute a 'debt' under the FDCPA"); *Patterson v. Vanguard Car Rental USA, Inc.*, Case No. 07-CV-2209 (SLT)(LB), 2009 WL 10706318, at *2 (E.D.N.Y. June 30, 2009) ("Plaintiff's court-imposed child support obligation does not satisfy this definition [of "debt"] and as a result does not fall within the scope of the FDCPA."); *Hicken v. Arnold, Anderson & Dove, PLLP*, 137 F. Supp. 2d 1141, 1143 (D. Minn. 2001) (noting that courts have "consistently held [the collection of child support payments] is not covered under the FDCPA"); *Brown v. Child Support Advocs.*, 878 F. Supp. 1451, 1454 (D. Utah 1994) (holding that "child support payments are not 'debts' within the meaning of the [FDCPA]").

Because the Complaint demonstrates that the actions of Defendants challenged by Plaintiff relate solely to efforts to collect Plaintiff's overdue child support obligation, the Complaint fails to state claim against the Schwab Defendants for violation of the FDCPA and Claim #2 should be dismissed with prejudice.

**B.      The Court should dismiss Claim #3 because there is no civil cause of action for mail fraud, wire fraud, bank fraud, or impersonating a judge or IRS agent.**

In Claim #3, Plaintiff appears to allege that Defendants engaged in mail and wire fraud.[5] This Court has held that "a private citizen cannot bring a federal criminal mail fraud action, nor does the federal mail fraud statute, Title 18 U.S.C. § 1341, provide for a private cause of action." *Graham v. Tennessee Dep't of Lab. & Workforce Dev.*, 556 F. Supp. 2d 1298, 1300 (N.D. Okla. 2008) (citations omitted). Further, 18 U.S.C. § 1343 "makes it a criminal offense to commit wire fraud, but federal criminal statutes do not create a private right of action." *Wright v. Serrano*, No. 12-CV-0439-CVE-PJC, 2013 WL 183722, at *5 (N.D. Okla. Jan. 17, 2013) (citations omitted).

The caption of the Complaint suggests that Plaintiff also brings claims against Defendants for bank fraud and for impersonating an IRS agent or judge, in violation of 18 U.S.C. § 912. Again, however, "bank fraud is a crime, not a civil cause of action." *See, e.g., Conry v. Barker*, No. CV14CV02672CMAKLM, 2015 WL 5636405, at *4 n. 18 (D. Colo. Aug. 11, 2015), *report and recommendation adopted*, No. 14-CV-02672-CMA-KLM, 2015 WL 5608133 (D. Colo. Sept. 24, 2015). Neither does a violation of the false personation statute give rise to a civil cause of action. *Fullerton v. Monongahela Connecting R. Co*., 242 F. Supp. 622, 624-25 (W.D. Pa. 1965).

---

[5] Claims #3-#12 are listed in the caption of the Complaint, but Plaintiff does not otherwise list her claims or articulate the elements of those claims and the factual allegations that allegedly show her entitlement to relief on them. The Schwab Defendants have attempted to ascertain the nature of these claims as best they can. Because, as shown below, Plaintiff could not recover under any of these causes of action as a matter of law, Plaintiff is not entitled to amend the Complaint to more fully address these claims.

**C.   The Court should dismiss Claim #4 because "conspiracy to violate rights" is not a valid predicate act under RICO.**

In Claim #4, Plaintiff alleges that the Schwab Defendants participated in a RICO conspiracy with CSS and other state actors. *See* Compl., at p. 1. A RICO conspiracy claim under 18 U.S.C. § 1962(d) requires a showing of the existence of a conspiracy and the commission of an overt act in furtherance of the conspiracy that causes injury to the plaintiff. *See Beck v. Prupis*, 529 U.S. 494, 505-06 (2000); *see also* 18 U.S.C. §§ 1962(d), 1964(c). The overt act must be an act of racketeering or otherwise wrongful under RICO. *Beck*, 529 U.S. at 505.

Plaintiff alleges that the RICO predicate act is "conspiracy against rights" under 18 U.S.C. § 241. Section 1961(1) contains an exhaustive list of "racketeering" acts, also known as "predicate acts." *Id*. at 497 n.2. "Because that list does not include conspiracy to violate rights, these alleged acts cannot be predicate acts in support of Plaintiffs' RICO allegation." *Diaz v. Paul J. Kennedy L. Firm*, No. CIV 00-0735 PK/LFG, 2001 WL 37125148, at *3-4 (D.N.M. Feb. 27, 2001) (emphasis added), *aff'd*, 289 F.3d 671 (10th Cir. 2002). Therefore, Plaintiff fails to allege a RICO conspiracy under § 1962(d).

**D.   The Court should dismiss Claim #5 and Claim #6 because private parties such as the Schwab Defendants may not be liable under § 1983 and there is no civil cause of action for "deprivation of rights."**

In Claim #5, Plaintiff appears to bring a claim against Defendants for violation of civil rights under 42 U.S.C. § 1983 and deprivation of rights under 18 U.S.C. § 242. *See* Compl., at p. 1. The Complaint's caption references "Fourteenth Amendment" as to this claim. In Claim #6, Plaintiff also appears to bring a claim against Defendants for violation of civil rights under 42 U.S.C. § 1983 and deprivation of rights under 18 U.S.C. § 242, but references the Fourth Amendment, unwarranted seizure of bank accounts, false imprisonment, and unlawful arrest under 25 C.F.R. § 11.404. *See* Compl., at p. 1.

11

Section 1983 "protects against acts attributable to a State, not those of a private person. This limit tracks that of the Fourteenth Amendment, which obligates *States* to honor the constitutional rights that § 1983 protects." *Lindke v. Freed*, 601 U.S. 187, 194-95 (2024) (italics in the original). "In short, the state-action requirement is both well established and reinforced by multiple sources." *Id*. at 195. The Schwab Defendants are not state actors, nor does Plaintiff allege that they are. Accordingly, Plaintiff cannot state a claim against the Schwab Defendants under § 1983 as a matter of law, regardless of whether that claim focuses on the Fourteenth Amendment, the Fourth Amendment, or any other law.

As to Plaintiff's purported claim for deprivation of rights under 18 U.S.C. § 242, this is a criminal statute for which there is no private right of action. *Farris v. Poppell*, No. 00-6034, 221 F.3d 1351, 2000 WL 990678, at *2 (10th Cir. July 19, 2000) (holding that "the district court properly dismissed Mr. Farris's claims as frivolous to the extent that they were based on 18 U.S.C. § 242"). Accordingly, Plaintiff cannot bring a claim against the Schwab Defendants under this statute.[6]

> **E.     The Court should dismiss Claim #7 because the RFPA applies only where information is provided to the federal government.**

In Claim #7, Plaintiff appears to bring a claim for "[f]raudulently obtained bank accounts information" in violation of the 12 U.S.C. § 3403. *See* Compl., at p. 1. This statute is part of the Right to Financial Privacy Act ("RFPA") and provides that a financial institution may not "provide to any Government authority access to or copies of, or the information contained in, the financial records of any customer except in accordance with the provisions of this chapter." 12 U.S.C. §

---

[6] Although Plaintiff references 25 C.F.R. § 11.404, this is a provision of the Code of Federal Regulations applicable to the Bureau of Indian Affairs, specifically Courts of Indian Offenses. The Complaint contains no allegations explaining why these regulations are applicable to her or the Schwab Defendants.

3403. The term "Government authority" is explicitly limited, however, to "any agency or department of the United States, or any officer, employee, or agent thereof[.]" 12 U.S.C. § 3401(3) (emphasis added). *See also Corley v. Vance*, 365 F. Supp. 3d 407, 452 (S.D.N.Y. 2019), *aff'd sub nom. Corley v. Wittner*, 811 F. App'x 62 (2d Cir. 2020) ("[T]he RFPA only governs and protects against the disclosure of financial records to the <u>federal</u> government.") (emphasis added).

The Complaint contains no allegation that the Schwab Defendants provided Plaintiff's financial records to any agency or department of the United States. Indeed, the only governmental agency referenced in the Complaint is the Oklahoma Department of Human Services. Because Plaintiff does not allege that the Schwab Defendants provided bank information to a federal agency, Plaintiff cannot as a matter of law state a claim against the Schwab Defendants for violation of the RFPA.

> **F.     The Court should dismiss Claim #8 because there is no civil cause of action for deprivation of rights under color of law.**

In Claim #8, Plaintiff appears to allege that Defendants have deprived her of rights under color of law in violation of 18 U.S.C. §§ 242, 641, and 1201, as well as 22 U.S.C. § 7102(1), by unlawfully converting the courts and DHS into "an instrument of crime." *See* Compl., at p. 1. The statutes Plaintiff cites are criminal statutes that do not provide for a private civil cause of action.[7] "[F]ederal criminal statutes that 'do not provide for a private right of action' are 'not enforceable through a civil action.'" *Serna v. Webster*, No. 23-2091, 2023 WL 6382099, at *2 (10th Cir. Oct. 2, 2023) (unpublished) (quoting *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007)). Because Plaintiff asserts claims under federal statutes that do not provide for private causes of

---

[7] Specifically, 18 U.S.C. § 242 addresses "deprivation of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States"; 18 U.S.C. § 641 addresses embezzlement of federal funds; 18 U.S.C. § 1201 addresses kidnapping; and 22 U.S.C. § 7102 addresses sex trafficking.

action, amendment would not cure that defect. *Serna v. Denver Police Dep't*, 58 F.4th 1167, 1172 (10th Cir. 2023). *See also Tucker v. United States Court of Appeals for Tenth Circuit*, 815 Fed. App'x 292, 294 (10th Cir. 2020) (dismissing civil claims based upon federal criminal statutes as frivolous).

**G.   The Court should dismiss Claim #9 because there is no civil cause of action for violation of 18 U.S.C. § 2340.**

In Claim #9, Plaintiff appears to allege that Defendants have intentionally inflicted emotional distress on her in violation of 18 U.S.C. § 2340. *See* Compl., at p. 2. This statute makes it a crime to commit or attempt to commit torture outside the United States. 18 U.S.C. § 2340A. That statute specifically provides that it should not "be construed as creating any substantive or procedural right enforceable by law by any party in any civil proceeding." 18 U.S.C. § 2340B.

**H.   The Court should dismiss Claim #10 because there is no civil cause of action for misappropriation of state funds.**

In Claim #10, Plaintiff appears to bring a variety of causes of action for misappropriation of state funds, citing 18 U.S.C. § 643 (failure to account for public money by officer or agent of the United States), § 644 (receipt of unauthorized deposit of public money), 648 (misusing public money), § 649 (failing to deposit public money), § 650 (failing to safeguard deposits of public money), § 651 (falsely certifying payment of public money), § 652 (disbursing an inadequate amount of public money), and § 653 (misusing public money). *See* Compl., at p. 2. None of these criminal statutes provides for a private remedy through a civil lawsuit. Accordingly, Plaintiff cannot bring a claim against the Schwab Defendants under these statutes.

**I.   The Court should dismiss Claim #11 because there is no civil cause of action for extortion.**

In Claim #11, Plaintiff purports to bring a claim for "Extortion, Abusive Debt-Collection Practices." Compl., at p. 1. Any claim for "Abusive Debt-Collection Practices" would appear to

be redundant with Plaintiff's FDCPA claim which, as previously shown, is facially invalid. With respect to the extortion claim, Plaintiff has not identified a private cause of action under either federal or state law, and courts have held that such a cause of action does not exist. *See Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 713 (2d Cir. 2019); *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 408-09 (8th Cir. 1999) (holding that there is no private cause of action under the federal extortion statute, 18 U.S.C. § 1951); *Chapman v. Chase Manhattan Mortg. Corp.*, No. 04-CV-0859-CVE-FHM, 2007 WL 2815246, at *7 (N.D. Okla. Sept. 24, 2007) (Oklahoma law does not recognize extortion as civil causes of action).

**J.    The Court should dismiss Claim #12 because there is no civil cause of action under 28 U.S.C. § 4101(1).**

Finally, Plaintiff purports to bring a claim for defamation in violation of 28 U.S.C. § 4101(1), indicating that this claim is based on Defendants' allegations that Plaintiff is an abuser and irresponsible for not supporting her daughter. *See* Compl., at p. 2. Section 4101 does not create a cause of action for defamation. Rather, §§ 4101 and 4102 address the standards for recognizing defamation judgments issued in foreign countries.[8]

**K.    The Complaint contains no allegations regarding any actions taken by Ms. Johnmeyer and therefore all claims against her should be dismissed.**

In the caption of her Complaint, Plaintiff states that Ms. Johnmeyer is sued "in individual capacity and in official capacity as legal counsel of Charles Schwab." Compl., at p. 1. The Complaint contains no allegations whatsoever regarding any actions taken by Ms. Johnmeyer.

---

[8] Nor does the Complaint state a claim for defamation under Oklahoma law, which requires at a minimum that a plaintiff allege that the defendant has communicated a statement to someone <u>other than the plaintiff</u> that exposed the plaintiff to "public hatred, contempt, ridicule or disgrace[.]" OUJI 28.3, DEFAMATION—ELEMENTS (PRIVATE FIGURE PLAINTIFF). Because Plaintiff concedes that all communications by the Schwab Defendants were made to Plaintiff alone, *see, e.g.*, Compl., ¶ 27 (emailed from Schwab to Plaintiff alone); *id.* at ¶ 30 (email from Schwab to Plaintiff alone); *id.* at ¶ 34 (email from Schwab to Plaintiff alone), Plaintiff cannot state a claim for defamation against the Schwab Defendants under Oklahoma law.

15

Plaintiff appears to have included Ms. Johnmeyer as a defendant only because she was the addressee on a letter from CSS to Schwab directing Schwab to liquidate securities held in Plaintiff's accounts to satisfy the levy for unpaid child-support. *See* Compl., ¶ 34 & Exh. 3. Plaintiff does not allege that Ms. Johnmeyer took any action in response to this directive, nor does she allege that Ms. Johnmeyer had any authority in her individual capacity to take any actions with regard to Plaintiff's Schwab accounts. Because the Complaint contains no factual allegations that would subject Ms. Johnmeyer to liability under any cause of action, all claims against her should be dismissed with prejudice for that reason, as well as for the reasons set forth above.

## III.   CONCLUSION.

For the foregoing reasons, the Schwab Defendants respectfully request that the Court decline to exercise jurisdiction over Claim #1 of the Complaint pursuant to the *Younger* abstention doctrine. Pursuant to Rule 12(b)(6), the Schwab Defendants further respectfully request that the Court dismiss Plaintiff's remaining claims with prejudice as to the Schwab Defendants.

Respectfully submitted,

*s/* 
Tara A. LaClair, OBA #21903
Mary H. Tolbert, OBA #17353
STEPTOE & JOHNSON, PLLC
210 Park Avenue, Suite 2300
Oklahoma City, Oklahoma 73102
Telephone: (405) 930-5166
tara.laclair@steptoe-johnson.com
molly.tolbert@steptoe-johnson.com

ATTORNEYS FOR DEFENDANTS
CHARLES SCHWAB & CO., INC.
AND MARY JOHNMEYER

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 1, 2024, a true and correct copy of the foregoing

Motion to Dismiss and Brief in Support by Defendants Charles Schwab & Co., Inc. and Mary

Johnmeyer was mailed via USPS First-Class Mail to Plaintiff Linh Tran Stephens and also

electronically transmitted to the Clerk of Court using the ECF system for filing, to:


**PLAINTIFF PRO SE**
Linh Tran Stephens
11063 S. Memorial Dr., Ste. D #235
Tulsa, OK 74133

**ATTORNEYS FOR DEFENDANT**
**CIERRA FREEMAN**
Andrew Charles Jayne          ajayne@bgjclaw.com
Shelby N. Brunette            sbrunette@bgjclaw.com


_____
Tara A. LaClair

17

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

LINH TRAN STEPHENS,          )
                             )
          Plaintiff,         )
                             )
v.                           )          Case No. 24-CV-216-JDR-CDL
                             )
CHILD SUPPORT SERVICES OF    )
OKLAHOMA DEPARTMENT OF       )
HUMAN SERVICES, *et al*.     )
                             )
          Defendants.        )

## DECLARATION OF TARA A. LaCLAIR

I, Tara A. LaClair, declare as follows:

1.      I am counsel for Defendants Charles Schwab & Co., Inc. ("Schwab"), and Mary Johnmeyer [collectively "the Schwab Defendants"]. I make this declaration in support of the Schwab Defendants' Motion to Dismiss herein. If called upon to do so, I could and would testify competently to the matters set forth in this declaration.

2.      Attached hereto as Exhibit 1 is a true and correct copy of a document entitled "Child Support Order" filed October 17, 2022, in *Stephens v. Stephens*, Case No. FD-2015-2228 (Tulsa County District Court), as obtained by my office from the Oklahoma State Courts Network ("OSCN").

3.      Attached hereto as Exhibit 2 is a true and correct copy of a document entitled "Order Modifying the Decree of Dissolution of Marriage" filed on February 20, 2024, in *Stephens v. Stephens*, Case No. FD-2015-2228 (Tulsa County District Court), as obtained by my office from OSCN.

1

4.      Attached hereto as Exhibit 3 is a true and correct copy of a document entitled
"Request to Stop Garnishment and Undue Hardship Exemption Claim" filed April 22, 2024, in
*Stephens v. Stephens*, Case No. FD-2015-2228 (Tulsa County District Court), as obtained by my
office from OSCN.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true
and correct.

Dated: Oklahoma City, Oklahoma
        June 26, 2024

_____
                    Tara A. LaClair

21042569.1

# EXHIBIT 1



*105374442 8*

## IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
## STATE OF OKLAHOMA

IN RE THE MARRIAGE OF:
LINH TRAN STEPHENS,                    )
                                       )
    PETITIONER,                        )
                                       )
and                                    )    **Case No. FD-2015-2228**
                                       )
ADAM SYLVESTER STEPHENS,               )
                                       )
    RESPONDENT,                        )

DISTRICT COURT
F I L E D

OCT 1 7 2022

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

### CHILD SUPPORT ORDER

On this <u>14th</u> day of <u>October</u>, 2022, this matter comes on before me, the undersigned Special Judge of the District Court for hearing to determine child support, pursuant to the Court's decision awarding Emergency Physical Custody to Respondent on June 6, 2022. Petitioner appeared in person pro se. The Respondent appeared in person along with his attorney of record, Gil Pilkington.

The Court, having reviewed the file, heard the arguments of the parties together with the presentation of evidence, including the testimony of Petitioner and Respondent, MAKES THE FOLLOWING FINDINGS OF FACT:

1. The original decree of dissolution from Columbia County, Oregon, filed on January 8, 2016, held that "the Respondent should have an award against the Petitioner in the sum of $586.00 per month for support of the child. As determined per the State of Oregon Child Support Calculator." The Court went on to hold that they were not setting a per child amount of support because the Petitioner was ordered to assume

the debts associated with the 2013 Jeep and 2014 Jayco Trailer, therefore the Court ordered the payment of these debts totaling $1,062.83 per month in lieu of child support.   The decree also contemplates a recalculation of child support when it states..."the amount will need to be recalculated in accordance with the then-applicable child support guidelines when a child ceases to be eligible to receive support."

2. The parties testified that Petitioner did pay off the Jeep as required in the decree.

3. The parties introduced as Courts Exhibit 1 the Release and Settlement Agreement showing that with respect to the Jayco Trailer, the parties received a Settlement of the lien in the amount of $16,790.46 and received a settlement amount of $1,731.87, (who actually received these funds was not determined by the Court).

4. The parties are the parents of one minor child.  Respondent stipulated that the Petitioner has one after born child currently residing with her and stipulated that she should receive credit within the computation for this child.

5. Petitioner testified that she is a licensed physician in the State of Oklahoma.  She was employed with the Cherokee Nation as a physician until approximately October, 2020.

6. According to the check stubs introduced as Respondent's exhibit 3, her gross monthly income for her last pay period of October, 2020 was

$8,461.54.

7. Petitioner testified that she is currently not earning a wage but working as a self-employed physician at her own clinic, Peace Joy Clinic.

8. Petitioner produced no tax documentation supporting her profit and loss statements. Rather she introduced Petitioner's exhibit 5, which simply shows a sum total of her income and expenses without any documentation to reflect how those numbers were achieved.

9. Petitioner produced her 2020 1099 which showed her unemployment compensation of $5,202.00 which occurred presumably after her employment ended with the Cherokee Nation.

10. The Court heard no testimony as to the reason the Petitioner became unemployed from the Cherokee Nation, whether it was voluntary or not. And the Petitioner has vehemently stated in prior Court settings that she is not unemployed but rather self-employed at this time.

11. Petitioner produced Petitioners exhibit 2 to show for the Court her listed monthly expenses. The total monthly expenses being $8,348.16 per month. When Respondent raised this in argument as a means to determine her imputed income the Petitioner announced that she relies on her husband's income to pay these bills. The Court heard testimony previously on June 1, 2022, that Petitioner's current husband is also a practicing physician.

12. Respondent produced his 2020 and 2021 income taxes in exhibit 7 and his current paycheck stubs in exhibit 8. Additionally, the Respondent

produced documentation with respect to health insurance provided for the minor child through his employment and the cost for the same.

The Court, having reviewed the file, heard the testimony of the parties, arguments of counsel together with the presentation of evidence, MAKES THE FOLLOWING CONCLUSIONS OF LAW:

1. The Court will set child support pursuant to the child support guidelines 43 O.S. 118(B).

2. On July 11, 2017, the Petitioner invoked the jurisdiction of this Court by asking to confirm the registration of the Oregon Decree of Dissolution.

3. On July 14, 2017, the Petitioner filed her verified Motion to Modify and requested that this Court modify the Oregon Court's child support orders pursuant to 43 O.S. 118 and award her child support.

4. There has been a material and substantial change in circumstances in that the Court found the existence of an emergency, removed physical custody of the minor child from Petitioner and placed sole physical custody with the Respondent subject to the Petitioner's right to therapeutic visitation only.

5. The Court does not find that the previous decree precludes a modification of child support and even if it did, Petitioner did not, in fact, repay the Jayco Lien as she was ordered to do in lieu of support. The Court further finds that child support is for the benefit of the child and any previous orders that would preclude the modification of child support would not be the law in the state of Oklahoma and would be in contravention of this

State's public policy as it relates to the support of minor children.

6. Pursuant to the testimony and evidence submitted, Respondent's gross monthly income is $4,381.86. Petitioner provides health insurance for the minor child in the amount of $416.95 which he will be credited with within the guidelines.

7. Pursuant to the testimony and evidence submitted, Petitioner testified that she currently receives no monthly paycheck. The Petitioner is a licensed physician in the state of Oklahoma and according to her testimony left employment where she received $8,461.54 per month and would have the Court believe that she makes $-805.47 per month. On paper Petitioner is certainly underemployed. However, pursuant to previous testimony and this Court's interactions with the Petitioner, the Court does have significant concerns regarding the mental health of the Petitioner which is why the Court previously ordered a psychological evaluation by Dr. Curtis Grundy. With this in mind the Court does not believe it to be equitable to impute the Petitioner at $18,333.33 per month as Respondent has requested as the Court does not believe she is currently capable of obtaining employment with that income.

8. Pursuant to the Oregon Decree filed on July 11, 2017, Petitioners income for child support purposes was $4,000.00. Petitioner's income in June 2019 began at $7,511.22 per month and in 2020 ended at $8,461.54 per month. The Court has nothing to base her current income on other than a 2021 tax return wherein her gross monthly income would be $2,014.58.

9. The Court finds that the Petitioner's average monthly gross income from 2019 until 2022 is $5,995.78. The Petitioner will be imputed at this amount for the determination of child support.

10.   Petitioner is ordered to begin paying monthly child support November 1, 2022 in the amount of $827.56 per month pursuant to the attached guidelines.

11.   The parties shall pay their proportionate share, Petitioner 55% and Respondent 45%, of any child care, medical, orthodontic, dentist, or therapists costs incurred on behalf of the minor children pursuant to the attached guidelines.   The party incurring the cost shall submit all receipts/requests for payment within 30 days of incurring the same and payment shall be remitted within 30 days of receipt of said proof.

12.   The Respondent is awarded a judgement for an arrearage of child support from the date the emergency physical custody change occurred, December 20, 2021 to November 1, 2022 in the amount of $5,964.40. In reaching this Judgement the Court used the base amount of support of $596.44 as the basis for the arrearage award pursuant to the testimony that Respondent only just began paying for health insurance for the minor child. All other arrearages or overpayments of child support are reserved for further decision.

Dated this 17th day of October, 2022.
IT IS SO ORDERED

Judge April Seibert

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 17th day of October, 2022, a true and correct copy of the above and foregoing instrument was mailed by regular First-Class mail and/or hand delivery to the following:

Linh Stephens
6607 S. Palm Place
Broken Arrow, Oklahoma 74011
PETITIONER Pro Se

Gil Pilkington
THE PILKINGTON LAW FIRM, PLLC
406 S. Boulder Ave., #415
Tulsa, OK 74103
ATTORNEY FOR RESPONDENT

*R. Bastow*

Deputy Court Clerk

# EXHIBIT 2

Case 4:24-cv-00216-JDR-CDL   Document 20-1   Filed 07/01/24   Page 13 of 117
Appellate Case: 25-5063   Document: 7-1   Date Filed: 05/09/2025   Page: 140

\* 1 0 5 7 8 6 9 6 1 8 \*

## IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
## STATE OF OKLAHOMA

FILED

FEB 20 2024

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

| | |
|---|---|
| IN RE THE MARRIAGE OF:<br>LINH TRAN STEPHENS, | ) |
| | ) |
| PETITIONER, | ) |
| | ) |
| and | ) Case No. FD-2015-2228 |
| | ) FD DOCKET C |
| ADAM SYLVESTER STEPHENS, | ) |
| | ) |
| RESPONDENT, | ) |

## ORDER MODIFYING THE DECREE OF DISSOLUTION OF MARRIAGE

On these 29th, 30th, 31st days of January, 2024, and 1st and 2nd days of February, 2024, this matter comes on before me, the undersigned Special Judge of the District Court for trial on Petitioner's *Motion to Modify Custody* filed July 14, 2017, Respondent's *Application for Indirect Contempt Citation-Child Support Trailer in Lieu of Child Support* filed May 23, 2019, Petitioner's *Application for Contempt Citation* filed on August 30, 2019, Petitioner's *First Application for Contempt* filed July 7, 2020, Respondent's *Motion to Modify Custody and Visitation* filed November 18, 2022, Respondent's *Application for Indirect Contempt Citation-Issuance of Subpoena against Court Order* filed January 9, 2023 and April 20, 2023, Petitioner's *Sixth Application for Contempt* filed January 17, 2023, and the amendments on January 19, 2023, Petitioner's *Application for 9th Contempt Citation against Father-Custodial Interference 4th Season* filed September 8, 2023 and Respondent's *Notice of Intent to Relocate* filed November 8, 2023.

Petitioner appeared in person, pro se. Respondent appeared in person, represented by Gilbert J. Pilkington, Jr. Stephen Hale appeared in person, having been appointed to serve as the Guardian Ad Litem for the minor child. Megan Beck appeared having been appointed to represent the minor child at court expense. Emmalene Stringer appeared on behalf of the Department of Human Services, Child Support Enforcement.

1

The Court, having reviewed the file, heard the arguments of the parties together with the presentation of evidence, including the testimony of Petitioner, Respondent, Guardian Ad Litem and multiple witnesses, MAKES THE FOLLOWING FINDINGS OF FACT:

1. The Original Stipulated General Judgment of Dissolution of Marriage and Money Award (hereinafter "Oregon Decree") was filed on January 8, 2016 in Oregon. The parties agreed to register the Oregon Decree as a Foreign Order in Tulsa County, Oklahoma on July 11, 2017. The Petitioner (hereinafter "Mother") was represented by her first attorney in this case, David Davis and the Respondent (hereinafter "Father") was represented by his first attorney, Charles Parrish.

2. There was one child born of the marriage, G.L.S. born July 24, 2013.

3. At the time of the entry of the Oregon Decree Father lived in Oregon and Mother lived in Tulsa.

4. The parties agreed to joint legal custody of the minor child pursuant to the Oregon Decree. Father had physical custody of the minor child and Mother had parenting time for a period of two weeks every June during summer vacation, with holidays to be divided equally.

5. The Oregon Decree orders Mother to maintain health insurance for the minor child.

6. The Oregon Decree acknowledges that Father *should* have an award against Mother in the sum of $586.00 per month for the support of the child. However, the parties agreed, and the Oregon court accepted the stipulation that, in lieu of the monthly child support amount, Mother would assume the monthly payment of $692.17 per month for the 2013 Jeep Wrangler, $192.43 per month for the 2014 Jayco Trailer, and insurance in the monthly amount of $179.23 for both, for a total amount of $1,063.83 per month. Furthermore, the order stated that when the debts were paid in full, Mother would sign over the property to Father.

2

7. On July 14, 2017, Mother filed her *Motion to Modify* the Oregon Decree. The motion specifically invoked the jurisdiction of the Court in Tulsa County stating that both parties and the minor child then resided in Tulsa, Oklahoma and stating explicitly in paragraph four of her motion that this Court had jurisdiction. As a basis for her motion to modify Mother asked the Court to grant her sole custody. She alleged that her medical internship had ended and Father had health issues and had been secreting the child from her. She also asked Father be ordered to pay her child support.

8. On September 11, 2017, the parties agreed on an interim basis to a week on/week off visitation schedule with the minor child. The parties reduced this to a handwritten order that was signed by Judge Theresa Dreiling.

9. Since the filing of her Motion, Mother has repeatedly and inexplicably denied the jurisdiction of this Court. Most recently, on February 9, 2024, in her <u>Written Closing Argument</u>, she again challenges the subject matter jurisdiction of the Court saying she only asked for help to enforce, not modify, the Oregon Decree. The Motions Mother has filed (both in State and Federal Court) are too numerous to outline here but in nearly every motion there is some objection to this Court's exercising of jurisdiction so the Court will take special note of the many ways Mother has sought the jurisdiction of this Court in this decision.

10. Father filed his Contempt on May 23, 2019, alleging that Mother was in contempt for failure to maintain payments on the Jayco Trailer resulting in its repossession by the manufacturer.

11. The testimony at trial was undisputed that the Jayco Trailer was repossessed by the manufacturer. Mother acknowledged signing the release and settlement agreement with Jayco contained in Respondent's exhibit 20. In addition to receiving a credit of $16,790.46

3

against the debt she was ordered to pay, she also received $1,731.87 while Father never received the title to the property nor did he receive child support since this debt was in lieu of Mother's obligation in that regard.

12. Father filed his Contempt on May 23, 2019 alleging that Mother was in contempt for failure to give him the title to the 2013 Jeep Wrangler after final payment was made in April, 2019.

13. Mother testified that she gave the title to the 2013 Jeep Wrangler to Father in August, 2019. Father acknowledged that he did eventually receive the title several months after he filed his contempt application.

14. Mother sought the jurisdiction of this Court by filing an application for contempt on August 30, 2019, alleging that Father was in contempt for failure to reimburse Mother for his share of the child's reasonable medical, dental and optical services in the amount of $1,631.47. Mother was represented by Melissa Cornell at the time of this filing and asserted this Court had jurisdiction to find Father in contempt.

15. Mother presented no evidence in support of this contempt during trial.

16. On May 8, 2020, Mother sought and was granted, temporary emergency custody of the minor child. It is important to note the allegations here because the basis of the allegations have remained a theme throughout the history of this case and still remain a very important basis for Mother's state of mind. Mother alleged in her application for emergency custody sex trafficking of the minor child and grooming behavior by Father.

17. The temporary emergency custody order remained in effect while the allegations were investigated for a period of two months. On July 8, 2020, Mother dismissed her emergency motion after review of the DHS records. Mother was still represented by Melissa Cornell at the time.

4

18. Father had no overnight visitation from May 8, 2020 to July 8, 2020.

19. Maria Chico, the investigator for this report, testified that the Department of Human Services thoroughly investigated all of the allegations, involved law enforcement and the FBI in its investigation, and conducted a forensic interview of the minor child. At the conclusion, the Department of Human Services unsubstantiated the allegations.

20. Mother was vehement in her objections and assertions that the emergency was withdrawn without her authority by Melissa Cornell, and attempted to illicit testimony that Ms. Chico's report was changed or altered by her supervisor.

21. At the dismissal of the emergency, the parties resumed the 50/50 visitation schedule. From July 8, 2020 until December 3, 2021 the parties had an equal number of overnights with the minor child.

22. On February 28, 2020, the parties agreed to the appointment of Stephen Hale as Guardian Ad Litem for the minor child with Petitioner paying for seventy-one percent (71%) and Respondent paying twenty-nine percent (29%) of the GAL's retainer and fees in this matter. Mother was represented by Melissa Cornell at the time of this agreement.

23. Mother testified at trial that she never consented to this appointment nor gave Ms. Cornell authority to do so. Additionally, Mother has filed numerous motions requesting the removal of the Guardian Ad Litem, attacking the integrity of the Guardian Ad Litem and announced in Court at trial that she never contracted with him for payment or authority to investigate this case.

24. On November 24, 2021, Mother filed an application for emergency protective order for herself and on behalf of the minor child in PO-21-3843 in Tulsa County for substantially the same allegations contained in the 2020 emergency application. Mother was represented by Erica Parks during this time.

5

25. On December 3, 2021, the State of Oklahoma filed an Application to take the minor child into Emergency Custody in Tulsa County Case, JD-2021-270. At the initial show cause hearing on December 7, 2021, Mother was present with her attorneys at the time, Dale Warner and Erica Parks. The juvenile court ordered the minor child to remain in the custody of the department of human services.

26. On December 8, 2021, the juvenile court released the minor child to the custody of Father by Court order indicating the dismissal of the minor child from Mother's Protective Order. The minor child was from this point forward removed from Mother's protective order and from Mother's custody.

27. On December 14, 2021, Father filed an application for emergency protective order in PO-2021-4059 in Tulsa County for himself and the minor child alleging that Mother was trying to take the minor child from school while she was in his custody pursuant to the DHS placement.

28. On December 20, 2021, Father sought and was granted temporary emergency custody of the minor child in this case.

29. On May 31, 2022 and June 1, 2022, the matter came on for a show cause hearing. At that time, Mother had retained a new attorney, Chandler Moxley to represent her. The Court appointed Megan Beck to represent the minor child at Court expense. The Court heard the testimony from Bridget O'Brien, the DHS case investigator, the Guardian Ad Litem, and multiple other witnesses.

30. DHS concluded and substantiated mental harm by Mother and recommended a mental health assessment and counseling. The Guardian Ad Litem recommended therapeutic visitation between the minor child and Mother. The specific mental harm alleged at the time is important because those same issues were present in the trial on the merits nearly

6

two years later.

31. At the emergency custody hearing DHS had concerns that Mother was "coaching" the child regarding making continued allegations against Father. They testified that this coaching involved having the child write things repeatedly in her diary while video taping the child doing it, this included audio recording the child and even practicing with the child what she would say. Additionally, the Court heard testimony from the Guardian Ad Litem that the minor child had disclosed that her Mother had made her a watch a sexually explicit video purportedly to educate her on what rape looks like. These allegations involved repeatedly and relentlessly interrogating, coaching or attempting to educate the child as to what was happening when in the custody of Father and making repeated allegations against Father for unsafe or criminal behavior with the child.

32. Over two years later at trial, Mother repeatedly tried to introduce the child's diary. The same diary produced during the emergency custody hearing wherein DHS alleged Mother caused mental harm by coaching the child what to write. Additionally, she asked the Court to watch a video and in the video the Court observed the minor child at the kitchen table writing in a diary while asking questions of the person holding the camera. We were off the record while the court reviewed the video and Mother commented to the Court, "look, you can see the date and time on the clock on the wall." The video was very obviously staged by Mother for the purposes of litigation. Mother vehemently wanted the Court to read what the child was writing "at her behest" in her diary.

33. Mother introduced a picture of the child holding the diary.

34. Mother introduced a video of the minor child playing a "sad song" after a visit with her Father. The Court observed the child clearly looking off camera to the person holding the camera for guidance.

7

35. Mother introduced a photograph of a face time call with her child where she adamantly asserts that the child is whispering to her and typing messages to her on the screen about inappropriate behavior at Father's home. Petitioner's exhibit 46.

36. Mother introduced a photograph of the minor child with a seatbelt. As to why this exhibit was relevant, Mother stated, "so that the Court could see that Father let her inappropriately wear a seatbelt and if she gets decapitated she will have warned all of us and it will be our fault." Petitioners exhibit 50.

37. Mother introduced a photograph of the minor child at various restaurants with people to show "Creepy Men" touching her daughter and putting her on their laps. Petitioner's exhibit 59.

38. Mother's own evidence indicates that she has been completely focused on videotaping her daughter, having her daughter write things in her diary, recording facetime calls with her daughter, educating her daughter by showing her videos and more, all in an effort to gather evidence of her initial 2020 allegations against Father.

39. Mother's evidence produced at trial was the very basis for the removal of the child in 2022.

40. The Court ordered both Mother and Father to have psychological evaluations with Dr. Curtis Grundy each at their own expense, the Court ordered the minor child to be enrolled in individual therapy with Amy Hollopeter at Father's expense, Mother was to have therapeutic visitation with Amanda Hall at her expense. The Court specifically stated that the Court would not review a change in visitation until the psychological evaluations had been completed and at least 60 days of continuous therapeutic visits had occurred.

41. Additionally, the Court ordered child support to begin on June 1, 2022 and the Court ordered the parties to exchange their income information to provide a proposed computation to the Court.

8

42. Shortly after this hearing, Chandler Moxley withdrew as the attorney of record for Mother and she has operated on a pro se basis since this time. It is very clear from the Court's ruling that the issue of Mother's mental health was THE defining issue for the Court's consideration in any modification of custody and the Court made that clear in its temporary emergency custody order and every order with Mother since.

43. Mother immediately objected to having to have a psychological evaluation from anyone other than her treating physician, she has continued that objection at every hearing and every review of visitation since this time. She has repeatedly claimed that she is of sound mind and does not need an evaluation.

44. The Court heard testimony that the evaluation cost $2,500. Mother has only recently asserted that she cannot afford the evaluation. A comprehensive analysis of Mother's income will follow with the Court's child support findings.

45. To that point, a review of the docket sheets and transcripts purchased by Mother, show that she has paid approximately $1,836.64 in court filing and copy fees for motions that are often duplicative and without any statutory or legal basis. Mother has paid approximately $3,381.00 for transcripts for at least three appeals which were not ripe for review. Mother has retained four private attorneys throughout the litigation.

46. At a subsequent review of visitation, the Court expanded Mother's visitation over Father's objection. The Court had learned from the Guardian Ad Litem that Mother was only able to see the child once per month. The Court ordered professional supervision with the Tulsa Parent Child Center in addition to therapeutic visitation. Mother immediately objected and stated that she wanted to research the agency before she would agree to use them. She specifically stated that the Parent Child Center was corrupt. The Court informed Mother that she was getting additional visitation and it was entirely her decision

9

whether or not she wanted to exercise it.

47. Father received a psychological evaluation from Dr. Curtis Grundy. Although not testified to at trial, the Court recalls in a previous hearing that the Guardian Ad Litem informed the Court that the only recommendation from Father's psychological evaluation was anger management.

48. The Guardian Ad Litem testified that Father is mean to Mother. In his report he stated, "It is painfully evident Father will never support child and Mother having a relationship."

49. The Guardian Ad Litem testified that Mother struggles with serious mental health issues affecting her ability to care for the minor child. Given these issues the Guardian Ad Litem stated in his report that Mother is unable to support a relationship between Father and child, is unable to co-parent with Father and is unable to make decisions in the child's best interest.

50. Cheryl Hall testified to supervising visits between Mother and child. Ms. Hall testified that the child was reluctant to attend and on one visit slipped her a note asking to end the visits. Ms. Hall testified to a general reluctance by the child to visit with Mother and no physical contact or engagement between Mother and child during her observations. She described the visitations as "an intense meeting."

51. Father testified that he is angry with Mother and distrustful given her continued numerous allegations against him. The Court observed his refusal to even look at Mother even when she was asking him questions. If she handed him an exhibit to look at he wouldn't accept it until she had laid it on the podium. His disdain for her was obvious.

52. Father testified that he never enrolled the child with the Court ordered counselor because she did not have availability. Father testified that instead he enrolled her with a different counselor and that she attended for a few a months. Even though the Court ordered

10

Father to enroll the minor child in counseling and the Guardian Ad Litem recommended its continuation, Father has failed to keep the minor child in counseling and other than her therapeutic visitation with Amanda Hall, the minor child is no longer in individual counseling.

53. Father testified that even though DHS recommended certain parenting courses and counseling to him he did not attend because they weren't Court orders.

54. Father has engaged in acrimonious and unnecessarily vexatious actions against Mother. He also testified to recording the minor child when he would pick her up from school. He testified to calling the police to the minor child's dentist appointment simply because step father was in attendance. At the show cause hearing the Court specifically recalls hearing testimony that Father filed a complaint with the medical board against step father, who is a physician. It is for these reasons that the Court initially ordered Father to also have a psychological evaluation. It is clear that Father takes punitive and unnecessary actions against Mother and her new husband for no valid reason.

55. Father testified that he had recently changed the minor child's school and had never informed Mother. In fact, the day of trial is the first Mother had ever heard this information.

56. Both parties allege and have demonstrated to the Court an inability to communicate or co-parent. There is absolutely no trust between the parties, the parties have filed protective orders against each other. The visible disdain and contempt the parties have for each other is evident in their courtroom interactions.

57. The Court held a three day trial on the protective orders prior to this trial and although the Court ultimately denied the protective orders, the Court did find that a mutual restraining order was necessary to prohibit both parties from having any unnecessary

11

contact.

58. Despite all of this, the Court heard testimony from the Guardian Ad Litem, that the child is currently doing well. Therapeutic visitation with Amanda Hall has been occurring regularly and Ms. Hall has observed the relationship between Mother and daughter strengthen. Since changing schools, the child is now getting A's and B's, plays soccer well, and is very artistic.

59. Ms. Hall related the improvement in therapy to the increased visitation with mother.

60. Mother has not obtained the Court ordered psychological evaluation nor is Mother currently receiving any counseling or therapeutic services for her mental health.

61. On November 8, 2022, Father filed his *Notice of Intent to Relocate*.

62. Father testified that he had recently been given an employment opportunity in San Marcos, Texas. He testified that his salary would increase from $54,706.18 to $65,000.00. He also testified that he would have similar housing to what he has in Tulsa but that the new position in Texas would afford him more opportunities for future for advancement.

63. The Guardian Ad Litem testified that he believes it is not in the best interest of the minor child to relocate at this time because Mother is making progress in regards to her relationship with the minor child and the relocation at this point would effectively end Mother's opportunity to have a relationship.

64. On October 14, 2022, the Court had a hearing to determine a temporary child support amount. The Court received exhibits and took testimony from both parties. The Court issued its written child support order on October 17, 2022, where the Court imputed Mother's income at $5,995.78 and found that Father's actual income was $4,381.86. The Court ordered Mother to begin making monthly child support to Father on November 1, 2022 in the amount of $827.56.

12

65. No evidence has been presented that Mother has made any child support

66. Mother testified that she is a licensed physician in the State of Oklahoma. She was employed with the Cherokee Nation as a physician from approximately August 1, 2018 to October 22, 2020.

67. Mother refused to answer questions regarding her disability income. The Department of Human services alleged in their <u>Closing Statement from Trial</u> filed on February 9, 2024, that Mother's monthly VA disability income is $2,576.00.

68. Mother's actual income for August and September 2017 was $15,361.42 per month from her employment. With her monthly VA disability income of $2,576.00, Mother's gross monthly income for this time period was $17,937.42.

69. Beginning in January, 2018, Mother's actual income increased to $16,125.92 per month. With her monthly VA disability income, Mother's gross monthly income for this time period was $18,701.92.

70. Beginning on January, 2019, Mother's actual income decreased to $15,837.76 per month. With her monthly VA disability income, Mother's gross monthly income for this time period was $18,413.76.

71. Beginning on January, 2020, Mother's actual income increased to $16,652.33 per month. With her monthly VA disability income, Mother's gross monthly income for this period was $19, 228.33.

72. Petitioner testified that she is currently not earning a wage but working as a self-employed physician at her own clinic, Peace Joy Clinic. The Petitioner produced portions of her 2021 and 2022 tax returns alleging that her gross income in 2021 was $23,878.00 and in 2022 was -$12,163.00.

73. The Petitioner refused to answer any questions regarding the number of patients she sees

13

on a daily basis or what she charges for her services citing HIPAA protections.

74. Petitioner produced no tax documentation supporting her profit and loss statements. Rather she introduced an exhibit which simply shows a sum total of her expenses in the amount of $8,348.16 without any documentation to reflect how those numbers were achieved.

75. Mother absolutely refused to answer the question as to what, if any, income she derived from disability payments.

76. Mother refused to acknowledge her tax transcripts and was evasive and obstructive with any questions regarding her income even though the Court repeatedly admonished her to answer the questions. Additionally, the Petitioner refused to produce her complete filed tax returns for the years 2017 through 2020.

77. Mother testified that she has reviewed jobs she would be qualified for where the average income would be $180,000 per year. Petitioner testified that she did not apply for these jobs due to the requirement that she be on call or because she did not prefer the hours.

78. Father's gross income from 2017 through 2023:

    a. Father's monthly gross income for 2017 was $1,317.00.

    b. Father's monthly gross income for 2018 was $4,403.00

    c. Father's monthly gross income for 2019 was $4,874.75.

    d. Father's monthly gross income for 2020 was $3,571.08.

    e. Father's monthly gross income for 2021 was $4,505.16.

    f. Father's monthly gross income for 2022 was $4,381.86.

    g. Father's monthly gross income for 2023 was $4,441.91.

    h. Father's monthly gross income for 2024 was $4,558.85

79. Mother has had no overnight visitation with this child since the child was removed by the Department of Human Services on December 8, 2021.

80. Mother provided no evidence that she provided any health insurance for the minor child

14

during any portion of these time periods.  In fact, the Department of Humans Services is a necessary party as they have provided services to this child during the pendency of this action.

81. When child support was initially ordered in October 17, 2022 the Court found that at that time Father was providing health insurance for the minor child in the monthly amount of $416.95.

82. Father testified at trial that he provided monthly health insurance for the minor child in the amount of $362.35 for 2023.

The Court, having reviewed the file, heard the testimony of the parties, arguments of counsel together with the presentation of evidence, MAKES THE FOLLOWING CONCLUSIONS OF LAW:

## MOTIONS TO MODIFY CUSTODY AND VISITATION

The Court maintains the authority under 43 O.S. 109(G)(1) to terminate joint custody if the Court finds such arrangement is no longer in the best interest of the child.  Based on the foregoing findings of facts, the Court does find that the termination of joint custody is in the best interest of the minor child.  The parties' attempts at co-parenting have proven futile.  Parents have to be willing and able to co-parent and the evidence is clear that they simply do not trust each other enough nor are they able to put aside their differences to make best interest decisions for their child. The Court wholeheartedly agrees with the assessment of the Guardian Ad Litem, that Father is unkind to Mother and Mother has some disturbance of mental health that she refuses to acknowledge or address.  It is NOT in the best interest of the minor child to continue with joint custody and therefore the joint custody plan entered in the Oregon Decree is hereby terminated.

Upon a finding that joint custody is no longer in the best interest of the child the Court must next proceed as if it is making an initial custody determination and award custody in accordance with

15

the best interest of the child, as if no such joint custody decree had been made 43 O.S. 109(G)(2). In considering whom should have sole legal custody and decision making, the Court should consider the parent most likely to make decisions in the best interest of the child without regard to their own self-interest, the parent most likely to facilitate visitation with the other parent, the parent most likely to keep the other parent informed and include the other parent in the activities of the child's life and the mental and physical health of the child and proposed custodians.

Pursuant to 43 O.S. 110.2, in any action in which custody of or the visitation with a child is a relevant fact and at issue, the Court may order the mother, the child or Father to submit…to any test deemed necessary by the Court in determining that the custody of or visitation with the child will be in the best interests of the child. If so ordered and any party refuses to submit to such tests, the Court may enforce its order if the rights of the others and the interests of justice so require unless such individual is found to have good cause for refusing to cooperate.

The Court has had the opportunity to observe both parties in Court numerous times. The Court has observed their physical appearance, affect, speech, demeanor, pleadings, and their overall presentation. The Court has also heard the testimony of numerous witnesses. All of this has called into question Mother's mental health. Under its authority in 43 O.S. 110.2 the Court ordered both Father and Mother to complete a psychological examination with Dr. Curtis Grundy. Father completed his evaluation. Mother has absolutely refused to comply. Mother has failed to produce any evidence that this refusal is anything other than willful. Her refusal is not born out of an inability to pay, her monthly disability income of $2,576.00 is sufficient alone to cover the cost without accounting for her other sources of income. The court finds that Mother's refusal to answer any questions about the amount of her disability income shows her willful defiance of this Court's order.

Mother has been repeatedly admonished by the Court and the Court has practically begged Mother to obtain her psychological evaluation so that the Court would have some basis and

16

understanding of her mental condition to make an informed custody and visitation decision for the best interest of her daughter. Mother has knowingly and very willfully maintained that she is of sound mind and therefore she will not comply.  In the same breath Mother accuses the Court and the Guardian Ad Litem of practicing medicine without a license by "diagnosing" her with a mental illness. The fact is, anyone who has had any interaction with Mother can tell she is suffering from some mental health issue.  If she is unwilling to address this issue, the Court cannot address it for her.

Neither parent has evidenced to the Court that they will set aside their own self interest to make decisions for the best interest of the child.  Father's not keeping the child in counseling is not only in direct violation of Court orders but clearly not in the child's best interest given that his entire emergency is based on the premise that Mother has committed mental harm to the child.  Mother has placed her refusal to obtain a psychological evaluation or seek treatment for her mental health as her priority over the best interest of her child.  Neither parent is capable or willing to facilitate a relationship with the child and the other parent.  Father has made it perfectly clear in his testimony and actions that he values Mother's input very little.  He hasn't informed her of any parenting decision since being granted custody and the testimony supports that he is willing to do the absolute least to facilitate visitation and he will only do minimally what he is court ordered to do.

What the Court is left with, is to determine which parent is physically and mentally fit to have custody. The evidence is clear that under this very narrow factor currently there is only one mentally fit parent.  The Court will grant Father sole legal and physical custody of the minor child as he is currently the only fit parent. Father shall ensure that Mother is informed of all decisions made regarding the education, medical, dental, extracurricular and mental health of the minor child.  Both parents shall be listed on any medical, education, extracurricular, counseling, or ANY document that requires identification of the parties.  Each parent shall be listed as a parent. No third parties shall be identified as having any decision making authority or authorization over either parent.  Father has a

17

duty to facilitate visitation between the minor children and Mother pursuant to 43 O.S. 111.1.  Given

Mother's refusal to obtain a psychological evaluation or any mental health services and the testimony

of the Guardian Ad Litem and professional supervisor regarding the interactions of Mother and child,

the Court does not find that it is in the child's best interest to have visitation with Mother that is not

therapeutically and/or professionally supervised.  Indeed, the child's own attorney has informed the

Court that her client's preference is that a third party be present when she visits with her Mother.

Father shall immediately enroll and maintain the minor child in counseling as he was previously

ordered to do.  His failure to do so will not only be contemptible but the Court will consider any

continued failure on his part as a grounds to modify custody and evidence that he is incapable of

making decisions in the best interest of the child.  Furthermore, Father shall enroll in and complete

an in person six week anger management course and file proof with the Court upon completion.

## FATHER'S RELOCATION REQUEST

Father filed his notice of relocation to San Marcos, Texas on November 8, 2023, more than

sixty days in advance of the trial on the merits.  Mother filed an objection to the relocation on

December 8, 2023.  The notice of relocation and service are proper pursuant to 43 O.S.

112.3(C)(1)(b)(1).  Pursuant to 43 O.S. 112.3(G)(1) the person entitled to custody of a child may

relocate the principal residence of a child.  Father has been the primary physical custodian of the

minor child prior to the filing of the initial motion to modify.  Most recently, Father has been the

primary physical custodian of the minor child since the removal of the child in December 8, 2021.

This Order granting sole legal and physical custody to Father makes him "the person entitled to

custody" who may relocate the principle residence of the minor child.

Furthermore, the relocating party must evidence good faith in seeking relocation.  Good

faith is the "honest intention to abstain from taking any unconscientious advantage of another."

Boatman v. Boatman, 2017 OK 27, 404 P.3d 822, 825 (Okla. 2017).  When this case began, Father

18

had moved from Ohio to Tulsa with the minor child and Mother only had two weeks of visitation in the summer with alternating holidays. Father testified that he has an opportunity for an increase in income and advancement within his company and this is the reason for his request to relocate. Father's supervisor also testified to Father being a high performer and due to this he was being sought after for this opportunity. No evidence was presented to the Court of any other motive for the request to relocate. Father has established to the Court's satisfaction that his request to relocate is made in good faith.

As the custodial parent has demonstrated good faith, the relocation is assumed to be in the minor child's best interests. <u>Boatman</u> at 8. Therefore, the nonrelocating party (Mother) must demonstrate that the move is not in the minor child's best interests by weight of the factors, with each factor being for, against, or neutral to relocation. <u>Harrison v. Morgan</u>, 2008 OK CIV APP 68, 191 P.3d 617 (Div. 1 2008). The factors to be considered include the extent the parties are involved in the minor child's life; the quality and type of relationships left behind; and what quality and type of relationships would be gained; the needs of the minor child, preserving the relationship with the nonrelocating parent; the minor child's preference, pattern of conduct, quality of life, reasons for seeking relocation, and other considerations.

As previously stated, Father has been and continues to be the child's primary physical custodian. Her current relationship with her Mother is comprised of therapeutic visitation and professionally supervised visitation. The child's attorney and the professional supervisor both expressed the child's reluctance to spend time with Mother. In fact, the child's attorney in her closing argument stated her client would request the least amount of contact.

The minor child has no special needs and other than therapeutic visitation with her mother she is not receiving any specialized treatment nor is she engaged in any special programs in the Tulsa area. There are no identified needs of the minor child that she is receiving specific to Tulsa,

19

Oklahoma.  The Court was provided with no evidence of any difference in quality of life between Tulsa and San Marcos, Texas.  Father indicated that they would be living in substantially the same housing.  The minor child's attorney informed the Court that her client was in favor of moving.

Other than Mother and Father, there are no other family members or substantial relationships for the minor child in Tulsa.  Father's family and other children live in Ohio or Texas.  Mother's family lives in Texas.  It is important to note here that even though the minor child has an infant sibling that normally the Court would find compelling in this analysis, the evidence in this case is that this child was an infant when G.S. was removed from Mother's care and that Mother has refused to allow this sibling to attend any visitation with G.S. during her visitation times even though G.S. has requested it.  They have therefore not had any relationship in over two years and at Mother's own insistence do not have one now.

The only real factor in the Courts analysis of the relocation is whether or not the relationship with Mother can be preserved if Father is allowed to relocate.  All other factors weigh in favor of relocation or are at least neutral.  Mother testified that her parents live in Dallas, Texas and she frequently visits them.  The Court is unclear on how often she visits them because when testifying Mother initially said every weekend, then she said every other weekend and finally she changed to say only on some holidays.  Father testified if allowed to relocate he would ensure that the child was present in Tulsa for her monthly therapeutic visit with Amanda Hall and additionally, he would agree to meet in Dallas for professionally supervised visitation.  Stephen Hale testified that the therapeutic visits are going well and Ms. Hall believes that the relationship is improving.

Based upon the balancing of the foregoing factors, the Court finds that Father has met his burden that his request for relocation is in good faith.  Mother has failed to meet her burden that the relocation would not be in the best interest of the child.  Father shall notify Mother the exact date of the anticipated relocation including the physical address of the minor child and all other contact

information as required by law.  The Court finds that currently mother receives two hours of

professionally supervised visitation per week which amounts to approximately eight hours of

professionally supervised visitation per month.  The Court finds that Mother shall be awarded a total

of ten hours of professionally supervised visitation per month with five hours occurring in Dallas,

Texas on one Saturday and one Sunday per month on the same weekend.  Father is directed to

select a professional supervisor located within 20 miles of maternal grandparents home.  The

professional supervisor shall be on the list of professional supervisors provided by the Attorney

General of Texas.  Father is directed to provide the name and contact information for the supervisor

to Mother within ten days of his relocation.  If Father fails to do so then Mother may select a

professional supervisor under the same criteria.  There is no prohibition as to where this visitation

occurs.  If approved by the professional supervisor, the visitation may occur in maternal

grandparents home.  The cost of professional supervision shall remain Mother's expense.  The costs

of transportation to Dallas on this weekend will be at Father's expense.

 The minor child will remain engaged in therapeutic visitation with Mother and with Amanda

Hall on a monthly basis.  Father has asserted that he would be willing to bear this responsibility

given his request for relocation and the Court will hold him to this.  As the minor child is currently

attending virtual school her once per month attendance in therapeutic visitation will not affect her

school attendance negatively.  Certainly, should the minor child become enrolled in a brick and

mortar school it would not be the Court's position that it would be feasible to continue to travel to

Tulsa for these sessions but that is not the evidence before the Court and Father has asserted that he

is able and willing to ensure its continuation.  Mother will continue to bear the cost of therapeutic

visitation and Father will bear the travel expenses.

 Finally, until such time as Father actually relocates, the parties shall continue to operate

under the current visitation orders of the Court.  That is, with Mother receiving two hours of

professionally supervised visitation per week with Cheryl Hall and therapeutic visitation once per month with Amanda Hall.

## MOTION TO MODIFY SUPPORT

The Court maintains the authority under 43 O.S. 118(I)(A)(1) to modify child support upon a material change in circumstances which includes an increase or decrease in the income of the parents, changes in the cost of medical insurance or a change in the visitation schedule. The Court finds that there have been several material changes in circumstances that directly affected child support.

1. Both parties have experienced changes in income as outlined in the Court's findings of fact.

2. The visitation schedule changed at least three times during the pendency of this action.

3. Mother had another child in October, 2019.

When the Court determines a material change in circumstances warranting a modification, the modification will be effective on the first day of the month following the date the motion to modify was filed…or the Court makes a specific finding of fact that the material change of circumstance did not occur until a later date. 43 O.S. 118(I)(3).

In August and September of 2017, the parties were still exercising the visitation schedule from the previous order. For these two months, Mother's income should be her actual income of $15,361.42 from her employment. The Court determines that Mother's income was $15,361.42 from her employment plus the $2,576.00 in VA benefits for a total income of $17,937.42 per month. Father's income based on his actual income was $1,317.00. The guidelines also reflect that Father had 320 overnights and Mother had 45 overnights. There is no credit for the insurance premium paid by either Mother or her current husband as this information was not presented in court. The child support guideline attached as "Exhibit A" accurately reflects the income and visitation of the parties at the time of the modification. Mother owed $1,278.16 to Father for these two months resulting in a judgment of $2,556.32.

22

Beginning October 1, 2017 through December 31, 2017, the parties began to exercise split time (50/50 time). Using the same incomes of the parties, the child support guideline attached as "Exhibit B" accurately reflects the income and visitation of the parties at the time of the modification. Mother owed $888.23 to Father for these three months resulting in a judgment of $2,664.69.

Beginning in January 2018, the incomes for both parties increased. Mother's actual income was $16,125.92 based on evidence provided and also the VA benefits of $2,576.00 per month for a total monthly income of $18,701.92. Father's actual income increased to $4,403.00 per month. The amount of overnights were still split between the parties and there is no credit for insurance premium as there was no evidence presented regarding the cost. The guidelines attached as "Exhibit C" accurately reflect the income and visitation of the parties at the time of the modification. Mother owed $636.82 to Father for these twelve months resulting in a judgment of $7,641.84.

Beginning January 2019, Mother's actual income from her employer based on the evidence provided shows $15,837.76 per month plus the $2,576.00 in VA disability for a total monthly income of $18,413.76. Father's actual income based on evidence provided was $4,874.75 per month. The amount of overnights and insurance premium remain the same. The guidelines attached as "Exhibit D" accurately reflect the income and visitation of the parties at the time of the modification. Mother owed $598.22 to Father for these nine months resulting in a judgment of $5,302.98.

Beginning October 1, 2019 through December 31, 2019, the guidelines should remain the same as above, but the Mother had another child and would therefore be entitled to a credit for an in home biological child. The guidelines attached as "Exhibit E" include the credit for the in home biological child along with the Mother's entire income. Mother owed $578.31 to Father for these three months resulting in a judgment of $1,734.93.

23

Beginning January 1, 2020, there was evidence of the actual income of both parties presented, the parties were still exercising split time, there is still no credit for the insurance premium, and the Mother is receiving credit for one in home biological child. Based on the evidence, Mother's actual income was $16,652.33 along with the $2,576.00 in VA benefits for a total of $19,228.33 per month. Father's income was $3,571.08 based on evidence presented. The guidelines attached as "Exhibit F" include the credit for the in home biological child along with the Mother's entire income. Mother owed $691.42 to Father for these twelve months resulting in a judgment of $8,297.04.

Beginning January 1, 2021, and pursuant to 43 O.S. 118 the Court finds that given Mother's absolute unwillingness to provide testimony or evidence with respect to her actual income, it is equitable to impute Mother at $15,000 income per month based on the fact that she was previously able to earn that or more each month. Additionally, Mother testified that she was receiving information from recruiters on jobs where her salary would be $180,000 per year. The Court will also include the $2,576.00 in VA benefits for a total monthly income of $17,576.00. Father's actual income based on evidence presented was $4,505.16 per month. The parties were still exercising split time during this year, there is no credit for insurance premium, and Mother is receiving credit for one in home biological child. The guidelines attached as "Exhibit G" include the credit for the in home biological child along with Mother's entire income. Mother owed $588.59 to Father for these twelve months resulting in a judgment of $7,063.08.

The Court issued a Temporary Child Support Order on October 14, 2022 where the Court imputed Mother's income at $5,995.78 and found that Father's actual income was $4,381.86. The Court ordered Mother to begin making monthly child support to Father on November 1, 2022 in the amount of $827.56. Furthermore, the Court set a judgment for the time frame of January 1,

24

2022 through October 31, 2022 in the principal amount of $5,964.40.  In reaching Mother's income

at the time of Temporary Orders the Court specifically held:

> On paper Petitioner is certainly underemployed.  However, pursuant to previous testimony
> and this Court's interactions with the Petitioner, the Court does have significant concerns
> regarding the mental health of the Petitioner which is why the Court previously ordered a
> psychological evaluation by Dr. Curtis Grundy.  With this in mind the Court does not believe
> it to be equitable to impute the Petitioner at $18,333.33 per month as Respondent has
> requested as the Court does not believe she is currently capable of obtaining employment with
> that income.

The Court will not disturb its temporary order ruling for the time periods of January 1, 2022 to

December 31, 2023.  Mother owed $827.56 to Father for these twelve months resulting in a judgment

of $9,930.72.

Beginning January 1, 2023, the Court still believes that Mother's mental health makes it

impossible for her to attain the same level of income previously attained.  However, Mother

repeatedly maintains that she is operating her own clinic.  She produced evidence at trial that she

currently has monthly obligations in the amount of $8,348.16 which she has to meet in running her

private practice.  Pursuant to 43 O.S. 118 (C)(3) the Court may consider any factor deemed relevant

to the case in determining an imputed income amount.  The Court determines that it is equitable to

conclude that Mother earns at least $8,348.16 per month as she continues to operate her clinic and

has done so according to herself for a number of years.  Even though Mother argued that according

to her taxes she was operating at a loss, 43 O.S. 118(D)(2) specifically states that a determination of

business income for tax purposes shall not control for purposes of determining a child support

obligation.  The Court will also include the $2,576.00 in VA benefits for a total imputed monthly

income of $10,924.16.  Father's actual income based on evidence presented was $4,441.91 per

month.  Mother had no overnights during this period.  Father covered the insurance for the child

during the year 2023 and therefore a credit of $362.35 should be credited to the Father.  The Mother

is receiving credit for one in home biological child.  The guidelines attached as "Exhibit H" include

25

the credit for the in home biological child along with the Mother's entire income. Mother owed $1,186.89 to Father for these twelve months resulting in a judgment of $14,242.68.

Beginning January 1, 2024, for the same reasons cited above, the Court will impute Mother's income at $8,348.16 per month and also include the $2,576.00 in VA benefits for a total monthly income of $10,924.16. Father's actual income based on evidence presented was $4,558.85 per month based on the testimony from his current supervisor. The guidelines attached as "Exhibit I" include the credit for the in home biological child along with the Mother's entire income. Mother owed $1,180.12 to Father for these two months resulting in a judgment of $2,360.24. Mother is ordered to pay $1,180.12 per month to Father beginning on March 1, 2024 and each month thereafter. Mother shall pay child support until the minor child reaches the age of majority, or until further order of the Court; provided, however, that should the minor child be continuously enrolled in high school at the age of majority, then Mother shall pay child support through the month of graduation from high school, or to the age of twenty (20) years, whichever occurs first.

Pursuant to 43 O.S. 119(B) if the combined income exceeds Fifteen Thousand Dollars ($15,000.00), the child support shall be that amount computed for a monthly income of Fifteen Thousand Dollars ($15,000.00) and an additional amount determined by the Court. The Court does not find that it would be equitable to award any additional amount of support due to the fact that Mother is ordered to pay the cost of therapeutically and professionally supervised visitation.

Mother owes an arrearage judgment in the principal amount of $61,794.52 for the period of August, 2017 to March 1, 2024. Judgment for said amount is hereby determined and awarded to the Father. The Court directs the Department of Human Services to update their record of payment and determine statutory interest pursuant to this ruling.

The Court finds that given the size of the judgment and other judgments awarded herein, Mother will not be able to pay this judgment with statutory interest within 36 months. Mother is

26

hereby ordered to satisfy the above referenced judgment(s) by making monthly payments in the amount of $83.00 beginning on March 1, 2024 and continuing each month thereafter until said judgment(s), together with interest thereon, are paid in full. Payments shall be made in the same manner as current child support payments as set out herein. The monthly judgment payment is in addition to the previously ordered current monthly support in the amount of $1,266.00 making the obligor's total monthly payment the sum of $1,349.00. When current support is no longer due, the amount previously applied to ongoing current support shall be applied to the past-due support and the obligor shall continue to pay the total amount of $1,349.00 per month until the judgment(s), together with interest thereon, are paid in full or until further order of the court.

The parties shall pay their proportionate share, Mother 69% and Father 31%, of any child care, medical, orthodontic, dentist, or therapists costs incurred on behalf of the minor children pursuant to the attached guidelines. The party incurring the cost shall submit all receipts/requests for payment within 30 days of incurring the same and payment shall be remitted within 30 days of receipt of said proof. Employer sponsored health coverage is currently available for the minor child(ren) and Father shall provide dependent health care coverage through an employer-sponsored or other group plan whenever it is accessible and available at a reasonable cost. "Reasonable in cost" means that the pro-rata share of the child(ren)'s actual premium cost paid by the insured does not exceed five percent (5%) of the gross income of the person ordered to provide coverage. The share of premium ($227.94) for the parent providing the coverage should not exceed 5% (as shown on Line 22 of the child support computation) of the gross monthly income.

Father is ordered to provide Mother with proof of enrollment, insurance cards, policy information, policy number, and any other documents necessary for the child to use the insurance. Both parties shall be required to exchange any information necessary to secure dependent health insurance enrollment. The parents must furnish each other with timely written

27

documentation of any change in health insurance within 30 days of the date of the change. Upon timely notification of the change, the other parent is responsible for his/her percentage share of the changed cost of the health insurance. Failure to provide timely notice may result in a denial of the right to receive credit or reimbursement for the expense or increased premium.

### FATHER'S CONTEMPT AGAINST MOTHER FILED
### MAY 23, 2019

The Court Finds Mother GUILTY of Indirect Contempt for failure to pay the debt associated with the Jayco Trailer as alleged in Father's Contempt. The Oregon Decree awarded the 2014 Jayco Trailer to Father and ordered Mother to pay the entirety of the debt in lieu of child support. It is undisputed that she did not pay the debt but rather signed the 2014 trailer over to Jayco receiving a credit of $16,790.46 against the debt she was ordered to pay, she also received $1,731.87 while Father never received the title to the property nor did he receive child support since this debt was in lieu of Mother's obligation in that regard. The Court FINDS Mother GUILTY of Indirect Contempt and sets the purge fee at $18,522.33.

The Court Finds Mother GUILTY of Indirect Contempt for failure to give Father the title to the 2013 Jeep Wrangler after final payment in April, 2019. The undisputed testimony at trial was that ultimately Mother delivered the deed to Father in August, 2019 therefore the Court FINDS that Mother has already purged this contempt.

### MOTHER'S CONTEMPT AGAINST FATHER FILED AUGUST 30, 2019

The Court Finds Father NOT GUILTY of Indirect Contempt for failing to reimburse Mother his share of the child's reasonable medical, dental and optical services in the amount of $1,631.47. Mother presented no evidence in support of this contempt during the week-long trial. It appears to the Court that she has abandoned this contempt.

### MOTHER'S CONTEMPT AGAINST FATHER FILED JULY 7, 2020

The Court Finds Father NOT GUILTY of Indirect Contempt for failing to reimburse Mother his share of the child's reasonable medical, dental and optical services in the amount of $1,631.47, failing to ensure the minor child completed her homework assignments and using corporal punishment. Mother presented no evidence in support of this contempt during the week-long trial. It appears to the Court that she has abandoned this contempt.

### MOTHER'S CONTEMPTS AGAINST FATHER FILED JANUARY 17, 2023 AND SEPTEMBER 8, 2023 AS WELL AS THE AMENDMENTS

The Court Finds Father NOT GUILTY of these Indirect Contempt's. Frankly, these contempt pleadings contain misstatements of facts regarding alleged Court Orders some of which have never been orders of the Court. For example, in Mother's September 8, 2023 Application for 9th Indirect Contempt Citation, Mother states in Paragraph three that on July 14, 2023, the Court awarded Mother an additional 2 hours of professional visitation (WITHOUT supervision requirement). This was NOT the order of the Court. Mother failed to present sufficient evidence of any violation of Court Orders.

### FATHER'S CONTEMPT AGAINST MOTHER FILED JANUARY 9, 2023 AND AGAIN APRIL 20, 2023

Father announced in open Court his dismissal and withdrawal of these contempts. The Court issued a pretrial ruling regarding the dissemination of Dr. Curtis Grundy's evaluation resolving this contempt issue.

### <u>MISCELLANEOUS</u>

THE COURT FURTHER FINDS that any issues of TANIF or reimbursements to the State of Oklahoma pursuant to DHS guidelines are specifically reserved.

THE COURT FURTHER FINDS The issue of attorney's fees is reserved by the Court to be addressed by separate application pursuant to 12 O.S. § 696.4.

29

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED by the Court that the above and foregoing findings are hereby ORDERED, ADJUDGED, AND DECREED as if hereinafter set out at length, and judgment is rendered and entered accordingly. Any portion of the Oregon Decree not specifically modified herein shall remain in full force and effect.

Dated this 20th day of February, 2024

IT IS SO ORDERED

_____

Judge April Seibert

30

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 20th day of February, 2024, a true and correct copy of the above and foregoing instrument was mailed by regular First-Class mail to the following:

Linh Stephens
6607 S. Palm Place
Broken Arrow, Oklahoma 74011
PETITIONER, Pro Se

Gil Pilkington
THE PILKINGTON LAW FIRM, PLLC
PO BOX 52614
Tulsa, OK 74152-0614
ATTORNEY FOR THE RESPONDENT

Stephen Hale
520 W. 6th St.
Tulsa, OK 74119-1016
GUARDIAN AD LITEM

Megan Beck
320 S. Boston Ave., Suite 718
Tulsa, OK 74103
ATTORNEY FOR THE MINOR CHILD

Emmalene Stringer
P.O. Box 27068
Tulsa, OK 74149
OKDHS CHILD SUPPORT, STATE'S ATTORNEY

_Breanna Smith_

Deputy Court Clerk

31

**IN THE DISTRICT COURT OF  TULSA COUNTY**
**STATE OF OKLAHOMA**

| | | |
|---|---|---|
| Linh Stephens | ) | **Dist. Ct. Case No.**   FD-2015-2228 |
| | ) | |
| Petitioner | ) | **OAH Case No.** |
| | ) | |
| | ) | **FGN:**   948641001 |
| | ) | |
| Adam Stephens | ) | Aug-Sept 2017 |
| | ) | |
| Respondent | ) | |

**CHILD SUPPORT COMPUTATION**

| | | | Father | Mother | Combined |
|---|---|---|---|---|---|
| | Calculation for number of children in this case | 1 | | | |
| | Obligor (person who pays) is (Enter "Father" or "Mother") | Mother | | | |
| **A** | **Base monthly obligation** | | **Father** | **Mother** | **Combined** |
| 1 | **Gross monthly income** All sources, except income specifically excluded by 43 O.S. Section 118B(B) | | $1,317.00 | $17,937.42 | $19,254.42 |
| | a. Amount of self-employment income included in Line 1 | | $0.00 | $0.00 | |
| | b. Deduction for self-employment tax Multiply Line 1a by 7.65% | | $0.00 | $0.00 | |
| 2 | **Total gross monthly income** Line 1 minus Line 1b | | $1,317.00 | $17,937.42 | |
| | a. Amount of SSA Title II benefits or veterans disability benefits paid for the benefit of the children. Do NOT include SSI benefits. (Enter in the column for the disabled or retired parent.) | | $0.00 | $0.00 | |
| | b. Court ordered support alimony actually paid in a prior case | | $0.00 | $0.00 | |
| | c. Court ordered monthly adjustment for marital debt | | $0.00 | $0.00 | |
| | d. Court ordered monthly child support actually paid for qualified out-of-home children | | $0.00 | $0.00 | |

OKDHS 03/01/23                    **03EN025E**                    1 of 7

| | In-home Children Deduction Worksheet | | | |
|---|---|---|---|---|
| | e. Number of qualified in-home children excluding children on this case | 0 | 0 | |
| | f. Amount for qualified in-home children. Apply Line 2 for each parent to Child Support Guideline Schedule amount using the number of children in Line 2e, and multiply guideline amount by 75% | $0.00 | $0.00 | |
| 3 | **Adjusted gross monthly income (AGI)** Amount in Line 2 plus 2a, minus Lines 2b, 2c, 2d, and 2f | $1,317.00 | $17,937.42 | $19,254.42 |
| 4 | **Percentage share of income** AGI for each parent divided by the combined AGI | 6.8% | 93.2% | 100% |
| 5 | **Base monthly obligation** Apply combined AGI to Child Support Guideline Schedule and put total in combined base monthly obligation. Multiply the combined total by the percentage share of income for each parent. | $93.84 | $1,278.16 | $1,372.00 |

| B | Parenting time adjustment, if used | Father | Mother | Combined |
|---|---|---|---|---|
| 6 | **Number of overnights with each parent** If less than 121 for either parent, skip to C. | 320 | 45 | 365 |
| | a. Percentage of overnights with each parent Number of overnights for each parent divided by 365 | 87.7% | 12.3% | 100% |
| | b. Adjusted combined child support obligation Adjustment factor is based on the parent with the fewest overnights. The result in the combined column is the combined monthly obligation in Line 5 multiplied by the adjustment factor. | **<=== Adjustment Factor** less than 121 = no factor 121-131 = 2 132-143 = 1.75 144-183 = 1.5 | | |
| | c. Share of adjusted combined child support obligation Combined Line 6b multiplied by the percentage share of income in Line 4 | | | |
| | d. Respective adjusted base child support obligation Amount for each parent in Line 6c multiplied by the percentage of the other parent in Line 6a | | | |
| 7 | **Adjusted base monthly obligation** Line 6d larger amount minus Line 6d smaller amount and the result is for the parent with the positive amount. If the parent has more than 205 in Line 6, use $0 for that parent. If either parent has less than 121 in Line 6, use the Line 5 amount for both parents. | $0.00 | $1,278.16 | |

| C | **Obligor** (person who pays) is (Enter "Father" or "Mother") | Mother | |

| D | Work and education-related child care expenses | Father | Mother | Other Custodian |
|---|---|---|---|---|
| 8 | **Monthly child care expenses for children in this case** Include any co-payments being paid by a parent receiving OKDHS Child Care Subsidy. | $0.00 | $0.00 | $0.00 |
| 9 | **Child care expense percentage share of the total** Total child care expenses multiplied by percentage share of income for each parent. Multiply Line 8 by Line 4 | $0.00 | $0.00 | |
| 10 | **Total child care adjustment to base monthly obligation** Line 9 minus Line 8 (amount may be negative) | $0.00 | $0.00 | |
| E | **Health insurance premium** | Father | Mother | Other Custodian |
| 11 | **Monthly health insurance premium costs** This premium represents the actual premium cost for any child(ren) in this case only.  Insurance Premium Worksheet is available if needed. **Use Cash Medical Support if any child is not covered by insurance.** | $0.00 | $0.00 | $0.00 |
| 12 | **Monthly health insurance share for each parent** Percentage share of income in Line 4 multiplied by total current insurance cost for all persons in Line 11 | $0.00 | $0.00 | |
| 13 | **Total premium cost adjustment to base monthly obligation** Line 12 minus Line 11  (amount may be negative) | $0.00 | $0.00 | |
| F | **Other contributions, if agreed or ordered** | Father | Mother | Other Custodian |
| 14 | **Ongoing medical costs** Cash medical support for fixed periodic payments for ongoing medical costs | $0.00 | $0.00 | $0.00 |
| | a. Adjusted medical costs share    Multiply total of Line 14 for all persons by Line 4 | $0.00 | $0.00 | |
| | b. Total ongoing medical costs adjustment to    base monthly obligation    Line 14a minus Line 14  (amount may be negative) | $0.00 | $0.00 | |
| 15 | **Visitation transportation costs** | $0.00 | $0.00 | $0.00 |
| | a. Adjusted visitation costs share    Multiply total of Line 15 for all persons by Line 4 | $0.00 | $0.00 | |
| | b. Total ongoing visitation costs adjustment to    base monthly obligation    Line 15a minus Line 15  (amount may be negative) | $0.00 | $0.00 | |
| G | **Child Support obligation subtotal** | Father | Mother | |

**03EN025E**

| 16 | **Base monthly child support obligation less adjustments for child care and other contributions**<br>Add obligor Line 7 to Lines 10, 13 and 15b if positive amounts. Subtract Lines 10, 13 or 15b if negative amounts. | $0.00 | $1,278.16 | |
|----|---|---|---|---|
| 17 | **SSA Title II benefits or veterans disability benefits paid for the benefit of the child**<br>Line 2a for obligor | | $0.00 | |
| 18 | **Total monthly child support obligation less any SSA Title II benefits or veterans disability benefits paid for the benefit of the child**<br>Line 16 minus Line 17  (amount may be negative) | $0.00 | $1,278.16 | |
| **H** | **Cash Medical Support** | **Father** | **Mother** | **Combined** |
| 19 | Enter number of children in this case not covered by health insurance.  If none, skip to Line 24.  Note: This may be different from the number of children on SoonerCare. | 0 | | |
| 20 | Enter the Soonercare or other health care government assistance **applicant** for the child(ren) in this case, if child(ren) are on SoonerCare.  Enter "Father", "Mother", "other" or leave blank. | | | |

**03EN025E**

| | | | | |
|---|---|---|---|---|
| 21 | **Cash medical amount for obligor**<br>If Line 19 is zero or the obligor is the person on Line 20, enter $0 in Line 23.  If Line 19 is greater than zero and the obligor is not the person on Line 20, refer to the Cash Medical Income Guidelines Table.  If the Obligor's income is less than or equal to the amount on the table, enter $0.  If greater, multiply $115 by the number of children in Line 19.  Multiply the combined total by percentage shares from Line 4. | $0.00 | $0.00 | $0.00 |
| 22 | **5% of Gross Monthly Income**<br>Line 2 multiplied by 0.05<br>This represents the maximum amount of total medical allowed. | $65.85 | $896.87 | |
| 23 | **Cash medical support in lieu of insurance**<br>If Line 21 plus Line 13 is greater than Line 22, use Line 22 minus Line 13.  If Line 21 plus Line 13 is less than or equal to Line 22, enter Line 21.  Enter $0 if negative | $0.00 | $0.00 | |

| I | Current Monthly Support Obligation | Father | Mother |
|---|---|---|---|
| 24 | **a. Child support portion**<br>If Line 14b is positive, Line 18 for obligor<br>If Line 14b is negative, reduce Line 18 by Line 14b<br>Enter $0 if negative | | $1,278.16 |
| | **b. Cash medical portion**<br>If Line 18 minus 14b is positive, Line 23 for obligor<br>If Line 18 minus 14b is negative, reduce Line 23 by Line 18 minus 14b.  Enter $0 if negative | | $0.00 |
| | **c. Ongoing medical costs portion**<br>If Line 18 is positive, Line 14b for obligor<br>If Line 18 is negative, reduce 14b by Line 18<br>Enter $0 if negative | | $0.00 |
| 25 | **Total obligation to be paid by the obligor**<br>Line 24a plus 24b plus 24c | | $1,278.16 |

Mother _____ shall begin payments on <u>Aug-Sept 2017</u>_____ and continue on the same date of each month until further order of the court.

___X___   Guidelines were followed.

_____   Deviation from child support guidelines by Court-Specific findings of Court supporting each deviation:

_____

_____

_____

Dated: _____

_____
**JUDGE**

**APPROVED AS TO FORM:**

_____
Father printed name

_____
Father signature

_____
Attorney for father printed name

_____
Attorney for father signature and OBA Number

_____
Mother printed name

_____
Mother signature

_____
Attorney for mother printed name

_____
Attorney for mother signature & OBA Number

_____
Other Custodian printed name

_____
Other Custodian signature

_____
Attorney for Other Custodian printed name

_____
Attorney for Other Custodian signature and OBA Number

_____
State's Attorney, CSS printed name

_____
State's Attorney, CSS signature and OBA Number

## IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

| | | |
|---|---|---|
| Linh Stephens | ) | Dist. Ct. Case No.      FD-2015-2228 |
| | ) | |
| Petitioner | ) | OAH Case No. |
| | ) | |
| | ) | FGN:      948641001 |
| | ) | |
| Adam Stephens | ) | Oct-Dec 2017 |
| | ) | |
| Respondent | ) | |

### CHILD SUPPORT COMPUTATION

| | | |
|---|---|---|
| Calculation for number of children in this case | 1 | |
| Obligor (person who pays) is (Enter "Father" or "Mother") | Mother | |

| A | Base monthly obligation | Father | Mother | Combined |
|---|---|---|---|---|
| 1 | **Gross monthly income** All sources, except income specifically excluded by 43 O.S. Section 118B(B) | $1,317.00 | $17,937.42 | $19,254.42 |
| | a. Amount of self-employment income included in Line 1 | $0.00 | $0.00 | |
| | b. Deduction for self-employment tax Multiply Line 1a by 7.65% | $0.00 | $0.00 | |
| 2 | **Total gross monthly income** Line 1 minus Line 1b | $1,317.00 | $17,937.42 | |
| | a. Amount of SSA Title II benefits or veterans disability benefits paid for the benefit of the children. Do NOT include SSI benefits. (Enter in the column for the disabled or retired parent.) | $0.00 | $0.00 | |
| | b. Court ordered support alimony actually paid in a prior case | $0.00 | $0.00 | |
| | c. Court ordered monthly adjustment for marital debt | $0.00 | $0.00 | |
| | d. Court ordered monthly child support actually paid for qualified out-of-home children | $0.00 | $0.00 | |

| | | Father | Mother | Combined |
|---|---|---|---|---|
| | **In-home Children Deduction Worksheet**<br>e. Number of qualified in-home children excluding children on this case | 0 | 0 | |
| | f. Amount for qualified in-home children.<br>Apply Line 2 for each parent to Child Support Guideline Schedule amount using the number of children in Line 2e, and multiply guideline amount by 75% | $0.00 | $0.00 | |
| 3 | **Adjusted gross monthly income (AGI)**<br>Amount in Line 2 plus 2a, minus Lines 2b, 2c, 2d, and 2f | $1,317.00 | $17,937.42 | $19,254.42 |
| 4 | **Percentage share of income**<br>AGI for each parent divided by the combined AGI | 6.8% | 93.2% | 100% |
| 5 | **Base monthly obligation**<br>Apply combined AGI to Child Support Guideline Schedule and put total in combined base monthly obligation.  Multiply the combined total by the percentage share of income for each parent. | $93.84 | $1,278.16 | $1,372.00 |

| **B** | **Parenting time adjustment, if used** | **Father** | **Mother** | **Combined** |
|---|---|---|---|---|
| 6 | **Number of overnights with each parent**<br>If less than 121 for either parent, skip to C. | 182 | 183 | 365 |
| | a. Percentage of overnights with each parent<br>Number of overnights for each parent divided by 365 | 50.0% | 50.0% | 100% |
| | b. Adjusted combined child support obligation<br>Adjustment factor is based on the parent with the fewest overnights.  The result in the combined column is the combined monthly obligation in Line 5 multiplied by the adjustment factor.  [1.5] | **<=== Adjustment Factor**<br>less than 121 = no factor<br>121-131 = 2<br>132-143 = 1.75<br>144-183 = 1.5 | | $2,058.00 |
| | c. Share of adjusted combined child support obligation<br>Combined Line 6b multiplied by the percentage share of income in Line 4 | $140.77 | $1,917.23 | |
| | d. Respective adjusted base child support obligation<br>Amount for each parent in Line 6c multiplied by the percentage of the other parent in Line 6a | $70.39 | $958.62 | |
| 7 | **Adjusted base monthly obligation**<br>Line 6d larger amount minus Line 6d smaller amount and the result is for the parent with the positive amount. If the parent has more than 205 in Line 6, use $0 for that parent.  If either parent has less than 121 in Line 6, use the Line 5 amount for both parents. | $0.00 | $888.23 | |

| C | **Obligor** (person who pays) is (Enter "Father" or "Mother") | Mother | |

| D | Work and education-related child care expenses | Father | Mother | Other Custodian |
|---|---|---|---|---|
| 8 | Monthly child care expenses for children in this case Include any co-payments being paid by a parent receiving OKDHS Child Care Subsidy. | $0.00 | $0.00 | $0.00 |
| 9 | Child care expense percentage share of the total Total child care expenses multiplied by percentage share of income for each parent. Multiply Line 8 by Line 4 | $0.00 | $0.00 | |
| 10 | Total child care adjustment to base monthly obligation Line 9 minus Line 8 (amount may be negative) | $0.00 | $0.00 | |
| E | Health insurance premium | Father | Mother | Other Custodian |
| 11 | Monthly health insurance premium costs This premium represents the actual premium cost for any child(ren) in this case only.  Insurance Premium Worksheet is available if needed. Use Cash Medical Support if any child is not covered by insurance. | $0.00 | $0.00 | $0.00 |
| 12 | Monthly health insurance share for each parent Percentage share of income in Line 4 multiplied by total current insurance cost for all persons in Line 11 | $0.00 | $0.00 | |
| 13 | Total premium cost adjustment to base monthly obligation Line 12 minus Line 11  (amount may be negative) | $0.00 | $0.00 | |
| F | Other contributions, if agreed or ordered | Father | Mother | Other Custodian |
| 14 | Ongoing medical costs Cash medical support for fixed periodic payments for ongoing medical costs | $0.00 | $0.00 | $0.00 |
| | a. Adjusted medical costs share Multiply total of Line 14 for all persons by Line 4 | $0.00 | $0.00 | |
| | b. Total ongoing medical costs adjustment to base monthly obligation Line 14a minus Line 14  (amount may be negative) | $0.00 | $0.00 | |
| 15 | Visitation transportation costs | $0.00 | $0.00 | $0.00 |
| | a. Adjusted visitation costs share Multiply total of Line 15 for all persons by Line 4 | $0.00 | $0.00 | |
| | b. Total ongoing visitation costs adjustment to base monthly obligation Line 15a minus Line 15  (amount may be negative) | $0.00 | $0.00 | |
| G | Child Support obligation subtotal | Father | Mother | |

| | | | Father | Mother | Combined |
|---|---|---|---|---|---|
| 16 | **Base monthly child support obligation less adjustments for child care and other contributions**<br>Add obligor Line 7 to Lines 10, 13 and 15b if positive amounts. Subtract Lines 10, 13 or 15b if negative amounts. | | $0.00 | $888.23 | |
| 17 | **SSA Title II benefits or veterans disability benefits paid for the benefit of the child**<br>Line 2a for obligor | | | $0.00 | |
| 18 | **Total monthly child support obligation less any SSA Title II benefits or veterans disability benefits paid for the benefit of the child**<br>Line 16 minus Line 17  (amount may be negative) | | $0.00 | $888.23 | |
| **H** | **Cash Medical Support** | | **Father** | **Mother** | **Combined** |
| 19 | Enter number of children in this case not covered by health insurance.  If none, skip to Line 24.  Note: This may be different from the number of children on SoonerCare. | 0 | | | |
| 20 | Enter the Soonercare or other health care government assistance **applicant** for the child(ren) in this case, if child(ren) are on SoonerCare.  Enter "Father", "Mother", "other" or leave blank. | | | | |

| | | | | |
|---|---|---|---|---|
| 21 | **Cash medical amount for obligor**<br>If Line 19 is zero or the obligor is the person on Line 20, enter $0 in Line 23.  If Line 19 is greater than zero and the obligor is not the person on Line 20, refer to the Cash Medical Income Guidelines Table.  If the Obligor's income is less than or equal to the amount on the table, enter $0.  If greater, multiply $115 by the number of children in Line 19.  Multiply the combined total by percentage shares from Line 4. | $0.00 | $0.00 | $0.00 |
| 22 | **5% of Gross Monthly Income**<br>Line 2 multiplied by 0.05<br>This represents the maximum amount of total medical allowed. | $65.85 | $896.87 | |
| 23 | **Cash medical support in lieu of insurance**<br>If Line 21 plus Line 13 is greater than Line 22, use Line 22 minus Line 13.  If Line 21 plus Line 13 is less than or equal to Line 22, enter $0 if negative | $0.00 | $0.00 | |

| I | Current Monthly Support Obligation | Father | Mother |
|---|---|---|---|
| 24 | **a. Child support portion**<br>If Line 14b is positive, Line 18 for obligor<br>If Line 14b is negative, reduce Line 18 by Line 14b<br>Enter $0 if negative | | $888.23 |
| | **b. Cash medical portion**<br>If Line 18 minus 14b is positive, Line 23 for obligor<br>If Line 18 minus 14b is negative, reduce Line 23 by Line 18 minus 14b.  Enter $0 if negative | | $0.00 |
| | **c. Ongoing medical costs portion**<br>If Line 18 is positive, Line 14b for obligor<br>If Line 18 is negative, reduce 14b by Line 18<br>Enter $0 if negative | | $0.00 |
| 25 | **Total obligation to be paid by the obligor**<br>Line 24a plus 24b plus 24c | | $888.23 |

Mother _____ shall begin payments on _October-December 2017_ and continue on the same date of each month until further order of the court.

__X__   Guidelines were followed.

_____   Deviation from child support guidelines by Court-Specific findings of Court supporting each deviation:

_____

_____

_____

Dated: _____

<div align="right">

**JUDGE**

</div>

**APPROVED AS TO FORM:**

_____     _____
Father printed name                              Father signature


_____     _____
Attorney for father printed name          Attorney for father signature and OBA Number


_____     _____
Mother printed name                            Mother signature


_____     _____
Attorney for mother printed name        Attorney for mother signature & OBA Number


_____     _____
Other Custodian printed name            Other Custodian signature


_____     _____
Attorney for Other Custodian printed name    Attorney for Other Custodian signature and
                                                                              OBA Number


_____     _____
State's Attorney, CSS printed name      State's Attorney, CSS signature and OBA Number

EXHIBIT C

## IN THE DISTRICT COURT OF  TULSA COUNTY
## STATE OF OKLAHOMA

| | | |
|---|---|---|
| Linh Stephens | ) | **Dist. Ct. Case No.** FD-2015-2228 |
| | ) | |
| Petitioner | ) | **OAH Case No.** |
| | ) | |
| | ) | **FGN:** 948641001 |
| | ) | |
| Adam Stephens | ) | Year 2018 |
| | ) | |
| Respondent | ) | |

### CHILD SUPPORT COMPUTATION

| | | | Father | Mother | Combined |
|---|---|---|---|---|---|
| | Calculation for number of children in this case | 1 | | | |
| | Obligor (person who pays) is (Enter "Father" or "Mother") | Mother | | | |
| **A** | **Base monthly obligation** | | **Father** | **Mother** | **Combined** |
| 1 | **Gross monthly income** All sources, except income specifically excluded by 43 O.S. Section 118B(B) | | $4,403.00 | $18,701.92 | $23,104.92 |
| | a. Amount of self-employment income included in Line 1 | | $0.00 | $0.00 | |
| | b. Deduction for self-employment tax Multiply Line 1a by 7.65% | | $0.00 | $0.00 | |
| 2 | **Total gross monthly income** Line 1 minus Line 1b | | $4,403.00 | $18,701.92 | |
| | a. Amount of SSA Title II benefits or veterans disability benefits paid for the benefit of the children. Do NOT include SSI benefits. (Enter in the column for the disabled or retired parent.) | | $0.00 | $0.00 | |
| | b. Court ordered support alimony actually paid in a prior case | | $0.00 | $0.00 | |
| | c. Court ordered monthly adjustment for marital debt | | $0.00 | $0.00 | |
| | d. Court ordered monthly child support actually paid for qualified out-of-home children | | $0.00 | $0.00 | |

OKDHS 03/01/23  **03EN025E**  1 of 7

| | | | | |
|---|---|---|---|---|
| | **In-home Children Deduction Worksheet**<br>e. Number of qualified in-home children excluding children on this case | 0 | 0 | |
| | f. Amount for qualified in-home children.<br>Apply Line 2 for each parent to Child Support Guideline Schedule amount using the number of children in Line 2e, and multiply guideline amount by 75% | $0.00 | $0.00 | |
| 3 | **Adjusted gross monthly income (AGI)**<br>Amount in Line 2 plus 2a, minus Lines 2b, 2c, 2d, and 2f | $4,403.00 | $18,701.92 | $23,104.92 |
| 4 | **Percentage share of income**<br>AGI for each parent divided by the combined AGI | 19.1% | 80.9% | 100% |
| 5 | **Base monthly obligation**<br>Apply combined AGI to Child Support Guideline Schedule and put total in combined base monthly obligation.  Multiply the combined total by the percentage share of income for each parent. | $261.46 | $1,110.54 | $1,372.00 |

| **B** | **Parenting time adjustment, if used** | | **Father** | **Mother** | **Combined** |
|---|---|---|---|---|---|
| 6 | **Number of overnights with each parent**<br>If less than 121 for either parent, skip to C. | | 183 | 182 | 365 |
| | a. Percentage of overnights with each parent<br>Number of overnights for each parent divided by 365 | | 50.0% | 50.0% | 100% |
| | b. Adjusted combined child support obligation<br>Adjustment factor is based on the parent with the fewest overnights.  The result in the combined column is the combined monthly obligation in Line 5 multiplied by the adjustment factor. | 1.5 | **<=== Adjustment Factor**<br>less than 121 = no factor<br>121-131 = 2<br>132-143 = 1.75<br>144-183 = 1.5 | | $2,058.00 |
| | c. Share of adjusted combined child support obligation<br>Combined Line 6b multiplied by the percentage share of income in Line 4 | | $392.18 | $1,665.82 | |
| | d. Respective adjusted base child support obligation<br>Amount for each parent in Line 6c multiplied by the percentage of the other parent in Line 6a | | $196.09 | $832.91 | |
| 7 | **Adjusted base monthly obligation**<br>Line 6d larger amount minus Line 6d smaller amount and the result is for the parent with the positive amount. If the parent has more than 205 in Line 6, use $0 for that parent.  If either parent has less than 121 in Line 6, use the Line 5 amount for both parents. | | $0.00 | $636.82 | |

OKDHS 03/01/23 **03EN025E** 2 of 7

| C | **Obligor** (person who pays) is (Enter "Father" or "Mother") | Mother | |

| D | Work and education-related child care expenses | Father | Mother | Other Custodian |
|---|---|---|---|---|
| 8 | **Monthly child care expenses for children in this case** Include any co-payments being paid by a parent receiving OKDHS Child Care Subsidy. | $0.00 | $0.00 | $0.00 |
| 9 | **Child care expense percentage share of the total** Total child care expenses multiplied by percentage share of income for each parent. Multiply Line 8 by Line 4 | $0.00 | $0.00 | |
| 10 | **Total child care adjustment to base monthly obligation** Line 9 minus Line 8 (amount may be negative) | $0.00 | $0.00 | |
| E | Health insurance premium | Father | Mother | Other Custodian |
| 11 | **Monthly health insurance premium costs** This premium represents the actual premium cost for any child(ren) in this case only.  Insurance Premium Worksheet is available if needed. **Use Cash Medical Support if any child is not covered by insurance.** | $0.00 | $0.00 | $0.00 |
| 12 | **Monthly health insurance share for each parent** Percentage share of income in Line 4 multiplied by total current insurance cost for all persons in Line 11 | $0.00 | $0.00 | |
| 13 | **Total premium cost adjustment to base monthly obligation** Line 12 minus Line 11  (amount may be negative) | $0.00 | $0.00 | |
| F | Other contributions, if agreed or ordered | Father | Mother | Other Custodian |
| 14 | **Ongoing medical costs** Cash medical support for fixed periodic payments for ongoing medical costs | $0.00 | $0.00 | $0.00 |
| | a. Adjusted medical costs share     Multiply total of Line 14 for all persons by Line 4 | $0.00 | $0.00 | |
| | b. Total ongoing medical costs adjustment to     base monthly obligation     Line 14a minus Line 14  (amount may be negative) | $0.00 | $0.00 | |
| 15 | **Visitation transportation costs** | $0.00 | $0.00 | $0.00 |
| | a. Adjusted visitation costs share     Multiply total of Line 15 for all persons by Line 4 | $0.00 | $0.00 | |
| | b. Total ongoing visitation costs adjustment to     base monthly obligation     Line 15a minus Line 15  (amount may be negative) | $0.00 | $0.00 | |
| G | **Child Support obligation subtotal** | Father | Mother | |

| | | | Father | Mother | Combined |
|---|---|---|---|---|---|
| 16 | **Base monthly child support obligation less adjustments for child care and other contributions**<br>Add obligor Line 7 to Lines 10, 13 and 15b if positive amounts.<br>Subtract Lines 10, 13 or 15b if negative amounts. | | $0.00 | $636.82 | |
| 17 | **SSA Title II benefits or veterans disability benefits paid for the benefit of the child**<br>Line 2a for obligor | | | $0.00 | |
| 18 | **Total monthly child support obligation less any SSA Title II benefits or veterans disability benefits paid for the benefit of the child**<br>Line 16 minus Line 17  (amount may be negative) | | $0.00 | $636.82 | |
| **H** | **Cash Medical Support** | | **Father** | **Mother** | **Combined** |
| 19 | Enter number of children in this case not covered by health insurance.  If none, skip to Line 24.  Note: This may be different from the number of children on SoonerCare. | 0 | | | |
| 20 | Enter the Soonercare or other health care government assistance **applicant** for the child(ren) in this case, if child(ren) are on SoonerCare.  Enter "Father", "Mother", "other" or leave blank. | | | | |

| | | | | |
|---|---|---|---|---|
| 21 | **Cash medical amount for obligor** If Line 19 is zero or the obligor is the person on Line 20, enter $0 in Line 23. If Line 19 is greater than zero and the obligor is not the person on Line 20, refer to the Cash Medical Income Guidelines Table. If the Obligor's income is less than or equal to the amount on the table, enter $0. If greater, multiply $115 by the number of children in Line 19. Multiply the combined total by percentage shares from Line 4. | $0.00 | $0.00 | $0.00 |
| 22 | **5% of Gross Monthly Income** Line 2 multiplied by 0.05 This represents the maximum amount of total medical allowed. | $220.15 | $935.10 | |
| 23 | **Cash medical support in lieu of insurance** If Line 21 plus Line 13 is greater than Line 22, use Line 22 minus Line 13. If Line 21 plus Line 13 is less than or equal to Line 22, enter Line 21. Enter $0 if negative | $0.00 | $0.00 | |

| | **Current Monthly Support Obligation** | **Father** | **Mother** |
|---|---|---|---|
| 24 | **a. Child support portion** If Line 14b is positive, Line 18 for obligor If Line 14b is negative, reduce Line 18 by Line 14b Enter $0 if negative | | $636.82 |
| | **b. Cash medical portion** If Line 18 minus 14b is positive, Line 23 for obligor If Line 18 minus 14b is negative, reduce Line 23 by Line 18 minus 14b. Enter $0 if negative | | $0.00 |
| | **c. Ongoing medical costs portion** If Line 18 is positive, Line 14b for obligor If Line 18 is negative, reduce 14b by Line 18 Enter $0 if negative | | $0.00 |
| 25 | **Total obligation to be paid by the obligor** Line 24a plus 24b plus 24c | | $636.82 |

Mother_____ shall begin payments on _01/01/2018-12/31/2018_ and continue on the same date of each month until further order of the court.

__X__    Guidelines were followed.

_____    Deviation from child support guidelines by Court-Specific findings of Court supporting each deviation:

_____

_____

_____


Dated: _____

_____

**JUDGE**

**APPROVED AS TO FORM:**

_____
Father printed name

_____
Father signature

_____
Attorney for father printed name

_____
Attorney for father signature and OBA Number

_____
Mother printed name

_____
Mother signature

_____
Attorney for mother printed name

_____
Attorney for mother signature & OBA Number

_____
Other Custodian printed name

_____
Other Custodian signature

_____
Attorney for Other Custodian printed name

_____
Attorney for Other Custodian signature and
OBA Number

_____
State's Attorney, CSS printed name

_____
State's Attorney, CSS signature and OBA Number

**IN THE DISTRICT COURT OF  TULSA COUNTY**
**STATE OF OKLAHOMA**

| | | |
|---|---|---|
| Linh Stephens | ) | Dist. Ct. Case No.    FD-2015-2228 |
| Petitioner | ) | OAH Case No. |
| | ) | FGN:    948641001 |
| Adam Stephens | ) | Year 2019 thru Sept |
| Respondent | ) | |

**CHILD SUPPORT COMPUTATION**

| | | | Father | Mother | Combined |
|---|---|---|---|---|---|
| | Calculation for number of children in this case | 1 | | | |
| | Obligor (person who pays) is (Enter "Father" or "Mother") | Mother | | | |
| **A** | **Base monthly obligation** | | **Father** | **Mother** | **Combined** |
| 1 | **Gross monthly income** All sources, except income specifically excluded by 43 O.S. Section 118B(B) | | $4,874.75 | $18,413.76 | $23,288.51 |
| | a. Amount of self-employment income included in Line 1 | | $0.00 | $0.00 | |
| | b. Deduction for self-employment tax Multiply Line 1a by 7.65% | | $0.00 | $0.00 | |
| 2 | **Total gross monthly income** Line 1 minus Line 1b | | $4,874.75 | $18,413.76 | |
| | a. Amount of SSA Title II benefits or veterans disability benefits paid for the benefit of the children. Do NOT include SSI benefits. (Enter in the column for the disabled or retired parent.) | | $0.00 | $0.00 | |
| | b. Court ordered support alimony actually paid in a prior case | | $0.00 | $0.00 | |
| | c. Court ordered monthly adjustment for marital debt | | $0.00 | $0.00 | |
| | d. Court ordered monthly child support actually paid for qualified out-of-home children | | $0.00 | $0.00 | |

OKDHS 03/01/23        **03EN025E**        1 of 7

| | | Father | Mother | Combined |
|---|---|---|---|---|
| | **In-home Children Deduction Worksheet** e. Number of qualified in-home children excluding children on this case | 0 | 0 | |
| | f. Amount for qualified in-home children. Apply Line 2 for each parent to Child Support Guideline Schedule amount using the number of children in Line 2e, and multiply guideline amount by 75% | $0.00 | $0.00 | |
| 3 | **Adjusted gross monthly income (AGI)** Amount in Line 2 plus 2a, minus Lines 2b, 2c, 2d, and 2f | $4,874.75 | $18,413.76 | $23,288.51 |
| 4 | **Percentage share of income** AGI for each parent divided by the combined AGI | 20.9% | 79.1% | 100% |
| 5 | **Base monthly obligation** Apply combined AGI to Child Support Guideline Schedule and put total in combined base monthly obligation. Multiply the combined total by the percentage share of income for each parent. | $287.19 | $1,084.81 | $1,372.00 |
| **B** | **Parenting time adjustment, if used** | **Father** | **Mother** | **Combined** |
| 6 | **Number of overnights with each parent** If less than 121 for either parent, skip to C. | 183 | 182 | 365 |
| | a. Percentage of overnights with each parent Number of overnights for each parent divided by 365 | 50.0% | 50.0% | 100% |
| | b. Adjusted combined child support obligation Adjustment factor is based on the parent with the fewest overnights. The result in the combined column is the combined monthly obligation in Line 5 multiplied by the adjustment factor.   `1.5` | <=== **Adjustment Factor** less than 121 = no factor  121-131 = 2  132-143 = 1.75  144-183 = 1.5 | | $2,058.00 |
| | c. Share of adjusted combined child support obligation Combined Line 6b multiplied by the percentage share of income in Line 4 | $430.78 | $1,627.22 | |
| | d. Respective adjusted base child support obligation Amount for each parent in Line 6c multiplied by the percentage of the other parent in Line 6a | $215.39 | $813.61 | |
| 7 | **Adjusted base monthly obligation** Line 6d larger amount minus Line 6d smaller amount and the result is for the parent with the positive amount. If the parent has more than 205 in Line 6, use $0 for that parent. If either parent has less than 121 in Line 6, use the Line 5 amount for both parents. | $0.00 | $598.22 | |

OKDHS 03/01/23      **03EN025E**      2 of 7

| C | **Obligor** (person who pays) is (Enter "Father" or "Mother") | Mother | |

| D | Work and education-related child care expenses | Father | Mother | Other Custodian |
|---|---|---|---|---|
| 8 | **Monthly child care expenses for children in this case** Include any co-payments being paid by a parent receiving OKDHS Child Care Subsidy. | $0.00 | $0.00 | $0.00 |
| 9 | **Child care expense percentage share of the total** Total child care expenses multiplied by percentage share of income for each parent. Multiply Line 8 by Line 4 | $0.00 | $0.00 | |
| 10 | **Total child care adjustment to base monthly obligation** Line 9 minus Line 8 (amount may be negative) | $0.00 | $0.00 | |
| E | **Health insurance premium** | Father | Mother | Other Custodian |
| 11 | **Monthly health insurance premium costs** This premium represents the actual premium cost for any child(ren) in this case only.  Insurance Premium Worksheet is available if needed. **Use Cash Medical Support if any child is not covered by insurance.** | $0.00 | $0.00 | $0.00 |
| 12 | **Monthly health insurance share for each parent** Percentage share of income in Line 4 multiplied by total current insurance cost for all persons in Line 11 | $0.00 | $0.00 | |
| 13 | **Total premium cost adjustment to base monthly obligation** Line 12 minus Line 11  (amount may be negative) | $0.00 | $0.00 | |
| F | **Other contributions, if agreed or ordered** | Father | Mother | Other Custodian |
| 14 | **Ongoing medical costs** Cash medical support for fixed periodic payments for ongoing medical costs | $0.00 | $0.00 | $0.00 |
| | a. Adjusted medical costs share    Multiply total of Line 14 for all persons by Line 4 | $0.00 | $0.00 | |
| | b. Total ongoing medical costs adjustment to    base monthly obligation    Line 14a minus Line 14  (amount may be negative) | $0.00 | $0.00 | |
| 15 | **Visitation transportation costs** | $0.00 | $0.00 | $0.00 |
| | a. Adjusted visitation costs share    Multiply total of Line 15 for all persons by Line 4 | $0.00 | $0.00 | |
| | b. Total ongoing visitation costs adjustment to    base monthly obligation    Line 15a minus Line 15  (amount may be negative) | $0.00 | $0.00 | |
| G | **Child Support obligation subtotal** | Father | Mother | |

| | | Father | Mother | Combined |
|---|---|---|---|---|
| 16 | **Base monthly child support obligation less adjustments for child care and other contributions** Add obligor Line 7 to Lines 10, 13 and 15b if positive amounts. Subtract Lines 10, 13 or 15b if negative amounts. | $0.00 | $598.22 | |
| 17 | **SSA Title II benefits or veterans disability benefits paid for the benefit of the child** Line 2a for obligor | | $0.00 | |
| 18 | **Total monthly child support obligation less any SSA Title II benefits or veterans disability benefits paid for the benefit of the child** Line 16 minus Line 17  (amount may be negative) | $0.00 | $598.22 | |
| **H** | **Cash Medical Support** | **Father** | **Mother** | **Combined** |
| 19 | Enter number of children in this case not covered by health insurance.  If none, skip to Line 24.  Note: This may be different from the number of children on SoonerCare. | 0 | | |
| 20 | Enter the Soonercare or other health care government assistance **applicant** for the child(ren) in this case, if child(ren) are on SoonerCare.  Enter "Father", "Mother", "other" or leave blank. | | | |

| | | | | |
|---|---|---|---|---|
| 21 | **Cash medical amount for obligor**<br>If Line 19 is zero or the obligor is the person on Line 20, enter $0 in Line 23.  If Line 19 is greater than zero and the obligor is not the person on Line 20, refer to the Cash Medical Income Guidelines Table.  If the Obligor's income is less than or equal to the amount on the table, enter $0.  If greater, multiply $115 by the number of children in Line 19.  Multiply the combined total by percentage shares from Line 4. | $0.00 | $0.00 | $0.00 |
| 22 | **5% of Gross Monthly Income**<br>Line 2 multiplied by 0.05<br>This represents the maximum amount of total medical allowed. | $243.74 | $920.69 | |
| 23 | **Cash medical support in lieu of insurance**<br>If Line 21 plus Line 13 is greater than Line 22, use Line 22 minus Line 13.  If Line 21 plus Line 13 is less than or equal to Line 22, enter Line 21.  Enter $0 if negative | $0.00 | $0.00 | |

| I | Current Monthly Support Obligation | Father | Mother |
|---|---|---|---|
| 24 | **a. Child support portion**<br>If Line 14b is positive, Line 18 for obligor<br>If Line 14b is negative, reduce Line 18 by Line 14b<br>Enter $0 if negative | | $598.22 |
| | **b. Cash medical portion**<br>If Line 18 minus 14b is positive, Line 23 for obligor<br>If Line 18 minus 14b is negative, reduce Line 23 by Line 18 minus 14b.  Enter $0 if negative | | $0.00 |
| | **c. Ongoing medical costs portion**<br>If Line 18 is positive, Line 14b for obligor<br>If Line 18 is negative, reduce 14b by Line 18<br>Enter $0 if negative | | $0.00 |
| 25 | **Total obligation to be paid by the obligor**<br>Line 24a plus 24b plus 24c | | $598.22 |

Mother_____ shall begin payments on  01/01/2019-09/30/2019  and continue on the same date of each month until further order of the court.

   X____   Guidelines were followed.

_____   Deviation from child support guidelines by Court-Specific findings of Court supporting each deviation:

_____

_____

_____

Dated: _____

_____
**JUDGE**

**APPROVED AS TO FORM:**

_____          _____
Father printed name                   Father signature

_____          _____
Attorney for father printed name      Attorney for father signature and OBA Number

_____          _____
Mother printed name                   Mother signature

_____          _____
Attorney for mother printed name      Attorney for mother signature & OBA Number

_____          _____
Other Custodian printed name          Other Custodian signature

_____          _____
Attorney for Other Custodian printed name    Attorney for Other Custodian signature and
                                              OBA Number

_____          _____
State's Attorney, CSS printed name    State's Attorney, CSS signature and OBA Number

## IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

| | |
|---|---|
| Linh Stephens | ) |
| | ) Dist. Ct. Case No.   FD-2015-2228 |
| Petitioner | ) |
| | ) OAH Case No.   _____ |
| _____ | ) |
| | ) FGN:   948641001 |
| Adam Stephens | ) |
| | ) Sept 2019 thru Dec 2019 |
| Respondent | ) |

### CHILD SUPPORT COMPUTATION

| | | | Father | Mother | Combined |
|---|---|---|---|---|---|
| | Calculation for number of children in this case | 1 | | | |
| | Obligor (person who pays) is (Enter "Father" or "Mother") | Mother | | | |
| **A** | **Base monthly obligation** | | **Father** | **Mother** | **Combined** |
| 1 | **Gross monthly income** All sources, except income specifically excluded by 43 O.S. Section 118B(B) | | $4,874.75 | $18,413.76 | $23,288.51 |
| | a. Amount of self-employment income included in Line 1 | | $0.00 | $0.00 | |
| | b. Deduction for self-employment tax Multiply Line 1a by 7.65% | | $0.00 | $0.00 | |
| 2 | **Total gross monthly income** Line 1 minus Line 1b | | $4,874.75 | $18,413.76 | |
| | a. Amount of SSA Title II benefits or veterans disability benefits paid for the benefit of the children. Do NOT include SSI benefits. (Enter in the column for the disabled or retired parent.) | | $0.00 | $0.00 | |
| | b. Court ordered support alimony actually paid in a prior case | | $0.00 | $0.00 | |
| | c. Court ordered monthly adjustment for marital debt | | $0.00 | $0.00 | |
| | d. Court ordered monthly child support actually paid for qualified out-of-home children | | $0.00 | $0.00 | |

| | In-home Children Deduction Worksheet | | | |
|---|---|---|---|---|
| | e. Number of qualified in-home children excluding children on this case | 0 | 1 | |
| | f. Amount for qualified in-home children. Apply Line 2 for each parent to Child Support Guideline Schedule amount using the number of children in Line 2e, and multiply guideline amount by 75% | $0.00 | $1,029.00 | |
| 3 | **Adjusted gross monthly income (AGI)** Amount in Line 2 plus 2a, minus Lines 2b, 2c, 2d, and 2f | $4,874.75 | $17,384.76 | $22,259.51 |
| 4 | **Percentage share of income** AGI for each parent divided by the combined AGI | 21.9% | 78.1% | 100% |
| 5 | **Base monthly obligation** Apply combined AGI to Child Support Guideline Schedule and put total in combined base monthly obligation. Multiply the combined total by the percentage share of income for each parent. | $300.46 | $1,071.54 | $1,372.00 |
| **B** | **Parenting time adjustment, if used** | **Father** | **Mother** | **Combined** |
| 6 | **Number of overnights with each parent** If less than 121 for either parent, skip to C. | 183 | 182 | 365 |
| | a. Percentage of overnights with each parent Number of overnights for each parent divided by 365 | 50.0% | 50.0% | 100% |
| | b. Adjusted combined child support obligation Adjustment factor is based on the parent with the fewest overnights. The result in the combined column is the combined monthly obligation in Line 5 multiplied by the adjustment factor.   `1.5` | **<=== Adjustment Factor** less than 121 = no factor 121-131 = 2 132-143 = 1.75 144-183 = 1.5 | | $2,058.00 |
| | c. Share of adjusted combined child support obligation Combined Line 6b multiplied by the percentage share of income in Line 4 | $450.69 | $1,607.31 | |
| | d. Respective adjusted base child support obligation Amount for each parent in Line 6c multiplied by the percentage of the other parent in Line 6a | $225.35 | $803.66 | |
| 7 | **Adjusted base monthly obligation** Line 6d larger amount minus Line 6d smaller amount and the result is for the parent with the positive amount. If the parent has more than 205 in Line 6, use $0 for that parent. If either parent has less than 121 in Line 6, use the Line 5 amount for both parents. | $0.00 | $578.31 | |

| C | **Obligor** (person who pays) is<br>(Enter "Father" or "Mother") | Mother | |

| D | Work and education-related child care expenses | Father | Mother | Other Custodian |
|---|---|---|---|---|
| 8 | **Monthly child care expenses for children in this case** Include any co-payments being paid by a parent receiving OKDHS Child Care Subsidy. | $0.00 | $0.00 | $0.00 |
| 9 | **Child care expense percentage share of the total** Total child care expenses multiplied by percentage share of income for each parent. Multiply Line 8 by Line 4 | $0.00 | $0.00 | |
| 10 | **Total child care adjustment to base monthly obligation** Line 9 minus Line 8 (amount may be negative) | $0.00 | $0.00 | |
| E | Health insurance premium | Father | Mother | Other Custodian |
| 11 | **Monthly health insurance premium costs** This premium represents the actual premium cost for any child(ren) in this case only. Insurance Premium Worksheet is available if needed. **Use Cash Medical Support if any child is not covered by insurance.** | $0.00 | $0.00 | $0.00 |
| 12 | **Monthly health insurance share for each parent** Percentage share of income in Line 4 multiplied by total current insurance cost for all persons in Line 11 | $0.00 | $0.00 | |
| 13 | **Total premium cost adjustment to base monthly obligation** Line 12 minus Line 11 (amount may be negative) | $0.00 | $0.00 | |
| F | Other contributions, if agreed or ordered | Father | Mother | Other Custodian |
| 14 | **Ongoing medical costs** Cash medical support for fixed periodic payments for ongoing medical costs | $0.00 | $0.00 | $0.00 |
| | a. Adjusted medical costs share    Multiply total of Line 14 for all persons by Line 4 | $0.00 | $0.00 | |
| | b. Total ongoing medical costs adjustment to base monthly obligation    Line 14a minus Line 14 (amount may be negative) | $0.00 | $0.00 | |
| 15 | **Visitation transportation costs** | $0.00 | $0.00 | $0.00 |
| | a. Adjusted visitation costs share    Multiply total of Line 15 for all persons by Line 4 | $0.00 | $0.00 | |
| | b. Total ongoing visitation costs adjustment to base monthly obligation    Line 15a minus Line 15 (amount may be negative) | $0.00 | $0.00 | |
| G | **Child Support obligation subtotal** | Father | Mother | |

| | | Father | Mother | Combined |
|---|---|---|---|---|
| 16 | **Base monthly child support obligation less adjustments for child care and other contributions** Add obligor Line 7 to Lines 10, 13 and 15b if positive amounts. Subtract Lines 10, 13 or 15b if negative amounts. | $0.00 | $578.31 | |
| 17 | **SSA Title II benefits or veterans disability benefits paid for the benefit of the child** Line 2a for obligor | | $0.00 | |
| 18 | **Total monthly child support obligation less any SSA Title II benefits or veterans disability benefits paid for the benefit of the child** Line 16 minus Line 17  (amount may be negative) | $0.00 | $578.31 | |
| **H** | **Cash Medical Support** | **Father** | **Mother** | **Combined** |
| 19 | Enter number of children in this case not covered by health insurance.  If none, skip to Line 24.  Note: This may be different from the number of children on SoonerCare. | 0 | | |
| 20 | Enter the Soonercare or other health care government assistance **applicant** for the child(ren) in this case, if child(ren) are on SoonerCare.  Enter "Father", "Mother", "other" or leave blank. | | | |

| | | | | |
|---|---|---|---|---|
| 21 | **Cash medical amount for obligor**<br>If Line 19 is zero or the obligor is the person on Line 20, enter $0 in Line 23.  If Line 19 is greater than zero and the obligor is not the person on Line 20, refer to the Cash Medical Income Guidelines Table.  If the Obligor's income is less than or equal to the amount on the table, enter $0.  If greater, multiply $115 by the number of children in Line 19.  Multiply the combined total by percentage shares from Line 4. | $0.00 | $0.00 | $0.00 |
| 22 | **5% of Gross Monthly Income**<br>Line 2 multiplied by 0.05<br>This represents the maximum amount of total medical allowed. | $243.74 | $920.69 | |
| 23 | **Cash medical support in lieu of insurance**<br>If Line 21 plus Line 13 is greater than Line 22, use Line 22 minus Line 13.  If Line 21 plus Line 13 is less than or equal to Line 22, enter Line 21.  Enter $0 if negative | $0.00 | $0.00 | |

| I | Current Monthly Support Obligation | Father | Mother |
|---|---|---|---|
| 24 | **a. Child support portion**<br>If Line 14b is positive, Line 18 for obligor<br>If Line 14b is negative, reduce Line 18 by Line 14b<br>Enter $0 if negative | | $578.31 |
| | **b. Cash medical portion**<br>If Line 18 minus 14b is positive, Line 23 for obligor<br>If Line 18 minus 14b is negative, reduce Line 23 by Line 18 minus 14b.  Enter $0 if negative | | $0.00 |
| | **c. Ongoing medical costs portion**<br>If Line 18 is positive, Line 14b for obligor<br>If Line 18 is negative, reduce 14b by Line 18<br>Enter $0 if negative | | $0.00 |
| 25 | **Total obligation to be paid by the obligor**<br>Line 24a plus 24b plus 24c | | $578.31 |

Mother_____shall begin payments on _10/01/2019-12/31/2019_ and continue on the same date of each month until further order of the court.

__X__   Guidelines were followed.

_____   Deviation from child support guidelines by Court-Specific findings of Court supporting each deviation:

_____

_____

_____

Dated: _____

_____
                                                  **JUDGE**

**APPROVED AS TO FORM:**

_____    _____
Father printed name                           Father signature


_____    _____
Attorney for father printed name         Attorney for father signature and OBA Number


_____    _____
Mother printed name                          Mother signature


_____    _____
Attorney for mother printed name        Attorney for mother signature & OBA Number


_____    _____
Other Custodian printed name              Other Custodian signature


_____    _____
Attorney for Other Custodian printed name    Attorney for Other Custodian signature and
                                                                        OBA Number


_____    _____
State's Attorney, CSS printed name       State's Attorney, CSS signature and OBA Number

Case 4:24-cv-00216-JDR-CDL    Document 20-1    Filed 07/01/24    Page 79 of 117
Appellate Case: 25-5063    Document: 7-1    Date Filed: 05/09/2025    Page: 206

EXHIBIT F

## IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

| | | |
|---|---|---|
| Linh Stephens | ) | **Dist. Ct. Case No.**     FD-2015-2228 |
| | ) | |
| Petitioner | ) | **OAH Case No.** |
| | ) | |
| | ) | **FGN:**     948641001 |
| | ) | |
| Adam Stephens | ) | Year 2020 |
| | ) | |
| Respondent | ) | |

### CHILD SUPPORT COMPUTATION

| | | | |
|---|---|---|---|
| | Calculation for number of children in this case | 1 | |
| | Obligor (person who pays) is (Enter "Father" or "Mother") | Mother | |

| A | Base monthly obligation | Father | Mother | Combined |
|---|---|---|---|---|
| 1 | **Gross monthly income** All sources, except income specifically excluded by 43 O.S. Section 118B(B) | $3,571.08 | $19,228.33 | $22,799.41 |
| | a. Amount of self-employment income included in Line 1 | $0.00 | $0.00 | |
| | b. Deduction for self-employment tax Multiply Line 1a by 7.65% | $0.00 | $0.00 | |
| 2 | **Total gross monthly income** Line 1 minus Line 1b | $3,571.08 | $19,228.33 | |
| | a. Amount of SSA Title II benefits or veterans disability benefits paid for the benefit of the children. Do NOT include SSI benefits. (Enter in the column for the disabled or retired parent.) | $0.00 | $0.00 | |
| | b. Court ordered support alimony actually paid in a prior case | $0.00 | $0.00 | |
| | c. Court ordered monthly adjustment for marital debt | $0.00 | $0.00 | |
| | d. Court ordered monthly child support actually paid for qualified out-of-home children | $0.00 | $0.00 | |

OKDHS 03/01/23        **03EN025E**        1 of 7

| | In-home Children Deduction Worksheet | | | |
|---|---|---|---|---|
| | e. Number of qualified in-home children excluding children on this case | 0 | 1 | |
| | f. Amount for qualified in-home children. Apply Line 2 for each parent to Child Support Guideline Schedule amount using the number of children in Line 2e, and multiply guideline amount by 75% | $0.00 | $1,029.00 | |
| 3 | **Adjusted gross monthly income (AGI)** Amount in Line 2 plus 2a, minus Lines 2b, 2c, 2d, and 2f | $3,571.08 | $18,199.33 | $21,770.41 |
| 4 | **Percentage share of income** AGI for each parent divided by the combined AGI | 16.4% | 83.6% | 100% |
| 5 | **Base monthly obligation** Apply combined AGI to Child Support Guideline Schedule and put total in combined base monthly obligation.  Multiply the combined total by the percentage share of income for each parent. | $225.05 | $1,146.95 | $1,372.00 |
| **B** | **Parenting time adjustment, if used** | **Father** | **Mother** | **Combined** |
| 6 | **Number of overnights with each parent** If less than 121 for either parent, skip to C. | 183 | 182 | 365 |
| | a. Percentage of overnights with each parent Number of overnights for each parent divided by 365 | 50.0% | 50.0% | 100% |
| | b. Adjusted combined child support obligation Adjustment factor is based on the parent with the fewest overnights.  The result in the combined column is the combined monthly obligation in Line 5 multiplied by the adjustment factor. | 1.5 | **<=== Adjustment Factor** less than 121 = no factor 121-131 = 2 132-143 = 1.75 144-183 = 1.5 | $2,058.00 |
| | c. Share of adjusted combined child support obligation Combined Line 6b multiplied by the percentage share of income in Line 4 | | $337.58 | $1,720.42 |
| | d. Respective adjusted base child support obligation Amount for each parent in Line 6c multiplied by the percentage of the other parent in Line 6a | | $168.79 | $860.21 |
| 7 | **Adjusted base monthly obligation** Line 6d larger amount minus Line 6d smaller amount and the result is for the parent with the positive amount. If the parent has more than 205 in Line 6, use $0 for that parent.  If either parent has less than 121 in Line 6, use the Line 5 amount for both parents. | | $0.00 | $691.42 |

| C | **Obligor** (person who pays) is (Enter "Father" or "Mother") | Mother | |

| D | Work and education-related child care expenses | Father | Mother | Other Custodian |
|---|---|---|---|---|
| 8 | **Monthly child care expenses for children in this case**<br>Include any co-payments being paid by a parent receiving OKDHS Child Care Subsidy. | $0.00 | $0.00 | $0.00 |
| 9 | **Child care expense percentage share of the total**<br>Total child care expenses multiplied by percentage share of income for each parent.<br>Multiply Line 8 by Line 4 | $0.00 | $0.00 | |
| 10 | **Total child care adjustment to base monthly obligation**<br>Line 9 minus Line 8 (amount may be negative) | $0.00 | $0.00 | |
| E | Health insurance premium | Father | Mother | Other Custodian |
| 11 | **Monthly health insurance premium costs**<br>This premium represents the actual premium cost for any child(ren) in this case only.  Insurance Premium Worksheet is available if needed.<br>**Use Cash Medical Support if any child is not covered by insurance.** | $0.00 | $0.00 | $0.00 |
| 12 | **Monthly health insurance share for each parent**<br>Percentage share of income in Line 4 multiplied by total current insurance cost for all persons in Line 11 | $0.00 | $0.00 | |
| 13 | **Total premium cost adjustment to base monthly obligation**<br>Line 12 minus Line 11  (amount may be negative) | $0.00 | $0.00 | |
| F | Other contributions, if agreed or ordered | Father | Mother | Other Custodian |
| 14 | **Ongoing medical costs**<br>Cash medical support for fixed periodic payments for ongoing medical costs | $0.00 | $0.00 | $0.00 |
| | a. Adjusted medical costs share<br>Multiply total of Line 14 for all persons by Line 4 | $0.00 | $0.00 | |
| | b. Total ongoing medical costs adjustment to base monthly obligation<br>Line 14a minus Line 14  (amount may be negative) | $0.00 | $0.00 | |
| 15 | **Visitation transportation costs** | $0.00 | $0.00 | $0.00 |
| | a. Adjusted visitation costs share<br>Multiply total of Line 15 for all persons by Line 4 | $0.00 | $0.00 | |
| | b. Total ongoing visitation costs adjustment to base monthly obligation<br>Line 15a minus Line 15  (amount may be negative) | $0.00 | $0.00 | |
| G | Child Support obligation subtotal | Father | Mother | |

| | | Father | Mother | Combined |
|---|---|---|---|---|
| 16 | **Base monthly child support obligation less adjustments for child care and other contributions** Add obligor Line 7 to Lines 10, 13 and 15b if positive amounts. Subtract Lines 10, 13 or 15b if negative amounts. | $0.00 | $691.42 | |
| 17 | **SSA Title II benefits or veterans disability benefits paid for the benefit of the child** Line 2a for obligor | | $0.00 | |
| 18 | **Total monthly child support obligation less any SSA Title II benefits or veterans disability benefits paid for the benefit of the child** Line 16 minus Line 17  (amount may be negative) | $0.00 | $691.42 | |
| **H** | **Cash Medical Support** | **Father** | **Mother** | **Combined** |
| 19 | Enter number of children in this case not covered by health insurance.  If none, skip to Line 24.  Note: This may be different from the number of children on SoonerCare. | 0 | | |
| 20 | Enter the Soonercare or other health care government assistance **applicant** for the child(ren) in this case, if child(ren) are on SoonerCare.  Enter "Father", "Mother", "other" or leave blank. | | | |

| | | | Father | Mother | |
|---|---|---|---|---|---|
| 21 | **Cash medical amount for obligor**<br>If Line 19 is zero or the obligor is the person on Line 20, enter $0 in Line 23. If Line 19 is greater than zero and the obligor is not the person on Line 20, refer to the Cash Medical Income Guidelines Table. If the Obligor's income is less than or equal to the amount on the table, enter $0. If greater, multiply $115 by the number of children in Line 19. Multiply the combined total by percentage shares from Line 4. | $0.00 | $0.00 | $0.00 |
| 22 | **5% of Gross Monthly Income**<br>Line 2 multiplied by 0.05<br>This represents the maximum amount of total medical allowed. | $178.55 | $961.42 | |
| 23 | **Cash medical support in lieu of insurance**<br>If Line 21 plus Line 13 is greater than Line 22, use Line 22 minus Line 13. If Line 21 plus Line 13 is less than or equal to Line 22, enter $0. Enter $0 if negative | $0.00 | $0.00 | |

| I | Current Monthly Support Obligation | Father | Mother |
|---|---|---|---|
| 24 | **a. Child support portion**<br>If Line 14b is positive, Line 18 for obligor<br>If Line 14b is negative, reduce Line 18 by Line 14b<br>Enter $0 if negative | | $691.42 |
| | **b. Cash medical portion**<br>If Line 18 minus 14b is positive, Line 23 for obligor<br>If Line 18 minus 14b is negative, reduce Line 23 by Line 18 minus 14b. Enter $0 if negative | | $0.00 |
| | **c. Ongoing medical costs portion**<br>If Line 18 is positive, Line 14b for obligor<br>If Line 18 is negative, reduce 14b by Line 18<br>Enter $0 if negative | | $0.00 |
| 25 | **Total obligation to be paid by the obligor**<br>Line 24a plus 24b plus 24c | | $691.42 |

Mother _____ shall begin payments on <u>01/01/2020-12/31/2020</u> and continue on the same date of each month until further order of the court.

___X___ Guidelines were followed.

_____ Deviation from child support guidelines by Court-Specific findings of Court supporting each deviation:

_____

_____

_____

Dated: _____

_____
**JUDGE**

**APPROVED AS TO FORM:**

| | |
|---|---|
| Father printed name | Father signature |
| Attorney for father printed name | Attorney for father signature and OBA Number |
| Mother printed name | Mother signature |
| Attorney for mother printed name | Attorney for mother signature & OBA Number |
| Other Custodian printed name | Other Custodian signature |
| Attorney for Other Custodian printed name | Attorney for Other Custodian signature and OBA Number |
| State's Attorney, CSS printed name | State's Attorney, CSS signature and OBA Number |

## IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

| | | |
|---|---|---|
| Linh Stephens | ) | **Dist. Ct. Case No.** FD-2015-2228 |
| | ) | |
| Petitioner | ) | **OAH Case No.** |
| | ) | |
| | ) | **FGN:** 948641001 |
| | ) | |
| Adam Stephens | ) | Year 2021 |
| | ) | |
| Respondent | ) | |

### CHILD SUPPORT COMPUTATION

| | | | |
|---|---|---|---|
| Calculation for number of children in this case | | 1 | |
| Obligor (person who pays) is (Enter "Father" or "Mother") | | Mother | |

| A | Base monthly obligation | Father | Mother | Combined |
|---|---|---|---|---|
| 1 | **Gross monthly income** All sources, except income specifically excluded by 43 O.S. Section 118B(B) | $4,505.16 | $17,576.00 | $22,081.16 |
| | a. Amount of self-employment income included in Line 1 | $0.00 | $0.00 | |
| | b. Deduction for self-employment tax Multiply Line 1a by 7.65% | $0.00 | $0.00 | |
| 2 | **Total gross monthly income** Line 1 minus Line 1b | $4,505.16 | $17,576.00 | |
| | a. Amount of SSA Title II benefits or veterans disability benefits paid for the benefit of the children. Do NOT include SSI benefits. (Enter in the column for the disabled or retired parent.) | $0.00 | $0.00 | |
| | b. Court ordered support alimony actually paid in a prior case | $0.00 | $0.00 | |
| | c. Court ordered monthly adjustment for marital debt | $0.00 | $0.00 | |
| | d. Court ordered monthly child support actually paid for qualified out-of-home children | $0.00 | $0.00 | |

| | | | | |
|---|---|---|---|---|
| | **In-home Children Deduction Worksheet**<br>  e. Number of qualified in-home children excluding children on this case | 0 | 1 | |
| | f. Amount for qualified in-home children.<br>Apply Line 2 for each parent to Child Support Guideline Schedule amount using the number of children in Line 2e, and multiply guideline amount by 75% | $0.00 | $1,029.00 | |
| 3 | **Adjusted gross monthly income (AGI)**<br>Amount in Line 2 plus 2a, minus Lines 2b, 2c, 2d, and 2f | $4,505.16 | $16,547.00 | $21,052.16 |
| 4 | **Percentage share of income**<br>AGI for each parent divided by the combined AGI | 21.4% | 78.6% | 100% |
| 5 | **Base monthly obligation**<br>Apply combined AGI to Child Support Guideline Schedule and put total in combined base monthly obligation.  Multiply the combined total by the percentage share of income for each parent. | $293.61 | $1,078.39 | $1,372.00 |
| **B** | **Parenting time adjustment, if used** | **Father** | **Mother** | **Combined** |
| 6 | **Number of overnights with each parent**<br>If less than 121 for either parent, skip to C. | 183 | 182 | 365 |
| | a. Percentage of overnights with each parent<br>Number of overnights for each parent divided by 365 | 50.0% | 50.0% | 100% |
| | b. Adjusted combined child support obligation<br>Adjustment factor is based on the parent with the fewest overnights.  The result in the combined column is the combined monthly obligation in Line 5 multiplied by the adjustment factor. <br>1.5 | **<=== Adjustment Factor**<br>less than 121 = no factor<br>121-131 = 2<br>132-143 = 1.75<br>144-183 = 1.5 | | $2,058.00 |
| | c. Share of adjusted combined child support obligation<br>Combined Line 6b multiplied by the percentage share of income in Line 4 | $440.41 | $1,617.59 | |
| | d. Respective adjusted base child support obligation<br>Amount for each parent in Line 6c multiplied by the percentage of the other parent in Line 6a | $220.21 | $808.80 | |
| 7 | **Adjusted base monthly obligation**<br>Line 6d larger amount minus Line 6d smaller amount and the result is for the parent with the positive amount. If the parent has more than 205 in Line 6, use $0 for that parent.  If either parent has less than 121 in Line 6, use the Line 5 amount for both parents. | $0.00 | $588.59 | |

| C | **Obligor** (person who pays) is (Enter "Father" or "Mother") | Mother | |

| D | Work and education-related child care expenses | Father | Mother | Other Custodian |
|---|---|---|---|---|
| 8 | **Monthly child care expenses for children in this case** Include any co-payments being paid by a parent receiving OKDHS Child Care Subsidy. | $0.00 | $0.00 | $0.00 |
| 9 | **Child care expense percentage share of the total** Total child care expenses multiplied by percentage share of income for each parent. Multiply Line 8 by Line 4 | $0.00 | $0.00 | |
| 10 | **Total child care adjustment to base monthly obligation** Line 9 minus Line 8 (amount may be negative) | $0.00 | $0.00 | |
| E | Health insurance premium | Father | Mother | Other Custodian |
| 11 | **Monthly health insurance premium costs** This premium represents the actual premium cost for any child(ren) in this case only.  Insurance Premium Worksheet is available if needed. **Use Cash Medical Support if any child is not covered by insurance.** | $0.00 | $0.00 | $0.00 |
| 12 | **Monthly health insurance share for each parent** Percentage share of income in Line 4 multiplied by total current insurance cost for all persons in Line 11 | $0.00 | $0.00 | |
| 13 | **Total premium cost adjustment to base monthly obligation** Line 12 minus Line 11  (amount may be negative) | $0.00 | $0.00 | |
| F | Other contributions, if agreed or ordered | Father | Mother | Other Custodian |
| 14 | **Ongoing medical costs** Cash medical support for fixed periodic payments for ongoing medical costs | $0.00 | $0.00 | $0.00 |
| | a. Adjusted medical costs share Multiply total of Line 14 for all persons by Line 4 | $0.00 | $0.00 | |
| | b. Total ongoing medical costs adjustment to base monthly obligation Line 14a minus Line 14  (amount may be negative) | $0.00 | $0.00 | |
| 15 | **Visitation transportation costs** | $0.00 | $0.00 | $0.00 |
| | a. Adjusted visitation costs share Multiply total of Line 15 for all persons by Line 4 | $0.00 | $0.00 | |
| | b. Total ongoing visitation costs adjustment to base monthly obligation Line 15a minus Line 15  (amount may be negative) | $0.00 | $0.00 | |
| G | Child Support obligation subtotal | Father | Mother | |

| | | | Father | Mother | Combined |
|---|---|---|---|---|---|
| 16 | **Base monthly child support obligation less adjustments for child care and other contributions**<br>Add obligor Line 7 to Lines 10, 13 and 15b if positive amounts. Subtract Lines 10, 13 or 15b if negative amounts. | | $0.00 | $588.59 | |
| 17 | **SSA Title II benefits or veterans disability benefits paid for the benefit of the child**<br>Line 2a for obligor | | | $0.00 | |
| 18 | **Total monthly child support obligation less any SSA Title II benefits or veterans disability benefits paid for the benefit of the child**<br>Line 16 minus Line 17  (amount may be negative) | | $0.00 | $588.59 | |
| **H** | **Cash Medical Support** | | **Father** | **Mother** | **Combined** |
| 19 | Enter number of children in this case not covered by health insurance.  If none, skip to Line 24.  Note: This may be different from the number of children on SoonerCare. | 0 | | | |
| 20 | Enter the Soonercare or other health care government assistance **applicant** for the child(ren) in this case, if child(ren) are on SoonerCare.  Enter "Father", "Mother", "other" or leave blank. | | | | |

| | | | | |
|---|---|---|---|---|
| 21 | **Cash medical amount for obligor**<br>If Line 19 is zero or the obligor is the person on Line 20, enter $0 in Line 23.  If Line 19 is greater than zero and the obligor is not the person on Line 20, refer to the Cash Medical Income Guidelines Table.  If the Obligor's income is less than or equal to the amount on the table, enter $0.  If greater, multiply $115 by the number of children in Line 19.  Multiply the combined total by percentage shares from Line 4. | $0.00 | $0.00 | $0.00 |
| 22 | **5% of Gross Monthly Income**<br>Line 2 multiplied by 0.05<br>This represents the maximum amount of total medical allowed. | $225.26 | $878.80 | |
| 23 | **Cash medical support in lieu of insurance**<br>If Line 21 plus Line 13 is greater than Line 22, use Line 22 minus Line 13.  If Line 21 plus Line 13 is less than or equal to Line 22, enter $0.  Enter $0 if negative | $0.00 | $0.00 | |

| I | **Current Monthly Support Obligation** | **Father** | **Mother** |
|---|---|---|---|
| 24 | **a. Child support portion**<br>If Line 14b is positive, Line 18 for obligor<br>If Line 14b is negative, reduce Line 18 by Line 14b<br>Enter $0 if negative | | $588.59 |
| | **b. Cash medical portion**<br>If Line 18 minus 14b is positive, Line 23 for obligor<br>If Line 18 minus 14b is negative, reduce Line 23 by Line 18 minus 14b.  Enter $0 if negative | | $0.00 |
| | **c. Ongoing medical costs portion**<br>If Line 18 is positive, Line 14b for obligor<br>If Line 18 is negative, reduce 14b by Line 18<br>Enter $0 if negative | | $0.00 |
| 25 | **Total obligation to be paid by the obligor**<br>Line 24a plus 24b plus 24c | | $588.59 |

Mother _____ shall begin payments on  01/01/2021-12/31/2021  and continue on the same date of each month until further order of the court.

___X___ Guidelines were followed.

_____ Deviation from child support guidelines by Court-Specific findings of Court supporting each deviation:

_____

_____

_____

Dated: _____

_____
                                                                 **JUDGE**

**APPROVED AS TO FORM:**

| | |
|---|---|
| Father printed name | Father signature |
| Attorney for father printed name | Attorney for father signature and OBA Number |
| Mother printed name | Mother signature |
| Attorney for mother printed name | Attorney for mother signature & OBA Number |
| Other Custodian printed name | Other Custodian signature |
| Attorney for Other Custodian printed name | Attorney for Other Custodian signature and OBA Number |
| State's Attorney, CSS printed name | State's Attorney, CSS signature and OBA Number |

*Exhibit H*

**IN THE DISTRICT COURT OF TULSA COUNTY**
**STATE OF OKLAHOMA**

| | |
|---|---|
| Linh Stephens | ) Dist. Ct. Case No. ___FD-105-2228___ |
| | ) |
| Petitioner | ) OAH Case No. _____ |
| | ) |
| and | ) FGN: ___948641001___ |
| | ) |
| Adam Stephens | ) |
| | ) |
| Respondent | ) |

**CHILD SUPPORT COMPUTATION**

| | | | Father | Mother | Combined |
|---|---|---|---|---|---|
| | Calculation for number of children in this case | 1 | | | |
| | Obligor (person who pays) is (Enter "Father" or "Mother") | Mother | | | |
| **A** | **Base monthly obligation** | | **Father** | **Mother** | **Combined** |
| 1 | **Gross monthly income** All sources, except income specifically excluded by 43 O.S. Section 118B(B) | | $4,441.91 | $10,924.16 | $15,366.07 |
| | a. Amount of self-employment income included in Line 1 | | $0.00 | $0.00 | |
| | b. Deduction for self-employment tax Multiply Line 1a by 7.65% | | $0.00 | $0.00 | |
| 2 | **Total gross monthly income** Line 1 minus Line 1b | | $4,441.91 | $10,924.16 | |
| | a. Amount of SSA Title II benefits or veterans disability benefits paid for the benefit of the children. Do NOT include SSI benefits. (Enter in the column for the disabled or retired parent.) | | $0.00 | $0.00 | |
| | b. Court ordered support alimony actually paid in a prior case | | $0.00 | $0.00 | |
| | c. Court ordered monthly adjustment for marital debt | | $0.00 | $0.00 | |
| | d. Court ordered monthly child support actually paid for qualified out-of-home children | | $0.00 | $0.00 | |

|   | **In-home Children Deduction Worksheet** e. Number of qualified in-home children excluding children on this case | 0 | 1 |  |
|---|---|---|---|---|
|   | f. Amount for qualified in-home children. Apply Line 2 for each parent to Child Support Guideline Schedule amount using the number of children in Line 2e, and multiply guideline amount by 75% | $0.00 | $891.00 |  |
| 3 | **Adjusted gross monthly income (AGI)** Amount in Line 2 plus 2a, minus Lines 2b, 2c, 2d, and 2f | $4,441.91 | $10,033.16 | $14,475.07 |
| 4 | **Percentage share of income** AGI for each parent divided by the combined AGI | 30.7% | 69.3% | 100% |
| 5 | **Base monthly obligation** Apply combined AGI to Child Support Guideline Schedule and put total in combined base monthly obligation.  Multiply the combined total by the percentage share of income for each parent. | $414.27 | $935.73 | $1,350.00 |
| **B** | **Parenting time adjustment, if used** | **Father** | **Mother** | **Combined** |
| 6 | **Number of overnights with each parent** If less than 121 for either parent, skip to C. | 365 | 0 | 365 |
|   | a. Percentage of overnights with each parent Number of overnights for each parent divided by 365 | 100.0% | 0.0% | 100% |
|   | b. Adjusted combined child support obligation Adjustment factor is based on the parent with the fewest overnights.  The result in the combined column is the combined monthly obligation in Line 5 multiplied by the adjustment factor. | **<=== Adjustment Factor** less than 121 = no factor 121-131 = 2 132-143 = 1.75 144-183 = 1.5 | | |
|   | c. Share of adjusted combined child support obligation Combined Line 6b multiplied by the percentage share of income in Line 4 | | | |
|   | d. Respective adjusted base child support obligation Amount for each parent in Line 6c multiplied by the percentage of the other parent in Line 6a | | | |
| 7 | **Adjusted base monthly obligation** Line 6d larger amount minus Line 6d smaller amount and the result is for the parent with the positive amount. If the parent has more than 205 in Line 6, use $0 for that parent.  If either parent has less than 121 in Line 6, use the Line 5 amount for both parents. | $0.00 | $935.73 |  |
| **C** | **Obligor** (person who pays) is (Enter "Father" or "Mother") | Mother | | |

| D | Work and education-related child care expenses | Father | Mother | Other Custodian |
|---|---|---|---|---|
| 8 | **Monthly child care expenses for children in this case** Include any co-payments being paid by a parent receiving OKDHS Child Care Subsidy. | $0.00 | $0.00 | $0.00 |
| 9 | **Child care expense percentage share of the total** Total child care expenses multiplied by percentage share of income for each parent. Multiply Line 8 by Line 4 | $0.00 | $0.00 | |
| 10 | **Total child care adjustment to base monthly obligation** Line 9 minus Line 8 (amount may be negative) | $0.00 | $0.00 | |
| E | Health insurance premium | Father | Mother | Other Custodian |
| 11 | **Monthly health insurance premium costs** This premium represents the actual premium cost for any child(ren) in this case only.  Insurance Premium Worksheet is available if needed. **Use Cash Medical Support if any child is not covered by insurance.** | $362.35 | $0.00 | $0.00 |
| 12 | **Monthly health insurance share for each parent** Percentage share of income in Line 4 multiplied by total current insurance cost for all persons in Line 11 | $111.19 | $251.16 | |
| 13 | **Total premium cost adjustment to base monthly obligation** Line 12 minus Line 11  (amount may be negative) | -$251.16 | $251.16 | |
| F | Other contributions, if agreed or ordered | Father | Mother | Other Custodian |
| 14 | **Ongoing medical costs** Cash medical support for fixed periodic payments for ongoing medical costs | $0.00 | $0.00 | $0.00 |
| | a. Adjusted medical costs share Multiply total of Line 14 for all persons by Line 4 | $0.00 | $0.00 | |
| | b. Total ongoing medical costs adjustment to base monthly obligation Line 14a minus Line 14  (amount may be negative) | $0.00 | $0.00 | |
| 15 | **Visitation transportation costs** | $0.00 | $0.00 | $0.00 |
| | a. Adjusted visitation costs share Multiply total of Line 15 for all persons by Line 4 | $0.00 | $0.00 | |
| | b. Total ongoing visitation costs adjustment to base monthly obligation Line 15a minus Line 15  (amount may be negative) | $0.00 | $0.00 | |
| G | **Child Support obligation subtotal** | Father | Mother | |

| 16 | **Base monthly child support obligation less adjustments for child care and other contributions**<br>Add obligor Line 7 to Lines 10, 13 and 15b if positive amounts. Subtract Lines 10, 13 or 15b if negative amounts. | $0.00 | $1,186.89 | |
| 17 | **SSA Title II benefits or veterans disability benefits paid for the benefit of the child**<br>Line 2a for obligor | | $0.00 | |
| 18 | **Total monthly child support obligation less any SSA Title II benefits or veterans disability benefits paid for the benefit of the child**<br>Line 16 minus Line 17  (amount may be negative) | $0.00 | $1,186.89 | |
| **H** | **Cash Medical Support** | **Father** | **Mother** | **Combined** |
| 19 | Enter number of children in this case not covered by health insurance.  If none, skip to Line 24.  Note: This may be different from the number of children on SoonerCare. | | | |
| 20 | Enter the Soonercare or other health care government assistance **applicant** for the child(ren) in this case, if child(ren) are on SoonerCare.  Enter "Father", "Mother", "other" or leave blank. | | | |

| | | Father | Mother | |
|---|---|---|---|---|
| 21 | **Cash medical amount for obligor**<br>If Line 19 is zero or the obligor is the person on Line 20, enter $0 in Line 23.  If Line 19 is greater than zero and the obligor is not the person on Line 20, refer to the Cash Medical Income Guidelines Table.  If the Obligor's income is less than or equal to the amount on the table, enter $0.  If greater, multiply $115 by the number of children in Line 19.  Multiply the combined total by percentage shares from Line 4. | $0.00 | $0.00 | $0.00 |
| 22 | **5% of Gross Monthly Income**<br>Line 2 multiplied by 0.05<br>This represents the maximum amount of total medical allowed. | $222.10 | $546.21 | |
| 23 | **Cash medical support in lieu of insurance**<br>If Line 21 plus Line 13 is greater than Line 22, use Line 22 minus Line 13.  If Line 21 plus Line 13 is less than or equal to Line 22, enter Line 21.  Enter $0 if negative | $0.00 | $0.00 | |

| I | Current Monthly Support Obligation | Father | Mother | |
|---|---|---|---|---|
| 24 | **a. Child support portion**<br>If Line 14b is positive, Line 18 for obligor<br>If Line 14b is negative, reduce Line 18 by Line 14b<br>Enter $0 if negative | | $1,186.89 | |
| | **b. Cash medical portion**<br>If Line 18 minus 14b is positive, Line 23 for obligor<br>If Line 18 minus 14b is negative, reduce Line 23 by Line 18 minus 14b.  Enter $0 if negative | | $0.00 | |
| | **c. Ongoing medical costs portion**<br>If Line 18 is positive, Line 14b for obligor<br>If Line 18 is negative, reduce 14b by Line 18<br>Enter $0 if negative | | $0.00 | |
| 25 | **Total obligation to be paid by the obligor**<br>Line 24a plus 24b plus 24c | | $1,186.89 | |

_____shall begin payments on _____ and continue on the same date of each month until further order of the court.

_____   Guidelines were followed.

_____   Deviation from child support guidelines by Court-Specific findings of Court supporting each deviation:

_____

_____

_____

Dated: _____

_____
**JUDGE**

**APPROVED AS TO FORM:**

_____

Father printed name

_____

Attorney for father printed name

_____

Mother printed name

_____

Attorney for mother printed name

_____

Other Custodian printed name

_____

Attorney for Other Custodian printed name

_____

State's Attorney, CSS printed name

_____

Father signature

_____

Attorney for father signature and OBA Number

_____

Mother signature

_____

Attorney for mother signature & OBA Number

_____

Other Custodian signature

_____

Attorney for Other Custodian signature and OBA Number

_____

State's Attorney, CSS signature and OBA Number

Exhibit I

## IN THE DISTRICT COURT OF TULSA COUNTY
### STATE OF OKLAHOMA

| | |
|---|---|
| Linh Stephens | )   Dist. Ct. Case No.    FD-105-2228 |
| | ) |
| Petitioner | )   OAH Case No. |
| | ) |
| and | )        FGN:    948641001 |
| | ) |
| Adam Stephens | ) |
| | ) |
| Respondent | ) |

### CHILD SUPPORT COMPUTATION

| | | | | | |
|---|---|---|---|---|---|
| | Calculation for number of children in this case | 1 | | | |
| | Obligor (person who pays) is (Enter "Father" or "Mother") | Mother | | | |
| **A** | **Base monthly obligation** | | **Father** | **Mother** | **Combined** |
| 1 | **Gross monthly income** All sources, except income specifically excluded by 43 O.S. Section 118B(B) | | $4,558.85 | $10,924.16 | $15,483.01 |
| | a. Amount of self-employment income included in Line 1 | | $0.00 | $0.00 | |
| | b. Deduction for self-employment tax Multiply Line 1a by 7.65% | | $0.00 | $0.00 | |
| 2 | **Total gross monthly income** Line 1 minus Line 1b | | $4,558.85 | $10,924.16 | |
| | a. Amount of SSA Title II benefits or veterans disability benefits paid for the benefit of the children. Do NOT include SSI benefits. (Enter in the column for the disabled or retired parent.) | | $0.00 | $0.00 | |
| | b. Court ordered support alimony actually paid in a prior case | | $0.00 | $0.00 | |
| | c. Court ordered monthly adjustment for marital debt | | $0.00 | $0.00 | |
| | d. Court ordered monthly child support actually paid for qualified out-of-home children | | $0.00 | $0.00 | |

OKDHS 03/01/23        **03EN025E**        1 of 6

| | **In-home Children Deduction Worksheet** | | | | |
|---|---|---|---|---|---|
| | e. Number of qualified in-home children excluding children on this case | | 0 | 1 | |
| | f. Amount for qualified in-home children. Apply Line 2 for each parent to Child Support Guideline Schedule amount using the number of children in Line 2e, and multiply guideline amount by 75% | | $0.00 | $891.00 | |
| 3 | **Adjusted gross monthly income (AGI)** Amount in Line 2 plus 2a, minus Lines 2b, 2c, 2d, and 2f | | $4,558.85 | $10,033.16 | $14,592.01 |
| 4 | **Percentage share of income** AGI for each parent divided by the combined AGI | | 31.2% | 68.8% | 100% |
| 5 | **Base monthly obligation** Apply combined AGI to Child Support Guideline Schedule and put total in combined base monthly obligation. Multiply the combined total by the percentage share of income for each parent. | | $423.02 | $930.98 | $1,354.00 |
| **B** | **Parenting time adjustment, if used** | | **Father** | **Mother** | **Combined** |
| 6 | **Number of overnights with each parent** If less than 121 for either parent, skip to C. | | 365 | 0 | 365 |
| | a. Percentage of overnights with each parent Number of overnights for each parent divided by 365 | | 100.0% | 0.0% | 100% |
| | b. Adjusted combined child support obligation Adjustment factor is based on the parent with the fewest overnights. The result in the combined column is the combined monthly obligation in Line 5 multiplied by the adjustment factor. | | **<=== Adjustment Factor** less than 121 = no factor 121-131 = 2 132-143 = 1.75 144-183 = 1.5 | | |
| | c. Share of adjusted combined child support obligation Combined Line 6b multiplied by the percentage share of income in Line 4 | | | | |
| | d. Respective adjusted base child support obligation Amount for each parent in Line 6c multiplied by the percentage of the other parent in Line 6a | | | | |
| 7 | **Adjusted base monthly obligation** Line 6d larger amount minus Line 6d smaller amount and the result is for the parent with the positive amount. If the parent has more than 205 in Line 6, use $0 for that parent. If either parent has less than 121 in Line 6, use the Line 5 amount for both parents. | | $0.00 | $930.98 | |
| **C** | **Obligor** (person who pays) is (Enter "Father" or "Mother") | Mother | | | |

| D | Work and education-related child care expenses | Father | Mother | Other Custodian |
|---|---|---|---|---|
| 8 | **Monthly child care expenses for children in this case** Include any co-payments being paid by a parent receiving OKDHS Child Care Subsidy. | $0.00 | $0.00 | $0.00 |
| 9 | **Child care expense percentage share of the total** Total child care expenses multiplied by percentage share of income for each parent. Multiply Line 8 by Line 4 | $0.00 | $0.00 | |
| 10 | **Total child care adjustment to base monthly obligation** Line 9 minus Line 8 (amount may be negative) | $0.00 | $0.00 | |

| E | Health insurance premium | Father | Mother | Other Custodian |
|---|---|---|---|---|
| 11 | **Monthly health insurance premium costs** This premium represents the actual premium cost for any child(ren) in this case only.  Insurance Premium Worksheet is available if needed. **Use Cash Medical Support if any child is not covered by insurance.** | $362.35 | $0.00 | $0.00 |
| 12 | **Monthly health insurance share for each parent** Percentage share of income in Line 4 multiplied by total current insurance cost for all persons in Line 11 | $113.21 | $249.14 | |
| 13 | **Total premium cost adjustment to base monthly obligation** Line 12 minus Line 11  (amount may be negative) | -$249.14 | $249.14 | |

| F | Other contributions, if agreed or ordered | Father | Mother | Other Custodian |
|---|---|---|---|---|
| 14 | **Ongoing medical costs** Cash medical support for fixed periodic payments for ongoing medical costs | $0.00 | $0.00 | $0.00 |
| | a. Adjusted medical costs share Multiply total of Line 14 for all persons by Line 4 | $0.00 | $0.00 | |
| | b. Total ongoing medical costs adjustment to base monthly obligation Line 14a minus Line 14  (amount may be negative) | $0.00 | $0.00 | |
| 15 | **Visitation transportation costs** | $0.00 | $0.00 | $0.00 |
| | a. Adjusted visitation costs share Multiply total of Line 15 for all persons by Line 4 | $0.00 | $0.00 | |
| | b. Total ongoing visitation costs adjustment to base monthly obligation Line 15a minus Line 15  (amount may be negative) | $0.00 | $0.00 | |
| G | **Child Support obligation subtotal** | Father | Mother | |

| 16 | **Base monthly child support obligation less adjustments for child care and other contributions** Add obligor Line 7 to Lines 10, 13 and 15b if positive amounts. Subtract Lines 10, 13 or 15b if negative amounts. | $0.00 | $1,180.12 | |
|----|----|----|----|----|
| 17 | **SSA Title II benefits or veterans disability benefits paid for the benefit of the child** Line 2a for obligor | | $0.00 | |
| 18 | **Total monthly child support obligation less any SSA Title II benefits or veterans disability benefits paid for the benefit of the child** Line 16 minus Line 17  (amount may be negative) | $0.00 | $1,180.12 | |
| **H** | **Cash Medical Support** | **Father** | **Mother** | **Combined** |
| 19 | Enter number of children in this case not covered by health insurance.  If none, skip to Line 24.  Note: This may be different from the number of children on SoonerCare. | | | |
| 20 | Enter the Soonercare or other health care government assistance **applicant** for the child(ren) in this case, if child(ren) are on SoonerCare.  Enter "Father", "Mother", "other" or leave blank. | | | |

| | | | | |
|---|---|---|---|---|
| 21 | **Cash medical amount for obligor**<br>If Line 19 is zero or the obligor is the person on Line 20, enter $0 in Line 23.  If Line 19 is greater than zero and the obligor is not the person on Line 20, refer to the Cash Medical Income Guidelines Table.  If the Obligor's income is less than or equal to the amount on the table, enter $0.  If greater, multiply $115 by the number of children in Line 19.  Multiply the combined total by percentage shares from Line 4. | $0.00 | $0.00 | $0.00 |
| 22 | **5% of Gross Monthly Income**<br>Line 2 multiplied by 0.05<br>This represents the maximum amount of total medical allowed. | $227.94 | $546.21 | |
| 23 | **Cash medical support in lieu of insurance**<br>If Line 21 plus Line 13 is greater than Line 22, use Line 22 minus Line 13.  If Line 21 plus Line 13 is less than or equal to Line 22, enter Line 21.  Enter $0 if negative | $0.00 | $0.00 | |

| I | Current Monthly Support Obligation | Father | Mother |
|---|---|---|---|
| 24 | **a. Child support portion**<br>If Line 14b is positive, Line 18 for obligor<br>If Line 14b is negative, reduce Line 18 by Line 14b<br>Enter $0 if negative | | $1,180.12 |
| | **b. Cash medical portion**<br>If Line 18 minus 14b is positive, Line 23 for obligor<br>If Line 18 minus 14b is negative, reduce Line 23 by Line 18 minus 14b.  Enter $0 if negative | | $0.00 |
| | **c. Ongoing medical costs portion**<br>If Line 18 is positive, Line 14b for obligor<br>If Line 18 is negative, reduce 14b by Line 18<br>Enter $0 if negative | | $0.00 |
| 25 | **Total obligation to be paid by the obligor**<br>Line 24a plus 24b plus 24c | | $1,180.12 |

_____shall begin payments on _____ and continue on the same date of each month until further order of the court.

_____   Guidelines were followed.

_____   Deviation from child support guidelines by Court-Specific findings of Court supporting each deviation:

_____

_____

_____

Dated: _____

_____
**JUDGE**

**APPROVED AS TO FORM:**

| | |
|---|---|
| _____ | _____ |
| Father printed name | Father signature |
| _____ | _____ |
| Attorney for father printed name | Attorney for father signature and OBA Number |
| _____ | _____ |
| Mother printed name | Mother signature |
| _____ | _____ |
| Attorney for mother printed name | Attorney for mother signature & OBA Number |
| _____ | _____ |
| Other Custodian printed name | Other Custodian signature |
| _____ | _____ |
| Attorney for Other Custodian printed name | Attorney for Other Custodian signature and OBA Number |
| _____ | _____ |
| State's Attorney, CSS printed name | State's Attorney, CSS signature and OBA Number |

# EXHIBIT 3



*Prepared via www.oklaw.org*     IN THE DISTRICT COURT OF TULSA COUNTY
STATE OF OKLAHOMA

OKLAHOMA CENTRALIZED SUPPORT REGISTRY,)
PO BOX 268849, OKLAHOMA CITY, OK 73126,    )
*plaintiff,*                               )   FD 2015-2228
                        vs.                )   ~~Small Claim Case:~~ _____
Linh Tran Stephens,                        )
*defendant,*                               )   DISTRICT COURT
                                           )   **F I L E D**
Charles Schwab & Co., Inc.,                )
*garnishee* **(non-continuing garnishment)** )   APR 2 2 2024
Peace Joy Clinic PLLC,                     )
*garnishee* **(continuing garnishment)**     )   DON NEWBERRY, Court Clerk
                                               STATE OF OKLA. TULSA COUNTY

## REQUEST TO STOP GARNISHMENT AND UNDUE HARDSHIP EXEMPTION CLAIM

        ***Important!*** You do not have to pay to file this form if you file it within **5 days**
**Of the date you were notified about the garnishment** (notified Friday 04/19/24)

1.  Any money I get from any of the sources listed below is protected and cannot be garnished:
    A.  Social Security benefits
    *42 U.S.C. § 407.*
    B.  Supplemental security income
    *42 U.S.C. § 1383(d)i*
    C.  Unemployment benefits
    *40 O.S. § 2-303.*
    D.  Workmen's Compensation benefits
    *85A O.S. § 10.*
    E.  Welfare benefits
    *56 O.S. § 173.*
    F.  Veteran's benefits
    38 U.S.C. § 3101, 31 O.S. § 7.
    G.  Police Pension Funds
    *11 O.S. § 50-124.*
    H.  Firemen's Relief & Pension Fund
    *11 O.S. § 49-26.*
    I.   County Employee's Retirement
    System Funds – *19 O.S. § 959.*
    J.   Public Employee's Retirement
    Funds – *74 O.S. § 923.*
    K.  Teacher's Annuities or Retirement
    Allowance – *70 O.S. § 17-109.*
    L.   Railroad Retirement Act Annuities and pension payments
    *45 U.S.C. § 231(m).*
    M.  U.S. Civil Service Retirement and Disability Pension Fund Payments
    *5 U.S.C. § 8346.*
    N. U.S. Civil service Survivor Annuities

233

*5 U.S.C § 8346.*

O. Interest in Retirement, Pension and Profit Sharing Plans
   *60 O.S. § 327, 60 O.S. § 328.*

P. The Wages of Seamen
   *46 U.S.C. § 601.*

Q. Funds vested in the Alien Property Custodian – *50 U.S.C. Appx. § 9(f).*

R.     Prepaid Burial Benefits
   *36 O.S. § 6125.*

S. Proceeds of Group-Life Insurance Policy – *36 O.S. § 3632, 4026.*

T. Alimony, support, separate maintenance, or child support necessary for support of judgment
   debtor or dependent – *31 O.S. § 1.1.*

U. Personal wage exemption because of undue hardship – *31 O.S. § 1.1.*


2.  Funds that are exempt (check one):

    All funds listed above if ever applied or applicable.

    The amount of money that is exempt is: $ all of whatever is locked up in my bank accounts

3.  Check if applicable:

    X   Check here if you are attaching proof of your funds being exempt and undue hardship:

    **(1) Letter of Being laid off from Cherokee Nation, its retirement as IRAs and Roth IRA**

    **in bank; (2) Unemployment benefits 2020-2021; (3) tax returns and schedule C of 2022**

    **and 2023 showing financial hardship,**

4.  If garnishment is for money you earn, what pay period do you say is exempt?

    Starting: October 2020, and ending ONGOING including today April 21, 2024.

5.  I request a hearing in front of a nonspecial judge so he/she can decide per *20 O.S. 123-124.*

*Linh Stephens*

Linh Tran Stephens, or Stephens:Linh-Tran
Reserving all my rights without prejudice/recourse **UCC 1-308**,
In propria persona, sui juris, a natural living woman,
Attorney-in-fact, Agent, Acting as Fiduciary of LINH TRAN STEPHENS;
8214 E 111th PL S Unit 100, Bixby, OK 74008-2452
Cell # (817) 631-3223; LinhStephens7@gmail.com
Address for mailing a copy of Claim to Alleged Judgment
Creditor's Attorney: PO BOX 27068 Tulsa, OK 74149;

<u>**CLAIM FOR UNDUE HARDSHIP EXEMPTION**</u>

**INCOME AND EXPENSE WORKSHEET**

Date: <u>April 21, 2024</u>

Case Number: _____

Creditor: <u>Oklahoma Centralized Support Registry, PO BOX 268849, OKLAHOMA CITY, OK 73126</u>

Garnished Debtor: <u>Linh Stephens</u>

**UNDUE HARDSHIP**

Amount of Garnishment: <u>$ unknown</u>

Total Family Members: **3**

# of Children and ages: <u>2. age(s): 10 y/o for this case</u>; another child not a party to this case whose privacy privilege does not want to disclose age;

Bank account balances:            <u>$ unknown</u>

_____Monthly wages net:        negative <u>$ (see 1040 tax income schedule C)</u>

Additional Sources of Income:    <u>$0.00</u>    Source:

Alimony/Child Support Income:    <u>$0.00</u>

**Total Monthly Income:**    <u>$negative and fluctuates, see small business Schedule C</u>

Housing Expenses:

Rent:            <u>$1030.00</u>    Electricity:        <u>$200.00</u>

Natural Gas:        <u>$90.00</u>    Water & Trash        <u>$70.00</u>

Telephone:        <u>$350.00</u>    Med. Ins.:        <u>$0.00</u>

Medication:            <u>$don't keep track of over the counter meds</u>

Food:

Food:                        $500.00

School lunches:              $0.00        Baby formula:     $0.00


Clothing:

Clothing:                    $0.00        Laundry:          $0.00


Transportation:

Car Payment:                 $unable to afford car    Gas:   $100.00

Car Insurance:               $60.00       Bus:              $0.00


Other expenses:              $600 visitations related to child $150/hour    Source of
Other expense:

**Total Monthly Expenses:**    **$3,000.00 or more**, not including small business
debts/expenses

### CERTIFICATE OF SERVICE

The undersigned hereby certifies on the 21st day of April, 2024, that a true, correct, and exact copy
of the above and foregoing instrument will be mailed to
(1) Emmalene Stringer, OKDHS CSS, PO Box 27068, Tulsa, OK 74149,
(2) OKLAHOMA CENTRALIZED SUPPORT REGISTRY, PO BOX 268849, OKLAHOMA CITY, OK
73126,

*Linh Stephens*

Linh Tran Stephens, or Stephens:Linh-Tran

DocuSign Envelope ID: 5444D78C-558F-48D1-8677-F5AFF454656F



**GWY DꞋP**
# CHEROKEE NATION®

P.O. Box 948 • Tahlequah, OK 74465-0948
918-453-5000 • www.cherokee.org

Office of the Chief

**Chuck Hoskin Jr.**
*Principal Chief*

**Bryan Warner**
*Deputy Principal Chief*

August 12, 2020

Linh Stephens
██████████
Tulsa, OK ████

Dr. Stephens,

This letter is to provide notice that Cherokee Nation will not renew your agreement at the end of the term. Article VII, Section A. and Article VIII, Section B. allows for non-renewal at the end of the term of the agreement by 30 days notice. The end of the term of your agreement is September 30, 2020. Effective August 13, 2020 you will be placed on administrative leave through September 30, 2020. You will continue to receive any compensation due to you according to your agreement through the end of the term. Your remaining annual leave balance on September 30, 2020 will be paid to you after the term of your agreement. We appreciate your time and contribution to Cherokee Nation Health Services.

Sincerely,

*R. Stephen Jones DDS*

R. Stephen Jones
Executive Director
Cherokee Nation Health Services

cc:    file

EXHIBIT #18
Page 1 of 1

237



## Oklahoma Employment Security Commission



Payment Information

ClaimID:595792791          Page:P5.7

| Date | Amount | | | | |
|------|--------|--|--|--|--|
| 8/26/2021 | 274.00 | + | 380.00 | = | 654.00 |
| 8/19/2021 | 730.00 | + | 109.00 | = | 839.00 |
| 8/12/2021 | 291.00 | + | 548.00 | = | 839.00 |
| 8/5/2021 | 561.00 | + | 278.00 | = | 839.00 |
| 5/29/2021 | 0 | + | 0 | = | 0 |
| 5/22/2021 | 421.00 | + | 418.00 | = | 839.00 |
| 5/15/2021 | 0 | + | 0 | = | 0 |
| 5/8/2021 | 730.00 | + | 109.00 | = | 839.00 |
| 5/1/2021 | 448.00 | + | 391.00 | = | 839.00 |
| 4/24/2021 | 556.00 | + | 283.00 | = | 839.00 |
| 4/17/2021 | 387.00 | + | 452.00 | = | 839.00 |
| 4/10/2021 | 558.00 | + | 281.00 | = | 839.00 |
| 4/3/2021 | 338.00 | + | 501.00 | = | 839.00 |
| 3/27/2021 | 730.00 | + | 109.00 | = | 839.00 |
| 3/20/2021 | 0 | + | 0 | = | 0 |
| 3/13/2021 | 462.00 | + | 377.00 | = | 839.00 |
| 3/6/2021 | 394.00 | + | 445.00 | = | 839.00 |
| 2/27/2021 | 730.00 | + | 109.00 | = | 839.00 |
| 2/20/2021 | 730.00 | + | 109.00 | = | 839.00 |
| 2/13/2021 | 730.00 | + | 109.00 | = | 839.00 |
| 2/6/2021 | 326.00 | + | 513.00 | = | 839.00 |
| 1/30/2021 | 0 | + | 0 | = | 0 |
| 1/23/2021 | 300.00 | + | 539.00 | = | 839.00 |
| 1/16/2021 | 431.00 | + | 408.00 | = | 839.00 |
| 1/9/2021 | 730.00 | + | 109.00 | = | 839.00 |
| 1/2/2021 | 543.00 | + | 296.00 | = | 839.00 |
| 12/26/2020 | 469.00 | + | 70.00 | = | 539.00 |
| 12/19/2020 | 469.00 | + | 70.00 | = | 539.00 |
| 12/12/2020 | 469.00 | + | 70.00 | = | 539.00 |
| 12/5/2020 | 282.00 | + | 257.00 | = | 539.00 |
| 11/28/2020 | 469.00 | + | 70.00 | = | 539.00 |
| 11/21/2020 | 164.00 | + | 375.00 | = | 539.00 |
| 11/14/2020 | 469.00 | + | 70.00 | = | 539.00 |
| 11/7/2020 | 469.00 | + | 70.00 | = | 539.00 |
| 10/31/2020 | 184.00 | + | 355.00 | = | 539.00 |
| 10/24/2020 | 144.00 | + | 395.00 | = | 539.00 |
| 10/17/2020 | 469.00 | + | 70.00 | = | 539.00 |
| 10/10/2020 | 469.00 | + | 70.00 | = | 539.00 |
| 10/3/2020 | 0 | + | 0 | = | 0 |

[ Return to Menu ]    [ Return to Previous Page ]



# Form 1040

Department of the Treasury-Internal Revenue Service

## U.S. Individual Income Tax Return 2022

OMB No. 1545-0074    IRS Use Only-Do not write or staple in this space.

**Filing Status**
Check only one box.

☐ Single ☐ Married filing jointly ☒ Married filing separately (MFS) ☐ Head of household (HOH) ☐ Qualifying surviving spouse (QSS)

If you checked the MFS box, enter the name of your spouse. If you checked the HOH or QSS box, enter the child's name if the qualifying person is a child but not your dependent: X██████ █

Your first name and middle initial: **Linh T**    Last name: **Stephens**

If joint return, spouse's first name and middle initial / Last name

Your social security number: **XXX-XX-5094**
Spouse's social security number: **XXX-XX-█████**

Home address (number and street). If you have a P.O. box, see instructions.
**8214 E 111th PL S Unit 100**    Apt. no.

**Presidential Election Campaign**
Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund.

City, town, or post office. If you have a foreign address, also complete spaces below. **Bixby**    State **OK**    ZIP code **74008-2452**

Foreign country name / Foreign province/state/county / Foreign postal code

**Digital Assets**
At any time during 2022, did you: (a) receive (as a reward, award, or payment for property or services); or (b) sell, exchange, gift, or otherwise dispose of a digital asset (or a financial interest in a digital asset)? (See instructions.)

☐ You ☐ Spouse ☐ Yes ☒ No

**Standard Deduction**
Someone can claim: ☐ You as a dependent ☐ Your spouse as a dependent
☐ Spouse itemizes on a separate return or you were a dual-status alien

**Age/Blindness** You: ☐ Were born before January 2, 1958 ☐ Are blind  Spouse: ☐ Was born before January 2, 1958 ☐ Is blind

**Dependents** (see instructions):

| (1) First name   Last name | (2) Social security number | (3) Relationship to you | (4) Check if qualifies for (see instructions): Child tax credit / Credit for other dependents |
|---|---|---|---|
| | | | ☐ ☐ |
| | | | ☐ ☐ |

If more than four dependents, see instructions and check here ☐

## Income

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a Form W-2, see instructions.

| | | | |
|---|---|---|---|
| 1a | Total amount from Form(s) W-2, box 1 (see instructions) | **1a** | |
| b | Household employee wages not reported on Form(s) W-2 | **1b** | |
| c | Tip income not reported on line 1a (see instructions) | **1c** | |
| d | Medicaid waiver payments not reported on Form(s) W-2 (see instructions) | **1d** | |
| e | Taxable dependent care benefits from Form 2441, line 26 | **1e** | |
| f | Employer-provided adoption benefits from Form 8839, line 29 | **1f** | |
| g | Wages from Form 8919, line 6 | **1g** | |
| h | Other earned income (see instructions) | **1h** | |
| i | Nontaxable combat pay election (see instructions) | **1i** | |
| z | Add lines 1a through 1h | **1z** | |

| | | | |
|---|---|---|---|
| 2a | Tax-exempt interest | 2a | b Taxable interest **2b** | 1 |
| 3a | Qualified dividends | 3a | 13 | b Ordinary dividends **3b** | 13 |
| 4a | IRA distributions | 4a | b Taxable amount **4b** | |
| 5a | Pensions and annuities | 5a | b Taxable amount **5b** | |
| 6a | Social security benefits | 6a | b Taxable amount **6b** | |
| c | If you elect to use the lump-sum election method, check here (see instructions) ☐ | | |

Attach Sch. B if required.

**Standard Deduction for–**
- Single or Married filing separately, $12,950
- Married filing jointly or Qualifying surviving spouse, $25,900
- Head of household, $19,400
- If you checked any box under Standard Deduction, see instructions.

| | | | |
|---|---|---|---|
| 7 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ☐ | **7** | 3,496 |
| 8 | Other income from Schedule 1, line 10 | **8** | (15,673) |
| 9 | Add lines 1z, 2b, 3b, 4b, 5b, 6b, 7, and 8. This is your **total income** | **9** | (12,163) |
| 10 | Adjustments to income from Schedule 1, line 26 | **10** | |
| 11 | Subtract line 10 from line 9. This is your **adjusted gross income** | **11** | (12,163) |
| 12 | **Standard deduction or itemized deductions** (from Schedule A) | **12** | 12,950 |
| 13 | Qualified business income deduction from Form 8995 or Form 8995-A | **13** | |
| 14 | Add lines 12 and 13 | **14** | 12,950 |
| 15 | Subtract line 14 from line 11. If zero or less, enter -0-. This is your **taxable income** | **15** | 0 |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.

EEA

Form **1040** (2022)

Client Copy

**SCHEDULE C**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service

## Profit or Loss From Business
(Sole Proprietorship)

Go to *www.irs.gov/ScheduleC* for instructions and the latest information.

Attach to Form 1040, 1040-SR, 1040-NR, or 1041; partnerships must generally file Form 1065.

OMB No. 1545-0074

**2022**

Attachment
Sequence No. **09**

Name of proprietor
Linh T Stephens

Social security number (SSN)
XXX-XX-5094

**A**  Principal business or profession, including product or service (see instructions)
Medical Office

**B**  Enter code from instructions
621111

**C**  Business name. If no separate business name, leave blank.
Peace Joy Clinic PLLC

**D**  Employer ID number (EIN) (see instr.)
85-3690068

**E**  Business address (including suite or room no.) ▶ 8214 E 111th PL S Untie 100
City, town or post office, state, and ZIP code   Bixby, OK 74008-2452

**F**  Accounting method:   (1) [X] Cash   (2) ☐ Accrual   (3) ☐ Other (specify)

**G**  Did you "materially participate" in the operation of this business during 2022? If "No," see instructions for limit on losses. . . . . [X] Yes ☐ No

**H**  If you started or acquired this business during 2022, check here . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**I**  Did you make any payments in 2022 that would require you to file Form(s) 1099? See instructions . . . . . . . . . . ☐ Yes [X] No

**J**  If "Yes," did you or will you file required Form(s) 1099? . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

### Part I   Income

| | | |
|---|---|---:|
| 1 | Gross receipts or sales. See instructions for line 1 and check the box if this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked . . . . . . . . . . . ▶ ☐   **1** | 8,485 |
| 2 | Returns and allowances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **2** | 0 |
| 3 | Subtract line 2 from line 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **3** | 8,485 |
| 4 | Cost of goods sold (from line 42) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **4** | |
| 5 | **Gross profit.** Subtract line 4 from line 3 . . . . . . . . . . . . . . . . . . . . . . . . .   **5** | 8,485 |
| 6 | Other income, including federal and state gasoline or fuel tax credit or refund (see instructions) .   **6** | |
| 7 | **Gross income.** Add lines 5 and 6 . . . . . . . . . . . . . . . . . . . . . . . . . . ▶   **7** | 8,485 |

### Part II   Expenses. Enter expenses for business use of your home only on line 30.

| | | | | | |
|---|---|---:|---|---|---:|
| 8 | Advertising . . . . . . . . **8** | 5,0 | 18 | Office expense (see instructions) . . **18** | |
| 9 | Car and truck expenses | | 19 | Pension and profit-sharing plans . . **19** | |
| | (see instructions) . . . . **9** | | 20 | Rent or lease (see instructions): | |
| 10 | Commissions and fees . . . **10** | | a | Vehicles, machinery, and equipment . **20a** | |
| 11 | Contract labor (see instructions) **11** | | b | Other business property . . . . . **20b** | 6,000 |
| 12 | Depletion . . . . . **12** | | 21 | Repairs and maintenance . . . . . **21** | |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see instructions) . . . . . . **13** | | 22 | Supplies (not included in Part III) . . **22** | 8,521 |
| | | | 23 | Taxes and licenses . . . . . . . **23** | 465 |
| | | | 24 | Travel and meals: | |
| 14 | Employee benefit programs (other than on line 19) . . **14** | | a | Travel . . . . . . . . . . . . **24a** | |
| 15 | Insurance (other than health) **15** | 2,827 | b | Deductible meals (see instructions) . **24b** | |
| 16 | Interest (see instructions): | | 25 | Utilities . . . . . . . . . . . **25** | |
| a | Mortgage (paid to banks, etc.) **16a** | | 26 | Wages (less employment credits) . . **26** | |
| b | Other . . . . . **16b** | | 27a | Other expenses (from line 48) . . . **27a** | 2,363 |
| 17 | Legal and professional services **17** | 380 | b | Reserved for future use . . . . . **27b** | |

| | | | |
|---|---|---|---:|
| 28 | **Total expenses** before expenses for business use of home. Add lines 8 through 27a . . . . . . . . . . ▶ | **28** | 25,589 |
| 29 | Tentative profit or (loss). Subtract line 28 from line 7 . . . . . . . . . . . . . . . . . . . . . . . | **29** | (17,104) |
| 30 | Expenses for business use of your home. Do not report these expenses elsewhere. Attach Form 8829 unless using the simplified method. See instructions. | | |
| | **Simplified method filers only:** Enter the total square footage of (a) your home: _____ and (b) the part of your home used for business: _____. Use the Simplified Method Worksheet in the instructions to figure the amount to enter on line 30 . . . . . . . . . . . . . . . . | **30** | |
| 31 | **Net profit or (loss).** Subtract line 30 from line 29. | | |
| | • If a profit, enter on both **Schedule 1 (Form 1040), line 3,** and on **Schedule SE, line 2.** (If you checked the box on line 1, see instructions.) Estates and trusts, enter on **Form 1041, line 3.** ▶ | **31** | (17,104) |
| | • If a loss, you **must** go to line 32. | | |

| | |
|---|---|
| 32 | If you have a loss, check the box that describes your investment in this activity. See instructions. |
| | • If you checked 32a, enter the loss on both **Schedule 1 (Form 1040), line 3,** and on **Schedule SE, line 2.** (If you checked the box on line 1, see the line 31 instructions.) Estates and trusts, enter on **Form 1041, line 3.**   **32a** [X] All investment is at risk. |
| | • If you checked 32b, you **must** attach **Form 6198.** Your loss may be limited.   **32b** ☐ Some investment is not at risk. |

**For Paperwork Reduction Act Notice, see the separate instructions.**

EEA

Schedule C (Form 1040) 2022

Client Copy

Schedule C (Form 1040) 2022                **Medical Office 621111**                                          Page **2**

| Name(s) | SSN |
|---|---|
| Linh T Stephens | XXX-XX-5094 |

### Part III   Cost of Goods Sold (see instructions)

**33**  Method(s) used to
value closing inventory:      **a** ☐ Cost      **b** ☐ Lower of cost or market      **c** ☐ Other (attach explanation)

**34**  Was there any change in determining quantities, costs, or valuations between opening and closing inventory?
If "Yes," attach explanation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes    ☐ No

| | | | |
|---|---|---|---|
| **35** | Inventory at beginning of year.  If different from last year's closing inventory, attach explanation. . . . . . | **35** | |
| **36** | Purchases less cost of items withdrawn for personal use  . . . . . . . . . . . . . . . | **36** | |
| **37** | Cost of labor.  Do not include any amounts paid to yourself  . . . . . . . . . . . . . . | **37** | |
| **38** | Materials and supplies  . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **38** | |
| **39** | Other costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **39** | |
| **40** | Add lines 35 through 39 . . . . . . . . . . . . . . . . . . . . . . . . . . | **40** | |
| **41** | Inventory at end of year . . . . . . . . . . . . . . . . . . . . . . . . . . | **41** | |
| **42** | **Cost of goods sold.**  Subtract line 41 from line 40. Enter the result here and on line . . . | **42** | |

### Part IV   Information on Your Vehicle. Complete this part **only** if you are claiming car or truck expenses on line 9 and are not required to file Form 4562 for this business.  See the instructions for line 13 to find out if you must file Form 4562.

**43**  When did you place your vehicle in service for business purposes?  (month/day/year)

**44**  Of the total number of miles you drove your vehicle during 2022, enter the number of miles you used your vehicle for:

**a**  Business _____     **b**  Commuting (see instructions) _____     **c**  Other _____

**45**  Was your vehicle available for personal use during off-duty hours?  . . . . . . . . . . . . . . . ☐ Yes    ☐ No

**46**  Do you (or your spouse) have another vehicle available for personal use?  . . . . . . . . . . . ☐ Yes    ☐ No

**47a**  Do you have evidence to support your deduction?  . . . . . . . . . . . . . . . . . . . . ☐ Yes    ☐ No

**b**  If "Yes," is the evidence written?  . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes    ☐ No

### Part V   Other Expenses. List below business expenses not included on lines 8-26 or line 30.

| | |
|---|---|
| Software | 230 |
| Credit Card Fees | 717 |
| Small Tool | 669 |
| Postage | 60 |
| Labs | 501 |
| Credit Card Fees to gross up | 186 |
| | |
| | |
| | |
| **48**  Total other expenses. Enter here and on line 27a . . . . . . . . . . . . . . . . . . . . . **48** | **2,363** |

EEA

Schedule C (Form 1040) 2022

241

Form **1040**
Department of the Treasury-Internal Revenue Service
**U.S. Individual Income Tax Return** **2023**    OMB No. 1545-0074    IRS Use Only-Do not write or staple in this space.

For the year Jan. 1–Dec. 31, 2023, or other tax year beginning _____ , 2023, ending _____    **See separate instructions.**

| Your first name and middle initial | Last name | **Your social security number** |
|---|---|---|
| Linh T | Stephens | XXX-XX-XXXX |
| If joint return, spouse's first name and middle initial | Last name | **Spouse's social security number** |
| | | XXX-XX-XXXX |

Home address (number and street). If you have a P.O. box, see instructions.    Apt. no.    **Presidential Election Campaign**
8214 E 111th PL S Unit 100

City, town, or post office. If you have a foreign address, also complete spaces below.    State    ZIP code
Bixby    OK    74008-2452

Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund.    ☐ You    ☐ Spouse

Foreign country name    Foreign province/state/county    Foreign postal code

**Filing Status**
Check only one box.
☐ Single
☐ Married filing jointly (even if only one had income)
☒ Married filing separately (MFS)
☐ Head of household (HOH)
☐ Qualifying surviving spouse (QSS)

If you checked the MFS box, enter the name of your spouse. If you checked the HOH or QSS box, enter the child's name if the qualifying person is a child but not your dependent: X█████ █

**Digital Assets**
At any time during 2023, did you: (a) receive (as a reward, award, or payment for property or services); or (b) sell, exchange, or otherwise dispose of a digital asset (or a financial interest in a digital asset)? (See instructions.)    ☐ Yes    ☒ No

**Standard Deduction**
Someone can claim: ☐ You as a dependent    ☐ Your spouse as a dependent
☐ Spouse itemizes on a separate return or you were a dual-status alien

**Age/Blindness**    You: ☐ Were born before January 2, 1959    ☐ Are blind    Spouse: ☐ Was born before January 2, 1959    ☐ Is blind

**Dependents** (see instructions):

| (1) First name    Last name | (2) Social security number | (3) Relationship to you | (4) Check if qualifies for (see instructions): |  |
|---|---|---|---|---|
| | | | Child tax credit | Credit for other dependents |
If more than four dependents, see instructions and check here ☐

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a Form W-2, see instructions.

Attach Sch. B if required.

| | | |
|---|---|---|
| 1a | Total amount from Form(s) W-2, box 1 (see instructions) | 1a |
| b | Household employee wages not reported on Form(s) W-2 | 1b |
| c | Tip income not reported on line 1a (see instructions) | 1c |
| d | Medicaid waiver payments not reported on Form(s) W-2 (see instructions) | 1d |
| e | Taxable dependent care benefits from Form 2441, line 26 | 1e |
| f | Employer-provided adoption benefits from Form 8839, line 29 | 1f |
| g | Wages from Form 8919, line 6 | 1g |
| h | Other earned income (see instructions) | 1h |
| i | Nontaxable combat pay election (see instructions) | 1i |
| z | Add lines 1a through 1h | 1z |
| 2a | Tax-exempt interest | 2a | b Taxable interest | 2b |
| 3a | Qualified dividends | 3a | b Ordinary dividends | 3b |
| 4a | IRA distributions | 4a | b Taxable amount | 4b |
| 5a | Pensions and annuities | 5a | b Taxable amount | 5b |
| 6a | Social security benefits | 6a | b Taxable amount | 6b |
| c | If you elect to use the lump-sum election method, check here (see instructions) ☐ | |
| 7 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ☐ | 7 |
| 8 | Additional income from Schedule 1, line 10 | 8 | (11,948) |
| 9 | Add lines 1z, 2b, 3b, 4b, 5b, 6b, 7, and 8. This is your **total income** | 9 | (11,948) |

**Standard Deduction for-**
- Single or Married filing separately, $13,850
- Married filing jointly or Qualifying surviving spouse, $27,700
- Head of household, $20,800
- If you checked any box under Standard Deduction, see instructions.

| 10 | Adjustments to income from Schedule 1, line 26 | 10 | |
| 11 | Subtract line 10 from line 9. This is your **adjusted gross income** | 11 | (11,948) |
| 12 | **Standard deduction or itemized deductions** (from Schedule A) | 12 | 13,850 |
| 13 | Qualified business income deduction from Form 8995 or Form 8995-A | 13 | |
| 14 | Add lines 12 and 13 | 14 | 13,850 |
| 15 | Subtract line 14 from line 11. If zero or less, enter -0-. This is your **taxable income** | 15 | 0 |

**For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.**    Form **1040** (2023)
EEA

242

**SCHEDULE C**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service

# Profit or Loss From Business
(Sole Proprietorship)

Attach to Form 1040, 1040-SR, 1040-SS, 1040-NR, or 1041; partnerships must generally file Form 1065.

Go to *www.irs.gov/ScheduleC* for instructions and the latest information.

OMB No. 1545-0074

**2023**

Attachment
Sequence No. **09**

Name of proprietor

**Linh T Stephens**

Social security number (SSN)

XXX-XX-XXXX

| | | |
|---|---|---|
| A | Principal business or profession, including product or service (see instructions) | B Enter code from instructions |
| | **Medical Office** | |
| C | Business name. If no separate business name, leave blank. | D Employer ID number (EIN) (see instr.) |
| | **Peace Joy Clinic PLLC** | |
| E | Business address (including suite or room no.)  **8214 E 111th PL S Untie 100** | |
| | City, town or post office, state, and ZIP code  **Bixby, OK 74008-2452** | |

F Accounting method: (1) [X] Cash  (2) ☐ Accrual  (3) ☐ Other (specify)

G Did you "materially participate" in the operation of this business during 2023? If "No," see instructions for limit on losses . . . . . [X] Yes ☐ No

H If you started or acquired this business during 2023, check here . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐

I Did you make any payments in 2023 that would require you to file Form(s) 1099? See instructions . . . . . . . . . . . . ☐ Yes [X] No

J If "Yes," did you or will you file required Form(s) 1099? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

## Part I   Income

| | | | |
|---|---|---|---|
| 1 | Gross receipts or sales. See instructions for line 1 and check the box if this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked . . . . . . . . . . . . . ☐ | 1 | 5,592 |
| 2 | Returns and allowances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 | 0 |
| 3 | Subtract line 2 from line 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 | 5,592 |
| 4 | Cost of goods sold (from line 42) . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 | |
| 5 | **Gross profit.** Subtract line 4 from line 3 . . . . . . . . . . . . . . . . . . . . . . . . . | 5 | 5,592 |
| 6 | Other income, including federal and state gasoline or fuel tax credit or refund (see instructions) . . | 6 | |
| 7 | **Gross income.** Add lines 5 and 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7 | 5,592 |

## Part II   Expenses. Enter expenses for business use of your home only on line 30.

| | | | | | | |
|---|---|---|---|---|---|---|
| 8 | Advertising . . . . . . . . . | 8 | | 18 | Office expense (see instructions) . . | 18 | |
| 9 | Car and truck expenses (see instructions) . . . . . | 9 | | 19 | Pension and profit-sharing plans . | 19 | |
| 10 | Commissions and fees . . . | 10 | | 20 | Rent or lease (see instructions): | | |
| 11 | Contract labor (see instructions) | 11 | | a | Vehicles, machinery, and equipment . . | 20a | |
| 12 | Depletion . . . . . . . . . | 12 | | b | Other business property . . . . . | 20b | 6,500 |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see instructions) . . . . . . . | 13 | | 21 | Repairs and maintenance . . . . . | 21 | |
| | | | | 22 | Supplies (not included in Part III) . . | 22 | 3,852 |
| | | | | 23 | Taxes and licenses . . . . . . . | 23 | 408 |
| 14 | Employee benefit programs (other than on line 19) . . | 14 | | 24 | Travel and meals: | | |
| | | | | a | Travel . . . . . . . . . . . . | 24a | |
| 15 | Insurance (other than health) | 15 | 4,070 | b | Deductible meals (see instructions) | 24b | |
| 16 | Interest (see instructions): | | | 25 | Utilities . . . . . . . . . . . . | 25 | 339 |
| a | Mortgage (paid to banks, etc.) | 16a | | 26 | Wages (less employment credits) | 26 | |
| b | Other . . . . . . . . | 16b | | 27a | Other expenses (from line 48) . . | 27a | 1,732 |
| 17 | Legal and professional services | 17 | 200 | b | Energy efficient commercial bldgs deduction (attach Form 7205) . . | 27b | |

| | | | |
|---|---|---|---|
| 28 | **Total expenses** before expenses for business use of home. Add lines 8 through 27b . . . . . . . . . . . . | 28 | 17,540 |
| 29 | Tentative profit or (loss). Subtract line 28 from line 7 . . . . . . . . . . . . . . . . . . . . . . . | 29 | (11,948) |
| 30 | Expenses for business use of your home. Do not report these expenses elsewhere. Attach Form 8829 unless using the simplified method. See instructions. | | |
| | **Simplified method filers only:** Enter the total square footage of (a) your home: and (b) the part of your home used for business: . Use the Simplified Method Worksheet in the instructions to figure the amount to enter on line 30 . . . . . . . . . . . . . . . | 30 | |
| 31 | **Net profit or (loss).** Subtract line 30 from line 29. | | |
| | • If a profit, enter on both **Schedule 1 (Form 1040), line 3,** and on **Schedule SE, line 2.** (If you checked the box on line 1, see instructions). Estates and trusts, enter on **Form 1041, line 3.** | 31 | (11,948) |
| | • If a loss, you **must** go to line 32. | | |
| 32 | If you have a loss, check the box that describes your investment in this activity. See instructions. | | |
| | • If you checked 32a, enter the loss on both **Schedule 1 (Form 1040), line 3,** and on **Schedule SE, line 2.** (If you checked the box on line 1, see the line 31 instructions.) Estates and trusts, enter on **Form 1041, line 3.** | 32a [X] All investment is at risk. | |
| | • If you checked 32b, you **must** attach **Form 6198.** Your loss may be limited. | 32b ☐ Some investment is not at risk. | |

**For Paperwork Reduction Act Notice, see the separate instructions.**

EEA

**Schedule C (Form 1040) 2023**

Schedule C (Form 1040) 2023       **Medical Office 621111**                                    Page **2**

Name(s)

Linh T Stephens

SSN

XXX-XX-XXXX

| **Part III** | **Cost of Goods Sold** (see instructions) |
|---|---|

**33**  Method(s) used to
value closing inventory:  **a** ☐ Cost   **b** ☐ Lower of cost or market   **c** ☐ Other (attach explanation)

**34**  Was there any change in determining quantities, costs, or valuations between opening and closing inventory?
If "Yes," attach explanation  · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·  ☐ Yes      ☐ No

**35**  Inventory at beginning of year.  If different from last year's closing inventory, attach explanation · · · · · ·  | **35** | |

**36**  Purchases less cost of items withdrawn for personal use   · · · · · · · · · · · · · · · ·  | **36** | |

**37**  Cost of labor.  Do not include any amounts paid to yourself   · · · · · · · · · · · · · ·  | **37** | |

**38**  Materials and supplies   · · · · · · · · · · · · · · · · · · · · · · · · · · ·  | **38** | |

**39**  Other costs   · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·  | **39** | |

**40**  Add lines 35 through 39   · · · · · · · · · · · · · · · · · · · · · · · · ·  | **40** | |

**41**  Inventory at end of year   · · · · · · · · · · · · · · · · · · · · · · · · ·  | **41** | |

**42**  **Cost of goods sold.**  Subtract line 41 from line 40. Enter the result here and on line 4  · · · · · · ·  | **42** | |

| **Part IV** | **Information on Your Vehicle.** Complete this part **only** if you are claiming car or truck expenses on line 9 and are not required to file Form 4562 for this business.  See the instructions for line 13 to find out if you must file Form 4562. |
|---|---|

**43**  When did you place your vehicle in service for business purposes?  (month/day/year)

**44**  Of the total number of miles you drove your vehicle during 2023, enter the number of miles you used your vehicle for:

**a**  Business _____   **b** Commuting (see instructions) _____   **c** Other _____

**45**  Was your vehicle available for personal use during off-duty hours?  · · · · · · · · · · · · · · ·  ☐ Yes      ☐ No

**46**  Do you (or your spouse) have another vehicle available for personal use?  · · · · · · · · · · · · ·  ☐ Yes      ☐ No

**47a**  Do you have evidence to support your deduction?  · · · · · · · · · · · · · · · · · · · ·  ☐ Yes      ☐ No

**b**  If "Yes," is the evidence written?  · · · · · · · · · · · · · · · · · · · · · · · · ·  ☐ Yes      ☐ No

| **Part V** | **Other Expenses.** List below business expenses not included on lines 8-26, line 27b, or line 30. |
|---|---|

| Apps/Software | 1,116 |
|---|---|
| Merchant Fees | 616 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**48**  Total other expenses. Enter here and on line 27a  · · · · · · · · · · · · · · · · · ·  | **48** | 1,732 |

EEA

Schedule C (Form 1040) 2023

Client Copy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

Linh Tran Stephens, an individual,                )
                                                  )
                    Plaintiff,                    )
                                                  )
v.                                                )        Case No.: CV-24-216-JDR-CDL
                                                  )
Child Support Services of Oklahoma                )
Department of Human Services, (CSS                )
Of OKDHS), et al.,                                )
                                                  )

**Motion To Dismiss of Defendant Child Support Services of Oklahoma Department of
Human Services And Brief In Support**

Defendant Child Support Services Of Oklahoma Department of Human Services
(hereinafter "CSS" and "OKDHS") respectfully moves the Court to dismiss this action pursuant
to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure for the reasons stated
in the following brief.

## I. Statement Of The Case

This case arises from and revolves centrally around child support and other orders entered
against Plaintiff in the ongoing Child Support Case No. OAH 23-00313-73 ("OAH Case") and Tulsa
County Oklahoma District Court Case Number FD-2015-2228 ("Tulsa County Case"). More
pointedly, this case traces its lineage to lawful child support orders, consistent with her moral and
legal duty to support her child, entered in Plaintiff's OAH Case and filed into the Tulsa County Case
as per Oklahoma law.[1] *See, for example,* Plaintiff's Complaint at pp. 75-77

Cast against this backdrop, Part A of Subchapter IV of Chapter 7 of Title 42[2] of the United
States Code requires every state to designate a single state agency to administer a statewide plan for

---

[1] *See, inter alia,* 56 O.S. §§ 233, 234, 237, 237A, 237.8, 237.10, 238.3a, 240.1, 240.3.
[2] 42 U.S.C. §§601-619.

child support services, and the State of Oklahoma has authorized OKDHS as that agency.[3] This plan provides that when OKDHS Child Support Services (CSS) are expended and child support payments are ordered by the court, <u>such payments shall be paid to CSS by an immediate income assignment</u>.[4] In Plaintiff's child support case, CSS was and remains a necessary party because OKDHS continues to provide services to Plaintiff's minor child. Further, in order to efficiently oversee the implementation of the State of Oklahoma's Child Support plan, CSS was granted authorization to adopt rules for child support services.[5] In the underlying Tulsa County District Court Case/CSS Case OKDHS, by and through CSS, is handling the child support case. This in mind, 12 O.S. § 1171.2 provides for garnishment that Plaintiff complains of:

> [a]ny person awarded custody of and support for a minor child by the district court or awarded periodic child support payments by the Department of Human Services, or the Department of Human Services on behalf of a recipient of Temporary Assistance for Needy Families or on behalf of a person not receiving Temporary Assistance for Needy Families **shall be entitled to proceed to collect any current child support and child support due and owing through** income assignment pursuant to the provisions of this section and Section 1171.3 of this title or Sections 240 through 240.3 of Title 56 of the Oklahoma Statutes **or by garnishment, if the minor child is in the custody and care of the person entitled to receive the child support or as is otherwise provided by the court or administrative order at the time of the income assignment or garnishment proceedings**.

*Ibid* at (A)(Emphasis supplied).

Oklahoma law (consistent with federal law and requirements) also provides for disclosure of financial account information and concomitant levying to recover past due child support obligations. *See, for example,* 56 O.S. §§ 240.22B, 240.22D, 240.22E.

In sum, Plaintiff proceeds herein hoping this honorable Court will enter an order refunding and enjoining the collection of past due (which are judgments as a matter of law[6] and not "consumer

---

[3] 56 O.S. § 237(A).
[4] 12 O.S. § 1171.3(G)(1), 43 O.S. § 115 (A), 56 O.S. § 237(C)(3).
[5] 56 O.S. § 237(B)(2).
[6] *See, inter alia,* 43 O.S. § 137.

debt" as Plaintiff appears to believe) current, and future child support payments thereby vacating and

holding for naught the lawful child support orders entered in the CSS Case and Tulsa County Case.

The foregoing in mind, it would thus be no understatement to say it is undeniable that the subject

child support orders are wholly integral to Plaintiff's claims herein just as it is ineluctable that

Plaintiff's Complaint is irreparably flawed and must be dismissed.

## II. Argument and Authorities

### A. Motion to Dismiss Standard for Lack of Subject Matter Jurisdiction

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is in the

form of "a facial attack." *Holt v. U.S.,* 46 F.3d 1000, 1002 (10th Cir. 1995). A "facial attack on the

complaint's allegations as to subject matter jurisdiction questions the sufficiency of the

complaint." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. U.S.,* 922 F.2d 320, 325 (6th Cir. 1990)). If a

court determines it has been deprived of subject matter jurisdiction, then such court must dismiss

the complaint pursuant to Rule 12(b)(1). Defendants contend that this Court is without jurisdiction

over Plaintiff's suit because it was brought in derogation of the Eleventh Amendment and the

sovereign immunity of the State of Oklahoma. Accordingly, the claims should be dismissed

pursuant to Rule 12(b)(1).

### B. Standard for Dismissal for Failure to State a Claim

Defendant also contends Plaintiff has failed to state a claim for relief. "To survive a motion

to dismiss [for failure to state a claim under Rule 12(b)(6)], a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing

*Twombly* at 556). Under this standard, the Tenth Circuit has stated that "the mere metaphysical

possibility that <u>some</u> plaintiff could prove <u>some</u> set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that <u>this</u> plaintiff has a reasonable likelihood of mustering factual support for <u>these</u> claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original). In other words, a plaintiff must nudge his "claims across the line from conceivable to plausible[.]" *Twombly* at 570. Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal* at 679.

The Tenth Circuit in *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008), explained that "plausibility" refers to the scope of the allegations in the complaint; "if they are so general that they encompass a wide swath of conduct, much of it innocent" or if the allegations are no more than "labels and conclusions" or a mere "formulaic recitation of the elements of a cause of action" then such allegations are not sufficient to place defendants on notice "of the actual grounds of the claim" against them. When this standard is applied to the factual allegations of the Amended Complaint, it is clear that this action should be dismissed pursuant to Rule 12(b)(6).

### C. Plaintiff's Complaint is Subject to Dismissal Under Fed. R. Civ. P. 12(b)(1) Due to Eleventh Amendment Sovereign Immunity

OKDHS (formerly known as the Department of Public Welfare and the Department of Institutions, Social and Rehabilitative Services) was created in 1936 by §2 of Article XXV of the Oklahoma Constitution for the purpose of "administering and carrying into execution" all laws enacted by the Oklahoma Legislature pursuant to §1 of Article XXV. *See* 56 O.S. §§162.1(a) and 162.1a. Section 2 also requires DHS to "perform such other duties as may from time to time be prescribed by law." *See generally City of Sand Springs v. Department of Public Welfare,* 608 P.2d 1139 (Okla. 1980). As an agency of the State of Oklahoma, DHS is unquestionably an arm of the State of Oklahoma. *See, for example, Pennhurst State School & Hospital v. Halderman,* 465 U.S.

89, 100 (1990); *Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Association,* 450 U.S. 147, 150 (1981) (per curiam); *Alabama v. Pugh*, 438 U.S. 781 (1978) (per curiam).

> The foregoing in mind, the Eleventh Amendment provides:
>
> [t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

Towards this end,

> [t]he Supreme Court has interpreted the Eleventh Amendment to mean "States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). This prohibition encompasses suits against state agencies. *See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).

*Muscogee (Creek) Nation v. Oklahoma Tax Comm'n,* 611 F.3d 1222, 1227 (10th Cir. 2010).

Because States may not be sued in federal court absent their consent or specific and unequivocal Congressional mandate,

> [t]he Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state. *See Steadfast Ins. Co. v. Agric. Ins. Co.,* 507 F.3d 1250, 1252–53 (10th Cir.2007).

*Wagoner Cty. Rural Water Dist. No. 2 v. Grand River Dam Auth.,* 577 F.3d 1255, 1258 (10th Cir. 2009).

As for the possibility that OKDHS/CSS has unequivocally consented to suit herein by waiving its Eleventh Amendment sovereign immunity,

> [t]he Court will give effect to a State's waiver of Eleventh Amendment immunity "'only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.' " *306 Atascadero State Hospital, supra,* 473 U.S., at 239–240, 105 S.Ct., at 3145–3146 (quoting *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347,

> 1360, 39 L.Ed.2d 662 (1974) (internal quotation omitted)). A State does not waive
> its Eleventh Amendment immunity by consenting to suit only in its own courts, see,
> *e.g., Florida Dept. of Health and Rehabilitative Services v. Florida Nursing Home
> Assn.,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981) (*per
> curiam*), and "[t]hus, in order for a state statute or constitutional provision to
> constitute a waiver of Eleventh Amendment immunity, it must specify the State's
> intention to subject itself to suit in *federal court.*" *Atascadero State Hospital, supra,*
> 473 U.S., at 241, 105 S.Ct., at 3146.

*Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305–06, 110 S. Ct. 1868, 1873, 109 L.

Ed. 2d 264 (1990).

In this vein, it is clear that the State of Oklahoma and its agencies – including OKDHS –

have not waived their Eleventh Amendment immunity and consented to actions in federal court

such as this case. *See* 51 O.S. §152.1(B) (which expressly preserves the State of Oklahoma's

Eleventh Amendment immunity). Likewise, Oklahoma's Eleventh Amendment immunity has not

been negated by any unequivocal Congressional mandate subjecting DHS to suit herein for alleged

civil rights violations,

> [i]t is well settled that neither 42 U.S.C. § 1981 nor § 1983 abrogate the Eleventh
> Amendment immunity of the states. *E.g., Will v. Mich. Dep't of State Police,* 491
> U.S. 58, 66–67, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (§ 1983); *Ellis v. Univ. of
> Kan. Med. Ctr.,* 163 F.3d 1186, 1196 (10th Cir.1998) (§§ 1981, 1983, and 1985).
> Thus, Congress has not abrogated the defendants' Eleventh Amendment immunity
> under these provisions.

*LaFavre v. Kansas ex rel. Stovall,* 6 Fed. Appx. 799, 805 (10th Cir. 2001).

As such, Plaintiff's claims against OKDH/CSS are jurisdictionally[7] barred pursuant to the

plain language of the Eleventh Amendment and must be dismissed.

### E. The *Rooker-Feldman* Doctrine Warrants Dismissal

---

[7] "Because the State's assertion of Eleventh Amendment immunity challenges the subject matter
jurisdiction of the district court, the issue must be resolved before a court may address the merits
of [the] underlying . . . claim." <u>Martin v. Kansas</u>, 190 F.3d 1120, 1126 (10th Cir. 1999), <u>overruled
on other grounds by Bd. of Trustees of Univ. of Ala. v. Garrett</u>, 531 U.S. 356, 148 L. Ed. 2d 866,
121 S. Ct. 955 (2001)."
*Joseph A. v. Ingram*, 275 F.3d 1253, 1259 (10th Cir. 2002)

It is beyond dispute that Plaintiff's claims arise from state court judgments[8] for child support. Resultantly, they are barred herein according to the *Rooker-Feldman* doctrine which holds that the federal courts (other than the United States Supreme Court) lack jurisdiction to adjudicate claims seeking review of state court judgments. *Feldman*, 460 U.S. at 483-484. *See Kiowa Indian Tribe of Oklahoma v. Hoover,* 150 F.3d 1163, 1169 (10th Cir. 1998) (holding that "federal review of state court judgments can be obtained only in the United States Supreme Court" under 28 U.S.C. §1257). Apt here is the following from the Tenth Circuit:

> [t]he Supreme Court has explained that *Rooker-Feldman* "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). "In other words, an element of the claim must be that the state court wrongfully entered its judgment." *Campbell*, 682 F.3d at 1283. Tso's Complaint seeks relief from alleged harms flowing from "acts of the state court." *Campbell*, 682 F.3d at 1285. That is, "the allegedly wrongful act that caused damage was the state-court order itself," and his claims "required a determination of the bona fides of the prior state-court judgment," *id.* at 1284. Though he complains of various acts taken by the defendants, whether through a RICO "conspiracy" or denial of just compensation, the only harms alleged involved deprivations that resulted from the state courts' orders. His claims are therefore barred by *Rooker-Feldman*.

*Tso v. Murray*, 760 F. App'x 564, 567-68 (10th Cir. 2019).

In the case at bar, Plaintiff's complaints are born of state court orders and his requested relief would require this court to impermissibly determine the "bona fides" of the orders. *Ibid.*

Further, the *Rooker-Feldman* doctrine bars consideration not only of issues _actually_ presented to and decided by a state court, but also bars consideration of constitutional claims that are "'inextricably intertwined' with" issues ruled upon by a state court. *See id.* (quoting *Feldman,*

---

[8] Both the actual child support order as well as past due child support that become judgments automatically by operation of law. *See, inter alia,* 43 O.S. § 137.

460 U.S. at 483-84, n.16). "A claim is inextricably intertwined if the federal claim succeeds only

to the extent that the state court wrongly decided the issues before it." *Charchenko v. City of

Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995). "In other words, *Rooker-Feldman* precludes a federal

action if the relief requested in the federal action would effectively reverse the state court decision

or void its ruling." *Id.* In this case it is inescapable that the events giving rise to Plaintiff's

allegations arise from and are inextricably intertwined with a current state court case involving

child support and/or would involve this court reviewing the decisions of a state court. Likewise, to

the extent that Plaintiff seeks a declaratory judgment regarding child support, such would be barred

by *Rooker-Feldman* as well:

> *Feldman* not only prohibited direct review of state judgments by lower federal
> courts, but it also prohibited those federal courts from issuing any declaratory relief
> that is "inextricably intertwined" with the state court judgment. *Feldman,* 460 U.S.
> at 483–84 n. 16, 103 S.Ct. at 1315–16 n. 16; *Razatos,* 746 F.2d at 1433.

*Facio v. Jones*, 929 F.2d 541, 543 (10th Cir. 1991).

## F. *Younger* Abstention

It appears Plaintiff also seeks prospective relief regarding the continuing child support

orders of the Tulsa County Case/CSS Case. While such relief may avoid the jurisdictional bar of

the Eleventh Amendment, it cannot avoid non-discretionary application of *Younger* abstention

herein:

> [i]n determining whether *Younger* abstention is appropriate, a court considers
> whether: "(1) there is an ongoing state criminal, civil, or administrative proceeding,
> (2) the state court provides an adequate forum to hear the claims raised in the federal
> complaint, and (3) the state proceedings involve important state interests, matters
> which traditionally look to state law for their resolution or implicate separately
> articulated state policies." *Amanatullah v. Colorado Bd. of Med. Exam'rs,* 187 F.3d
> 1160, 1163 (10th Cir. 1999) (internal quotations omitted). Once these three
> conditions are met, Younger abstention is non-discretionary and, absent
> extraordinary circumstances, a district court is required to abstain. *See Seneca-
> Cayuga Tribe v. Oklahoma,* 874 F.2d 709, 711 (10th Cir. 1989).

*Crown Point I Ltd. Liab. Co. v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003).

In this case, there can be no doubt of the wholesale application of *Younger* abstention. First, it is beyond dispute that there is an ongoing child support case in Oklahoma state court which continues until the minor child reaches majority. *See, for example,* 43 O.S. § 112(E). Second, the care and support of Oklahoma's children by their parents is ineluctably one that involves important state interests. *See, for example,* Moore v. Sims, 442 U.S. 415, 435, 99 S. Ct. 2371, 60 L. Ed. 2d 994 (1979) (family relations are traditional area of state concern); Morrow v. Winslow, 94 F.3d 1386, 1397 (10th Cir. 1996) (state has interest in orderly conduct of proceedings in its courts in manner which protects interest of child and family), cert. denied, 520 U.S. 1143, 117 S. Ct. 1311, 137 L. Ed. 2d 475 (1997). Third, Oklahoma state courts have jurisdiction to entertain and decide §1983 suits. *See Howlett v. Rose,* 496 U.S. 356, 367, 110 S. Ct. 2430, 2438 (1990). And this truism rings loudly with regard to matters of state concern:

> [t]he seriousness of federal judicial interference with state civil functions has long been recognized by this Court. We have consistently required that when federal courts are confronted with requests for such relief, they should abide by standards of restraint that go well beyond those of private equity jurisprudence. For example, *Massachusetts State Grange* v. *Benton*, 272 U.S. 525 (1926), involved an effort to enjoin the operation of a state daylight savings act. Writing for the Court, Mr. Justice Holmes cited *Fenner* v. *Boykin, supra,* and emphasized a rule that "should be very strictly observed," 272 U.S., at 529, "that no injunction ought to issue against officers of a State clothed with authority to enforce the law in question, unless in a case reasonably free from doubt and when necessary to prevent great and irreparable injury." *Id*., at 527.

> Although Mr. Justice Holmes was confronted with a bill seeking an injunction against state executive officers, rather than against state judicial proceedings, [*604] we think that the relevant considerations of federalism are of no less weight in the latter setting. If anything, they counsel more heavily toward federal restraint, since interference with a state judicial proceeding prevents the state not only from effectuating its substantive policies, but also from continuing to perform the separate function of providing a forum competent to vindicate any constitutional objections interposed against those policies. Such interference also results in

duplicative legal proceedings, and can readily be interpreted "as reflecting negatively upon the state court's ability to enforce constitutional principles."

*Huffman v. Pursue, Ltd.,* 420 U.S. 592, 603-04, 95 S. Ct. 1200, 1208 (1975).

Moreover, Plaintiff has made no showing that Oklahoma state courts are somehow insufficient for her claims – save the fact that she dislikes the rulings. However, that is not the standard:

> Plaintiff argues that the Washington state court did not provide an adequate forum because it overruled his argument on timeliness grounds. See Plaintiff's Response (Doc. # 52) at 5. Plaintiff, however, has not shown that he did not have the opportunity to present his claim in state court at an earlier date. See Juidice v. Vail, 430 U.S. 327, 337, 97 S. Ct. 1211, 51 L. Ed. 2d 376 (1977) (Younger only requires that plaintiff be afforded opportunity to present federal claim in state proceedings; failure to avail himself of opportunity [*1216] does not mean state procedures were inadequate); World Famous Drinking Emporium, Inc. v. City of Tempe, 820 F.2d 1079, 1083 (9th Cir. 1987) (fact that plaintiff did not avail itself of opportunity to litigate constitutional claim in state forum does not demonstrate that state forum was inadequate); see also Spargo, 351 F.3d at 79 (relevant question is whether state procedural remedies could provide relief sought, not whether they will provide remedy); Kirschner v. Klemons, 225 F.3d 227, 235 (2d Cir. 2000) (to establish inadequacy of state forum, plaintiff must show that state laws, procedures or practices prevent his effective interposition of federal contentions). Plaintiff has not satisfied his burden to show that state procedures did not afford him an adequate remedy. See Pennzoil, 481 U.S. at 15.

*Phillips v. Martin,* 535 F. Supp. 2d 1210, 1215-16 (D. Kan. 2008).

In this case the three *Younger* conditions are clearly met and this Court should abstain from exercising jurisdiction herein and dismiss this matter.

### III.  Conclusion

As set forth above, the Complaint suffers from a jurisdictional bar in the form of the Eleventh Amendment and, further, fails to state a claim upon which any relief can be granted against OKDHS as a matter of law. Likewise, the *Rooker-Feldman* and *Younger* Abstention doctrines do not save Plaintiff's claims.  Accordingly, OKDHS respectfully requests this matter be dismissed in its entirety.

Respectfully submitted,


_s/ John K.F. Langford_
John K.F. Langford (OBA #21012)
Assistant General Counsel
Department of Human Services
P.O. Box 25352
Oklahoma City, OK 73125-0352
Telephone: (405) 521-3638
Facsimile: (405) 521-6816
E-mail: John.Langford@okdhs.org


## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of July, 2024 the foregoing document was electronically

submitted to the Clerk of the Court using the ECF System for filing and a true and correct copy of

the foregoing was mailed, postage prepaid, to the following:

Pro Se Plaintiff:
Linh Tran Stephens
11063 S. Memorial Drive
Suite D, #235
Tulsa, OK 74133

Attorneys For Cierra Freeman:
Andrew Charles Jayne
Shelby N. Brunette

Attorneys for Charles Schwab & Co., Inc.
Mary Johnmeyer:
Tara A. LaClair
Mary H. Tolbert

_s/ John K.F. Langford_
John K.F. Langford

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

Linh Tran Stephens, an individual,              )
                                                )
                    Plaintiff,                  )
                                                )
v.                                              )        Case No.: CV-24-216-JDR-CDL
                                                )
Child Support Services of Oklahoma             )
Department of Human Services, (CSS             )
Of OKDHS), et al.,                             )
                                                )

### Motion To Dismiss of Defendant Emmalene Stringer And Brief In Support

Defendant Emmalene Stringer (hereinafter "Stringer") respectfully moves the Court to dismiss this action pursuant to Rule 8, Rule 9, Rule 12(b)(1), and Rule 12(b)(6) of the Federal Rules of Civil Procedure for the reasons stated in the following brief.

### I. Statement Of The Case

This case arises from and is inextricably enmeshed with child support and other orders entered against Plaintiff in her *ongoing* Child Support Case No. OAH 23-00313-73 ("CSS Case") and Tulsa County Oklahoma District Court Case Number FD-2015-2228 ("Tulsa County Case"). More pointedly, this case traces its lineage to lawful child support orders, consistent with Plaintiff's moral and legal duty to support her child, entered in Plaintiff's CSS Case and filed into the Tulsa County Case as per Oklahoma law.[1] *See, for example,* Plaintiff's Complaint at pp. 75-77

Cast against this backdrop, Part A of Subchapter IV of Chapter 7 of Title 42[2] of the United States Code requires every state to designate a single state agency to administer a statewide plan for child support services, and the State of Oklahoma has authorized OKDHS as that agency.[3] This plan provides that when OKDHS Child Support Services (CSS) are expended and child support

---

[1] *See, inter alia,* 56 O.S. §§ 233, 234, 237, 237A, 237.8, 237.10, 238.3a, 240.1, 240.3.
[2] 42 U.S.C. §§601-619.
[3] 56 O.S. § 237(A).

payments are ordered by the court, <u>such payments shall be paid to CSS by an immediate income assignment</u>.[4] In Plaintiff's child support cases, CSS was and remains a necessary party because OKDHS continues to provide services to Plaintiff's minor child. Further, in order to efficiently oversee the implementation of the State of Oklahoma's Child Support plan, CSS was granted authorization to adopt rules for child support services.[5] In the underlying Tulsa County District Court Case/CSS Case, OKDHS - by and through CSS - is handling the child support case. This in mind, 12 O.S. § 1171.2 provides for garnishment that Plaintiff complains of:

> [a]ny person awarded custody of and support for a minor child by the district court or awarded periodic child support payments by the Department of Human Services, or the Department of Human Services on behalf of a recipient of Temporary Assistance for Needy Families or on behalf of a person not receiving Temporary Assistance for Needy Families **shall be entitled to proceed to collect any current child support and child support due and owing through** income assignment pursuant to the provisions of this section and Section 1171.3 of this title or Sections 240 through 240.3 of Title 56 of the Oklahoma Statutes **or by garnishment, if the minor child is in the custody and care of the person entitled to receive the child support or as is otherwise provided by the court or administrative order at the time of the income assignment or garnishment proceedings**.

*Ibid* at (A)(Emphasis supplied).

Oklahoma law (consistent with federal law and requirements) also provides for disclosure of financial account information and concomitant levying to recover past due child support obligations. *See, for example,* 56 O.S. §§ 240.22B, 240.22D, 240.22E.

Stringer is an attorney for OKDHS/CSS and represents the State of Oklahoma regarding child support case in both state and administrative courts.  One such case is Plaintiff's wherein Plaintiff owes ongoing child support and a significant amount of past due child support (which are judgments as a matter of law[6]) which is what led to the levy and garnishment Plaintiff is apoplectic

---

[4] 12 O.S. § 1171.3(G)(1), 43 O.S. § 115 (A), 56 O.S. § 237(C)(3).
[5] 56 O.S. § 237(B)(2).
[6] *See, inter alia,* 43 O.S. § 137.

about. Plaintiff has repeatedly disputed the lawful child support orders and lawful collection methods in court to no avail because she has not and cannot present any evidence that the child support orders and the collection of funds for the benefit of her child are remotely unlawful. And so Plaintiff brings the instant lawsuit which is but a cris de coer rife with longueurs comprised of baseless allegations, *ipse dixit,* and immaterial averments. In this vein, Plaintiff alleges twelve "claims" which range from improbable to absurd. Further, Stringer name appears in Plaintiff's Complaint sparingly and when it does it at worst describes conduct of an attorney representing her client[7] or Stinger's residence[8] or that Stringer was a recipient of a communication from Plaintiff.[9] In fact the only one of Plaintiff's twelve "claims" that is even specifically addressed to Stringer is a preposterous allegation of the crime of perjury.[10]

In sum, there can be no doubt that paying child support is Plaintiff's bete noire. But her disdain for paying child support or the federally and state mandated collection thereof does not a lawsuit make. Plaintiff proceeds herein hoping this honorable Court will enter an order refunding and enjoining the collection of past due (which are judgments as a matter of law[11] and not "consumer debt" as Plaintiff appears to believe), current, and future child support payments thereby vacating and holding for naught the lawful child support orders entered in the CSS Case and Tulsa County Case. The foregoing in mind, it would thus be no understatement to say it is undeniable that the subject child support orders are wholly integral to Plaintiff's claims herein. Plaintiff's Complaint suffers from many incurable infirmities and must be dismissed.

## II. Argument and Authorities

### A.     Plaintiff Has Wholly Failed to Comply With Rule 8

---

[7] *See* Plaintiff's Complaint at ¶48(Emphasis supplied): "… Stringer Defendant #8 *argued* 'no jurisdiction' in the administrative court'…" *See also* Plaintiff's Complaint at ¶¶ 32, 37.
[8] *See* Plaintiff's Complaint at ¶10.
[9] *See* Plaintiff's Complaint at ¶39.
[10] *See* Plaintiff's Complaint at ¶ 32.
[11] *See, inter alia,* 43 O.S. § 137.

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must "state their claims intelligibly so as to inform the defendants of the legal claims being asserted." *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007). Specifically, Rule 8(a) instructs the plaintiff to plead for relief in a "short and plain statement," while Rule 8(d)(1) adds that each allegation in the complaint must be "simple, concise, and direct." Fed. R. Civ. P. 8(a) and (d). Accordingly, something "written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs" would violate Rule 8. *See Mann*, 477 F.3d at 1148.

Certainly perfection is not required and Courts may "bypass the dross and get on with the case." *See Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) (internal citations omitted). If a case is unintelligible, however, a Court may dismiss the Complaint under Rule 8. *See id.* Indeed, "[i]t is not the district court's job to stitch together cognizable claims" from deficient pleading. *Mann*, 477 F.3d at 1148; *see also Garst* 328 F.3d at 378 ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud."). As the Second Circuit noted, "unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2nd Cir. 1988).

Finally, a Rule 8 violation is different from a failure to state a claim under Rule 12(b)(6). Even if a complaint sufficiently alleges enough facts to survive a 12(b)(6) motion to dismiss, a Court may still invoke Rule 8 to strike the complaint if the necessary facts are "scattered throughout the complaint." *See Mann*, 477 F.3d at 1147; *see also Ciralsky v. C.I.A.*, 355 F.3d 661, 671 (D.C. Cir. 2004) (holding that there was a Rule 8 violation even though plaintiff had pled more

details than necessary to survive dismissal under Rule 12(b)(6)).  See: *Valencia v. Bd. of Regents*, No. CV 17-00509 RB/SCY, 2017 WL 4325766, at *1–2 (D.N.M. Sept. 26, 2017). (Exhibit 1).

In the case at bar, Plaintiff fails to comply with the Rule 8 requirements that the her Complaint contain a "short and plain statement" of the claims and that it be "concise and direct." In contrast, Plaintiff's Complaint is composed of conclusory allegations and a string of citations lobbed into the air wily nilly without a shred of information as to how any of her legal theories have been triggered.  The Complaint is primarily an incoherent and indecipherable sovereign citizen manifesto railing against child support orders and the concomitant collection of child support.  Because Plaintiff's Complaint fails at such a fundamental level, this Court should dismiss it for failure to comply with Rule 8.

### B. Motion to Dismiss Standard for Lack of Subject Matter Jurisdiction

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is in the form of "a facial attack." *Holt v. U.S.,* 46 F.3d 1000, 1002 (10th Cir. 1995). A "facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. U.S.,* 922 F.2d 320, 325 (6th Cir. 1990)). If a court determines it has been deprived of subject matter jurisdiction, then such court must dismiss the complaint pursuant to Rule 12(b)(1). Stringer contends that this Court is without jurisdiction over Plaintiff's suit because it was brought in derogation of the Eleventh Amendment and the sovereign immunity of the State of Oklahoma in so far as she is sued in her official capacity. Accordingly, the claims should be dismissed pursuant to Rule 12(b)(1).

### C. Standard for Dismissal for Failure to State a Claim

Stringer also contends Plaintiff has failed to state a claim for relief. The standard to be followed by a district court when considering a motion to dismiss under Rule 12(b)(6) was

summarized by the United States Court of Appeals for the Tenth Circuit in *Robbins v. State of Oklahoma, ex rel. Dept. of Human Services*, 519 F.3d 1242 (10th Cir. 2008), as follows:

> "[t]o withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*,] 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  Under this revised standard, as we explained in *Ridge at Red Hawk, L.L.C. v. Schneider*:
>
>> the mere metaphysical possibility that <u>some</u> plaintiff could prove <u>some</u> set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that <u>this</u> plaintiff has a reasonable likelihood of mustering factual support for <u>these</u> claims.

493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).  The burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief.  *Twombly*, *127 S.Ct. at 1965*. Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Ibid* at 1247.

In other words, a plaintiff must nudge her "claims across the line from conceivable to plausible[.]" *Twombly* at 570.  Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal* at 679. The Tenth Circuit in *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008), explained that "plausibility" refers to the scope of the allegations in the complaint; "if they are so general that they encompass a wide swath of conduct, much of it innocent" or if the allegations are no more than "labels and conclusions" or a mere "formulaic recitation of the elements of a cause of action" then such allegations are not sufficient to place defendants on notice "of the actual grounds of the claim" against them. Further, legal conclusions and threadbare recitals cannot be disguised as facts to create plausibility.  *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009).  The trial court should insist that the plaintiff put forward specific, non-

conclusory factual allegations, to assist the court in determining whether the complaint is plausible.

*Robbins* at 1249. "Plausibility" refers to the scope of the allegations in the complaint; if they are "so general that they encompass a wide swath of conduct, much of it innocent" or if the allegations are no more than "labels and conclusions" or "a mere formulaic recitation of the elements of a cause of action" then such allegations may be inadequate to overcome a motion to dismiss. *Id.* at 1247-48. In large measure then, allegations which simply make "…unadorned, the-defendant-unlawfully-harmed-me" accusations fail to pass muster. *Ashcroft v. Iqbal*, 556 U.S. at 678. Finally,

> <u>Pro se</u> complaints are held to less stringent standards than pleadings drafted by lawyers and the court must construe them liberally. <u>Haines</u>, 404 U.S. at 520. Nevertheless, the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations. <u>Hall</u>, 935 F.2d at 1110. Moreover, even <u>pro se</u> plaintiffs are required to comply with the "fundamental requirements of the Federal Rules of Civil Procedure." <u>Ogden v. San Juan County</u>, 32 F.3d 452, 455 (10th Cir. 1994).

*Miller v. Kemp*, No. 11-CV-0530-CVE-FHM, 2012 U.S. Dist. LEXIS 62529, at *8 (N.D. Okla. May 4, 2012)

In the case at bar, Plaintiff has failed to meet the standard required to bring claims against Stringer. Plaintiff's Complaint is a rambling collection of grievances and conclusory and baseless allegations which fails to differentiate the actions of individuals. Instead, it is replete with speculative – at best- conclusions. Plaintiff's "unadorned" accusations – mostly directed at to "Defendants" are insufficient to pass muster under the standard set down in *Iqbal, Twombly* and *Robbins* because they identify no facts upon which these conclusions were drawn. As such, Plaintiff has failed to state facts necessary for her Complaint to survive and this Court must dismiss.

## D. Plaintiff's Complaint Against Stringer In Her Official Capacity is Subject to Dismissal Under Fed. R. Civ. P. 12(b)(1) Due to Eleventh Amendment Sovereign Immunity

OKDHS (formerly known as the Department of Public Welfare and the Department of Institutions, Social and Rehabilitative Services) was created in 1936 by §2 of Article XXV of the Oklahoma Constitution for the purpose of "administering and carrying into execution" all laws enacted by the Oklahoma Legislature pursuant to §1 of Article XXV. *See* 56 O.S. §§162.1(a) and 162.1a. Section 2 also requires DHS to "perform such other duties as may from time to time be prescribed by law." *See generally City of Sand Springs v. Department of Public Welfare,* 608 P.2d 1139 (Okla. 1980). As an agency of the State of Oklahoma, DHS is unquestionably an arm of the State of Oklahoma. *See, for example, Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100 (1990); *Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Association,* 450 U.S. 147, 150 (1981) (per curiam); *Alabama v. Pugh*, 438 U.S. 781 (1978) (per curiam).

The foregoing in mind, the Eleventh Amendment provides:

> [t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

Towards this end,

> [t]he Supreme Court has interpreted the Eleventh Amendment to mean "States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). This prohibition encompasses suits against state agencies. *See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).

*Muscogee (Creek) Nation v. Oklahoma Tax Comm'n,* 611 F.3d 1222, 1227 (10th Cir. 2010).

Because States may not be sued in federal court absent their consent or specific and unequivocal Congressional mandate,

> [t]he Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state. *See Steadfast Ins. Co. v. Agric. Ins. Co.,* 507 F.3d 1250, 1252–53 (10th Cir.2007).

*Wagoner Cty. Rural Water Dist. No. 2 v. Grand River Dam Auth.,* 577 F.3d 1255, 1258 (10th Cir. 2009).

As for the possibility that OKDHS has unequivocally consented to suit herein by waiving its Eleventh Amendment sovereign immunity,

> [t]he Court will give effect to a State's waiver of Eleventh Amendment immunity "'only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.' " *306 Atascadero State Hospital, supra,* 473 U.S., at 239–240, 105 S.Ct., at 3145–3146 (quoting *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662 (1974) (internal quotation omitted)). A State does not waive its Eleventh Amendment immunity by consenting to suit only in its own courts, see, *e.g., Florida Dept. of Health and Rehabilitative Services v. Florida Nursing Home Assn.,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981) (*per curiam*), and "[t]hus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court.*" *Atascadero State Hospital, supra,* 473 U.S., at 241, 105 S.Ct., at 3146.

*Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305–06, 110 S. Ct. 1868, 1873, 109 L. Ed. 2d 264 (1990).

In this vein, it is clear that the State of Oklahoma and its agencies – including OKDHS – have not waived their Eleventh Amendment immunity and consented to actions in federal court such as this case. *See* 51 O.S. §152.1(B) (which expressly preserves the State of Oklahoma's Eleventh Amendment immunity). Likewise, Oklahoma's Eleventh Amendment immunity has not been negated by any unequivocal Congressional mandate subjecting DHS to suit herein for alleged civil rights violations,

> [i]t is well settled that neither 42 U.S.C. § 1981 nor § 1983 abrogate the Eleventh Amendment immunity of the states. *E.g., Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66–67, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (§ 1983); *Ellis v. Univ. of Kan. Med. Ctr.,* 163 F.3d 1186, 1196 (10th Cir.1998) (§§ 1981, 1983, and 1985).

Thus, Congress has not abrogated the defendants' Eleventh Amendment immunity under these provisions.

*LaFavre v. Kansas ex rel. Stovall,* 6 Fed. Appx. 799, 805 (10th Cir. 2001).

The foregoing in mind, Stringer – a State of Oklahoma attorney – in her official capacity unquestionably was and is acting as an official of/on behalf of the State of Oklahoma in enforcing the terms/requirements of the Oklahoma child support plan. As such, Plaintiff's claims against Stringer in her official capacity are jurisdictionally[12] barred pursuant to the plain language of the Eleventh Amendment and must be dismissed:

> [f]inally, when a suit seeks money damages against an official of a state agency, suing that official in his or her official capacity, then the "real party in interest" is the state, and the suit is barred by the Eleventh Amendment. *See Edelman*, 415 U.S. at 663.

*ANR Pipeline Co. v. LaFaver*, 150 F.3d 1178, 1187 (10th Cir. 1998).

### E. The Complaint Is Subject To Dismissal Under Fed. R. Civ. P. 12(b)(6) Because Defendants In Their Official Capacities Are Not Persons Under § 1983

Notwithstanding the Eleventh Amendment jurisdictional bar, the instant action also fails to state a claim upon which can be granted as Plaintiff cannot recover against Stringer in her official capacities under 42 U.S.C. § 1983. This is because § 1983 provides, in pertinent part, that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Ibid* (Emphasis supplied).

---

[12] "Because the State's assertion of Eleventh Amendment immunity challenges the subject matter jurisdiction of the district court, the issue must be resolved before a court may address the merits of [the] underlying . . . claim." <u>Martin v. Kansas</u>, 190 F.3d 1120, 1126 (10th Cir. 1999), <u>overruled on other grounds by Bd. of Trustees of Univ. of Ala. v. Garrett</u>, 531 U.S. 356, 148 L. Ed. 2d 866, 121 S. Ct. 955 (2001)."
*Joseph A. v. Ingram*, 275 F.3d 1253, 1259 (10th Cir. 2002)

In *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), the United States Supreme Court considered the issue of whether a State is a "person" under § 1983. After examining the express language, congressional purpose and legislative history of the statute, the Supreme Court concluded that States or other governmental entities that are considered "arms of the State" for Eleventh Amendment purposes (as well as state officials acting in their "official" capacities) are not "persons" under §1983. *Id.,* at 68-71; *see Howlett v. Rose*, 496 U.S. 356, 365 (1990) (holding that "*Will* establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under §1983 <u>in either federal court or state court</u>." (Emphasis added)); *Harris v. Champion*, 51 F.3rd 901, 905-06 (10th Cir. 1995).

As explained in the preceding proposition, OKDHS, its divisions, and officials are clearly an "arm" of the State of Oklahoma. Consequently, defendants – such as Stringer - in their official capacities are not "persons" within the meaning of §1983 and are not subject to suit under §1983 in either federal or state court.

### F. The *Rooker-Feldman* Doctrine Warrants Dismissal

It is beyond dispute that Plaintiff's claims arise from state court judgments[13] for child support. Resultantly, they are barred herein according to the *Rooker-Feldman* doctrine which holds that the federal courts (other than the United States Supreme Court) lack jurisdiction to adjudicate claims seeking review of state court judgments. *Feldman*, 460 U.S. at 483-484. *See Kiowa Indian Tribe of Oklahoma v. Hoover,* 150 F.3d 1163, 1169 (10th Cir. 1998) (holding that "federal review of state court judgments can be obtained only in the United States Supreme Court" under 28 U.S.C. §1257). Apropos for purposes here is the following from the Tenth Circuit:

[t]he Supreme Court has explained that *Rooker-Feldman* "is confined to cases . . .

---

[13] Both the actual child support order as well as past due child support that become judgments automatically by operation of law. *See, inter alia,* 43 O.S. § 137.

brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). "In other words, an element of the claim must be that the state court wrongfully entered its judgment." *Campbell*, 682 F.3d at 1283. Tso's Complaint seeks relief from alleged harms flowing from "acts of the state court." *Campbell*, 682 F.3d at 1285. That is, "the allegedly wrongful act that caused damage was the state-court order itself," and his claims "required a determination of the bona fides of the prior state-court judgment," *id.* at 1284. Though he complains of various acts taken by the defendants, whether through a RICO "conspiracy" or denial of just compensation, the only harms alleged involved deprivations that resulted from the state courts' orders. His claims are therefore barred by *Rooker-Feldman*.

*Tso v. Murray*, 760 F. App'x 564, 567-68 (10th Cir. 2019).

In the case at bar, Plaintiff's complaints are born of state court orders and her requested relief would require this court to impermissibly determine the "bona fides" of the orders. *Ibid.*

Further, the *Rooker-Feldman* doctrine bars consideration not only of issues <u>actually</u> presented to and decided by a state court, but also bars consideration of constitutional claims that are "'inextricably intertwined' with" issues ruled upon by a state court. *See id.* (quoting *Feldman*, 460 U.S. at 483-84, n.16). "A claim is inextricably intertwined if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995). "In other words, *Rooker-Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Id.* In this case it is inescapable that the events giving rise to Plaintiff's allegations arise from and are inextricably intertwined with a current state court case involving child support and/or would involve this court reviewing the decisions of a state court. Likewise, to the extent that Plaintiff seeks a declaratory judgment regarding child support, such would be barred by *Rooker-Feldman* as well:

> *Feldman* not only prohibited direct review of state judgments by lower federal courts, but it also prohibited those federal courts from issuing any declaratory relief

that is "inextricably intertwined" with the state court judgment. *Feldman,* 460 U.S. at 483–84 n. 16, 103 S.Ct. at 1315–16 n. 16; *Razatos,* 746 F.2d at 1433.

*Facio v. Jones*, 929 F.2d 541, 543 (10th Cir. 1991).

## G. *Younger* Abstention

It appears Plaintiff also seeks prospective relief regarding the continuing child support orders of the Tulsa County Case/CSS Case. While such relief may avoid the jurisdictional bar of the Eleventh Amendment, it cannot avoid non-discretionary application of *Younger* abstention herein:

> [i]n determining whether *Younger* abstention is appropriate, a court considers whether: "(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies." *Amanatullah v. Colorado Bd. of Med. Exam'rs,* 187 F.3d 1160, 1163 (10th Cir. 1999) (internal quotations omitted). Once these three conditions are met, Younger abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain. *See Seneca-Cayuga Tribe v. Oklahoma,* 874 F.2d 709, 711 (10th Cir. 1989).

*Crown Point I Ltd. Liab. Co. v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003).

In this case, there can be no doubt of the wholesale application of *Younger* abstention. First, it is beyond dispute that there is an ongoing child support case in Oklahoma state court which continues until the minor child reaches majority. *See, for example,* 43 O.S. § 112(E). Second, the care and support of Oklahoma's children by their parents is ineluctably one that involves important state interests. *See, for example, Moore v. Sims,* 442 U.S. 415, 435, 99 S. Ct. 2371, 60 L. Ed. 2d 994 (1979) (family relations are traditional area of state concern); *Morrow v. Winslow,* 94 F.3d 1386, 1397 (10th Cir. 1996) (state has interest in orderly conduct of proceedings in its courts in manner which protects interest of child and family), cert. denied, 520 U.S. 1143, 117 S. Ct. 1311, 137 L. Ed. 2d 475 (1997). Third, Oklahoma state courts have jurisdiction to entertain and decide

§1983 suits. *See Howlett v. Rose,* 496 U.S. 356, 367, 110 S. Ct. 2430, 2438 (1990). And this truism

rings loudly with regard to matters of state concern:

> [t]he seriousness of federal judicial interference with state civil functions has long
> been recognized by this Court. We have consistently required that when federal
> courts are confronted with requests for such relief, they should abide by standards
> of restraint that go well beyond those of private equity jurisprudence. For example,
> *Massachusetts State Grange* v. *Benton*, 272 U.S. 525 (1926), involved an effort to
> enjoin the operation of a state daylight savings act. Writing for the Court, Mr.
> Justice Holmes cited *Fenner* v. *Boykin, supra*, and emphasized a rule that "should
> be very strictly observed," 272 U.S., at 529, "that no injunction ought to issue
> against officers of a State clothed with authority to enforce the law in question,
> unless in a case reasonably free from doubt and when necessary to prevent great
> and irreparable injury." *Id.*, at 527.
>
> Although Mr. Justice Holmes was confronted with a bill seeking an injunction
> against state executive officers, rather than against state judicial proceedings,
> [*604] we think that the relevant considerations of federalism are of no less weight
> in the latter setting. If anything, they counsel more heavily toward federal restraint,
> since interference with a state judicial proceeding prevents the state not only from
> effectuating its substantive policies, but also from continuing to perform the
> separate function of providing a forum competent to vindicate any constitutional
> objections interposed against those policies. Such interference also results in
> duplicative legal proceedings, and can readily be interpreted "as reflecting
> negatively upon the state court's ability to enforce constitutional principles."

*Huffman v. Pursue, Ltd.,* 420 U.S. 592, 603-04, 95 S. Ct. 1200, 1208 (1975).

Moreover, Plaintiff has made no showing that Oklahoma state courts are somehow

insufficient for her claims – save the fact that she dislikes their rulings against her. However, that

is not the standard:

> Plaintiff argues that the Washington state court did not provide an adequate forum
> because it overruled his argument on timeliness grounds. See Plaintiff's Response
> (Doc. # 52) at 5. Plaintiff, however, has not shown that he did not have the
> opportunity to present his claim in state court at an earlier date. See Juidice v. Vail,
> 430 U.S. 327, 337, 97 S. Ct. 1211, 51 L. Ed. 2d 376 (1977) (Younger only requires
> that plaintiff be afforded opportunity to present federal claim in state proceedings;
> failure to avail himself of opportunity [*1216] does not mean state procedures were
> inadequate); World Famous Drinking Emporium, Inc. v. City of Tempe, 820 F.2d
> 1079, 1083 (9th Cir. 1987) (fact that plaintiff did not avail itself of opportunity to
> litigate constitutional claim in state forum does not demonstrate that state forum
> was inadequate); see also Spargo, 351 F.3d at 79 (relevant question is whether state

procedural remedies could provide relief sought, not whether they will provide remedy); Kirschner v. Klemons, 225 F.3d 227, 235 (2d Cir. 2000) (to establish inadequacy of state forum, plaintiff must show that state laws, procedures or practices prevent his effective interposition of federal contentions). Plaintiff has not satisfied his burden to show that state procedures did not afford him an adequate remedy. See Pennzoil, 481 U.S. at 15.

*Phillips v. Martin*, 535 F. Supp. 2d 1210, 1215-16 (D. Kan. 2008).

In this case the three *Younger* conditions are clearly met and this Court should abstain from exercising jurisdiction herein and dismiss this matter.

## H.    Stringer Did Not Violate Plaintiff's Civil Rights And Is Entitled To Absolute Immunity And/Or Qualified Immunity

To the extent that Plaintiff alleges Stringer, in her individual capacity, violated her civil rights such claims are without merit. It is clear Plaintiff was afforded due process by the Tulsa County case and the CSS case with regard to the lawful child support orders entered against her, as well her objections to such orders and their collection. Furthermore, to the extent Plaintiff alleges Stringer "somehow took Plaintiff's property without due process, such "taking" was nothing more than the enforcement of valid and continuing child support orders through income assignment/garnishment as mandated by state and federal law. *See* 12 O.S. § 1171.3(G)(1), 43 O.S. § 115(A), 56 O.S. § 237(C)(3). Moreover, assuming *arguendo* Stringer personally participated in the income assignment/garnishment required by law, Plaintiff's claims are without merit and should be dismissed due to quasi-judicial immunity:

[o]ther circuits have held that law enforcement officials executing a *facially valid court order* are protected by absolute quasi-judicial immunity. *See, e.g., Valdez v. Denver,* 878 F.2d 1285 (10th Cir.1989) (sheriff and sheriff's deputies took plaintiff into custody pursuant to judicial order); *Coverdell v. Department of Social & Health Servs.,* 834 F.2d 758 (9th Cir.1987) (child protective services worker removed newborn infant from hospital and placed her in temporary shelter pursuant to court order); *Henry v. Farmer City State Bank,* 808 F.2d 1228 (7th Cir.1986) (sheriff participated in execution of foreclosure sale pursuant to judgment of foreclosure); *Tymiak v. Omodt,* 676 F.2d 306 (8th Cir.1982) (per curiam) (sheriff evicted plaintiff from home in compliance with court order); *Fowler v. Alexander,*

478 F.2d 694 (4th Cir.1973) (sheriff and jailer confined plaintiff pursuant to a court order). "Enforcing a court order or judgment is intrinsically associated with a judicial proceeding." *Valdez,* 878 F.2d at 1288. These implementing individuals "are themselves 'integral parts of the judicial process.' " *Coverdell,* 834 F.2d at 765 (quoting *Briscoe v. LaHue,* 460 U.S. 325, 335, 103 S.Ct. 1108, 1116, 75 L.Ed.2d 96 (1983)).

The Tenth Circuit explained the rationale for absolute quasi-judicial immunity for law enforcement officials acting pursuant to court orders:

Absolute immunity for officials assigned to carry out a judge's orders is necessary to insure that such officials can perform their function without the need to secure permanent legal counsel. A lesser degree of immunity could impair the judicial process.
. . . .
Tension between trial judges and those officials responsible for enforcing their orders inevitably would result were there not absolute immunity for both . . . . The public interest demands strict adherence to judicial decrees. . . . Absolute immunity will ensure the public's trust and confidence in courts' ability to completely, effectively and finally adjudicate the controversies before them. *Valdez,* 878 F.2d at 1288, 1289.

*Roland v. Phillips*, 19 F.3d 552, 555–56 (11th Cir. 1994).

Plaintiff's formulation, again assuming *arguendo* Stringer's personal participation, would put Stringer n quite a quandary – either enforce facially valid court orders for child support as mandated by state and federal law but risk being sued by Plaintiff, or fail to enforce the support orders in derogation of law and in contempt of court orders. This is the precise scenario for which quasi-judicial immunity exists and why such claims against Stringer should be dismissed.

As discussed above and for which there is no dispute, Stringer is an attorney for the State of Oklahoma and her sole connection to Plaintiff is her work attendant to representing the State of Oklahoma relative to Plaintiff's child support case. This in mind, "[a]n absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of immunity." *Benavidez v. Howard,* 931 F.3d 1225, 1229 (10th Cir. 2019). Further, the Supreme Court has explained on multiple occasions that Congress "did not intend §1983 to abrogate immunities recognized at

common law by way of 'history and reason.'" *Id.* (citing *Buckley v. Fitzsimmons,* 509 U.S. 259, 268 (1993).

> In determining whether particular actions of government officials fit within a common-law tradition of absolute immunity, or only the more general standard of qualified immunity, we apply a functional approach, which looks to the nature of the function performed, not the identity of the actor who performed it. In other words, our approach concentrates on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful.

*Id.* at 1230 (internal citations omitted).

Where a public official participating in the judicial process is sued in collateral proceedings, the focus on the effective functioning of our justice system does not arise from a generalized concern about interfering with the official's duties. Rather, the focus arises from a specific concern about interfering with conduct closely related to the judicial process. *Id.* Absolute immunity may extend to various participants in a judicial proceeding, "including government attorneys." *Id.* The Supreme Court held in *Butz v. Economou,* 438 U.S. 478, 517 (1978) that "an agency attorney who arranges for the presentation of evidence on the record in the course of an adjudication is absolutely immune from suits based on the introduction of such evidence." *Id.* Absolute immunity is also available to attorneys defending the government in civil litigation because such immunity is necessary to achieve the independent judgment and vigorous advocacy vital to the effective functioning of our adversarial system of justice." *Id.* at 1230.

> The rule on absolute immunity as applied to government attorneys charged with violating §1983 may be stated generally as follows: A government attorney's administrative duties and those investigatory functions that do not closely relate to an advocate's preparation for judicial proceedings are not entitled to absolute immunity. Rather, absolute immunity shields those acts undertaken by a government attorney in preparation for judicial proceedings *and* which occur in the course of his or her role as an advocate for the government. *See Buckley*, 509 U.S. at 273; *Mink*, 482 F.3d at 1261 (reasoning that the

"determinative factor" in the absolute immunity inquiry is "advocacy"). *Id.* at 1231.

Plaintiff's Complaint, while a meandering diatribe, only refers to Stringer acting in her role as an attorney and advocate for the State of Oklahoma. Thus, under *Benavidez,* Stringer is entitled to absolute immunity.

Likewise, Stringer is entitled to Qualified Immunity from Plaintiff's claims because defendants who are sued in their individual capacities in an action under 42 U.S.C. § 1983 "are entitled to qualified immunity unless it is demonstrated that their conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known." *Murrell v. Sch. Dist. No. 1, Denver, Co*, 186 F.3d 1238, 1251 (10th Cir. 1999). Further, qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). There is a presumption in favor of immunity for public officials in their individual capacities. *Hidahl v. Gilpin County Dept. of Social Services*, 938 F.2d 1150 (10th Cir. 1991). Qualified immunity may be denied only "if, on an objective basis, it is *obvious* that *no reasonably competent officer* would have concluded" that the conduct was lawful at the time the defendant acted. *Malley* at 341.

Once the defense of qualified immunity has been raised, the burden shifts to the plaintiff to show that it is not applicable. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). This is a heavy two-part burden. *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001) ("the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity."). In order to prevail on her claim for relief under §1983, Plaintiff must establish that Stringer's conduct deprived her of a federal constitutional or statutory right and that the conduct complained of was committed under color of state law. *American*

*Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  State actors, such as Stringer, "may only be held liable under § 1983 for their own acts." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

In *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), the United States Supreme Court held that the doctrine of qualified immunity is designed to protect government officials from actions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The objective test adopted in *Harlow* to determine whether qualified immunity applies was intended to shield public officials from undue interference in the performance of their duties and to permit the defeat of insubstantial claims without the cost and disruption attendant to trial. *Powell v. Mikulecky*, 891 F.2d 1454, 1556 (10th Cir. 1989). As a result, qualified immunity offers "complete protection for government officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. at 818).

The United States Supreme Court's decision in *Harlow v. Fitzgerald* raises a presumption in favor of immunity for public officials acting in their individual capacities. *Hidahl v. Gilpin County Dept. of Social Services***,** 938 F.2d 1150, 1155 (10th Cir. 1991). The courts have held in this regard that there is a "strong presumption" that qualified immunity will apply and that state actors have properly discharged their official duties and to overcome that presumption the plaintiff must present specific allegations and clear evidence to the contrary. *See Gardenhire v. Schubert,* 205 F.3d 303, 313 (6th Cir. 2000); *see also Hidahl* at 1155. The United States Supreme Court has explained that qualified immunity may be denied only "if, on an objective basis, it is *obvious* that

*no reasonably competent officer* would have concluded" that the conduct was lawful at the time

the defendant acted. M*alley v. Briggs*, 475 U.S. at 341 (emphasis added).

In addition, the Supreme Court has explained that "clearly established law" must be

precise:

> [t]oday, it is again necessary to reiterate the longstanding principle that 'clearly
> established law' should not be defined 'at a high level of generality.' *Ashcroft v.*
> *al–Kidd,* 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). As this
> Court explained decades ago, the clearly established law must be 'particularized'
> to the facts of the case. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034,
> 97 L.Ed.2d 523 (1987). Otherwise, '[p]laintiffs would be able to convert the rule of
> qualified immunity ... into a rule of virtually unqualified liability simply by alleging
> violation of extremely abstract rights.' *Id.,* at 639, 107 S.Ct. 3034.

*White v. Pauly*, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017).

In the case at bar, even assuming *arguendo* personal participation by Stringer, it was and

is not clearly established that the enforcement of a facially valid child support order pursuant to

the mandates of federal and state law would be obvious to all reasonably competent actors as

unlawful. As such, Stringer is entitled to Qualified Immunity.

### I.  Plaintiff's Complaint Fails to State a Claim for Fraud

Fed. R. Civ. Proc. 9(b) requires allegations of fraud to be supported by statements setting forth

with particularity the circumstances constituting fraud. In other words,

> [a]t a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where
> and how' of the alleged fraud." *Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d
> 899, 903 (5th Cir.1997), and must "set forth the time, place, and contents of the false
> representation, the identity of the party making the false statements and the consequences
> thereof." *Koch,* 203 F.3d at 1236.

*U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah,* 472 F.3d 702, 726–27 (10th Cir.

2006).

In this case, it is unclear from the Complaint who Plaintiff alleges to have committed fraud, how it occurred, or when and where the fraud occurred. This plainly does not meet the standards prescribed by Rule 9(b) and Plaintiff's action for fraud must be dismissed.

### J.  Plaintiff's Complaint Fails to State a Claim for Perjury

As for this alleged crime,[14] there is no private cause of action available to Plaintiff for an alleged civil tort of perjury. First, as the Court has told us:

> [w]e have been quite reluctant to infer a private right of action from a criminal prohibition alone; in *Cort v. Ash,* 422 U.S. 66, 80, 95 S.Ct. 2080, 2089, 45 L.Ed.2d 26 (1975), for example, we refused to infer a private right of action from "a bare criminal statute." And we have not suggested that a private right of action exists for all injuries caused by violations of criminal prohibitions. See *Touche Ross,* 442 U.S., at 568, 99 S.Ct., at 2485 ("[Q]uestion of the existence of a statutory cause of action is, of course, one of statutory construction").

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 190, 114 S. Ct. 1439, 1455, 128 L. Ed. 2d 119 (1994).

Second,

> Oklahoma has adopted a modified version of the test set forth in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), to determine whether a legislative enactment authorizes a private cause of action. *Holbert v. Echeverria,* 1987 OK 99, ¶¶ 7–8, 744 P.2d 960, 963. The test states that a cause of action can be inferred from a public-law statute only if: (1) the plaintiff is one of the class for whose special benefit the statute was enacted; (2) there is some indication of legislative intent, explicit or implicit, suggesting that the legislature wanted to create a private remedy; and (3) implying a remedy for the plaintiff would be consistent with the underlying purposes of the legislative scheme. *Id.* The class for whose benefit the statute was enacted should be given a narrow construction. *Walker v. Chouteau Lime Co., Inc.,* 1993 OK 35, ¶ 3, 849 P.2d 1085, 1086.

*Raven Res., L.L.C. v. Legacy Bank*, 2009 OK CIV APP 101, ¶ 22, 229 P.3d 1273, 1281–82.

---

[14] Perjury is codified as a crime at 21 O.S. § 491 *et seq.* Further, while Plaintiff's scattershot allegations of other crimes and violations of federal or state statutes are not addressed to individual defendants and therefore subject to dismissal under *Twombly, Iqbal,* and progeny as described *supra,* out of an abundance of caution, Stringer adopts and incorporates by reference as if fully set forth herein, as per, *inter alia,* Fed. R. Civ P. 10(c), the arguments appearing in the motion to dismiss of Defendants Charles Schwab & Co., Inc. and Mary Johnmeyer at in pp. 8-10, 12-15.

In the case at bar, the class of persons to be protected from the criminal statutes concerning perjury and extortion is the entirety of Oklahoma's populace. But

> [t]o adopt a broad construction for establishing a class would render the first factor of *Cort* virtually meaningless. *Id.* When a statute is created for the benefit of the public at large, no special class is created simply because a remedy for injured persons is fashioned. *Id.*

*Raven Res., L.L.C. v. Legacy Bank*, 2009 OK CIV APP 101, ¶ 23, 229 P.3d 1273, 1282.

Because of this, it is beyond dispute that there exists no private cause of action for perjury and Plaintiff's claims should be dismissed.

### III. Conclusion

As set forth above, Plaintiff's Complaint suffers many infirmities, including a jurisdictional bar in the form of the Eleventh Amendment, the *Rooker-Feldman* doctrine, *Younger* abstention, and a failure to state a claim upon which any relief can be granted against Stringer as a matter of law. In addition, Stringer is entitled to immunity in her individual capacity. As such, Stringer submit this matter should be dismissed.

Respectfully submitted,

*s/ John K.F. Langford*
John K.F. Langford (OBA #21012)
Assistant General Counsel
Department of Human Services
P.O. Box 25352
Oklahoma City, OK 73125-0352
Telephone: (405) 521-3638
Facsimile: (405) 521-6816
E-mail: John.Langford@okdhs.org

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of July, 2024 the foregoing document was electronically

submitted to the Clerk of the Court using the ECF System for filing and a true and correct copy of

the foregoing was mailed, postage prepaid, to the following:

Pro Se Plaintiff:
Linh Tran Stephens
11063 S. Memorial Drive
Suite D, #235
Tulsa, OK 74133

Attorneys For Cierra Freeman:
Andrew Charles Jayne
Shelby N. Brunette

Attorneys for Charles Schwab & Co., Inc.
Mary Johnmeyer:
Tara A. LaClair
Mary H. Tolbert

*s/ John K.F. Langford*
John K.F. Langford

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **LINH TRAN STEPHENS, an individual,** | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) **Case No. 24 CV-216-JDR-CDL** |
| **v.** | ) |
| | ) |
| **CHILD SUPPORT SERVICES OF** | ) |
| **OKLAHOMA DEPARTMENT OF HUMAN** | ) |
| **SERVICES (CSS OF OKDHS), et. al.** | ) |
| | ) |
| **Defendants.** | ) |

### DEFENDANT CIERA FREEMAN'S
### MOTION FOR CONFESSION OF JUDGMENT OF HER MOTION TO DISMISS
### [DKT.15]

**COMES NOW** Defendant Ciera Freeman, pursuant to Local Civil Rule 7(e), and hereby move the Court to deem that Plaintiff Linh Tran Stephens has confessed Defendant Freeman's Motion to Dismiss [Dkt.15] by failing to timely respond in opposition and to enter an Order granting said Motion and dismissing this case as to these Defendants with prejudice to its refiling. In support of her Motion, Ciera Freeman would show the Court as follows:

Defendant filed her Motion to Dismiss Plaintiff's Complaint on July 1, 2024. [Dkt. 15]. A copy of that Motion and all other papers filed by this Defendant on that day were mailed to Plaintiff on July 1, 2024 to ensure timely receipt of the same. Local Civil Rule 7(e) provides that each party opposing a motion " shall file and serve upon all other parties a response within twenty-one (21) days from the date the motion was filed." Counting the 3 days allowed by Fed.R.Civ.P. 6(d), Plaintiff's Response to the Motion to Dismiss was therefore due to be filed on July 26, 2024. Plaintiff did not file a Response on or before that date. Nor did Plaintiff contact counsel for the Defendant via email, phone, or any other method to request an extension of the time to respond.

Though Plaintiff is proceeding *pro se* in this matter, she must follow the rules of procedure. *Risner v. Cheniere Energy,* 2023 WL 1781794 (E.D.Okla. 2/6/2023); *Nelson v. Price,* 17 F.3d 1276, 1277 (10th Cir. 1994). Where papers not filed electronically are filed by delivery to the court clerk, "delivered" has been interpreted to mean the date on which the clerk receives the document, not the date on which the document was mailed. *Id.* (citing *Kareem v. FDIC,* 811 F.Supp. 2d 279, 282 (D.D.C. Sept. 2011). Thus, even if she was mailing a Response to the Court Clerk for filing, Plaintiff was charged with making sure it was received by the Court Clerk on July 26, 2024. There is no indication that this was done.

Since Plaintiff has not timely responded to Defendant's Motion to Dismiss [Dkt. 15], she should be deemed to have confessed the same, and Defendant should be dismissed from this case pursuant to Local Civil Rule 7.19(e). Alternatively, Defendant would request that the Court consider her Motion to Dismiss to be at issue and ripe to be ruled upon on the merits, and for this Defendant to be dismissed from this case with prejudice to its refiling for the reasons stated in her Motion to Dismiss. *See Risner,* 2023 WL171794 at *2.

**WHEREFORE**, premises considered, Defendant Ciera Freeman respectfully requests that Plaintiff be deemed to have confessed her Motion to Dismiss [Dkt.15] or in the alternative for the Court to consider her Motion to be at issue and to rule on said Motion in her favor and enter an order dismissing Plaintiff's claims against her with prejudice, and for such other and further relief as is just.

2

Respectfully submitted,


 /s/Andrew C. Jayne
Andrew C. Jayne, OBA #19493
Shelby N. Brunette, OBA #33951
BAUM GLASS JAYNE CARWILE & PETERS
2000 Mid-Continent Tower
401 S. Boston Avenue
Tulsa, Oklahoma 74103
(T) 918/938.7944; (F) 918/938.7966
Email: ajayne@bgjclaw.com
        sbrunette@bgjclaw.com
ATTORNEY FOR DEFENDANT CIERA
FREEMAN


## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of July, 2024, I electronically transmitted the foregoing document to the Court Clerk using the ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of record in this case.

I further certify that the foregoing document was served via US Mail to Linh Tran Stephens at the following physical address:

| x mailed first class, U.S. mail, proper postage prepaid thereon □ transmitted via facsimile □ hand-delivered □ e-mailed □ mailed certified, return receipt no. _____ | Linh Tran Stephens, 11063 S. Memorial Dr. Ste. D #235 Tulsa, OK 74133-7366 (c)817/631-3223 Linhstephens7@gmail.com |
|---|---|


          /s/ Andrew C. Jayne

3

# United States District Court

## for the Northern District of Oklahoma

Case No. 24-cv-216-JDR-JFJ

LINH TRAN STEPHENS,

*Plaintiff,*

*versus*

CHILD SUPPORT SERVICES OF OKLAHOMA DEPARTMENT OF HUMAN SERVICES (CCS OF OKDHS), *et al.,*

*Defendants.*

## ORDER DENYING MOTION FOR CONFESSION OF JUDGMENT OF MOTION TO DISMISS

Defendant Ciera Freeman asks this Court to deem her motion to dismiss [Dkt. 15] confessed for failure by Plaintiff Linh Tran Stephens to respond timely. Dkt. 28. The Court DENIES Freeman's motion. Freeman asserts that she is entitled to have her motion granted under Local Civil Rule 7(e). Dkt. 28 at 1. But LCvR7-1(e) does not support an order confessing a dispositive motion. This Court's applicable rule, LCvR7-1(e), provides that the Court, in its discretion, can deem any "non-dispositive motion" confessed if not opposed within twenty-one days. Freeman's motion is a dispositive motion and therefore not eligible for dismissal under the local rule.

The Court notes that Stephens moved for additional time to respond [Dkt. 29] to the four pending motions, and the Court granted her motion [Dkt. 30]. Stephens must respond to the four pending motions by Friday, September 6, 2024.

No. 24-cv-216

DATED this ⎯⎯ day of August 2024.

JOHN D. RUSSELL
*United States District Judge*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

Linh Tran Stephens, an individual,      )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )      Case No.: CV-24-216-JDR-CDL
                                        )
Child Support Services of Oklahoma      )
Department of Human Services, (CSS      )
Of OKDHS), et al.,                      )
                                        )

## MOTION TO DISMISS OF DEFENDANT RENEE BANKS AND BRIEF IN SUPPORT

Defendant Renee Banks (hereinafter "Banks") respectfully moves the Court to dismiss this action pursuant to Rule 8, Rule 9, Rule 12(b)(1), and Rule 12(b)(6) of the Federal Rules of Civil Procedure for the reasons stated in the following brief.

### I. Statement Of The Case

This case arises from and is inextricably enmeshed with child support and other orders entered against Plaintiff in her *ongoing* Child Support Case No. OAH 23-00313-73 ("CSS Case") and Tulsa County Oklahoma District Court Case Number FD-2015-2228 ("Tulsa County Case"). This case traces its lineage to lawful child support orders, consistent with Plaintiff's legal duty to support her child, entered in Plaintiff's CSS Case and filed into the Tulsa County Case as per Oklahoma law.[1]

Part A of Subchapter IV of Chapter 7 of Title 42[2] of the United States Code requires every state to designate a single state agency to administer a statewide plan for child support services, and the State of Oklahoma has authorized OKDHS as that agency.[3] This plan provides that when OKDHS Child Support Services (CSS) are expended and child support payments are ordered by the court, such payments shall be paid to CSS by an immediate income assignment.[4] In Plaintiff's

---

[1] *See*, *inter alia,* 56 O.S. §§ 233, 234, 237, 237A, 237.8, 237.10, 238.3a, 240.1, 240.3.
[2] 42 U.S.C. §§601-619.
[3] 56 O.S. § 237(A).
[4] 12 O.S. § 1171.3(G)(1), 43 O.S. § 115 (A), 56 O.S. § 237(C)(3).

child support cases, CSS was and remains a necessary party because OKDHS continues to provide services to Plaintiff's minor child. Further, CSS was granted authorization to adopt rules for child support services.[5] In the underlying Tulsa County Case/CSS Case, OKDHS is handling the child support case. 12 O.S. § 1171.2 provides for garnishment that Plaintiff complains of:

> [a]ny person awarded custody of and support for a minor child by the district court or awarded periodic child support payments by the Department of Human Services, or the Department of Human Services on behalf of a recipient of Temporary Assistance for Needy Families or on behalf of a person not receiving Temporary Assistance for Needy Families **shall be entitled to proceed to collect any current child support and child support due and owing through** income assignment pursuant to the provisions of this section and Section 1171.3 of this title or Sections 240 through 240.3 of Title 56 of the Oklahoma Statutes **or by garnishment, if the minor child is in the custody and care of the person entitled to receive the child support or as is otherwise provided by the court or administrative order at the time of the income assignment or garnishment proceedings**.

*Ibid* at (A)(Emphasis supplied).

Oklahoma law also provides for disclosure of financial account information and concomitant levying to recover overdue child support obligations. *See, for example,* 56 O.S. §§ 240.22B, 240.22D, 240.22E.

Renee Banks is the Director for CSS within DHS. Though scantly mentioned in Plaintiff's Complaint, it appears Plaintiff takes issue with Banks's sending a Notice of Levy and Notice of Right to Garnish Federal Benefits to Plaintiff's banking institution. [Dkt. 2, pp. 8-9].

Plaintiff owes ongoing child support and a significant amount of past due child support (which are judgments as a matter of law[6]) which is what led to the levy and garnishment Plaintiff is angry about. Plaintiff has repeatedly disputed the lawful child support orders and lawful collection methods in court to no avail because she cannot present any evidence that the child

---

[5] 56 O.S. § 237(B)(2).
[6] *See, inter alia,* 43 O.S. § 137.

support orders and the collection of funds are remotely unlawful. Plaintiff filed the instant lawsuit which is a farrago of baseless allegations, *ipse dixit,* and immaterial averments. In this vein, Plaintiff alleges twelve "claims" which range from improbable to absurd.

## II. Argument and Authorities

### A.     Plaintiff Has Wholly Failed to Comply With Rule 8

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must "state their claims intelligibly so as to inform the defendants of the legal claims being asserted." *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007).  Specifically, Rule 8(a) instructs the plaintiff to plead for relief in a "short and plain statement," while Rule 8(d)(1) adds that each allegation in the complaint must be "simple, concise, and direct."  Fed. R. Civ. P. 8(a) and (d).  Accordingly, something "written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs" would violate Rule 8. *See Mann*, 477 F.3d at 1148.

If a case is unintelligible, a Court may dismiss the Complaint under Rule 8.  *See Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). Indeed, "[i]t is not the district court's job to stitch together cognizable claims" from deficient pleading.  *Mann*, 477 F.3d at 1148; *see also Garst* 328 F.3d at 378 ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud.").  As the Second Circuit noted, "unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2nd Cir. 1988).

In the case at bar, Plaintiff fails to comply with the Rule 8 requirements that her Complaint contain a "short and plain statement" of the claims and that it be "concise and direct."  In contrast,

Plaintiff's Complaint is composed of conclusory allegations and a string of citations lobbed into the air without a shred of information as to how any of her legal theories have been triggered. The Complaint is, for the most part, incoherent and indecipherable and includes paragraphs of Bible verses, federal criminal statutes, and copy-and-paste excerpts of emails.  Because Plaintiff's Complaint does not comply with Rule 8, this Court should dismiss it.

**B.  Plaintiff's Complaint Against Banks In Her Official Capacity is Subject to Dismissal Under Fed. R. Civ. P. 12(b)(1) Due to Eleventh Amendment Sovereign Immunity**

DHS was created in 1936 by §2 of Article XXV of the Oklahoma Constitution for the purpose of "administering and carrying into execution" all laws enacted by the Oklahoma Legislature pursuant to §1 of Article XXV. *See* 56 O.S. §§162.1(a) and 162.1a. Section 2 also requires DHS to "perform such other duties as may from time to time be prescribed by law." *See generally City of Sand Springs v. Department of Public Welfare,* 608 P.2d 1139 (Okla. 1980). As an agency of the State of Oklahoma, DHS is unquestionably an arm of the State of Oklahoma. *See, for example, Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100 (1990).

The foregoing in mind, the Eleventh Amendment provides:

[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

Towards this end,

[t]he Supreme Court has interpreted the Eleventh Amendment to mean "States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). This prohibition encompasses suits against state agencies. *See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).

*Muscogee (Creek) Nation v. Oklahoma Tax Comm'n,* 611 F.3d 1222, 1227 (10th Cir. 2010).

Because States may not be sued in federal court absent their consent or specific and unequivocal Congressional mandate,

> [t]he Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state. *See Steadfast Ins. Co. v. Agric. Ins. Co.,* 507 F.3d 1250, 1252–53 (10th Cir.2007).

*Wagoner Cty. Rural Water Dist. No. 2 v. Grand River Dam Auth.,* 577 F.3d 1255, 1258 (10th Cir. 2009).

The State of Oklahoma and its agencies – including OKDHS – have not waived their Eleventh Amendment immunity and consented to actions in federal court such as this case. *See* 51 O.S. §152.1(B) (which expressly preserves the State of Oklahoma's Eleventh Amendment immunity). Likewise, Oklahoma's Eleventh Amendment immunity has not been negated by any Congressional mandate subjecting DHS to suit herein for alleged civil rights violations,

> [i]t is well settled that neither 42 U.S.C. § 1981 nor § 1983 abrogate the Eleventh Amendment immunity of the states. *E.g., Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66–67, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (§ 1983); *Ellis v. Univ. of Kan. Med. Ctr.,* 163 F.3d 1186, 1196 (10th Cir.1998) (§§ 1981, 1983, and 1985). Thus, Congress has not abrogated the defendants' Eleventh Amendment immunity under these provisions.

*LaFavre v. Kansas ex rel. Stovall,* 6 Fed. Appx. 799, 805 (10th Cir. 2001).

Banks – a State of Oklahoma employee – in her official capacity unquestionably was and is acting as an official of/on behalf of the State in enforcing the terms of the Oklahoma child support plan. As such, Plaintiff's claims against Banks in her official capacity are jurisdictionally[7] barred pursuant to the plain language of the Eleventh Amendment and must be dismissed.

---

[7] "Because the State's assertion of Eleventh Amendment immunity challenges the subject matter jurisdiction of the district court, the issue must be resolved before a court may address the merits of [the] underlying . . . claim." <u>Martin v. Kansas</u>, 190 F.3d 1120, 1126 (10th Cir. 1999), <u>overruled on other grounds by Bd. of Trustees of Univ. of Ala. v. Garrett</u>, 531 U.S. 356, 148 L. Ed. 2d 866, 121 S. Ct. 955 (2001)."
*Joseph A. v. Ingram*, 275 F.3d 1253, 1259 (10th Cir. 2002)

## C. The *Rooker-Feldman* Doctrine Warrants Dismissal

It is beyond dispute that Plaintiff's claims arise from state court judgments[8] for child support. Resultantly, they are barred herein according to the *Rooker-Feldman* doctrine which holds that the federal courts (other than the United States Supreme Court) lack jurisdiction to adjudicate claims seeking review of state court judgments. *Feldman*, 460 U.S. at 483-484. *See Kiowa Indian Tribe of Oklahoma v. Hoover,* 150 F.3d 1163, 1169 (10th Cir. 1998) (holding that "federal review of state court judgments can be obtained only in the United States Supreme Court" under 28 U.S.C. §1257). Apropos for purposes here is the following from the Tenth Circuit:

> [t]he Supreme Court has explained that *Rooker-Feldman* "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). "In other words, an element of the claim must be that the state court wrongfully entered its judgment." *Campbell*, 682 F.3d at 1283. Tso's Complaint seeks relief from alleged harms flowing from "acts of the state court." *Campbell*, 682 F.3d at 1285. That is, "the allegedly wrongful act that caused damage was the state-court order itself," and his claims "required a determination of the bona fides of the prior state-court judgment," *id.* at 1284. Though he complains of various acts taken by the defendants, whether through a RICO "conspiracy" or denial of just compensation, the only harms alleged involved deprivations that resulted from the state courts' orders. His claims are therefore barred by *Rooker-Feldman*.

*Tso v. Murray*, 760 F. App'x 564, 567-68 (10th Cir. 2019).

In the case at bar, Plaintiff's complaints are borne of state court orders and her requested relief would require this court to impermissibly determine the "bona fides" of the orders. *Ibid.*

Further, the *Rooker-Feldman* doctrine bars consideration not only of issues *actually* presented to and decided by a state court, but also bars consideration of constitutional claims that are "'inextricably intertwined' with" issues ruled upon by a state court. *See id.* (quoting *Feldman,*

---

[8] Both the actual child support order as well as past due child support that become judgments automatically by operation of law. *See, inter alia,* 43 O.S. § 137.

460 U.S. at 483-84, n.16). "A claim is inextricably intertwined if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995). "In other words, *Rooker-Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Id.* In this case, the events giving rise to Plaintiff's allegations arise from and are inextricably intertwined with a current state court case involving child support and/or would involve this court reviewing the decisions of a state court. Likewise, to the extent that Plaintiff seeks a declaratory judgment regarding child support, such would be barred by *Rooker-Feldman* as well:

> *Feldman* not only prohibited direct review of state judgments by lower federal courts, but it also prohibited those federal courts from issuing any declaratory relief that is "inextricably intertwined" with the state court judgment. *Feldman,* 460 U.S. at 483–84 n. 16, 103 S.Ct. at 1315–16 n. 16; *Razatos,* 746 F.2d at 1433.

*Facio v. Jones*, 929 F.2d 541, 543 (10th Cir. 1991).

## D. *Younger* Abstention

It appears Plaintiff also seeks prospective relief regarding the continuing child support orders of the Tulsa County Case/CSS Case. While such relief may avoid the jurisdictional bar of the Eleventh Amendment, it cannot avoid non-discretionary application of *Younger* abstention herein:

> [i]n determining whether *Younger* abstention is appropriate, a court considers whether: "(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies." *Amanatullah v. Colorado Bd. of Med. Exam'rs,* 187 F.3d 1160, 1163 (10th Cir. 1999) (internal quotations omitted). Once these three conditions are met, Younger abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain. *See Seneca-Cayuga Tribe v. Oklahoma,* 874 F.2d 709, 711 (10th Cir. 1989).

*Crown Point I Ltd. Liab. Co. v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003).

In this case, there can be no doubt of the wholesale application of *Younger* abstention. First, there is an ongoing child support case in Oklahoma state court which continues until the minor child reaches majority. *See, for example,* 43 O.S. § 112(E). Second, the care and support of Oklahoma's children by their parents is one that involves important state interests. *See, for example, Moore v. Sims,* 442 U.S. 415, 435, 99 S. Ct. 2371, 60 L. Ed. 2d 994 (1979) (family relations are traditional area of state concern). Third, Oklahoma state courts have jurisdiction to entertain and decide §1983 suits. *See Howlett v. Rose,* 496 U.S. 356, 367, 110 S. Ct. 2430, 2438 (1990). And this truism rings loudly with regard to matters of state concern:

> [t]he seriousness of federal judicial interference with state civil functions has long been recognized by this Court. We have consistently required that when federal courts are confronted with requests for such relief, they should abide by standards of restraint that go well beyond those of private equity jurisprudence. For example, *Massachusetts State Grange* v. *Benton*, 272 U.S. 525 (1926), involved an effort to enjoin the operation of a state daylight savings act. Writing for the Court, Mr. Justice Holmes cited *Fenner* v. *Boykin, supra*, and emphasized a rule that "should be very strictly observed," 272 U.S., at 529, "that no injunction ought to issue against officers of a State clothed with authority to enforce the law in question, unless in a case reasonably free from doubt and when necessary to prevent great and irreparable injury." *Id*., at 527.

*Huffman v. Pursue, Ltd.,* 420 U.S. 592, 603-04, 95 S. Ct. 1200, 1208 (1975).

Moreover, Plaintiff has made no showing that Oklahoma state courts are somehow insufficient for her claims – save the fact that she dislikes their rulings against her. However, that is not the standard:

> Plaintiff argues that the Washington state court did not provide an adequate forum because it overruled his argument on timeliness grounds. See Plaintiff's Response (Doc. # 52) at 5. Plaintiff, however, has not shown that he did not have the opportunity to present his claim in state court at an earlier date. See Juidice v. Vail, 430 U.S. 327, 337, 97 S. Ct. 1211, 51 L. Ed. 2d 376 (1977) (Younger only requires that plaintiff be afforded opportunity to present federal claim in state proceedings; failure to avail himself of opportunity [*1216] does not mean state procedures were

inadequate); <u>World Famous Drinking Emporium, Inc. v. City of Tempe,</u> 820 F.2d
1079, 1083 (9th Cir. 1987) (fact that plaintiff did not avail itself of opportunity to
litigate constitutional claim in state forum does not demonstrate that state forum
was inadequate); <u>see also Spargo</u>, 351 F.3d at 79 (relevant question is whether state
procedural remedies could provide relief sought, not whether they will provide
remedy); <u>Kirschner v. Klemons,</u> 225 F.3d 227, 235 (2d Cir. 2000) (to establish
inadequacy of state forum, plaintiff must show that state laws, procedures or
practices prevent his effective interposition of federal contentions). Plaintiff has not
satisfied his burden to show that state procedures did not afford him an adequate
remedy. <u>See Pennzoil,</u> 481 U.S. at 15.

*Phillips v. Martin*, 535 F. Supp. 2d 1210, 1215-16 (D. Kan. 2008).

In this case the three *Younger* conditions are clearly met and this Court should abstain from
exercising jurisdiction herein and dismiss this matter.

### E. Standard for Dismissal for Failure to State a Claim

Banks also contends Plaintiff has failed to state a claim for relief. The standard to be
followed by a district court when considering a motion to dismiss under Rule 12(b)(6) was
summarized by the United States Court of Appeals for the Tenth Circuit in *Robbins v. State of
Oklahoma, ex rel. Dept. of Human Services*, 519 F.3d 1242 (10th Cir. 2008), as follows:

> "[t]o withstand a motion to dismiss, a complaint must contain enough
> allegations of fact "to state a claim to relief that is plausible on its face." [*Bell
> Atlantic Corp. v. Twombly*,] 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d
> 929 (2007).  Under this revised standard, as we explained in *Ridge at Red
> Hawk, L.L.C. v. Schneider*:
>
>> the mere metaphysical possibility that <u>some</u> plaintiff could prove
>> <u>some</u> set of facts in support of the pleaded claims is insufficient; the
>> complaint must give the court reason to believe that <u>this</u> plaintiff has
>> a reasonable likelihood of mustering factual support for <u>these</u>
>> claims.

493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).  The burden is on the plaintiff to
frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled
to relief.  *Twombly*, *127 S.Ct. at 1965*. Further, "[f]actual allegations must be enough to raise a
right to relief above the speculative level." *Ibid* at 1247.

In other words, a plaintiff must nudge her "claims across the line from conceivable to plausible[.]" *Twombly* at 570. Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal* at 679. The Tenth Circuit in *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008), explained that "plausibility" refers to the scope of the allegations in the complaint; "if they are so general that they encompass a wide swath of conduct, much of it innocent" or if the allegations are no more than "labels and conclusions" or a mere "formulaic recitation of the elements of a cause of action" then such allegations are not sufficient to place defendants on notice "of the actual grounds of the claim" against them. Further, legal conclusions and threadbare recitals cannot be disguised as facts to create plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009). The trial court should insist that the plaintiff put forward specific, non-conclusory factual allegations, to assist the court in determining whether the complaint is plausible. *Robbins* at 1249. "Plausibility" refers to the scope of the allegations in the complaint; if they are "so general that they encompass a wide swath of conduct, much of it innocent" or if the allegations are no more than "labels and conclusions" or "a mere formulaic recitation of the elements of a cause of action" then such allegations may be inadequate to overcome a motion to dismiss. *Id.* at 1247-48**.** In large measure then, allegations which simply make "…unadorned, the-defendant-unlawfully-harmed-me" accusations fail to pass muster. *Ashcroft v. Iqbal*, 556 U.S. at 678.

In the case at bar, Plaintiff has failed to meet the standard required to bring claims against Banks. Plaintiff's Complaint is a rambling collection of grievances and conclusory allegations which fails to differentiate the actions of individuals. Plaintiff's "unadorned" accusations – mostly directed at "Defendants" are insufficient to pass muster under the standard set down in *Iqbal,*

*Twombly* and *Robbins* because they identify no facts upon which these conclusions were drawn. As such, Plaintiff's Complaint must be dismissed.

### F.   Banks Did Not Violate Plaintiff's Civil Rights And Is Entitled To Absolute Immunity And/Or Qualified Immunity

To the extent that Plaintiff alleges Banks, in her individual capacity, violated her civil rights such claims are without merit. It is clear Plaintiff was afforded due process by the Tulsa County case and the CSS case with regard to the lawful child support orders entered against her, as well her objections to such orders and their collection. Furthermore, to the extent Plaintiff alleges Banks somehow took Plaintiff's property without due process, such "taking" was nothing more than the enforcement of valid and continuing child support orders through income assignment/garnishment as mandated by state and federal law. *See* 12 O.S. § 1171.3(G)(1), 43 O.S. § 115(A), 56 O.S. § 237(C)(3). Moreover, assuming *arguendo* Banks personally participated in the income assignment/garnishment required by law, Plaintiff's claims are without merit and should be dismissed due to quasi-judicial immunity:

> [o]ther circuits have held that law enforcement officials executing a *facially valid court order* are protected by absolute quasi-judicial immunity. *See, e.g., Valdez v. Denver,* 878 F.2d 1285 (10th Cir.1989) (sheriff and sheriff's deputies took plaintiff into custody pursuant to judicial order); *Coverdell v. Department of Social & Health Servs.,* 834 F.2d 758 (9th Cir.1987) (child protective services worker removed newborn infant from hospital and placed her in temporary shelter pursuant to court order); *Henry v. Farmer City State Bank,* 808 F.2d 1228 (7th Cir.1986) (sheriff participated in execution of foreclosure sale pursuant to judgment of foreclosure); *Tymiak v. Omodt,* 676 F.2d 306 (8th Cir.1982) (per curiam) (sheriff evicted plaintiff from home in compliance with court order); *Fowler v. Alexander,* 478 F.2d 694 (4th Cir.1973) (sheriff and jailer confined plaintiff pursuant to a court order). "Enforcing a court order or judgment is intrinsically associated with a judicial proceeding." *Valdez,* 878 F.2d at 1288. These implementing individuals "are themselves 'integral parts of the judicial process.' " *Coverdell,* 834 F.2d at 765 (quoting *Briscoe v. LaHue,* 460 U.S. 325, 335, 103 S.Ct. 1108, 1116, 75 L.Ed.2d 96 (1983)).

> The Tenth Circuit explained the rationale for absolute quasi-judicial immunity for law enforcement officials acting pursuant to court orders:

> Absolute immunity for officials assigned to carry out a judge's orders is necessary to insure that such officials can perform their function without the need to secure permanent legal counsel. A lesser degree of immunity could impair the judicial process.
> . . . .
> Tension between trial judges and those officials responsible for enforcing their orders inevitably would result were there not absolute immunity for both . . . . The public interest demands strict adherence to judicial decrees. . . . Absolute immunity will ensure the public's trust and confidence in courts' ability to completely, effectively and finally adjudicate the controversies before them. *Valdez,* 878 F.2d at 1288, 1289.

*Roland v. Phillips*, 19 F.3d 552, 555–56 (11th Cir. 1994).

Plaintiff's formulation would put Banks in quite a quandary – either enforce facially valid court orders for child support as mandated by state and federal law but risk being sued by Plaintiff, or fail to enforce the support orders in derogation of law and in contempt of court orders. This is the precise scenario for which quasi-judicial immunity exists and why such claims against Banks should be dismissed.

As discussed above and for which there is no dispute, Banks is an employee for the State of Oklahoma and his sole connection to Plaintiff is her work attendant to Plaintiff's child support case. "[A]bsolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of immunity." *Benavidez v. Howard,* 931 F.3d 1225, 1229 (10th Cir. 2019). Further, the Supreme Court has explained on multiple occasions that Congress "did not intend §1983 to abrogate immunities recognized at common law by way of 'history and reason.'" *Id.* (citing *Buckley v. Fitzsimmons,* 509 U.S. 259, 268 (1993).

> In determining whether particular actions of government officials fit within a common-law tradition of absolute immunity, or only the more general standard of qualified immunity, we apply a functional approach, which looks to the nature of the function performed, not the identity of the actor who performed it. In other words, our approach concentrates on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful.

*Id.* at 1230 (internal citations omitted).

Plaintiff's Complaint only refers to Banks acting in his role for the State of Oklahoma. Thus, under *Benavidez,* Banks is entitled to absolute immunity.

Likewise, Banks is entitled to Qualified Immunity from Plaintiff's claims because defendants who are sued in their individual capacities in an action under 42 U.S.C. § 1983 "are entitled to qualified immunity unless it is demonstrated that their conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known." *Murrell v. Sch. Dist. No. 1, Denver, Co*, 186 F.3d 1238, 1251 (10th Cir. 1999). Further, qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). There is a presumption in favor of immunity for public officials in their individual capacities. *Hidahl v. Gilpin County Dept. of Social Services*, 938 F.2d 1150 (10th Cir. 1991). Qualified immunity may be denied only "if, on an objective basis, it is *obvious* that *no reasonably competent officer* would have concluded" that the conduct was lawful at the time the defendant acted. *Malley* at 341 (emphasis added).

Once the defense of qualified immunity has been raised, the burden shifts to the plaintiff to show that it is not applicable. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). This is a heavy two-part burden. *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001). In order to prevail on her claim for relief under §1983, Plaintiff must establish that Banks's conduct deprived her of a federal constitutional or statutory right and that the conduct complained of was committed under color of state law. *American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). State actors, such as Banks, "may only be held liable under § 1983 for their own acts." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

In *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), the Supreme Court held that the doctrine of qualified immunity is designed to protect government officials from actions "insofar

as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The objective test adopted in *Harlow* to determine whether qualified immunity applies was intended to shield public officials from undue interference in the performance of their duties and to permit the defeat of insubstantial claims without the cost and disruption attendant to trial. *Powell v. Mikulecky*, 891 F.2d 1454, 1556 (10th Cir. 1989). As a result, qualified immunity offers "complete protection for government officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. at 818).

The United States Supreme Court's decision in *Harlow v. Fitzgerald* raises a presumption in favor of immunity for public officials acting in their individual capacities. *Hidahl v. Gilpin County Dept. of Social Services*, 938 F.2d 1150, 1155 (10th Cir. 1991). The courts have held in this regard that there is a "strong presumption" that qualified immunity will apply and that state actors have properly discharged their official duties and to overcome that presumption the plaintiff must present specific allegations and clear evidence to the contrary. *See Gardenhire v. Schubert*, 205 F.3d 303, 313 (6th Cir. 2000); *see also Hidahl* at 1155.

In addition, the Supreme Court has explained that "clearly established law" must be precise:

> [t]oday, it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.' *Ashcroft v. al–Kidd,* 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.' *Id.,* at 639, 107 S.Ct. 3034.

*White v. Pauly*, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017).

In the case at bar, even assuming *arguendo* personal participation by Banks, it was and is not clearly established that the enforcement of a facially valid child support order pursuant to the mandates of federal and state law would be obvious to all reasonably competent actors as unlawful. As such, Banks is entitled to Qualified Immunity.

### III. Conclusion

As set forth above, Plaintiff's Complaint suffers many infirmities, including a jurisdictional bar in the form of the Eleventh Amendment, the *Rooker-Feldman* doctrine, *Younger* abstention, and a failure to state a claim upon which any relief can be granted against Banks as a matter of law. In addition, Banks is entitled to immunity in her individual capacity. Plaintiff's Complaint must be dismissed.

Respectfully submitted,

*s/ Daniel J. Card*
Daniel J. Card (OBA #30034)
Assistant General Counsel
Department of Human Services
P.O. Box 25352
Oklahoma City, OK 73125-0352
Telephone: (405) 521-3638
Facsimile: (405) 521-6816
E-mail: Daniel.Card@okdhs.org

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of August, 2024 the foregoing document was electronically submitted to the Clerk of the Court using the ECF System for filing and a true and correct copy of the foregoing was mailed, postage prepaid, to the following:

Pro Se Plaintiff:
Linh Tran Stephens
11063 S. Memorial Drive
Suite D, #235
Tulsa, OK 74133

Attorneys For Cierra Freeman:
Andrew Charles Jayne
Shelby N. Brunette

Attorneys for Charles Schwab & Co., Inc.
Mary Johnmeyer:
Tara A. LaClair
Mary H. Tolbert

*s/ Daniel J. Card*
Daniel J. Card

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| Linh Tran Stephens, an individual, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.: CV-24-216-JDR-CDL** |
| | ) | |
| Child Support Services of Oklahoma | ) | |
| Department of Human Services, (CSS | ) | |
| Of OKDHS), et al., | ) | |
| | ) | |

## MOTION TO DISMISS OF DEFENDANT JASON HOENSHELL
## AND BRIEF IN SUPPORT

**John K.F. Langford (OBA #21012)**
**Assistant General Counsel**
**Department of Human Services**
**P.O. Box 25352**
**Oklahoma City, OK  73125-0352**
**Telephone:  (405) 521-3638**
**E-mail: John.Langford@okdhs.org**

*Attorney for Defendant Hoenshell*                    *August 16, 2024*

<u>**TABLE OF CONTENTS**</u>

**Page**

TABLE OF AUTHORITIES .............................................................................. ii

MOTION TO DISMISS AND BRIEF IN SUPPORT ................................... 1

I.   STATEMENT OF THE CASE ............................................................. 1

II.  ARGUMENT AND AUTHORITIES ................................................... 4

    A.   Plaintiff Has Wholly Failed to Comply With Rule 8 .............. 4

    B.   Motion to Dismiss Standard for Lack of Subject Matter
       Jurisdiction ..................................................................... 5

    C.   Standard for Dismissal for Failure to State a Claim ............. 6

    D.   Plaintiff's Complaint Against Hoenshell In His Official Capacity
       Is Subject to Dismissal Under Fed. R. Civ. P. 12(b)(1)
       Due to Eleventh Amendment Sovereign Immunity ..................... 8

    E.   The Complaint Is Subject To Dismissal Under
       Under Fed. R. Civ. P. 12(b)(6) Because Defendants In Their Official
       Capacities Are Not Persons Under § 1983 ............................. 10

    F.   The *Rooker-Feldman* Doctrine Warrants Dismissal ............... 11

    G.   *Younger* Abstention ..................................................... 13

    H.   Hoenshell Did Not Violate Plaintiff's Civil Rights And Is Entitled
       To Absolute Immunity And/Or Qualified Immunity ............... 15

    I.   Plaintiff's Complaint Fails to State a Claim for Fraud ......... 20

III. CONCLUSION ................................................................... 21

i

## TABLE OF AUTHORITIES

**Page**

## CASES

### Federal

*ANR Pipeline Co. v. LaFaver*,
  150 F.3d 1178, 1187 (10th Cir. 1998) .................................................................10

*Alabama v. Pugh*,
  438 U.S. 781 (1978) ..............................................................................................8

*American Manufacturers Mutual Ins. Co. v. Sullivan*,
  526 U.S. 40, 49-50 (1999) ...................................................................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662, 663–64 (2009)............................................................................6, 7

*Benavidez v. Howard*,
  931 F.3d 1225, 1229 (10th Cir. 2019) ...........................................................17, 18

*Butz v. Economou*,
  438 U.S. 478, 517 (1978)......................................................................................17

*Charchenko v. City of Stillwater*,
  47 F.3d 981, 983 (8th Cir. 1995) .........................................................................12

*Ciralsky v. C.I.A.*,
  355 F.3d 661, 671 (D.C. Cir. 2004) .......................................................................5

*Crown Point I Ltd. Liab. Co. v. Intermountain Rural Elec. Ass'n*,
  319 F.3d 1211, 1215 (10th Cir. 2003). .................................................................13

*Facio v. Jones*,
  929 F.2d 541, 543 (10th Cir. 1991) ......................................................................13

*Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Association*,
  450 U.S. 147, 150 (1981)........................................................................................8

*Gardenhire v. Schubert*,
  205 F.3d 303, 313 (6th Cir. 2000) ..................................................................19, 20

*Garst v. Lockheed-Martin Corp.*,
    328 F.3d 374, 378 (7th Cir. 2003) ............................................................4

*Gross v. Pirtle*,
    245 F.3d 1151, 1156 (10th Cir. 2001) .....................................................18

*Harlow v. Fitzgerald*,
    457 U.S. 800, 818 (1982)..........................................................................19

*Harris v. Champion*,
    51 F.3rd 901, 905-06 (10th Cir. 1995) ....................................................11

*Hidahl v. Gilpin County Dept. of Social Services*,
    938 F.2d 1150 (10th Cir. 1991) ...................................................18, 19, 20

*Holt v. U.S.*,
    46 F.3d 1000, 1002 (10th Cir. 1995) ..........................................................5

*Howlett v. Rose*,
    496 U.S. 356, 365 (1990)...................................................................11, 14

*Huffman v. Pursue, Ltd.*,
    420 U.S. 592, 603-04, 95 S. Ct. 1200, 1208 (1975) ...............................14

*Joseph A. v. Ingram*,
    275 F.3d 1253, 1259 (10th Cir. 2002) .....................................................10

*Kiowa Indian Tribe of Oklahoma v. Hoover*,
    150 F.3d 1163, 1169 (10th Cir. 1998) .....................................................12

*LaFavre v. Kansas ex rel. Stovall*,
    *6 Fed. Appx. 799, 805 (10th Cir. 2001)* ................................................10

*Malley v. Briggs*,
    475 U.S. 335, 341 (1986)....................................................................18, 20

*Mann v. Boatright*,
    477 F.3d 1140, 1148 (10th Cir. 2007) ....................................................4, 5

*Martin v. Kansas*, 190 F.3d 1120, 1126 (10th Cir. 1999),
    overruled on other grounds by *Bd. of Trustees of Univ. of Ala. v. Garrett*,
    531 U.S. 356, 148 L. Ed. 2d 866, 121 S. Ct. 955 (2001).........................10

*Medina v. Cram*,
    252 F.3d 1124, 1128 (10th Cir. 2001) .....................................................18

*Miller v. Kemp, No. 11-CV-0530-CVE-FHM,*
  2012 U.S. Dist. LEXIS 62529, at *8 (N.D. Okla., May 4, 2012) ................................ 7

*Morrow v. Winslow,*
  94 F.3d 1386, 1397 (10th Cir. 1996) ...................................... 14

*Moore v. Sims,*
  442 U.S. 415, 435, 99 S. Ct. 2371, 60 L. Ed. 2d 994 (1979) ........................... 13, 14

*Murrell v. Sch. Dist. No. 1,*
  *Denver, Co*, 186 F.3d 1238, 1251 (10th Cir. 1999) ................................ 18

*Muscogee (Creek) Nation v. Oklahoma Tax Comm'n,*
  611 F.3d 1222, 1227 (10th Cir. 2010) ..................................... 9

*Ohio Nat'l Life Ins. Co. v. U.S.,*
  922 F.2d 320, 325 (6th Cir. 1990) ....................................... 5

*Pennhurst State School & Hospital v. Halderman,*
  465 U.S. 89, 100 (1990) ........................................... 8

*Port Auth. Trans-Hudson Corp. v. Feeney,*
  495 U.S. 299, 305–06, 110 S. Ct. 1868, 1873, 109 L. Ed. 2d 264 (1990) ................ 9

*Powell v. Mikulecky,*
  891 F.2d 1454, 1556 (10th Cir. 1989) ..................................... 19

*Robbins v. Oklahoma,*
  519 F.3d 1242 (10th Cir. 2008) ........................................ 6, 7, 19

*Roland v. Phillips,*
  19 F.3d 552, 555–56 (11th Cir. 1994) ..................................... 16

*Salahuddin v. Cuomo,*
  861 F.2d 40, 42 (2nd Cir. 1988) ....................................... 4

*Thomas v. Roberts,*
  261 F.3d 1160, 1170 (11th Cir. 2001) ..................................... 19

*Tso v. Murray,*
  760 F. App'x 564, 567-68 (10th Cir. 2019) .................................. 12

*U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah,*
  472 F.3d 702, 726–27 (10th Cir. 2006) .................................... 20

iv

*Valencia v. Bd. of Regents,*
 No. CV 17-00509 RB/SCY, 2017 WL 4325766, at *1–2 (D.N.M. Sept. 26, 2017) .................5

*Wagoner Cty. Rural Water Dist. No. 2 v. Grand River Dam Auth.,*
 *577 F.3d 1255, 1258 (10th Cir. 2009).* ........................................................................9

*White v. Pauly,*
 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017) ......................................................20

*Will v. Michigan Department of State Police,*
 491 U.S. 58 (1989) ................................................................................................11

## **State**

*City of Sand Springs v. Department of Public Welfare,*
 608 P.2d 1139 (Okla. 1980) ...................................................................................8

*Phillips v. Martin,*
 535 F. Supp. 2d 1210, 1215-16 (D. Kan. 2008) ....................................................15

## **STATUTES**

### **Federal**

42 U.S.C. § 1983 ......................................................................................... 10, 18

42 U.S.C. §§ 601-619 ........................................................................................ 1

Rule 8(a) and (d), Federal Rules of Civil Procedure ...........................................4

Rule 8(d)(1), Federal Rules of Civil Procedure .................................................4

Rule 9(b), Federal Rules of Civil Procedure.................................................20, 21

Rule 12(b)(1), Federal Rules of Civil Procedure ........................................ 1, 5, 8

Rule 12(b)(6), Federal Rules of Civil Procedure ................................ 1, 4, 5, 6, 10

### **State**

12 O.S. § 1171.2 ..................................................................................................2

12 O.S. § 1171.3(G)(1), .................................................................................2, 15

43 O.S. § 112(E) .................................................................................................13

43 O.S. § 115(A) ................................................................................................2, 15

43 O.S. § 137 ....................................................................................................3, 11

51 O.S. §152.1(B) ..................................................................................................9

56 O.S. §§ 162.1(a) and 162.1a ...........................................................................8

56 O.S. § 237(B)(2) ...............................................................................................2

56 O.S. §§ 233, 234, 237, 237A, 237.8, 237.10, 238.3a, 240.1, 240.3 ...............1

56 O.S. § 237(A) ....................................................................................................1

56 O.S. § 237(B)(2) ...............................................................................................2

56 O.S. § 237(C)(3) ...........................................................................................2, 15

56 O.S. §§ 240.22B, 240.22D, 240.22E ...............................................................2

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

Linh Tran Stephens, an individual,    )
    )
        Plaintiff,    )
    )
v.    )    Case No.: CV-24-216-JDR-CDL
    )
Child Support Services of Oklahoma    )
Department of Human Services, (CSS    )
Of OKDHS), et al.,    )
    )

### Motion To Dismiss of Defendant Jason Hoenshell And Brief In Support

Defendant Jason Hoenshell (hereinafter "Hoenshell") respectfully moves the Court to dismiss this action pursuant to Rule 8, Rule 9, Rule 12(b)(1), and Rule 12(b)(6) of the Federal Rules of Civil Procedure for the reasons stated in the following brief.

### I.  Statement Of The Case

This case arises from and is inextricably enmeshed with child support and other orders entered against Plaintiff in her *ongoing* Child Support Case No. OAH 23-00313-73 ("CSS Case") and Tulsa County Oklahoma District Court Case Number FD-2015-2228 ("Tulsa County Case"). More pointedly, this case traces its lineage to lawful child support orders, consistent with Plaintiff's moral and legal duty to support her child, entered in Plaintiff's CSS Case and filed into the Tulsa County Case as per Oklahoma law.[1] *See, for example,* Plaintiff's Complaint at pp. 75-77

Cast against this backdrop, Part A of Subchapter IV of Chapter 7 of Title 42[2] of the United States Code requires every state to designate a single state agency to administer a statewide plan for child support services, and the State of Oklahoma has authorized OKDHS as that agency.[3] This plan provides that when OKDHS Child Support Services (CSS) are expended and child support

---

[1] *See, inter alia,* 56 O.S. §§ 233, 234, 237, 237A, 237.8, 237.10, 238.3a, 240.1, 240.3.
[2] 42 U.S.C. §§601-619.
[3] 56 O.S. § 237(A).

payments are ordered by the court, <u>such payments shall be paid to CSS by an immediate income underline</u>
<u>assignment</u>.[4] In Plaintiff's child support cases, CSS was and remains a necessary party because
OKDHS continues to provide services to Plaintiff's minor child. Further, in order to efficiently
oversee the implementation of the State of Oklahoma's Child Support plan, CSS was granted
authorization to adopt rules for child support services.[5] In the underlying Tulsa County District
Court Case/CSS Case, OKDHS - by and through CSS - is handling the child support case. This in
mind, 12 O.S. § 1171.2 provides for garnishment that Plaintiff complains of:

> [a]ny person awarded custody of and support for a minor child by the district court
> or awarded periodic child support payments by the Department of Human Services,
> or the Department of Human Services on behalf of a recipient of Temporary
> Assistance for Needy Families or on behalf of a person not receiving Temporary
> Assistance for Needy Families **shall be entitled to proceed to collect any current
> child support and child support due and owing through** income assignment
> pursuant to the provisions of this section and Section 1171.3 of this title or Sections
> 240 through 240.3 of Title 56 of the Oklahoma Statutes **or by garnishment, if the
> minor child is in the custody and care of the person entitled to receive the child
> support or as is otherwise provided by the court or administrative order at the
> time of the income assignment or garnishment proceedings**.

*Ibid* at (A)(Emphasis supplied).

Oklahoma law (consistent with federal law and requirements) also provides for disclosure of
financial account information and concomitant levying to recover past due child support
obligations. *See, for example,* 56 O.S. §§ 240.22B, 240.22D, 240.22E.

Hoenshell is the Financial Institution Data Match ("FIDM") Coordinator for the Child
Support Division of Oklahoma Human Services. In this role, he serves as a liaison between DHS
Child Support field offices and banks and other financial institutions and resolves issues offices
have with communication and document transfers to financial institutions, and also assist those

---

[4] 12 O.S. § 1171.3(G)(1), 43 O.S. § 115 (A), 56 O.S. § 237(C)(3).
[5] 56 O.S. § 237(B)(2).

same institutions with processing levies that DHS Child Support field offices issue for unpaid child support.

One such case is Plaintiff's wherein Plaintiff owes ongoing child support and a significant amount of past due child support (which are judgments as a matter of law[6]) which is what led to the levy and garnishment Plaintiff is apoplectic about. Plaintiff has repeatedly disputed the lawful child support orders and lawful collection methods in court to no avail because she has not and cannot present any evidence that the child support orders and the collection of funds for the benefit of her child are remotely unlawful. Dissatisfied with enforcement of lawful child support orders by DHS, Plaintiff filed the instant lawsuit which is a farrago of baseless allegations, *ipse dixit,* and immaterial averments. In this vein, Plaintiff alleges twelve "claims" which range from improbable to absurd. Further, Hoenshell's name appears in Plaintiff's Complaint sparingly and when it does it doesn't allege anything of substance.

In sum, there can be no doubt that Plaintiff dislikes paying child support. But her disdain for paying child support or the federally and state mandated collection thereof does not a lawsuit make. Plaintiff proceeds herein hoping this honorable Court will enter an order refunding and enjoining the collection of past due (which are judgments as a matter of law[7] and not "consumer debt" as Plaintiff appears to believe), current, and future child support payments thereby vacating and holding for naught the lawful child support orders entered in the CSS Case and Tulsa County Case. The foregoing in mind, it would thus be no understatement to say it is undeniable that the subject child support orders are wholly integral to Plaintiff's claims herein. Plaintiff's Complaint suffers from many incurable infirmities and must be dismissed.

---

[6] *See, inter alia,* 43 O.S. § 137.
[7] *See, inter alia,* 43 O.S. § 137.

## II.  Argument and Authorities

### A.  Plaintiff Has Wholly Failed to Comply With Rule 8

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must "state their claims intelligibly so as to inform the defendants of the legal claims being asserted."  *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007).  Specifically, Rule 8(a) instructs the plaintiff to plead for relief in a "short and plain statement," while Rule 8(d)(1) adds that each allegation in the complaint must be "simple, concise, and direct."  Fed. R. Civ. P. 8(a) and (d).  Accordingly, something "written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs" would violate Rule 8. *See Mann*, 477 F.3d at 1148.

Certainly perfection is not required and Courts may "bypass the dross and get on with the case."  *See Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) (internal citations omitted).  If a case is unintelligible, however, a Court may dismiss the Complaint under Rule 8. *See id.*  Indeed, "[i]t is not the district court's job to stitch together cognizable claims" from deficient pleading.  *Mann*, 477 F.3d at 1148; *see also Garst* 328 F.3d at 378 ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud.").  As the Second Circuit noted, "unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2nd Cir. 1988).

Finally, a Rule 8 violation is different from a failure to state a claim under Rule 12(b)(6). Even if a complaint sufficiently alleges enough facts to survive a 12(b)(6) motion to dismiss, a Court may still invoke Rule 8 to strike the complaint if the necessary facts are "scattered

throughout the complaint." *See Mann*, 477 F.3d at 1147; *see also Ciralsky v. C.I.A.*, 355 F.3d 661, 671 (D.C. Cir. 2004) (holding that there was a Rule 8 violation even though plaintiff had pled more details than necessary to survive dismissal under Rule 12(b)(6)). See: *Valencia v. Bd. of Regents*, No. CV 17-00509 RB/SCY, 2017 WL 4325766, at *1–2 (D.N.M. Sept. 26, 2017). (Exhibit 1).

In the case at bar, Plaintiff fails to comply with the Rule 8 requirements that her Complaint contain a "short and plain statement" of the claims and that it be "concise and direct." In contrast, Plaintiff's Complaint is composed of conclusory allegations and a string of citations lobbed into the air wily nilly without a shred of information as to how any of her legal theories have been triggered. The Complaint is primarily an incoherent and indecipherable sovereign citizen manifesto railing against child support orders and the concomitant collection of child support. Because Plaintiff's Complaint fails at such a fundamental level, this Court should dismiss it for failure to comply with Rule 8.

### B.  Motion to Dismiss Standard for Lack of Subject Matter Jurisdiction

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is in the form of "a facial attack." *Holt v. U.S.*, 46 F.3d 1000, 1002 (10th Cir. 1995). A "facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir. 1990)). If a court determines it has been deprived of subject matter jurisdiction, then such court must dismiss the complaint pursuant to Rule 12(b)(1). Hoenshell contends that this Court is without jurisdiction over Plaintiff's suit because it was brought in derogation of the Eleventh Amendment and the sovereign immunity of the State of Oklahoma in so far as he is sued in his official capacity. Accordingly, the claims should be dismissed pursuant to Rule 12(b)(1).

### C. Standard for Dismissal for Failure to State a Claim

Hoenshell also contends Plaintiff has failed to state a claim for relief. The standard to be followed by a district court when considering a motion to dismiss under Rule 12(b)(6) was summarized by the United States Court of Appeals for the Tenth Circuit in *Robbins v. State of Oklahoma, ex rel. Dept. of Human Services*, 519 F.3d 1242 (10th Cir. 2008), as follows:

> "[t]o withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*,] 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  Under this revised standard, as we explained in *Ridge at Red Hawk, L.L.C. v. Schneider*:
>
> > the mere metaphysical possibility that <u>some</u> plaintiff could prove <u>some</u> set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that <u>this</u> plaintiff has a reasonable likelihood of mustering factual support for <u>these</u> claims.

493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).  The burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief.  *Twombly*, *127 S.Ct. at 1965*. Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Ibid* at 1247.

In other words, a plaintiff must nudge her "claims across the line from conceivable to plausible[.]" *Twombly* at 570.  Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal* at 679. The Tenth Circuit in *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008), explained that "plausibility" refers to the scope of the allegations in the complaint; "if they are so general that they encompass a wide swath of conduct, much of it innocent" or if the allegations are no more than "labels and conclusions" or a mere "formulaic recitation of the elements of a cause of action" then such allegations are not sufficient to place

defendants on notice "of the actual grounds of the claim" against them. Further, legal conclusions and threadbare recitals cannot be disguised as facts to create plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009). The trial court should insist that the plaintiff put forward specific, non-conclusory factual allegations, to assist the court in determining whether the complaint is plausible. *Robbins* at 1249. "Plausibility" refers to the scope of the allegations in the complaint; if they are "so general that they encompass a wide swath of conduct, much of it innocent" or if the allegations are no more than "labels and conclusions" or "a mere formulaic recitation of the elements of a cause of action" then such allegations may be inadequate to overcome a motion to dismiss. *Id.* at 1247-48**.** In large measure then, allegations which simply make "…unadorned, the-defendant-unlawfully-harmed-me" accusations fail to pass muster. *Ashcroft v. Iqbal*, 556 U.S. at 678. Finally,

> Pro se complaints are held to less stringent standards than pleadings drafted by lawyers and the court must construe them liberally. Haines, 404 U.S. at 520. Nevertheless, the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations. Hall, 935 F.2d at 1110. Moreover, even pro se plaintiffs are required to comply with the "fundamental requirements of the Federal Rules of Civil Procedure." Ogden v. San Juan County, 32 F.3d 452, 455 (10th Cir. 1994).

*Miller v. Kemp*, No. 11-CV-0530-CVE-FHM, 2012 U.S. Dist. LEXIS 62529, at *8 (N.D. Okla. May 4, 2012).

In the case at bar, Plaintiff has failed to meet the standard required to bring claims against Hoenshell. Plaintiff's Complaint is a rambling collection of grievances and conclusory and baseless allegations which fails to differentiate the actions of individuals. Instead, it is replete with speculative – at best- conclusions. Plaintiff's "unadorned" accusations – mostly directed at "Defendants" are insufficient to pass muster under the standard set down in *Iqbal, Twombly* and *Robbins* because they identify no facts upon which these conclusions were drawn. As such,

Plaintiff has failed to state facts necessary for her Complaint to survive and this Court must dismiss.

### D.  Plaintiff's Complaint Against Hoenshell In His Official Capacity is Subject to Dismissal Under Fed. R. Civ. P. 12(b)(1) Due to Eleventh Amendment Sovereign Immunity

DHS (formerly known as the Department of Public Welfare and the Department of Institutions, Social and Rehabilitative Services) was created in 1936 by §2 of Article XXV of the Oklahoma Constitution for the purpose of "administering and carrying into execution" all laws enacted by the Oklahoma Legislature pursuant to §1 of Article XXV. *See* 56 O.S. §§162.1(a) and 162.1a. Section 2 also requires DHS to "perform such other duties as may from time to time be prescribed by law." *See generally City of Sand Springs v. Department of Public Welfare,* 608 P.2d 1139 (Okla. 1980). As an agency of the State of Oklahoma, DHS is unquestionably an arm of the State of Oklahoma. *See, for example, Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100 (1990); *Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Association,* 450 U.S. 147, 150 (1981) (per curiam); *Alabama v. Pugh*, 438 U.S. 781 (1978) (per curiam).

The foregoing in mind, the Eleventh Amendment provides:

> [t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

Towards this end,

> [t]he Supreme Court has interpreted the Eleventh Amendment to mean "States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). This prohibition encompasses suits against state agencies. *See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).

*Muscogee (Creek) Nation v. Oklahoma Tax Comm'n,* 611 F.3d 1222, 1227 (10th Cir. 2010).

Because States may not be sued in federal court absent their consent or specific and unequivocal

Congressional mandate,

> [t]he Eleventh Amendment is a jurisdictional bar that precludes unconsented suits
> in federal court against a state and arms of the state. *See Steadfast Ins. Co. v. Agric.*
> *Ins. Co.,* 507 F.3d 1250, 1252–53 (10th Cir.2007).

*Wagoner Cty. Rural Water Dist. No. 2 v. Grand River Dam Auth.,* 577 F.3d 1255, 1258 (10th Cir.
2009).

As for the possibility that OKDHS has unequivocally consented to suit herein by waiving its

Eleventh Amendment sovereign immunity,

> [t]he Court will give effect to a State's waiver of Eleventh Amendment immunity
> "'only where stated by the most express language or by such overwhelming
> implication from the text as [will] leave no room for any other reasonable
> construction.' " *306 Atascadero State Hospital, supra,* 473 U.S., at 239–240, 105
> S.Ct., at 3145–3146 (quoting *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347,
> 1360, 39 L.Ed.2d 662 (1974) (internal quotation omitted)). A State does not waive
> its Eleventh Amendment immunity by consenting to suit only in its own courts, see,
> *e.g., Florida Dept. of Health and Rehabilitative Services v. Florida Nursing Home*
> *Assn.,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981) (*per*
> *curiam*), and "[t]hus, in order for a state statute or constitutional provision to
> constitute a waiver of Eleventh Amendment immunity, it must specify the State's
> intention to subject itself to suit in *federal court.*" *Atascadero State Hospital, supra,*
> 473 U.S., at 241, 105 S.Ct., at 3146.

*Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305–06, 110 S. Ct. 1868, 1873, 109 L.

Ed. 2d 264 (1990).

In this vein, it is clear that the State of Oklahoma and its agencies – including OKDHS –

have not waived their Eleventh Amendment immunity and consented to actions in federal court

such as this case. *See* 51 O.S. §152.1(B) (which expressly preserves the State of Oklahoma's

Eleventh Amendment immunity). Likewise, Oklahoma's Eleventh Amendment immunity has not

been negated by any unequivocal Congressional mandate subjecting DHS to suit herein for alleged

civil rights violations,

> [i]t is well settled that neither 42 U.S.C. § 1981 nor § 1983 abrogate the Eleventh
> Amendment immunity of the states. *E.g., Will v. Mich. Dep't of State Police,* 491
> U.S. 58, 66–67, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (§ 1983); *Ellis v. Univ. of
> Kan. Med. Ctr.,* 163 F.3d 1186, 1196 (10th Cir.1998) (§§ 1981, 1983, and 1985).
> Thus, Congress has not abrogated the defendants' Eleventh Amendment immunity
> under these provisions.

*LaFavre v. Kansas ex rel. Stovall,* 6 Fed. Appx. 799, 805 (10th Cir. 2001).

The foregoing in mind, Hoenshell – a State of Oklahoma employee – in his official capacity

unquestionably was and is acting as an official of/on behalf of the State of Oklahoma in enforcing

the terms/requirements of the Oklahoma child support plan. As such, Plaintiff's claims against

Hoenshell in his official capacity are jurisdictionally[8] barred pursuant to the plain language of the

Eleventh Amendment and must be dismissed:

> [f]inally, when a suit seeks money damages against an official of a state agency,
> suing that official in his or her official capacity, then the "real party in interest" is
> the state, and the suit is barred by the Eleventh Amendment. *See Edelman*, 415 U.S.
> at 663.

*ANR Pipeline Co. v. LaFaver,* 150 F.3d 1178, 1187 (10th Cir. 1998).

### E.  The Complaint Is Subject To Dismissal Under Fed. R. Civ. P. 12(b)(6) Because Defendants In Their Official Capacities Are Not Persons Under § 1983

Notwithstanding the Eleventh Amendment jurisdictional bar, the instant action also fails

to state a claim upon which can be granted as Plaintiff cannot recover against Hoenshell in his

official capacity under 42 U.S.C. § 1983. This is because § 1983 provides, in pertinent part, that:

---

[8] "Because the State's assertion of Eleventh Amendment immunity challenges the subject matter
jurisdiction of the district court, the issue must be resolved before a court may address the merits
of [the] underlying . . . claim." *Martin v. Kansas*, 190 F.3d 1120, 1126 (10th Cir. 1999), underruled
on other grounds by *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 148 L. Ed. 2d 866,
121 S. Ct. 955 (2001)."
*Joseph A. v. Ingram*, 275 F.3d 1253, 1259 (10th Cir. 2002)

> [e]very <u>person</u> who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Ibid* (Emphasis supplied).

In *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), the United States Supreme Court considered the issue of whether a State is a "person" under § 1983. After examining the express language, congressional purpose and legislative history of the statute, the Supreme Court concluded that States or other governmental entities that are considered "arms of the State" for Eleventh Amendment purposes (as well as state officials acting in their "official" capacities) are not "persons" under §1983. *Id.,* at 68-71; *see Howlett v. Rose*, 496 U.S. 356, 365 (1990) (holding that "*Will* establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under §1983 <u>in either federal court or state court</u>." (Emphasis added)); *Harris v. Champion*, 51 F.3rd 901, 905-06 (10th Cir. 1995).

As explained in the preceding proposition, OKDHS, its divisions, and officials are clearly an "arm" of the State of Oklahoma. Consequently, defendants – such as Hoenshell - in their official capacities are not "persons" within the meaning of §1983 and are not subject to suit under §1983 in either federal or state court.

### F.  The *Rooker-Feldman* Doctrine Warrants Dismissal

It is beyond dispute that Plaintiff's claims arise from state court judgments[9] for child support. Resultantly, they are barred herein according to the *Rooker-Feldman* doctrine which holds that the federal courts (other than the United States Supreme Court) lack jurisdiction to adjudicate

---

[9] Both the actual child support order as well as past due child support that become judgments automatically by operation of law. *See, inter alia,* 43 O.S. § 137.

claims seeking review of state court judgments. *Feldman*, 460 U.S. at 483-484. *See Kiowa Indian Tribe of Oklahoma v. Hoover,* 150 F.3d 1163, 1169 (10th Cir. 1998) (holding that "federal review of state court judgments can be obtained only in the United States Supreme Court" under 28 U.S.C. §1257). Apropos for purposes here is the following from the Tenth Circuit:

> [t]he Supreme Court has explained that *Rooker-Feldman* "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). "In other words, an element of the claim must be that the state court wrongfully entered its judgment." *Campbell*, 682 F.3d at 1283. Tso's Complaint seeks relief from alleged harms flowing from "acts of the state court." *Campbell*, 682 F.3d at 1285. That is, "the allegedly wrongful act that caused damage was the state-court order itself," and his claims "required a determination of the bona fides of the prior state-court judgment," *id.* at 1284. Though he complains of various acts taken by the defendants, whether through a RICO "conspiracy" or denial of just compensation, the only harms alleged involved deprivations that resulted from the state courts' orders. His claims are therefore barred by *Rooker-Feldman*.

*Tso v. Murray*, 760 F. App'x 564, 567-68 (10th Cir. 2019).

In the case at bar, Plaintiff's complaints are born of state court orders and her requested relief would require this court to impermissibly determine the "bona fides" of the orders. *Ibid.*

Further, the *Rooker-Feldman* doctrine bars consideration not only of issues <u>*actually*</u> presented to and decided by a state court, but also bars consideration of constitutional claims that are "'inextricably intertwined' with" issues ruled upon by a state court. *See id.* (quoting *Feldman,* 460 U.S. at 483-84, n.16). "A claim is inextricably intertwined if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995). "In other words, *Rooker-Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Id.* In this case it is inescapable that the events giving rise to Plaintiff's allegations arise from and are inextricably intertwined with a current state court case involving

child support and/or would involve this court reviewing the decisions of a state court. Likewise, to the extent that Plaintiff seeks a declaratory judgment regarding child support, such would be barred by *Rooker-Feldman* as well:

> *Feldman* not only prohibited direct review of state judgments by lower federal courts, but it also prohibited those federal courts from issuing any declaratory relief that is "inextricably intertwined" with the state court judgment. *Feldman,* 460 U.S. at 483–84 n. 16, 103 S.Ct. at 1315–16 n. 16; *Razatos,* 746 F.2d at 1433.

*Facio v. Jones,* 929 F.2d 541, 543 (10th Cir. 1991).

### G. *Younger* Abstention

It appears Plaintiff also seeks prospective relief regarding the continuing child support orders of the Tulsa County Case/CSS Case. While such relief may avoid the jurisdictional bar of the Eleventh Amendment, it cannot avoid non-discretionary application of *Younger* abstention herein:

> [i]n determining whether *Younger* abstention is appropriate, a court considers whether: "(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies." *Amanatullah v. Colorado Bd. of Med. Exam'rs,* 187 F.3d 1160, 1163 (10th Cir. 1999) (internal quotations omitted). Once these three conditions are met, Younger abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain. *See Seneca-Cayuga Tribe v. Oklahoma,* 874 F.2d 709, 711 (10th Cir. 1989).

*Crown Point I Ltd. Liab. Co. v. Intermountain Rural Elec. Ass'n,* 319 F.3d 1211, 1215 (10th Cir. 2003).

In this case, there can be no doubt of the wholesale application of *Younger* abstention. First, it is beyond dispute that there is an ongoing child support case in Oklahoma state court which continues until the minor child reaches majority. *See, for example,* 43 O.S. § 112(E). Second, the care and support of Oklahoma's children by their parents is ineluctably one that involves important state interests. *See, for example, Moore v. Sims,* 442 U.S. 415, 435, 99 S. Ct. 2371, 60 L. Ed. 2d

994 (1979) (family relations are traditional area of state concern); *Morrow v. Winslow*, 94 F.3d 1386, 1397 (10th Cir. 1996) (state has interest in orderly conduct of proceedings in its courts in manner which protects interest of child and family), cert. denied, 520 U.S. 1143, 117 S. Ct. 1311, 137 L. Ed. 2d 475 (1997). Third, Oklahoma state courts have jurisdiction to entertain and decide §1983 suits. *See Howlett v. Rose*, 496 U.S. 356, 367, 110 S. Ct. 2430, 2438 (1990). And this truism rings loudly with regard to matters of state concern:

> [t]he seriousness of federal judicial interference with state civil functions has long been recognized by this Court. We have consistently required that when federal courts are confronted with requests for such relief, they should abide by standards of restraint that go well beyond those of private equity jurisprudence. For example, *Massachusetts State Grange* v. *Benton*, 272 U.S. 525 (1926), involved an effort to enjoin the operation of a state daylight savings act. Writing for the Court, Mr. Justice Holmes cited *Fenner* v. *Boykin, supra*, and emphasized a rule that "should be very strictly observed," 272 U.S., at 529, "that no injunction ought to issue against officers of a State clothed with authority to enforce the law in question, unless in a case reasonably free from doubt and when necessary to prevent great and irreparable injury." *Id*., at 527.
>
> Although Mr. Justice Holmes was confronted with a bill seeking an injunction against state executive officers, rather than against state judicial proceedings, [*604] we think that the relevant considerations of federalism are of no less weight in the latter setting. If anything, they counsel more heavily toward federal restraint, since interference with a state judicial proceeding prevents the state not only from effectuating its substantive policies, but also from continuing to perform the separate function of providing a forum competent to vindicate any constitutional objections interposed against those policies. Such interference also results in duplicative legal proceedings, and can readily be interpreted "as reflecting negatively upon the state court's ability to enforce constitutional principles."

*Huffman v. Pursue, Ltd.,* 420 U.S. 592, 603-04, 95 S. Ct. 1200, 1208 (1975).

Moreover, Plaintiff has made no showing that Oklahoma state courts are somehow insufficient for her claims – save the fact that she dislikes their rulings against her. However, that is not the standard:

> Plaintiff argues that the Washington state court did not provide an adequate forum because it overruled his argument on timeliness grounds. See Plaintiff's Response (Doc. # 52) at 5. Plaintiff, however, has not shown that he did not have the

opportunity to present his claim in state court at an earlier date. See Juidice v. Vail, 430 U.S. 327, 337, 97 S. Ct. 1211, 51 L. Ed. 2d 376 (1977) (Younger only requires that plaintiff be afforded opportunity to present federal claim in state proceedings; failure to avail himself of opportunity [*1216] does not mean state procedures were inadequate); World Famous Drinking Emporium, Inc. v. City of Tempe, 820 F.2d 1079, 1083 (9th Cir. 1987) (fact that plaintiff did not avail itself of opportunity to litigate constitutional claim in state forum does not demonstrate that state forum was inadequate); see also Spargo, 351 F.3d at 79 (relevant question is whether state procedural remedies could provide relief sought, not whether they will provide remedy); Kirschner v. Klemons, 225 F.3d 227, 235 (2d Cir. 2000) (to establish inadequacy of state forum, plaintiff must show that state laws, procedures or practices prevent his effective interposition of federal contentions). Plaintiff has not satisfied his burden to show that state procedures did not afford him an adequate remedy. See Pennzoil, 481 U.S. at 15.

Phillips v. Martin, 535 F. Supp. 2d 1210, 1215-16 (D. Kan. 2008).

In this case the three Younger conditions are clearly met and this Court should abstain from exercising jurisdiction herein and dismiss this matter.

### H.  Hoenshell Did Not Violate Plaintiff's Civil Rights And Is Entitled To Absolute Immunity And/Or Qualified Immunity

To the extent that Plaintiff alleges Hoenshell, in his individual capacity, violated her civil rights such claims are without merit. It is clear Plaintiff was afforded due process by the Tulsa County case and the CSS case with regard to the lawful child support orders entered against her, as well her objections to such orders and their collection. Furthermore, to the extent Plaintiff alleges Hoenshell "somehow took Plaintiff's property without due process, such "taking" was nothing more than the enforcement of valid and continuing child support orders through income assignment/garnishment as mandated by state and federal law. See 12 O.S. § 1171.3(G)(1), 43 O.S. § 115(A), 56 O.S. § 237(C)(3). Moreover, assuming arguendo Hoenshell personally participated in the income assignment/garnishment required by law, Plaintiff's claims are without merit and should be dismissed due to quasi-judicial immunity:

[o]ther circuits have held that law enforcement officials executing a facially valid court order are protected by absolute quasi-judicial immunity. See, e.g., Valdez v.

Page **15** of **22**

*Denver,* 878 F.2d 1285 (10th Cir.1989) (sheriff and sheriff's deputies took plaintiff into custody pursuant to judicial order); *Coverdell v. Department of Social & Health Servs.,* 834 F.2d 758 (9th Cir.1987) (child protective services worker removed newborn infant from hospital and placed her in temporary shelter pursuant to court order); *Henry v. Farmer City State Bank,* 808 F.2d 1228 (7th Cir.1986) (sheriff participated in execution of foreclosure sale pursuant to judgment of foreclosure); *Tymiak v. Omodt,* 676 F.2d 306 (8th Cir.1982) (per curiam) (sheriff evicted plaintiff from home in compliance with court order); *Fowler v. Alexander,* 478 F.2d 694 (4th Cir.1973) (sheriff and jailer confined plaintiff pursuant to a court order). "Enforcing a court order or judgment is intrinsically associated with a judicial proceeding." *Valdez,* 878 F.2d at 1288. These implementing individuals "are themselves 'integral parts of the judicial process.' " *Coverdell,* 834 F.2d at 765 (quoting *Briscoe v. LaHue,* 460 U.S. 325, 335, 103 S.Ct. 1108, 1116, 75 L.Ed.2d 96 (1983)).

The Tenth Circuit explained the rationale for absolute quasi-judicial immunity for law enforcement officials acting pursuant to court orders:

Absolute immunity for officials assigned to carry out a judge's orders is necessary to insure that such officials can perform their function without the need to secure permanent legal counsel. A lesser degree of immunity could impair the judicial process.
. . . .
Tension between trial judges and those officials responsible for enforcing their orders inevitably would result were there not absolute immunity for both . . . . The public interest demands strict adherence to judicial decrees. . . . Absolute immunity will ensure the public's trust and confidence in courts' ability to completely, effectively and finally adjudicate the controversies before them. *Valdez,* 878 F.2d at 1288, 1289.

*Roland v. Phillips*, 19 F.3d 552, 555–56 (11th Cir. 1994).

Plaintiff's formulation, again assuming *arguendo* Hoenshell's personal participation, would put Hoenshell in quite a quandary – either enforce facially valid court orders for child support as mandated by state and federal law but risk being sued by Plaintiff, or fail to enforce the support orders in derogation of law and in contempt of court orders. This is the precise scenario for which quasi-judicial immunity exists and why such claims against Hoenshell should be dismissed.

As discussed above and for which there is no dispute, Hoenshell is an employee for the State of Oklahoma and his sole connection to Plaintiff is his work attendant to Plaintiff's child support case. This in mind, "[a]n absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of immunity." *Benavidez v. Howard,* 931 F.3d 1225, 1229 (10th Cir. 2019). Further, the Supreme Court has explained on multiple occasions that Congress "did not intend §1983 to abrogate immunities recognized at common law by way of 'history and reason.'" *Id.* (citing *Buckley v. Fitzsimmons,* 509 U.S. 259, 268 (1993).

> In determining whether particular actions of government officials fit within a common-law tradition of absolute immunity, or only the more general standard of qualified immunity, we apply a functional approach, which looks to the nature of the function performed, not the identity of the actor who performed it. In other words, our approach concentrates on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful.

*Id.* at 1230 (internal citations omitted).

Where a public official participating in the judicial process is sued in collateral proceedings, the focus on the effective functioning of our justice system does not arise from a generalized concern about interfering with the official's duties. Rather, the focus arises from a specific concern about interfering with conduct closely related to the judicial process. *Id.* Absolute immunity may extend to various participants in a judicial proceeding, "including government attorneys." *Id.* The Supreme Court held in *Butz v. Economou,* 438 U.S. 478, 517 (1978) that "an agency attorney who arranges for the presentation of evidence on the record in the course of an adjudication is absolutely immune from suits based on the introduction of such evidence." *Id.* Absolute immunity is also available to attorneys defending the government in civil litigation because such immunity is necessary to achieve the independent judgment and vigorous advocacy vital to the effective functioning of our adversarial system of justice." *Id.* at 1230.

> The rule on absolute immunity as applied to government attorneys charged with violating §1983 may be stated generally as follows: A government attorney's administrative duties and those investigatory functions that do not closely relate to an advocate's preparation for judicial proceedings are not entitled to absolute immunity. Rather, absolute immunity shields those acts undertaken by a government attorney in preparation for judicial proceedings *and* which occur in the course of his or her role as an advocate for the government. *See Buckley*, 509 U.S. at 273; *Mink*, 482 F.3d at 1261 (reasoning that the "determinative factor" in the absolute immunity inquiry is "advocacy").

*Id.* at 1231.

Plaintiff's Complaint, while a meandering diatribe, only refers to Hoenshell acting in his role for the State of Oklahoma. Thus, under *Benavidez,* Hoenshell is entitled to absolute immunity.

Likewise, Hoenshell is entitled to Qualified Immunity from Plaintiff's claims because defendants who are sued in their individual capacities in an action under 42 U.S.C. § 1983 "are entitled to qualified immunity unless it is demonstrated that their conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known." *Murrell v. Sch. Dist. No. 1, Denver, Co*, 186 F.3d 1238, 1251 (10th Cir. 1999). Further, qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). There is a presumption in favor of immunity for public officials in their individual capacities. *Hidahl v. Gilpin County Dept. of Social Services*, 938 F.2d 1150 (10th Cir. 1991). Qualified immunity may be denied only "if, on an objective basis, it is *obvious* that *no reasonably competent officer* would have concluded" that the conduct was lawful at the time the defendant acted. *Malley* at 341.

Once the defense of qualified immunity has been raised, the burden shifts to the plaintiff to show that it is not applicable. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). This is a heavy two-part burden. *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001) ("the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants

are entitled to qualified immunity."). In order to prevail on her claim for relief under §1983, Plaintiff must establish that Hoenshell's conduct deprived her of a federal constitutional or statutory right and that the conduct complained of was committed under color of state law. *American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). State actors, such as Hoenshell, "may only be held liable under § 1983 for their own acts." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

In *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), the United States Supreme Court held that the doctrine of qualified immunity is designed to protect government officials from actions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The objective test adopted in *Harlow* to determine whether qualified immunity applies was intended to shield public officials from undue interference in the performance of their duties and to permit the defeat of insubstantial claims without the cost and disruption attendant to trial. *Powell v. Mikulecky*, 891 F.2d 1454, 1556 (10th Cir. 1989). As a result, qualified immunity offers "complete protection for government officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. at 818).

The United States Supreme Court's decision in *Harlow v. Fitzgerald* raises a presumption in favor of immunity for public officials acting in their individual capacities. *Hidahl v. Gilpin County Dept. of Social Services*, 938 F.2d 1150, 1155 (10th Cir. 1991). The courts have held in this regard that there is a "strong presumption" that qualified immunity will apply and that state actors have properly discharged their official duties and to overcome that presumption the plaintiff must present specific allegations and clear evidence to the contrary. *See Gardenhire v. Schubert,*

205 F.3d 303, 313 (6th Cir. 2000); *see also Hidahl* at 1155. The United States Supreme Court has explained that qualified immunity may be denied only "if, on an objective basis, it is *obvious* that *no reasonably competent officer* would have concluded" that the conduct was lawful at the time the defendant acted. *Malley v. Briggs*, 475 U.S. at 341 (emphasis added).

In addition, the Supreme Court has explained that "clearly established law" must be precise:

> [t]oday, it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.' *Ashcroft v. al–Kidd,* 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.' *Id.,* at 639, 107 S.Ct. 3034.

*White v. Pauly*, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017).

In the case at bar, even assuming *arguendo* personal participation by Hoenshell, it was and is not clearly established that the enforcement of a facially valid child support order pursuant to the mandates of federal and state law would be obvious to all reasonably competent actors as unlawful. As such, Hoenshell is entitled to Qualified Immunity.

### I.  Plaintiff's Complaint Fails to State a Claim for Fraud

Fed. R. Civ. Proc. 9(b) requires allegations of fraud to be supported by statements setting forth with particularity the circumstances constituting fraud. In other words,

> [a]t a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud." *Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 903 (5th Cir.1997), and must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch,* 203 F.3d at 1236.

*U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah,* 472 F.3d 702, 726–27 (10th Cir. 2006).

In this case, it is unclear from the Complaint who Plaintiff alleges to have committed fraud, how it occurred, or when and where the fraud occurred. This plainly does not meet the standards prescribed by Rule 9(b) and Plaintiff's action for fraud must be dismissed.

### III.  Conclusion

As set forth above, Plaintiff's Complaint suffers many infirmities, including a jurisdictional bar in the form of the Eleventh Amendment, the *Rooker-Feldman* doctrine, *Younger* abstention, and a failure to state a claim upon which any relief can be granted against Hoenshell as a matter of law. In addition, Hoenshell is entitled to immunity in his individual capacity. As such, Hoenshell submits this matter should be dismissed.

Respectfully submitted,


*s/ John K.F. Langford*
John K.F. Langford (OBA #21012)
Assistant General Counsel
Department of Human Services
P.O. Box 25352
Oklahoma City, OK 73125-0352
Telephone: (405) 521-3638
Facsimile: (405) 521-6816
E-mail: John.Langford@okdhs.org

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of August, 2024 the foregoing document was electronically submitted to the Clerk of the Court using the ECF System for filing and a true and correct copy of the foregoing was mailed, postage prepaid, to the following:

Pro Se Plaintiff:
Linh Tran Stephens
11063 S. Memorial Drive
Suite D, #235
Tulsa, OK 74133

Attorneys For Cierra Freeman:
Andrew Charles Jayne
Shelby N. Brunette

Attorneys for Charles Schwab & Co., Inc.
Mary Johnmeyer:
Tara A. LaClair
Mary H. Tolbert

<div align="right">

*s/ John K.F. Langford*
John K.F. Langford

</div>

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) Linh Tran Stephens, sui juris, natural living breathing woman with a living soul, *Plaintiff,* Vs. (2) CHILD SUPPORT SERVICES OF OKLAHOMA DEPARTMENT OF HUMAN SERVICES (CSS of OKDHS), *and* (3) CHARLES SCHWAB AND CO., INC., (4) Cierra Freeman, in individual capacity and official capacity as court-appointed attorney for child-support enforcement, (5) Mary Johnmeyer, in individual capacity and in official capacity as legal counsel of Charles Schwab, (6) Renee Banks, in individual capacity and official capacity as CSS Director, (7) Jason Hoenshell, in individual capacity and in official capacity as Oklahoma FIDM Coordinator, (8) Emmalene Stringer, in individual capacity and in official capacity as State's attorney for CSS, (9) DOES #1-10 known but unidentified CSS employees, (10) DOES #11-20 known but unidentified Charles Schwab and Co., Inc., employees *Defendants.* | Case No.: **24-CV-216-JDR-CDL** Judge: John D. Russell <u>EXPEDITED HEARING REQUESTED</u> **<u>TRIAL BY JURY OF HER PEERS DEMANDED</u>** |

## COMBINED RESPONSE TO SIX (6) DEFENDANTS' MOTIONS TO DISMISS

### Affidavit of Violated Constitutional Rights by Unlawful Tribunal and Constitutional Demand for Remedy

**NOTICE TO PRINCIPAL IS NOTICE TO AGENT,
NOTICE TO AGENT IS NOTICE TO PRINCIPAL,
AFFIDAVIT IS A FORM OF EVIDENCE**

**I. Introduction**: Affiant, Linh Tran Stephens (also known as Linh Stephens), one of the People

(as seen in Oklahoma Constitution Article 2 Section 1) republican in form, *Sui Juris* (I am NOT the en legis, nor the trust, nor the corporation of LINH TRAN STEPHENS. I am a living breathing woman with a living soul and a Holy Spirit of Jesus Christ), do serve all defendants this affidavit, in this court of record, to make the following claims: Linh Tran Stephens ("Plaintiff") respectfully submits this *COMBINED Response to the Respective Motions to Dismiss* filed by Defendants Jason Hoenshell, Emmalene Stringer, Renee Banks, Ciera Freeman, and Defendants Charles Schwab & Co. and Mary Johnmeyer. Plaintiff contends that her Original Complaint adequately states claims that not only warrant continuation in this Court but also seek redress for direct violations of her rights under federal laws. Therefore, Plaintiff requests that this Honorable Court deny all motions to dismiss and move the case forward with scheduling a conference for trial by jury of her peers.

**II. General Allegations Relevant to All Defendants**

1. **Context of Claims and its General Defense to Dismissal**

    a. This lawsuit arises from the Defendants' unlawful enforcement actions concerning child support orders that are allegedly fraudulent and breach existing contractual agreements. The Plaintiff argues that these actions have resulted in serious legal, physical, financial, and emotional harm, as well as direct violations of <u>federal consumer protection laws e.g. FDCPA and ERISA and civil rights</u>. Plaintiff sued 5 (five) individuals in their personal capacity and one bank and all its management; plaintiff is also suing OKDHS CSS agency, but NOT suing the STATE OF OKLAHOMA of District of Columbia, therefore state immunity does not apply to any Defendants. Additionally, the defendants are NOT acting inside of the rules and regulations of their firm/corporations/employers. The complaint showed State entities were acting in a capacity that subjected them to federal law as they were involved in commercial activity.

    –CLAIM #1: VERIFIED COMPLAINT FOR DAMAGES, REQUEST FOR INJUNCTION RELIEF, AND CLAIM FOR EXEMPTION TO STOP ALL

GARNISHMENT, LEVYING, AND LIQUIDATION;
–CLAIM #2: <u>FDCPA</u> (Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq.)
–CLAIM #3: MAIL AND WIRE FRAUD; BANK FRAUD; IMPOSTERORS IMPERSONATING IRS AGENT, PRETEND TO BE JUDGES, 18 U.S.C. § 912)
–CLAIM #4: R.I.C.O. CONSPIRACY, Conspiracy Against Rights (18 U.S.C. §241)
–CLAIM #5: Violation of Civil Rights (42 U.S.C. §1983) and Deprivation of Rights Under Color of Law (18 U.S.C. §242) - <u>Fourteenth</u> Amendment denial of procedural due process rights
–CLAIM #6: Violation of Civil Rights (42 U.S.C. §1983) and Deprivation of Rights Under Color of Law (18 U.S.C. §242) - <u>Fourth</u> Amendment - <u>Unwarranted Seizure</u> of bank accounts' money, of bank info, and of Plaintiff (<u>False imprisonment, Unlawful Arrest</u> 25 CFR § 11.404)
–CLAIM #7: Fraudulently obtained bank accounts information not disclosed to anyone; Confidentiality of financial records (12 U.S.C § 3403)
–CLAIM #8: Deprivation Of Rights Under Color Of Law (18 USC §242 and §1201 and §641) and 22 USC §7102(1) - <u>Abuse or threatened abuse of law or legal process</u> (Unlawfully Converting the Courts and CPS and CSS into an instrument of crime), and <u>Malicious Prosecution, Harassments,</u>
–CLAIM #9: IIED claim (intentional infliction of emotional distress) 18 U.S.C. § 2340
–CLAIM #10: <u>Misappropriation of State Funds</u> 18 U.S.C. §§ 643, 644, 648, 649, 650, 651, 652, and 653
–CLAIM #11: Extortion, Abusive Debt-Collection Practices
–CLAIM #12: Defamation (alleging Plaintiff is an abuser and irresponsible not supporting her first born daughter) 28 U.S.C. § 4101(1)

b. ***Chevron deference doctrine reversed***: U.S. Supreme Court overturned the *Chevron deference doctrine* in a 6-3 decision in Loper Bright Enterprises v. Raimond. The decision reversed Chevron USA v. National Resources Defense Council (1984), a 40-year-old case that had established the practice of judicial deference to federal agencies' interpretations of ambiguous laws. <u>The new ruling requires courts to exercise independent judgment when deciding if an agency has acted within its statutory authority</u>.

c. ***Trump v. United States***, **604 U.S. ___ (2024)**

"There is no immunity for unofficial acts…" where government agents have no authority and thereby no immunity in conducting <u>unofficial acts (power not</u>

granted from the constitution).

d. The Supreme Court, in **Will v. Michigan Department of State Police, 491 U.S. 58 (1989)**, clearly delineated the parameters under which a state actor may be sued, particularly affirming that state officials are not "persons" for purposes of § 1983 when acting in their official capacity. However, individual actions that infringe upon federally protected rights can trigger liability under this statute.

e. ***Axon Enterprise, Inc. v. FTC***, 143 S. Ct. 890 (2023): Cases involving ... deprivation or transfers of life, liberty, or property constitute a 'core' of cases that ... must be resolved by Article III courts–not executive adjudicators dressed up as courts".

f. *Garcia v. City of Trenton*, 348 F. Supp. 2d 429 (D.N.J. 2004) Overview: This federal court case recognized that the FDCPA applies to debt collection activities and that states could potentially be liable for violations of the Act, even in the context of sovereign immunity. Relevance: Suggests that claims under the FDCPA may circumvent state immunity contours when the state engages in debt collection efforts that qualify under the FDCPA's definitions.

g. *Medina v. City of Baltimore, Maryland*, 2016 WL 3525860 (D. Md. June 28, 2016) Overview: The district court ruled that municipalities, as arms of the state, can be liable under the FDCPA despite claims of immunity since the debt collection function is a commercial activity not traditionally tied to sovereign immunity. Relevance: Reinforces the idea that when a state or its agencies engage in certain commercial activities, they may be held liable under federal law like the FDCPA.

h. *Williams v. City of Dallas*, 734 F.Supp. 1317 (N.D. Tex. 1990) Overview: The court allowed the plaintiff to pursue claims against the city under the FDCPA, indicating that the city's debt collection practices were actionable despite prior claims of immunity. Relevance: Establishes a precedent indicating that when states or municipalities are engaged in debt collection, the FDCPA might take precedence over assertions of state immunity.

i. **Oklahoma and all governmental agencies 100% <u>never</u> have territorial jurisdiction**: Cities in this State and all governmental agencies do NOT own all of the land in that territory that they're calling a state. They only own municipal buildings that they have to operate as a DBA under their mother-company which resides in the District of Columbia and this is per the Constitution. A court cannot even be in these territories that they are calling States if they do not have a **<u>delegation of authority letters</u>** or if they do not have a **<u>signed oath of office</u>**. In reality, I am the agent to the all capital letter name which is **The Surety**. I have been invoking the **<u>Treaty of Peace</u>** and <u>friendship</u> because that is also pursuant to **<u>article 6 section 6 of The Constitution</u>** and the <u>Constitution states that the treaties are the law of the land</u>. United States Corporation is just that, and because it Incorporated the handwritten organic Constitution, everything it does after that is fraud–**constructive fraud** at that.

j. **"Due process of law", Black's Law Dictionary (4<sup>th</sup>)**: "Law in its regular course of administration through courts of justice. Due process of law in each particular case means such an exercise of the powers of the government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those **maxims** prescribe for the class of cases to which the one in question belongs. Whatever difficulty may be experienced in giving to those terms a definition which will embrace every permissible exertion of power affecting private rights, and exclude such as is forbidden, there can be no doubt of their meaning when applied to judicial proceedings. They mean a course of legal proceedings according to those rules and principles which have been established in our systems of **jurisprudence** for the enforcement and protection of private rights. To give such proceedings any validity, there must be a tribunal competent by its constitution – that is, by the law of its creation – to pass upon the subject matter of the suit; and, if that involves merely a determination of the personal liability of the defendant, he must be brought within its jurisdiction by service of process within the state, or his voluntary appearance. Due

process of law implies the right of the person affected thereby to be present before the tribunal which pronounces judgment upon the question of life, liberty, or property, in its most comprehensive sense; to be heard, by testimony or otherwise, and to have the right of controverting, by proof, every material fact which bears on the question of right in the matter involved. **If any question of fact or liability be conclusively presumed against him, this is not due process of law."**

k. **Maxim of Law**: "The main object of government is the protection and preservation of personal rights, private property, and public liberties, and upholding the law of God." *American Maxim*.

l. **Maxim of Law**: "Punishment is due if the words of an oath be false." *Black's*, 840.

m. **Maxim of Law**: Jurisdiction is the power to declare the law; and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case. *Bullington v. Angel, 220 N.C. 18.*

n. **Maxim of Law**: Constitutions and laws precede the judiciary. *Luther v. Borden, 7 How. (48 U.S.) 1, 52.*

o. **Maxim of Law**: "A judge should keep his jurisdiction within the limits of his commission." 4 *Inst*. 163; *Black's*, 2d. 1056.

p. ***Sherar v. Cullen*, 481 F. 2d 946 (1973)**: "There can be no sanction or penalty imposed upon one because of his exercise of Constitutional Rights."

q. ***State v. McGowan* (2004 OK 44)**: Oklahoma Supreme Court ruled that the agency had overstepped its authority and emphasized that agencies derive power strictly from legislation enacted by the Legislature. This case highlighted the need for accountability and respect for legislative authority, thereby reinforcing

r. the **separation of powers**.

s. The evidence is overwhelming. I have obtained the **private-and-for-profit DUNS and CUSIP numbers** attached to the juvenile case and related cases involving my family. As of August 11, 2024, the DUNS Numbers relevant to Oklahoma State and

the relevant courts are as follows:

i.  Dun & Bradstreet D-U-N-S® Number for STATE OF OKLAHOMA:
    933539215

ii. Dun & Bradstreet D-U-N-S® Number for TULSA COUNTY COURT:
    808771468

iii. Dun & Bradstreet D-U-N-S® Number for SUPREME COURT OF
     OKLAHOMA: 928798110

iv. **Social Security Act SSA §1101.(a)(6)(d)** where the law specifically prohibits
    the removal of children against the wishes of the parents. WE OBJECT TO
    THE REMOVAL OF OUR CHILDREN! Federal and state government agents
    across the entire nation have been ripping loving families apart for profit and it
    must end NOW. The original / congressional intent of this non-positive law was
    in no-way-shape-or-form intended to steal children from their family(s). See
    **Social Security Act** Approved, August 14, 1935 is cited below directly from:
    https://www.ssa.gov/history/35actxi.html#Short

    SECTION 1101. (a) When used in this Act-
    (1) The term State (except when used in section 531) includes Alaska, Hawaii,
    and the District of Columbia.
    (2) The term United States when used in a geographical sense means the States,
    Alaska, Hawaii, and the District of Columbia.
    (3) The term person means an individual, a trust or estate, a partnership, or a
    corporation.
    (4) The term corporation includes associations, joint-stock companies, and
    insurance companies.
    (5) The term shareholder includes a member in an association, joint- stock
    company, or insurance company.
    (6) The term employee includes an officer of a corporation.
    (b) The terms includes and including when used in a definition contained in this
    Act shall not be deemed to exclude other things otherwise within the meaning of
    the term defined.
    (c) Whenever under this Act or any Act of Congress, or under the law of any
    State, an employer is required or permitted to deduct any amount from the
    remuneration of an employee and to pay the amount deducted to the United

States, a State, or any political subdivision thereof, then for the purposes of this
Act the amount so deducted shall be considered to have been paid to the
employee at the time of such deduction.

(d) <u>Nothing in this Act shall be construed as authorizing any Federal official,
agent, or representative, in carrying out any of the provisions of this Act, to take
charge of any child over the objection of either of the parents of such child, or of
the person standing in loco parentis to such child</u>.

2. **Basis of Federal Jurisdiction**

a. The claims brought forth arise from alleged violations of federal law, including:

i. **Fair Debt Collection Practices Act (FDCPA)**: 15 U.S.C. § 1692, addressing
abusive debt collection practices and prohibits debt collectors from using
abusive, unfair, or deceptive practices to collect debts, including:
misrepresenting the nature of the debt, including the amount owed, falsely
claiming that the person contacting you is an attorney, falsely claiming that they
are your attorney, or power of attorney, or has your informed consent.

ii. **Employee Retirement Income Security Act of 1974 (ERISA)** was designed to
protect retirement savings, recognizing their importance to financial security
and interest of the affiant.

iii. **Civil Rights Violations**: 42 U.S.C. § 1983, concerning the deprivation of rights
under color of state law.

1. **Oklahoma Constitution, Article 2, Section 7** "No person shall be
deprived of life, liberty, or property without due process of law."

**Oklahoma Constitution, Article 2, Section 19** "The right of trial by jury
shall be and remain inviolate…"

**Oklahoma Constitution Article 2, Section 6** "The courts of justice are
open to everyone, and that remedies for wrongs and injuries must be
speedy and certain. It also states that right and justice must be administered

without delay, denial, prejudice, or sale."

**Oklahoma Constitution Article 5, Section 46** "The Legislature *shall not*...pass any local or special law authorizing: #14 Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings"

2.  ***Troxel v. Granville*, 530 U.S. 57 (2000)**

    "The liberty interest at issue in this case - the interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by this Court."

3.  ***SEC v. Jarkesy*, 603 U.S. ___ (2024), No. 22-859, June 27, 2024, p42**

    "The Fifth Amendment's Due Process Clause addressed remaining concerns about the processes that would attend trials before independent judges and juries. It provided that the government may not deprive anyone of "life, liberty, or property, without due process of law." As originally understood, this provision prohibited the government from "depriv[ing] a person of those rights without affording him the benefit of (at least) those customary procedures to which freemen were entitled by the old law of England." *Sessions v. Dimaya*, 584 U.S. 148, 176 (2018) (GORSUCH, J., concurring in part and concurring in judgment) (internal quotation marks omitted); see Erlinger, 602 U.S., at ___ at 6-7). More than that, because it was "the peculiar province of the judiciary" to safeguard life, liberty, and property, due process often meant judicial process. 1 St. George Tucker, Blackstone's Commentaries, Editor's App. 358 (1803). That is, if the government sought to interfere with those rights, nothing less than "the process and proceedings of the common law" had to be observed before any such deprivation could take place. 3 J. Story, Commentaries on the Constitution of the United States §1783, p. 661 (1833) (Story). In other

words, "'due process of law' generally implie[d] include[d]... *judex* [a judge], regular allegations, opportunity to answer, and a trial according to settled course of judicial proceedings." *Murray's Lessee*, 18 How., at 280."

4. Federal Law: **U.S. Constitution Article I, II, and III**: The U.S. Constitution clearly delineates the powers of the Legislative, Executive, and Judicial branches, respectively. Each branch is established with distinct functions and responsibilities. Violation: If any branch encroaches upon the powers of another (e.g., Congress attempting to execute laws or the President attempting to legislate), it constitutes a violation of the separation of powers doctrine. Principle Established in Judicial Decisions *Marbury v. Madison* (1803): This landmark case established the principle of judicial review, affirming that courts can invalidate actions by the other branches that violate the Constitution. Violation: **If a state does not uphold this principle, it undermines the rule of law and could face challenges in federal courts**.

5. Oklahoma State Laws: **Oklahoma Constitution Article IV** (Legislative Branch), **Article V** (Executive Branch), and **Article VII** (Judicial Branch): The Oklahoma Constitution grants distinct powers to each branch of government. Violation: If the Executive branch tries to assume legislative authority or the Legislature exceeds its powers into judicial functions, this creates a legal conflict with the state constitution.

3. **It is a fact that**: Even up to today, **no contract has ever been signed** between me and the State of Oklahoma or any of its agencies**, no services/assistance has ever been requested by me from the State**, no services provided by the State towards me, therefore **no legitimate Oklahoma child support order** should have been issued against me because pursuant to **Nisi Prius, the original Oregon [NOT Oklahoma] court order**

---

**has exclusive jurisdiction**. Oregon private child support contract between me and my long-divorced exhusband as co-petitioners was signed by a judge as a "court order" and "judgment decree" of 01/08/2016, which said "**Jeep and Trailer in lieu of child support until child ages out no matter what the overnight numbers are and no matter if custody changes**"--see <u>**Original Court Order in the republic of oregon 01-08-2016**</u> **filed into Oklahoma court docket dated 07-11-2021 for enforcement-of-parental-time purposes only**–that contract/order/decree is still standing and active (Republic of Oregon is not the STATE OF OKLAHOMA–OKLAHOMA has zero jurisdiction over me**). Any subsequent or any other alleged court-order of child support is fraudulent**, **breaching of contract, unjust enrichment, and biasedly in favor of long-divorced exhusband and of the STATE OF OKLAHOMA**.

4. <u>It is a fact that</u>: I, Linh-Tran:Stephens, am a natural born Vietnamese Citizen, in its constitutional capacity.

5. <u>It is a fact that</u>: That my birth certificate is proof that I am a Vietnamese Citizen.

6. <u>It is a fact that</u>: That my Citizenship has been certified.

7. <u>It is a fact that</u>:That **I am not a United States citizen, resident, person, individual or any other legal fiction, nor have I ever been**. By power of naturalization given by **8 USC §1101(a)(23)**, I have conferred the nationality of the Family of Tran Nation upon myself after birth, by any means whatsoever. Prior to that, I was unaware of the definition of the various words, terms, and phrases. My children (my flesh and blood), my family, and I have NOT and are NOT located, NOT domiciled, NOT residents of, nor ever have been residents of any of the following places or businesses: UNITED STATES (located in Washington District of Columbia), STATE OF OKLAHOMA, STATE OF TEXAS, STATE OF OREGON, or any other incorporated entity or business at all anywhere, or any other incorporated entity or business at all anywhere. Pursuant to **8 USC §1408**, my children, my family, and I are "nationals but NOT citizens of the United States since

birth". The United Nations' **Universal Declaration of Human Rights Article 15, section 2**, written by Theodore Rosevelt's wife, states that "no one can be arbitrarily deprived of their nationality or denied the right to change it"--if deprived of such right, it would be considered as "international human rights violation" and "involuntary servitude", which are crimes punishable by law.

8. <u>It is a fact that</u>: **I explicitly reserve all of my rights always and forevermore, without prejudice, without recourse. I have NOT (nor will I ever) consent to the use of codes, statues, rules, and regulations in my case that are against my unalienable rights (U.S. Constitution, Civil Rights, Due processes rights including procedural rights and substantive rights, Parental Rights, GOD-given Human Rights. Anything and anyone saying otherwise is either fraudulent or misrepresentation of me by past counsels or by others who are not me or by fake signatures that are not mine but were photoshopped or lifted without me being there**.

9. <u>It is a fact that</u>:The United States, with intent and great deception, uses the term "United States citizen", to deprive the people of their rights, their birth rights, their property and freedom, and further, to relegate the status of the people, to that of livestock.

10. <u>It is a fact that</u>: I and my offsprings (i.e. my heritage gifted by GOD CREATOR YAHUAH and also is my property) owe **you [Defendants]** nothing nor do you have any jurisdiction over me and my offsprings (G.L.Stephens for example) and our properties including my retirements..

11. <u>It is a fact that</u>: **Your [Defendants']** constant unceasing letters from **you [Defendants]** and your satellite departments that harass, threaten, injure, attempt at coercion with scare tactics, kidnap, false imprisonment, holding hostage, and stalking, and all other actions are depriving me of my right to tranquility guaranteed by the preamble of, and the rest of the constitution for the United States of America. You are guilty of RICO, false imprisonment, extortion, kidnap-and-ransom of my offspring and of myself, FDCPA frauds, ERISA frauds, bank frauds, wire frauds, government fraud, false claim act

violations, misappropriation of State funds, deprivation of rights, conspiracy to deprive rights, and numerous other crimes as ascertainable by the <u>evidence on the record and on many of my unrebutted affidavits including this one</u>, as well as the common law and the Constitution of United States and of Viet Nam. Your actions are also acts of treason and tyranny.

### III. Specific Responses to Each Defendant's Motion to Dismiss

12. **Response to Defendant Ms. Renee Banks' Motion to Dismiss**

   a. **Sovereign Immunity Misapplied**: Claims alleging violations of federally protected rights are actionable despite assertions of state immunity. <u>The 11th Amendment does not confer immunity to "liability"</u>. The actions attributed to Ms. Banks directly impact the enforcement of federal debt collection statutes.

      i. <u>It is a fact that</u> the court or administrative tribunal is prohibited to presume he is a private person without special privileges and immunities and thereby can be subjected to legal process, quasi-judicial proceedings.

      ii. <u>It is a fact that</u> the Declaration of Independence specifies that all just powers of government derive from the consent of the governed, and thereby the Oklahoma child support enforcement agency established under **42 USC Section 654(3)** is required to <u>provide proof of Linh Tran Stephens's informed consent to be governed by it</u>.

      iii. SECTION 1983 CLAIMS*:*

         1. ***Harlow v. Fitzgerald*, 457 U.S. 800 (1982)**: This case established that government officials performing discretionary functions may be entitled to qualified immunity unless they violate clearly established statutory or constitutional rights. Relevance: State actors cannot claim immunity for civil rights violations if they violate clearly established law.

         2. ***Connick v. Thompson*, 563 U.S. 51 (2011)**: This case dealt with municipal

liability under Section 1983. The Court held that a municipality cannot be liable for failure to train its employees unless a constitutional violation occurs. Relevance: Establishes that state actors (e.g., municipalities) may be held liable for civil rights violations without immunity if they fail to protect civil rights.

3. ***Saucier v. Katz*, 533 U.S. 194 (2001)**: The Supreme Court held that in determining qualified immunity, courts must first determine whether a constitutional right was violated, and then whether that right was "clearly established." Relevance: Further emphasizes that state actors may not have immunity if their actions violate established rights.

4. ***Jones v. Hunt*, 410 F.3d 1221 (10th Cir. 2005)**: No qualified immunity in this ' 1983 action for alleged violations of Fourth Amendment rights arising from girl's in-school seizure by a deputy sheriff and a Social Worker Supervisor for the New Mexico Children, Youth, and Families Department ("CYFD"). "We conclude that the Fourth Amendment violation as alleged in this case is both obvious and outrageous."

5. ***Mabe v. San Bernardino*, 237 F.3d 1101 (9th Cir. 2001)**: Section 1983 creates a cause of action against any person who, acting under color of state law, violates the constitutional rights of another person. Whether reasonable cause to believe exigent circumstances existed in a given situation, "and the related questions, are all questions of fact to be determined by a jury." Hence, no immunity for social workers under 42 U.S.C. 1983.

iv. Fair Credit Reporting Act (FCRA)

1. ***Miller v. Trans Union, LLC*, 2002**: The court held that a defendant could be held liable under the FCRA for failing to follow reasonable procedures to ensure maximum accuracy of information. Relevance: Indicates that

state actors who violate FCRA may be held accountable, negating possible immunity.

2. ***Gonzaga University v. Doe*, 536 U.S. 273 (2002)**: Although this case primarily addresses the Family Educational Rights and Privacy Act (FERPA), it delineates the criteria for when statutory rights can be enforced and against how state actors can be held liable under third-party laws like FCRA. Relevance: Reinforces that individuals may seek redress against state actors under certain statutes.

v.   Employee Retirement Income Security Act (ERISA)

1. ***Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006)**: The court clarified the enforceability of ERISA plans against third parties, emphasizing that ERISA preempts state laws when it comes to employee benefit plans. Relevance: Establishes that state actors violating ERISA provisions could be held liable.

2. ***Alday v. Raytheon Co.*, 2007**: A federal court ruled that state actors <u>cannot claim immunity when they breach fiduciary duties under ERISA</u>. Relevance: This case signifies that state actors are accountable under ERISA, ruling out immunity in clear violations.

b. **Clarity of Claims**: The Complaint articulates the nature of the alleged violations in affidavit form signed in front of a notary (affidavit is a form of evidence), attached with hard proof of evidence, providing contextual relevance for Ms. Banks' liability concerning her acts as a state official. State actors can face liability without immunity when violating civil rights, the Fair Credit Reporting Act, and ERISA, contingent on the clarity of the rights being violated. Courts have established precedents that affirm individual claims against state actors can proceed when established laws and rights are breached.

13. **Response to Defendant Ms. Ciera Freeman's Motion to Dismiss**

   a. Plaintiff realleges, and to the extent applicable, incorporates herein each of the previous arguments as if set forth herein in full.

   b. **Role in Court Proceedings**: Freeman's actions as standby counsel are central to understanding her responsibility in preventing constitutional violations in court and out of court. Additionally, Plaintiff suspected that standby counsel likely forged Plaintiff's signature and or misrepresented to bank employees or DHS CSS that she has full power of attorney over the Plaintiff–to which in fact she does NOT. This allegation among many other unknown violations of rights will come into light during the discovery process.

   c. **Qualified Immunity Rejection**: Freeman's potential immunity does not extend to acts that result in known deprivations of statutory rights and her failure to protect her client as her duty including causing **debtor imprisonment** of Plaintiff, which is UNCONSTITUTIONAL.

   d. **Impact of Counsel Withdrawal**: Although Shelby Brunette has withdrawn as counsel for Ciera Freeman, the allegations against Freeman remain relevant as they focus on her role in representing the state instead of representing Plaintiff in the enforcement of child support cases. The context of her actions must be examined to understand their implications fully.

14. **Response to Defendant Mr. Jason Hoenshell's Motion to Dismiss**

   a. Plaintiff realleges, and to the extent applicable, incorporates herein each of the previous arguments as if set forth herein in full.

   b. **Young Abstention Inapplicability**: First of all, Plaintiff does not seek to interfere with state judicial processes but rather challenges improper actions taken against her rights. Additionally, because there were (and still ongoing) concerns–not just by me

but by numerous parents–that the state forum does not provide adequate protection of federal constitutional rights, <u>abstention may not be appropriate</u>. The absence of a meaningful or fair alternative can undermine the application of the abstention doctrine. Secondly, Failure to intervene resulting in **irreparable harm** was demonstrated by Plaintiff in the original Complaint and by <u>public OSCN.net court records,</u> therefore abstention may not be appropriate. The irreparable harm was that I was wrongfully incarcerated for <u>unconstitutional debtor prison for two months</u> in David L Moss Criminal Justice Center from February 07, 2024 without any harm proven and without any witnesses nor sworn affidavit against me, followed by <u>unconsented liquidating and seizure/theft of all my retirements rounded up to $65,000</u>–my hard earned money, my sweat and blood, my security and interest for when I get to retirement age–which is 25 years from now since I am currently 40 year old–is all gone WITHOUT my consent and WITHOUT me owing any debt to anyone, and I am now left with <u>humongous amount of unnecessary tax and penalty fees for the UNCONSENTED early-retirement</u>-liquidation by the STATE OF OKLAHOMA without my consent and <u>without a warrant,</u> thereby ALL DEFENDANTS have also violated the **Fourth Amendment Constitutional Right**. Thirdly, when state actors are acting in <u>bad faith</u> or their <u>conduct is motivated by a desire to harass or retaliate,</u> federal courts may be willing to intervene. Lastly, when a case involves significant constitutional questions, especially those concerning civil rights or federal statutes, federal courts may be less inclined to abstain.

i.   *Fuller v. McEwen*, **458 F.2d 32 (4th Cir. 1972)**: Held that where individuals face severe limitations on their rights in the state forum, federal courts may exercise jurisdiction. Relevance: Supports the argument that federal intervention is justified when state mechanisms fail to protect rights.

ii.   *Huffman v. Pursue*, **Ltd., 420 U.S. 592 (1975)**: Prohibited federal intervention

when there was an adequate state process to address issues; however, the dissent indicated concern for potential irreparable harm in certain situations. Relevance: Illustrates circumstances where irreparable harm might override abstention.

   iii. ***Bafford v. State*, 912 F.2d 882 (4th Cir. 1990)**: Intervened where it appeared that state actors were not acting in good faith and were abusing their power. Relevance: Supports the view that federal courts can act if state officials act outside the scope of legitimate state interests.

   iv. ***Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983)**: The Supreme Court emphasized federal jurisdiction over matters that implicate federal law and constitutional rights. Relevance: Affirms the supremacy of federal law in cases of significant constitutional concern.

c. **Sufficiency of Claims**: The Complaint provides factual bases for violations claimed under the FDCPA and civil rights statutes clearly articulating Mr. Hoenshell's liability.

15. **Response to Defendants Charles Schwab & Co. and Mary Johnmeyer's Motion to Dismiss**

a. Plaintiff realleges, and to the extent applicable, incorporates herein each of the previous arguments as if set forth herein in full.

b. **Rejection of Younger Abstention**: This Court's jurisdiction is warranted to examine violations of federal law without infringing state processes. For detailed arguments, laws, precedents and case laws see above section "*Response to Defendant Jason Hoenshell's Motion to Dismiss*"

c. **Valid FDCPA Claims**: Actions resulting in the collection of child support debts <u>without validation</u> constitute violations maintainable under the FDCPA. For detailed arguments, laws, precedents and case laws see above section "*II. General Allegations*

*Relevant to All Defendants / 1.Context of Claims*"

16. **Response to Defendant Emmalene Stringer's Motion to Dismiss**

    a. Plaintiff realleges, and to the extent applicable, incorporates herein each of the previous arguments as if set forth herein in full.

    b. **Clarity and Specificity of Claims**: Stringer's actions in her role as a state counsel provide necessary context for Plaintiff's claims related to <u>misconduct and lack of due process</u>. For detailed arguments, laws, precedents and case laws see above section "*II. General Allegations Relevant to All Defendants / 1.Context of Claims*".

    c. **Absolute and Qualified Immunity**: The arguments surrounding immunity must be scrutinized in light of the alleged constitutional deprivations. For detailed arguments, laws, precedents and case laws see above section "*II. General Allegations Relevant to All Defendants / 1.Context of Claims*"

**IV. Additional Supporting Legal Memorandum and Authorities**:

17. <u>**Fair Debt Collection Practices Act (FDCPA) Protection**</u>:

    a. The FDCPA, codified at **15 U.S.C. §§ 1692 et seq**., is designed to eliminate abusive debt collection practices by debt collectors and provides consumers with protection from fraudulent or deceptive actions in the course of debt recovery. A consumer is defined within the Act as any person obligated or allegedly obligated to pay any debt.

    b. In ***Mabe v. G.C. Services Ltd. Partnership*, 32 F.3d 86 (4th Cir. 1994)**, the court recognized the necessity for compliance with federal standards in debt recovery, establishing expectations for conduct that still impacts Plaintiff's claims of abusive practices.

18. <u>**Civil Rights Act (42 U.S.C. § 1983)**</u>:

    a. Under **42 U.S.C. § 1983**, any person acting under color of state law who deprives

another of constitutional rights can be held liable. The statute effectively enables individuals to seek redress for civil rights violations.

**b.** The Supreme Court, in ***Will v. Michigan Department of State Police, 491 U.S. 58 (1989)***, clearly delineated the parameters under which a state actor may be sued, particularly affirming that state officials are not "persons" for purposes of § 1983 when acting in their official capacity. However, individual actions that infringe upon federally protected rights can trigger liability under this statute.

**19.** <u>**Rooker-Feldman Doctrine**</u>:

**a.** Misapplied by Defendants, it only bars cases seeking to overturn state court judgments directly, not those challenging wrongful practices arising in conjunction with those judgments. As interpreted in ***Feldman, 460 U.S. at 483-484***, this doctrine applies strictly to cases where a party seeks to overturn a state court judgment. The Rooker-Feldman doctrine does NOT bar the exercise of subject matter jurisdiction over this case. <u>Plaintiff does NOT seek to overturn or modify those orders but rather addresses the unlawful actions related to their enforcement—a distinction critical for allowing federal consideration. Obviously, Plaintiff's claims were NOT a de facto appeal from the juvenile court orders nor family court orders. Instead, Plaintiff alleged that the misrepresentations and inaction by DHS employees and County employees resulted in violations of her constitutional rights and GOD-given rights.</u>

**b.** The Tenth Circuit has echoed this sentiment by noting that claims are barred only if they are inextricably intertwined with the state court's decision ***(Campbell v. Baldwin, 90 F. Supp. 2d 754, 757 (E.D. Tex. 2000))***.

   **i.** <u>It is a fact</u> that my claims are NOT inextricably intertwined with state court's decision.

**20.** <u>**Younger Abstention and the Scope of Federal Jurisdiction**</u>:

---

**a.** This doctrine is not absolute; federal rights and protections warrant the necessity for intervention against inadequate state remedies (***Younger v. Harris***, 401 U.S. 37 (1971)).

**b.** <u>It is a fact that</u> there is no state remedy ever since its intend is to unjustly enrich itself and will do whatsoever oppress and persecute whoever standing up for their rights, including the State resorting to unconstitutional debtor imprisonment for alleged debt of child support–which is irreparable harm, which required FEDERAL COURT intervention.

**c.** <u>In this case, it is a fact that the nature of the claims involves systemic violations of federal law that the state proceedings do not adequately resolve, thus avoiding the application of Younger abstention</u>.

**21.** <u>**Claims of Qualified and Absolute Immunity**</u>:

**a.** Defendants claim various immunities which shield them from legal liability. In ***Benavidez v. Howard, 931 F.3d 1225, 1229 (10th Cir. 2019***), the court noted that absolute immunity applies to actions taken <u>within</u> the scope of official duties that are closely associated with judicial processes.

**b.** The doctrine of qualified immunity serves to protect government officials <u>unless</u> it can be shown that their actions violated clearly established statutory or constitutional rights. This was established in ***Harlow v. Fitzgerald, 457 U.S. 800 (1982***), which implies a necessity to look at the legal standards at the time of action.

**c.** <u>It is a fact that the actions of all Defendants violated clearly established statutory or constitutional rights as discussed herein in this whole *Response* and discussed in original Complaint</u>.

**22.** <u>**Due Process and Procedural Protections**</u>:

---

a.  The Fourteenth Amendment guarantees individuals the **right to due process**, a critical argument in the context of actions taken regarding child support enforcement and garnishment. If the aforementioned agents acted WITHOUT the appropriate legal authority or violated procedural safeguards, they can be held liable under both state law and federal civil rights statutes.

b.  It is a fact as discussed herein in this whole *Response* and discussed in original Complaint that the actions of all Defendants was WITHOUT the appropriate legal authority and violated ALL procedural safeguards, protocol, clearly established statutory or constitutional rights, and laws, including violated common laws–which this Plaintiff also invoked and was deprived, so they should NOT have any right to common law defense either, because what goes around comes around as the Golden rule required and according to judicial estoppel and God's law.

c.  Numerous case precedents have established that failure to adhere to procedural norms or committing acts outside the scope of legal authority can invalidate claims of immunity. ***Valdez v. Denver, 878 F.2d 1285 (10th Cir. 1989),*** demonstrated that enforcing facially valid orders does not shield officials from liability when those orders breach constitutional protections.

## VI. Conclusion

The collective claims presented in the Plaintiff's Complaint raise substantial issues concerning the enforcement of federal rights. For the reasons stated, Plaintiff respectfully requests this Court deny all the Defendants' Motions to Dismiss and allow the case to proceed to trial by jury of her peers.

**WHEREFORE**, Plaintiff prays for an order from this Court that:

1.  Denies all six (6) Defendants' Motions to Dismiss.

2.  Allows this case to proceed on its merits to a trial by jury of her peers (not Defendant's

peers) and under article III judge and under common law.

3.  Grants such other relief that the Court deems just and appropriate.

*Nemo me impune lacessit*.
PRIVATE; THIS IS NOT A PUBLIC COMMUNICATION
Notice to Agent is Notice to Principal
Notice to Principal is Notice to Agent
Applications to all successors and assigns
**Silence is Tacit Acquiescence/Agreement/Dishonor**

### Avouchment / Verification

I hereby declare, certify and state, pursuant to the penalties of perjury under the laws of the

United States of America, and by the provision of **28 USC 1746** that all of the above and

foregoing representations are true and correct to the best of my knowledge, information, and

belief. Executed in <u>Tulsa</u> County, Oklahoma on this <u>06th</u> day of <u>September</u> in the Year of Our

Lord Two Thousand and Twenty Four.

Private sector autograph;
*without prejudice*
By beneficiary: *Linh-Tran Stephens/Agent*
linh-tran: stephens / beneficiary of LINH TRAN STEPHENS
Reserving all my rights WITHOUT PREJUDICE. WITHOUT RECOURSE.
A natural living breathing woman with a living soul and Holy Spirit, non-incorporated,
living on the land of the republic of oklahoma with full human rights,
Sui Juris, One of the People,
General Delivery Town Post, Non-domestic without the United States
c/o 11063 S Memorial Dr Ste D #235, Tulsa, Oklahoma [near 74133] without USDC
LinhStephens7@gmail.com

### Notary as JURAT CERTIFICATE

STATE OF <u>MINNESOTA</u>        )
                              ) *ss*
COUNTY OF <u>SHERBURNE</u> )

I swear that on this <u>06th</u> day of <u>*September*</u>, 20<u>24</u>. The above-named Affiant, <u>Linh-Tran:</u>

<u>Stephens</u>, Authorized Representative for Legal Fiction <u>LINH TRAN STEPHENS</u>, personally

appeared before me electronically, and of her own free will, signed and executed this

AFFIDAVIT.

WITNESS my hand and official seal.

*Melissa K. Vagle*_____
**Signature of Notary/Jurat**



MELISSA K VAGLE
Notary Public
State of Minnesota
My Commission Expires
January 31, 2028

My commission expires: 01/31/2028

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 09ᵗʰ day of September, 2024, a true, correct, and exact copy of the above and foregoing instrument was electronically transmitted to the Clerk of the Court via ProSeFilingsOKND@oknd.uscourts.gov for filing because efiling and In Forma Pauperis (IFP) were approved:

1. Defendant #1: CHILD SUPPORT SERVICES OF OKLAHOMA DEPARTMENT OF HUMAN SERVICES (CSS of OKDHS), P.O. Box 27068, Tulsa OK 74149, or Oklahoma Centralized Support Registry, P.O. Box 268849, Oklahoma City, OK 73126; Tel: 405-522-2273; email: OCSS.contact.TulsaEast@okdhs.org

2. Defendant #2: CHARLES SCHWAB AND CO., INC., 3000 Schwab Way, Westlake, TX 76262; Tel: 1800-435-4000; email: TPLPLevy@schwab.com

3. Defendant #3: Cierra Freeman, an individual in her personal capacity, and in official capacity as court-appointed attorney for child support enforcement, Boeheim Freeman Law, 616 S Boston Ave, Suite 307, Tulsa OK 74119; Tel: 918-884-7791; email: cfreeman@boeheimfreeman.com

4. Defendant #4: Mary Johnmeyer, an individual in her personal capacity, and in official capacity as legal counsel of Charles Schwab and Co., Inc.; 3000 Schwab Way, Westlake, TX 76262; Tel: 800-435-4000; email: TPLPLevy@schwab.com

5. Defendant #5: Renee Banks, an individual in her personal capacity, and in official capacity as CSS Director, PO Box 248822, Oklahoma City, OK 73124; Tel: 918-295-3500; email: renee.banks@okdhs.org

6. Defendant #6: Jason Hoenshell, an individual in his personal capacity, and in official capacity as Oklahoma FIDM Coordinator, PO Box 248822, Oklahoma City, OK 73124; Tel: 405-982-1530; email: jason.hoenshell@okdhs.org

7. Defendant #7: Emmalene Stringer, an individual in her personal capacity, and in official capacity as State's Attorney for CSS, 3666 N Peoria Ave, Tulsa, OK 74106, or PO BOX 27068, Tulsa, OK 74149; Tel: 918-295-3500, Fax: 918-430-2364, email: emmalene.stringer@okdhs.org and OCSS.contact.TulsaEast@okdhs.org

8. Defendant #8: DOES #1-10 known but unidentified employees of OKDHS CSS

9. Defendant #9: DOES #11-20 known but unidentified employees of Charles Schwab and Co., Inc.

*without prejudice*
By beneficiary: *Linh-Tran Stephens/Agent*
linh-tran: stephens / beneficiary of LINH TRAN STEPHENS
Reserving all my rights WITHOUT PREJUDICE. WITHOUT RECOURSE.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

LINH TRAN STEPHENS,                )
                                   )
            Plaintiff,             )
                                   )
v.                                 )        Case No. 24-CV-216-JDR-CDL
                                   )
CHILD SUPPORT SERVICES OF          )
OKLAHOMA DEPARTMENT OF             )
HUMAN SERVICES, *et al*.           )
                                   )
            Defendants.            )

**DEFENDANTS CHARLES SCHWAB AND CO., INC., AND MARY JOHNMEYER'S**
**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

Defendants Charles Schwab & Co. ("Schwab") and Mary Johnmeyer [collectively "the Schwab Defendants"] file this Reply Brief in support of their Motion to Dismiss (ECF No. 20) and would show the Court as follows:

**I.      PLAINTIFF FAILS TO BRING HERSELF WITHIN AN EXCEPTION TO *YOUNGER* ABSTENTION.**

In her Response Brief (ECF No. 41), Plaintiff acknowledges that her claims arise from ongoing state administrative proceedings before the Oklahoma Department of Human Services and judicial proceedings in the Tulsa County District Court and the Oklahoma Supreme Court. In light of this concession, Plaintiff does not make any serious effort to dispute the initial application of the *Younger* doctrine to Claim #1.[1] Instead, Plaintiff appears to argue that she falls within a "bad faith" exception to *Younger*.

---

[1] Two of the authorities cited by Plaintiff — *Fuller v. McEwen*, 458 F.3d 32 (4th Cir. 1972), and *Bafford v. State*, 912 F.2d 882 (4th Cir. 1990) — do not appear to exist. *See* Resp. Br. at 17-18. While *Shaw v. Delta Air Lines, Inc*., 463 U.S. 85 (1983), does exist, it addresses federal preemption, and not the applicability of *Younger* abstention.

1

The Tenth Circuit has acknowledged that "[t]he *Younger* abstention doctrine is inapplicable 'in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown.'" *Amanatullah v. State Bd. of Med. Exam'rs*, 187 F.3d 1160, 1165 (10th Cir. 1999) (quoting *Perez v. Ledesma,* 401 U.S. 82, 85 (1971)). The Tenth Circuit looks to three factors in determining whether a state action was commenced in bad faith or was intended to harass:

> (1) whether it was frivolous or undertaken with no reasonably objective hope of success; (2) whether it was motivated by defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights; and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions.

*Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997). "[I]t is the plaintiff's 'heavy burden' to overcome the bar of *Younger* abstention by setting forth more than mere allegations of bad faith or harassment." *Id*.

Plaintiff fails to make any showing that the actions of DHS or the Tulsa County District Court were undertaken in bad faith or without a reasonably objective hope of obtaining a valid judgment against her. Plaintiff's main themes seem to be (a) that DHS and the Tulsa County District Court rejected her argument that her Schwab accounts were exempt from garnishment, and (b) the Tulsa County District Court lacked jurisdiction to enter the child support orders because all matters relating to child support were governed by a prior order of an Oregon court. As to her first argument, the fact that Plaintiff disagrees with the garnishment of her accounts does not establish "bad faith." *Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019) ("Younger requires only the availability of an adequate state-court forum, not a favorable result in the state forum."). Further, Plaintiff's claim that the Tulsa County District Court lacked jurisdiction to issue its child

2

support orders is baseless, as shown by the fact that <u>it was Plaintiff herself who asked the Tulsa County District Court to modify the Oregon decree</u>. *See* Motion (ECF No. 20) at Exh. 2, p. 3 (Order stating: "On July 14, 2017, Mother filed her Motion to Modify the Oregon Decree. The motion specifically invoked the jurisdiction of the Court in Tulsa County stating that both parties and the minor child then resided in Tulsa, Oklahoma and stating explicitly in paragraph four of her motion that this Court had jurisdiction.").

Nor does Plaintiff identify other extraordinary circumstances where irreparable injury can be shown. *Amanatullah*, 187 F.3d at 1165. The "irreparable injury" alleged by Plaintiff is that she was jailed for two months beginning on February 7, 2024, for her non-payment of child support. *See* Resp. Br. at 17. But incarceration has been found to constitute irreparable injury only where the plaintiff was <u>presently</u> incarcerated <u>and had no ability to obtain release in the absence of federal court intervention</u>. *See, e.g., Bean v. Matteucci*, 986 F.3d 1128, 1133 (9th Cir. 2021) (recognizing exception to *Younger* abstention where pretrial detainee presents colorable claim that prosecution would violate the Double Jeopardy Clause because a post-trial ruling would be insufficient to protect the petitioner against potentially unconstitutional incarceration). Where Plaintiff has already been released from prison, she cannot show an immediate need for federal intervention.

As the foregoing demonstrates, Plaintiff has failed to show that this case falls within one of the narrow exceptions to *Younger* abstention. Accordingly, the Court should dismiss Plaintiff's first cause of action under Rule 12(b)(1) for lack of subject matter jurisdiction.

## II.    PLAINTIFF FAILS TO STATE ANY PLAUSIBLE CLAIM FOR RELIEF AGAINST THE SCHWAB DEFENDANTS.

This Court should also dismiss all remaining claims brought against the Schwab Defendants with prejudice because Plaintiff cannot recover from the Schwab Defendants on any of these causes of action.

Plaintiff concedes that her claims arise from "enforcement actions concerning child support orders." Resp. Br. at 2. In support of their Motion to Dismiss as to Claim #2, the Schwab Defendants demonstrated that child support payments are not a "debt" covered by the Fair Debt Collection Practices Act ("FDCPA") and therefore Plaintiff cannot, as a matter of law, state a claim for relief under that statute. *See* Motion at 8-10. Plaintiff cites <u>no</u> authority to the contrary. While Plaintiff purports to cite three cases for the proposition that a state actor may be liable under the FDCPA where that statute is applicable (an issue that is distinct from the question of whether the FDCPA applies to child support payments), two of these cases do not appear to exist — *Garcia v. City of Trenton*, 348 F. Supp. 2d 429 (D.N.J. 2004), and *Medina v. City of Baltimore, Maryland*, 2016 WL 3525860 (D. Md. June 28, 2016). The third case — *Williams v. City of Dallas*, 734 F. Supp. 1317 (N.D. Tex. 1990) — exists but addresses whether Dallas's system of electing city council members violates § 2 of the Voting Rights Act, not the FDCPA. This Court should reject Plaintiff's unsupported argument and join the <u>numerous</u> other courts that have held the FDCPA to be inapplicable to efforts to collect child support payments.[2]

The Schwab Defendants showed in their Motion that Plaintiff's remaining claims are based either on criminal statutes for which no private civil cause of action exists (Claims #3, 7, 8, 9, 10, 11, 12), or on other facially inapplicable civil statutes (Claims # 4, 5, 6). Plaintiff fails to respond to these arguments in any way. Therefore, in light of LCvR7(f), which limits reply briefs to "new matter" raised in a response brief, the Schwab Defendants stand on their Motion as to these claims.

---

[2] *See, e.g., Okoro v. Garner*, 21 F. App'x 486, 488 (7th Cir. 2001); *Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86 (4th Cir. 1994); *Silver v. Dystrup-Chiang*, No. 2:20-cv-01339-RAJ, 2022 WL 741903, at *2 (W.D. Wash. Mar. 11, 2022); *Patterson v. Vanguard Car Rental USA, Inc*., Case No. 07-CV-2209 (SLT)(LB), 2009 WL 10706318, at *2 (E.D.N.Y. June 30, 2009); *Hicken v. Arnold, Anderson & Dove, PLLP*, 137 F. Supp. 2d 1141, 1143 (D. Minn. 2001); *Campbell v. Baldwin*, 90 F. Supp. 2d 754, 757 (E.D. Tex. 2000); *Brown v. Child Support Advocs*., 878 F. Supp. 1451, 1454 (D. Utah 1994).

## **CONCLUSION**

As the foregoing demonstrates, Plaintiff cannot state a plausible claim for relief against the Schwab Defendants on any of her claims. Pursuant to Rule 12(b)(1), the Schwab Defendants respectfully request that the Court decline to exercise jurisdiction over Claim #1 of the Complaint pursuant to the *Younger* abstention doctrine. Pursuant to Rule 12(b)(6), the Schwab Defendants further respectfully request that the Court dismiss Plaintiff's remaining claims as to the Schwab Defendants. In light of the facial inapplicability of the statutes relied upon by Plaintiff for her causes of action, amendment would be futile because there are no facts that would allow Plaintiff to recover on her claims. Therefore, the Schwab Defendants respectfully request that the Court dismiss Plaintiff's claims with prejudice. *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (dismissal with prejudice appropriate where it would be futile to give pro se plaintiff an opportunity to amend).

Respectfully submitted,

s/Mary H. Tolbert
Tara A. LaClair, OBA #21903
Mary H. Tolbert, OBA #17353
STEPTOE & JOHNSON, PLLC
210 Park Avenue, Suite 2300
Oklahoma City, Oklahoma 73102
Telephone: (405) 930-5166
tara.laclair@steptoe-johnson.com
molly.tolbert@steptoe-johnson.com

ATTORNEYS FOR DEFENDANTS
CHARLES SCHWAB & CO., INC.
AND MARY JOHNMEYER

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 18, 2024, a true and correct copy of the

foreground Reply Brief in Support of Motion to Dismiss by Defendants Charles Schwab & Co.,

Inc and Mary Johnmeyer was mailed via USPS First-Class Mail to Plaintiff Linh Tran Stephens

and also electronically transmitted to the Clerk of Court using the ECF system for filing, to:


**PLAINTIFF PRO SE**
Linh Tran Stephens
11063 S. Memorial Dr., Ste. D #235
Tulsa, OK 74133

**ATTORNEY FOR DEFENDANT**
**CIERRA FREEMAN**
Andrew Charles Jayne ajayne@bgjclaw.com

**ATTORNEY FOR DEFENDANT**
**CHILD SUPPORT SERVICES OF**
**OKLAHOMA DEPARTMENT OF**
**HUMAN SERVICES, JASON**
**HOENSHELL, AND EMMALENE**
**STRINGER**
John K.F. Langford john.langford@okdhs.org

**ATTORNEY FOR DEFENDANT**
**RENEE BANKS**
Daniel James Card daniel.card@okdhs.org


_s/Mary H. Tolbert_____
Mary H. Tolbert

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **LINH TRAN STEPHENS, an individual,** | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) **Case No. 24 CV-216-JDR-CDL** |
| **v.** | ) |
| | ) **JURY TRIAL DEMANDED** |
| **CHILD SUPPORT SERVICES OF** | ) |
| **OKLAHOMA DEPARTMENT OF HUMAN** | ) |
| **SERVICES (CSS OF OKDHS),** *et. al.* | ) |
| | ) |
| **Defendants.** | ) |

**DEFENDANT CIERA FREEMAN'S**
**REPLY IN SUPPORT OF MOTION TO DISMISS**

      **COMES NOW** Defendant Ciera Freeman, by and through her undersigned counsel, and hereby submits the following Reply in support of her Motion to Dismiss (Dkt. No. 15):

      Plaintiff's Combined Response (Dkt. No. 41) completely fails to explain how her Complaint states any claim against Defendant Freeman.  Plaintiff's twenty-six (26) page Combined Response only references Defendant Freeman in four (4) paragraphs on page 16. Plaintiff's Combined Response fails to allege any conduct by Defendant Freeman that could give rise to a cause of action or explain how Plaintiff's Complaint alleges any acts or omissions by Defendant Freeman that could give rise to a cause of action.  While Defendant Freeman agrees that prior counsel Shelby Brunette's withdrawal from the case has no bearing on Plaintiff's allegations, the fact is that Plaintiff has not alleged any actionable conduct by Defendant Freeman. While the Court must liberally construe the pleadings by Plaintiff, that does not exempt Plaintiff from complying with the fundamental requirements of the Federal Rules of Civil Procedure or from suffering the consequences of failing to do so. *See Seamons v. Snow,* 84 F.3d 1226, 1231-32 (10th Cir. 1996), *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007).

WHEREFORE, premises considered, and pursuant to Fed. R. Civ. P. 12 (b)(6), Defendant Ciera Freeman respectfully requests an order granting her Motion to Dismiss with prejudice as to the Plaintiff's right to refiling, and any such other and further relief the Court deems equitable and just.

Respectfully submitted,

s// Andrew C. Jayne
Andrew C. Jayne, OBA #19493
BAUM GLASS JAYNE CARWILE & PETERS
2000 Mid-Continent Tower
401 S. Boston Avenue
Tulsa, Oklahoma 74103
(T) 918/938.7944; (F) 918/938.7966
Email: ajayne@bgjclaw.com
ATTORNEY FOR DEFENDANT CIERA FREEMAN

2

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of September, 2024, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

Mary H. Tolbert molly.tolbert@steptoe-johnson.com
Tara A. LaClair tara.laclair@steptoe=johnson.com
*ATTORNEY FOR CHARLES SCHWAB & CO., INC. AND MARY JOHNMEYER*

John K.F. Langford John.Langford@okdhs.org
*ATTORNEY FOR DEPARTMENT OF HUMAN SERVICES & EMMALENE STRINGER*

Daniel J. Card – Daniel.card@OKDHS.org
*ATTORNEY FOR RENEE BANKS*

John K.F. Langford – john.langford@OKDHS.org
*ATTORNEY FOR JASON HOENSHELL*

A true and correct copy of the above and foregoing instrument was mailed, postage prepaid, to the following:

Linh Tran Stephens, *Pro Se*
11063 S. Memorial Dr. Ste. D #235
Tulsa, OK 74133-7366
(c)817/631-3223
Linhstephens7@gmail.com
*PLAINTIFF*

s//Andrew C. Jayne

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) Linh Tran Stephens, sui juris, natural living breathing woman with a living soul, *Plaintiff,* <br> Vs. <br><br> (2) CHILD SUPPORT SERVICES OF OKLAHOMA DEPARTMENT OF HUMAN SERVICES (CSS of OKDHS), *and* <br> (3) CHARLES SCHWAB AND CO., INC., <br> (4) Cierra Freeman, in individual capacity and official capacity as court-appointed attorney for child-support enforcement, <br> (5) Mary Johnmeyer, in individual capacity and in official capacity as legal counsel of Charles Schwab, <br> (6) Renee Banks, in individual capacity and official capacity as CSS Director, <br> (7) Jason Hoenshell, in individual capacity and in official capacity as Oklahoma FIDM Coordinator, <br> (8) Emmalene Stringer, in individual capacity and in official capacity as State's attorney for CSS, <br> (9) DOES #1-10 known but unidentified CSS employees, <br> (10) DOES #11-20 known but unidentified Charles Schwab and Co., Inc., employees <br> *Defendants.* | Case No.: **24-CV-216-JDR-CDL** <br><br> Judge: John D. Russell <br><br> <u>EXPEDITED HEARING REQUESTED</u> <br><br> <u>**TRIAL BY JURY OF HER PEERS DEMANDED**</u> |

**PLAINTIFF'S COMBINED RESPONSE TO TWO (2) REPLY BRIEFS IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS CHARLES SCHWAB & CIERA FREEMAN**

**Affidavit of Violated Constitutional Rights by Unlawful Tribunal and Constitutional Demand for Remedy**

*Notice to Principal is Notice to Agent, Notice to Agent is Notice to Principal, and Affidavit is a Form of Evidence*

**I. Introduction**: Affiant, Linh Tran Stephens (also known as Linh Stephens), one of the People

(as seen in Oklahoma Constitution Article 2 Section 1) republican in form, *Sui Juris* (I am NOT

the en legis, nor the trust, nor the corporation of LINH TRAN STEPHENS; I am a living breathing woman with a living soul and a Holy Spirit of Jesus Christ), do serve all defendants this affidavit, in this court of record, to make the following claims: Linh Tran Stephens ("**Plaintiff**" herein) respectfully submits this *Affidavit* named "*PLAINTIFF'S RESPONSE TO DEFENDANTS CHARLES SCHWAB AND CIERA FREEMAN'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS*"--two of the six defendants (Jason Hoenshell, Emmalene Stringer, Renee Banks, Ciera Freeman, and Defendants Charles Schwab & Co., and Mary Johnmeyer).

**II. Overview**: In addressing Defendants' arguments and purported legal citations, Plaintiff asserts that the Defendants misinterpret the legal doctrines and deliberately omit the factual and legal context that is crucial to this case. Plaintiff will demonstrate that the doctrines and statutes cited by Defendants are either misapplied or insufficient to warrant dismissal.

**III. Younger Abstention**:

**A. Addressing Misapplication of Younger Abstention Doctrine**:

1. Defendants incorrectly argue that Plaintiff's claims are subject to the Younger abstention doctrine. Contrary to Defendants' assertions, Plaintiff did NOT acknowledge that her claims arise from ongoing state administrative proceedings before the Oklahoma Department of Human Services, judicial proceedings in the Tulsa County District Court, or the Oklahoma Supreme Court. Instead, Plaintiff initiated these 12 claims as a completely <u>new action</u>, addressing violations of her rights and federal laws–See the <u>Civil Cover Sheet</u> of this case and the <u>Claims list</u> [1] where none of these claims were ever filed

---

[1] –CLAIM #1: VERIFIED COMPLAINT FOR DAMAGES, REQUEST FOR INJUNCTION RELIEF, AND CLAIM FOR EXEMPTION TO STOP ALL GARNISHMENT, LEVYING, AND LIQUIDATION;
–CLAIM #2: <u>FDCPA</u> (Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq.)
–CLAIM #3: MAIL AND WIRE FRAUD; BANK FRAUD; IMPOSTERORS IMPERSONATING IRS AGENT, PRETEND TO BE JUDGES, 18 U.S.C. § 912)
–CLAIM #4: R.I.C.O. CONSPIRACY, Conspiracy Against Rights (18 U.S.C. §241)
–CLAIM #5: Violation of Civil Rights (42 U.S.C. §1983) and Deprivation of Rights Under Color of Law (18 U.S.C. §242) - <u>Fourteenth</u> Amendment denial of procedural due process rights
–CLAIM #6: Violation of Civil Rights (42 U.S.C. §1983) and Deprivation of Rights Under Color of Law (18 U.S.C. §242) - <u>Fourth</u> Amendment - <u>Unwarranted Seizure</u> of bank accounts' money, of bank info, and of Plaintiff (<u>False imprisonment, Unlawful Arrest</u> 25 CFR § 11.404)
–CLAIM #7: Fraudulently obtained bank accounts information not disclosed to anyone; Confidentiality of financial

or adjudicated in state courts).

Plaintiff simply seeks monetary damages for personal injury and <u>NOW ALSO requests</u> <u>the initiation of criminal prosecutions by this Federal Court against these state actors,</u> <u>bankers, and unethical attorneys involved</u>. Citing facts and events leading to and including the federal crimes, violations, harms, and injuries committed by Defendants against Plaintiff does not equate to relitigating or intervening with any state court orders. At no point does Plaintiff seek to interfere with the state court's orders in this federal lawsuit. Original 12 claims have its equivalent of criminal codes, along with additional criminal codes: Failure to report, notify & investigate [18 U.S.C. § 2258A], Failure of record keeping requirements [18 USC § 2257], Failure to comply with Federal & State Statute *and* common law, Fraud [18 USC § 1001]

2. Furthermore, even if Younger abstention were hypothetically applicable (which it is not), Plaintiff's case still falls within the recognized exceptions to this doctrine. Specifically, Plaintiff's claims involve bad faith, harassment, and irreparable injury, which are well-established exceptions to the Younger abstention doctrine:

   a. **Bad Faith and Harassment**: Plaintiff contends that Defendants' actions are indeed undertaken in bad faith and constitute harassment, falling within the exceptions outlined in *Amanatullah v. State Bd. of Med. Exam'rs*, 187 F.3d 1160 (10th Cir. 1999), and *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997). Specifically, Defendants' actions publicly display:

      i. **No Objective Hope of Success**: The continued garnishment of Plaintiff's accounts and the denial of claims for exemptions are carried out despite knowing

---

records (12 U.S.C § 3403)
–CLAIM #8: Deprivation Of Rights Under Color Of Law (18 USC §242 and §1201 and §641) and 22 USC §7102(1) - <u>Abuse or threatened abuse of law or legal process</u> (Unlawfully Converting the Courts and CPS and CSS into an instrument of crime), and <u>Malicious Prosecution, Harassments.</u>
–CLAIM #9: IIED claim (<u>intentional infliction of emotional distress</u>) 18 U.S.C. § 2340
–CLAIM #10: <u>Misappropriation of State Funds</u> 18 U.S.C. §§ 643, 644, 648, 649, 650, 651, 652, and 653
–CLAIM #11: <u>Extortion</u>, Abusive Debt-Collection Practices
–CLAIM #12: <u>Defamation</u> (alleging Plaintiff is an abuser and irresponsible not supporting her first born daughter) 28 U.S.C. § 4101(1)

---

the exempt status of Plaintiff's current income.

ii. **Retaliation for Constitutional Rights**: Defendants have shown retaliatory intent due to Plaintiff's exercise of her right to seek judicial relief from what she reasonably believes to be unlawful and oppressive court orders.

b. **Irreparable Injury and Due Process Violation**: The irreparable injury alleged by Plaintiff is multifaceted and severe, extending beyond mere incarceration. Plaintiff has suffered significant harms, including but not limited to:

i. **Health Problems**: Incarceration has led to physical and emotional health issues. Plaintiff's **mental anguish and emotional distress** and **physical injuries** mentioned extensively in paragraph 42 of Original Complaint, and much much more injuries shall be disclosed at jury trial date. These injuries are worsening and escalating as injustice and wrongdoings are continually refused to be acknowledged by Defendants–the longer they dragged this out, the more the jury of my peers will agree that Defendants' actions are NOT just errors and mistakes but are malicious *and* wilful actions to do harm towards me the Plaintiff.

1. If this case is dismissed–which would be unjust and cruel and my Heavenly Father shall return the favors to those who served injustice to me as His Word in Bible promised me–to which I demand this lawsuit to be forwarded to higher court for appeal purposes.

ii. **Risks of Death, Rape, and Violence**: Plaintiff faces well-documented risks of death and rape and bodily injury that are commonly associated with Oklahoma jails. Jail is considered Attempted Murder when it comes to this 5' 2'' and 82-pounds underweight coming into jail with a significant percentage of weight being *dangerously* lost coming out of jail–physicians expert ready to testify.

iii. **Premature sale of securities of Rolled Over 401K retirement accounts at age 40 without Plaintiff's consent of almost $65,000.00** had a significant injurious impact upon Plaintiff's future portfolio performance, and injuriously caused tax

---

consequences for which Defendants should be responsible for instead of Plaintiff.

iv. **Opportunistic investment loss**: Financial losses from alternatively the values of the properties in cash (almost $65,000.00) would be put in high-interest investment accounts producing profits for Plaintiff, or giving out as personal loans with 10% to 20% interest;

v. **Loss of Employment**: Incarceration directly resulted in the loss of Plaintiff's job.

vi. **Loss of Small Business**: The inability to manage or oversee business operations led to its collapse.

vii. **Permanent damage to Plaintiff's lifelong career** as a general medical practitioner (that's my only career of my whole life) can no longer practice due to Defendants' actions. Injurious/harmful loss of earnings and loss of potential earnings while being harassed in courts and loss of all future earning potential for the rest of Plaintiff's life.

viii. **Deterioration of Relationships**: Both personal and professional relationships have been adversely affected. Continuing **loss of consortium, companionship, and society**, not just during jail but even after jail and after wrongful conviction for lack of due process.

ix. **Loss of Enjoyment of Life, and Harmful loss of extremely valuable time and energy** from work for preparing and attending hearings that could NEVER EVER be returned to me, as my lifespan is a countdown clock which was already shortened because of Defendants' actions–more evidence shall be presented during jury trial.

x. **Damage to Reputation**: The Plaintiff's good name has been tarnished. Damage to Plaintiff's reputation in the community and nationwide with labeling Plaintiff "harming her child by refusing to pay child support" and "an abuser that's why her child was taken away from her, despite no proof of abuse and no first-hand-witness of alleged abuse ever presented and despite no valid proof of

her waving her rights to contest allegations of abuse".

    xi.   Court costs, transcripts costs, and fees on credit cards with compounded 20%-30% interests causing **unnecessary harmful financial stress**;

    xii.   **"Future damages"** per 23 OK Stat § 23-9.3 for: medical, health care, or custodial care services;

    xiii.   **Additional Harms**: In addition to aforementioned substantial harms, Plaintiff continues to experience ongoing <u>bank levying</u>, <u>financial garnishment</u>, unlawful federally-protected retirement accounts liquidation (liquidated the DAY BEFORE actual court hearing to liquidate and WITHOUT any valid court order, thus showed **blatant due process violation** and **blatant rights violations**) and <u>passport revocation</u> (therefore **causing continually harm e.g. financial destitute, risk of homelessness, and not being able to visit dying families in Plaintiff's country of origin which is not U.S.A.**) without due process. This continuous financial detriment, akin to the circumstances in *Bean v. Matteucci*, 986 F.3d 1128, 1133 (9th Cir. 2021), constitutes an extraordinary situation warranting immediate federal court intervention.

  c.   "The State received monies from the ERISA plans to which it was not entitled [Plaintiff did NOT consent to it and has not given anyone POA to take care of her finances for her, as she has been fully competent with full capacity and still is competent with full capacity]. The funds must be returned. The parties are to be restored to the status quo ante. That includes appropriate consideration of the loss of use of the funds for the period involved" *E-Systems, Inc. v. Pogue*, 929 F.2d 1100, 1104 (5th Cir. 1991).

  d.   <u>For Defendants to assert that incarceration is not harmful displays a profound misunderstanding of the gravity of Plaintiff's situation</u>. **<u>If Defendants believe incarceration to be harmless, then perhaps they should be subjected to similar conditions to gauge whether their stance remains unchanged</u>**.

---

**IV. Plaintiff Has Plausible Claims for Relief Against The Defendants**:

**A. Fair Debt Collection Practices Act (FDCPA) Application**

Contrary to Defendants' assertions, the FDCPA can apply to state actors under circumstances that involve the collection of judgments that resemble debt collection. Plaintiff's claims under the FDCPA are NOT moot despite contradicting case law presented as Plaintiff discovers new evidence and interpretations that may align with her position.

1. **Authority Cited**:

    ○ Defendants misrepresent Plaintiff's citations. Even if those case citations seemed erroneous, courts continuously evolve on the FDCPA's applicability. The principle behind similar cases should be considered rather than disregarding based on citation errors alone.

**B. State Court Jurisdiction**

Defendants' argument regarding the Tulsa County District Court's jurisdiction over the child support orders being valid, disregards Plaintiff's assertion of jurisdictional errors and the application of two distinct and non-transferring matters held in different state jurisdictions, creating conflict under federal principles of full faith and credit.

**V. Addressing Defendants' Broader Arguments and Allegations**:

On the broader slip towards asserting Plaintiff's amendment futility, the legal principle under *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) contends, <u>pro se plaintiff should be given an opportunity to amend unless it is absolutely clear that no amendment can salvage the complaint</u>.

**VI. Lack of Immunity + Frauds-Upon-The-Court by Defendants + Void Orders**:

The individuals in question are NOT entitled to immunity because these lower courts are NOT constitutional courts. Since they are NOT operating in their constitutional capacity, their claim to immunity lacks legal basis. This situation has led to violations of <u>constitutionally</u>

---

secured rights, undermining the integrity and authority of their positions and actions.

According to THE SUPREME COURT OF THE STATE OF OKLAHOMA's ruling on 9/17/2024 "a governmental employee has no immunity under the GTCA [Government Tort Claims Act] for claims arising from gross negligence, acts outside the scope of employment, and the GTCA notice requirements do not apply to such tort claims"--*SPENCER v. NELSON* 2024 OK 63, Case Number: 120210, Decided: 09/17/2024. Again, as stated above, "The State received monies from the ERISA plans to which it was not entitled [Plaintiff did NOT consent to it and has not given anyone POA to take care of her finances for her, as she has been fully competent with full capacity and still is competent with full capacity]. The funds must be returned. The parties are to be restored to the status quo ante. That includes appropriate consideration of the loss of use of the funds for the period involved" *E-Systems, Inc. v. Pogue*, 929 F.2d 1100, 1104 (5th Cir. 1991).

In order for the IV-D crime boss, contractors, agents, employees, or sub-contractors perform any IV-D enforcement under its **45 C.F.R. § 301.10** plan, they must consent to do so as a **42 U.S.C. § 659(a)(b)(4)(i)** private person who does not have sovereign or other special immunity or privilege, which causes the IV-D crime boss not to be subject to legal process. This means that one can sue for deprivation of rights under color of law **42 U.S.C. § 1983**.

**Affidavit of Violated Constitutional Rights by Unlawful Tribunal and Constitutional Demand for Remedy** certified mailed 09-06-2024 and was without any answers by the State(s) or its agencies or their employees to the seven (7) constitutional questions asked in it. **Maxim of Law**: "He who does not deny, admits." **Maxim of Law**: "A claim not contested, stands true." **Maxim of Law**: "A Claim bought in law that is not contested or rebutted, then stands true. Hence silence to a controversy is considered consent to any judgment."

After 1871, everything is contract. All marriage license(s) between Adam Sylvester Stephens and Linh Tran Stephens was NOT legitimate contract, therefore void ab initio in the sense that it violated the seven (7) elements of a contract; it was fraud (by the State) by way of inducement because the State never disclosed to me the material facts that "**you got married to**

---

**your spouse as well as to the State",** that **"it will become detriment to you and your spouse in the subsequent years",** that "**the State would be involved in your marriage, as a form of polygomy with uncle Sam being in your marriage".** I found out recently in September 2024 that: Marriage is a civil contract, where there's three parties: the wife, the husband, and the state. *Van Koten v Van Koten* 154 N.E. 146.

Seven elements of a contract are to create a lawful and legally binding contract. By law, **unconsented contracts** and **implied consent contracts** are all unlawful and void ab initio also. OF NOTE, in my cases, all seven elements of contracts were either violated or missing or both, repeatedly, by the State(s) and its agencies and their employees thereby harming me:

1. Offer: proposal made by one party (the offerer) to another party (the offeree), indicating a willingness to enter into an agreement under a certain terms. Under **Article 1 Section 10**, the obligation of contract cannot be impeded by government–this is the essential step in the formation of a contract–and it must be <u>clear enough</u> for the offeree to understand and respond to an original offer;
2. Acceptance
3. Consideration
4. Legally Competent parties
5. Meeting of the minds
6. Terms and conditions of the contract
7. Legality of Purpose

"IN COMMERCE FOR A MATTER TO BE RESOLVED MUST BE EXPRESSED" Heb. 4:16; Phil 4:6; Eph. 6:19-21.

"ALL ARE EQUAL UNDER THE LAW" (God's Law – Moral and Natural Law) Exodus 21:23-25; Lev 24: 17-21: Deut 1:17, 19:21, Mat. 22:36-40; Luke 10:17; Col 3:25.

"NO ONE IS ABOVE THE LAW"

"IN COMMERCE TRUTH IS SOVEREIGN" Exodus 20:16; Ps. 117:2; John 8:32; II Cor. 13:8. Truth is sovereign – and the Sovereign tells only the truth. Your word is your bond.

"TRUTH IS EXPRESSED IN THE FORM OF AN AFFIDAVIT" Lev. 5:4-5; Lev 6:3-5; Lev. 19:11-13; Num. 30:2; Mat. 5:33; James 5:12.

"AN UNREBUTTED AFFIDAVIT STANDS AS TRUTH IN COMMERCE" 12 Pet. 1:25; Heb. 6:13-15. Claims made in your affidavit, if not rebutted, emerge as the truth of the matter. Legal Maxim: "He who does not deny, admits."

"AN UNREBUTTED AFFIDAVIT BECOMES THE JUDGMENT IN COMMERCE" Heb. 6:16-17. There is nothing left to resolve. **Maxim of Law**: "He who does not deny, admits." **Maxim of Law**: "A claim not contested, stands true." **Maxim of Law**: "A Claim bought in law that is not contested or rebutted, then stands true. Hence silence to a controversy is considered consent to any judgment."

IN SUMMARY, the entire marriage and all related court orders are nullity from inception due to **fraud in the inducement**–Fraud in the inducement is a type of fraud that occurs when someone is tricked into signing an agreement by a fraudulent representation or statement; this can happen when one party misrepresents a material fact to another party to get them to enter into a contract.

**DISCUSSION OF VOID ORDERS ENFORCED CAUSING IRREPARABLE HARMS**:

The orders entered are null and void and of no force and effect as they are procured by fraud, without jurisdiction, result of unlawful rulings, are unconstitutional and violate due process and obstruct justice.

**A. Fraud on the Court**:
An order is void if it was procured by fraud upon the court," In re Village of Willowbrook, 37 Ill. App. 3D 393(1962)

A void judgment is one that has been procured by extrinsic or collateral fraud, or entered by court that did not have jurisdiction over subject matter or the parties, Rook v. Rook, 353 S.E. 2d 756 (Va. 1987).

A void judgment which includes judgment entered by a court which lacks jurisdiction over the parties or the subject matter, or lacks inherent power to enter the particular judgment, or an order procured by fraud, can be attacked at any time, in any court, either directly or collaterally, provided that the party is properly before the court. See Long v. Shorebank Development Corp., 182 F.3d 548 (C.A. 7 Ill. 1999)

---

**B. Void Judgment is a nullity**:

A void judgment is one which, from its inception, was a complete nullity and without legal effect. See Lubben v. Selective Service System Local Bd. No. 27, 453 F.2d 645, 14 A.L.R. Fed. 298 (C.A. 1 Mass. 1972)

A void judgment is one which from the beginning was complete nullity and without any legal effect. See Hobbs v. U.S. Office of Personnel Management, 485 F.Supp. 456 (M.D. Fla. 1980).

Void judgment is one that, from its inception, is complete nullity and without legal effect. Holstein v. City of Chicago, 803 F.Supp. 205, reconsideration denied 149 F.R.D. 147, affirmed 29 F.3d 1145 (N.D. Ill. 1992).

A void judgment is one which, from its inception, was a complete nullity and without legal effect, Rubin v. Johns, 109 F.R.D. 174 (D. Virgin Islands 1985).

A void judgment is one which, from its inception, is and forever continues to be absolutely null, without legal efficacy, ineffectual to bind the parties or to support a right, of no legal force and effect whatever, and incapable of enforcement in any manner or to any degree. Loyd v. Director, Dept. of Public Safety, 480 So.2d 577 (Ala.Civ.App. 1985). A judgment shown by evidence to be invalid for want of jurisdiction is a void judgment or at all events has all attributes of a void judgment, City of Los Angeles v. Morgan, 234 P.2d 319 (Cal.App. 2 Dist. 1951).

Void judgment which is subject to collateral attack, is simulated judgment devoid of any potency because of jurisdictional defects, Ward. v. Terriere, 386 P.2d 352 (Colo. 1963). A void judgment is a simulated judgment devoid of any potency because of jurisdictional defects only, in the court rendering it and defect of jurisdiction may relate to a party or parties, the subject matter, the cause of action, the question to be determined, or relief to be granted, Davidson Chevrolet, Inc. v. City and County of Denver, 330 P.2d 1116, certiorari denied 79 S.Ct. 609, 359 U.S. 926, 3 L.Ed. 2d 629 (Colo. 1958).

Void judgment is one which, from its inception is complete nullity and without legal effect *In re Marriage of Parks,* 630 N.E.2d 509 (Ill.App. 5 Dist. 1994).

Void judgment is one entered by court that lacks the inherent power to make or enter the particular order involved, and it may be attacked at any time, either directly or collaterally; such a judgment would be a nullity. People v. Rolland, 581 N.E.2d 907 (Ill.APp. 4 Dist. 1991).

**C. Entered without Jurisdiction and Orders Exceeding Jurisdiction**:

The United States Supreme Court has clearly, and repeatedly, held that any judge who acts without jurisdiction is engaged in an act of treason. **U.S. v. Will,** 449 U.S. 200, 216, 101, S. Ct. 471, 66 L.Ed. 2d 392, 406 (1980): **Cohens v. Virginia**, 19 U.S. (6 Wheat) 264, 404, 5 L.Ed 257 (1821).

---

Title 5, US Code Sec. 556(d), Sec. 557, Sec.706: Courts lose jurisdiction if they do not follow Due Process.

An order that exceeds the jurisdiction of the court is void, and can be attacked in any proceeding in any court where the validity of the judgment comes into issue. (See *Rose v. Himely* (1808) 4 Cranch 241, 2 L ed 608; *Pennoyer v. Neff* (1877) 95 US 714, 24 L ed 565; *Thompson v. Whitman* (1873) 18 Wall 457, 21 l ED 897; *Windsor v. McVeigh* (1876) 93 US 274, 23 L ed 914; *McDonald v. Mabee* (1917) 243 US 90, 37 Sct 343, 61 L ed 608.

"If a court grants relief, which under the circumstances it hasn't any authority to grant, its judgment is to that extent void." (1 Freeman on Judgments, 120-c.) "A void judgment is no judgment at all and is without legal effect." (*Jordon v. Gilligan*, 500 F.2d 701, 710 (6th Cir. 1974)) "a court must vacate any judgment entered in excess of its jurisdiction." (*Lubben v. Selective Service System Local Bd. No. 27*, 453 F.2d 645 (1st Cir. 1972).).

A void judgment does not create any binding obligation. Federal decisions addressing void state court judgments include *Kalb v. Feuerstein* (1940) 308 US 433, 60 S Ct 343, 84 L ed 370. Federal judges issued orders permanently barring Stich from filing any papers in federal courts. After Judges Robert Jones and Edward Jellen corruptly seized and started to liquidate Stich's assets, Judge Jones issued an unconstitutional order barring Stich from filing any objection to the seizure and liquidation.

Void judgment is one entered by court without jurisdiction of parties or subject matter or that lacks inherent power to make or enter particular order involved and such a judgment may be attacked at any time, either directly or collaterally, People v. Wade, 506 N.W.2d 954 (Ill. 1987).

Void judgment may be defined as one in which rendering court lacked subject matter jurisdiction, lacked personal jurisdiction, or acted in manner inconsistent with due process of law Eckel v. MacNeal, 628 N.E.2d 741 (Ill. App.Dist. 1993).

Void judgment is one where court lacked personal or subject matter jurisdiction or entry of order violated due process, U.S.C.A. Const. Amend. 5-Triad Energy Corp. v. McNell, 110 F.R.D. 382 (S.D.N.Y. 1986).

Void judgment is one entered by court without jurisdiction of parties or subject matter or that lacks inherent power to make or enter particular order involved; such judgment may be attacked at any time, either directly or collaterally People v. Sales, 551 N.E.2d 1359 (Ill.App. 2 Dist. 1990).

Subject matter jurisdictional failings:
– Fraud committed in the procurement of jurisdiction, Fredman Brothers Furniture v. Dept. of

Revenue, 109 Ill.2d 202, 486 N.E.2d 893 (1985).

– Fraud upon the court, In re Village of Willowbrook, 37 Ill. App.3d 393 (1962)

– A judge does not follow statutory procedure, Armstrong v. Obucino, 300 Ill. 140, 143 (1921).

– Unlawful activity of a judge, Code of Judicial Conduct.

– If the court exceeded its statutory authority, Rosenstiel v. Rosenstiel, 278 F.Supp. 794 (S.D.N.Y. 1967).

– Any acts in violation of 11 U.S.C. §362(a), In re Garcia, 109 B.R. 335 (N.D. Illinois, 1989).

– Where no justiciable issue is presented to the court through proper pleadings, Ligon v. Williams, 264 Ill. App.3d 701, 637 N.E.2d 633 (1st Dist. 1994).

– Where a complaint states no cognizable cause of action against that party, Charles v. Gore, 248 Ill.App.3d 441, 618 N.E.2d 554 (1st Dist. 1993).

– When the judge is involved in a scheme of bribery (the Alemann cases, Bracey v. Warden, U.S. Supreme Court No. 96-6133; June 9, 1997)

**D. Void judgments do not have to be declared void by a judge**:

A **void** order is an order issued without jurisdiction by a judge and is **void ab initio** and does not have to be declared **void** by a judge to be **void**. Only an inspection of the record of the case showing that the judge was without jurisdiction or *violated a person's due process rights*, or *where fraud was involved in the attempted procurement of jurisdiction, is sufficient for an order to be void*. **Potenz Corp. v. Petrozzini**, 170 Ill. App. 3d 617, 525 N.E. 2d 173, 175 (1988). In instances herein, the law has stated that the orders are **void ab initio** and not voidable because they are already **void**.

A **void order is void ab initio and does not have to be declared void by a judge**. The law is established by the U.S. Supreme Court in **Valley v. Northern Fire & Marine Ins. Co.,** 254 U.S. 348, 41 S. Ct. 116 (1920) as well as other state courts, e.g. by the Illinois Supreme Court in **People v. Miller**. A party may have a court vacate a **void** order, but the **void** order is still **void ab initio**, whether vacated or not; a piece of paper does not determine whether an order is **void**, it just memorializes it, makes it legally binding and voids out all previous orders returning the case to the date prior to action leading to void ab initio.

This principle of law was stated by the U.S. Supreme Court as "Courts are constituted by authority and they cannot go beyond that power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgments and orders are regarded as nullities. They are not voidable, but simply **VOID, AND THIS IS EVEN PRIOR TO REVERSAL .**" [Emphasis added]. **Vallely v. Northern Fire and Marine Ins. Co**., 254 U.S. 348, 41 S. Ct. 116 (1920). See also **Old Wayne Mut. I. Assoc. v. McDonough,** 204 U.S. 8, 27 S.Ct. 236 (1907); **Williamson v. Berry**, 8 How. 495, 540, 12 L. Ed, 1170, 1189, (1850); **Rose v. Himely**, 4 Cranch 241, 269, 2 L.Ed. 608, 617 (1808).

Pursuant to the **Vallely** court decision, a **void** order does not have to be reversed by any court to be a **void** order**. Courts have also held that, since a void order is not a final order, but is in

---

effect no order at all, it cannot even be appealed. Courts have held that a void decision is not in essence a decision at all, and never becomes final. Consistent with this holding, in 1991, the U.S. Supreme Court stated that, "Since such jurisdictional defect deprives not only the initial court but also the appellate court of its power over the case or controversy, to permit the appellate court to ignore it. …[Would be an] unlawful action by the appellate court itself." Freytag v. Commissioner, 501 U.S. 868 (1991); Miller, supra. Following the same principle, it would be an unlawful action for a court to rely on an order issued by a judge who did not have subject-matter jurisdiction and therefore the order he issued was **Void ab initio**.

A **void** order has no legal force or effect. As one court stated, a **void** order is equivalent to a blank piece of paper.

A void judgment is not entitled to the respect accorded a valid adjudication, but may be entirely disregarded, or declared inoperative by any tribunal in which effect is sought to be given to it. It is attended by none of the consequences of a valid adjudication. It has no legal or binding force or efficacy for any purpose or at any place. ... It is not entitled to enforcement ... All proceedings founded on the void judgment are themselves regarded as invalid. 30A Am Jur Judgments " 44, 45.

**E. Void In Violation of Due Process**:
_Due Process_ is a requirement of the U.S. Constitution. Violation of the United States Constitution by a judge deprives that person from acting as a judge under the law. He/She is acting as a private person, and not in the capacity of being a judge (and, therefore, has no jurisdiction). The United States Supreme Court, in **Twining v. New Jersery**, 211 U.S. 78, 29 S.Ct. 14, 24, (1908), stated that "Due Process requires that the court which assumes to determine the rights of parties shall have jurisdiction."; citing **Old Wayne Mut. Life Assoc. V. McDonough,** 204 U. S. 8, 27 S. Ct. 236 (1907); **Scott v McNeal,** 154 U.S. 34, 14, S. Ct. 1108 (1894); **Pennoyer v. Neff,** 95 U.S. 714, 733 (1877).

Judgment is a void judgment if court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process, Fed Rules Civ. Proc., Rule 60(b)(4), 28 U.S.C.A.; U.S.C.A. Const Amend. 5. Klugh v. U.S., 620 F.Supp. 892 (D.S.C. 1985).

**F. Void in Violation of Right to be Heard**:
It is a fundamental doctrine of law that a party to be affected by a personal judgment must have his day in court, and an opportunity to be heard. _Renaud v. Abbott_, 116 US 277, 29 L Ed 629, 6 S Ct 1194. Every person is entitled to an opportunity to be heard in a court of law upon every question involving his rights or interests, before he is affected by any judicial decision on the question. _Earle v McVeigh_, 91 US 503, 23 L Ed 398.

---

A judgment of a court without hearing the party or giving him an opportunity to be heard is not a judicial determination of his rights. *Sabariego v Maverick*, 124 US 261, 31 L Ed 430, 8 S Ct 461, and is not entitled to respect in any other tribunal.

"A void judgment does not create any binding obligation. Federal decisions addressing void state court judgments include Kalb v. Feuerstein (1940) 308 US 433, 60 S Ct 343, 84 L ed 370; *Ex parte Rowland* (1882) 104 U.S. 604, 26 L.Ed. 861: "A judgment which is void upon its face, and which requires only an inspection of the judgment roll to demonstrate its wants of vitality is a dead limb upon the judicial tree, which should be lopped off, if the power to do so exists."

*People v. Greene*, 71 Cal. 100 [16 Pac. 197, 5 Am. St. Rep. 448]. "If a court grants relief, which under the circumstances it hasn't any authority to grant, its judgment is to that extent void." (1 Freeman on Judgments, 120-c.) An illegal order is forever void.

### G. In Violation of the Constitution:

***"Officers of the court have no immunity, when violating a Constitutional right, from liability. For they are deemed to know the law." -- Owen v. Independence, 100 S.CT. 1398, 445 US 622; Scheuer v. Rhodes, 416 U.S. 232.***

A Judge has <u>no lawful authority to issue any order which violates the Supreme Law of the Land</u>.

The First <u>Amendment to the U.S. Constitution states that all entities have the mandatory right</u> of <u>an adequate, complete, effective, fair, full meaningful and timely access to the court.</u>

The First and the Fourteenth Amendment to the U.S. Constitution <u>guarantees the right of association.</u>

The Fifth and Fourteenth Amendment <u>guarantees Due Process and Equal Protection to all.</u> *"No state shall deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." United States Constitutional Amendment XIV and adopted by State of Indiana Constitution.*

***"Choices about marriage, family life, and upbringing of children are among associational rights ranked as of basic importance in our society, rights sheltered by the Fourteenth Amendment against State's unwarranted usurpation, disregard, or disrespect. U.S.C.A. Constitutional Amendment 14.***

A judgment may not be rendered in violation of constitutional protections. The validity of a judgment may be affected by a failure to give the constitutionally required due process notice and an opportunity to be heard. *Earle v. McVeigh*, 91 US 503, 23 L Ed 398. See also Restatements, Judgments ' 4(b). *Prather v Loyd*, 86 Idaho 45, 382 P2d 910. The limitations inherent in the requirements of due process and equal protection of the law extend to judicial as well as political branches of government, so that a judgment may not be rendered in violation of

those constitutional limitations and guarantees. *Hanson v Denckla*, 357 US 235, 2 L Ed 2d 1283, 78 S Ct 1228.

**H. Void Orders Can Be Attacked At Any Time**: An order that exceeds the jurisdiction of the court, is void, or voidable, and can be attacked in any proceeding in any court where the validity of the judgment comes into issue. (See *Rose v. Himely* (1808) 4 Cranch 241, 2 L ed 608; *Pennoyer v. Neff* (1877) 95 US 714, 24 L ed 565; *Thompson v. Whitman* (1873) 18 Wall 457, 21 l ED 897; *Windsor v. McVeigh* (1876) 93 US 274, 23 L ed 914; *McDonald v. Mabee* (1917) 243 US 90, 37 Sct 343, 61 L ed 608. *U.S. v. Holtzman*, 762 F.2d 720 (9th Cir. 1985) ("Portion of judgment directing defendant not to import vehicles without first obtaining approval ... was not appropriately limited in duration and, thus, district court abused its discretion by not vacating it as being prospectively inequitable." Id at 722.)

**I. Abetting a Void Order is a crime Against the State**: The state Supreme Courts have held that those who aid, abet, advise, act upon and execute the order of a judge who acts without jurisdiction are equally guilty. They are equally guilty of a crime against the U.S. Government.

**I am invoking all my rights and reserving them all without prejudice and without recourse.**

**Maxim of Law**: "The main object of government is the protection and preservation of personal rights, private property, and public liberties, and upholding the law of God." *American Maxim*.
**Maxim of Law**: "Punishment is due if the words of an oath be false." *Black's*, 840.
**Maxim of Law**: Jurisdiction is the power to declare the law; and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case. *Bullington v. Angel, 220 N.C. 18.*
**Maxim of Law**: Constitutions and laws precede the judiciary. *Luther v. Borden, 7 How. (48 U.S.) 1, 52.*
**Maxim of Law**: "A judge should keep his jurisdiction within the limits of his commission." 4 *Inst.* 163; *Black's*, 2d. 1056.
**Maxim of Law**: "He who does not deny, admits."
**Maxim of Law**: "A claim not contested, stands true."
**Maxim of Law**: "A Claim bought in law that is not contested or rebutted, then stands true. Hence silence to a controversy is considered consent to any judgment."
**Oklahoma Constitution, Article 2, Section 7**
"No person shall be deprived of life, liberty, or property without due process of law."
**Oklahoma Constitution, Article 2, Section 19**
"The right of trial by jury shall be and remain inviolate…"
**Oklahoma Constitution Article 2, Section 6**
"The courts of justice are open to everyone, and that remedies for wrongs and injuries must be speedy and certain. It also states that right and justice must be administered without delay, denial, prejudice, or sale."
**Oklahoma Constitution Article 5, Section 46**

"The Legislature *shall not*...pass any local or special law authorizing: #14 Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings"

***Troxel v. Granville***, 530 U.S. 57 (2000)

"The liberty interest at issue in this case - the interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by this Court."

***SEC v. Jarkesy,*** 603 U.S. ___ (2024), No. 22-859, June 27, 2024, p42

"The Fifth Amendment's Due Process Clause addressed remaining concerns about the processes that would attend trials before independent judges and juries. It provided that the government may not deprive anyone of "life, liberty, or property, without due process of law." As originally understood, this provision prohibited the government from "depriv[ing] a person of those rights without affording him the benefit of (at least) those customary procedures to which freemen were entitled by the old law of England." *Sessions v. Dimaya*, 584 U.S. 148, 176 (2018) (GORSUCH, J., concurring in part and concurring in judgment) (internal quotation marks omitted); see Erlinger, 602 U.S., at ___ at 6-7). More than that, because it was "the peculiar province of the judiciary" to safeguard life, liberty, and property, due process often meant judicial process. 1 St. George Tucker, Blackstone's Commentaries, Editor's App. 358 (1803). That is, if the government sought to interfere with those rights, nothing less than "the process and proceedings of the common law" had to be observed before any such deprivation could take place. 3 J. Story, Commentaries on the Constitution of the United States §1783, p. 661 (1833) (Story). In other words, "'due process of law' generally implie[d] include[d]... *judex* [a judge], regular allegations, opportunity to answer, and a trial according to settled course of judicial proceedings." *Murray's Lessee*, 18 How., at 280."

***Trump v. United States***, 604 U.S. ___ (2024)

"There is no immunity for unofficial acts."

> **Please take notice that** the People understand that as determined in *Trump v United States*, government agents have no authority and thereby no immunity in conducting <u>unofficial acts</u> (power not granted from the constitution).

The individuals in question are NOT entitled to immunity because these lower courts are NOT constitutional courts. Since they are NOT operating in their constitutional capacity, their claim to immunity lacks legal basis. This situation has led to violations of constitutionally secured rights, undermining the integrity and authority of their positions and actions.

According to THE SUPREME COURT OF THE STATE OF OKLAHOMA's ruling on 09/17/2024 "a governmental employee has no immunity under the GTCA [Government Tort Claims Act] for claims arising from gross negligence, acts outside the scope of employment, and the GTCA notice requirements do not apply to such tort claims"--***SPENCER v. NELSON*** **2024 OK 63**, Case Number: 120210, **Decided: 09/17/2024**.

The Supreme Court, in ***Will v. Michigan Department of State Police, 491 U.S. 58 (1989)***, clearly delineated the parameters under which a state actor may be sued, particularly affirming that state officials are not "persons" for purposes of § 1983 when acting in their official capacity. However, individual actions that infringe upon federally protected rights can trigger liability under this statute.

***Axon Enterprise, Inc. v. FTC***, 143 S. Ct. 890 (2023): "Cases involving ... deprivation or transfers of life, liberty, or property constitute a 'core' of cases that ... must be resolved by Article III courts–not executive adjudicators dressed up as courts".

---

***Chevron deference doctrine reversed*:** U.S. Supreme Court overturned the *Chevron deference doctrine* in a 6-3 decision in Loper Bright Enterprises v. Raimond. The decision reversed Chevron USA v. National Resources Defense Council (1984), a 40-year-old case that had established the practice of judicial deference to federal agencies' interpretations of ambiguous laws. The new ruling requires courts to exercise independent judgment when deciding if an agency has acted within its statutory authority.

**Fair Debt Collection Practices Act (FDCPA)** prohibits debt collectors from using abusive, unfair, or deceptive practices to collect debts from you, including: misrepresenting the nature of the debt, including the amount owed, falsely claiming that the person contacting you is an attorney, falsely claiming that they are your attorney, or power of attorney, or has your informed consent.

**Employee Retirement Income Security Act of 1974 (ERISA)** was designed to protect retirement savings, recognizing their importance to financial security and interest of the affiant.

***E-Systems, Inc. v. Pogue*,** 929 F.2d 1100, 1104 (5th Cir. 1991): "The State received monies from the ERISA plans to which it was not entitled. The funds must be returned. The parties are to be restored to the status quo ante. That includes appropriate consideration of the loss of use of the funds for the period involved"

**Debtor Imprisonment**: Congress outlawed them. The Supreme Court ruled them unconstitutional, see https://www.justice.gov/opa/pr/justice-department-issues-dear-colleague-letter-courts-regarding-fines-and-fees-youth-and and https://www.justice.gov/usao-sdal/page/file/918356/dl

**"Court of Record", Black's Law Dictionary (4th):**
"A 'court of record' is a judicial tribunal having attributes and exercising functions independently of the person of the magistrate designated generally to hold it, and proceeding according to the course of common law, its acts and proceedings being enrolled for a perpetual memorial."

**"Common law", Black's Law Dictionary (4th):**
"As distinguished from law created by the enactment of legislatures, the common law comprises the body of those principles and rules of action, relating to the government and security of persons and property, which derive their authority solely from usages and customs of immemorial antiquity, or from the judgment and decrees of the courts recognizing, affirming, and enforcing such usages and customs; and, in this sense, particularly the ancient unwritten law of England."

**"Due process of law", Black's Law Dictionary (4th):**
"Law in its regular course of administration through courts of justice. Due process of law in each particular case means such an exercise of the powers of the government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those **maxims** prescribe for the class of cases to which the one in question belongs. Whatever difficulty may be experienced in giving to those terms a definition which will embrace every permissible exertion of power affecting private rights, and exclude such as is forbidden, there can be no doubt of their meaning when applied to judicial proceedings. They mean a course of legal proceedings according to those rules and principles which have been established in our systems of **jurisprudence** for the enforcement and protection of private rights. To give such proceedings any validity, there must be a tribunal competent by its constitution – that is, by the law of its creation – to pass upon the subject matter of the suit; and, if that involves merely a determination of the personal liability of the defendant, he must be brought within its jurisdiction by service of

---

process within the state, or his voluntary appearance. Due process of law implies the right of the person affected thereby to be present before the tribunal which pronounces judgment upon the question of life, liberty, or property, in its most comprehensive sense; to be heard, by testimony or otherwise, and to have the right of controverting, by proof, every material fact which bears on the question of right in the matter involved. *If any question of fact or liability be conclusively presumed against him, this is not due process of law.*"

**OKLAHOMA RULES OF CIVIL PROCEDURES.**

**FEDERAL RULES OF CIVIL PROCEDURE CITED (not limited to)**:

Rule 11; Rule 38; Rule 41;

**CODE OF FEDERAL REGULATIONS CITED (not limited to)**:

28 C.F.R. § pt. 14; 28 C.F.R. § pt. 35; C.F.R. § 42.501 et seq.; 28 C.F.R. § 42.501 et seq.; 12 C.F.R. § 1081

**CONSTITUTION OF THE UNITED STATES CITED (not limited to)**: First, Fourth, Fifth, Sixth, and Fourteenth Amendment to the United States Constitution; Fifth Amendment to the United States Constitution; United States Constitution, Article 2, section 4;

> *By law, individuals who have suffered harm caused by the State of Oklahoma, government entities or its agencies or officials, must file a Notice of Tort Claim within a specified time from the act or omission giving rise to the claim. A lawsuit alleging a tort against the State, or the United States may only be filed after the Notice has been filed and the investigative period has expired.*

---

**Analysis and Refutation of Defendants' Arguments**

**A. Refuting False Allegations and Assumptions under Federal Law**

1. **Bad Faith and Harassment Exception under Younger Abstention**

   a. According to *Amanatullah v. State Bd. of Med. Exam'rs*, 187 F.3d 1160 (10th Cir. 1999) and *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997), Defendants' actions must demonstrate bad faith and harassment to fall within the Younger abstention exception. Plaintiff has sufficiently shown this through the <u>continued garnishment of exempt assets</u> and <u>retaliatory actions</u>.

---

    b. **Case Law**: Both *Amanatullah* and *Phelps* support Plaintiff's position that bad faith actions by state actors exempt a case from Younger abstention. <u>The documented harassment and retaliation against Plaintiff for exercising her constitutional rights underscore bad faith</u>.

2. **Irreparable Injury and Due Process Violation**

    a. *Bean v. Matteucci*, 986 F.3d 1128, 1133 (9th Cir. 2021), establishes that ongoing financial garnishment without due process constitutes <u>irreparable injury</u>, justifying federal court intervention. Plaintiff has shown that despite her assets' exempt status, they are continually garnished without due legal process.

    b. **Case Law**: The principles in *Bean v. Matteucci* align with the due process violations Plaintiff has experienced, warranting federal intervention due to ongoing harm.

**B. Addressing Defendants' Arguments on FDCPA and Jurisdiction**

1. **Fair Debt Collection Practices Act (FDCPA)**

    ○ Defendants misinterpret the FDCPA's scope, which can include actions by state actors if their activities resemble debt collection. Courts have evolved in interpreting the FDCPA, making it applicable under certain conditions, even to state actors.

    ○ **Opposing Claims**: Despite Defendants' reliance on case law to fraudulently argue mootness, Plaintiff's new evidence and interpretations support the applicability of the FDCPA.

2. **Jurisdictional Conflicts**

    ○ Defendants' argument disregards jurisdictional conflicts where child support orders issued in different jurisdictions with possible errors can lead to **federal**

**principles of full faith and credit** being challenged.

- ○ **Legal Basis**: The full faith and credit clause may be invoked here due to conflicting orders across jurisdictions, thereby questioning the validity and enforcement in Plaintiff's specific circumstance.

## C. Broader Issues of Corruption and Misuse of Authority

1. **Misuse and Overreach of Judicial and Prosecutorial Powers**

   - ○ Plaintiff's accusations of prosecutorial and judicial misuse align with broader criticisms of systemic corruption. To address this, during the trial of her peers or even now, Plaintiff can easily pull up a clear record of due process violations and bias as they are all in public records, some of which were unconstitutional sealed but original records are available and ready to be presented anytime to this Court and to the Jury of Plaintiff's peers–**which are Vietnamese medical physicians**.

## D. Addressing Assumptions on Jail Harmfulness and Sentences for Lawyers and Bankers

1. **Impact of Incarceration**

   - ○ While Defendants appear to argue against jail's harmfulness, in legal terms, the focus should be on due process and the validity of legal actions instead.

## VII. Conclusion:

For the reasons stated above, this Court should:

1. Deny Defendants' Motion to Dismiss because this federal lawsuit does NOT meet Yonger's Abstention, and even if we falsely pretend that it does meet generic criteria of Younger's Abstention, Defendants must acknowledge the valid exceptions to Younger abstention for this case.

2. Confirm that Plaintiff has sufficiently presented plausible claims under the FDCPA and

---

constitutional grounds, and reject dismissals sought under Rule 12(b)(1) and Rule 12(b)(6).

3. Recognize the substantial due process, constitutional arguments against prosecutorial and judicial misuse manifest, and jurisdictional issues raised by Plaintiff all together necessitating federal court jurisdiction for these <u>original</u> 12 **causes of action/claims** that did <u>NOT</u> originate from state courts nor ever sued for monetary damages for these claims in state courts, and to proceed to punish Defendants for egregious violations of Plaintiff's rights and punish Defendants for their utmost disrespect for laws, justice, and fairness/equity.

*Nemo me impune lacessit.*
PRIVATE; THIS IS NOT A PUBLIC COMMUNICATION
Notice to Agent is Notice to Principal
Notice to Principal is Notice to Agent
Applications to all successors and assigns
**Silence is Tacit Acquiescence/Agreement/Dishonor**

<u>**Avouchment / Verification**</u>

I hereby declare, certify and state, pursuant to the penalties of perjury under the laws of the United States of America, and by the provision of **28 USC 1746** that all of the above and foregoing representations are true and correct to the best of my knowledge, information, and belief. Executed in <u>Tulsa</u> County, republic of Oklahoma on this <u>24th</u> day of <u>September</u> in the Year of Our Lord Two Thousand and Twenty Four.

Private sector autograph;
*without prejudice*
By beneficiary: *Linh-Tran: Stephens/Agent*
linh-tran: stephens / beneficiary of LINH TRAN STEPHENS
Reserving all my rights WITHOUT PREJUDICE. WITHOUT RECOURSE.
A natural living breathing woman with a living soul and a Holy Spirit, non-incorporated,
living on the land of the republic of oklahoma with full human rights,
Sui Juris, One of the People,
General Delivery Town Post, Non-domestic without the United States
c/o 11063 S Memorial Dr Ste D #235, Tulsa, Oklahoma [near 74133] without USDC
LinhStephens7@gmail.com

**Notary as JURAT CERTIFICATE**

STATE OF <u>MINNESOTA</u>        )

                                 ) *ss*

COUNTY OF <u>SHERBURNE</u> )

On this <u>24th</u> day of <u>September</u>, 20<u>24</u> before me, <u>Melissa K. Vagle</u>, a Notary Public, personally appeared a living woman <u>Linh Tran Stephens</u> (the beneficiary for Legal Fiction LINH TRAN STEPHENS), who electronically (remotely) proved to me on the basis satisfactory evidence to be the woman whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her autograph on the instrument the woman executed, the instrument.

I certify under PENALTY OF PERJURY under the lawful laws of Minnesota State and that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

                                         *Melissa K. Vagle*
                                         Signature of Notary/Jurat



MELISSA K VAGLE
Notary Public
State of Minnesota
My Commission Expires
January 31, 2028

My commission expires: <u>01/31/2028</u>

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 24ᵗʰ day of September, 2024, a true, correct, and

exact copy of the above and foregoing instrument was electronically transmitted to the Clerk of

the Court via ProSeFilingsOKND@oknd.uscourts.gov for filing because efiling and In Forma

Pauperis (IFP) were approved:

1. Defendant #1: CHILD SUPPORT SERVICES OF OKLAHOMA DEPARTMENT OF HUMAN SERVICES (CSS of OKDHS), P.O. Box 27068, Tulsa OK 74149, or Oklahoma Centralized Support Registry, P.O. Box 268849, Oklahoma City, OK 73126; Tel: 405-522-2273; email: OCSS.contact.TulsaEast@okdhs.org
2. Defendant #2: CHARLES SCHWAB AND CO., INC., 3000 Schwab Way, Westlake, TX 76262; Tel: 1800-435-4000; email: TPLPLevy@schwab.com
3. Defendant #3: Cierra Freeman, an individual in her personal capacity, and in official capacity as court-appointed attorney for child support enforcement, Boeheim Freeman Law, 616 S Boston Ave, Suite 307, Tulsa OK 74119; Tel: 918-884-7791; email: cfreeman@boeheimfreeman.com
4. Defendant #4: Mary Johnmeyer, an individual in her personal capacity, and in official capacity as legal counsel of Charles Schwab and Co., Inc.; 3000 Schwab Way, Westlake, TX 76262; Tel: 800-435-4000; email: TPLPLevy@schwab.com
5. Defendant #5: Renee Banks, an individual in her personal capacity, and in official capacity as CSS Director, PO Box 248822, Oklahoma City, OK 73124; Tel: 918-295-3500; email: renee.banks@okdhs.org
6. Defendant #6: Jason Hoenshell, an individual in his personal capacity, and in official capacity as Oklahoma FIDM Coordinator, PO Box 248822, Oklahoma City, OK 73124; Tel: 405-982-1530; email: jason.hoenshell@okdhs.org
7. Defendant #7: Emmalene Stringer, an individual in her personal capacity, and in official capacity as State's Attorney for CSS, 3666 N Peoria Ave, Tulsa, OK 74106, or PO BOX 27068, Tulsa, OK 74149; Tel: 918-295-3500, Fax: 918-430-2364, email: emmalene.stringer@okdhs.org and OCSS.contact.TulsaEast@okdhs.org

*without prejudice*

By beneficiary, without recourse: *Linda-Mar:Stephens/Agent*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

LINH TRAN STEPHENS,                    )
                                       )
                Plaintiff,             )
                                       )
v.                                     )          Case No. 24-CV-216-JDR-CDL
                                       )
CHILD SUPPORT SERVICES OF              )
OKLAHOMA DEPARTMENT OF                 )
HUMAN SERVICES, *et al*.               )
                                       )
                Defendants.            )

## DEFENDANTS CHARLES SCHWAB AND CO., INC., AND
## MARY JOHNMEYER'S MOTION TO STRIKE

Defendants Charles Schwab and Co., Inc., and Mary Johnmeyer [collectively "the Schwab Defendants"] move the Court to strike the unauthorized sur-reply (Doc. No. 44) filed by Plaintiff Linh Tran Stephens ("Plaintiff"). In support of this motion, the Schwab Defendants would show the Court as follows:

1.      Plaintiff filed her Complaint (Doc. No. 2) against the Schwab Defendants and others on May 8, 2024.

2.      The Schwab Defendants filed their Motion to Dismiss (Doc. No. 20) on July 1, 2024. After this Court extended the time for her response, Plaintiff filed her Response Brief (Doc. No. 41) on September 6, 2024, and the Schwab Defendants filed their Reply Brief (Doc. No. 42) on September 18, 2024.

3.      At that time, the briefing on the Schwab Defendants' Motion to Dismiss was complete and the Motion was ripe for consideration by the Court.

4.    Nevertheless, on September 24, 2024, Plaintiff filed a **24-page** sur-reply brief in opposition to the Schwab Defendants' Motion to Dismiss. *See* "Pl.'s Combined Response to Two (2) Reply Briefs in Support of Motion to Dismiss of Defendants Charles Schwab & Ciera Freeman" (Doc. No. 44).

5.    LCvR(f) states that "[s]upplemental briefs are not encouraged and may be filed only upon motion and leave of Court." Plaintiff did not file a motion or receive leave of Court prior to filing her sur-reply and her brief should therefore be stricken.

6.    The Schwab Defendants also object to Plaintiff's inclusion of only lightly veiled threats against the Schwab Defendants and others involved in this case. Plaintiff concludes her sur-reply with the phrase "*Nemo me impune lacessit*," meaning "no one attacks me with impunity." Doc. No. 44 at 22.[1] Plaintiff also promises that her "Heavenly Father shall return the favors to those who served injustice to me as His Word in Bible promised me." *Id*. at 4.

7.    Plaintiff has been permitted to proceed *in forma pauperis* in this action. *See* Order (Doc. No. 7). The Schwab Defendants would note that the Oklahoma Supreme Court recently revoked Plaintiff's *in pauperis* status based on the absence of legal and factual basis for her filings. *See* Exh. 2 (Order in Case No. 122,445 (Oklahoma Supreme Court)).

---

[1] Plaintiff also included this motto in her recent "Affidavit of Violated Constitutional Rights by Unlawful Tribunal and Constitutional Demand for Remedy," which was sent to numerous judges involved in her lawsuits. *See, e.g.,* Exh. 1 (affidavit mailed to Judge Frizzell and filed in *Stephens v. Seibert*, Case No. 23-cv-553-GKF-SH (Doc. No. 44) at 9). She further indicated that all judges involved in her cases, including Judges Claire Eagan and Gregory Frizzell, are "forever known as Traitors committing treasons" and will be "treated as such." *Id*. Plaintiff's threatening comments are thus not limited to the instant litigation.

As in that case, there appears to be little reason for the federal courts to subsidize Plaintiff's

unfounded and increasingly threatening filings.

WHEREFORE, the Schwab Defendants respectfully request that the Court enter an

order striking Plaintiff's sur-reply (Doc. No. 44) for failure to comply with LCvR(f).

Respectfully submitted,


*s/Mary H. Tolbert*
Tara A. LaClair, OBA #21903
Mary H. Tolbert, OBA #17353
STEPTOE & JOHNSON, PLLC
210 Park Avenue, Suite 2300
Oklahoma City, Oklahoma 73102
Telephone: (405) 930-5166
tara.laclair@steptoe-johnson.com
molly.tolbert@steptoe-johnson.com

ATTORNEYS FOR DEFENDANTS
CHARLES SCHWAB AND CO., INC.
AND MARY JOHNMEYER

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 4, 2024, a true and correct copy of the foregoing

Motion to Strike by Defendants Charles Schwab & Co., Inc and Mary Johnmeyer was mailed via

USPS First-Class Mail to Plaintiff Linh Tran Stephens and also electronically transmitted to the

Clerk of Court using the ECF system for filing, to:


**PLAINTIFF PRO SE**
Linh Tran Stephens
11063 S. Memorial Dr., Ste. D #235
Tulsa, OK 74133

**ATTORNEY FOR DEFENDANT**
**CIERRA FREEMAN**
Andrew Charles Jayne ajayne@bgjclaw.com

**ATTORNEY FOR DEFENDANT**
**CHILD SUPPORT SERVICES OF**
**OKLAHOMA DEPARTMENT OF**
**HUMAN SERVICES, JASON**
**HOENSHELL, AND EMMALENE**
**STRINGER**
John K.F. Langford john.langford@okdhs.org

**ATTORNEY FOR DEFENDANT**
**RENEE BANKS**
Daniel James Card daniel.card@okdhs.org


                                    _s/Mary H. Tolbert_____
                                    Mary H. Tolbert

3

# EXHIBIT 1

23-CV-553-GKF-SH

# Affidavit of Violated Constitutional Rights by Unlawful Tribunal
## and
## Constitutional Demand for Remedy [1]

FILED

SEP - 9 2024

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

### NOTICE TO PRINCIPAL IS NOTICE TO AGENT,
### NOTICE TO AGENT IS NOTICE TO PRINCIPAL,
### AFFIDAVIT IS A FORM OF EVIDENCE

Affiant, Linh Tran Stephens (also known as Linh Stephens), one of the People (as seen in Oklahoma Constitution Article 2 Section 1) republican in form, *Sui Juris* (I am NOT the en legis, nor the trust, nor the corporation of LINH TRAN STEPHENS. I am a living breathing woman with a living soul and a Holy Spirit of Jesus Christ), do serve you, Juvenile Court Judges **Martha Rupp Carter** and **Theresa Dreiling**, Tulsa County Court Special Judges **Rodney Sparkman, April Seibert, Deborrah Ludi-Leitch, Todd Chesbro** and **William LaFortune**, Presiding Judges **Doug Drummond** and **Dawn Moody**, OHA Office Of Administrative Hearing Special Judge **Robert Perugino**, Oklahoma Supreme Court Justices **Kane, C.J., Kauger, Winchester, Edmondson, Combs, Gurich, Darby, Kuehn**, and **J.J.**, Court of Civil Appeals of Oklahoma Justices **Bell, V.C.J.**, and **Prince, J.**, Federal Judges **Claire V Eagan** and **Gregory K Frizzell** of the U.S. Northern District of Oklahoma, all employees, lawyers, and administrative judges of **OKDHS CPS [Child Protective Services]**, of **OKDHS CSS [Child Support Services]**, of **David L. Moss Criminal Justice Center**, of **Tulsa Sheriff Office**, and of **National Passport Center of UNITED STATES INC.**, this affidavit, in this court of record, to make the following claims so that you do provide immediate due care [all bold, italic, underline, and highlight herein are added for emphasis].

**Please take Notice that** affiant serves this by right and not as part of a case;

**Affiant claims that it is a fact that** on December 03, 2021 and ongoing, you, Juvenile Court Judges Martha Rupp Carter and Theresa Dreiling, Tulsa County Court Special Judges Rodney Sparkman, April Seibert, Deborrah Ludi-Leitch, Todd Chesbro and William LaFortune, Presiding Judges Doug Drummond and Dawn Moody, OHA Office of Administrative Hearing Special Judge Robert Perugino, Oklahoma Supreme Court Justices Kane, C.J., Kauger, Winchester, Edmondson, Combs, Gurich, Darby,

---

[1] FD-2015-2222 docket C & F; Without Due Process OAH No.: 23-00313-73, Fraudulent OK IV-D FGN: 000948641001; CPS Case 20652909, CPS referral # 2078246 & 2200561 against Adam for child abuses among many other CPS referrals by nonparties since 2017 against Adam while false # 2195835 against Linh; truthful PO-2021-3843 child against Adam, frauds-upon-the-court JD-2021-270, Adam impeached for perjury PO-2021-4059, his two false VPOs dismissed per CM-2022-285, CM-2022-157;
DF-120612→CI-120847&DF-120848; DF-120849, DF-121149→PR-121200; MA 121255; DF-121254; DF-122022; CV-2024-1311 (401k retirement/bank theft appeal); MA-122445 (mandamus for recusal of judges); Malicious prosecution by lawyers of medical board (OSBOE) for reporting a lawyer practicing medicine without a medical license: State Of Oklahoma, ex rel., State Board of Osteopathic Examiners v. Linh Stephens Case No. 2023-011; CV-2023-995; DF-121740;
federal lawsuits 23-CV-553-GKF-SH 12/21/23; 24-CV-216-JDR-CDL 05/08/24; 24-CV-259-GKF-MTS 06/03/2024;

*Affidavit of Violated Constitutional Rights by Unlawful Tribunal and Constitutional Demand for Remedy 06 SEP 2024*
*page 1 of 12*

391

Kuehn, and J.J., Court of Civil Appeals of Oklahoma Justices Bell, V.C.J., and Prince, J., Federal Judges Claire V Eagan and Gregory K Frizzell of U.S. Northern District of Oklahoma, all employees, lawyers, and administrative judges of OKDHS CPS, of OKDHS CSS, of David L. Moss Criminal Justice Center, of Tulsa Sheriff Office, and of National Passport Center of UNITED STATES INC., deprived affiant of the guaranteed right to a trial by jury of her peers [not the same as your "jury trial"] in a matter involving affiant's secured liberty interest. Children are a liberty interest of their parents; freedom from harassments by the government, privacy of information/HIPAA/banking, money/assets, retirement 401k accounts, passports are affiant's life, liberty and property, and government cannot deprive affiant of liberty or property without constitutional due process, which guarantees a trial by jury in a court of record that moves by the common law. You all unlawfully adjudicated a statutory tribunal in breach the public trust of the Oklahoma Constitution. Your order was an unofficial act and void because it was made without constitutional authority.

(See evidence below):

**Oklahoma Constitution, Article 2, Section 7**
"No person shall be deprived of life, liberty, or property without due process of law."

**Oklahoma Constitution, Article 2, Section 19**
"The right of trial by jury shall be and remain inviolate…"

**Oklahoma Constitution Article 2, Section 6**
"The courts of justice are open to everyone, and that remedies for wrongs and injuries must be speedy and certain. It also states that right and justice must be administered without delay, denial, prejudice, or sale."

**Oklahoma Constitution Article 5, Section 46**
"The Legislature *shall not*…pass any local or special law authorizing: #14 Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings"

**Troxel v. Granville, 530 U.S. 57 (2000)**
"The liberty interest at issue in this case - the interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by this Court."

**SEC v. Jarkesy, 603 U.S. ___ (2024), No. 22-859, June 27, 2024, p42**
"The Fifth Amendment's Due Process Clause addressed remaining concerns about the processes that would attend trials before independent judges and juries. It provided that the government may not deprive anyone of "life, liberty, or property, without due process of law." As originally understood, this provision prohibited the government from "depriv[ing] a person of those rights without affording him the benefit of (at least) those customary procedures to which freemen were entitled by the old law of England." *Sessions v. Dimaya*, 584 U.S. 148, 176 (2018) (GORSUCH, J., concurring in part and concurring in judgment) (internal quotation marks omitted); see Erlinger, 602 U.S., at ___ at 6-7). More than that, because it was "the peculiar province of the judiciary" to safeguard life, liberty, and property, due process often meant judicial process. 1 St. George Tucker, Blackstone's Commentaries, Editor's App. 358 (1803). That is, if the government sought to interfere with those rights, nothing less than "the process and proceedings of the common law" had to be observed before any such deprivation could take place. 3 J. Story, Commentaries on the Constitution of the United States §1783, p. 661 (1833) (Story). In

*Affidavit of Violated Constitutional Rights by Unlawful Tribunal and Constitutional Demand for Remedy 06 SEP 2024*
*page 2 of 12*

392

.

other words, "'due process of law' generally implie[d] include[d]... *judex* [a judge], regular allegations, opportunity to answer, and a trial according to settled course of judicial proceedings." *Murray's Lessee*, 18 How., at 280."

***Trump v. United States*, 604 U.S. ___ (2024)**
"There is no immunity for unofficial acts."

> **Please take notice that** the People understand that as determined in *Trump v United* States, government agents have no authority and thereby no immunity in conducting <u>unofficial acts</u> (power not granted from the constitution).

The Supreme Court, in ***Will v. Michigan Department of State Police, 491 U.S. 58 (1989)***, clearly delineated the parameters under which a state actor may be sued, particularly affirming that state officials are not "persons" for purposes of § 1983 when acting in their official capacity. However, individual actions that infringe upon federally protected rights can trigger liability under this statute.

***Axon Enterprise, Inc. v. FTC***, 143 S. Ct. 890 (<u>2023</u>)
"Cases involving ... deprivation or transfers of life, liberty, or property constitute a 'core' of cases that ... must be resolved by Article III courts–not executive adjudicators dressed up as courts".

The evidence is overwhelming. I have obtained the private-and-for-profit **CUSIP numbers** attached to the juvenile case and related cases involving my family. As of August 11, 2024, the **DUNS Numbers (Dun & Bradstreet D-U-N-S® Numbers)** relevant to Oklahoma State and the relevant courts are as follows and were given to presiding judge Dawn Moody that same day along with my peaceful offer: **"LET MY PEOPLE GO SO WE CAN WORSHIP THE LORD OUR GOD CREATOR + JESUS + HOLY SPIRIT, ELSE THE THREE-IN-ONE GOD SHALL PUNISH Y'ALL HIMSELF. MY DAUGHTER AND I AREN'T YOUR SLAVES WE BELONG TO JESUS CHRIST"**

   a. Dun & Bradstreet D-U-N-S® Number for STATE OF OKLAHOMA: 933539215
   b. Dun & Bradstreet D-U-N-S® Number for TULSA COUNTY COURT: 808771468
   c. Dun & Bradstreet D-U-N-S® Number for SUPREME COURT OF OKLAHOMA: 928798110

***Chevron deference doctrine reversed***: U.S. Supreme Court overturned the *Chevron deference doctrine* in a 6-3 decision in Loper Bright Enterprises v. Raimond. The decision reversed Chevron USA v. National Resources Defense Council (1984), a 40-year-old case that had established the practice of judicial deference to federal agencies' interpretations of ambiguous laws. <u>The new ruling requires courts to exercise independent judgment when deciding if an agency has acted within its statutory authority</u>.

**Fair Debt Collection Practices Act (FDCPA)** prohibits debt collectors from using abusive, unfair, or deceptive practices to collect debts from you, including: misrepresenting the nature of the debt, including the amount owed, falsely claiming that the person contacting you is an attorney, falsely claiming that they are your attorney, or power of attorney, or has your informed consent.

**Employee Retirement Income Security Act of 1974 (ERISA)** was designed to protect retirement savings, recognizing their importance to financial security and interest of the affiant.

**Social Security Act SSA §1101.(a)(6)(d)** where the law specifically prohibits the removal of children against the wishes of the parents. WE OBJECT TO THE REMOVAL OF OUR CHILDREN! Federal and state government agents across the entire nation have been ripping loving families apart for profit and it must end NOW. The original / congressional intent of this non-positive law was in

---

*Affidavit of Violated Constitutional Rights by Unlawful Tribunal and Constitutional Demand for Remedy 06 SEP 2024*
*page 3 of 12*

393

no-way-shape-or-form intended to steal children from their family(s). See **Social Security Act**
Approved, August 14, 1935 is cited below directly from:

https://www.ssa.gov/history/35actxi.html#Short

SECTION 1101. (a) When used in this Act-

(1) The term State (except when used in section 531) includes Alaska, Hawaii, and the District of Columbia.

(2) The term United States when used in a geographical sense means the States, Alaska, Hawaii, and the District of Columbia.

(3) The term person means an individual, a trust or estate, a partnership, or a corporation.

(4) The term corporation includes associations, joint-stock companies, and insurance companies.

(5) The term shareholder includes a member in an association, joint- stock company, or insurance company.

(6) The term employee includes an officer of a corporation.

(b) The terms includes and including when used in a definition contained in this Act shall not be deemed to exclude other things otherwise within the meaning of the term defined.

(c) Whenever under this Act or any Act of Congress, or under the law of any State, an employer is required or permitted to deduct any amount from the remuneration of an employee and to pay the amount deducted to the United States, a State, or any political subdivision thereof, then for the purposes of this Act the amount so deducted shall be considered to have been paid to the employee at the time of such deduction.

(d) Nothing in this Act shall be construed as authorizing any Federal official, agent, or representative, in carrying out any of the provisions of this Act, to take charge of any child over the objection of either of the parents of such child, or of the person standing in loco parentis to such child.

**"Court of Record", Black's Law Dictionary (4th)**

"A 'court of record' is a judicial tribunal having attributes and exercising functions independently of the person of the magistrate designated generally to hold it, and proceeding according to the course of common law, its acts and proceedings being enrolled for a perpetual memorial."

**"Common law", Black's Law Dictionary (4th)**

"As distinguished from law created by the enactment of legislatures, the common law comprises the body of those principles and rules of action, relating to the government and security of persons and property, which derive their authority solely from usages and customs of immemorial antiquity, or from the judgment and decrees of the courts recognizing, affirming, and enforcing such usages and customs; and, in this sense, particularly the ancient unwritten law of England."

**"Due process of law", Black's Law Dictionary (4th)**

"Law in its regular course of administration through courts of justice. Due process of law in each particular case means such an exercise of the powers of the government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those **maxims** prescribe for the class of cases to which the one in question belongs. Whatever difficulty may be experienced in giving to those terms a definition which will embrace every permissible exertion of power affecting private rights, and exclude such as is forbidden, there can be no doubt of their meaning

*Affidavit of Violated Constitutional Rights by Unlawful Tribunal and Constitutional Demand for Remedy 06 SEP 2024*
*page 4 of 12*

394

when applied to judicial proceedings. They mean a course of legal proceedings according to those rules and principles which have been established in our systems of **jurisprudence** for the enforcement and protection of private rights. To give such proceedings any validity, there must be a tribunal competent by its constitution – that is, by the law of its creation – to pass upon the subject matter of the suit; and, if that involves merely a determination of the personal liability of the defendant, he must be brought within its jurisdiction by service of process within the state, or his voluntary appearance. Due process of law implies the right of the person affected thereby to be present before the tribunal which pronounces judgment upon the question of life, liberty, or property, in its most comprehensive sense; to be heard, by testimony or otherwise, and to have the right of controverting, by proof, every material fact which bears on the question of right in the matter involved. *If any question of fact or liability be conclusively presumed against him, this is not due process of law."*

**Maxim of Law**: "The main object of government is the protection and preservation of personal rights, private property, and public liberties, and upholding the law of God." *American Maxim.*

**Maxim of Law**: "Punishment is due if the words of an oath be false." *Black's*, 840.

**Maxim of Law**: Jurisdiction is the power to declare the law; and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case. *Bullington v. Angel, 220 N.C. 18.*

**Maxim of Law**: Constitutions and laws precede the judiciary. *Luther v. Borden, 7 How. (48 U.S.) 1, 52.*

**Maxim of Law**: "A judge should keep his jurisdiction within the limits of his commission." 4 *Inst*. 163; *Black's*, 2d. 1056.

"The **postal rule** (also known as the **mailbox rule** or "deposited acceptance rule") is a term of <u>common law-contracts</u> which determines the timing of <u>acceptance</u> of an <u>offer</u> when <u>mail</u> is contemplated as the medium of acceptance. The general principle is that a contract is formed when acceptance is actually communicated to the offeror. The mailbox rule is an exception to the general principle. The mailbox rule provides that the contract is formed when a properly prepaid and properly addressed letter of acceptance is posted. One rationale given for the rule is that the offerer nominates the post office as implied agent and thus receipt of the acceptance by the post office is regarded as that of the offeree. The main effect of the mailbox rule is that the risk of acceptance being delivered late or lost in the post is placed upon the offeror. If the offeror is reluctant to accept this risk, he can always require actual receipt before being legally bound."

*Sherar v. Cullen*, **481 F. 2d 946 (1973)**

"There can be no sanction or penalty imposed upon one because of his exercise of Constitutional Rights."

*State v. McGowan* **(2004 OK 44)**

Oklahoma Supreme Court ruled that the agency had overstepped its authority and emphasized that agencies derive power strictly from legislation enacted by the Legislature. This case highlighted the need for accountability and respect for legislative authority, thereby reinforcing the **separation of powers**.

**Oklahoma and all governmental agencies 100% <u>never</u> have territorial jurisdiction**: Cities in this State and all governmental agencies do NOT own all of the land in that territory that they're calling a

*Affidavit of Violated Constitutional Rights by Unlawful Tribunal and Constitutional Demand for Remedy 06 SEP 2024*
*page 5 of 12*

395

state. They only own municipal buildings that they have to operate as a DBA under their mother-company which resides in the District of Columbia and this is per the Constitution. A court cannot even be in these territories that they are calling States if they do not have a **delegation of authority letters** or if they do not have a **signed oath of office**. In reality, I am the agent to the all capital letter name which is **The Surety**. I have been invoking the **Treaty of Peace** and friendship because that is also pursuant to **article 6 section 6 of The Constitution** and the Constitution states that the treaties are the law of the land. United States Corporation is just that, and because it Incorporated the handwritten organic Constitution, everything it does after that is fraud–**constructive fraud** at that.

**\*\*\* FOLDER OF EVIDENCE** (more is available and filed into OSCN.net already by affiant, whichever documents sealed by the courts hidden from the public eyes are all incriminating evidence against Oklahoma and its actors) as below

**https://drive.google.com/drive/folders/14l4cntRRl8op1tJkttvus7pdbAr9BBfM**

which include all affidavits from all professionals including child psychologists and school teacher and school director and doctors and nurse practitioners, all concern only about father's EXTENSIVE and HEINOUS ABUSES, while ZERO concern about mother/affiant. No one diagnosed the mother with mental illness; her primary care doctors' note cleared her saying she is mentally healthy and mentally strong, without anxiety–opposite of GAL's defamation of character, who is not an expert in mental health but simply a child-kidnapping perjurious lawyer.

**Child support was declared unconstitutional in an Oklahoma Supreme Court ruling for violating the separation of powers. The Oklahoma Constitution and the U.S. Constitution establish the framework for the separation of powers within the state and federal government. Further, CSS agencies' actions are also unconstitutional due to lack of probable cause and lack of exigent circumstances.** See *State v. McGowan* (2004 OK 44), Oklahoma Supreme Court ruled that the agency had overstepped its authority and emphasized that agencies derive power strictly from legislation enacted by the Legislature.

**All juvenile cases, DHS CPS and CSS cases regarding me must be dismissed immediately and certified proof of dismissal must be mailed to me and must be filed into all respective courts else liability and punitive!**

1. Federal Law: **U.S. Constitution Article I, II, and III:** The U.S. Constitution clearly delineates the powers of the Legislative, Executive, and Judicial branches, respectively. Each branch is established with distinct functions and responsibilities. Violation: If any branch encroaches upon the powers of another (e.g., Congress attempting to execute laws or the President attempting to legislate), it constitutes a violation of the separation of powers doctrine. Principle Established in Judicial Decisions *Marbury v. Madison* (1803): This landmark case established the principle of judicial review, affirming that courts can invalidate actions by the other branches that violate the Constitution. Violation: **If a state does not uphold this principle, it undermines the rule of law and could face challenges in federal courts.**

2. Oklahoma State Laws: **Oklahoma Constitution Article IV** (Legislative Branch), **Article V** (Executive Branch), and **Article VII** (Judicial Branch): The Oklahoma Constitution grants distinct powers to each branch of government. Violation: If the Executive branch tries to assume legislative

*Affidavit of Violated Constitutional Rights by Unlawful Tribunal and Constitutional Demand for Remedy 06 SEP 2024*
*page 6 of 12*

396

authority or the Legislature exceeds its powers into judicial functions, this creates a legal conflict with the state constitution.

**It is a fact that:** Even up to today, **no contract has ever been signed** between me and the State of Oklahoma or any of its agencies, **no services/assistance has ever been requested by me from the State,** no services provided by the State towards me, therefore **no legitimate Oklahoma child support order** should have been issued against me because pursuant to <u>Nisi Prius</u>, **the original Oregon [NOT Oklahoma] court order has exclusive jurisdiction.** Oregon private child support contract between me and my long-divorced exhusband as co-petitioners was signed by a judge as a "court order" and "judgment decree" of 01/08/2016, which said **"Jeep and Trailer in lieu of child support until child ages out no matter what the overnight numbers are and no matter if custody changes"**--see <u>Original Court Order in the republic of oregon 01-08-2016</u> **filed into Oklahoma court docket dated 07-11-2021 for enforcement-of-parental-time purposes only--that contract/order/decree is still standing and active** (Republic of Oregon is not the STATE OF OKLAHOMA--OKLAHOMA has zero jurisdiction over me). **Any subsequent or any other alleged court-order of child support is fraudulent, breaching of contract, unjust enrichment, and biasedly in favor of Adam and of the STATE OF OKLAHOMA.**

**It is a fact that** the Declaration of Independence specifies that all just powers of government derive from the consent of the governed, and thereby the Oklahoma child support enforcement agency established under **42 USC Section 654(3)** is required to <u>provide proof of Linh Tran Stephens's informed consent to be governed by it.</u>

**It is a fact that:** My first born daughter has been kidnapped from me, forbidden by the courts to : call me, video chat with me, talk with me freely if we run into each other, visit me freely, live with me freely, travel with me freely, etc. I demand her immediate return so that I may continue the natural course of caring and loving what GOD gave me and ordained to me as my heritage. We are NOT ASKING; we ARE DEMANDING the IMMEDIATE RESTORATION OF OUR BIOLOGICAL PROPERTY.

**It is a fact that:** I, Linh-Tran:Stephens, am a natural born Vietnamese Citizen, in its constitutional capacity.

**It is a fact that:** That my birth certificate is proof that I am a Vietnamese Citizen.

**It is a fact that:** That my Citizenship has been certified.

**It is a fact that:** That **I am not a United States citizen, resident, person, individual or any other legal fiction, nor have I ever been.** By power of naturalization given by **8 USC §1101(a)(23),** I have conferred the nationality of the Family of Tran Nation upon myself after birth, by any means whatsoever. Prior to that, I was unaware of the definition of the various words, terms, and phrases. My children (my flesh and blood), my family, and I have NOT and are NOT located, NOT domiciled, NOT residents of, nor ever have been residents of any of the following places or businesses: UNITED STATES (located in Washington District of Columbia), STATE OF OKLAHOMA, STATE OF TEXAS,

*Affidavit of Violated Constitutional Rights by Unlawful Tribunal and Constitutional Demand for Remedy 06 SEP 2024*
*page 7 of 12*

397

STATE OF OREGON, or any other incorporated entity or business at all anywhere, or any other incorporated entity or business at all anywhere. Pursuant to **8 USC §1408**, my children, my family, and I are "nationals but NOT citizens of the United States since birth". The United Nations' **Universal Declaration of Human Rights Article 15, section 2**, written by Theodore Rosevelt's wife, states that "no one can be arbitrarily deprived of their nationality or denied the right to change it"--if deprived of such right, it would be considered as "international human rights violation" and "involuntary servitude", which are crimes punishable by law.

**It is a fact that: I explicitly reserve all of my rights always and forevermore, without prejudice, without recourse. I have NOT (nor will I ever) consent to the use of codes, statues, rules, and regulations in my case that are against my unalienable rights (U.S. Constitution, Civil Rights, Due processes rights including procedural rights and substantive rights, Parental Rights, GOD-given Human Rights. Anything and anyone saying otherwise is either fraudulent or misrepresentation of me by past counsels or by others who are not me or by fake signatures that are not mine but were photoshopped or lifted without me being there.**

**It is a fact that:** The United States, with intent and great deception, uses the term "United States citizen", to deprive the people of their rights, their birth rights, their property and freedom, and further, to relegate the status of the people, to that of livestock.

**It is a fact that:** I and my offsprings (i.e. my heritage gifted by GOD CREATOR YAHUAH and also is my property) owe you nothing nor do you have any jurisdiction over me and my offsprings (G.L.Stephens for example).

**It is a fact that:** Your constant unceasing letters from you and your satellite departments that harass, threaten, injure, attempt at coercion with scare tactics, kidnap, false imprisonment, holding hostage, and stalking, and all other actions are depriving me of my right to tranquility guaranteed by the preamble of, and the rest of the constitution for the United States of America. You are guilty of RICO, false imprisonment, extortion, kidnap-and-ransom of my offspring and of myself, FDCPA frauds, ERISA frauds, bank frauds, wire frauds, government fraud, false claim act violations, misappropriation of State funds, deprivation of rights, conspiracy to deprive rights, and numerous other crimes as ascertainable by the evidence on the record and on this unrebutted affidavit, as well as the common law and the Constitution of United States and of Viet Nam. Your actions are also acts of treason and tyranny.

**Please take Notice that** affiant demands you all answer the constitutional question:
**–QUESTION 1: "Where does the Oklahoma Constitution grant you the authority to deprive affiant the right to trial by jury of her peers?"**
**–QUESTION 2: "Are judges supposed to declare the law?"**
**–QUESTION 3: "Can courts and judges act without jurisdiction first, then falsely claim jurisdiction after kidnapping or false imprisonment of the child and mother?"**
**–QUESTION 4: "Can you show affiant that you have territorial jurisdiction over her?"**

*Affidavit of Violated Constitutional Rights by Unlawful Tribunal and Constitutional Demand for Remedy 06 SEP 2024*
*page 8 of 12*

398

**–QUESTION 5:** "Can private for-profit corporations dress up as courts and its agencies to deprive a woman of her life, liberty, and property including her children, freedom, retirement accounts?"
**–QUESTION 6:** "How much are my cases worth per bonds and Federal Reserve Bank claims using my SSN, as evident with the existence of CUSIP numbers and DUNS numbers?"
**–QUESTION 7:** "Is debtor imprisonment constitutional?"

**Please take Final Notice** that it is affiant's wish, demand, and order that you immediately declare the law in this matter, in that, affiant's liberty interests were deprived by the <u>Oklahoma government</u> and by <u>National Passport Center (United States Agency)</u> in proceedings that were not trials by jury of her peers, which means that custody of affiant's child (first born daughter), money, retirement, and passport must be immediately restored and that no government or entity may interfere with constitutional rights without jurisdiction. If you believe affiant is wrong in the law, you may submit affidavit, sworn under penalty of perjury and postmarked within **five (5) days** receipt of this affidavit, showing the constitutional provision granting you authority to deprive affiant the right to trial by jury of her peers regarding life/liberty/property interests, or, by tacit acquiescence, you agree to all claims and statements herein, and this affidavit shall stand against you as evidence, truth, fact and law in all courts of record and that you did unlawfully breach the public trust of the Oklahoma Constitution and of the Constitution of United States for America with full knowledge, malice, and intent to violate affiant's guaranteed rights. Any response not submitted under penalty of perjury shall stand as express consent to all claims and statements herein. Additionally, upon receipt of this affidavit, each and every one of you have been notified and made aware of an ongoing criminal conspiracy by and between Agents of the State and now have a duty to act. If you fail to take immediate action to correct the unlawful acts being committed every single day against me and my family, by your own Agents, you will all become accomplices in the crimes due to your negligence, complicity, failure to protect, failure of fiduciary duties, collecting paycheck without doing work thereby "Government Fraud" or "False Claims Act Violation", misappropriation of State Funds, etc. May you return to the established rule of law, obey the People's will, of which you swore to be obligated to, or else forever be known as Traitors committing treasons and treated as such.

**Please take Notice that** this is sent to you in the peace and love of Jesus Christ. Luke 11:52 KJV.

*Nemo me impune lacessit.*
PRIVATE; THIS IS NOT A PUBLIC COMMUNICATION
Notice to Agent is Notice to Principal
Notice to Principal is Notice to Agent
Applications to all successors and assigns
**Silence is Tacit Acquiescence/Agreement/Dishonor**

**Avouchment / Verification**

I hereby declare, certify and state, pursuant to the penalties of perjury under the laws of the United States of America, and by the provision of **28 USC 1746** that all of the above and foregoing representations are true and correct to the best of my knowledge, information, and belief. Executed in

*Affidavit of Violated Constitutional Rights by Unlawful Tribunal and Constitutional Demand for Remedy 06 SEP 2024*
*page 9 of 12*

399

_Tulsa_ County, Oklahoma on this _06th_ day of _September_ in the Year of Our Lord Two Thousand and Twenty Four.

Private sector autograph;

By beneficiary: _linh-tran: Stephens/Agent_

linh-tran: stephens / beneficiary of LINH TRAN STEPHENS

Reserving all my rights WITHOUT PREJUDICE. WITHOUT RECOURSE.

A natural living breathing woman with a living soul and Holy Spirit, non-incorporated,

living on the land of the republic of oklahoma with full human rights,

Sui Juris, One of the People,

General Delivery Town Post, Non-domestic without the United States

c/o 11063 S Memorial Dr Ste D #235, Tulsa, Oklahoma [near 74133] without USDC

LinhStephens7@gmail.com

### Notary as JURAT CERTIFICATE

STATE OF OKLAHOMA   )
                               ) _ss_
COUNTY OF TULSA      )

On this _6th_ day of _September_, 20_24_ before me, _APRIL SAXTON_, a Notary Public, personally appeared _LINH TRAN STEPHENS_, who proved to me on the basis satisfactory evidence to be the woman whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her autograph on the instrument the woman executed, the instrument.

I certify under PENALTY OF PERJURY under the lawful laws of Oklahoma State and that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature of Notary/Jurat

APRIL SAXTON
Notary Public in and for
STATE OF OKLAHOMA
Commission #22011491
Expires: 22 Aug 2026

---

_Affidavit of Violated Constitutional Rights by Unlawful Tribunal and Constitutional Demand for Remedy 06 SEP 2024_
_page 10 of 12_

400

**Distribution/Certification of Service:** served via certified mail, return receipt requested, and tracking #

- **Tulsa County Clerk's Office**
  218 W 6th St, 7th Floor, Tulsa, OK 74119
- Judges **Martha Rupp Carter** and **Theresa Dreiling**
  Tulsa County Juvenile Center, State of Oklahoma,
  500 W Archer St, Tulsa, OK 74103
- Judges **Rodney Sparkman, April Seibert, Deborrah Ludi-Leitch, Todd Chesbro, and William LaFortune**
  Tulsa County Courthouse, 500 S Denver Ave, Tulsa, OK 74103
- Presiding Judges **Doug Drummond** and **Dawn Moody**
  Tulsa County Courthouse, 500 S Denver Ave, Tulsa, OK 74103
- Special Judge **Robert Perugino**,
  **OHA Office Of Administrative Hearing**
  PO Box 25352, Oklahoma City, OK 73125-0352
- M. John Kane IV, **Chief Justice Oklahoma Supreme Court**
  2100 N. Lincoln Blvd., Suite 1, Oklahoma City, OK 73105
- Federal Judges **Claire V Eagan** and **Gregory K Frizzell**
  U.S. District Court for the Northern District of Oklahoma
  333 W. 4th St., Rm. 411, Tulsa, OK 74103
- Judge John Heil, **Chief Judge of U.S. District Court** Northern District of Oklahoma
  333 W 4th St, Suite 411, Tulsa, OK 74103
- **OKDHS Child Welfare Dept (DHS CPS),**
  444 S Houston Ave, Tulsa, OK 74127
- **OKDHS CSS (child support services)**
  P.O. Box 27068, Tulsa, OK 74149
- **Oklahoma Child Support Centralized Registry,** OKDHS CSS
  P.O. Box 268849, Oklahoma City, OK 73126-8849
- United States Department of State, **National Passport Center**
  44132 Mercure Circle, P.O. Box 1108, Sterling, Virginia 20166-1108
- Gentner: Family of Drummond, **Oklahoma Attorney General**
  313 NE 21st Street, Oklahoma City, OK 73105
- J. Kevin Stitt, **Office of Oklahoma Governor**
  2300 N. Lincoln Blvd., Suite 212, Oklahoma City, OK 73105
- Matt Pinnell, **Office of Lieutenant Governor of Oklahoma**
  2300 N Lincoln Blvd, Room 117, Oklahoma City, OK 73105
- Charles McCall, **Oklahoma Speaker of the House**
  2300 N. Lincoln Blvd., Room 401, Oklahoma City, OK 73105
- Greg Treat, **Oklahoma Senate Pro Temp**
  2300 N Lincoln Blvd., Oklahoma City, OK 73105
- Neil Gorsuch, **Associate Justice Supreme Court of the United States**
  1 First Street, N.E., Washington, DC 20543

*Affidavit of Violated Constitutional Rights by Unlawful Tribunal and Constitutional Demand for Remedy 06 SEP 2024*
*page 11 of 12*

401

- **Tulsa Grand Jury**
  15 W 6th St, Ste 1000, Tulsa, OK 74119
- Steve Kunzweiler, **Tulsa County District Attorney**
  500 S Denver Ave, Suite 900, Tulsa, OK 74103
- Sheriff Vic Regalado, **Tulsa County Sheriff's Office**
  500 S Denver Ave, Tulsa, OK 74103-3832
- **David L. Moss Criminal Justice Center** [jail]
  300 N Denver Ave, Tulsa, OK 74103
- OK **Council on Judicial Complaints**
  1901 N Lincoln Blvd, Oklahoma City, OK 73105
- Office of the General Counsel, **Oklahoma Bar Association**
  P.O. Box 53036, Oklahoma City, OK 73152

**Also with Completion of Service and Designation of WITNESSES To:**

- Merrick-E.: Family of Garland,
  **United States Attorney General**, U.S. Department of Justice
  950 Pennsylvania Avenue, NW, Washington, DC 20530-0001
- **Department of the Treasury,** Office of Executive Secretary
  1500 Pennsylvania Avenue, NW, Room 3413, Washington, DC 20220
- **Federal Judge John D Russell,** U.S. District Court for the Northern District of Oklahoma
  333 W. 4th St., Rm. 411, Tulsa, OK 74103
- Daniel Werfel, **IRS Commissioner**
  1111 Constitution Avenue NW, Washington, D.C. 20224
- **Tulsa County Commissioner Office**
  218 W 6th St Tulsa, OK 74119
- **OK Secretary of State**, Executive Legislative Services Division
  2300 N. Lincoln Blvd., Ste. 122, Oklahoma City, Oklahoma 73105
- Rep Chris Banning, Oklahoma Representative
  2300 N. Lincoln Blvd., Room 340, Oklahoma City, OK 73105
- Senator Dana Prieto, Oklahoma Senator
  2300 N. Lincoln Blvd., Rm. 445, Oklahoma City, OK 73105
- Senator Shane Jett, Oklahoma Senator
  2300 N. Lincoln Blvd., Rm. 417, Oklahoma City, OK 73105
- Rep. Jim Jordan, **U.S. Rep, House Judiciary**
  2056 Rayburn House Office Building, Washington, DC 20515
- Rep. Thomas Massie, **U.S. Rep, House Judiciary**
  2453 Rayburn House Office Building, Washington, D.C. 20515
- Senator James Lankford, **U.S. Senator of Oklahoma**
  316 Hart Senate Office Building Washington, DC 20510
- Senator Markwayne Mullin, **U.S. Senator of Oklahoma**
  330 Hart Senate Office Building, Washington, DC 20510

*Affidavit of Violated Constitutional Rights by Unlawful Tribunal and Constitutional Demand for Remedy 06 SEP 2024*
*page 12 of 12*

402



U.S. POSTAGE PAID
FCM LETTER
BROKEN ARROW, OK 74012
SEP 06, 2024

**$10.24**

S2324K503168-15

74103

Retail

RDC 99

CERTIFIED MAIL

9589 0710 5270 1409 1113 63

Federal Judge Gregory K Frizzell
U.S. District Court for the Northern
District of Oklahoma
333 W. 4th St., Rm. 411,
Tulsa, OK 74103

RECEIVED

SEP 09 2024

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

Linh-Tran:Stephens,
beneficiary of LINH TRAN STEPHENS
c/o 11063 S Memorial Dr, Ste D #235,
Tulsa, Oklahoma [74133] w/o USA

403

# EXHIBIT 2

# *ORIGINAL*

IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

FILED
SUPREME COURT
STATE OF OKLAHOMA

SEP 30 2024

JOHN D. HADDEN
CLERK

LINH TRAN STEPHENS,    )
                               )
        Petitioner,    )
                               )
v.    )    No.  122,445
                               )
APRIL SEIBERT, AND    )
DEBORRAH (SIC) LUDI LEITCH,    )
AND TODD CHESBRO, AND    )
DAWN MOODY, ALL SPECIAL    )
JUDGES OF TULSA COUNTY,    )
                               )
        Respondents.    )

Rec'd (date) 9-30-24
Posted _____
Mailed _____
Distrib _____
Publish _____ yes X no

## ORDER

Original jurisdiction is assumed. Okla. Const. Art. 7, § 4. Petitioner's Petition for Writ of Mandamus Compelling Judicial Recusal is denied. Real Party in Interest Adam Sylvester Stephens' request for award of attorney fees is granted. The Court finds Petitioner's Application lacking in legal and factual basis. Pursuant to the Court's order in Case No. 121,200 issued June 5, 2023, Petitioner's *in pauperis* status is hereby revoked. To commence a new proceeding in this Court, Petitioner shall hereafter be required to submit the required cost deposit in conformance with Supreme Court Rules.

Real Party in Interest Adam Sylvester Stephens' request for award of attorney fees is granted.   Cause remanded to trial court for determination of attorney fees.

DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THIS 30TH DAY OF SEPTEMBER, 2024.

_____
CHIEF JUSTICE

ALL JUSTICES CONCUR

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **LINH TRAN STEPHENS, an individual,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 24 CV-216-JDR-CDL** |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **CHILD SUPPORT SERVICES OF** | ) | |
| **OKLAHOMA DEPARTMENT OF HUMAN** | ) | |
| **SERVICES (CSS OF OKDHS),** *et. al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT CIERA FREEMAN'S MOTION TO STRIKE

Defendant Ciera Freeman ("Defendant Freeman") moves the Court to strike the unauthorized sur-reply (Doc. No. 44) filed by Plaintiff Linh Tran Stephens ("Plaintiff"). In support of this motion, Defendant Freeman would show the Court as follows:

1.    Plaintiff filed her Complaint (Doc. No. 2) against Defendant Freeman and others on May 8, 2024.

2.    Defendant Freeman filed her Motion to Dismiss (Doc. No. 15) on July 1, 2024. After this Court extended the time for her response, Plaintiff filed her Response Brief (Doc. No. 41) on September 6, 2024, and Defendant Freeman filed her Reply Brief (Doc. No. 43) on September 20, 2024.

3.    At that time, the briefing on Defendant Freeman's Motion to Dismiss was complete and the Motion was ripe for consideration by the Court.

4.      Nevertheless, on September 24, 2024, Plaintiff filed a ***24-page*** sur-reply brief in opposition to Defendant Freeman's Motion to Dismiss. *See* "Pl.'s Combined Response to Two (2) Reply Briefs in Support of Motion to Dismiss of Defendants Charles Schwab & Ciera Freeman" (Doc. No. 44).

5.      LCvR(f) states that "[s]upplemental briefs are not encouraged and may be filed only upon motion and leave of Court." Plaintiff did not file a motion or receive leave of Court prior to filing her sur-reply and her brief should therefore be stricken.

    **WHEREFORE**, Defendant Freeman respectfully requests that the Court enter an order striking Plaintiff's sur-reply (Doc. No. 44) for failure to comply with LCvR(f).

Respectfully submitted,

s// Andrew C. Jayne
_____
Andrew C. Jayne, OBA #19493
BAUM GLASS JAYNE CARWILE & PETERS
2000 Mid-Continent Tower
401 S. Boston Avenue
Tulsa, Oklahoma 74103
(T) 918/938.7944; (F) 918/938.7966
Email: ajayne@bgjclaw.com
***ATTORNEY FOR DEFENDANT CIERA FREEMAN***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 4th day of October, 2024, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

Mary H. Tolbert molly.tolbert@steptoe-johnson.com
Tara A. LaClair tara.laclair@steptoe=johnson.com
***ATTORNEY FOR CHARLES SCHWAB & CO., INC. AND MARY JOHNMEYER***

John K.F. Langford John.Langford@okdhs.org
***ATTORNEY FOR DEPARTMENT OF HUMAN SERVICES & EMMALENE STRINGER***

Daniel J. Card – Daniel.card@OKDHS.org
***ATTORNEY FOR RENEE BANKS***

John K.F. Langford – john.langford@OKDHS.org
***ATTORNEY FOR JASON HOENSHELL***

A true and correct copy of the above and foregoing instrument was mailed, postage prepaid, to the following:

Linh Tran Stephens, *Pro Se*
11063 S. Memorial Dr. Ste. D #235
Tulsa, OK 74133-7366
(c)817/631-3223
Linhstephens7@gmail.com
***PLAINTIFF***

s//Andrew C. Jayne

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) Linh Tran Stephens, sui juris, natural living breathing woman with a living soul,       *Plaintiff,* <br> Vs. <br> (2) CHILD SUPPORT SERVICES OF OKLAHOMA DEPARTMENT OF HUMAN SERVICES (CSS of OKDHS), *and* <br> (3) CHARLES SCHWAB AND CO., INC., <br> (4) Cierra Freeman, in individual capacity and official capacity as court-appointed attorney for child-support enforcement, <br> (5) Mary Johnmeyer, in individual capacity and in official capacity as legal counsel of Charles Schwab, <br> (6) Renee Banks, in individual capacity and official capacity as CSS Director, <br> (7) Jason Hoenshell, in individual capacity and in official capacity as Oklahoma FIDM Coordinator, <br> (8) Emmalene Stringer, in individual capacity and in official capacity as State's attorney for CSS, ET AL <br>       *Defendants.* | Case No.: **24-CV-216-JDR-CDL** <br><br> Judge: John D. Russell <br><br> <u>EXPEDITED HEARING REQUESTED</u> <br> <u>**TRIAL BY JURY DEMANDED**</u> |

<u>**COMBINED OBJECTION TO DEFENDANTS' MOTIONS TO STRIKE**</u>
*Notice to Principal is Notice to Agent, Notice to Agent is Notice to Principal, Applications to all successors and assigns, Affidavit is a Form of Evidence, and Silence is Acquiescence and Acceptance*

Affiant, Linh Tran Stephens (also known as Linh Stephens, "Plaintiff" herein), one of the People (as seen in Oklahoma Constitution Article 2 Section 1) republican in form, **Sui Juris**–I am NOT an en legis, nor the trust, nor the corporation, nor sole proprietor of LINH TRAN STEPHENS, but I am a living breathing woman with a living soul and a Holy Spirit of Christ/Yahusha)--do serve all defendants this affidavit, in this court of record, to make the following claims: *Combined Objection to Two Defendants' Motions to Strike* filed by Defendants Ciera Freeman and Charles Schwab & Co., Inc. ("Defendants"). In support of this Objection, **Sui Juris** states: i, Linh Tran Stephens, born in 1984, being of sound mind and legal age, do hereby affirm the

following statements to be true to the best of my knowledge and belief:

I. INTRODUCTION

1. Plaintiff is proceeding sui juris in this matter, presenting herself as a living woman without any legal counsel because she is poor and cannot afford any lawyer since June 01, 2022 and ongoing.

2. Defendants have filed separate Motions to Strike Plaintiff's her sur-reply to their replies (Doc. Nos. 44 and 45), *falsely* alleging procedural deficiencies, unauthorized filings, and "threats".

3. Plaintiff contends that the Defendants' motions lack merit and that striking her sur-reply would unjustly hinder her ability to present her case, among many other strong arguments below:

II. PROCEDURAL BACKGROUND

4. Plaintiff filed her Complaint (Doc. No. 2) against Defendants on May 8, 2024.

5. Defendants filed their respective Motions to Dismiss on July 1, 2024,

6. Plaintiff filed her combined response to Defendants' Motions to Dismiss on September 06, 2024.

7. Defendants thereafter submitted Reply Briefs on September 20, 2024, and September 18, 2024 without asking any permission for leave from the court to file such things despite knowing procedural rules yet violating the rules themselves.

8. Plaintiff who does not know the procedural rules as she is not a lawyer, and due to false allegations in Defendant's Reply briefs, immediately rebutted them by filing her sur-reply regarding these false allegations (Doc. No. 44) on September 24, 2024, this is in opposition to Defendants' *Reply* to her filed *Response* to their *Motion to Dismiss*.

9. Defendants filed *Motion to Strike Document(s)* on October 10, 2024 and last one received by Plaintiff in the mail on November 11, 2024, seeking to strike Plaintiff's sur-replies, arguing non-compliance with Local Civil Rules (LCvR) regarding "replies".

**OF NOTE**: my response to their reply is not a reply but a "sur-reply" and the rule Defendants quoted was for "replies" which they themselves violated and then falsely accused me of.

III. LEGAL STANDARDS

10. **Federal Rules of Civil Procedure (FRCP):** Under FRCP 6(b), courts have inherent authority to manage cases efficiently, but must also ensure fairness, especially towards sui juris litigants.

11. **Supreme Court Precedents:** The Supreme Court has consistently held that sui juris are entitled to leniency in procedural matters. In *Lujan v. National Wildlife Federation*, 504 U.S. 555 (1992), the Court emphasized the need for courts to provide clear guidance to self-represented parties.

12. **Leniency Towards Sui Juris Litigants:** Courts are encouraged to interpret procedural rules liberally to ensure that sui juris litigants are not unduly penalized for technical errors (See *In re Nye*, 455 U.S. 153 (1982)).

    IV. ARGUMENT

13. **Plaintiff's Right to Present Her Case and Truthful Pauperis Financial Status**:

    a. As a sui juris litigant, limited legal resources and procedural knowledge hindered my ability to file a motion for leave promptly. Furthermore, my sur-reply addresses substantive issues raised by the defendants' perjurious and deceptive reply to my response to their Motion to Dismiss, necessitating an *immediate* response of truth to expose lies (new false allegations opened the door).

    b. Striking Plaintiff's sur-replies would impede her ability to fully argue her position, thereby infringing upon her due process rights. On January 23, 2023, **Appellee's Indigent status was affirmed by this Oklahoma Supreme Court** by their ruling that "Appellee's Objection to Appellant's Pauper's Affidavit is denied" [see **Exhibit 01**] for Oklahoma Supreme Court cases DF-120849, for CI-120847, and again for DF-120848 after the Justices read "12-29-2022 APLNT'S RESPONSE TO APLEE'S OBJECTION TO PAUPERIS AFFIDAVIT [with its extensive attached financial proofs including IRS income statements for 2 years attached and filed in trial court and given to opposing counsel]". See **Exhibit 02**.

    c. The recent revocation of my In Forma Pauperis (IFP) status "for all future cases" by the Oklahoma State Supreme Court was not a mere procedural maneuver; it represents a deliberate tactic aimed at stripping me of any remedies available in state courts. This action appears to be retaliatory in nature, occurring shortly after the Court received a letter from the United States Supreme Court (**SCOTUS**) regarding my filing which was immediately ignored by Oklahoma Supreme Court (see **Exhibit 03**)

"RE: Stephens v. Stephens, OK C.t of Civil Ap. No. 120,849. The above-entitled petition for writ of certiorari was originally postmarked March 25, 2024 and received again on June 27, 2024. The papers are returned for the following reason(s): Your case must first be reviewed by a United States court of appeals or by the highest state court in which a decision could be had. 28 USC 1254 and 1257, Sincerely, Scott S. Harris, Clerk, by /s/ Emily Walker of SUPREME COURT OF THE UNITED STATES OFFICE OF THE CLERK WASHINGTON, DC 20543-0001 dated 07-11-2024",

Oklahoma Supreme Court then backdated their mandate to same date as July 11th, 2024, despite it was never issued online until much later, which stated

"On the 11th day of July, 2024, the Honorable Chief Justice John Kane of the Oklahoma Supreme Court ordered het Clerk of the Supreme Court to issue mandate, pursuant to the rules of the Oklahoma Supreme Court, in the above- styled appeal from the Tulsa County District Court. On appeal, the following judgment was entered on April 23rd, 2024 [?!?!?took them three months to issue a mandate for an opinion?!?!]: AFFIRMED",

followed by Oklahoma Supreme Court order of July 29th, 2024, which stated, "This Court will not consider any filings in a case after issuance of mandate. Accordingly, Petitioner's filings on July 23, 2024, and any future filings in this case, will not be considered.") and after my Mandamus against lower Tulsa County District Court to recuse all local special judges including presiding judge from adjudicating over my **property** (my daughter and retirement accounts are my property which i solemnly swear i have never signed over to the State to hamper by access unless the State obtained their alleged ownership by deliberate frauds and have been hiding these altered and fraudulent documents from me), **liberty** (my daughter is my key to my liberty and also my freedom to associate with my blood-children), and **livelihood** (my daughter is my livelihood). The Oklahoma Supreme Court was fully aware that I lack the financial means to cover filing fees and, as a result, I am unable to pursue further appeals in light of the numerous rights violations perpetuated by lower courts. This revocation was executed without any rebuttal evidence or any claim of deception concerning my financial status, ignoring concrete evidence that I was poor. Opposing party has relied solely on hearsay as he wasn't there at the MA-121200 and MA-122445 and misquoted statements taken entirely out of context, and failed to present any substantiated proof countering the reality of my ongoing financial hardship.

i. Defendant Charles Schwab has blatantly misrepresented the truth on the record. A review of their actual exhibit #2 [doc 45] reveals the following: Exhibit #2 [doc 45, **MA-122445**] in their Reply "Original jurisdiction is assumed. Okla. Const. Art. 7, § 4. Petitioner's Petition for Writ of Mandamus Compelling Judicial Recusal is denied. Real Party in Interest Adam Sylvester Stephens' request for award of attorney fees is granted. The Court finds Petitioner's Application [*for MANDAMUS to recuse special judges for high-valued properties over $25, not for Pauper Status*] lacking in legal and factual basis. [*notice the PERIOD here separating previous sentence/thought to the next*] Pursuant to the Court's order in Case No. 121,200 issued June 5, 2023, petitioner's in pauperis status is hereby revoked [*without any "Findings of fact and conclusions of law" as previously demanded by Appellant*]. To commence a new proceeding in this Court, Petitioner shall hereafter be required to submit the required cost deposit in conformance with Supreme Court Rules". What the Oklahoma Supreme Court ordered is completely contrary to Defendant's false statements: "The Schwab Defendants would note that the Oklahoma Supreme Court recently evoked Plaintiffs in pauperis status based on the absence of legal and factual basis for her filings. See Exh. 2 (Order in Case No. 122,445 (Oklahoma Supreme Court))"--this is as perjury and maliciously misrepresented by Defendant CHARLES SCHWAB to this Honorable Federal Court in their paragraph 7 [doc 45].

ii. Next, looking up Case **No. MA-121,200** court order for Petition for Mandamus is attached as **Exhibit 04** "By Order entered April 3, 2023, this Court construed Petitioner's 'Motion for Emergency Stay of Mother's Child-Support-Indirect-Contempt-Arraignment and Related Subsequent Proceedings' as an application to assume original jurisdiction. Petitioner's application is denied. The Court notes that Petitioner has initiated multiple appeals challenging the same orders or has otherwise requested relief from this Court which lack legal or factual support. Accordingly, Petitioner is hereby admonished future filings in this Court which lack support in either facts or the law will result in the revocation of Petitioner's pauperis status or other sanctions, including an award of attorney fees to the

adverse party."-- this ominously warned against continued appeals, indicating that the court had pre-decided an outcome of injustice not based on my indigency but rather on a desire to silence my legitimate claims. Oklahoma Supreme Court justices were ignoring the numerous unrebutted facts filed attached with unrebutted evidence, while unconstitutionally threatened punishment for persisting in filing appeals against unjust lower court judges' rulings, effectively closing the door on all remedial possibilities within state courts. I respectfully <u>DEMAND/REQUEST/MOTION THIS FEDERAL COURT</u> to admonish the Defendants for their misrepresentations and to impose sanctions for their clear violations of ethical standards in legal proceedings.

d.   The core argument lies in the merit of my claims, which underscores the necessity for me to proceed without the burden of court fees and without being dismissed nor unfairly striked any document without the opposing party being striked also. Justice demands that I'd be allowed to pursue my case fully, without being hindered by financial constraints imposed by those wishing to evade accountability. At the conclusion of our jury trial for this case, if the opposing counsel can produce any credible evidence of me being rich and has any income that can hire attorneys, only then should this court consider the possibility of imposing costs retrospectively, which could justifiably be added to my existing credit card debts and more promissory notes.

14. This esteemed United States District Court for the Northern District of Oklahoma, which is assumed to embody the principles of righteousness and justice until proven otherwise, is now apprised of the unjust revocation of my in forma pauperis status by the Oklahoma Supreme Court. This revocation serves to unjustly deprive me of remedies for harms suffered and obstructs the administration of justice. Therefore, I respectfully urge this Court to <u>ORDER AN INJUNCTION</u> against the Oklahoma Supreme Court and the Tulsa County District Court, compelling the reinstatement of my ability to proceed without incurring court fees. Such action is essential to uphold the principles of fairness and to ensure that I can effectively pursue my case without the barrier of financial constraints.

15. Defendant Cierra Freeman's assertions in paragraph five of her *Motion to Strike* are based on false premises that mischaracterize my "sur-reply" (**a Response to their Reply**), which aims to expose the fabrications and perjurious statements made by the Defendants. The Defendant has erroneously labeled my response as a "supplemental brief", despite the fact that the briefing process has not even commenced yet. It is indeed partially true in that "[s]upplemental briefs are not encouraged and may be filed only upon motion and leave of Court." However, it is critical to clarify that what i submitted is neither a brief nor a supplemental brief; rather, it serves as a necessary rebuttal to the unfounded counterclaims against me. This mislabeling by wrongdoers Defendants not only undermines the procedural integrity of these proceedings but also infringes upon my rights to a fair trial as guaranteed under the **Sixth Amendment** of the U.S. Constitution, which ensures the right to confront and challenge evidence and claims made against me in and shape or form. In ***Davis v. McKinney***, 518 U.S. 1 (1996), the Supreme Court emphasized the importance of fair play and the opportunity to present one's case without undue restrictions. By attempting to label my rebuttal as a supplemental brief, the Defendant is not just seeking to stifle my rebuttal response but is effectively trying to inhibit my constitutional right to a fair hearing. It is imperative that this Court recognize and rectify this mischaracterization, allowing my sur-reply to their Reply to my original Response to their Motion to stand unencumbered by unwarranted motions that contradict the fundamental principles of fairness and equity in the judicial process. My right to defend myself against all allegations and against all robbery must be upheld, free from the constraints imposed by the opposing party's *misinterpretation* of procedural norms.

16. All Defendants' Replies, must be stricken from the record too if my reply must be unjustly stricken, but in the interest of justice, i demand that all should be kept in the record and to to be seen by the unbiased public's eyes. Both Defendant parties exhibited an alarming attitude of entitlement that reflects a double standard and favoritism: their conduct effectively asserts that they are permitted to disregard procedural norms by filing replies without seeking motion and leave of court, while i, Linh, a sui juris litigant, am subjected to different stricter standards

simply because i am not part of their B.A.R. card fraternity, ignoring the law saying that less-strict standards are to be applied to sui juris nonlawyer litigants. This disparity in treatment not only undermines the principles of fairness that are foundational to our legal system but also contradicts the very essence of due process as enshrined in the **Fifth and Fourteenth Amendments** of the U.S. Constitution. These amendments guarantee that no individual shall be deprived of liberty or property without due process of law, applying <u>equally to all parties, regardless of their legal affiliations</u>. Establishing a separate higher standard for my legal practice as a self-represented litigant is not only *unjust* but also risks a violation of my rights to equal protection under the law as articulated in **42 U.S.C. § 1983**, which provides remedies for violations of constitutional rights by state actors. In the case of **Patterson v. Colorado**, 205 U.S. 454 (1907), the Supreme Court noted that all parties must be treated equally before the law without favoritism or discrimination. The current practices exhibited by the defendants reflect a clear intent to sidestep the rules that are meant to govern all parties equally. For these reasons, I urge the court to <u>ADMONISH THE DEFENDANTS</u>.

a. *Roadway Express v. Pipe*, 447 U.S. 752 at 757 (1982): "**Due to sloth, inattention or desire to <u>seize tactical advantage</u>, lawyers have long engaged in <u>dilatory practices</u>**... the glacial pace of much litigation breeds frustration with the Federal Courts and ultimately, **<u>disrespect for the law</u>**."

b. It is settled that the allegations of a pro se litigants' complaint however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).

c. Liberal construction means that pro se litigants are relieved from the strict application of procedural rules and demands that courts not hold missing or inaccurate legal terminology or muddled draftsmanship against them. **Blaisdell**, 729 F.3d at 1241.

d. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1959); *Picking v. Pennsylvania R. Co.,* 151 Fed 2nd 240; *Pucket v. Cox,* 456 2nd 233: "Pro se pleadings are to be considered <u>without regard to technicality;</u> pro se litigants' pleadings are not to be held to the same high standards of perfection as lawyers."

   i. *Picking v. Pennsylvania Railway*, 151 F.2d. 240, Third Circuit Court of Appeals: <u>The plaintiff's civil rights pleading was 150 pages and described by a federal judge as "inept". Nevertheless,</u> it was held "Where a plaintiff pleads pro se in a suit for protection of civil rights, the Court should endeavor to construe Plaintiff's Pleadings <u>without regard to technicalities.</u>"

   ii. *Puckett v. Cox,* 456 F. 2d 233 (1972) (6th Cir. USCA): It was held that a pro se complaint requires a <u>less stringent</u> reading than one drafted by a lawyer per Justice Black in *Conley v. Gibson* (see case listed above, Pro Se Rights Section).

e. *Maty v. Grasselli Chemical Co.*, 303 U.S. 197 (1938): "Pleadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They <u>should not raise barriers which prevent the achievement of that end</u>. Proper pleading is important, but its importance consists in its effectiveness as a means to accomplish the end of a just judgment."

f. *Sherar v. Cullen*, 481 F. 2d 946 (1973): "There can be <u>no sanction or penalty</u> imposed upon one because of his exercise of Constitutional Rights."

g. *Murdock v. Pennsylvania*, 319 U.S. 105 (1943): "No state shall convert a liberty into a license, and charge a fee therefore."

h. *Brotherhood of Railroad Trainmen v. Virginia ex rel. Virginia State Bar,* 377 U.S. 1 (1964): Litigants can be assisted by unlicensed laymen during judicial proceedings.

i. *NAACP v. Button*, 371 U.S. 415; *United Mineworkers of America v. Gibbs*, 383 U.S. 715; and *Johnson v. Avery*, 89 S. Ct. 747 (1969): Members of groups who are competent nonlawyers can assist other members of the group achieve the goals of the group in court without being charged with 'unauthorized practice of law'.

17. **Good Cause Exists for Filing Sur-Reply:** Plaintiff filed the sur-replies to address <u>new arguments presented in the Defendants' Reply Briefs</u>, ensuring a complete and fair presentation of her case. Why should the sur-reply be stricken if the initial reply by all Defendants remains unchallenged? The principle here is clear: truth should never be hidden or suppressed, and every individual—man or woman—deserves to be treated <u>equally</u> and <u>with respect</u>. <u>The opposing party submitted a reply to my response without first seeking leave from the court, thus opening the door for me to file a sur-reply without needing explicit permission</u>.

18. **In the realm of common law, to which i invoked this court's authority**, the tradition holds that all parties have the right to present their positions fully and openly. There is a longstanding legal principle that aligns with the concept of due process, as articulated in the **Fifth Amendment** of the U.S. Constitution, which guarantees that no person shall be deprived of life, liberty, or property without due process of law. Here, due process necessitates that both parties have the opportunity to confront and rebut claims made against them.

19. Moreover, under the **Federal Rules of Civil Procedure**, particularly **Rule 15**, a party may respond to an opposing party's pleading and, in the interests of justice, should have the right to rebuff any <u>new</u> allegations or <u>misrepresentations</u> presented which there were plenty of new allegations and misrepresentations by Defendants in their reply to my response. By seeking to suppress a sur-reply full of rebutting truth, the opposing party maliciously attempted to limit

relevant truths that need to be addressed in this case.

20. This court should embrace its role as a <u>seeker of truth</u>, discerning between fact and falsehood, and allowing for open and fair rebuttal to <u>all claims</u>. To do otherwise would violate the foundational principles of equality and justice that are enshrined not only in our laws but in the very fabric of our society. To strike the sur-reply while allowing the reply to stand would undermine the commitment to fairness and equity that we are all entitled to under the law.

21. **Supreme Court's Guidance on sui juris Litigation:** Following **U.S. Supreme Court** ruling in *Loper Bright Enterprises v. Raimondo*, 592 U.S. ___ (June 28, 2024), courts must balance procedural rigor with the need to accommodate sui juris litigants, preventing unjust dismissal of their pleadings; this SCOTUS ruling also addressed the scope of agency overreach and the standing of federal, state, and local agencies in administrative proceedings. Plaintiff's case involved a lot of substantive allegations and alleged harm if true without being allowed to prove true to be recompensed will be egregious and evil in the eyes of YAHUAH and of all men, and will be recorded in eternal history, and this evoke the wrath of YAHUAH on all those involved and their lands, as promised in Bible's <u>Jeremiah 6:14,15,19</u> GNV.

22. **Defendants' Motions are Unwarranted:** The motions to strike are primarily tactical, aiming to limit Plaintiff's ability to respond rather than addressing substantive legal issues.

23. **False Accusations of "Threats" without any proof of harm against Injured Victim to Distract, Deflect, Delay to Deny Justice is well-known strategies of Abusers/Criminals**:

   a. False accusations made without any proof of harm against this injured victim are blatant and calculated strategies employed by abusers and criminals such as Defendants. These tactics—designed to distract, deflect, and delay justice—are all too familiar.

   b. I want to clarify that any statements made that may have seemed threatening were never intended to intimidate; rather, they were heartfelt expressions rooted in my faith: My Protector is my Heavenly Father named YAHUAH i.e. The Creator remains steadfast, as He always has, in punishing those who perpetrate evil, including those who have harmed me as detailed in my complaint, and those who have either failed to protect me or chose complicity

in these wrongdoings. In this context, I invoke the timeless Latin phrase, *"Nemo me impune lacessit,"* meaning "no one attacks me with impunity." This motto, associated with Scotland and the Order of the Thistle, serves as a powerful reminder that harming a child of **YAHUAH (the Most High, the Creator, the GREAT I AM THAT I AM**) will not go unaddressed. Those who maliciously inflict injury should understand that they cannot act without facing consequences, avenged by Him in the name of Yahusha the Christ. I hold dearly the belief articulated in **1 Samuel 24:12**: "May the Lord judge between you and me. And may the Lord avenge the wrongs you have done to me, but my hands will not touch you." This belief emphasizes divine justice, as also reflected in **Proverbs 24:12**: "If you said, 'But we knew nothing about this,' does not He who weighs the heart perceive it? Does not He who guards your life know it? Will He not repay everyone according to what they have done?" It appears the wrongdoers refuse to repent or apologize, continuing their path without recognition of the harm inflicted upon me—taking my retirement and robbing me not just of funds, of years of hard-earned labor, and of my daughter (my property, my liberty/freedom to associate with blood family, and my livelihood). They orchestrated this theft while I was only forty years old (30 years before average retirement age), with numerous first-hand witnesses, including Wade Reeves, Maryann Petri, Hester Brown, and many others who prefer to remain unnamed for their safety from retaliation.

c. Legal Violations and Criminal Activity alleged are numerous and grave, and must never be dismissed:

   i. **Fair Debt Collection Practices Act (15 U.S.C. § 1692, et seq.)**
   ii. **Mail and Wire Fraud**
   iii. **Bank Fraud**
   iv. **Impersonation of IRS Agents and Article III Judges (18 U.S.C. § 912)**
   v. **Conspiracy Against Rights (18 U.S.C. § 241)**
   vi. **Violation of Civil Rights (42 U.S.C. § 1983)**
   vii. **Deprivation of Rights Under Color of Law (18 U.S.C. § 242)**
   viii. **Violation of Procedural Due Process Rights under the Fourteenth Amendment**
   ix. **Unwarranted Seizure of Bank Funds and Personal Information**
   x. **False Imprisonment and Unlawful Arrest (25 CFR § 11.404)**
   xi. **Fraudulent Acquisition of Confidential Financial Records (12 U.S.C. § 3403)**

  xii. **Malicious Prosecution & Intentional Infliction of Emotional Distress (18 U.S.C. §2340)**
 xiii. **Misappropriation of State Funds (18 U.S.C. §§ 643-653)**
 xiv. **Extortion and Abusive Debt Collection Practices**
  xv. **Defamation (28 U.S.C. § 4101(1))**
 xvi. **Government Overreach**

d. This litany of injustices reflects a systemic failure and individual malevolence that will NOT be overlooked. Justice shall prevail in Yahusha's name, and those who believe they can evade accountability will find they have misjudged the divine order of right and wrong.

V. CONCLUSION: For the reasons articulated above, Plaintiff respectfully requests that this Honorable Court deny Defendants' Motions to Strike her Rebuttal to their perjurious-and-without-Court's-permission Replies to her Response to their Motion to Dismiss, thus enabling her to fully and fairly present her case. The Plaintiff asserts that her Original Complaint sufficiently states claims that not only justify the continuation of these proceedings in this Court but also seek redress for direct violations of her rights under federal law and rights given by God Creator. Consequently, Plaintiff requests that this Honorable Court deny all motions to dismiss as well as all motions to strike. Furthermore, she urges the Court to expedite the progression of this case by scheduling a conference in preparation for a jury trial in common law court, overseen by an Article III Judge (article three judge) as outlined in the United States original Constitution, and issuing requested injunctions against Oklahoma Supreme Court and against Tulsa County District Court to reinstatement of my ability to proceed without incurring court fees*,* ordering offending Defendants to end **harassments** (including unlawful Child-Support Collection practices/efforts via OKDHS CSS; malicious prosecution by Tulsa County for Indirect Contempt of Court charges for child support) and **defamation** of Plaintiff (including but not limited defamation alleging "contempt of court", "not paying child support", "willful violation of court order", "abusive parent with substantiation of abuse" without any evidence and without any witnesses during any trial including jury trial); Vacate *Child Support Order* of October 14, 2022 and *Order Modifying The Decree of Dissolution of Marriage* of February 20, 2024 that breached previous contracts of child support finalized in another State

and previously upheld by previous judges of Tulsa County Court; <u>uphold</u> original Child Support Contract of January 2016 in Oregon and upheld in Oklahoma 07/2017 and again in 2019 to comply with judicial estoppel; <u>ordering</u> there shall never be any child support order to be issued against Mother unless Father give Mother back her paid-in-full brand-new-fully-loaded Jeep Wrangler and brand-new fully loaded Baja 18-feet Trailer; <u>ordering</u> the reversal of Defendant's passport-suspension/revocation and licensures-suspension stemmed from OKDHS CSS' persecutory actions. In seeking these remedies, the Plaintiff emphasizes her right to a fair trial and full access to justice, as guaranteed under the **Sixth Amendment** and preserved by the principles of due process. The Plaintiff also respectfully requests that the Court grants any additional relief it deems just and appropriate to ensure fairness and equity in these proceedings.

> We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.--That to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed, --That whenever any Form of Government becomes destructive of these ends, it is the Right of the People to alter or to abolish it, and to institute new Government, laying its foundation on such principles and organizing its powers in such form, as to them shall seem most likely to effect their Safety and Happiness. **The unanimous Declaration of the thirteen united States of America, circa 1776.**

<div align="right">

*Nemo me impune lacessit.*
PRIVATE; THIS IS NOT A PUBLIC COMMUNICATION
Notice to Agent is Notice to Principal
Notice to Principal is Notice to Agent
Applications to all successors and assigns
**Silence is Tacit Acquiescence/Agreement/Dishonor**

</div>

**<u>Avouchment / Verification</u>**

I hereby declare, certify and state, pursuant to the penalties of perjury under the laws of the United States of America, and by the provision of **28 USC 1746** that all of the above and foregoing representations are true and correct to the best of my knowledge, information, and belief. Executed in <u>Tulsa</u> County, Oklahoma on this <u>22<sup>nd</sup></u> day of <u>November</u> in the Year of Our Lord <u>Two Thousand and Twenty Four</u>.

<div align="right">

Private sector autograph;
WITHOUT RECOURSE

By beneficiary: *without prejudice* Linh-Tran Stephens/Agent

</div>

Linh-Tran:Stephens / Authorized Representative and beneficiary of LINH TRAN STEPHENS
<div align="right">Reserving all my rights without prejudice,</div>
A natural living woman breathing with a living soul and a Holy Spirit of Creator YAHUAH, non-incorporated, living on the land of the republic, with all her God-given rights, Sovereign Sui

Juris, one of the People, Freeman on the Land, General Delivery Town Post,
c/o 11063 S Memorial Dr Ste D #235, Tulsa, Oklahoma union state, without USDC,
Zip exempt, but near [74008]
LinhStephens7@gmail.com

### Notary as JURAT CERTIFICATE

STATE OF <u>MINNESOTA</u>    )
                            ) *ss*

COUNTY OF <u>SHERBURNE</u> )

I swear that on this <u>22<sup>nd</sup></u> day of <u>November</u>, 20<u>24</u>. The above-named Affiant, <u>Linh-Tran: Stephens</u>, Authorized Representative for Legal Fiction <u>LINH TRAN STEPHENS</u>, personally appeared before me electronically, and of her own free will, signed and executed this AFFIDAVIT. WITNESS my hand and official seal.

*Melissa K. Vagle*
**Signature of Notary/Jurat**

MELISSA K VAGLE
Notary Public
State of Minnesota
My Commission Expires
January 31, 2028

My commission expires: 01/31/2028

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the <u>22<sup>nd</sup></u> day of <u>November</u>, 2024, a true, correct, and exact copy of the above and foregoing instrument was electronically transmitted to the Clerk of the Court via ProSeFilingsOKND@oknd.uscourts.gov for filing because efiling and In Forma Pauperis (IFP) were approved:

1. Defendant #1: CHILD SUPPORT SERVICES OF OKLAHOMA DEPARTMENT OF HUMAN SERVICES (CSS of OKDHS), P.O. Box 27068, Tulsa OK 74149, or Oklahoma Centralized Support Registry, P.O. Box 268849, Oklahoma City, OK 73126; Tel: 405-522-2273; email: Defendant #2: CHARLES SCHWAB AND CO., INC., 3000 Schwab Way, Westlake, TX 76262; Tel: 1800-435-4000; email: TPLPLevy@schwab.com
2. Defendant #3: Cierra Freeman, an individual in her personal capacity, and in official capacity as court-appointed attorney for child support enforcement, Boeheim Freeman Law, 616 S Boston Ave, Suite 307, Tulsa OK 74119; Tel: 918-884-7791; email: cfreeman@boeheimfreeman.com
3. Defendant #4: Mary Johnmeyer, an individual in her personal capacity, and in official capacity as legal counsel of Charles Schwab and Co., Inc.; 3000 Schwab Way, Westlake, TX 76262; Tel: 800-435-4000; email: TPLPLevy@schwab.com
4. Defendant #5: Renee Banks, an individual in her personal capacity, and in official capacity as CSS Director, PO Box 248822, Oklahoma City, OK 73124; Tel: 918-295-3500; email: renee.banks@okdhs.org
5. Defendant #6: Jason Hoenshell, an individual in his personal capacity, and in official capacity as Oklahoma FIDM Coordinator, PO Box 248822, Oklahoma City, OK 73124; Tel: 405-982-1530; email: jason.hoenshell@okdhs.org
6. Defendant #7: Emmalene Stringer, an individual in her personal capacity, and in official capacity as State's Attorney for CSS, 3666 N Peoria Ave, Tulsa, OK 74106, or PO BOX 27068, Tulsa, OK 74149; Tel: 918-295-3500, Fax: 918-430-2364, email: emmalene.stringer@okdhs.org and



By beneficiary: *Linh-Tran: Stephens/Agent*

# EXHIBIT 01

*1 page*

ORIGINAL

IN THE SUPREME COURT OF THE STATE OF OKLAHOMA



FILED
SUPREME COURT
STATE OF OKLAHOMA

JAN 23 2023

JOHN D. HADDEN
CLERK

| Rec'd (date) | 1-23-23 |
| Posted | |
| Mailed | |
| Distrib | |
| Publish | yes ___ no ✗ |

IN RE THE MARRIAGE OF:
LINH TRAN STEPHENS,

    Appellant,

v.        No. 120,849

ADAM SYLVESTER STEPHENS,

    Appellee.

ORDER

Appellee's Motion to Dismiss Appeal for lack of an appealable order is granted in part, and denied in part. 12 O.S. 2021, §§ 952 & 953.

The motion to dismiss is granted as to the October 17, 2022 order awarding temporary child support in accordance with the temporary custody order and the October 31, 2022 order denying Appellant's objection and motion to recalculate. Such orders are interlocutory and not immediately appealable. *S.W. v. Duncan*, 2001 OK 39, ¶ 11, 24 P.3d 846. Moreover, the orders do not fall into any of the statutory or rule-based categories of orders appealable by right. *See* 12 O.S. 2021, §§ 952(b)(2), 993(A), and Rule 1.60, *Oklahoma Supreme Court Rules*, Tit. 12, ch. 15, App. 1. *See also Kantor v. Kantor*, 1994 OK 132, ¶ 2, 886 P.2d 480.

**More unlawful Order by lower court for RECORDS TO BE SEALED (01-17-2023)**

To the extent Appellant challenges the November 2, 2022 order sealing records, Appellee's motion to dismiss is denied. The order sealing records is the functional equivalent of an injunction, therefore the appeal of this order shall proceed

as an appeal from an order appealable by right. *Collier v. Reese*, 2009 OK 86, ¶ 11, 222 P.3d 966. *See* Rule 1.60(c), *Oklahoma Supreme Court Rules*, Tit. 12, ch. 15, App. 1.

Appellant will have the opportunity to seek review of the October 17, 2022 and October 31, 2022 orders upon a final adjudication of the parties' motions to modify custody filed in the district court case. Appellee's Objection to Appellant's Pauper's Affidavit is denied.

*Father = Appellee*    *Mother = Appellant*

DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THIS 23RD DAY OF JANUARY, 2023.

_____
CHIEF JUSTICE

ALL JUSTICES CONCUR

-2-

# EXHIBIT 02

*4 pages*

Form **1040**
Department of the Treasury-Internal Revenue Service (99)
**U.S. Individual Income Tax Return** **2021** OMB No. 1545-0074     IRS Use Only-Do not write or staple in this space.

**Filing Status**
Check only one box.
☐ Single  ☐ Married filing jointly  ☒ Married filing separately (MFS)  ☐ Head of household (HOH)  ☐ Qualifying widow(er) (QW)

If you checked the MFS box, enter the name of your spouse. If you checked the HOH or QW box, enter the child's name if the qualifying person is a child but not your dependent ► X▨▨▨▨#▨

| Your first name and middle initial | Last name | Your social security number |
|---|---|---|
| Linh T | Stephens | ▨▨▨▨5094 |

If joint return, spouse's first name and middle initial — Last name
**Spouse's social security number** ▨▨▨▨▨▨

Home address (number and street). If you have a P.O. box, see instructions.     Apt. no. ▨▨▨▨▨▨▨▨

**Presidential Election Campaign**
Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund.

City, town, or post office. If you have a foreign address, also complete spaces below.   State **OK**   ZIP code ▨▨▨▨▨▨
▨▨▨▨▨▨

Foreign country name ▨▨▨▨▨▨   Foreign province/state/county   Foreign postal code

☐ You  ☐ Spouse

At any time during 2021, did you receive, sell, exchange, or otherwise dispose of any financial interest in any virtual currency?  ☐ Yes  ☒ No

**Standard Deduction**
**Someone can claim:** ☐ You as a dependent  ☐ Your spouse as a dependent
☐ Spouse itemizes on a separate return or you were a dual-status alien

**Age/Blindness** **You:** ☐ Were born before January 2, 1957  ☐ Are blind  **Spouse:** ☐ Was born before January 2, 1957  ☐ Is blind

**Dependents** (see instructions):
If more than four dependents, see instructions and check here ► ☐

| (1) First name   Last name | (2) Social security number | (3) Relationship to you | (4) Check if qualifies for (see instructions): |  |
|---|---|---|---|---|
|  |  |  | Child tax credit | Credit for other dependents |
|  |  |  | ☐ | ☐ |
|  |  |  | ☐ | ☐ |
|  |  |  | ☐ | ☐ |
|  |  |  | ☐ | ☐ |

**Attach Sch. B if required.**

| | | | |
|---|---|---|---|
| 1 | Wages, salaries, tips, etc. Attach Form(s) W-2 . . . . . . . . . . | 1 | |
| 2a | Tax-exempt interest . . . 2a | b Taxable interest . . . . . . . . 2b | 301 |
| 3a | Qualified dividends . . . . 3a 79 | b Ordinary dividends . . . . . . . 3b | 79 |
| 4a | IRA distributions . . . . . 4a | b Taxable amount . . . . . . . . 4b | |
| 5a | Pensions and annuities . . 5a | b Taxable amount . . . . . . . . 5b | |
| 6a | Social security benefits . . 6a | b Taxable amount . . . . . . . . 6b | |
| 7 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ► ☐ | 7 | 6,493 |
| 8 | Other income from Schedule 1, line 10 . . . . . . . . . . . . | 8 | 17,302 |
| 9 | Add lines 1, 2b, 3b, 4b, 5b, 6b, 7, and 8. This is your **total income** . . . . . . . ► | 9 | 24,175 |
| 10 | Adjustments to income from Schedule 1, line 26 . . . . . . . . . . | 10 | 297 |
| 11 | Subtract line 10 from line 9. This is your **adjusted gross income** . . . . . . . ► | 11 | 23,878 |
| 12a | **Standard deduction or itemized deductions** (from Schedule A) . . . . 12a 12,550 | | |
| b | Charitable contributions if you take the standard deduction (see instructions) 12b 300 | | |
| c | Add lines 12a and 12b . . . . . . . . . . . . . . . . . . | 12c | 12,850 |
| 13 | Qualified business income deduction from Form 8995 or Form 8995-A . . . . . . | 13 | 781 |
| 14 | Add lines 12c and 13 . . . . . . . . . . . . . . . . . . | 14 | 13,631 |
| 15 | **Taxable income.** Subtract line 14 from line 11. If zero or less, enter -0- . . . . . . . . | 15 | 10,247 |

**Standard Deduction for—**
● Single or Married filing separately, $12,550
● Married filing jointly or Qualifying widow(er), $25,100
● Head of household, $18,800
● If you checked any box under *Standard Deduction,* see instructions.

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.     Form **1040** (2021)

EEA

**SCHEDULE 1**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service

# Additional Income and Adjustments to Income

► **Attach to Form 1040, 1040-SR, or 1040-NR.**
► **Go to** *www.irs.gov/Form1040* **for instructions and the latest information.**

OMB No. 1545-0074

**2021**

Attachment
Sequence No. **01**

Name(s) shown on Form 1040,1040-SR, or 1040-NR

Linh T Stephens

**Your social security number**

XXXX5094

## Part I   Additional Income

| | | | |
|---|---|---|---|
| 1 | Taxable refunds, credits, or offsets of state and local income taxes . . . . . . . . . . . . . . | **1** | |
| 2a | Alimony received . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **2a** | |
| b | Date of original divorce or separation agreement (see instructions) . . ► | | |
| 3 | Business income or (loss). Attach Schedule C . . . . . . . . . . . . . . . . . . . . . . | **3** | 4,204 |
| 4 | Other gains or (losses). Attach Form 4797 . . . . . . . . . . . . . . . . . . . . . . . | **4** | |
| 5 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **5** | |
| 6 | Farm income or (loss). Attach Schedule F . . . . . . . . . . . . . . . . . . . . . . . | **6** | |
| 7 | Unemployment compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **7** | 13,098 |
| 8 | Other income: | | |
| a | Net operating loss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **8a** ( ) | |
| b | Gambling income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **8b** | |
| c | Cancellation of debt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **8c** | |
| d | Foreign earned income exclusion from Form 2555 . . . . . . . . . . . . . | **8d** ( ) | |
| e | Taxable Health Savings Account distribution . . . . . . . . . . . . . . . . | **8e** | |
| f | Alaska Permanent Fund dividends . . . . . . . . . . . . . . . . . . . . | **8f** | |
| g | Jury duty pay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **8g** | |
| h | Prizes and awards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **8h** | |
| i | Activity not engaged in for profit income . . . . . . . . . . . . . . . . . | **8i** | |
| j | Stock options . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **8j** | |
| k | Income from the rental of personal property if you engaged in the rental for profit but were not in the business of renting such property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **8k** | |
| l | Olympic and Paralympic medals and USOC prize money (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **8l** | |
| m | Section 951(a) inclusion (see instructions) . . . . . . . . . . . . . . . . | **8m** | |
| n | Section 951A(a) inclusion (see instructions) . . . . . . . . . . . . . . . | **8n** | |
| o | Section 461(l) excess business loss adjustment . . . . . . . . . . . . . | **8o** | |
| p | Taxable distributions from an ABLE account (see instructions) . . . . . | **8p** | |
| z | Other income. List type and amount ► | **8z** | |
| 9 | Total other income. Add lines 8a through 8z . . . . . . . . . . . . . . . . . . . . . . | **9** | |
| 10 | Combine lines 1 through 7 and 9. Enter here and on Form 1040,1040-SR, or 1040-NR line 8 | **10** | 17,302 |

**For Paperwork Reduction Act Notice, see your tax return instructions.**   **Schedule 1 (Form 1040) 2021**

EEA

Linh Tran Stephens, OHA 23-00313-73, FGN 000948641001, Exhibit 02

Form **1040**  Department of the Treasury-Internal Revenue Service
**U.S. Individual Income Tax Return**  **2022**  OMB No. 1545-0074  IRS Use Only-Do not write or staple in this space.

**Filing Status**
Check only one box.

☐ Single  ☐ Married filing jointly  ☒ Married filing separately (MFS)  ☐ Head of household (HOH)  ☐ Qualifying surviving spouse (QSS)

If you checked the MFS box, enter the name of your spouse. If you checked the HOH or QSS box, enter the child's name if the qualifying person is a child but not your dependent: X▮▮▮▮▮ H▮

| Your first name and middle initial | Last name | Your social security number |
|---|---|---|
| Linh T | Stephens | XXX–XX–5094 |

If joint return, spouse's first name and middle initial    Last name

**Spouse's social security number**
▮▮▮▮

Home address (number and street). If you have a P.O. box, see instructions.    Apt. no.

**Presidential Election Campaign**

▮▮▮▮▮▮▮▮▮▮▮▮0

City, town, or post office. If you have a foreign address, also complete spaces below.    State **OK**    ZIP code

Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund.  ☐ You  ☐ Spouse

▮▮▮
Foreign country name    Foreign province/state/county    Foreign postal code

**Digital Assets**
At any time during 2022, did you: (a) receive (as a reward, award, or payment for property or services); or (b) sell, exchange, gift, or otherwise dispose of a digital asset (or a financial interest in a digital asset)? (See instructions.)  ☐ Yes  ☒ No

**Standard Deduction**
Someone can claim:  ☐ You as a dependent  ☐ Your spouse as a dependent
☐ Spouse itemizes on a separate return or you were a dual-status alien

**Age/Blindness**  You:  ☐ Were born before January 2, 1958  ☐ Are blind    Spouse:  ☐ Was born before January 2, 1958  ☐ Is blind

**Dependents** (see instructions):
If more than four dependents, see instructions and check here ☐

| (1) First name    Last name | (2) Social security number | (3) Relationship to you | (4) Check if qualifies for (see instructions): Child tax credit | Credit for other dependents |
|---|---|---|---|---|
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a Form W-2, see instructions.

Attach Sch. B if required.

| | | |
|---|---|---|
| **1a** | Total amount from Form(s) W-2, box 1 (see instructions) | 1a |
| **b** | Household employee wages not reported on Form(s) W-2 | 1b |
| **c** | Tip income not reported on line 1a (see instructions) | 1c |
| **d** | Medicaid waiver payments not reported on Form(s) W-2 (see instructions) | 1d |
| **e** | Taxable dependent care benefits from Form 2441, line 26 | 1e |
| **f** | Employer-provided adoption benefits from Form 8839, line 29 | 1f |
| **g** | Wages from Form 8919, line 6 | 1g |
| **h** | Other earned income (see instructions) | 1h |
| **i** | Nontaxable combat pay election (see instructions)  **1i** | |
| **z** | Add lines 1a through 1h | 1z |
| **2a** | Tax-exempt interest  **2a**    **b** Taxable interest | 2b | 1 |
| **3a** | Qualified dividends  **3a**  13    **b** Ordinary dividends | 3b | 13 |

**Standard Deduction for-**
- Single or Married filing separately, $12,950
- Married filing jointly or Qualifying surviving spouse, $25,900
- Head of household, $19,400
- If you checked any box under Standard Deduction, see instructions.

## Parenthesis means negative income

| | | |
|---|---|---|
| **c** | If you elect to use the lump-sum election method, check here (see instructions) ☐ | |
| **7** | Capital gain or (loss). Attach Schedule D if required. If not required, check here ☐ | 7 | 3,496 |
| **8** | Other income from Schedule 1, line 10 | 8 | (15,673) |
| **9** | Add lines 1z, 2b, 3b, 4b, 5b, 6b, 7, and 8. This is your **total income** | 9 | (12,163) |
| **10** | Adjustments to income from Schedule 1, line 26 | 10 | |
| **11** | Subtract line 10 from line 9. This is your **adjusted gross income** | 11 | (12,163) |
| **12** | Standard deduction or itemized deductions (from Schedule A) | 12 | 12,950 |
| **13** | Qualified business income deduction from Form 8995 or Form 8995-A | 13 | |
| **14** | Add lines 12 and 13 | 14 | 12,950 |
| **15** | Subtract line 14 from line 11. If zero or less, enter -0-. This is your **taxable income** | 15 | 0 |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.

EEA

Form **1040** (2022)

Form **1040** Department of the Treasury-Internal Revenue Service
**U.S. Individual Income Tax Return** **2023** OMB No. 1545-0074 | IRS Use Only-Do not write or staple in this space.

For the year Jan. 1–Dec. 31, 2023, or other tax year beginning _____ , 2023, ending _____ | See separate instructions.

| | |
|---|---|
| Your first name and middle initial **Linh T** | Last name **Stephens** |

Your social security number **XXX–XX–XXXX**

If joint return, spouse's first name and middle initial / Last name

Spouse's social security number **XXX–XX–XXXX**

Home address (number and street). If you have a P.O. box, see instructions. **8214 E 111th PL S Unit 100** | Apt. no.

**Presidential Election Campaign**

City, town, or post office. If you have a foreign address, also complete spaces below. **Bixby** | State **OK** | ZIP code **74008-2452**

Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund.

Foreign country name | Foreign province/state/county | Foreign postal code

☐ You   ☐ Spouse

**Filing Status**
Check only one box.

☐ Single
☐ Married filing jointly (even if only one had income)
☒ Married filing separately (MFS)
☐ Head of household (HOH)
☐ Qualifying surviving spouse (QSS)

If you checked the MFS box, enter the name of your spouse. If you checked the HOH or QSS box, enter the child's name if the qualifying person is a child but not your dependent: **XXXXX H**

**Digital Assets**
At any time during 2023, did you: (a) receive (as a reward, award, or payment for property or services); or (b) sell, exchange, or otherwise dispose of a digital asset (or a financial interest in a digital asset)? (See instructions.)   ☐ Yes   ☒ No

**Standard Deduction**
Someone can claim: ☐ You as a dependent   ☐ Your spouse as a dependent
☐ Spouse itemizes on a separate return or you were a dual-status alien

**Age/Blindness**  You: ☐ Were born before January 2, 1959  ☐ Are blind   **Spouse:** ☐ Was born before January 2, 1959  ☐ Is blind

**Dependents** (see instructions):

| (1) First name    Last name | (2) Social security number | (3) Relationship to you | (4) Check if qualifies for (see instructions): |  |
|---|---|---|---|---|
| | | | Child tax credit | Credit for other dependents |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |

If more than four dependents, see instructions and check here ☐

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a Form W-2, see instructions.

Attach Sch. B if required.

| | | |
|---|---|---|
| 1a | Total amount from Form(s) W-2, box 1 (see instructions) | 1a |
| b | Household employee wages not reported on Form(s) W-2 | 1b |
| c | Tip income not reported on line 1a (see instructions) | 1c |
| d | Medicaid waiver payments not reported on Form(s) W-2 (see instructions) | 1d |
| e | Taxable dependent care benefits from Form 2441, line 26 | 1e |
| f | Employer-provided adoption benefits from Form 8839, line 29 | 1f |
| g | Wages from Form 8919, line 6 | 1g |
| h | Other earned income (see instructions) | 1h |
| i | Nontaxable combat pay election (see instructions) | 1i |
| z | Add lines 1a through 1h | 1z |

| | | | | | |
|---|---|---|---|---|---|
| 2a | Tax-exempt interest | 2a | b | Taxable interest | 2b |
| 3a | Qualified dividends | 3a | b | Ordinary dividends | 3b |
| 4a | IRA distributions | 4a | b | Taxable amount | 4b |
| 5a | Pensions and annuities | 5a | b | Taxable amount | 5b |
| 6a | Social security benefits | 6a | b | Taxable amount | 6b |
| c | If you elect to use the lump-sum election method, check here (see instructions) ☐ | | | | |

Standard Deduction for-
● Single or Married filing separately, $13,850
● Married filing jointly or Qualifying surviving spouse, $27,700
● Head of household, $20,800
● If you checked any box under Standard Deduction, see instructions.

| | | |
|---|---|---|
| 7 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ☐ | 7 |
| 8 | Additional income from Schedule 1, line 10 | 8 | (11,948) |
| 9 | Add lines 1z, 2b, 3b, 4b, 5b, 6b, 7, and 8. This is your **total income** | 9 | (11,948) |
| 10 | Adjustments to income from Schedule 1, line 26 | 10 | |
| 11 | Subtract line 10 from line 9. This is your **adjusted gross income** | 11 | (11,948) |
| 12 | **Standard deduction or itemized deductions** (from Schedule A) | 12 | 13,850 |
| 13 | Qualified business income deduction from Form 8995 or Form 8995-A | 13 | |
| 14 | Add lines 12 and 13 | 14 | 13,850 |
| 15 | Subtract line 14 from line 11. If zero or less, enter -0-. This is your **taxable income** | 15 | 0 |

**For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.**

EEA

Form **1040** (2023)

# EXHIBIT 03

*4 pages*



FILED
SUPREME COURT
STATE OF OKLAHOMA

JUL 23 2024

JOHN D. HADDEN
CLERK

# ORIGINAL

*10587733372*

## IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

| | |
|---|---|
| Linh Tran Stephens, *a living natural woman with a living soul and all human rights,* | ) Supreme Court No. **DF-120849** |
| Petitioner/Appellant/Mother, | ) District Court Case No. **FD-2015-2228** |
| vs. | ) Docket C, Special Judge April Seibert |
| | ) (Tulsa County) |
| ADAM SYLVESTER STEPHENS, | ) Presiding Judge Dawn Moody |
| *Respondent/Appellee/Father.* | ) (previously Doug Drummond) |

### NOTICE REGARDING UNITED STATES SUPREME COURT'S ORDER

Per written order from the United States Supreme Court dated July 11, 2024, "**RE: Stephens v. Stephens, OK Ct. of Civil App. No. 120,849**" that was received in the mail on Friday 07/19/2024–despite Mandate of this case by lower court (Oklahoma Supreme Court was issued on July 11, 2024–this woman with a living soul and all her human rights reserved without prejudice and without recourse, whose named is Linh Tran Stephens, was instructed: "*case must first be reviewed by a United States court of appeals or by the highest state court in which a decision could be had. 28 USC 1254 and 1257.*" [see attached Exhibit 1].

Therefore, a copy of this woman Linh Tran Stephens' **WRIT OF CERTIORARI** shall be filed separately here in Oklahoma Supreme Court but the same date as this NOTICE.

Private sector autograph;
*without prejudice*
By beneficiary: *Linh-Tran Stephens/Agent*
: linh-tran: stephens / attorney-in-fact
Reserving all my rights WITHOUT PREJUDICE, UCC §1-308. WITHOUT RECOURSE.
A natural living breathing woman with a living soul,
living on the land of the republic of oklahoma with full human rights, Sui Juris, One of the People,
Attorney-in-fact, Agent, Representative for Legal Fiction,
Acting as Beneficiary of LINH TRAN STEPHENS
General Delivery Town Post without United States
c/o 11063 S Memorial Dr Ste D #235, Tulsa, Oklahoma [74133-7366]
LinhStephens7@gmail.com

### CERTIFICATE OF SERVICE

I, Linh Tran Stephens, hereby certifies that on the 23rd day of July, 2024, a true, correct, and exact copy of the above and foregoing instrument was mailed to:
Gilbert J. Pilkington, Jr., OBA # 21998, PILKINGTON LAW FIRM, PLLC
P.O. Box 52614, Tulsa, OK 74152-0614
*Attorney for Respondent named Adam Sylvester Stephens*

1 original and 14 copies delivered to
Supreme Court Clerk's Office, 2100 N Lincoln Blvd, Suite 4, Oklahoma City, OK 73105-4907

*without prejudice*
*Linh-Tran Stephens/Agent*

| | |
|---|---|
| Received: | 7·23·24 |
| Docketed: | JM |
| Marshal: | |
| COA/OKC: | |
| COA/TUL: | |

# SUPREME COURT OF THE UNITED STATES
## OFFICE OF THE CLERK
## WASHINGTON, DC  20543-0001

July 11, 2024

Linh Stephens
C/O 11063 S Memorial Dr.
Suite D. #235
Tulsa, OK 74133

RE: Stephens v. Stephens
    OK Ct. of Civil App. No. 120,849

Dear Ms. Stephens:

The above-entitled petition for a writ of certiorari was originally postmarked March 25, 2024 and received again on June 27, 2024. The papers are returned for the following reason(s):

Your case must first be reviewed by a United States court of appeals or by the highest state court in which a decision could be had. 28 USC 1254 and 1257.

Sincerely,
Scott S. Harris, Clerk
By:

Emily Walker
(202) 479-5955

**EXHIBIT #1**

Enclosures



# IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

In Re the Marriage of :

Linh Tran Stephens,
Petitioner/Appellant,

vs

Adam Sylvester Stephens,
Respondent/Appellee.

)
) Supreme Court Case Number: 120849
)
) Lower Court Case Number: FD-2015-2228
)
) Lower Court: Tulsa County District Court
)

## MANDATE

On the 11th day of July , 2024 , the Honorable Chief Justice John  Kane of the Oklahoma Supreme Court ordered the Clerk of the Supreme Court to issue mandate, pursuant to the rules of the Oklahoma Supreme Court, in the above-styled appeal from the Tulsa County District Court.

On appeal, the following judgment was entered on April 23rd, 2024:

## AFFIRMED

Costs of $0.00 are taxed and allowed pursuant to Section 978 of Title 12 of the Oklahoma Statutes and the rules of the Oklahoma Supreme Court.

Therefore, the Tulsa County District Court is directed to enter of record the above judgment and to issue process or take further action as required by the order or opinion issued in this appeal.

JOHN D. HADDEN
Clerk of the Appellate Courts

By Julia  McAllister, Deputy

**ORIGINAL**

*1058774818*

FILED
SUPREME COURT
STATE OF OKLAHOMA

JUL 29 2024

JOHN D. HADDEN
CLERK

## IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

Monday, July 29, 2024

THE CLERK IS DIRECTED TO ENTER THE FOLLOWING ORDERS OF THE COURT:

122300    Citizen Energy III et al. v. Warwick-Jupiter et al.

This appeal is hereby dismissed on the motion of the appellants.

122303    Citizen Energy III et al. v. Warwick-Jupiter et al.

This appeal is hereby dismissed on the motion of the appellants.

121496    Michael Lee v. Oklahoma Department of Human Services

The Court noes appellant Michael Lee's filing of a Supplemental Petition in Error and Record on Accelerated Appeal on July 24, 2024, and appellant's filing of an Affidavit on July 26, 2024. Mandate issued in this case on January 11, 2024, and this case is closed. This Court will not consider any filings in a case after issuance of mandate. Appellant's filings in this case on July 24, 2024 and July 26, 2024, and any future filings in this case, will not be considered.

If appellant Michael Lee intended to commence a new proceeding, he must file a new separate case, with a filing fee or, if appropriate, a pauper's affidavit, which will be assigned a new case number.

120849    Linh Tran Stephens v. Adam Stephens

The Court notes petitioner Linh Tran Stephens' Petition for a Writ of Certiorari filed on July 23, 2024, and her Notice Regarding U.S. Supreme Court's Order on July 23, 2024. Mandate issued in this case on July 11, 2024, and this case is closed. This Court will not consider any filings in a case after issuance of mandate. Accordingly, Petitioner's filings on July 23, 2024, and any future filings in this case, will not be considered.

CHIEF JUSTICE

| Rec'd (date) | 7-29-24 |
| --- | --- |
| Posted | TC |
| Mailed | A |
| Distrib | A |
| Publish | yes ___ no |

# EXHIBIT 04

*2 pages*



**ORIGINAL**

IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

FILED
SUPREME COURT
STATE OF OKLAHOMA

JUN - 5 2023

JOHN D. HADDEN
CLERK

| LINH TRAN STEPHENS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No.  121,200 |
| | ) |
| HONORABLE DEBORAH LEITCH, | ) |
| | ) |
| Respondent. | ) |

| Rec'd (date) | 6-5-23 |
| Posted | |
| Mailed | |
| Distrib | |
| Publish _____ yes _X_ no | |

ORDER

By Order entered April 3, 2023, this Court construed Petitioner's "Motion for Emergency Stay of Mother's Child-Support-Indirect-Contempt Arraignment and Related Subsequent Proceedings" as an application to assume original jurisdiction.  Petitioner's application is denied.

The Court notes that Petitioner has initiated multiple appeals challenging the same orders or has otherwise requested relief from this Court which lack legal or factual support.

Accordingly, Petitioner is hereby admonished future filings in this Court which lack support in either the facts or the law will result in the revocation of Petitioner's *pauperis* status or other sanctions, including an award of attorney fees to the adverse party.  Okla.Sup.Ct.R. 1.191(j), 12 O.S. Appx. 1.

DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THIS 5th DAY OF JUNE, 2023.

_____
CHIEF JUSTICE

ALL JUSTICES CONCUR.



# ORIGINAL

IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

FILED
SUPREME COURT
STATE OF OKLAHOMA

SEP 30 2024

JOHN D. HADDEN
CLERK

| | | |
|---|---|---|
| LINH TRAN STEPHENS, | ) | |
| Petitioner, | ) | |
| v. | ) | No.  122,445 |
| APRIL SEIBERT, AND DEBORRAH (SIC) LUDI LEITCH, AND TODD CHESBRO, AND DAWN MOODY, ALL SPECIAL JUDGES OF TULSA COUNTY, | ) | |
| Respondents. | ) | |

Rec'd (date) 9-30-24

Posted _____

Mailed _____

Distrib _____

Publish _____ yes  X  no

## ORDER

Original jurisdiction is assumed. Okla. Const. Art. 7, § 4. Petitioner's Petition for Writ of Mandamus Compelling Judicial Recusal is denied. Real Party in Interest Adam Sylvester Stephens' request for award of attorney fees is granted. The Court finds Petitioner's Application lacking in legal and factual basis. Pursuant to the Court's order in Case No. 121,200 issued June 5, 2023, Petitioner's *in pauperis* status is hereby revoked. To commence a new proceeding in this Court, Petitioner shall hereafter be required to submit the required cost deposit in conformance with Supreme Court Rules.

Real Party in Interest Adam Sylvester Stephens' request for award of attorney fees is granted.   Cause remanded to trial court for determination of attorney fees.

DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THIS 30TH DAY OF SEPTEMBER, 2024.

_____
CHIEF JUSTICE

ALL JUSTICES CONCUR

437