Tenth Circuit case number 25-5063

---

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE TENTH CIRCUIT

---

(1) Linh Tran Stephens, sui juris, natural living breathing woman with a living soul and Holy spirit,                            — *Plaintiff-Appellant,*

Vs.

(2) CHILD SUPPORT SERVICES OF OKLAHOMA DEPARTMENT OF HUMAN SERVICES (CSS of OKDHS),

(3) CHARLES SCHWAB AND CO., INC.,

(4) Cierra Freeman, in individual and official capacity as court-appointed attorney for child-support enforcement,

(5) Mary Johnmeyer, in individual capacity and in official capacity as legal counsel of Charles Schwab,

(6) Renee Banks, in individual capacity and official capacity as CSS Director,

(7) Jason Hoenshell, in individual capacity and in official capacity as Oklahoma FIDM Coordinator,

(8) Emmalene Stringer, in individual capacity and in official capacity as State's attorney for CSS; et. al.

                            — *Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA (Case No. 24-cv-216-JDR-CDL)

---

**OPENING BRIEF**
**ORAL ARGUMENT IS NOT REQUESTED**

---

WITHOUT RECOURSE/prejudice
By: linh-tran: stephens,
Appellant, *sui juris self presenting* without attorney
℅ 1964 Ashley River Rd Ste B Unit 80112,
Charleston, South Carolina [29407] without United States Washington D.C.
LinhStephens7@gmail.com
phone: (843) 608-0294

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................ii-iii
TABLE OF AUTHORITIES.........................................................................iv-vi
TABLE OF APPENDICES.......................................................................... vii-viii
STATEMENT OF RELATED CASES..........................................................ix
**JURISDICTIONAL STATEMENT**.......................................................... 1
**STATEMENT OF ISSUES PRESENTED FOR REVIEW**............................... 2
**STATEMENT OF THE CASE**................................................................ 6
**STATEMENT OF FACTS - Affidavit of Truth and Declaration of Status**........8
**SUMMARY OF ARGUMENT**................................................................15
    1. FDCPA and ERISA Violations...................................................................15
    2. RICO Claims......................................................................................15
    3. Rooker-Feldman Doctrine Misapplication....................................................15
    4. Denial of Emergency Injunctive Relief.......................................................15
    5. Due Process Violations..........................................................................15
    6. Biological Property's Rights and Familial Integrity Rights...........................16
    7. Erroneous Denial of Stay.......................................................................16
    8. Contempt Proceedings Violation...............................................................16
    9. Misapplying the Domestic Relations Exception.............................................16
    10. Ignoring Oklahoma Special Judges' Lack of Jurisdiction..............................16
    11. Violating Full Faith and Credit Clause and Federal Interstate Family
    Support Laws.........................................................................................16
    12. Sanctioning Unconstitutional Taking of Property.........................................17
    13. Upholding Procedural Due Process Violations in State Administrative
    Proceedings...........................................................................................17
    14. Failing to Address Judicial Overreach and Abuse of Authority..................17
**ARGUMENT**........................................................................................18
    I. DISTRICT COURT ERRONEOUSLY DISMISSED APPELLANT'S ERISA
    CLAIMS, WHICH ESTABLISH FEDERAL QUESTION JURISDICTION...18
        A. Unlawful Seizure of ERISA-Protected Funds.........................................18
        B. ERISA Preempts State Child Support Collection Efforts Against
        Qualified Retirement Plans .................................................................. 18
        C. Clear Federal Question Jurisdiction Under ERISA..................................19
    II. DISTRICT COURT ERRED IN DISMISSING APPELLANT'S
    RACKETEERING CLAIMS WITHOUT PROPER ANALYSIS (RICO).......20
        A. Properly Alleged Elements of a RICO Violation.....................................20
        B. "Domestic Relations Exception" Does Not Bar Federal RICO Claims... 21
    III. DISTRICT COURT VIOLATED DUE PROCESS AND
    CONSTITUTIONAL RIGHTS..................................................................22
        A. Unconstitutional Taking of Property …………………………......…22

B. Unconstitutional Imprisonment for Unvalidated Debt and despite Indigence……………………………………………………..…..…..22
C. Violation of Familial Integrity Rights ………………………………..22
D. Failure to Provide Findings of Fact and Conclusions of Law ………...23
E. Imposition of Inflated Child Support Through Improper Income Imputation …………………………………………………..………23
F. Unconstitutionally Conditioned Parental Rights on Non-Medically-Indicated Psychological Evaluation or on Contempts of Court Only………………………………...………..………..…..24
G. Unlawful and Outrageous Bail/Bond ..…………………………..…..24
IV. DISTRICT COURT MISAPPLIED ROOKER-FELDMAN DOCTRINE AND IGNORED JURISDICTIONAL DEFECTS..........................................25
A. *Rooker-Feldman* Doctrine Misapplication ..............................25
B. Violation of Full Faith and Credit Clause and Federal Interstate Family Support Laws..........................................................25
C. Judicial Overreach and Lack of Jurisdiction by Oklahoma Special Judges. ....................................................................26
V. DISTRICT COURT ABUSED ITS DISCRETION IN DENYING EMERGENCY INJUNCTIVE RELIEF......................................... 26
**CONCLUSION**....................................................................27
**RELIEF SOUGHT**............................................................. 29
I. REVERSAL AND REMAND.................................................29
II. IMMEDIATE DECLARATORY AND INJUNCTIVE RELIEF................. 29
III. PROCEDURAL SAFEGUARDS........................................... 30
IV. ACCOUNTABILITY AND SANCTIONS.................................. 30
V. SYSTEMIC REMEDIES....................................................30
VI. CONSTITUTIONAL DECLARATIONS....................................30
VII. ADDITIONAL RELIEF.....................................................30
CERTIFICATE OF COMPLIANCE............................................... 33
CERTIFICATE OF SERVICE....................................................34

# TABLE OF AUTHORITIES

## Cases

*Ankenbrandt v. Richards* .......................................................................... 19, 21
*Axon Enterprise* ........................................................................................... 19
*Bearden v. Georgia*, 461 U.S. 660 (1983) ................ 2, 7, 12, 15, 22, 24, 28, 30
*Boggs v. Boggs* ............................................................................................. 19
*DeMauro v. DeMauro* ................................................................................... 21
*Egelhoff v. Egelhoff* ..................................................................................... 19
*Exxon Mobil Corp. v. Saudi Basic Industries Corp.* ............................... 15, 25
*F.T.C. v. Kuykendall* ..................................................................................... 23
*Friedlander v. Friedlander* ............................................................................ 21
*Goldberg v. Kelly* .......................................................................................... 23
*Guidry v. Sheet Metal Workers Nat'l Pension Fund* .............................. 15, 18
*H.J. Inc. v. Northwestern Bell Tel. Co.* ......................................................... 20
*Holmberg v. Holmberg*, 588 N.W.2d 720 (Minn. 1999) ............................... 23
*Jarkesy v. SEC* .............................................................................................. 19
*Loretto v. Teleprompter Manhattan CATV Corp.* .......................................... 22
*Metropolitan Life Ins. Co. v. Taylor* .............................................................. 19
*Patricia Miroth, et al. v. County of Trinity, et al.*, No. 23-15759 (9th Cir. May 8, 2025)
.................................................................................................................. 21, 25
*Santosky v. Kramer*, 455 U.S. 745 (1982) .......................................... 3, 22, 24
*Sedima, S.P.R.L. v. Imrex Co.* ....................................................................... 20
*Shaw v. Delta Air Lines, Inc.* ................................................................... 18-19
*Slaughter-House cases*, 83 U.S. 36 .............................................................. 31
*Troxel v. Granville*, 530 U.S. 57 (2000) ............................... 3, 16, 22, 24
*Trump v. United States* .................................................................................. 19
*United States v. Stratton* ............................................................................... 20
*Winter v. Natural Resources Defense Council, Inc.* ................................. 15, 26
*Zinermon v. Burch* ........................................................................................ 21

## Constitutional Provisions

Article III Judges (referenced in context of Article III courts) ...........1, 3, 5, 19, 20, 29, 30
Seventh Amendment ……………………………………………………………… 30
U.S. Constitution, Article I, Section 8, Clause 3 (Commerce Clause) ………….(implied)
U.S. Constitution, Article IV, Section 1 (Full Faith and Credit Clause) …..… 4, 16, 25, 30
U.S. Constitution, First Amendment (Establishment Clause) .................................... 6, 30
U.S. Constitution, Fifth Amendment ............................................................. 5, 17, 22, 29
U.S. Constitution, Eighth Amendment ...................................................................... 5, 24
U.S. Constitution, Fourteenth Amendment ......................3, 5, 6, 9, 16, 22, 23, 24, 25, 29
Oklahoma Constitution, Article 2, Section 1 ........................................................... 8, 24

## Federal Statutes

8 U.S.C. § 1408 ............................................................................................ 9
15 U.S.C. §§ 1692 et seq. (<u>Fair Debt Collection Practices Act</u>) ................ 15, 18
15 U.S.C. § 1692g ........................................................................................ 18
18 U.S.C. §§ 241 ............................................................................... 2, 29, 30
18 U.S.C. §§ 242 ............................................................................... 2, 29, 30
18 U.S.C. § 664 ..................................................................................... 1, 20
18 U.S.C. § 1341 ................................................................................... 1, 20
18 U.S.C. § 1343 ................................................................................... 1, 20
18 U.S.C. §§ 1961-1968 (RICO) ............................................................ 1, 2, 20
18 U.S.C. § 1962 ................................................................................. 15, 20
28 U.S.C. § 1291 ......................................................................................... 1
28 U.S.C. § 1331 ........................................................................... 1, 19, 29
28 U.S.C. § 1332 ............................................................................... 1, 8, 9
28 U.S.C. § 1332(a)(1) ................................................................................. 9
28 U.S.C. § 1367 ....................................................................................... 30
28 U.S.C. §§ 1441 ....................................................................................... 1
28 U.S.C. §§ 1446 ....................................................................................... 1
29 U.S.C. §§ 1001 et seq. (ERISA) ................................................................ 1
29 U.S.C. § 1056(d) ........................................................... 1, 2, 15, 18, 29
29 U.S.C. § 1056(d)(1) ........................................................................ 12, 18
29 U.S.C. § 1056(d)(3) ........................................................................ 13, 18
29 U.S.C. § 1144 ......................................................................................... 1
29 U.S.C. § 1144(a) .................................................................................. 18
42 U.S.C. § 654(4) ................................................................. 4, 10, 16, 19
42 U.S.C. § 1983 ......................................................................... 24, 29, 30
42 U.S.C. § 1988 ....................................................................................... 30

## State Statutes

10A O.S. §§ 1-1-101 et seq. ....................................................................... 24
10A O.S. §§ 2-3-101 ................................................................................. 24
10A O.S. §§ 2-3-102 ................................................................................. 24
43 O.S. § 118B (Imputed Income Rules) .............................................. 5, 23, 26
43 O.S. § 139.1 (Inability to Pay Hearing Required) ...................................... 26
Oklahoma Statutes §§ 20-123 ..................................................... 3, 5, 16, 25, 29
Oklahoma Statutes §§ 20-124 ..................................................... 3, 5, 16, 25, 29

## Federal Rules of Civil/Appellate Procedure

Fed. R. App. P. 32(g)(1) ............................................................................ 33

Fed. R. App. P. 32(a)(7)(B) ............................................................ 33
Fed. R. App. P. 32(f) ...................................................................... 33
Fed. R. Civ. P. 11 ........................................................................... 30
Fed. R. Civ. P. 52 ........................................................ 3, 15, 23, 29, 30

**Other Authorities**

8 FAM 102.3 ................................................................................... 31
Executive Order 14147 (EO 14147) ........................... 14, 21, 26, 30
Executive Order 14152 (EO 14152) ................................. 21, 26, 30
Executive Order 14187 (EO 14187) ....................................... 26, 30
Executive Order 14215 (EO 14215) ....................................... 26, 30
Matthew 16:25 (Geneva Bible 1560) ............................................ 28
Oklahoma Indirect Contempt Rule 8 ............................................ 26
Parental Kidnapping Prevention Act (PKPA) ...................... 4, 17, 65
Presidential Memorandum on Preventing Abuses of the Legal System (March 22, 2025)
............................................................................... 15, 21, 26, 30
Presidential Memoranda ......................................................... 26, 30
Psalm 105:15 ................................................................................. 31
Uniform Commercial Code (UCC) 1-103 ...................... 8, 9, 22, 30
Uniform Commercial Code (UCC) 1-308 ...................... 8, 9, 22, 30
Uniform Interstate Family Support Act (UIFSA) ................. 4, 17, 26
Writ of Quo Warranto (Appendix 3) ....................... 5, 14, 19, 20, 30

## **TABLE OF APPENDICES**

**Appendix 1 (52 pages)** ...............................................................................21, 25

- *Patricia Miroth, et al. v. County of Trinity, et al.* (May 8, 2025)

**Appendix 2 (5 pages)** ...............................................................................8

- Certificate of Existence & Articles of Incorporation for LINH TRAN STEPHENS©®

**Appendix 3 (15 pages)** ................................................... 1, 5, 14, 19, 20, 25, 30

- Writ of Quo Warranto (establishing systematic constitutional violations by non-Article III tribunals, the unconstitutional nature of chancery courts since 1789, the lack of Article III authority for special judges, and the RICO implications of courts operating without proper jurisdiction).

**Appendix 4 (16 pages)** ................................................. 4, 5, 13, 14, 22

- Multiple Letters from House Representatives and District Attorney requesting OSBI and Grand Jury investigations against OKDHS.
- Oklahoma Supreme Court order permanently revoking in forma pauperis status (Case #MA-122445, pages 11-12).
- OSCN minute orders printed by legal advocates showing judicial misconducts (pages 13-16).
- Details of 2025 jail sentence and fees ($13,211.24 + $500.00).

**Appendix 5 (2 pages)** ................................................. 14

- Redacted affidavit from first-hand witness "S___" documenting egregious conducts of Special Judges, Sheriff, and Bailiff during a "public" hearing.

**Appendix 6 (9 pages)** ................................................. 15, 21

- Executive Orders (EO 14147, 14152, 14187, 14215) and Presidential Memoranda (March 22, 2025) addressing weaponization of federal government, preventing abuses of the legal system, and prioritizing accountability and protection of parental rights.

**Appendix 7 (1 page)** ................................................. 9, 11

- Evidence Folder (nonexhaustive) admitted but ignored by courts.
- quoted words from G.L.Stephens's diary entries revealing distress when with Adam Stephens (07-03-20 to 06-19-21), previously filed with Tulsa police and courts.

**Appendix 8 (58 pages)** ................................................................................................. 11

- More than Seven (7) affidavits from reliable witnesses: a child psychologist (Jim Lovett notarized 06-15-2020), a teacher (Susie Panzer notarized 06-15-2020), a school director (Jayme Wingo-Martin notarized 06-16-2020), church deacons (the Johnsons couple notarized 05-29-2020), a neighbor, an advanced registered nurse practitioner (Jeri Townsend notarized 12-18-2022), a close family friend and primary care doctor (Dr. Moris Laca notarized 12-19-2021), and child's maternal grandparents (Khanh and Joseph notarized 03-31-2022), and Linh Stephens (biological mother of child)
- G.L.Stephens's personal diary (07-03-20 to 06-19-21) verified by child psych and DHS whistleblower
- G.L.Stephens' drawings and writings in class before being unlawfully detained and held hostage by OKDHS caseworker demanding ransom

## STATEMENT OF RELATED CASES

This case relates to state court proceedings in Tulsa County, Oklahoma,

Case No. **FD-2015-2228** and **JD-2021-270**, fraudulent OAH No.: 23-00313-73, OK IV-D

FGN 948641001 involving child support enforcement, debtor prison, ERISA funds,

seizure of biological property without warrants nor exigent circumstances, etc. since

12/03/2021 and ongoing

Federal habeas filed 06/06/2025 are pending in the Northern District of Oklahoma:

*In re Linh Stephens*, Case No. 25-cv-285-GKF-MTS, and

*In re G.L. Stephens*, Case No. 25-cv-286-CVE-MTS

**JURISDICTIONAL STATEMENT**

This Court possesses jurisdiction under 28 U.S.C. § 1291 to review the U.S. District Court's final order dismissing all claims. Jurisdiction extends to all Defendants given their unlawful actions in issuing orders without valid original jurisdiction over Appellant, her daughter, current husband, or ex-husband. The lower courts consistently lacked proper jurisdiction, infringing upon foundational liberty interests and the inherent limitations on state authority in private family matters. Moreover, marital and private family matters are beyond state authority under separation of church and state.

Subject matter jurisdiction arises under 28 U.S.C. § 1331 for federal questions, including claims under Employee Retirement Income Security Act (ERISA), Racketeer Influenced and Corrupt Organizations Act (RICO), and various constitutional violations. **Additionally, diversity jurisdiction exists under 28 U.S.C. § 1332, as Appellant is a national of Viet Nam and domiciled in South Carolina,** and amount in controversy exceeds $75,000.

**Removal jurisdiction was properly invoked pursuant to 28 U.S.C. §§ 1441, 1446** (ROA, Doc. 7-2, Page 161). Claims further arise under 29 U.S.C. §§ 1001 et seq., 1056(d), and 1144 (ERISA), and 18 U.S.C. §§ 1961–1968, 664, 1341, 1343 (RICO), and 18 U.S.C. §§ 241, 242 (conspiracy against rights).

District Court's dismissal *Order* was entered on April 24, 2025; Appellant timely filed *Notice of Appeal* on April 30, 2025.

Appellant has consistently objected to jurisdiction of any non-Article III judges and reserves the right to amend all briefs and petitions as more evidence comes to light.

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**

1.      **ERISA Anti-Alienation/no valid QDRO:** Did district court err by sanctioning unlawful seizure of ERISA-protected retirement funds, violating 29 U.S.C. § 1056(d)'s anti-alienation provision due to absence of a valid Qualified Domestic Relations Order?

2.      **Rooker-Feldman Doctrine:** Did district court misapply *Rooker-Feldman* doctrine to bar federal claims that sought prospective relief from ongoing violations of federal law, rather than impermissibly seeking to overturn a state court judgment?

3.      **Domestic Relations Exception:** Did district court err in applying domestic relations exception to dismiss federal statutory claims under ERISA and RICO, and other civil rights violations, where these claims do not seek traditional divorce, custody, or support decrees, and thus fall outside the narrow scope of the exception?

4.      **Contempt Proceedings and Debtor Imprisonment /** *Bearden v. Georgia***:** Did district court err by failing to recognize that Appellant's incarceration for unvalidated child support debt, despite documented indigence and without proper consideration of alternative measures or ability-to-pay hearings, violated due process and equal protection under *Bearden v. Georgia*?

5.      **RICO Claims Dismissal:** Did district court err in dismissing RICO claims without conducting a proper analysis of adequately alleged elements of a RICO violation under 18 U.S.C. §§ 1961-1968, particularly where Appellant had sufficiently pled a pattern of racketeering activity, including predicate acts of mail fraud, wire fraud, and embezzlement from employee benefit plans? (ROA, Doc. 7-1, Page 9-10; ROA, Doc. 7-2, Page 5-14, 95).

6.      **Emergency Injunctive Relief Denial:** Did district court abuse its discretion in

denying emergency injunctive relief, despite Appellant demonstrating all four prerequisites: (a) a substantial likelihood of success on the merits of the federal claims; (b) irreparable harm through the unlawful seizure of retirement accounts, recurrent imprisonment, and threats of further imprisonment; (c) a balance of equities favoring injunctive relief; and (d) a compelling public interest in the enforcement of federal protections for retirement accounts? (ROA, Doc. 7-2, Page 67-70, 97-98, 106-107).

7.    **Due Process/FRCP 52 Violation:** Did district court violate Appellant's due process rights and Federal Rule of Civil Procedure 52 by failing to provide specific findings of fact and conclusions of law to support its dismissal of federal claims and denial of emergency relief, thereby precluding meaningful appellate review? (ROA, Doc. 7-2, Page 61-62, 108).

8.    **Familial Integrity Rights (*Troxel/Santosky*):** Did district court improperly disregard Appellant's fundamental familial integrity rights, protected by Fourteenth Amendment as established in *Troxel v. Granville* and *Santosky v. Kramer*, where state authorities removed Appellant's child without a warrant, a hearing, or any findings of parental unfitness? (ROA, Doc. 7-1, Page 15; ROA, Doc. 7-2, Page 66).

9.    **Oklahoma Special Judges Jurisdiction:** Did special judges or associate judges lack statutory jurisdiction under Oklahoma Statutes §§ 20-123 and 20-124 to render a Qualified Domestic Relations Order (QDRO) or to issue orders affecting ERISA protected retirement accounts, thereby rendering such orders void *ab initio* and unenforceable under both federal and state law? (ROA, Doc. 7-2, Page 8, 149-152, 156-157).

10.    **Denial of Stay / Title IV-D Eligibility:** Did district court erroneously deny motions to stay enforcement of state court orders, despite pendency of federal proceedings

challenging their constitutionality and clear absence of Title IV-D eligibility for child support enforcement under 42 U.S.C. § 654(4)? (ROA, Doc. 7-2, Page 60, 100, 204-219).

11.    **Procedural Due Process Violations in State Administrative Proceedings:** Did district court err in failing to recognize that Appellant was deprived of fundamental procedural due process during state administrative proceedings, where liquidation of her ERISA-protected retirement account occurred <u>prior</u> to a scheduled hearing, and she was denied opportunity to present witnesses or evidence, thereby rendering the administrative order void and violating Fourteenth Amendment's guarantee of due process? (ROA, Doc. 7-1, Page 15-16, 79, 87; ROA, Doc. 7-2, Page 67-68, 79-80, 86-88, 107-108, 149-153).

12.    **Fraud Upon the Court and Racketeering Activity:** Did district court err by dismissing Appellant's claims despite pervasive "frauds upon the court" by state actors with pattern of QDRO fraud, constituting RICO predicate acts including mail fraud, wire fraud, and embezzlement?

13.    **Violation of <u>Full Faith and Credit Clause</u> and <u>Federal Interstate Family Support Laws:</u>** Did district court err in failing to recognize that Oklahoma's imposition and enforcement of a contradictory child support obligation directly violated Full Faith and Credit Clause of U.S. Constitution (Article IV, Section 1), Parental Kidnapping Prevention Act (PKPA), and Uniform Interstate Family Support Act (**<u>UIFSA</u>**), by disregarding a valid Oregon divorce decree that explicitly waived child support in 2016, <u>and by Oklahoma State Court of Tulsa County mislabeling a 2017 family-court case to be under 2015 case as "FD-2015-2228" to cause confusion and facilitate fraud upon the court?</u> See **<u>Appendix 4</u>** page 14; ROA, Doc. 7-1, Page 14-15, 141-142; Doc. 7-2, Page 64-65, 80-81, 101-102.

14.    **Unconstitutional Taking of Property and Familial Integrity Rights:** Did district court err in failing to recognize that the seizure of Appellant's ERISA-protected retirement accounts and the removal of her offspring constituted an unconstitutional taking of private property and a violation of fundamental familial integrity rights without just compensation or due process, contrary to the Fifth and Fourteenth Amendments? (ROA, Doc. 7-1, Page 15-16, 87-91; ROA, Doc. 7-2, Page 66, 69, 78, 114-115, 224).

15.    **Judicial Overreach and Abuse of Authority by Oklahoma Special Judges:** Did district court err in failing to recognize that Oklahoma special judges engaged in judicial overreach and abused their authority by issuing orders affecting ERISA-protected retirement accounts and parental rights without statutory jurisdiction under Oklahoma Statutes §§ 20-123 and 20-124, and by failing to follow mandatory protocols for imputation of income under 43 O.S. § 118B, which requires evidence of willful underemployment and consideration of actual earning capacity, thereby rendering their orders void *ab initio* and violating due process? (ROA, Doc. 7-1, Page 16, 79, 429-437; ROA, Doc. 7-2, Page 8, 156-157). <u>Did district court further err by overlooking systematic jurisdictional violations by non-Article III judges as evidenced by the nationwide Writ of Quo Warranto (**Appendix 3**) and numerous grand jury petitions (**Appendix 4**)?</u>

16.    **Unlawful and Outrageous Bail/Bond:** Did district court err in failing to address the imposition of an excessive and unconstitutional bail/bond amount, which effectively resulted in Appellant's detention solely due to indigence, violating her <u>Eighth and Fourteenth Amendment rights</u> against <u>excessive bail</u> and <u>unconstitutional debtor's prison</u>?

17.    **Violation of the Establishment Clause and Impermissible Interference in**

**Private Religious/Marital Matters (Separation of Church and State issue):** Did district court err in failing to recognize that Oklahoma's interference in inherently private marital and family matters, including imposition of child support obligations stemming from a marriage and divorce, would violate Establishment Clause of the First Amendment, as extended to the states by Fourteenth Amendment, by creating excessive government entanglement with religious practices concerning family life?

## STATEMENT OF THE CASE

This appeal challenges the Northern District of Oklahoma's April 24, 2025 dismissal of Appellant's emergency injunctive relief motion and federal claims. Oklahoma state courts unlawfully disregarded a valid Oregon divorce decree while systematically violating Appellant's federal statutory and constitutional rights through: seizure of ERISA-protected retirement funds, improper child support enforcement, unconstitutional imprisonment for indigence, and extensive due process violations. Appellant contests the dismissal of federal claims protecting her ERISA-qualified accounts from garnishment and seeking return of her biological property (child) seized without warrant or exigent circumstances, along with her passports and medical license.

1. **Oregon Divorce Decree**: Divorce proceeding in Columbia County, Oregon, Circuit Court, Case No. 15DR18623, finalized January 8, 2016, with stipulated general judgment that waived all future child support obligations in exchange for property (ROA, Doc. 7-1, Page 14-15; ROA, Doc. 7-2, Page 141-142). The decree explicitly provided that a "Jeep and Trailer" would be given "in lieu of child support," thereby waiving all future support obligations.

2. **Oklahoma Registration of Oregon Decree**: Oklahoma registered the Oregon divorce decree in Tulsa County, Oklahoma, Case No. FD-2015-2228, on July 11, 2017, to enforce "unhampered access to child" after numerous custodial interference by physical force by ex-husband Adam Sylvester Stephens (ROA, Doc. 7-1, Page 14-15; ROA, Doc. 7-2, Page 142).

3. **Void Ab Initio Child Support Orders**: Tulsa County District Court, Case No. FD-2015-2228, issued void-ab-initio child support modification and enforcement orders. These orders arose without any parental motion to modify and despite Appellant's express objections to jurisdiction, including the special judges' authority and Oklahoma's general jurisdiction. Crucially, the underlying Oregon decree waived child support. Furthermore, Oklahoma Child Support Services (CSS) unlawfully initiated enforcement without federal statutory prerequisites of public assistance or Title IV-D service application, as mandated by 42 U.S.C. § 654(4). These compounded enforcement orders are a nullity due to this fundamental lack of jurisdiction.

4. **Contempt and Seizure of Funds**: Contempt proceedings on February 6-7, 2024, resulted in a 60-day jail sentence and a $12,913.40 purge fee + approx $65,000 alleged arrearages which <u>Plaintiff served the whole sentence due to inability to post bail/bond</u>, challenged as violating *Bearden v. Georgia* (ROA, Doc. 7-1, Page 15; ROA, Doc. 7-2, Page 140). On May 7, 2024, Defendants seized $64,445.92 from Appellant's Charles Schwab retirement account, funds originating from 401(k) contributions during post-divorce employment with Cherokee Nation (2018-2020) and established during another marriage to a non-party to these cases (ROA, Doc. 7-1, Page 15-16, 87-91).

Subsequently, on March 6, 2025, Plaintiff executed a *Notice of Removal to federal court* (Case No. 24-CV-216-JDR-CDL), filing an exact copy in state court (Document #1061154206 on OSCN.net), supported by various notices to the State asserting jurisdictional issues and declarations of dishonor (ROA, Doc. 7-2, Page 161; ROA, Doc. 7-2, Page 58, 184-196; Doc. 58, Filed 04/21/25). A *Verified Motion for Emergency Injunctive Relief* and *Removal*, including ERISA, RICO, and other federal claims, was filed in federal court on April 8, 2025 (ROA, Doc. 7-2, Page 54, 38-147; ROA, Doc. 54, Filed 04/08/25). These federal claims were unjustly and cruelly dismissed on April 24, 2025 (ROA, Doc. 7-2, Page 61, 227-241), leading to the filing of a *Notice of Appeal* on April 30, 2025 (ROA, Doc. 7-2, Page 67, 264-287).

5. **Continued State Hearings Post-Removal**: Oklahoma state courts continued scheduling hearings post-removal (ROA, Doc. 7-2, Page 161-162) with the intent to maliciously prosecute Appellant and to pervert justice.

## STATEMENT OF FACTS - Affidavit of Truth and Declaration of Status

1.     i, Affiant linh-tran: stephens (living woman, not the legal fiction LINH TRAN STEPHENS©®), one of the sovereign People per Oklahoma Constitution Article 2 Section 1, Sui Juris, declare:

2.     IDENTITY: Living natural woman (XX chromosomes), born 1984, postgraduate medical education. Sole Grantor/Authorized Representative/Beneficiary of LEGAL ENTITY LINH TRAN STEPHENS©®. Oklahoma lacks jurisdiction over my person/property absent valid contract/consent (see Certificate of Existence/Articles of Incorporation, **Appendix 2**). All rights reserved UCC 1-308 & 1-103 Non-Assumpsit.

<u>JURISDICTIONAL</u>: Vietnamese national with biological property G.L.Stephens (female offspring) (ROA Doc. 7-1, p.11; Doc. 54, p.52). Not subject to Oklahoma presumptions/jurisdictions, not U.S. citizen per 28 USC 1332(a)(1), not government employee. Domiciled in Republic of South Carolina. Rights derive from Bill of Rights/Word of YAHUAH, not 14th Amendment. Invoke diversity jurisdiction 28 U.S.C. § 1332. Distinguish myself from 14th Amendment entity "LINH TRAN STEPHENS©®" (sole proprietorship), which I owe and put it in a private Trust (see **Appendix 2**). <u>STATUS</u>: Clean hands, good faith, no government debts/harm to others. Never consented to implied contracts/proceedings; continuous objections maintained (ROA Doc. 7-1, pp.8, 329-330). All POAs revoked post-2016; sole POA to myself (public notice: www.linhstephens.com).

<u>RIGHTS INVOKED</u>: Demand grand jury indictment by Vietnamese peers, due process, confrontation, cross-examination. Assert security of biological/financial property, privacy of banking/health information, protection from governmental overreach/discrimination.

<u>DISCLAIMERS</u>: Never domiciled in UNITED STATES D.C., STATE OF OKLAHOMA/ TEXAS/ OREGON. Vietnamese national per 8 USC §1408. Never agreed to restraining orders; all PO/VPO dismissed. Deny all allegations; demand strict proof via notarized affidavits.by living freeman. <u>JUDICIAL BIAS</u>: Experienced systemic court bias—denial of writs/jury trials without payment (whole ROA; Doc. 7-1, pp.11-12, 15; Doc. 54, p.53). **All** **state remedies exhausted**; OKDHS notices unresponded. Evidence ignored by courts: **Appendix 7** https://tinyurl.com/4cdv5u56 (ROA Doc. 7-1, pp.8-9; Doc. 7-2, pp.27, 43).

3.    <u>Appellant is not an "absent father"</u> requiring state assistance, nor has she ever been.

4.    No valid child support modifications were consented to or filed in Oklahoma by

Appellant or exhusband, except for corrections to fraudulently initiated OKDHS CSS orders that lacked jurisdiction and disregarded her vocal and certified objections.

5.      **Oregon Divorce Decree**: On January 8, 2016, Appellant's divorce from Adam Sylvester Stephens was finalized in Columbia County, Oregon (Case No. 15DR18623). The decree established 50/50 joint legal and physical custody and explicitly waived all future child support obligations in exchange for property (ROA, Doc. 7-1, Page 14-15, 16-17; Doc. 7-2, Page 141-142). It specifically provided a "Jeep and Trailer" in lieu of child support.

6.      **Oklahoma Registration & Unlawful Enforcement**: This Oregon decree was registered in Tulsa County, Oklahoma (FD-2015-2228) on July 11, 2017, to enforce "unhampered access to child" after numerous instances of custodial interference by Adam Sylvester Stephens (ROA, Doc. 7-1, Page 14-15; ROA, Doc. 7-2, Page 142). Despite the Oregon waiver and Appellant's lack of consent, Oklahoma Child Support Services (CSS) unlawfully initiated new child support orders and enforcement in 2022. This occurred without public assistance or Title IV-D service applications, which are federal prerequisites under 42 U.S.C. § 654(4) (ROA, Doc. 7-1, Page 14-15; Doc. 54, Page 100). CSS obtained these orders without proper motions, service, notice, or legal authority to override the Oregon decree (ROA, Doc. 7-1, Page 14-15; ROA, Doc. 7-2, Page 142).

7.      **Daughter's Removal & Abuse Allegations**: On December 3, 2021, Appellant's daughter, G.L.Stephens, was forcibly removed from school by OKDHS without warrant or credible evidence. Despite Appellant offering kinship placement, OKDHS granted emergency sole custody to Adam Stephens, whom the child reported as abusive (ROA,

Doc. 7-1, Page 15; Doc. 54, Page 66, 127). DHS worker Bridget O'Brien refused to document reported issues, accept evidence, or call witnesses. She dismissed concerns and falsely claimed G.L.Stephens's diary was fabricated, despite video, psychologist, school director, teacher, and multiple affidavits (Appendices 7 and 8) confirming authenticity and positive entries. The school submitted the diary on the child's behalf (Court Minute Order 06-23-2021). Seven reliable witnesses (including a child psychologist, teacher, school director, church deacons, neighbor, ARNP, doctor, and maternal grandparents) vouched for Appellant and raised serious parenting concerns about Adam. Appellant feared for her daughter's safety due to Adam's escalating aggression and G.L.Stephens' disturbing behavioral changes and diary entries (Appendices 7 and 8). Contact with G.L.Stephens is denied unless Appellant pays exorbitant supervised visit fees ($150/hr) and unindicated psych evaluation fees ($2,500), with restricted speech and religion.

8.    **ERISA Account Establishment**: August 2018 - September 2020, while employed by Cherokee Nation (Indian Health Services), Appellant established retirement accounts, including a Charles Schwab Rollover IRA of approximately $65,000 (ROA, Doc. 7-1, Page 15, 87-91). These accounts, containing 401(k) funds, were opened during her second and ongoing marriage (commenced November 20, 2017), years after her separation (2014) and finalized divorce from Adam Stephens (2016) (ROA, Doc. 7-1, Page 15, 91).

9.    **Contempt Proceeding & Imprisonment**: On February 6-7, 2024 and again in May 2025, Appellant was compelled to participate in a criminal contempt proceeding in Tulsa County, demanding she commit frauds against taxpayers via SSA Title IV. Special Judge Deborrah Ludi-Leitch (2024) and successor Loretta Radford (2025) presided despite

repeated jurisdictional objections. In 2024, jury verdict, asserted by Appellant as void, resulted in a 60-day sentence and a $12,913.40 purge fee, despite documented indigence (ROA, Doc. 7-1, Page 15, 52-53; ROA, Doc. 7-2, Page 50, 73, 110-111, 140, 160).

10.     **Unconstitutional Child Support Order**: On February 20, 2024, Oklahoma Special Judge April Seibert, with her pattern of predatory creditor practices violating FDCPA, issued an unconstitutional and duplicated child support order demanding $2,360.24/month. This order retroactively created fraudulent debt against Appellant to August 2017 (five years prior to the "final" custody Order of June 1, 2022), despite the binding Oregon decree, lack of parental motions, and lack of public assistance (ROA, Doc. 7-2, Page 140, 142-143). No QDRO was issued for retirement accounts (ROA, Doc. 7-2, Page 144).

11.     **Unlawful Liquidation of Retirement Accounts**: On May 7, 2024, OKDHS and Charles Schwab unlawfully liquidated and seized $64,445.92 from Appellant's current marriage (non-party) retirement accounts. This occurred two days before a scheduled judicial proceeding, effectively denying due process (ROA, Doc. 7-1, Page 15-16, 87-91; ROA, Doc. 7-2. 54, Page 67-68). The seizure included ERISA-protected 401(k) funds from federal employment post-divorce. The next day, at an administrative hearing regarding the already liquidated accounts (a due process violation), Special Judge Robert Perugino proceeded despite Appellant's objections regarding ERISA jurisdiction, lack of personal jurisdiction over her current spouse, anti-alienation provisions (29 U.S.C. § 1056(d)(1)), the Oregon decree, and prior federal removal (ROA, Doc. 7-1, Page 16, 20-22, 25-27, 79; ROA, Doc. 7-2, Page 54, 86-88). Both account owners objected to the seizure of these federally protected funds (ROA, Doc. 7-1, Page 18). No valid QDRO (29

U.S.C. § 1056(d)(3) authorized this seizure (ROA, Doc. 7-2, Page 8).

12. **Revocation of In Forma Pauperis Status & OSBI Investigation Recommended by House of Representative**: On September 30, 2024, the Oklahoma Supreme Court permanently revoked Appellant's in forma pauperis status (Case #MA-122445, **Appendix 4**, page 11-12) without justification, denying her constitutional right to court access despite precedents protecting indigent litigants. A Writ of Mandamus filed on February 13, 2025, requesting an OSBI investigation into her daughter's abuse (16 pages plus 152 pages of evidence), was unconstitutionally sealed by the court, and a retroactive dismissal order was issued, requiring payment by "February 8, 2025"—seven days before the order itself. See **Appendix 4** for Multiple Letters from House Representatives and District Attorney requesting OSBI and Grand Jury investigations against OKDHS. OSBI's refusal to act caused public outrage and distrust in the justice system.

13. **Federal Court Dismissal & Appeal**: Appellant filed a Notice of Removal to federal court on March 6, 2025 (Case No. 24-CV-216-JDR-CDL), filing an exact copy in state court (Document #1061154206 on OSCN.net), followed by a Verified Motion for Emergency Injunctive Relief on April 8, 2025 (ROA, Doc. 7-2, Page 54, 38-147). The U.S. District Court for the Northern District of Oklahoma dismissed all claims on April 24, 2025, without adequate analysis of ERISA, RICO, or other federal questions and supplemental claims (ROA, Doc. 7-2, Page 61, 227-241), leading to this Notice of Appeal filed April 30, 2025 (ROA, Doc. 7-2, Page 67, 264-287).

14. **Malicious Prosecution Post-Removal**: Oklahoma state courts continued scheduling hearings post-removal (ROA, Doc. 7-2, Page 161-162) to maliciously

prosecute Appellant and pervert justice. These actions by Special Judges Loretta Radford and Deborrah Ludi-Leitch demonstrate systematic constitutional violations, as documented in the Writ of Quo Warranto (**Appendix 3**, Pages 3-5), showing a pattern of courts operating unconstitutionally as chancery courts (**Appendix 4**, p. 13-16).

15.    **Special Judge Loretta Radford's Misconduct**: On May 2, 2025, Special Judge Radford proceeded despite jurisdictional challenges, pending federal removal, and Oklahoma Supreme Court appeal. She granted virtual access to the ex-husband while denying it to Appellant (the Plaintiff-Appellant who has never contracted with any entity or person of STATE OF OKLAHOMA), barred ADA advocates, and threatened observers with arrest. Despite verified indigence, Radford defaulted Appellant for inability to pay $350 jury fees and refused a $20 court reporter fee payment. After blocking virtual attendance, Radford falsely claimed "no-show" and imposed a six-month jail sentence (double jeopardy, as Appellant previously served 60 days under Judge Ludi-Leitch for identical charges). Appellant has <u>never</u> been served the Warrant, Conviction, or Sentence, nor received due process or fundamental rights. These unconsented "proceedings" continued despite pending federal cases and conflict with the binding Oregon decree. See **Appendix 5** for a Redacted affidavit from witness "S___" documenting egregious conduct of Special Judges, Sheriff, and Bailiff, and **Appendix 4**, page 13-16 for Minute Orders showing judicial misconduct. These actions violate Executive Order 14147 (Ending Weaponization of Federal Government) and the Presidential Memorandum on Preventing Abuses of the Legal System (March 22, 2025), which prohibit weaponization of government offices and mandate prevention of legal system abuses (**Appendix 6**).

## SUMMARY OF ARGUMENT

1.  **FDCPA and ERISA Violations**: Disregarding the unlawful seizure of Appellant's ERISA-protected 401(k) rollover IRA funds, violating 29 U.S.C. § 1056(d)'s anti-alienation provision and *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, due to the absence of a valid Qualified Domestic Relations Order (QDRO), and Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §§ 1692 et seq.

2.  **RICO Claims**: Failing to analyze Appellant's adequately pled RICO claims (18 U.S.C. § 1962), which included evidence of an enterprise, pattern of racketeering activity (mail/wire fraud, employee benefit plan embezzlement), and resulting injury.

3.  **Rooker-Feldman Doctrine Misapplication**: Improperly applying the *Rooker-Feldman* doctrine, which is confined to challenges of final state-court judgments, as clarified in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.* Appellant sought prospective relief from ongoing federal violations, and state proceedings were not final.

4.  **Denial of Emergency Injunctive Relief**: Abusing its discretion by denying emergency injunctive relief, as Appellant demonstrated the likelihood of success on claims, irreparable harm to retirement accounts/familial integrity, a favorable balance of equities, and public interest in protecting federal rights (*Winter v. Natural Resources Defense Council, Inc.*).

5.  **Due Process Violations**: Committing reversible due process violations and contravening Fed. R. Civ. P. 52 by failing to provide requisite findings of fact, conclusions of law, and proof of jurisdiction, despite Appellant's repeated demands and declaration as a Viet Nam national.

6. **Biological Property's Rights and Familial Integrity Rights**: Disregarding Appellant's fundamental familial integrity rights (*Troxel v. Granville*), as her biological property (offspring) was seized without warrant, hearing, or findings of parental unfitness.

7. **Erroneous Denial of Stay**: Wrongly denying motions to stay state proceedings despite CSS's lack of statutory authority under 42 U.S.C. § 654(4) to pursue child support enforcement: neither parent received public assistance or applied for Title IV-D/E services.

8. **Contempt Proceedings Violation**: Contempt proceedings which led to incarceration violated *Bearden v. Georgia*, by imposing jail time and unfeasible purge fee despite documented financial indigence affirmed by higher courts, and proposed alternatives; "debt" is not a violent crime so a recognizance bond ($0) is necessary.

9. **Misapplying the Domestic Relations Exception**: Improperly applying the domestic relations exception to dismiss federal statutory claims, including those under ERISA and RICO, despite the exception's narrow scope being limited to traditional divorce, custody, or support decrees which this is not as it was already settled in the state of Oregon prior to traveling through Oklahoma.

10. **Ignoring Oklahoma Special Judges' Lack of Jurisdiction**: Failing to recognize that special judges lacked statutory jurisdiction under Oklahoma Statutes §§ 20-123 and 20-124 to issue orders affecting ERISA-protected retirement accounts or to render QDROs, rendering such orders void *ab initio*.

11. **Violating Full Faith and Credit Clause and Federal Interstate Family Support Laws**: Oklahoma's imposition and enforcement of a contradictory child support obligation directly violated the Full Faith and Credit Clause (Article IV, Section 1), **Parental**

Kidnapping Prevention Act (**PKPA**), U**niform Interstate Family Support Act**

(**UIFSA**), by disregarding the Oregon divorce decree that explicitly waived child support

in 2016, and by Oklahoma State Court of Tulsa County mislabeling a 2017 family-court

case to the 2015 case "FD-2015-2228" to cause confusion and facilitate fraud upon the

court by court actors.

12.    **Sanctioning Unconstitutional Taking of Property**: Failing to recognize that the

seizure of Appellant's ERISA-protected retirement accounts and the removal of her female

offspring constituted an unconstitutional taking of private properties (banking and

biological properties) without just compensation or due process, violating Fifth and

Fourteenth Amendments.

13.    **Upholding Procedural Due Process Violations in State Administrative**

**Proceedings**: Erring by failing to recognize that Appellant was deprived of fundamental

procedural due process during state administrative proceedings, where the liquidation of

her ERISA-protected retirement account occurred before a scheduled hearing, deprivation

of opportunity to cross-examine witnesses, followed by exclusion of proffered and

pre-submitted evidence.

14.    **Failing to Address Judicial Overreach and Abuse of Authority**: Not

acknowledging that Oklahoma special judges engaged in judicial overreach by issuing

orders affecting ERISA-protected accounts, parental rights, and biological property rights

without statutory jurisdiction nor Congress' approval, and by failing to follow mandatory

protocols (meaning zero room for discretion) for imputation of income, reasonable

bail/bonds, and lawful arrests, thereby violating due process.

## ARGUMENT

District Court's dismissal of Appellant's federal claims constitutes multiple reversible errors, demonstrating a fundamental failure to exercise its jurisdiction and protect federally guaranteed rights

## I. DISTRICT COURT ERRONEOUSLY DISMISSED APPELLANT'S ERISA CLAIMS, WHICH ESTABLISH FEDERAL QUESTION JURISDICTION

**A. Unlawful Seizure of ERISA-Protected Funds:** District Court disregarded ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1), which unequivocally protects qualified retirement plans. The $64,445.92 seizure from Appellant's ERISA-protected Charles Schwab IRA, containing federal 401(k) funds, occurred without a valid QDRO (ROA, Doc. 7-2, Page 8, 144). The Supreme Court in *Guidry v. Sheet Metal Workers Nat'l Pension Fund* affirms ERISA's anti-alienation clause as a considered congressional policy to safeguard retirement. Oklahoma's failure to meet 29 U.S.C. § 1056(d)(3) requirements, coupled with a systematic circumvention of QDRO procedures, renders the seizure void and directly violates federal law. OKDHS CSS, acting as a debt collector, repeatedly violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 et seq., by using false, deceptive, and misleading representations in attempting to collect disputed child support obligations, including inflating arrears without proper jurisdiction, ignoring exculpatory financial evidence, misrepresenting the legal status of alleged debts, and threatening unlawful imprisonment, while also violating § 1692g by failing to provide proper validation and verification of debt despite multiple disputes/demands by Plaintiff.

**B. ERISA Preempts State Child Support Collection Efforts Against Qualified Retirement Plans:** ERISA's express preemption, 29 U.S.C. § 1144(a), supersedes state

laws "relating to any employee benefit plan." District Court erred by not recognizing that Oklahoma's child support enforcement, applied to Appellant's retirement accounts, is preempted by ERISA's uniform federal scheme (*Shaw v. Delta Air Lines, Inc.; Boggs v. Boggs; Egelhoff v. Egelhoff*). State agents lack immunity when seizing ERISA funds without a valid QDRO, exceeding lawful authority (*Trump v. United States*). The QDRO exception is inapplicable here: the Oregon decree waived child support, and the accounts were established post-divorce during a subsequent marriage (ROA, Doc. 7-1, Page 14-15; Doc. 7-2, Page 141-142). Furthermore, Oklahoma CSS lacked federal authority under 42 U.S.C. § 654(4) to enforce support, as neither parent received public assistance nor Title IV-D services (ROA, Doc. 7-2, Page 100).

**C. Clear Federal Question Jurisdiction Under ERISA:** ERISA claims unequivocally establish federal question jurisdiction under 28 U.S.C. § 1331. *Axon Enterprise* confirms federal courts cannot decline jurisdiction due to overlapping state proceedings when claims are "wholly collateral" and outside state expertise. All three *Axon* factors are met: irreparable harm from seized funds, collateral ERISA preemption claims, and ERISA's complex scheme being beyond state court expertise. ERISA enforcement claims are "necessarily federal in character" (*Metropolitan Life Ins. Co. v. Taylor*). The domestic relations exception does not bar these federal question claims, as it is limited to traditional divorce, alimony, or custody decrees, not statutory claims (*Ankenbrandt v. Richards*). *Jarkesy v. SEC* further confirms Article III courts must adjudicate deprivations of property, including biological offspring and ERISA funds seized by state court judges, particularly unauthorized "special judges" acting as administrative agents (ROA, Doc. 7-2, Page 87,

114). This jurisdictional defect reflects a broader pattern of constitutional violations documented in the Writ of Quo Warranto (**Appendix 3**), establishing the unconstitutional nature of chancery courts since 1789, the lack of Article III authority for special judges, and the RICO implications of courts operating without proper jurisdiction.

## II. DISTRICT COURT ERRED IN DISMISSING APPELLANT'S RACKETEERING CLAIMS WITHOUT PROPER ANALYSIS (RICO)

District court's dismissal of Appellant's RICO claims was a critical error, failing to analyze well-pled allegations of a widespread criminal enterprise.

**A. Properly Alleged Elements of a RICO Violation:** Appellant properly alleged all RICO elements under 18 U.S.C. § 1962 (*Sedima, S.P.R.L. v. Imrex Co.*) (ROA, Doc. 7-2, Page 61, 95-96, 227-241). Defendants' unlawful seizure of retirement accounts constitutes predicate "**conduct**" (ROA, Doc. 7-1, Page 15-16, 87-91). The **enterprise**, comprising Oklahoma DHS, CSS, Charles Schwab & Co., Inc., and their employees, affects interstate commerce (*United States v. Stratton*) and shares a common purpose: unlawful retirement fund seizure (ROA, Doc. 7-2, Page 6, 170-172). This enterprise is further evidenced by the systematic RICO violations within state judicial systems, as documented by the nationwide Writ of Quo Warranto (**Appendix 3**). A "decade-long, statewide" pattern of racketeering, including mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), systematic QDRO fee avoidance, and embezzlement from an employee benefit plan (18 U.S.C. § 664) via unlawful ERISA fund seizure, demonstrates continuity and relationship (*H.J. Inc. v. Northwestern Bell Tel. Co.*). This **pattern** involves fraudulent communications, unlawful liens, account freezing, and liquidation (ROA, Doc. 7-1, Page 16-19; ROA, Doc. 7-2, Page

5-14, 95-96). These illicit activities directly inflicted profound **injuries**, including the unwarranted loss of her child from her life (ROA, Doc. 7-1, Page 15, 70; Doc. 7-2, Page 66, 127, 224), unwarranted seizure of $64,445.92 in ERISA-protected funds (ROA, Doc. 7-1, Page 15-16, 87-91; ROA, Doc. 7-2, Page 67-68, 99), effective termination of her medical license and career (ROA, Doc. 7-2, Page 69-70), illegal passport//bank seizure (ROA, Doc. 7-2, Page 68-69, 81-82), unconstitutional imprisonment (ROA, Doc. 7-1, Page 15, 52-53; ROA, Doc. 7-2, Page 50, 73, 110-111, 140, 160), severe financial destruction, credit score destruction (ROA, Doc. 7-1, Page 21, 29, 31, 34-36; ROA, Doc. 7-2, Page 69-70, 102-103), pervasive defamation (ROA, Doc. 7-2, Page 95). These harms caused extreme mental anguish, emotional distress to both Appellant and her daughter, straining all family relationships (ROA, Doc. 7-1, Page 21, 29, 35; Doc. 7-2, Page 69-70, 102-103).

**B. "Domestic Relations Exception" Does Not Bar Federal RICO Claims:** The domestic relations exception is narrowly confined to traditional decrees and applies only to diversity, not federal question jurisdiction (*Ankenbrandt v. Richards*). Appellant's statutory federal RICO claims are not barred by this exception (*DeMauro v. DeMauro; Friedlander v. Friedlander*). The Ninth Circuit's *Patricia Miroth, et al. v. County of Trinity, et al.* (May 8, 2025) reaffirms federal jurisdiction over fraud claims, even if tangentially related to state proceedings (**Appendix 1**). State employees acting under color of law are subject to federal civil rights liability (*Zinermon v. Burch*). Federal policy, as established by Executive Orders 14147, 14152, and the Presidential Memorandum on Legal System Abuses (**Appendix 6**), now explicitly prohibits the misconduct alleged here.

**III. DISTRICT COURT VIOLATED DUE PROCESS, CONSTITUTIONAL RIGHT**

District Court's dismissal overlooked egregious due process violations and infringements upon Appellant's fundamental constitutional rights and private property rights. Appellant's repeated invocation of UCC 1-308 & 1-103 and rejection of implied/undisclosed contracts are critical in demonstrating a lack of consent to state's claimed jurisdiction or debt.

**A. Unconstitutional Taking of Property:** The seizure of Appellant's biological property and ERISA-protected retirement funds constitutes an unconstitutional taking without just compensation, violating the Fifth and Fourteenth Amendments (*Loretto v. Teleprompter Manhattan CATV Corp.*). This taking was egregious given child's status as firstborn, the funds' origination during Appellant's second marriage, the void child support orders, the existing Oregon waiver, the non-consenting co-owner, and the premature, penalty-laden seizure (ROA, Doc. 7-1, Page 15-16, 87-91; ROA, Doc. 7-2, Page 69, 78, 114-115, 224).

**B. Unconstitutional Imprisonment for Unvalidated Debt and despite Indigence:** The contempt proceedings resulting in Appellant's incarceration violated Due Process and Equal Protection (*Bearden v. Georgia*). Imprisonment solely for unvalidated debt despite documented indigence, and without considering alternative measures, is unconstitutional. The court imposed a **60-day jail sentence and a $12,913.40 purge fee** in February **2024,** then double jeopardy for **6-month jail sentence and $13,211.24 + $500 court fees** in May 2025 **(Appendix 4)** despite Appellant's financial indigence, affirmed by higher courts (ROA, Doc. 7-1, Page 15, 52-53; ROA, Doc. 7-2, Page 50, 73, 110-111).

**C. Violation of Familial Integrity Rights:** District Court disregarded Appellant's fundamental familial integrity rights, protected by the Fourteenth Amendment (Troxel v. Granville; Santosky v. Kramer). Her female offspring was removed without a warrant,

criminal charges, documented evidence, or findings of parental unfitness (ROA, Doc. 54, Page 66). Special Judge April Seibert unlawfully and effectively terminated parental rights _and_ ordered female offspring to move to <u>8 hours highway-drive away</u> from Mother, based on "contempt of court" for failing to take a <u>medically contraindicated</u> psychological evaluation, **exceeding judicial authority**, violating due process, and effectively **practicing medicine without a license** (ROA, Doc. 7-2, Page 156-157, 160).

**<u>D. Failure to Provide Findings of Fact and Conclusions of Law</u>:** District Court violated Due Process and Fed. R. Civ. P. 52 by failing to provide findings of fact and conclusions of law for its dismissal and denial of injunctive relief and removal, despite explicit demands and requirements (ROA, Doc. 7-2, Page 61-62, 108, 227-241). This procedural defect deprived Appellant of meaningful appellate review and constitutes structural error (_Goldberg v. Kelly; F.T.C. v. Kuykendall_).

**<u>E. Imposition of Inflated Child Support Through Improper Income Imputation</u>:** District Court erred by ignoring that Oklahoma Special Judges lacked discretion to deviate from <u>mandatory</u> income imputation protocols. Despite Appellant's documented negative or zero income (2021-2023 tax returns, ROA, Doc. 7-1, Page 429-437), Special Judge Seibert imposed an inflated child support obligation of $2,360.24/month (ROA, Doc. 7-2, Page 140, 142-143) without <u>required</u> findings of voluntary underemployment, consideration of actual earning capacity under 43 O.S. § 118B (Imputed Income Rules), or written factual justification. This procedural failure violates due process <u>and</u> constitutes **judicial abuse** (_see Holmberg v. Holmberg, 588 N.W.2d 720 (Minn. 1999)_).

**<u>F. Unconstitutionally Conditioned Parental Rights on Non-Medically-Indicated</u>**

---

**Psychological Evaluation or on Contempts of Court Only**: Special Judge April Seibert unlawfully terminated Appellant's parental rights and restricted contact solely for refusing a psychological evaluation that is not medically-indicated, violating fundamental Fourteenth Amendment parental rights (*Troxel v. Granville; Santosky v. Kramer*) and patients' medical freedom to choose. This constituted judicial overreach by improperly assuming the role of a mental health expert, disregarded qualified expert testimony, mandated a court-preferred non-clinical psychologist's evaluation while rejecting Appellant's compliance with a board-certified physician's eval (ROA, Doc. 7-2, Page 67-68, 83-84, 156-157, 160). No clear and convincing evidence of unfitness or imminent danger was shown as required by 10A O.S. §§ 1-1-101 et seq.; 2-3-101; 2-3-102 and Oklahoma Constitution, Art. 2, § 1. Contempt conviction alone cannot justify such a severe termination of parental rights. District Court erred failing to recognize constitutional/statutory violations warranting federal relief under 42 U.S.C. § 1983.

**G. Unlawful and Outrageous Bail/Bond**: District Court erred by sanctioning the imposition of an excessive and unconstitutional bail/bond amount, which effectively resulted in Appellant's detention solely due to indigence, violating her Eighth and Fourteenth Amendment rights against excessive bail and unconstitutional debtor's prison. The **$12,913.40 cash purge bond + approx $65,000** in 2014 and **$13,211.24 + $500.00** in 2025 (**Appendix 4**) showed a pattern of abuse of power, greed, frauds ignoring Appellant's documented indigence affirmed by higher state courts and federal courts both, and despite proposed alternatives, was a direct cause of her 2-month incarceration from February 7, 2024 (ROA, Doc. 7-1, Page 15, 52-53; ROA, Doc. 7-2, Page 50, 73, 110-111, 140, 160)

and recurrent harassments, cruel & unusual punishments. This bail was set without a meaningful individualized hearing on Plaintiff's ability to pay, violating principles established in *Bearden v. Georgia*. The practice constitutes an unconstitutional wealth-based detention system (ROA, Doc. 7-2, Page 44-45, 50-51, 91-92, 204-205), forcing prolonged detention on those unable to pay, regardless of flight risk or danger to the community– <u>there is ZERO danger to the community regarding Plaintiff</u>.

## IV. DISTRICT COURT MISAPPLIED *ROOKER-FELDMAN* DOCTRINE AND IGNORED JURISDICTIONAL DEFECTS

**A. *Rooker-Feldman* Doctrine Misapplication:** Court's erroneous application of the doctrine fundamentally misconstrued its narrow scope, thereby avoiding its obligation to hear critical federal claims. The *Rooker-Feldman* doctrine is "confined to cases... brought by state-court losers complaining of injuries caused by state-court judgments rendered before district court proceedings commenced and inviting district court review and rejection of those judgments" (*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*). Appellant's claims seek prospective relief from ongoing violations of federal law, not a reversal of state judgments, and state proceedings were not final when the federal case began (ROA, Doc. 7-2, Page 57-58). Critically, *Miroth v. County of Trinity* confirms that fraud allegations against adverse parties and claims of state official misconduct do not trigger *Rooker-Feldman*, distinguishing them from mere state court errors.

**B. Violation of Full Faith and Credit Clause and Federal Interstate Family Support Laws:** Oklahoma's imposition and enforcement of contradictory child support obligations directly violated the Full Faith and Credit Clause (U.S. Const. art. IV, § 1) by disregarding

the valid Oregon divorce decree, which explicitly waived child support in exchange for property (ROA, Doc. 7-1, Page 14-15; Doc. 7-2, Page 141-142). This contravenes the Parental Kidnapping Prevention Act (PKPA) and the Uniform Interstate Family Support Act (UIFSA), undermining federalism and stability in interstate judicial determinations.

**C. Judicial Overreach and Lack of Jurisdiction by Oklahoma Special Judges:**

Oklahoma special judges lacked statutory jurisdiction under Oklahoma Statutes §§ 20-123 and 20-124 to issue orders affecting ERISA-protected accounts or to modify child support without proper motions or Title IV-D prerequisites (ROA, Doc. 7-2, Page 8, 156-157, 149-152). Their orders are void *ab initio*. Court also failed to follow <u>mandatory</u> income imputation protocols, imposing an artificially inflated obligation despite Appellant's documented and affirmed indigence (ROA, Doc. 7-1, p 429-437). These judges violated 43 O.S. § 139.1 (Inability to Pay Hearing Required), mandating ability-to-pay hearings before incarceration under federal due process standards. Oklahoma Indirect Contempt Rule 8 also requires full indigency inquiries before incarceration for nonpayment. Furthermore, 43 O.S. § 118B (Imputed Income Rules) permits imputed income <u>only</u> with evidence of willful underemployment and consideration of <u>actual</u> (not potential) earning capacity, which lower courts demonstrably failed to do and refused to do even after reminded to.

**V. DISTRICT COURT ABUSED ITS DISCRETION IN DENYING EMERGENCY INJUNCTIVE RELIEF**

District Court abused its discretion by denying emergency injunctive relief despite clear evidence satisfying all four *Winter v. Natural Resources Defense Council, Inc.* requirements. Appellant demonstrated: (1) likelihood of success on ERISA/RICO claims; (2) irreparable harm through seizure of retirement accounts, imprisonment, denial of child

contact, child held hostage, and medical license loss; (3) favorable balance of equities; and (4) compelling public interest in enforcing federal protections (ROA Doc. 7-2, pp.67-70, 97-98, 106-107). The court's summary denial without addressing merits constitutes abuse of discretion. Recent Executive Orders (14147, 14215, 14187) and Presidential Memoranda (March 22, 2025) prioritizing accountability, protecting children from government overreach, and preventing legal system abuses confirm the public interest strongly favors relief—federal policy now explicitly prohibits these violations.

## **CONCLUSION**

Your Honors, this case transcends a mere legal dispute; it is a profound plea for justice and federal protection against a persistent pattern of state-sanctioned overreach that has devastated a family and flagrantly defied federal law. The District Court's dismissal represents a profound abdication of its "virtually unflagging obligation" to hear federal claims, leaving Appellant's most fundamental rights exposed and violated. The stark reality is that ERISA, a federal statute designed to safeguard the retirement future of working Americans, was summarily disregarded. This allowed the unlawful seizure of $64,445.92 in hard-earned funds, originating from a separate marriage, without any legal justification for an unvalidated debt, all facilitated by apparent frauds upon the court. This is not a technicality; it is a betrayal of trust in a system meant to protect and deliver justice, fairness, and integrity. Furthermore, this is a case where the dark shadow of racketeering activity, involving fraudulent schemes and complicity, has been ignored, leaving "we the people" (including you and your descendants when you are no longer in judgeship) vulnerable to continued abuses, frauds, malicious prosecutions, intimidations,

persecutions, retaliations, and waste (of taxpayers money). The lower court's

misapplication of *Rooker-Feldman* has, in essence, rubber-stamped state court actions that

are not only procedurally flawed but void *ab initio* due to a stunning lack of jurisdiction

and systematic fraud upon the court. The sentient human-being's cost is undeniable: a

mother, unlawfully separated from her daughter without warrant or due process,

imprisoned for an alleged debt she does not owe and cannot pay in direct contravention of

*Bearden v. Georgia*, and denied fundamental due process rights to a fair hearing. These are

not abstract legal theories; these are the very protections upon which our

Republic/forefathers stand. The debt alleged by OKDHS is unvalidated, as DHS went into

dishonor by its nonresponse to numerous conditional acceptance letters from Appellant.

OKDHS, a private corporation masquerading as a public governmental agency, has

committed Title IV frauds to unjustly enrich itself while inflicting severe, cruel and

ongoing harms and damages upon Appellant.

     This Court holds the sacred trust to enforce the supremacy of federal law and to

shield individuals from state tyranny and terrorism. The irreparable harm suffered here –

the loss of a first born female offspring (nowhere to be found nor seen by Plaintiff), the

theft of retirement security, the denial of basic liberty – demands immediate redress. Your

decision today will not merely rectify a series of legal errors; it will send an unmistakable

message that the federal courts remain the steadfast guardians of our most cherished

constitutional freedoms. I respectfully implore this Court to reverse the district court's

dismissal, remand this case for proper adjudication, and ensure that justice, long deferred,

is finally served. The integrity of our federal system and soul of constitutional governance,

depend upon you. Choose you this day whom you will serve–thus said the LORD! "For what shall it profit a man though he should win the whole world, if he lose his soul? Or what shall a man give for recompense of his soul?" (Matthew 16:25 Geneva Bible 1560).

## RELIEF SOUGHT

Appellant Linh-Tran Stephens, *sui juris*, respectfully petitions this Honorable Court for the following relief to safeguard her **unalienable rights**, with **expedited consideration**

### I. REVERSAL AND REMAND

**Reverse** District Court's April 24, 2025 dismissal order and **remand** for full adjudication of all federal claims (ERISA, RICO, 42 U.S.C. § 1983, due process violations, etc.).

**Direct** the District Court to proceed on the merits without applying *Rooker-Feldman* or domestic relations exception

### II. IMMEDIATE DECLARATORY AND INJUNCTIVE RELIEF

**Declare** federal question jurisdiction over ERISA claims; ERISA's anti-alienation provision protects retirement accounts without valid QDRO (ROA Doc. 7-1, pp.15-16, 87-91; Doc. 7-2, pp.8, 55, 67-68, 99). **Order immediate return** of: Biological offspring G.L.Stephens, $64,445.92 retirement funds plus interest, Passports, medical license, and all seized property. **Declare void *ab initio***: All garnishments/seizures of retirement/bank accounts, All Oklahoma special judges' orders since December 2021, All body attachment warrants. **Permanently enjoin** non-Article III judges from presiding over Appellant's cases. **Stay *all* state proceedings pending resolution of federal claims**

### III. PROCEDURAL SAFEGUARDS

**Reverse** denial of emergency injunctive relief; halt all state enforcement proceedings

(ROA Doc. 7-2, pp.60, 106-107, 204-219); **Mandate** written findings of fact and conclusions of law per Fed. R. Civ. P. 52; **Reassign** to different District Judge on remand; **Affirm** Seventh Amendment jury trial rights (ROA Doc. 7-1, p.9, 329);

## IV. ACCOUNTABILITY AND SANCTIONS

**Award** costs, attorney's fees under 42 U.S.C. § 1988, and exemplary damages against bad-faith actors (ROA Doc. 7-1, pp.27, 34-36; Doc. 7-2, pp.102-103, 139-140); **Impose** Rule 11 sanctions for frivolous/bad-faith filings; **Direct** criminal referral to DOJ under 18 U.S.C. §§ 241, 242; **Order** U.S. Attorney investigation of RICO violations

## V. SYSTEMIC REMEDIES

**Take judicial notice** of Writ of Quo Warranto (**Appendix 3**); **Enforce** Executive Orders 14147, 14152, 14187, 14215 and Presidential Memoranda; **Order** expungement of false records and criminal history; **Mandate** constitutional training for Oklahoma family court personnel; **Appoint** federal monitor for Oklahoma CSS compliance

## VI. CONSTITUTIONAL DECLARATIONS

**Declare** Oklahoma violated Full Faith and Credit Clause (Oregon decree); **Find** *Bearden v. Georgia* violations (imprisonment for inability to pay); **Declare** pattern of First Amendment retaliation; **Unseal** wrongfully sealed mandamus (Feb. 13, 2025);

## VII. ADDITIONAL RELIEF

**Grant** supplemental jurisdiction over related state claims (28 U.S.C. § 1367); **Order** protection from retaliation; **Preserve** all evidence; prohibit document destruction; **Award** compensation for lost opportunities/time; **Grant** all other relief deemed just and proper.

Respectfully submitted,

*Nemo me impune lacessit pursuant to Psalm 105:15 + Isaiah 54:17*
PRIVATE; THIS IS NOT A PUBLIC COMMUNICATION
Notice to Agent is Notice to Principal, Notice to Principal is Notice to
Agent, Notice applies to all successors and assigns; Affidavit is a Form of
Evidence; Unrebutted Affidavit Stands as Truth in Commerce;
**Silence is Tacit Acquiescence/Agreement/Dishonor**;
*This communication is in no way forming a contract nor requesting any
contracting; it is simply a notice regarding the matters at hand. This
communication is not intended to nor does it create nor confirm any
professional-client relationship or any type of relationship between us;*

Private sector autograph;
**WITHOUT RECOURSE**

*without prejudice*
*linh-tran: stephens/Agent*

By one–and–only beneficiary:
All Rights Reserved None Waived, **Without Prejudice** *UCC 1-308 & 1-103*,
**Non-Assumpsit**, one-and-only Grantor & Authorized Agent & Beneficiary
for LINH TRAN STEPHENS©® ens legis and all its derivatives thereof including Cestui
Que Trust a.k.a. "Fide Commissary Trust",
sui juris, Ambassador of Messiah Yahusha, Heir of the Creator,
my heir/offspring is G.L.Stephens,
A natural living woman breathing with a living soul and the Holy Spirit,
natural people with hands legs, Alive-on-the-land, Plenary mind body soul/spirit,
unlimited, non-incorporated, non-sole-proprietor,
stateless "**freeman of the Union**" per Honorable Mr. Justice MILLER on April 14th, 1983, in the
Slaughter-House cases, 83 US 36 (a SCOTUS case specifically mentioned in 8 FAM 102.3),
full capacity and competency with postgraduate level of education,
living on the land of the republic, with God-given rights pursuant to Bills of Rights,
NOT a "pro se"/"person"/"pauper"/"indigent"/"slave"/"public servant"/"government
employee"/"ward of State"/"U.S. citizen"/"minor" in your dictionary;
i reject your 12 legal presumptions, other presumptions/assumptions/double-speaking/implied or
undisclosed contracts;
Article IV Section 2 Citizens of each State shall be entitled to all Privileges & Immunities of
Citizens in several States;
**Rural Free Delivery, Non-Domestic 00000,**
℅ 1964 Ashley River Rd Ste B Unit 80112,
Charleston, South Carolina [zip exempt but near 29416] without U.S.D.C.
Email: LinhStephens7@gmail.com; *Tel:* 843-608-0294

## **Notary as JURAT CERTIFICATE**

STATE OF MINNESOTA            )
                                                      ) *ss*
COUNTY OF SHERBURNE        )
On this 13th day of June, 2025 before me, Melissa K. Vagle, a Notary Public,

---

personally appeared a living woman <u>Linh Tran Stephens ( the Authorized Representative and Beneficiary for Legal Fiction LINH TRAN STEPHENS©® )</u>, who electronically (remotely) proved to me on the basis satisfactory evidence to be the woman whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her autograph(s) on the instrument the woman executed, the instrument.

 i certify under PENALTY OF PERJURY under the lawful laws of Minnesota State and that the foregoing paragraph is true and correct.

 WITNESS my hand and official seal.

*Melissa K. Vagle*

Signature of Notary/Jurat

MELISSA K VAGLE
Notary Public
State of Minnesota
My Commission Expires
January 31, 2028

Notary Public's Commission Expires: 01/31/2028

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(g)(1), I certify that this brief complies with the type-volume limitation of Rule 32(a)(7)(B). This document contains [7,711] words, excluding the parts of the brief exempted by Rule 32(f). The brief has been prepared in a proportionally spaced typeface using [e.g., Microsoft Word] in 13-point Times New Roman font as permitted by 10th circuit.

Respectfully submitted,

*without prejudice*
*linh-tran: stephens/Agent*

Autograph: linh-tran: stephens (lower case), sui juris

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certify that on <u>June 14<u>th</u></u>, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system [or it was mailed to below address]; I also further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system:

Clerk of U.S. Court of Appeals for the Tenth Circuit
1823 Stout Street,
Denver, Colorado 80257

WITHOUT RECOURSE.

*without prejudice*
*linh-tran: stephens/Agent*