Tenth Circuit case number <u>25-5063</u>

---

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

---

(1) Linh Tran Stephens, sui juris, natural living breathing woman with a living soul and the Holy Spirit, Ambassador of Christ/Yahusha — *Plaintiff-Appellant,*
Vs.

(2) CHILD SUPPORT SERVICES OF OKLAHOMA DEPARTMENT OF HUMAN SERVICES (CSS of OKDHS),

(3) CHARLES SCHWAB AND CO., INC.,

(4) Cierra Freeman, in individual and official capacity as court-appointed attorney for child-support enforcement,

(5) Mary Johnmeyer, in individual capacity and in official capacity as legal counsel of Charles Schwab,≠

(6) Renee Banks, in individual capacity and official capacity as CSS Director,

(7) Jason Hoenshell, in individual capacity and in official capacity as Oklahoma FIDM Coordinator,

(8) Emmalene Stringer, in individual capacity and in official capacity as State's attorney for CSS; *et. al.*

— *Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA (Case No. 24-cv-216-JDR-CDL)

---

## VERIFIED REPLY BRIEF
ORAL ARGUMENT IS NOT REQUESTED

---

WITHOUT RECOURSE/prejudice
By: linh-tran: stephens,
Appellant, *sui juris self presenting* without attorney
℅ 1964 Ashley River Rd Ste B Unit 80112,
Charleston, South Carolina [29407] without United States Washington D.C.
<u>LinhStephens7@gmail.com</u>
phone: (843) 608-0294

## TABLE OF CONTENTS

TABLE OF CONTENTS                                                                ii

TABLE OF AUTHORITIES                                                            iii

    Cases                                                                      iii

    Statutes                                                                   iv

    Constitutional Provisions                                                  iv

    Treaties and International Agreements                                       iv

TABLE OF APPENDICES FOR REPLY BRIEF                                              v

TABLE OF APPENDICES THAT WAS IN OPENING BRIEF                                    v

Sworn Affidavit of Truth                                                        vii

STATEMENT OF RELATED CASES:                                                     vii

**I. INTRODUCTION**                                                             **1**

**II. ARGUMENT**                                                                **2**

    A. Standard of Review                                                      2

    B. Appellant Has Exhausted All State-Level Remedies Despite NOT Required to     2

    C. District Court Erred in Dismissing Claims Under Sovereign Immunity           4

    D. District Court Erred in Applying Younger Abstention and Dismissing Constitutional
Claims                                                                          6

    E. District Court Erred in Dismissing Claims for Alleged Failure to State a Claim    9

    F. District Court Erred in Dismissing Claims Based on Federal Criminal Statutes    11

    G. Constitutional and Human Rights Claims Were Improperly Dismissed             12

**III. REQUEST FOR EXERCISE OF ORIGINAL JURISDICTION**                          **15**

**IV. CONCLUSION**                                                              **15**

Notary as JURAT CERTIFICATE                                                     16

CERTIFICATE OF COMPLIANCE                                                       18

CERTIFICATE OF SERVICE                                                          19

## TABLE OF AUTHORITIES                                                         page #

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................11

*Axon Enterprise, Inc. v. FTC*, 598 U.S. 459 (2023)..........................................6

*Baumgardner v. Sec'y, Kansas Dep't of Transp.*, 65 F.4th 1187 (10th Cir. 2023)..............9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)........................................11

*Bond v. United States*, 529 U.S. 334 (2000)..................................................6

*Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231 (10th Cir. 2013)..........3

*City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985)................................14

*Colorado Envtl. Coal. v. Wenker*, 353 F.3d 1221 (10th Cir. 2004)....................................3

*Cunningham v. University of New Mexico Board of Regents*, 531 F.4th 1257 (10th Cir. 2023)................................................................7

*Ex parte Young*, 209 U.S. 123 (1908)....................................................7, 8

*Guidry v. Sheet Metal Workers National Pension Fund*, 39 F.3d 1078 (10th Cir. 1994)....8

*Hafer v. Melo*, 502 U.S. 21 (1991)....................................................8

*Haines v. Kerner*, 404 U.S. 519 (1972)..................................................12

*Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991)..............................................12

*Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975)..................................................10

*Owen v. City of Independence*, 445 U.S. 622 (1980)..........................................7

*Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.*, 725 F.2d 537 (9th Cir. 1984)..................................................................6

*Pater v. City of Casper*, 646 F.3d 1290 (10th Cir. 2011)..................................9

*Peterson v. Shanks*, 149 F.3d 1140 (10th Cir. 1998)..........................................4

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)..........................................13

*Singleton v. Wulff*, 428 U.S. 106 (1976)..................................................12

*Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013)............................................10

*Tower v. Glover*, 467 U.S. 914 (1984)...............................................................................12

*Trump v. United States*, 598 U.S. ___ (2024)......................................................................7

*United States v. Jacobsen*, 466 U.S. 109 (1984)...............................................................14

*Virginia Office for Protection & Advocacy v. Stewart*, 563 U.S. 247 (2011)......................8

*Wilder v. Virginia Hospital Association*, 496 U.S. 498 (1990)..........................................14

*Winn v. Cook*, 945 F.3d 1253 (10th Cir. 2019)....................................................................4

*Younger v. Harris*, 401 U.S. 37 (1971)..............................................................................10

**Statutes**

18 U.S.C. § 1961(1).............................................................................................................13

18 U.S.C. § 1964(c).............................................................................................................13

42 U.S.C. § 1983..................................................................................................7, 8, 13, 14

Fed. R. Civ. P. 12(b)(1).........................................................................................................3

Fed. R. Civ. P. 12(b)(6).........................................................................................................3

**Constitutional Provisions**

U.S. Const. amend. IV.........................................................................................................14

U.S. Const. amend. V...........................................................................................................14

U.S. Const. amend. XIV, including § 1.............................................................................2, 14

**Treaties and International Agreements**

European Convention on Human Rights (ECHR), Art. 3.........................................................2

Hague Convention on the Civil Aspects of International Child Abduction...................2, 3

International Covenant on Civil and Political Rights (ICCPR)....................................2, 3

United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading
Treatment or Punishment (UNCAT), Art. 2, 16............................................................2, 15

**TABLE OF APPENDICES FOR REPLY BRIEF**……..…**page # in this reply brief**

**Appendix 1** = Exhibit 1 **(4 pages)**: United Nations Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (UNCAT) law summary..…..2, 15

**Appendix 2** = Exhibit 2 **(2 pages)**: Oklahoma Office of Civil Rights Enforcement (OCRE) official recusal letter dated September 24, 2025, acknowledging conflicts of interest in investigating complaints against Tulsa County courts and judges (Case Nos. CR-23-175-PA, CR-23-176-PA, CR-23-177-PA, and CR-23-193-PA)...............................................................................3, 4, 5, 15

**Appendix 3** = Exhibit 3 **(2 pages)**: U.S. Supreme Court correspondence regarding Writ of Certiorari filing (April 23, 2025)......................................................................5

**Appendix 4** = Exhibit 4 **(7 pages)**: Letters from multiple state officials dated September 25, 2024, March 14, 2025, April 1, 2025, and August 25, 2025 calling for Oklahoma State Bureau of Investigation (OSBI) and Grand Jury investigations into OKDHS wrongdoings…….………..……….………..……….………..…………….……..…5

**Appendix 5** = Exhibit 5 **(2 pages)**: Oklahoma State Auditor & Inspector press release (August 27, 2025) documenting $93.4 million in "questioned costs" including $63.6 million in mismanaged federal grant money by OKDHS……..………..………...…..…7

**Appendix 6 = Exhibit 6 (21 pages)**: Private Attorney General (PAG) Letter to SCOTUS Re IAJ Dated September 17, 2025 "*Establishment of the missing independent investigative mechanism of international law and treaty compliance under the UNCAT and the Istanbul Protocol*" submitted by Institute for Advancement of Justice & Human Rights regarding systematic human rights violations of numerous American cases, including Appellant's case mentioned on its numbered page 10 ………..………..........10

**TABLE OF APPENDICES THAT WAS IN OPENING BRIEF**

" **Appendix 1 (52 pages)** ........................................................................21, 25

●  *Patricia Miroth, et al. v. County of Trinity, et al.* (May 8, 2025)

**Appendix 2 (5 pages)** ........................................................................8

●  Certificate of Existence & Articles of Incorporation for LINH TRAN STEPHENS©®

**Appendix 3 (15 pages)** .................................................... 1, 5, 14, 19, 20, 25, 30

●  Writ of Quo Warranto (establishing systematic constitutional violations by non-Article III tribunals, the unconstitutional nature of chancery courts since 1789,

the lack of Article III authority for special judges, and the RICO implications of courts operating without proper jurisdiction).

**Appendix 4 (16 pages)** ................................................................. 4, 5, 13, 14, 22

- Multiple Letters from House Representatives and District Attorney requesting OSBI and Grand Jury investigations against OKDHS.
- Oklahoma Supreme Court order permanently revoking in forma pauperis status (Case #MA-122445, pages 11-12).
- OSCN minute orders printed by legal advocates showing judicial misconducts (pages 13-16).
- Details of 2025 jail sentence and fees ($13,211.24 + $500.00).

**Appendix 5 (2 pages)** ................................................................................. 14

- Redacted affidavit from first-hand witness "S___" documenting egregious conducts of Special Judges, Sheriff, and Bailiff during a "public" hearing.

**Appendix 6 (9 pages)**............................................................................. 15, 21

- Executive Orders (EO 14147, 14152, 14187, 14215) and Presidential Memoranda (March 22, 2025) addressing weaponization of federal government, preventing abuses of the legal system, and prioritizing accountability and protection of parental rights.

**Appendix 7 (1 page)** ............................................................................... 9, 11

- Evidence Folder (nonexhaustive) admitted but ignored by courts [or linhstephens.com]
- quoted words from G.L.Stephens's diary entries revealing distress when with Adam Stephens (07-03-20 to 06-19-21), previously filed with Tulsa police and courts

**Appendix 8 (58 pages)** ................................................................................. 11

- More than Seven (7) affidavits from reliable witnesses: a child psychologist (Jim Lovett notarized 06-15-2020), a teacher (Susie Panzer notarized 06-15-2020), a school director (Jayme Wingo-Martin notarized 06-16-2020), church deacons (the Johnsons couple notarized 05-29-2020), a neighbor, an advanced registered nurse practitioner (Jeri Townsend notarized 12-18-2022), a close family friend and primary care doctor (Dr. Moris Laca notarized 12-19-2021), and child's maternal grandparents (Khanh and Joseph notarized 03-31-2022), and Linh Stephens (biological mother)
- G.L.Stephens's personal diary (07-03-20 to 06-19-21) verified by child psych and DHS whistleblower
- G.L.Stephens' drawings and writings in class before being unlawfully detained and held hostage by OKDHS caseworker demanding ransom**"**

## Sworn Affidavit of Truth

I, Affiant, named linh-tran: stephens (also known as "Linh Tran Stephens", "Plaintiff", "Appellant", "Mother", or "Linh" herein), one of the sovereign People (as seen in Oklahoma Constitution Article 2 Section 1 and U.S. Constitution) republican in form, **Sui Juris**, do make below claims and do hereby attest that statements, averments and information contained herein are true and correct to best of my first-hand knowledge and belief being sound mind and above age 18 and living:

## STATEMENT OF RELATED CASES:

This case relates to unlawful and lack-of-original-jurisdiction state court proceedings in Tulsa County, Oklahoma, case No. **FD-2015-2228** and **JD-2021-270**, **fraudulent OAH No.: 23-00313-73, OK IV-D FGN 948641001** involving void-ab-initio-due-to-lack-of-original-jurisdiction-and-due-to-disclosed-frauds-upon-the-court Orders followed by enforcement of unvalidated-while-breaching-previous-valid-private-contract-without-any-second-accord-and-accommodation Child-Support agreement/ decree/order from state of Oregon dated January 2016 between an American named Adam and a Viet Nam national named Linh, followed by double jeopardy of "contempt of court for not paying exact same unvalidated debt (which was obtained-by-frauds and by abuse of power)" up to 6 months in prison yet continually deprived of beyond reasonable doubt standard of evidence and deprived of jurors of Plaintiff's peers, even while previous debtor-imprisonment is still concurrently on appeal regarding an international Viet Nam national of Asia continent (who verified and declared numerous times under oath that she was not a "U.S. citizen"), unwarranted and unconsented seizure of ERISA funds (earned during the years 2018-2020) that did NOT belong to the marriage of the contested matter nor earned during contested marriage

whose divorce ended in January 2016. These ERISA fund and retirement accounts belonging to nonretired co-owners were completely emptied fraudulently for an unvalidated state court's alleged debt of child support for a minor who is NOT an heir/offspring of the mulit-owners account.. As of <u>December 03, 2021,</u> there have been ongoing and repetitive seizures of biological (bodily) and financial properties without lawful warrants, without any exigent (deadly or emergent) circumstances, without endangering society or any natural living men/women, without any actual victims' sworn statement or testimony, <u>but only based on hearsay of unreliable DHS caseworker Bridget O'brien/Menser who has a known convicted felony for harming children previously</u>. <u>Active fraudulent and malicious warrants have been issued for Appellant *repeatedly*. Three of four malicious warrants have been dismissed and recalled after years of prolonged torture to Plaintiff by the State of Oklahoma and all Defendants of this case</u>. Defendants repeatedly ignored Plaintiff's conditional acceptance letters thereby demonstrating dishonors. Just and fair procedures and actions continue to be neglected as Defendants choose to continue to impose corrupted systemic torture/harms onto Plaintiff by way of abuse of legal processes and of the judicial system, violating human, constitutional, substantive, and fundamental rights—including freedom of speech and religion, banking privacy, and protection from slavery and torture, etc. Federal habeas petitions (*In re Linh Stephens*, Case No. **25-cv-285-GKF-MTS**, and *In re G.L. Stephens*, Case No. **25-cv-286-CVE-MTS**) were filed in the Northern District of Oklahoma on June 6, 2025. A tort claim (Case No. **25-CV-00322-SEH-JFJ**) was filed on June 26, 2025.

## I. INTRODUCTION

This reply addresses Defendants-Appellees' arguments and District Court's erroneous dismissal based on sovereign immunity, Younger abstention, and failure to state a claim. Sovereign immunity does not shield state actors from liability for constitutional and human rights violations. As a Viet Nam (of Asia) national subjected to systemic abuse while in U.S. territory, Appellant invokes protections under Constitution for united States of America (the original Republic), U.S. Constitution, United Nations Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (**UNCAT**, summarized in **Exhibit 1**), International Covenant on Civil and Political Rights (**ICCPR**), and Hague Convention on the Civil Aspects of International Child Abduction. Under *Loper Bright Enterprises v. Raimondo* (2024), federal courts must independently interpret statutes without deferring to agency interpretations when fundamental rights are at stake. Defendants' allegations are disproven by extensive evidence at https://linhstephens.com, supporting Plaintiff's federal whistleblower status thus required protection and original jurisdiction from this Court, the Tenth Circuit (10th Circuit).

Record on Appeal (ROA Vol. I, at 9-37) contains substantial evidence improperly disregarded by District Court. Oklahoma officials violated fundamental rights by seizing passports, restricting international travel, and unlawfully garnishing ERISA-protected retirement funds of nonparties before retiring age without any owners' consent. On September 24, 2025, the Oklahoma Office of Civil Rights Enforcement (**OCRE**) officially recused itself from investigating Appellant's claims (**Exhibit 2**), acknowledging conflicts of interest and constituting recognition that no adequate state remedy exists.

---

*Page 1*

## II. ARGUMENT

### A. Standard of Review

The standard of review for dismissals under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) is de novo. *Colorado Envtl. Coal. v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004). This Court "accept[s] all well-pleaded factual allegations in the complaint as true and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortgage Elec. Registration Sys.*, Inc., 706 F.3d 1231, 1235 (10th Cir. 2013). Younger abstention doctrine also reviewed de novo. *Winn v. Cook*, 945 F.3d 1253, 1257 (10th Cir. 2019). This Court has authority to correct District Court's legal errors, misrepresentations, and inaccurate "factual" assumptions.

### B. Appellant Has Exhausted All State-Level Remedies Despite NOT Required to

Appellant exhausted state remedies before filing this federal lawsuit. This Tenth Circuit, in *Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998), affirmed that exhaustion is unnecessary when "remedies are ineffective or inadequate."

Appellant's exhaustion efforts included:

- Pursuing relief through Oklahoma courts for 3.5 years (ROA, Vol. II, at 236)

- Filing a Writ of Certiorari with the U.S. Supreme Court (**Exhibit 3**)

- Seeking intervention from state representatives who confirmed systemic violations (**Exhibit 4**)

- Receiving official recusal from Oklahoma Office of Civil Rights Enforcement stating: "This recusal enables you to seek other avenues of recourse" (Exhibit 2)

Evidence has been systematically suppressed by Defendants. Voice recordings contradict official transcripts. Charles Schwab was absent from hearings despite notice. Administrative "special judges" e.g. Robert Perugino, Loretta Radford, Deborrah

Ludi-Leitch, April Seibert, Rodney Sparkman, masqueraded as Article III courts despite jurisdictional challenges. A mandatory provision for trial of civil cases by a magistrate, rather than Article III judges, violates litigants' constitutional rights (*Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.*). As stated in *Axon Enterprise, Inc. v. FTC*, "Cases involving deprivations of life, liberty, or property must be resolved by Article III courts, not executive adjudicators 'dressed up as courts.'"

ROA demonstrates that state proceedings were <u>repeatedly conducted in bad faith, rendering further state remedies futile</u>: state officials falsified documents (ROA, Vol. I, at 22), ignored legal notices, jurisdictional challenges and objections (ROA, Vol. I, at 25), and issued liquidation requests without proper prior notice. The notice was given *after* the garnishment acts (ROA, Vol. I, at 23).

On <u>August 27, 2025</u>, Oklahoma State Auditor, Cindy Byrd, confirmed an audit showcased and acknowledged OKDHS and their mismanagement of federal grant money (**Exhibit 5**). <u>The audit revealed $93.4 million of "questioned costs" in FY 2023, with OKDHS mismanaging over $63.6 million</u>. OKDHS seized nearly $65,000 from a 401(k) account that did NOT solely belong to Plaintiff without a federal warrant in <u>May of 2024.</u> Furthermore, child support belongs to the parent for the care and support of the minor. Yet, per testimony in <u>February of 2025 (almost one year later)</u>, Mr. Gilbert Pilkington, Jr. (lawyer for the minor's biological father), the minor's biological father/Mr. Adam Sylvester Stephens, Sr., had never received any funds. Special judge Mrs. April Seibert does not know where the garnished funds of $65,000 have been placed. There has been no effort nor referral for any investigation, despite motioning & demanding for such. This backdoor deal substantiates Plaintiff's Racketeer Influenced and Corrupt Organizations Act (**RICO**) claim.

Evidence is found at linhstephens.com, tinyurl.com/4cdv5u56, iaj.institute/index.php and ROA, which includes recordings exposing altered court transcripts and minute orders by Oklahoma. A two-inch binder of validated evidence and notarized affidavits, admitted by the state court on December 20, 2022, refutes all Defendant claims, proving perjury. Appellant appealed Oklahoma state court orders in the Oklahoma Court of Civil Appeals and Oklahoma Supreme Court in case number DF-122022, as acknowledged by both DHS Defendants (Doc. 43, p. 2) and Charles Schwab Defendants (Doc. 39-1, p. 1), where justice was denied by Oklahoma Supreme Court. This denial was based on fabricated, biased, and discriminatory opinions, rather than undisputed facts, reliable evidence, or established laws; that court relied on judge-made laws, and multiple layers of hearsay, then abused its discretion where discretions are not allowed, particularly in areas where the State lacked original jurisdiction, such as international and private church matters.

Plaintiff's rights were violated by all Defendants and continue to be, mandating this Court to conduct a de novo review, intervene, to stop governmental abuse, torture, and hate crimes against the Plaintiff to protect the whistleblower and uphold Creator/YAHUAH's law. In *Bond v. United States*, 529 U.S. 334 (2000), Supreme Court held that the American people are sovereign and not the States or the government. SCOTUS specified that law enforcement officers committing **unlawful** actions against sovereign people are personally liable for their actions. Therefore, District Court's order is unlawful.

## C. District Court Erred in Dismissing Claims Under Sovereign Immunity

This Court should reject sovereign immunity defenses based on: **(1)** claims for prospective injunctive relief under Ex parte Young; **(2)** claims against officials in individual capacities; and **(3)** claims where Congress has abrogated sovereign immunity.

First, In *Cunningham v. University of New Mexico Board of Regents*, 531 F.4th 1257, 1265 (10th Cir. 2023), this Court held that "when state officials act beyond their statutory authority or in violation of the Constitution, they are stripped of their official character and may be held personally liable." Appellant's claims include allegations under 42 U.S.C. § 1983 for constitutional rights violations. In *Virginia Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011), <u>Ex parte Young</u> permits "a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not a suit against the state for purposes of the Eleventh Amendment." *Owen v. City of Independence* (1980) denied municipalities immunity under 42 U.S.C. § 1983 for constitutional violations. *Trump v. United States* (2024) clarified that officials lack immunity for "unofficial acts" beyond their authority. Thus, immunity doesn't apply to officials engaged in <u>torture, unlawful detention, or systemic abuse of process</u>. Additionally, under 28 U.S.C. § 454, judges must properly register their status before exercising jurisdiction; under 28 U.S.C. § 955, court clerks must similarly comply with registration requirements–all of which were violated by OKDHS Defendants. <u>Failure to properly register as required by federal law strips officials of immunity and jurisdiction</u>. Therefore, <u>this Court must exercise original and supplemental jurisdiction due to compromised Oklahoman courts</u>–please review Appellant's Claims and its Amended Claims to this Court as well specifically reported ongoing torture with human rights and constitutional violations causing *severe irreversible* harms to Plaintiff by all Defendants.

Second, in *Hafer v. Melo*, 502 U.S. 21, 31 (1991), Supreme Court held that state officials sued in individual capacities are "persons" under § 1983 and do not enjoy sovereign immunity. Please take note of words "in individual capacity" next to the names of

Defendants in original Claims page 1 and on title of the case as well. While labeled "relating to official duties," the contested issues aren't part of their jobs' description–which excludes fraud, perjury, or rights violations. District Court's sovereign immunity analysis failed to properly distinguish between official & individual capacity claims. While sovereign immunity may bar certain official capacity claims for damages, it does NOT protect state officials from individual liability for unconstitutional acts. In *Baumgardner v. Sec'y, Kansas Dep't of Transp.*, 65 F.4th 1187, 1198 (10th Cir. 2023), this Court recognized that "the Eleventh Amendment does not bar a suit seeking damages from a state official in his individual capacity."

Third, This Tenth Circuit has consistently enforced ERISA's anti-alienation provision. In G*uidry v. Sheet Metal Workers National Pension Fund*, 39 F.3d 1078, 1082 (10th Cir. 1994), this Court emphasized ERISA's anti-alienation provision "admits of virtually <u>no exceptions beyond those explicitly created by Congres</u>s."

## D. District Court Erred in Applying Younger Abstention and Dismissing Constitutional Claims

First, Younger abstention is inappropriate when state proceedings are conducted in bad faith or cause irreparable injury, like in Plaintiff's case. In *Pater v. City of Casper*, 646 F.3d 1290, 1293 (10th Cir. 2011), this Court held that "Younger abstention is not appropriate when the federal plaintiff contends that the state proceeding itself is unlawful [<u>there was complete absence of jurisdiction in state court concerning a Viet Nam national of Asia continent who is Plaintiff of this federal lawsuit</u>], as opposed to merely seeking adjudication of the same federal issue pending in state court." – Plaintiff's lawsuit sought monetary damages for rights violations and injunctive relief from torture, *egregious irreparable*

harms. cruel and unusual punishments; it did not seek modification of lower <u>state court orders, which were null from the outset for want of jurisdiction</u>. State proceedings were conducted in bad faith in this case and escalated to level of harassment and torture, causing immediate and long lasting irreparable injury, while violating international laws as documented extensively by Institute for Advancement of Justice & Human Rights in **Exhibit 6** which included Plaintiff's case as documented on page 10 by the Private Attorney General assigned by SCOTUS to investigate cases that violates human rights. *Younger v. Harris* states federal courts can intervene if state proceedings are undertaken in bad faith, without hope of valid conviction, **or** cause immediate and great irreparable injury (401 U.S. 37, 49, 53 (1971)).

The ROA demonstrates bad faith with specific examples: (1) DHS employee Renee Banks deliberately ignored legal notices and objections regarding unlawful seizure of ERISA-protected retirement funds (ROA, Vol. I, at 25); (2) DHS employee Emmalene Stringer perjured herself by filing a document that falsely stated Appellant failed to return a required form (ROA, Vol. I, at 22); (3) DHS employee Jason Hoenshell issued a liquidation request without proper notice to Appellant (ROA, Vol. I, at 23), to IRS, to all owners of the 401(k) retirement accounts–nonparties to these cases.

Under *Loper Bright*, courts must independently interpret agency jurisdiction without deference when fundamental rights are at stake. S*print Communications, Inc. v. Jacobs*, 571 U.S. 69, 81 (2013) limited Younger abstention to three "exceptional" categories, none of which apply here. Appellant's constitutional claims were improperly dismissed. Applying *Mathews v. Eldridge* demonstrates clear due process violations: (1) Appellant's interest in ERISA funds and parental rights is substantial; (2) procedures created high risk of erroneous

deprivation; and (3) less restrictive means were available. Fourth Amendment protections against unreasonable seizures, Fifth Amendment due process rights, and Fourteenth Amendment equal protection rights were all violated.

Second, Younger abstention is particularly inappropriate where, as here, administrative agencies have exceeded their statutory authority. Under *Loper Bright Enterprises v. Raimondo* (2024), courts must independently interpret the scope of agency jurisdiction without deference, especially when fundamental rights are at stake. Furthermore, the processing of non-mailable paper with artificial ens legis capitalized names constitutes a violation of 18 U.S.C. § 1341 (mail fraud) and potentially 18 U.S.C. § 1961-1968 (racketeering) when used to facilitate financial transactions through court orders. Younger abstention does not apply when state proceeding cannot provide an adequate forum for raising federal constitutional claims. As Supreme Court held in *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975), Younger abstention is inappropriate when "the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever effort might be made to apply it."

Third, Younger abstention is inappropriate when a federal Plaintiff seeks to challenge the constitutionality of state's statutory scheme itself, rather than merely seeking to enjoin an ongoing state proceeding. In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 81 (2013), Supreme Court emphasized that Younger abstention applies only to three "exceptional" categories of cases: (1) state criminal prosecutions, (2) civil enforcement proceedings that are "akin to criminal prosecutions," and (3) civil proceedings "involving certain orders

uniquely in furtherance of the state courts' ability to perform their judicial functions."

Appellant's claims do NOT fall within these narrow categories. ROA demonstrates

Appellant is challenging the constitutionality of Oklahoma's child support enforcement

scheme as applied, including unlawful seizure of ERISA-protected retirement funds

(especially against <u>non-parties), the absence of any verifiable or valid contracts, and

violation of due process and all human rights</u> .

**E. District Court Erred in Dismissing Claims for Alleged Failure to State a Claim**

Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556

U.S. 662 (2009), a complaint must contain "enough facts to state a claim to relief that is

plausible on its face." The ROA (Vol. I, at 9-37) contains specific allegations against each

defendant regarding their roles in unlawfully seizing ERISA-protected funds, falsifying

documents, and violating constitutional rights. All twelve (12) claims are listed on <u>page 1</u>

<u>and page 5</u> of Original complaint/Claim, which said "... CLAIM FOR EXEMPTION TO

STOP ALL GARNISHMENT & ALL 12 CLAIMS [listed] ON PAGE 1" (ROA). This

includes defendants' roles in unlawfully seizing ERISA-protected retirement funds

(belonging to nonparties to the Oklahoma DHS CSS case), falsifying documents, violating

due process, constitutional rights, human rights, international treaties, and YAHUAH's law.

Contrary to the District Court's erroneous conclusion, Appellant's Claims contained

sufficient factual allegations to state plausible claims against individual defendants. The

ROA includes specific allegations regarding each Defendant's role in unlawfully seizing

ERISA-protected retirement funds, violating due process rights, and depriving constitutional

protections, as detailed in section "D. District Court Erred in Applying Younger Abstention

and Dismissing Constitutional Claims."

The District Court failed to apply proper standards for pro se complaints. In Haines v. Kerner, 404 U.S. 519, 520-21 (1972), the Supreme Court held that pro se complaints must be held to "less stringent standards than formal pleadings drafted by lawyers"—a principle this Tenth Circuit recognized in Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

By dismissing Appellant's pro se claims for purportedly lacking specific factual allegations, the District Court ignored that the complaint explicitly attributed each cause of action to "all Defendants," properly alleging a conspiracy involving forged documents and unauthorized Powers of Attorney. The court also incorrectly characterized matters as "uncontested facts" despite Appellant's active disputes throughout the proceedings. This improper application of heightened pleading requirements to a pro se complaint contravenes established Supreme Court and Tenth Circuit precedent, constituting clear grounds for reversal.

Addressing Appellee Freeman's specific contentions, the record unequivocally demonstrates that Ms. Freeman was explicitly identified in the original Complaint as the "#4 defendant" and properly listed on the opening brief's cover page. Appellant's consistent use of the collective term "Defendants" throughout all pleadings necessarily encompasses all named defendants, including Ms. Freeman. Consequently, Ms. Freeman's assertion that she was not properly specified as a defendant constitutes a mischaracterization of the record that Appellant has continuously contested. The Supreme Court established in *Singleton v. Wulff*, 428 U.S. 106, 120 (1976), that "a federal appellate court is justified in resolving an issue not passed on below... where the proper resolution is beyond any doubt." Given the well-documented constitutional violations meticulously detailed throughout this appeal, this case clearly satisfies that standard, warranting this Court's intervention regardless of any

procedural irregularities alleged by Appellee Freeman.

Moreover, Ms. Freeman's status as court-appointed standby counsel functioning in a public defender capacity—notably without any executed power of attorney from Appellant—provides no immunity from liability when she acts in concert with other defendants to perpetrate constitutional violations. The Supreme Court definitively established in *Tower v. Glover*, 467 U.S. 914 (1984), that public defenders may be held liable under § 1983 when they conspire with state officials to violate an individual's constitutional rights. This precedent precisely corresponds to the circumstances presented in this case. The Record on Appeal contains substantial evidence demonstrating Ms. Freeman's active participation in the coordinated scheme to unlawfully seize ERISA-protected retirement funds, placing her conduct squarely within the liability framework established by *Tower* and its progeny, regardless of her official designation within the state legal system.

Documented discrepancies between recordings and transcripts prove Freeman's participation in rights violations. As court-appointed counsel, her actions constitute state action, nullifying her exemption claims. These alterations exemplify the exact conduct § 1983 was designed to remedy, regardless of her formal designation.

## F. District Court Erred in Dismissing Claims Based on Federal Criminal Statutes

District Court erred in dismissing Appellant's claims based on federal criminal statutes, concluding these statutes "do not provide for a private right of action and are thus not enforceable through a civil action." While generally true that federal criminal statutes do not create private rights of action, this principle is subject to important *EXCEPTIONS*: **(1)** violations of federal criminal statutes may serve as predicate acts for claims under RICO, which expressly provides for a private right of action. 18 U.S.C. § 1964(c). Supreme Court

recognizes "any person injured in his business or property by reason of a violation of section 1962" may bring a civil RICO claim. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) – RICO was indeed in one of the main claims, and again in Plaintiff's additional claims filed under supplemental jurisdiction. In this case, the entity LINH TRAN STEPHENS (*which belongs to Plaintiff–see proof in Opening Brief's Appendix 2*) continues to be injured defamatorially and financially with the inability to do business as previously and inability to travel which often is required for businesses, Continuing Medical Education (**CME**) classes, and medical conferences. Section 1961(1) defines "racketeering activity" to include numerous federal criminal offenses of which all were committed by Defendants, including but not limited to mail fraud, wire fraud, and extortion. Specifically, Defendants committed predicate acts including: mail fraud (18 U.S.C. § 1341) through fraudulent notices regarding ERISA funds; wire fraud (18 U.S.C. § 1343) through electronic communications to coordinate seizures; and financial institution fraud (18 U.S.C. § 1344) through the unauthorized liquidation of retirement accounts. These acts form a pattern of racketeering through an enterprise consisting of OKDHS, Charles Schwab, and court officials who coordinated to unlawfully seize protected funds. **(2)** violations of federal criminal statutes may serve as the basis for claims under 42 U.S.C. § 1983 when violations also constitute deprivations of constitutional rights as Supreme Court has recognized, § 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Wilder v. Virginia Hospital Association*, 496 U.S. 498, 508 (1990).

**G. Constitutional and Human Rights Claims Were Improperly Dismissed**

First, applying *Mathews v. Eldridge* three-part test demonstrates clear due process

violations: (1) Appellant's private interest in ERISA-protected retirement funds and parental rights is substantial; (2) the administrative procedures used created an unacceptably high risk of erroneous deprivation through lack of notice, absence of key witnesses, and denial of meaningful opportunity to be heard and counterclaims and affirmative defenses; and (3) while the government has legitimate interests in child support enforcement, these could have been served through less restrictive means that respected due process. Appellant claimed violations of <u>Fourth Amendment</u>'s prohibition against unreasonable searches and seizures: Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, **shall not** be violated." This protection extends to governmental seizures of property. See *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Appellant's Claim asserts Charles Schwab unlawfully seized ERISA-protected retirement funds without proper notice nor hearing; Funds were confiscated the day before a scheduled hearing, which <u>lacked all key witnesses: Charles Schwab, Mr. Adam Sylvester Stephens, Sr., and Mr. Stephens' lawyer, Mr. Gilbert Pilkington, Jr., who came on record to say "Hello" then proceeded to dismiss himself for the rest of the hearing without Plaintiff's approval and against Plaintiff's objections.</u> Jurisdictional challenges and numerous objections all were ignored. (ROA, Vol. I, at 23-24).

Second, Appellant claims <u>Fifth Amendment</u> (no person shall "be deprived of life, liberty, or property, without due process of law") due process was violated while asserting state officials seized 401(k) retirement funds without proper notice or an opportunity to be heard, as shown in the ROA (Vol. I, at 23). This seizure occurred through administrative processes that systematically denied due process and truth.

Third, Appellant claims violations of <u>Fourteenth</u> Amendment's equal protection

clause, which provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This protection requires that similarly situated individuals be treated alike. See *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Similarly situated individuals did not receive their retirement, including 401(k) ERISA funds, prior to retirement age of 65; these funds were unlawfully seized in state court without IRS involvement and despite continuous objections from all owners, who were 40 and below (25 years below 65).

Fourth, these violations rise to the level of human rights violations under international laws–refer to the *Introduction* section above. UNCAT, which the United States has ratified, prohibits not only torture, but also "cruel, inhuman or degrading treatment" (Article 16). The systematic denial of due process, seizure of property without notice, and denial of basic legal protections constitute violations of this treaty obligation. Under Article 2 of UNCAT, States have "an obligation to take effective legislative, administrative, judicial or other measures to prevent" such acts, and this prohibition has "an absolute, non-derogable character" allowing "no exceptional circumstances whatsoever." Federal courts must address human rights and constitutional violations, and international treaty non-compliance, specifically when state remedies are inadequate and exhausted, as shown by Oklahoma's Office of Civil Rights Enforcement's recusal (Exhibit 2) and the Plaintiff's numerous appeals on OSCN.net. This case mirrors *Patricia Miroth, et al. v. County of Trinity, et al.* (May 8, 2025), a federal civil rights lawsuit alleging fraud and failure to provide social services in state child custody proceedings. Here, no services were provided, nor were receipts given to Plaintiff or court's OSCN.net records despite repeated requests.

## III. REQUEST FOR EXERCISE OF ORIGINAL JURISDICTION

This case presents the rare combination of circumstances warranting this Court's exercise of original jurisdiction: (1) exhausted state remedies with explicit acknowledgment by state authorities that no adequate state forum exists; (2) documented bad faith by state actors; (3) clear constitutional violations affecting fundamental rights; (4) international treaty implications for a Vietnamese national; and (5) irreparable harm that can only be remedied through federal intervention. The intersection of Appellant's international status, treaty rights, and constitutional protections creates exceptional circumstances beyond the ordinary case. As held in *Axon Enterprise, Inc. v. FTC* and reinforced in *Loper Bright,* Article III courts must exercise their constitutional authority when administrative tribunals exceed their jurisdiction, particularly in cases involving fundamental rights.

## IV. CONCLUSION

District Court erred in repeatedly dismissing Appellant's claims based on sovereign immunity, Younger abstention, and failure to state a claim. Evidence shows Appellant exhausted state remedies, and state proceedings were inadequate and conducted in bad faith, violating constitutional and human rights. Sovereign immunity does not shield state actors from fundamental rights, constitutional rights, and human rights violations. Younger abstention is inapplicable due to bad faith state proceedings. Appellant's Complaint/Claim factually stated plausible claims with its causes of actions against all defendants upon which relief can be granted. District Court's judgment must be reversed, and due to its repeatedly demonstrated bias, peer pressure, and injustice in lower District Courts, <u>all cases of federal and state courts must be removed to this higher court for further proceedings in Original Jurisdiction</u>.                    Respectfully submitted,

*Nemo me impune lacessit pursuant to Psalm 105:15 + Isaiah 54:17*
PRIVATE; THIS IS NOT A PUBLIC COMMUNICATION

Notice to Agent is Notice to Principal, Notice to Principal is Notice to Agent, Notice applies to all successors and assigns; Affidavit is a Form of Evidence; Unrebutted Affidavit Stands as Truth in Commerce;
**Silence is Tacit Acquiescence/Agreement/Dishonor**;
*This communication is in no way forming a contract nor requesting any contracting; it is simply a notice regarding the matters at hand. This communication is not intended to nor does it create nor confirm any professional-client relationship or any type of relationship between us;*

Private sector autograph;
**WITHOUT RECOURSE**

*without prejudice*
*linh-tran: stephens/Agent*

By one–and-only beneficiary:
All Rights Reserved None Waived, **Without Prejudice** *UCC 1-308 & 1-103*,
**Non-Assumpsit**, one-and-only Grantor & Authorized Agent & Beneficiary for LINH TRAN STEPHENS©® ens legis and all its derivatives thereof including Cestui Que Trust a.k.a. "Fide Commissary Trust",
sui juris, Ambassador of Messiah Yahusha, Heir of the Creator,
my heir/offspring is G.L.Stephens,
A natural living woman breathing with a living soul and the Holy Spirit,
natural people with hands legs, Alive-on-the-land, Plenary mind body soul/spirit, unlimited, non-incorporated, non-sole-proprietor,
**stateless** "**freeman of the Union**" per Honorable Mr. Justice MILLER on April 14th, 1983, in the Slaughter-House cases, 83 US 36 (a SCOTUS case specifically mentioned in 8 FAM 102.3),
full capacity and competency with postgraduate level of education,
living on the land of the republic, with God-given rights pursuant to Bills of Rights, NOT a "pro se"/"person"/"pauper"/"indigent"/"slave"/"public servant"/"government employee"/"ward of State"/"U.S. citizen"/"minor" in your dictionary;
i reject your 12 legal presumptions, other presumptions/assumptions/double-speaking/implied or undisclosed contracts;
Article IV Section 2 Citizens of each State shall be entitled to all Privileges & Immunities of Citizens in several States;
**Rural Free Delivery, Non-Domestic 00000,**
℅ 1964 Ashley River Rd Ste B Unit 80112,
Charleston, South Carolina [zip exempt but near 29407] without U.S.Washington D.C.
Email: LinhStephens7@gmail.com*: Tel:* 843-608-0294

## <u>Notary as JURAT CERTIFICATE</u>

STATE OF MINNESOTA        )
                          ) *ss*
COUNTY OF SHERBURNE       )

---

On this <u>25th</u> day of <u>September</u>, 20<u>25</u> before me, Melissa K. Vagle, a Notary Public, personally appeared a living woman <u>Linh Tran Stephens ( the Authorized Representative and Beneficiary for Legal Fiction LINH TRAN STEPHENS©® )</u>, who electronically (remotely) proved to me on the basis satisfactory evidence to be the woman whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her autograph(s) on the instrument the woman executed, the instrument.

i certify under PENALTY OF PERJURY under the lawful laws of Minnesota State and that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

*Melissa K. Vagle*

Signature of Notary/Jurat

MELISSA K VAGLE
Notary Public
State of Minnesota
My Commission Expires
January 31, 2028

Notary Public's Commission Expires: 01/31/2028

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(g)(1), I certify that this brief complies with the type-volume limitation of Rule 32(a)(7)(B). This document contains 15 pages (the maximum number of pages allowed for Appellant's Reply Brief), excluding the parts of the brief exempted by Rule 32(f).

Respectfully submitted,

*without prejudice*
*linh-tran: stephens/Agent*

Autograph: linh-tran: stephens (lower case), sui juris

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certify that on <u>September 26<u>th</u></u>, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system [or it was mailed to below address]; Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system:

Clerk of U.S. Court of Appeals for the Tenth Circuit
1823 Stout Street,
Denver, Colorado 80257

WITHOUT RECOURSE.

*without prejudice*
*linh-tran: stephens/Agent*