# APPENDIX 1



**UNCAT ARTICLE-BY-ARTICLE**

## PART I: SUBSTANTIVE ARTICLES

### Article 1 – Definition of torture

- The definition of torture in Article 1 of UNCAT has four elements:

  - Severe pain or suffering (physical or mental);

  - Intentional infliction;

  - For a particular purpose (non-exhaustive list) – such as obtaining information, a confession, punishment, intimidation or discrimination of any kind;

  - Infliction by, at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

- Pain or suffering from lawful sanctions is not included in the definition.

- This definition is without prejudice to any international instrument or national legislation of wider application.

### Article 2 – Prevention of torture and non-derogability

- States have an obligation to take effective legislative, administrative, judicial or other measures to prevent acts of torture in their territory (Article 2.1)

- The prohibition of torture has an absolute, non-derogable character (Article 2.2):

  - "No exceptional circumstances whatsoever" are allowed to justify its use (e.g. state or threat of war, political instability, or any other public emergency).

  - No order from superior officers or a public authority can be invoked to justify torture (Article 2.3).

### Article 3 – Non-*refoulement*

- It is prohibited to expel, return (*refouler*) or extradite a person to another State when there are "substantial grounds" for believing that the person would be in danger of being subjected to torture.

  - The existence of a consistent pattern of gross, flagrant or mass violations of human rights is taken into account to determine whether such grounds exist.

### Article 4 – Criminalisation of torture

- States parties are required to make torture a separate and distinct offence (Article 4.1)

- Modes of liability to be criminalised (Arts. 1.1 and 4.1):

  - Direct commission of torture

  - Attempt to commit torture

  - Instigation to commit torture

  - Complicity in torture (aiding and abetting)

  - Consent or acquiescence

  - Other forms of participation (e.g. incitement, conspiracy, accessory after the fact)

- Provide appropriate penalties commensurate with the grave nature of the crime.

## Article 5 – Jurisdiction over torture

- State parties to exercise jurisdiction over the crime of torture:
  - Territoriality and flag principle – when offences committed in any part of their territory or on board a ship or aircraft registered in that State.
  - Active nationality principle – torture committed by any offender who is a State national.
  - The victim is a national of such State if considered appropriate.
  - Universal jurisdiction – States shall take measures to establish their jurisdiction when the alleged offender is present in their territory and the State does not make use of extradition proceedings under Article 8 (see below) (Article 5.2).

## Article 6 – Custody arrangements and inquiry procedures

- When an alleged perpetrator is in the State's territory, he/she shall be brought into custody, lasting only as long as provided by law and until criminal or extradition proceedings are instituted (Article 6.1).
- A preliminary inquiry into the facts shall be undertaken (Article 6.2).
- Consular assistance to be provided to foreign nationals (Article 6.3).
- Any other State exercising jurisdiction over the crime of torture shall be notified (Article 6.4).

## Articles 7, 8 and 9 – Extradition, prosecution and mutual legal assistance

- States are required to extradite a suspected torturer or, if not possible, to prosecute him/her domestically (Article 7.1).
- The crime of torture is to be an extraditable offence in any existing extradition treaty or one to be included between States Parties (Article 8.1).
- If there is no extradition treaty, UNCAT can be used as a legal basis for such extradition (Article 8.2).
- States are to include torture and/or related crimes as extraditable offences in domestic law (Article 8(3).
- States parties shall cooperate with each other with regard to criminal proceedings brought for the crime of torture, including by supplying all evidence at their disposal. Existing treaties on mutual legal assistance shall be used to guide States in carrying out their obligations (Article 9).

## Article 10 – Education and training

- States are required to provide education and training on the prohibition against torture to all law enforcement personnel (civil or military), medical personnel, public officials and other persons involved in the custody, interrogation or treatment of arrested or detained persons, or persons deprived of their liberty (Article 10.1).
- The prohibition to be included in the rules or instructions regarding the duties or functions of such persons (Article 10.2).

## Article 11 – Review of detention procedures

- States are required to keep under systematic review interrogation rules, instructions, methods, practices, and custody procedures, in order to prevent any cases of torture.

## Articles 12 – Prompt and impartial investigation

- States are required to launch prompt and impartial investigations when there is "reasonable ground" to believe that an act of torture has been committed in a territory under their jurisdiction.

### Article 13 – Complaint procedures

- Victims of torture have the right to complain, to have their case promptly and impartially examined, and to be protected against ill-treatment or intimidation as a consequence of the complaint or evidence given (Article 13).

### Article 14 – Victims' right to redress and rehabilitation

- States are required to ensure that victims have an enforceable right to fair and adequate compensation, including the means for as full rehabilitation as possible. In case of death, the victims' dependents shall also be entitled to compensation (Article 14).

### Article 15 – Non-admission of torture evidence

- States parties are required to ensure that statements obtained through torture are excluded (not admitted) as evidence in any proceedings, except as evidence of torture in proceedings against the person accused thereof.

### Article 16 – Prevention of cruel, inhuman or degrading treatment or punishment

- States parties are required to prevent acts of cruel, inhuman or degrading treatment or punishment (CIDPT) that do not amount to torture as defined in Article 1.
- Articles 10, 11, 12 and 13 are especially applicable to CIDTP.


## PART II: FUNCTIONS OF THE COMMITTEE AGAINST TORTURE

### Article 17-18 – The Committee against Torture

- The Committee against Torture (CAT) consists of 10 experts of high moral standing and recognised competence in the field of human rights, who serve in their personal capacity (Article 17.1).
- They are nominated and elected by States parties, with consideration given to equitable geographical distribution and legal experience.

### Article 19 – Reporting to CAT

- States are required to submit reports to the Committee against Torture (CAT) on the measures taken to implement the Convention:
  - 1 year after ratification/accession (initial report).
  - Every 4 years thereafter (periodic reports).

### Articles 20 and 28 – Confidential inquiries

- If the CAT receives information based on "well-founded indications" that torture is being systematically practiced in the State's territory, it can decide to carry out a confidential inquiry and seeks the cooperation of the State party. An in-country visit may be included only if agreed with the State.
- States can "opt out" (file a reservation) of the confidential inquiry procedure at the time of signature or ratification/accession and declare that they do not accept the competence of the CAT in relation to such inquiries (Article 28) (States may withdraw this reservation at any time under Article 28.2).

### Article 21 – Inter-State complaints

- States can "opt in" by declaring that they recognise the competence of the Committee to receive and consider communications, through which a State Party claims that another State Party is not fulfilling its obligations under UNCAT (It has never been used to date).

**Article 22 – Individual communications**

- State parties can "opt in" by declaring that they recognise the competence of the Committee to receive and consider communications from and on behalf of individuals subject to their jurisdiction who claim to be victims of a violation of the provisions of UNCAT.

**Article 23 – Immunities and privileges**

- CAT members are entitled to the facilities, immunities and privileges of experts on mission for the UN under the relevant sections of the Convention on the Privileges and Immunities of the UN.

**Article 24 – CAT's Annual report**

- The Committee submits an annual report of its activities to the States Parties and to the UN General Assembly.

## PART III: OBSERVANCE, RATIFICATION AND INTERPRETATION

**Articles 25, 26, 27 and 32 – Signature, ratification, accession and entry into force**

- UNCAT is open for signature and ratification or accession by any State by deposit of the relevant instrument to the UNSG (Articles 25-26).

- The Convention enters into force on the 30th day after the date of the deposit of the instrument of ratification or accession (Article 27).

- The UNSG shall inform all UN Member States and States that have signed or acceded to UNCAT of the status of signatures, ratifications, accessions, denunciations and the date of entry into force under Articles 27 and 29 (Article 32).

**Article 29 – Amendments**

- Amendments to the Convention may be proposed by State parties to the UN Secretary-General, requiring one-third of all State parties to favour a conference to consider the amendments, with the threshold of a majority of States parties attending the conference to accept the amendment.

**Article 30 – Dispute settlement**

- Disputes between State parties that cannot be settled by negotiation shall, at the request of one State, be submitted for arbitration. If 6 months lapse without resolution, either State may refer the matter to the International Court of Justice in conformity with the Statute of the Court.

**Article 31 – Denunciation**

- UNCAT can be denounced by written notification to the UNSG. It becomes effective 1 year after the date of receipt of the notification but it does not release the State Party from its obligations with regard to acts and omissions that occurred prior to such date (Article 31.1).

**Article 33 – Text authenticity**

- The Arabic, Chinese, English, French, Russian and Spanish texts of UNCAT are equally authentic and are deposited with the UNSG (Article 33.1).

**The full text of the Convention can be found here.**

# APPENDIX 2



OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA

September 24, 2025

Linh Tran Stephens
1964 Ashley River Rd Ste B
Charleston, South Carolina

**Re:    Linh Stephens v. Tulsa County District and Judges**
**OCRE Complaint No. CR-23-175-PA**
**OCRE Complaint No. CR-23-176-PA**
**OCRE Complaint No. CR-23-177-PA**
**OCRE Complaint No. CR-23-193-PA**

Dear Dr. Stephens:

In addition to housing the Office of Civil Rights Enforcement, the Office of the Attorney General also represents, defends, and counsels state agencies. Due to the allegations and the parties involved in your complaints, a determination has been made that the Office of Civil Rights Enforcement should recuse itself from the matters you have presented. This recusal enables you to seek other avenues of recourse while eliminating any risk of potential or actual conflicts that could impact your claims.

Enclosed please find a Dismissal issued by OCRE which now concludes this matter with our office.

Sincerely,

Eric Di Giacomo
Eric Di Giacomo
Acting Chief
Office of Civil Rights Enforcement

EDG/sbk
Encl.



## OKLAHOMA ATTORNEY GENERAL
## OFFICE OF CIVIL RIGHTS ENFORCEMENT

---

## ORDER OF DISMISSAL

| To: | | From: | |
|---|---|---|---|
| **Linh Tran Stephens**<br>**1964 Ashley River Rd Ste B**<br>**Charleston, South Carolina** | | | **Oklahoma Attorney General**<br>**Office of Civil Rights Enforcement**<br>**15 West 6th Street, Suite 1000**<br>**Tulsa, OK 74119** |

| Complaint/Charge No. | OCRE Representative | Telephone No. |
|---|---|---|
| **OCRE Complaint No. CR-23-175-PA**<br>**OCRE Complaint No. CR-23-176-PA**<br>**OCRE Complaint No. CR-23-177-PA**<br>**OCRE Complaint No. CR-23-193-PA** | **Eric Di Giacomo**<br>**Acting Chief**<br>**Office of Civil Rights Enforcement** | **(405) 521-3921** |

**THE OFFICE OF CIVIL RIGHTS ENFORCEMENT ("OCRE") IS CLOSING ITS FILE AND DISMISSING THE ABOVE-REFERENCED COMPLAINT FOR THE FOLLOWING REASON:**

☐ The Complaint was not filed with the OCRE within 180 days of the last alleged discriminatory practice.

☐ The facts alleged in the Complaint fail to set forth a violation of any of the statutes enforced by the OCRE.

☐ The OCRE has received a request from the Complainant for a Dismissal and Notice of Right to Sue.

☐ The OCRE is unable to conclude that the information obtained in its investigation establishes reasonable cause that a discriminatory practice has been committed in violation of the Oklahoma Anti-Discrimination Act. This does not certify that the Respondent has not committed a discriminatory practice or is in compliance with the Act.

☐ The OCRE adopts the findings and conclusions of the Equal Employment Opportunity Commission.

☒ Other: Other:   (Recusal – State Agency.) _____

---

## NOTICE OF RECONSIDERATION

Pursuant to the **Oklahoma Anti-Discrimination Act, Okla. Stat. Ann. tit. 25, § 1502(c)(d),** the Complainant, within thirty (30) days after receiving a copy of an order dismissing the complaint, may file with the Attorney General an application for reconsideration. This does not apply to persons claiming to be aggrieved by a discriminatory housing practice.

On behalf of the OCRE:

*Eric Di Giacomo*                                                    September 24, 2025
_____                    _____
**Eric Di Giacomo**                                                        *(Date Mailed)*
**Acting Chief**
**Office of Civil Rights Enforcement**

Tulsa County District and Judges

# APPENDIX 3

**SUPREME COURT OF THE UNITED STATES**
**OFFICE OF THE CLERK**
**WASHINGTON, DC  20543-0001**

August 15, 2025

Linh Tran Stephens
C/O 1964 Ashley River Rd Ste B
Unit 80112
Charleston, SC 29407

RE: Stephens v. Stephens
SC OK No. 122,022

Dear Ms. Stephens:

The above-entitled petition for writ of certiorari was postmarked August 2, 2025 and received August 11, 2025. The papers are returned for the following reason(s):

As mentioned in prior correspondence, to the extent you wish this Court to review the decisions by the Supreme Court of Oklahoma in case numbers 120,849 and 122,445, the petitions are out-of-time. Please see the attached prior correspondence dated on May 13, 2025.

If you are intending for this Court to review a decision by the Supreme Court of Oklahoma in case number 122,022, your petition should reflect information as to only that case, in addition to the below corrections:

The cover of the petition should bear only the name of the court from which the action is brought (e. g., "On Petition for Writ of Certiorari to the Oklahoma Court of Civil Appeals"). Rule 34.1(d).

The questions presented for review shall be set out on the first page following the cover of the petition, and no other information may appear on that page. The questions should be short, expressed concisely in relation to the circumstances of the case, and without unnecessary detail. Rule 14.1(a).

Please be advised that all contentions in support of a petition for a writ of certiorari shall be set out in the body of the petition (e. g., index to appendices).

The jurisdiction section should correctly list the date the judgment or order sought to be reviewed was entered, and the date of any order respecting rehearing. Rule 14.1(e).

It appears that your appendix contains documents that may be confidential that are not required to be attached by Rule 14.1(i). You may wish to remove appendices that are not mandatory to avoid further delay. If you wish to include them in a public appendix, please ensure all confidential information is redacted. Any documents containing the names of minor children must be redacted so that only the initials of minor children are listed (e. g., "John Doe" abbreviated as "J. D.").

There appear to be photos of minors included in your appendix. Please exclude these photos upon resubmission.

The appendix to the petition does not contain the following documents required by Rule 14.1(i):

The lower court opinion(s) must be appended from the Oklahoma Court of Civil Appeals and the Oklahoma Supreme Court for case number 122,022. It is impossible to determine the timeliness of the petition and what is sought to be reviewed without the lower court opinions.

Please correct and resubmit as soon as possible. Unless the petition is submitted to this Office in corrected form within 60 days of the date of this letter, the petition will not be filed. Rule 14.5.

A copy of the corrected petition must be served on opposing counsel.

Sincerely,
Scott S. Harris, Clerk
By:
Pipa Fisher
(202) 479-3019

# APPENDIX 4



## House of Representatives
### STATE OF OKLAHOMA

September 25, 2024

Oklahoma State Bureau of Investigation
Aungela Spurlock, Director
6600 North Harvey Place
Oklahoma City, Oklahoma 73116

Director Spurlock:

On September 9, 2024, the Oklahoma House of Representatives Criminal Justice and Corrections Committee held an emergency hearing to determine whether the Department of Human Services (DHS), Oklahoma Juvenile Affairs (OJA), and the Oklahoma Commission on Children and Youth collectively received information that children under their care were being physically and sexually abused, yet these agencies failed to take appropriate action to stop the abuse. One witness, Appleseed, a respected 501(c)(3) community action group known for its thorough investigations, provided a comprehensive report confirming that the agencies were aware of abuse at the Tulsa Detention Center. Appleseed submitted this alarming report to all relevant government officials, but it was completely ignored. Following this, the Criminal Justice and Corrections Committee called for immediate and appropriate actions. The committee also heard from three other witnesses who reported and documented firsthand knowledge of criminal conduct within child welfare and the DHS administration.

As Chairman of the Criminal Justice and Corrections Committee, I have the authority granted under 74 O.S. § 150.5(d) to initiate an OSBI investigation by a majority vote of our committee. Article V, Section V-60 of the Oklahoma Constitution requires the Legislature to provide an efficient system of checks and balances among the officers of the Executive Department and all commissioners, superintendents, and boards of control of State institutions, as well as any other officers entrusted with the collection, receipt, custody, or disbursement of the state's revenue or funds. As members of the Criminal Justice and Corrections Committee, we do not take this duty lightly.

I am providing a formal directive signed by the majority of the Criminal Justice and Corrections Committee, instructing the Oklahoma State Bureau of Investigation to conduct an investigation into possible criminal actions by the Department of Human Services (DHS), Oklahoma Juvenile Affairs (OJA), and the Oklahoma Commission on Children and Youth. The document containing the committee members' signatures details the areas of concern that we believe warrant examination.

Since the September 9 committee hearing, news stations and my office have been inundated with reports of wrongdoing. I would like to include cases that have sufficient substantiation. Please contact Chairman Justin JJ Humphrey if you have any questions.

To the Distinguished Director of the Oklahoma State Bureau of Investigation,

Ms. Aungela Spurlock,

As Chairman of the Criminal Justice and Corrections Committee, I bring forth the initiation of an OSBI investigation into each of two critical and urgent matters. This authority is granted per 74 O.S. § 150.5(d) as our committee has subpoena powers by resolution, but we bring this initiation of an OSBI investigation by authorization of a vote by the majority of our committee. Article V Section V- 60 of the Oklahoma Constitution requires the Legislature to provide an efficient system of checks and balances between the officers of the Executive Department, and all commissioners and superintendents, and boards of control of State institutions, and all other officers entrusted with the collection, receipt, custody, or disbursement of the revenue or moneys of the state whatsoever. As members of the Criminal Justice and Corrections Committee, we do not take this duty lightly.

## INVESTIGATION INITIATION NO.1 DETENTION and CARE FACILITIES
  a. Investigate abuse and neglect of all children and disabled adults in facilities.
  b. Investigate knowledge and reporting of abuse and complaints through all levels of oversight. Including but, not limited to: Managers, Administrators, OJA, OCCY, PARB, OKDHS, Judges(if acting in executive duties)
  c. Investigate violations of state and federal laws of required humane treatment of children and adults incarcerated or in care.
  d. Investigate electronic devices used to document, record or share abuse.
  e. Further investigation to all other appropriate caretakers or individuals identified in participation in abusive behaviors, exploitation, or extortion.
  f. Further investigation to all other appropriate facilities as evidence suggests.

Contact/Reporter Tulsa Juvenile Detention Facility: Sa-Tae Seth McIntosh seth@okappleseed.org
Contact/Reporter OKCYC Juvenile Detention Facility: Mandy Fisher-Reed mandyreed77@yahoo.com
*Contact/Reporter Robert M Greer Center in Enid: Representative Ellen Hefner*
*elleyn.hefner@okhouse.gov*

## INVESTIGATION INITIATION NO.2 OKDHS CHILDWELFARE AND CHILD PROTECTIVE SERVICES ON BEHALF OF 6 FAMILIES AND THEN FURTHER AS EVIDENCE WOULD SUGGEST
  a. Investigate allegations of abuse appropriately on behalf of children.
  b. Investigate negligent or fraudulent reporting by child welfare or CPS staff or case workers.
  c. Investigate knowledge of or reporting of mishandling of referrals through all levels of oversight including but no limited to: Case workers, Supervisors, District Directors, Deputy state directors, State Director, OCCY, PARB, and law enforcement.
  d. Appropriate engagement of professionals by the OKDHS through state law requiring Multidisciplinary child abuse teams as required by 10a O.S. § 1-9-102.
  e. Investigate reports and documents for integrity, negligence, fraud, retaliation, and deletion of records.-
  f. Investigate testimonies in court proceedings for fraud or perjury
  g. Investigate if/when law enforcement was notified and if correct reporting was provided to law enforcement agency
  h. Investigate judicial decisions and due process activity in accordance with state and federal law.

i.  Investigate possible collusion or inappropriate engagement between attorneys and or judges.
j.  Investigate any misrepresentation of a minor child, or disabled adults', testimony by a state employee, attorney, counselor, doctor, judge, etc.
k.  Investigate all child interviews for appropriateness of order, process, and reporting (notify and request intervention of FBI in regards to any appearance of illegal search and seizure actions that would constitute a violation of Federal law.
l.  Investigate all seizure of assets to determine appropriateness of order, process, and reporting.
m.  Investigate all violations of Oklahoma Constitutionally protected rights of all parties. Notify and request intervention of FBI in regards to any appearance of violations of Federally protected constitutional rights. Including, but not limited to, life, liberty and the pursuit of happiness, loss of familial contact, loss of fair opportunity in court, etc.
n.  Investigate electronic devices used to record, document or upload case information.
o.  Investigate contact between parents and OKDHS for determination of collusion, exploitation or extortion.
p.  Further investigations to other children or families as evidence suggests.

Contact/Advocate for minor child G.L.S., dob 7-24-13: Dr. Linh Stephens linhstephens7@gmail.com
Contact/Advocate for minor child A.K.W., dob 11-4-16, A.K.W., dob 11-4-16 Bri'Anne Wiland brinwal@icloud.com
Contact/Advocate for minor child M.N.R., dob 7-4-12: Shawn Reed maddiesdad2024@gmail.com
Contact/Advocate for minor child C.B.W.L., dob 7-12-12: Lisa Woolley whwoolley@gmail.com
Contact/Advocate for minor child D.E.D., dob 12-24-13: Darrell Dougherty dough890@gmail.com
Contact/Advocate for minor children A.R.V., dob 9-22-10; P.F.V., dob 9-25-15; H.S.V., dob 5-2-17: Rosario Chico chico.media.tv@gmail.com

We appreciate your expediency in these matters as these children and at-risk adults could be in pending danger or enduring ongoing permanent damage due to failures that are not of their own doing. We also respect your ability to tenderly deal with minor children or adults who will need gentle care.

Chairman Justin Humphrey _____ Date 09-18-2024

Representative David Hardin _____ Date 9-18-2024

Representative Kevin West _____ Date 9/18/24

Representative Danny Williams _____ Date 09/18/24

We, the undersigned lawmakers, wish to express our strong support for the Criminal Justice and Corrections Committee's investigation of the Department of Human Services Oklahoma Commission on Children and Youth.

Sincerely,

Chair, Criminal Justice and Corrections Committee



## House of Representatives
### STATE OF OKLAHOMA

August 28, 2025

*Via Email*

Attorney General Gentner Drummond
Office of the Attorney General
313 NE 21st Street
Oklahoma City, Oklahoma 73105

Attorney General Gentner Drummond:

Recently, a federal appeals court ruled in favor of a family suing the Wagoner County sheriff's office after a man's death. Approximately July 1, 2019, Jeffery Krueger died during an altercation with Wagoner County deputies. Officers' statements indicated erratic driving as the probable cause for the stop. Reports show an altercation occurred between Krueger and deputies with the claim that Mr. Krueger was tased numerous times. It is alleged the altercation resulted in the death of Krueger.

This recent ruling from a federal court demonstrates that the Wagoner County petition for a grand jury contained sufficient evidence. It also reveals the improper influence of elected officials to stop the grand jury based on this evidence and other similar cases.

In another court-related incident, Special Judge Emily Mueller was found guilty of judicial misconduct and received a public reprimand by the Oklahoma Supreme Court. Justices wrote that Mueller's behavior erodes the public's confidence in the independence, integrity and impartiality of the judiciary. Her actions were described as biased, rude, unprofessional, undignified and discourteous and disrespectful in the treatment of certain attorneys and others.

Based on the revelations revealed in these current reviews of our Oklahoma judicial system, I feel that you no longer can avoid calling a multi-county grand jury. I encourage you to act swiftly in convening a multi-county grand jury to look into these and all other matters.

Sincerely,

Representative Justin JJ Humphrey
House District 19



LINCOLN COUNTY
811 MANVEL AVE., SUITE 1
CHANDLER, OK 74834
(405) 258-1674

POTTAWATOMIE COUNTY
400 N. BROADWAY AVE.
SHAWNEE, OKLAHOMA 74801
(405) 275-6800

**ADAM R. PANTER**
DISTRICT ATTORNEY
DISTRICT 23

**ADAM KALLSNICK**
FIRST ASSISTANT DISTRICT ATTORNEY

March 14, 2025

## FOR IMMEDIATE RELEASE:

### RE: Investigation Into Oklahoma Department of Human Services

One of my highest priorities as District Attorney is to ensure the protection of our children's health, safety, and welfare. When our children become victims of heinous crimes, many times at the hands of those who were supposed to love and protect them, it becomes my job to prosecute those offenders and seek justice on behalf of those victims. I believe that child victims are especially vulnerable and all instances of suspected abuse against children need to be treated with the utmost importance. To do this effectively I must rely on my law enforcement partners and other agencies to properly and diligently do their jobs. Recently, I have become aware that the Oklahoma Department of Human Services (OKDHS) has systematically and repeatedly failed to follow State laws designed to protect children suspected of being sexually or physically abused or neglected. That failure to follow the law and policies put in place to protect children has led to subsequent and continuing sexual and physical abuse of children which would otherwise have been prevented. Despite multiple efforts made to obtain compliance, OKDHS has failed to correct their behavior, and I cannot stand to see another child unnecessarily victimized.

Under Oklahoma law, OKDHS must promptly respond to and investigate any report of child abuse or neglect pursuant to Title 10A Oklahoma Statutes § 1-2-105(A). When initiating an investigation, "[t]he primary purpose of the investigation or assessment **shall** be the protection of the child." (emphasis added) Title 10A O.S. § 1-2-105(B)(5) goes on to require OKDHS to investigate reports of child sexual abuse or serious physical abuse using a multidisciplinary team approach provided in Title 10A O.S. § 1-9-102 along with notifying and exchanging investigation information with law enforcement.

Title 10A O.S. § 1-9-102 requires each District Attorney to develop a multidisciplinary child abuse team (MDT) in their district. An MDT is comprised of the District Attorney, law enforcement agents with experience in child abuse investigations, medical personnel with child abuse injury experience, mental health professionals, OKDHS child protective services, and Child Advocacy Center personnel. This team is required to intervene in ALL reports involving child sexual abuse or child physical abuse or neglect in an effort to ensure coordination and cooperation between agencies involved and to minimize further trauma on an abused child. This law also requires a joint investigation between law enforcement and OKDHS child welfare staff when these

reports are made. Such investigations must follow MDT protocols when interviewing those child victims. MDT protocols dictate that a child suspected of being abused must be interviewed by a trained child forensic interviewer following approved forensic interview protocols, preferably recorded at a Child Advocacy Center. This ensures that children are interviewed by trained professionals for potential law enforcement or child welfare investigations, reduce the number of times a child will have to relive their trauma, and ensure that all agencies that should be aware of the alleged abuse are placed on notice, amongst other reasons.

What has been brought to my attention is that in many cases, OKDHS is receiving reports of suspected sexual or physical abuse of children and going out on their own and conducting forensic interviews of those children in the field. Based on these field interviews, which OKDHS is not properly trained to do, OKDHS determines for themselves whether the allegations are credible, and based on this opinion, will close the investigation without ever following the statutory procedures by notifying law enforcement and the child abuse experts of the MDT. I have now been made aware that multiple cases where this has occurred have resulted in children being placed back in the home of their abusers, where they have been subjected to further sexual or physical abuse. There have even been cases where OKDHS received multiple reports of abuse over a period of months, never notifying law enforcement, leaving the children in the home to suffer repeated abuse. Some of these cases were only discovered when vigilant staff at our local Child Advocacy Center notified law enforcement when those same children were later brought in for interviews and medical care due to subsequent abuse.

After being made aware of this, my office and our local Child Advocacy Center began comparing numbers of reports of suspected abuse versus the numbers of children receiving services at the Center. Fortunately, the Child Advocacy Center of Central Oklahoma (CACCO), which is the Child Advocacy Center based in Shawnee and primarily serves District 23, Pottawatomie and Lincoln counties, is very attentive and keeps thorough records. What was extremely concerning were the comparisons between the 2024 CACCO numbers with OKDHS numbers. One example is that in 2024, in Pottawatomie County and Lincoln County combined, OKDHS received 511 reports of physical abuse on children. The number of children who received services from the CACCO in 2024 for suspected physical abuse was 64. That means less than 8% of the reported child physical abuse allegations to OKDHS in that time led to those children receiving services at the CACCO as required by law. In 2024, the number of reports to OKDHS of alleged sexual abuse, physical abuse, or neglect in the district totaled 2,532. During that same period, the number of children receiving services at the CACCO for those reports was 389. That leads to a reasonable conclusion that potentially 2,143 reports of abuse or neglect were never brought to the attention of the CACCO or law enforcement, leaving children allegedly abused in unknown circumstances. This is incredibly alarming, as it indicates a likelihood that OKDHS has failed to follow the law for these types of cases at a much higher rate than previously thought.

After repeated attempts made by law enforcement and child advocates to correct this, OKDHS continues with this behavior. Recent meetings with OKDHS to urge their

compliance with the law have led to some constructive conversations which will hopefully lead to meaningful change. But the willingness to fix these problems does not negate the need to hold OKDHS accountable for their past failures. I have no reason to believe that my district is the only one facing this problem. This failure by OKDHS is likely happening across the state and is a direct reflection on the leadership of OKDHS from the top down. Because it is likely a statewide problem, within the next week I will formally request Attorney General Drummond utilize the Multicounty Grand Jury to investigate this issue to determine if criminal charges are warranted and what steps should be taken to ensure no more children are harmed. Should Attorney General Drummond find this issue unique to Pottawatomie and Lincoln Counties, I will seek to empanel local grand juries within my district to begin investigating or have my own District Attorney Task Force initiate a criminal investigation.

My anger towards those who fail to protect children is only eclipsed by my anger towards those who harm them, and I plan to deal with each accordingly. Therefore, I will not let this issue rest or be ignored until justice is obtained for every one of the children who suffered preventable rapes, sexual assaults, physical abuse, or extreme neglect due to OKDHS failures. As for those who perpetrated the abuse in the first place, they will be prosecuted as harshly and as aggressively as the law allows.

Adam R. Panter
District Attorney
District 23



## House of Representatives
### STATE OF OKLAHOMA

April 1, 2025

Attorney General Gentner Drummond
Office of the Attorney General
313 NE 21st Street
Oklahoma City, Oklahoma 73105

Attorney General Gentner Drummond:

District 23 District Attorney Adam Panter has called on you to establish Multi County Grand Jury.

In his request DA Panter stated,  **"My anger towards those who fail to protect children is only eclipsed by my anger towards those who harm them, and I plan to deal with each accordingly. Therefore, I will not let this issue rest or be ignored until justice is obtained for every one of the children who suffered preventable rapes, sexual assaults, physical abuse, or extreme neglect due to DHS's failures. As for those who perpetrated the abuse in the first place, they will be prosecuted as harshly and as aggressively as the law allows."** I don't believe I can say it any better.

I have personally exposed numerous violations and alleged illegal acts of the Oklahoma Department of Human Services (OKDHS), demonstrating the department's gross negligence and failure to protect children from sexual abuse, physical abuse, and neglect. I believe a substantial portion of DHS employees and administration have intentionally ignored or participated in blatant abuse and abhorrent criminal acts. Despite multiple efforts to impose compliance, DHS has refused or failed to correct their dishonest and unlawful conduct.  The director of the Department of Human Services and other agencies directors are complicit in addressing their agencies harmful behavior.  Government officials responsible for overseeing these agencies have shown little to no interest in investigating the innumerable reported offenses. Attorney General Drummond to delay or prolong an investigation would place numerous children and families at risk. I personally cannot stand to see another child unnecessarily victimized.

DHS, Multidisciplinary Child Abuse Teams (MTD), and our Family Court System have abandoned basic legal principles and forsaken their responsibilities to the public. I have an email in which DHS instructs employees not to speak to legislators. I believe it is unlawful for DHS to threaten employees and prevent them from speaking to legislators. But more importantly, I believe their actions reveal an intent to obscure the truth. I recently requested information on what appears to be a voluntary removal program. The plan is anything but voluntary. DHS threatens families with the removal of children, and if the parents or grandparents refuse to sign, they remove the children. I received information that this DHS program was run by a contracted company. I approximately two weeks ago I asked DHS if they are contracted to remove children and if that company might possibly be owned by a former director.

Remarkably, DHS has failed to respond. I have reports of DHS employees demanding parents sign blank forms, and in some cases, I have reports that DHS is deceiving parents into signing forms to terminate their parental rights.

In one case, I made numerous calls to determine why a child was being removed from their home without probable cause. But despite numerous attempts I could make no contact with an employee. After being unable to reach any DHS representative I left messages explaining that I would be investigating the matter and would seek extortion and child stealing charges against employees if they could not provide justification for the child's removal. DHS attorneys contacted me accusing me of harassing their employees. DHS has refused to provide justification for the child's removal, DHS has harassed and threatened the family to remove the child and then has the nerve to accuse me of harassing DHS employees.

I want to encourage you to launch a multi-county grand jury to investigate the alleged criminal misconduct of all those responsible and tasked with the protection of children.

Sincerely,

Representative Justin JJ Humphrey
District 19



**IN THE DISTRICT COURT OF TULSA COUNTY,
THE STATE OF OKLAHOMA**

DISTRICT COURT
F I L E D

OCT 14 2024

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

Francetta L. Mays,

)
)
)
)
)     GJ-2024-1

## AMENDED PETITION TO IMPANEL GRAND JURY

WARNING: It is a felony for anyone to sign a petition for the convening of a grand jury with any name other than his own, or knowingly to sign his name more than once for the convening of a grand jury, or to sign such petition when he is not a legal voter of the county. 22 OS § 311.1

**COMES NOW**, the Petitioner, Francetta L. Mays, respectfully requests that this Court impanel a grand jury to investigate alleged crimes committed against children and their families by employees of Oklahoma State Agencies responsible for child protection. It is alleged that these crimes were committed in collaboration with private entities and multidisciplinary agencies intended to serve the interests of children. This request is made by petition pursuant to 38 OK Stat § 101 (2023).

Petitioner hereby applies to this Court, in accordance with Article 2, Section 18 of the Oklahoma Constitution and 38 O.S. § 101, to convene a grand jury with jurisdiction in Tulsa County to investigate the matters described herein. The grand jury is further requested to indict by information or present accusations for removal against any individuals found culpable, pursuant to Oklahoma Statute, Title 22, §§ 1182, 1193. In support of this petition, Petitioner respectfully shows the following:

On September 16, 2024, the Oklahoma Criminal Justice and Corrections House Committee convened to address allegations of child endangerment (*See Exhibit 1 QR Code*).[1] Testimony was

---

[1] https://sg001-harmony.sliq.net/00283/Harmony/en/PowerBrowser/PowerBrowserV2/20240916/-1/54594?fbclid=IwZXh0bgNhZW0CMTEAAR2feFZuPsApB6loKhUuRchIKZzbTfXVhVa-z6O-KhArr0WUI4fe2vb4f04_aem_lYJsqrcnaUNCFKv0bbbmWQ#handoutFile_

**05-02-2025 [ CTFREE ]**

JUDGE LORETTA RADFORD: (CHILD SUPPORT ENFORCEMENT DOCKET): PETITIONER NOT PRESENT,
PRO SE. RESPONDENT PRESENT VIA TEAMS, REPRESENTED BY GIL PILKINGTON, PRESENT. EMMALENE
STRINGER PRESENT FOR THE DEPARTMENT OF HUMAN SERVICES.

CASE COMES ON FOR PRETRIAL CONFERENCE ON CONTEMPT AGAINST LINH STEPHENS, HELD ON
THE RECORDER. THE PETITIONER WAS PREVIOUSLY ADVISED THAT THE JURY TRIAL FEE'S MUST BE
PAID PRIOR TO THE PRETRIAL CONFERENCE OR THE COURT MAY PROCEEDWITH A NON JURY TRIAL
ON THAT DATE. THE COURT FINDS THAT THE JURY TRIAL FEE'S HAVEN'T BEEN PAID AT PROCEEDS ON
WITH A NON JURY TRIAL. THE COURT DETERMINES THAT THE PETITIONER (LINH STEPHENS) ISN'T IN
COMPLIANCE WITH THE COURT'S ORDERS. THE RESPONDENT MET HIS BURDEN BY CLEAR AND
CONVINCING EVIDENCE. PETITIONER (LINH STEPHENS) FAILED TO APPEAR AND A BENCH WARRANT IS
ISSUED IN THE AMOUNT OF $13,211.24 PLUS $500.00 COURT FINES. TOTAL AMOUNT DUE AND OWING
TO RECALL THE WARRANT $13,711.24 CASH/MONEY ORDER ONLY. EXECUTION OF 6 MONTHS
SENTENCE IN THE TULSA COUNTY JAIL UPON ARREST. THE ISSUE OF ATTORNEY FEES IS RESERVED.

**05-08-2025 [ CTFREE ]**

JUDGE LORETTA RADFORD: BENCH WARRANT FOR LINH TRAN STEPHENS IN THE AMOUNT OF
$13,211.24 PLUS $500.00 COURT FINES, ENTERED.

**05-08-2025 [ CTFREE ]**

JUDGE LORETTA RADFORD: ORDER OF THE COURT NON-JURY TRIAL ON CHILD SUPPORT CONTEMPT
MAY 2, 2025, ENTERED.

**05-08-2025 [ BWIS$ ]**                                                                $ 50.00

BENCH WARRANT ISSUED - SERVICE BY SHERIFF

**05-08-2025 [ O ]**

ORDER OF THE COURT NON-JURY TRIAL ON CHILD SUPPORT CONTEMPT MAY 2, 2025
Document Available (#1061165633) 🗎TIFF   🅰PDF

**05-08-2025 [ ACCOUNT ]**

RECEIPT # 2025-4768729 ON 05/08/2025.
PAYOR: PILKINGTON LAW FIRM TOTAL AMOUNT PAID: $ 50.00.
LINE ITEMS:
FD-2015-2228: $50.00 ON AC01 CLERK FEES.

**05-28-2025 [ APLI ]**

APPLICATION FOR ATTORNEY FEES AND COSTS FOR CHILD SUPPORT CONTEMPT - MAY 2025
Document Available (#1059347353) 🗎TIFF   🅰PDF

**06-24-2025 [ CTFREE ]**

RADFORD, LORETTA (DOCKET F): ORDER SEALING MOTION FOR LEAVE TO PROCEED IN FORMA
PAUPERIS SIGNED;

**06-25-2025 [ AFDP ]**

RE:WHISTLEBLOWER STATUS AFFIDAVIT UPON STATE OF OKLAHOMA (EIN: 99-9000879), OKLAHOMA
DEPARTMENT OF HUMAN SERVICES, CHILD SUPPORT SERVICES (EIN 73-1477405), STATE BOARD OF
OSTEOPATHIC EXAMINERS (OSBOE) ET AL 99-9000879 AND THEIR AGENTS PART 1
Document Available (#1061717882) 🗎TIFF   🅰PDF

# ORDER OF RELEASE FROM CUSTODY

TO THE SHERIFF OF TULSA COUNTY, STATE OF OKLAHOMA, it is ordered that said defendant be released, if in your custody for no other cause, immediately upon receipt of this order:

Last name, first, middle, suffix (please print) (show alias')

Stephens Lnh Jean

128383 pr

| WARRANT/CASE NUMBER | REASON FOR RELEASE | DESCRIPTION OF CHARGE/CLARIFICATION OF COUNTS |
|---|---|---|
| FD-15-2228 | Time served | Indirect contempt |
| | | |
| | | |
| | | |
| | | |

DISTRICT COURT
**F I L E D**

MAR 2 8 2024

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

☐ **ELECTRONIC MONITOR REQUIRED BEFORE RELEASE**

In and for the District Court of Tulsa County, State of Oklahoma, witness my hand this the ___ day of _March_, 20 _24_

DON NEWBERRY, DISTRICT COURT CLERK
TULSA COUNTY, OKLAHOMA

By: _____

Deputy Court Clerk
(Court Seal)

Division/Court _Family Mulberry_

Received by: _____
Deputy Sheriff

Received by: _____ 1514
JAIL

**APPENDIX C**

Form 5421 (Rev. 1-17)

**102a**

20:51

oscn.net 

PRIVATE ARRAIGNMENT OF LINH TRAN
STEPHENS HELD ON THE RECORDER. COURT
ENTERS A PLEA OF NOT GUILTY AND THE
PETITIONER REQUESTS A JURY TRIAL.
PRETRIAL CONFERENCE SET FOR MAY 2, 2025
AT 9:00 AM BEFORE JUDGE LORETTA RADFORD
IN COURTROOM 605. PETITIONER RECOGNIZED
BACK.

*Special judge practicing law from bench as my attorney without my consent and overruling my repeated objections—witnessed by room fulls of lawyers*

JURY TRIAL FEE'S MUST BE PAID PRIOR TO
PRETRIAL CONFERENCE OR THE COURT MAY
PROCEED WITH AN NON JURY TRIAL ON THAT
DATE. *Judge ignored pauper affidavit financially indigency*

**03-17-2025**

MOTION TO DISMISS/RESPONSE TO
PETITIONER'S "NOTICE OF REMOVAL FROM
STATE COURT TO FEDERAL COURT RE: STATE
OF OKLAHOMA VS. LINH TRAN STETPEHNES
FOR CONTEMPT OF COURT FOR
FRAUDULENTLY-ALLEGED-AND-UNVALIDATED
DEBT, AND ALL CASES RELATED TO LINH
INCLUDING FD-2015-2228 AND JD-2021-270,
ETC"

*prosecutor OKDHS CSS filed motion in limine for them being the prosecutor to BLOCK OUT exculpatory EVIDENCE. That motion is for me the Defendant of Contempt proceedings to block out Prejudicial evidence and they using it to block out exculpatory evidence (truthful evidence that sets me Defendant free CORRUPT MUCH?*

Document Available (#1061157102) TIFF PDF

**03-24-2025**

DEPARTMENT OF HUMAN SERVICES' MOTION IN
LIMINE
Document Available (#1061157899) TIFF PDF

52



**OKLAHOMA
STATE
COURTS
NETWORK**

The information on this page is NOT an official record. Do not rely on the correctness or completeness of this information. Verify all information with the official record keeper. The information contained in this report is provided in compliance with the Oklahoma Open Records Act, 51 O.S. 24A.1. Use of this information is governed by this act, as well as other applicable state and federal laws.

## IN THE DISTRICT COURT IN AND FOR <u>TULSA COUNTY</u>, OKLAHOMA

| | |
|---|---|
| In Re the marriage of<br>LINH TRAN STEPHENS,<br>     Petitioner,<br>v.<br>ADAM SYLVESTER STEPHENS,<br>     Respondent. | **No. FD-2015-2228**<br>**(Family and Domestic: DIVORCE WITH MINOR CHILDREN)**<br><br>Filed: 08/20/2015<br>Closed: 07/11/2017<br><br>Judge: FD Docket C |

## PARTIES

STEPHENS,  ADAM  SYLVESTER, Respondent
STEPHENS,  LINH  TRAN, Petitioner

## ATTORNEYS

| Attorney | Represented Parties |
|---|---|
| Able Commission | |
| | |
| AGOSTO,  SHAR (Bar #32970)<br>AUGUST LAW FIRM PLLC<br>PO BOX 441<br>OWASSO, OK 74055 | STEPHENS,   LINH  TRAN |
| | |
| Davis,  David  W. (Bar #15067)<br>406 S. BOULDER,<br>SUITE 400<br>TULSA, OK 74103 | STEPHENS,   LINH  TRAN |
| | |
| Kimery,  Brenda (Bar #17830)<br>The Law Office of Rhonda Telford Naidu<br>1831 E 71st Street<br>Tulsa, OK 74136 | STEPHENS,   ADAM  SYLVESTER |
| | |
| MOXLEY,  CHANDLER  M (Bar #33981)<br>MOXLEY LAW FIRM, PLLC<br>2642 EAST 21ST STREET, SUITE 250<br>TULSA, OK 74114 | STEPHENS,   LINH  TRAN<br>STEPHENS,   LINH  TRAN |



## OKLAHOMA
State Courts Network

The information contained in this report is provided in compliance with the Oklahoma Open Records Act, 51 O.S. 24A.1. Use of this information is governed by this act, as well as other applicable state and federal laws.

### IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

| | |
|---|---|
| Linh Tran Stephens, individually and as parent and next of kin of G.L.S., a minor child, Petitioner, | No. MA-122859 ([Writ of] Mandamus) |
| vs | Filed: 02/13/2025 |
| City of Tulsa, Oklahoma, and Department of Human Services, Respondents. | Appealed from: TULSA County District Court |

## PARTIES

City of Tulsa, Respondent
Department of Human Services, Respondent
STEPHENS, LINH TRAN, Petitioner

## ATTORNEYS

| Attorney | Represented Parties |
|---|---|
| Pro Se | STEPHENS  LINH  TRAN |

*This court improperly revoked in forma pauperis status without legal justification, effectively denying constitutional rights of court access and ability to seek redress against government actions. This arbitrary revocation violates established Supreme Court precedent protecting indigent litigants' fundamental rights to meaningful court access regardless of financial status.*

## EVENTS

None

*Fundamental Rights Violated:*
*First Amendment right to petition the government for redress of grievances*
*Fifth Amendment right to due process*

## LOWER COURT C

*Fourteenth Amendment equal protection under the law*
*Access to courts as a fundamental constitutional right*

| Count | Case Number |
|---|---|
| - | PO-2021-3843 |

*Key Supreme Court Precedents:*
*Griffin v. Illinois (1956): The Supreme Court held that denying court access based on inability to pay fees violates equal protection*
*Burns v. Ohio (1959): States cannot block court access simply because of inability to pay court costs*

## DOCKET

*Boddie v. Connecticut (1971): Access to courts cannot be denied solely because of inability to pay fees*
*M.L.B. v. S.L.J. (1996): Reaffirmed that court access is a fundamental right that cannot be denied based on poverty*

| Date | Code | Descri |
|---|---|---|

**02-12-2025  [ PAUP ]**

PAUPER AFFIDAVIT FOR STEPHENS, LINH TRAN

---

**02-12-2025  [ PAY ]**

RECEIPT # 90975 ON 02/13/2025.
PAYOR: LINH TRAN STEPHENS TOTAL AMOUNT PAID: $ 0.00.
LINE ITEMS:
$0.00 ON [WRIT OF] MANDAMUS INITIAL FILING.

---

**02-12-2025  [ AAJP ]**

MOTION FOR WRIT OF MANDAMUS FILED BY STEPHENS-PETR PRO SE

---

**02-12-2025  [ TEXT ]**

ENTRY OF APPEARANCE BY LINH TRAN STEPHENS PRO SE

---

**02-12-2025  [ TEXT ]**

NOTICE OF ORIGINAL JURISDICTION SUPREME COURT PROCEEDING

---

**02-13-2025  [ CASE**

[WRIT OF] MANDAMUS INITIAL FILING

---

**02-13-2025  [ TEXT ]**

JE: PETR TO FILE AN AMENDED PET FOR WRIT OF MANDAMUS AND APPENDIX, ALL SECURELY BOUND AND
W/APPENDIX PROPERLY INDEXED AS REQUIRED ETC. IF REQUIRED DOCS ARE NOT FILED ON OR BEFORE 2-
25-25, TH/ORIG PROCEEDING MAY BE SUBJECT TO DSML. C/ATTYS

---

**02-13-2025  [ TEXT ]**

JE: PETR'S PAUPER STATUS W/REVOKED BY ORDER OF TH/CT ON 9-30-24, IN PROCEEDING 122445. IN ORDER
TO COMMENCE A NEW PROCEEDING, PETR IS REQUIRED TO SUBMIT REQUIRED COST DEPOSIT IN
COMPLIANCE W/OKLA SUP CT RULES. IF REQ COST DEPOSTI IN TH/ORIG PROCEEDING IS NOT SUBMITTED
BY 2-8-25, TH/MATTER MAY BE SUBJECT TO DSML. C/ATTYS

# APPENDIX 5



# FEDERAL SINGLE AUDIT SHOWS UNPRECEDENTED MISMANAGEMENT

### "It is past time for Oklahoma to get its financial house in order."

**OKLAHOMA CITY, OK (August 27, 2025)**

Oklahoma State Auditor & Inspector (SAI) Cindy Byrd today released the Federal Single Audit of expenditures made during FY 2023. This annual audit is a federally-mandated examination of whether the State of Oklahoma spent federal grant money in compliance with federal regulations.

The audit report covers more than $14.9 Billion of expenditures which are audited through a formula provided by the federal government.

"For the last three years, I have been sounding the alarm that Oklahoma state government is mired in a culture of financial mismanagement," Auditor Byrd said. "Over the last three years, the problems have gotten progressively worse. The amount of money Oklahomans could be forced to repay to the federal government is concerning."

This year's audit found a record number of *questioned costs* totaling $93.4 Million. Questioned costs are any expenditures that do not comply with the law, cannot be documented, and/or appear unreasonable or unethical. The combined questioned costs from the last three Federal Single Audits stands at more than $186 Million.

"Every taxpayer in Oklahoma needs to understand what this means," said Auditor Byrd. "If this mismanagement continues, our federal taxes will go up, our state taxes will go up, and government services will plummet. The federal government can, and most likely will, demand millions of dollars back from the State of Oklahoma."

The latest audit reveals particular problems at the Office of Management and Enterprise Services (OMES) and at the Department of Human Services (DHS).

1

- OMES mismanaged more than $21.8 Million in grant money earmarked to provide rental assistance to Oklahomans during the pandemic. As a result, an estimated 7,659 Oklahomans could have received rental assistance but were denied.

- DHS failed to put proper guardrails on expenditures for more than $63.6 Million in federal grant money. This was for programs intended to expand childcare access, and welfare benefits.

"Government exists to provide services to its citizens," Auditor Byrd said. "Politicians can argue over which services the government should provide. But everyone can agree that fraud, waste, and abuse is unacceptable. It is past time for Oklahoma to get its financial house in order."

The full FY 2023 Federal Single Audit is now posted here on the Oklahoma State Auditor & Inspector's official website:  www.sai.ok.gov.

-------------------------------------

**To schedule an interview with Cindy Byrd, please contact Andrew Speno at 405-315-5924.**

2

# APPENDIX 6

PAG LETTER TO SCOTUS RE IAJ

DATE: SEPTEMBER 17, 2025

IAJ Document Version Control Log
_____

Document ID: IAJ-PAG-20250918-002-PUB
Initial Release Date: 2025-09-18
_____

Version History
_____

| Version | Date | Author(s) | Summary of Changes |
|---------|------------|------------------|------------------------------|
| v1.0 | 2025-09-18 | PAG | Initial release |

_____

Classification: PAG (Private Attorney General)
Access Level: Public Release
_____

THE PRIVATE ATTORNEY GENERAL
15209 Blue Gum Court, Saratoga, CA 95070
Tel: 408-898-4470    Email: cyrus@metafusion.net

17 September 2025

PERSONAL COMMUNICATION

THE CLERK IS DIRECTED TO
FORWARD THIS LETTER TO THE
PERSONAL ATTENTION OF EACH
JUSTICE

For the personal attention of:
     Samuel A. Alito, Jr.,
     Amy Coney Barrett,
     Ketanji Brown Jackson,
     Neil M. Gorsuch,
     Elena Kagan,
     Brett M. Kavanaugh,
     Sonia Sotomayor,
     Clarence Thomas,
  and  John G. Roberts
Justices of the United States Supreme Court
1 1st St NE, Washington, DC 20543

**Establishment of the missing independent investigative mechanism of international law and treaty compliance under the UNCAT and the Istanbul Protocol**

Dear Justices,

I write as a private attorney general and in the public interest to again identify an on-going controversy with a national footprint, and present evidence-based cases for judicial reform. Reform of the judicial process is mandated by the absolute prohibition of torture and cruel, inhuman, or degrading treatment under *jus cogens* in a manner consistent with this Court's jurisdictional limits, constitutional obligations, national authority, precedents and established canons.

In 2014, the Committee against Torture (CAT) identified significant gaps in the United States' domestic implementation of the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (UNCAT) and urged concrete reforms (CAT/C/USA/CO/3-5). A key finding by the CAT was the non-equivalence of domestic law compared to the direct enforcement of the UNCAT. Another is the absolutely impermissible deviation of the United States with the

1

definition of prohibited acts under the treaty. Under the treaty definitions, prohibited acts extend to the treatment of litigants by our courts, which is the subject of my communication.

The U.S. ratification included a non-self-execution declaration and the United States declined Article 22. Thus Congress intended that the People of the United States cannot individually enforce absolutely non-derogable rights conferred upon them individually and directly, and established domestically under Article VI's recognition of the law of nations and customary international law and the preeminence of treaties under the supreme Law of the Land. This defect of ratification highlights a significant legal error, and reinforces a structural non-compliance with the treaty by Congress, and consequently, by government.

The test of equivalence of protection, relief, remedy and punishment is a critical litmus test of UNCAT compliance. The serious error by Congress radically limits the rights and protections conferred by the treaty through non-equivalence of domestic versus treaty-direct remedies, under a treaty that recites an absolute prohibition under the law of nations that requires no ratification by any State to be binding upon it under authority of the law of nations[1]. Article VI of the U.S. Constitution critically supports this required obedience. The U.S. Initial Report to the CAT confirms that the United States was an expert in knowledge of this absolute prohibition and was following and promoting it to the world prior to conception of the UNCAT, and throughout the treaty's design and presentment to the world.

The defects identified by the CAT undermine the sovereignty of each individual by denying certain un-enumerated rights conferred by the U.S. Constitution. The UNCAT inherently resonates with the Constitution when the Universal Declaration of Human Rights is used as a key to interpretation of its text. The right to freedom from UNCAT-prohibited acts is enshrined in the text of the Constitution as an un-enumerated right. The People desired expansion of their Constitution by treaty to establish the freedom from torture and cruel, inhuman and degrading treatment. Our judiciary ensure that this right remains deprecated and unrecognized.

Under Congress' design, only a foreign State can defend and insist on the recognition and domestic enforcement of some of the People's inalienable human rights through international action. This is not what the U.S. Constitution expects from the government of the People, particularly as the treaty authority recognized by the United States has declared that the UNCAT is not implemented according to its requirements.

---

[1] The law of nations has always been deeply respected in this nation, even before its founding. Refer to the Articles of Independence and the early history of the United States Constitution

As you are aware, I have been a repeat visitor to your court since 2020[2], and documented and reported the same uniform systemic violations of the human rights of disabled and pro se litigants by the state and federal judiciaries[3], which your Court discards, consistently with the standard judicial practice within the ranks of the judiciary of the United States. Thus I have repeatedly exhausted all domestic remedies in more than 20 cases. This is significant as it demonstrates the non-equivalence of domestic pathways for remedy versus direct enforcement of the treaty, and further confirms the CAT's 2014 findings.

My writs evidence the truth of judge Richard Posner's admission on behalf of the federal judiciary that judges treat pro se litigants as a "kind of trash not worth the time"[4]. My documentation of structural defects in court Due Process and intrinsic treaty violations by judges in operating the courts nationwide, brought to your attention through multiple ripe cases, was corroborated by two other independent disabled pro se litigant-victims of judges and courts in their ripe cases[5], whom you concurrently greeted in the same manner as me: with no action.

Unexpectedly, and thanks to the United Nations Secretariat, I learned that in 2014, the world authority on torture agreed with my independent analysis of U.S. treaty compliance, based on other evidence. Although I provided evidence to you of judicial human rights and UNCAT[6] violations for more than five years through my filings, with measurements that meet the tests of legal, scientific, medical and statistical scrutiny, your clerks obstructed my every complaint. Out of more than 20 cases submitted over five years, you filed only 3, and summarily denied them without hesitation, like "trash". A ripe controversy expressed through ripe cases by means of your established and oppressive rules and procedures resulted in a controversy of national and international import to remain.

Under the test of equivalence, the standard for acceptance for scrutiny for my complaints of human rights violations is radically contrasts with your rules and customs. Despite the cascade of *forum nullus* courts recorded in each case, and the necessity of original jurisdiction of this Court over the treaty-compliant human right complaints by victims, this Court 'turned its back' repeatedly, found no actionable controversy by endorsement of the prohibited acts by its lower courts, and acquiesced to the prohibited judicial conduct reported to it.

---

[2] Human rights complaints attempted and obstructed by this Court: California Supreme Court S284268, S284075, S283992, S283705, S268997, S267318, S267314, S266549, S266540, S266474, S266471, S265717, S263716, S263714, S263711, S263610, S253843, S253843, S253843, Ninth Circuit Court of Appeals 23-15221, 24-3353, 24-6312, Tenth Circuit Court of Appeals 24-1107
[3] Note in particular pages 32 and 33 of writ # 23-7017
[4] Debra Cassens Weiss, Posner: Most judges regard pro se litigants as 'kind of trash not worth the time', ABA Journal Sept 11, 2017
[5] Eva Danilak, Julia Minkowski
[6] Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment

The 'court of last resort' in the United States is the first and original federal court. It has not respected the supremacy of human rights treaties under Article VI of the U.S. Constitution when directly presented with verified reports of their violation by judges. Is this because the complexity of treaty law is beyond the reach and interest of judges?

This Court must come to appreciate the extraordinary obstacle of national credibility in the nascent history of this nation, and the nuanced and deliberate construction of the text of Article VI, without which no State would entertain treaty formation with an unknown entity which may revert to control by monarchy, and loss of all treaty consideration and benefits.

The text deliberately places the Constitution itself, as written in its original statement, equal to treaties with a punctuation. This interpretation, seen from the eyes of our founders, was the necessary price of world recognition of this nation as a State. The Constitution is written as a basis text purposed for expansion, not as a static text. Amendments are much more difficult to add than treaty ratification, which requires no state consent. Thus the general rule of later-in-time treaty modification is extremely onerous, but the state and federal judiciaries carelessly interpret it without context and history, or the necessary respect.

The complexity of treaty interpretation rises according to the necessary consideration of the restrictions on treaty modification under *jus cogens*, particularly as codified in the VCLT[7]. The resonance of human rights treaties with constitutionally embedded un-enumerated rights, makes treaty modification prone to violation of the Constitution itself. Further complexity is added by the treatment of an absolute prohibition under *jus cogens* that provides non-derogability under all circumstances, without exception, even under exigent circumstances.

Despite the requirement of competence in law, and impartiality, when judges face a UNCAT question about their own conduct, they predictably and invariably violate the treaty by quoting generalities and erroneous interpretations to erase any pathway to remedy. Such judicial conduct necessarily constitutes the further commission of the prohibited acts which they are asked to abate.

As a result of this systemic epidemic within the judicial process, I made a proposal to each of you by motion and personal communication on January 15, 2025 for correction of the judicial process by integrating human rights meaningfully. To remind you of the proposal, which was provided as an appendix to a motion for your disqualification[8], I have attached a copy to this letter.

---

[7] Vienna Convention on the Law of Treaties (requires not ratification by the USA with respect to its applicable terms)
[8] Inspired by communication with the UN Secretariat who asked that I submit my human rights complaint to the Special Rapporteur for the independence of judges

After seven and a half years of measuring judicial torture and cruel, inhuman and degrading treatment and punishment in 10 state and federal courts by more than 40 judges, and deriving a predictive statistical model of prohibited judicial conduct at the cost of my Life, Liberty, property and rights, it is abundantly clear that the only recourse of the People against judicial violations of human rights and UNCAT is to resort to the supremacy of human rights treaties and an absolute prohibition under *jus cogens* of customary international law, and to involve international expertize and assistance to remedy an uncorrectable defect in our domestic government and its judicial process that prevents treaty compliance.

In view of this Court's inaction, the People of the United States proceeded to establish the missing mechanism of independent investigation of human rights violations pursuant to the Istanbul Protocol. The entity is designed to be a National Human Rights Institution under the Paris Principles. This NGO will independently investigate and provide a 'live feed' of human rights violations to U.N. Human Rights bodies including the Special Rapporteur on torture, the Special Rapporteur on the independence of judges, and to the Committee Against Torture (CAT). The entity is the Institute for the Advancement of Justice & Human Rights (IAJ)[9]: please make a note of it[10].

It should be observed that based on my statistical model, every court in our nation becomes a *forum nullus* upon being presented with a human rights complaint involving prohibited acts involving the judiciary, particularly a complaint that pleads, or may be interpreted as pleading, UNCAT-prohibited acts by the judiciary.

Each court that systemically denies effective judicial protection and relief**,** renders the victim-litigant incapable of accessing constitutional rights including the Due Process and the Equal Protection of the supreme Law. Protection, relief, remedy and punishment for prohibited human rights violations are unavailable through our courts for practical purposes. The non-compliance of the state and federal judiciary with human rights treaties in their administration of justice is a systemic national problem, leaving no forum for un-conflicted adjudication of such cases.

The statistical finding is that the victim-litigant must seek protection, relief, remedy and punishment in this one and only Supreme Court. And, as this Court is well aware, it has privileged itself to focus upon its own selective pleasure and closes its door on cases that, by the operation of the U.S. Constitution and *forum nullus*, require its direct intervention and adjudication. Jurisdiction of this court in these cases and under this persistent national controversy is a mandate of Articles III and VI,

---

[9] http://iaj.institute
[10] Please also note the communications with the U.S. State Department and with the CAT, which the IAJ intends to publish on the investigations page of its website.

and *jus cogens*. Failure of ensuring treaty compliance by the nation's highest Court when such controversy exists, constitutes an internationally cognized and absolutely prohibited endorsement of the derogation of non-derogable human rights.

According to the CAT's 2014 Concluding Observations (C.O.), the UNCAT is self-executing, unless and until the United States fully implements its obligations under the Convention. Its RUDs[11] are non-essential and severed in majority under *jus cogens,* particularly since they undermine the object and purpose of the treaty. The United States has recognized the authority of the CAT, but has not yet made the necessary domestic corrections to comply with the treaty. The CAT rejected the alleged equivalence of domestic laws compared to the direct enforcement of the UNCAT as self-executing binding law. Under *Charming Betsy*, the CAT's C.O. is the standard to be met at law, and *Medellin* is modified to include the C.O. and exclude the non-compliant RUDs.

It is extraordinary that the nation that boasts human rights is the nation whose government is so radically criticized for its failure of compliance with an absolute law in human rights that other nations recognize and obey, while our government professes its excellence and leadership in human rights, and insists that it is above international law.

According to the Executive and Legislative legal analysis of the UNCAT and the United States' repeated assurances of full compliance, the judicial process is expected to correct any errors in law by Congress and any U.S. non-compliance with the treaty. This is includes the mandate by Congress that withdrawal or alteration of RUDs requires Congressional advice and consent.

Advice and Consent is required for ratification. But once ratified and once RUDs are found to be non-essential and severable, and if maintained and not withdrawn, 'illegal' under the law of nations, as well as being doubly prohibited under the absolute prohibition under *jus cogens*, then the judicial process must not abdicate its independence or the mandate of the supreme Law of the Land. The U.S. has clarified that no political question remains with respect to its commitment to the "*full and effective implementation of its obligations under the Convention".[12]*

When despite the 2014 C.O., Congress refuses or fails to correct non-compliance for more than 31 years since ratification (11 years since the CAT's 2014 Concluding Observations) and defends its RUDs, then, a controversy is ripe and active continuously, and has been reported directly to you Justices for at least the past five years, in <u>more than</u> 20 separate cases.

---

[11] The U.S. Reservations, Understandings and Declarations as deposited with the instrument of ratification
[12] See Initial Report by the U.S. to the CAT

The U.S. may not withdraw from the UCAT as it has confirmed that, according to *jus cogens* and the law of nations, no withdrawal is possible. Therefore, it remains for the U.S. to either comply with the object and purpose of the treaty or continue to violate the treaty. The other two branches of government persist with violating the treaty through withholding compliance with the C.O., therefore the third branch must come 'to the rescue' of the People and international Order.

Since the RUDs are based on the rationale that the integrity and independence of the judicial process will ensure the nation's compliance, by virtue of the C.O. and reports of non-compliance directly reported to your court, the controversy has been ripe for 31 years and rests squarely in the laps of you, the Justices of this Court. You are privileged uniquely as public servants with constitutional power to annul bad laws, and have done so in American legal history. Domestic remedies have been, for all practical purposes, exhausted in the domestic cases of UNCAT violations reported to you. The bright line of law and reason awaits you action.

Violations reported by the People, unrecognized under non-equivalence of domestic laws and treaty, must not remain in public view, with emergent evidence confirming systemic treaty non-compliance, without your intervention. It is the role of the judicial branch to thwart tyranny and hold the Legislative and Executive branches to account. The controversy arises because of a defect in the implementation of a human rights treaty that confers individual rights but is ratified by an instrument containing errors of law, and which deprives the People of non-derogable rights, and whose ratification may not be withdrawn under *jus cogens*. This relies on the judicial branch to correct without defacing the treaty, and without undermining our national security and the good will and respect of other nations.

The presumptive encouragement of UNCAT violations through the absence of government correction has been present for more than three decades, and the duty of this Court is clear. Federal common law provides guidance in *Charming Betsy,* and the 2014 C.O. modifies *Medellin* to hold UNCAT as self-executing absent implementing statutes. The U.S. recognition of the authority of the CAT guides the principles to be applied by this Court to Congress' transgression of Article VI and *jus cogens*, and the Executive's defense of it. No Advice and Consent by Congress is necessary for this judicial correction, but essential to motivate Congress to revert to constitutional conduct with clear guidance at law.

The representations of the United States in its Reports to the CAT assuring it and other nations of "*full and effective implementation of its obligations under the Convention"* leave no room for inaction by this Court by evasion through political question jurisdiction. Congress deemed that some

domestic legislation is necessary to comply with the object and purpose of the treaty, thus eliminating any political question regarding U.S. compliance. The limited domestic legislation that is offered in support of the U.S. position of equivalence of domestic laws and UNCAT direct enforcement, mandates this Court's scrutiny and provision of "fair construction", and ensuring national compliance with the world authority on torture and with the law of nations.

This Court has an obligation to set precedent in harmony with the CAT Concluding Observations. Delay promotes on-going endorsement of prohibited conduct under non-equivalence, which I report as on-going, harmful to the People, and occurring with force in state and federal courts. The UNCAT requires this Court's judicial intervention to correct a major error of legislation and finalize politically-settled compliance. This is a matter of ensuring judicial practice conformant with the treaty and Article VI, to be established by this Court as a national standard. Every state and federal judge and every court must recognize and adjudicate complaints that plead or may be construed as pleading UNCAT violations, including prohibited acts by judges, by means of a pathway through jurisprudence that provides measurable equivalence in outcome with the treaty requirements.. None do.

Prevention of torture by this Court is overdue. Judges expressly obstruct and discard UNCAT complaints, fail to discern human rights complaints that are actionable under the UNCAT, and consent or acquiesce to UNCAT violations by others when they do not instigate or inflict these prohibited acts themselves. A detailed accounting of this truth, with copious evidence and documentation in the public records has been provided to this Court continuously for the past five years, and continues to fill the public record under my name and others. Plausible independent evidence of the accuracy of the statistical prediction of structural and systemic judicial violation of the UNCAT and other human rights treaties, appears to be flooding in to the IAJ, which must be studied to evaluate the seven+ year study findings.

When statistics predict that the Supremacy Clause is undermined by every judge and every court in the nation when facing human rights in the judicial process, and emergent data from around the nation may support it, it is the original federal court which must oblige all complaints from the victims, directly. This original Article III court must not forfeit its independence, and delegate authority to inferior courts at the leisure of Congress which formed them, and presume that our federal courts operate soundly. For five years, it has been demonstrated in this court's record and numerous communications that it will not 'lift a finger' to address the unmistakable systemic human rights violations of state or Article III judges, and will obstruct complaints therefor, and that it did not provide the necessary correction and punishment under its code of ethics.

Five years after my first pleading on disability and my request to this Court for Safe Harbor and disability accommodation which you ignored, this Court has taken a baby step with *A.J.T. v. Osseo Area Schools*, but without benefit to me.

*Tudor v. Whitehall*, 2d Cir. 2025 cast shame on public statements by U.S. Courts and precedents on ADA accommodation in federal courts, which remain human rights violations of the highest order, and actionable without deadline. In contrast, the mature pedigree and breadth of human rights principles (1948) and treaties contrast with the late emergence and insufficiency of our domestic precedents on human rights, confirming my thesis. The 'not invented here' reluctance of our judiciary to engage with human rights proper and leverage the outstanding work of human rights experts to enhance our domestic laws, precedents and judicial process, reflects poorly on the leadership in human rights reported by the United States in its 1994 Initial Report to the CAT, on behalf of all three branches of government.

When the IAJ opened its electronic complaint submission on August 4, 2025, six complainants registered and began entering their complaints. The next day eight complainants registered and began entering their complaints. As of midnight PST on September 14, 2025, the IAJ confirms that ninety-three complainants had registered around the country and were entering or adding to their complaints. Third party reports about the human rights violations of other victims identified twenty-five alleged victims of courts as of September 13, 2025. The rate of complaints is likely to increase more rapidly, probably in spurts. This is because the IAJ receives reliable information from complainants of the existence of numerous other potential victims whom they intend to refer to the IAJ. The IAJ is informed that for a very long time, the People have been vocal, and have also organized in groups around the country, to address the deficiencies in the judicial process. Violation of human rights within the judicial process is therefore a national concern. Is this Court able to recognize a Constitutional crisis if it were in plain sight[13]?

The PAG has been made aware of human rights treaty cases pending before this Court, other than his own. The submissions by these persons to this Court are presented under the only procedure that this Court makes available to them, and which unduly burdens them and is inconsistent with international Protocol. Each submission contains a human rights complaint that is recognized by the Istanbul Protocol, and constitutes a treaty complaint under the original Article III jurisdiction of this Court when a constitutional crisis in present. For that reason, this Court is advised that each of these

---

[13] Katherine Koretski and Lawrence Hurley, Justice Amy Coney Barrett says country is not in a 'constitutional crisis', NBC News Sept 4, 2025 -- https://www.nbcnews.com/politics/supreme-court/amy-coney-barrett-says-country-not-constitutional-crisis-bari-weiss-rcna229238
-- "I don't know what a constitutional crisis would look like,"

human rights complaints, should be recognized and addressed by this Court according to Article VI of the US Constitution and *jus cogens*, and not according to the customary practices of this Court that strictly enforces hierarchical adjudication through abdication and delegation of its original jurisdiction. The pro se individuals advancing these cases include:

- Julia Minkowski, California – obstructed by clerk
- Sossama Geroge Sebastin, Illinois – SCOTUS # 24-1226
- Linh Tran Stephens, Oklahoma – obstructed by clerk

Each of these persons has reached out to the IAJ for investigation, and also to the PAG. Ms. Sebastin specifically requested an amicus brief, which this Court's rules prohibit, but which the U.S. Constitution permits. It should be carefully noted that these individuals have, for practical and reasonable purposes, 'exhausted all domestic remedies'. Ms. Stephens has also reported three additional SCOTUS cases of interest to the IAJ, pending assessment:

- Jennifer Lynn Dees & Ethan D. Smith, New York – SCOTUS # 25-5035
- D.R., Hawai'i – SCOTUS # 24-6971
- Conghua Yan, Texas – SCOTUS # 24-554

This Court's response to human rights complaints that can be construed as pleading or reporting UNCAT violations is a matter for international scrutiny. *Jus cogens* and customary international law require equivalence of outcome between direct application of the UNCAT in domestic courts, and the alternate pathways of protection, relief, remedy and punishment alleged by the United States as equivalently existing under domestic law[14]. This Court is obligated to ensure this equivalence exists, or is corrected if it not demonstrated in every case. Under Separation of Powers, it must also discipline wayward judges and set a national standard in human rights compliance within the judicial branch. Human rights must be restored and be a national cornerstone of Justice.

According to common sense and the international standard applicable to the UNCAT, adjudication by this and any other court should await the findings of the independent investigation by the IAJ. It is the PAG's finding based on statistics and emergent data that no equivalence is possible under the alternate pathway alleged by the United States as existing under domestic law. Thus the direct enforcement of the UNCAT through self-execution and in conformity with the Istanbul Protocol, and the requirement of an independent investigation by an NHRI (the IAJ) prior to adjudication, must be the precondition and the basis for the mandatory adjudication of such cases by this Court.

---

[14] See U.S. Initial Report, Periodic Reports 2-6 and one-year-follow-up report (2015).

The world standard for submission of human rights complaints and recognition of a UNCAT treaty violation is un-burdensome, and not subject to the rigors of your sophisticated and mechanistic procedures that are not perceived by the public as displaying legitimacy in processing any human rights complaint submitted to your Court. In the case of Minkowski, your clerk 'lost' one of her writs and has refused to acknowledge it despite her repeated efforts with proof of submission, and her other writ has so far been obstructed for more than one year, and continues to be obstructed, as were mine. The sensitivity of this Court to the plight of the victim of human rights violations within the judicial process and the likely practical exhaustion of remedies through the courts must be a cause for public confidence, not illegitimacy.

It is in the best interests of the People of the United States that this Court address internal reform and scrutinize its compliance with Article VI and a major human rights obligation.

It is not national pride and our State sovereignty that must be a bar to our continuous demonstration of deep respect for the law of nations and continued harmony with it in domestic adjudication with respect to human rights treaty compliance. Only through leadership in world human rights can we influence the evolution of the law of nations, and direct it for the good of all and for peace and unity of the global human family. Instead, we are implicated for its violation, and this degrades who we are as a people.

We the People desire the world to seek our courts, assured of justice and remedy under treaties, not to lose face and faith and security on the international stage. At the moment of ratification, it is international law and *jus cogens* that speak profoundly and clearly on treaty compliance, and the law of nations has spoken through the CAT whose authority we accept. In the matters that I report, controlling *jus cogens*, accurately applied in 2014 by the CAT, must command respect from this Court, as must the rule of the law of nations that speaks on domestic compliance with the UNCAT. Neither may be disparaged or ignored, or contradicted.

To begin compliance and as a first step, it is necessary to remove the delegation of power to your clerks to accept pleadings and communications that require your personal review. The rule privileges persons whom the People did not appoint with tenure to this Court, to extinguish human rights by exercise of full and final authority of the Justices, *en banc*, as they routinely do, to obstruct personal communication with each of you. It must be clearly understood that on your behalf, your clerks thus consent to consequential prohibited acts.

Instead, every complainant whose complaint may be construed as a human rights complaint must be so identified, and must be able to directly address a Justice without obstruction by your clerks or by

your rules. This must be arranged for intake of a human rights complaint, and for protection from harm and for disability and other accommodations, without the rigors of your formalities, and obstructions by your procedures, until your court has the necessary procedures for screening and handling such communications without causing more harm. Thus your clerks must receive training and be required to flag submissions for screening according to human rights criteria.

The duty of treaty compliance remains a non-delegable judicial duty under these circumstances. I speak from five years of personal experience with your clerks, who have obstructed numerous human rights complaints, and discarded requests for disability accommodations and protection from continuing harm. Your recall that your clerk even obstructed my letter to the Judicial Conference.

I continue to accumulate serious injuries from my torture by state and federal judges and remain at death's door. I inform you that your Court has no demonstrable competence in the integration of human rights into the judicial process, and has not demonstrated any interest in treaty compliance by our nation's judges. For this purpose, your Court requires an expansion of resources and impeccable training in the integration of human rights into the judicial process. This must be integrally combined with the insights and monitoring from an independent National Human Rights Institution that will be a mirror for your integration of human rights protocols and standards required for implementation and enforcement of human rights in the judicial process.

Since we have repeatedly revisited the subject, I will not repeat my stance on your code of ethics which, as you and the public are well aware, urgently requires revision as commemorated in my filings, and must include consistency with world standards that integrate human rights as the core of ethics, and require judicial discipline for violations. Punishment of prohibited acts by judges is a requirement of the UNCAT.

Sincerely yours,

Cyrus Hazari

*cc: IAJ, CAT, Special Rapporteur on UNCAT, Special Rapporteur on Independence of Judges*

*attachment: January 2025 proposal to collaboratively create the IAJ*

12



APPENDIX

B

## APPENDIX B: <u>Proposed steps for an investigation</u>

PREAMBLE

Recognizing that human rights are fundamental to this nation and to its Constitution and vital to this nation's interests and security in the world and of paramount importance to the People; and recognizing that the judiciary of this nation must at all times be committed to the recognition and the protection and the enforcement of human rights in ensuring justice and in the course of jurisprudence; and recognizing that there must be mechanisms in place to guide, monitor and correct jurisprudence to continuously demonstrate the highest standards of judicial conduct that impeccably ensure human rights; and recognizing that the guidance, monitoring and correction of human rights in jurisprudence must be performed ethically and independently of judicial influence or control, with impartiality and with authority, and in conformity with International standards of human rights; and recognizing that the judiciary play a critical role in advancing national and international standards in human rights in concert and in unity with the United Nations[374] and must continuously empower and support the international success of human rights and the domestic and worldwide proliferation of an ethical judiciary[375]; and recognizing that when any domestic mechanism for recognition, protection or enforcement of human rights by the judiciary in conjunction with independent bodies reaches an impass or obstacle, that there must be an international mechanism for resolution of differences[376] to ensure the highest standards of human rights in jurisprudence[377]; and recognizing our commitment to the Preamble to the US Constitution; and recognizing that allegations of violations of human rights by the

---

[374] And recognizing that unity herein does not mean the merger or consolidation or forfeiture of independence, but instead means that both the American judiciary and the United Nations must simultaneously and independently advance human rights to the highest possible standards, and always seek harmony to derive a mutually endorsed standard for offer to all nations in the design and approach and processes for advancement and protection and enforcement of human rights.

[375] And recognizing that an ethical judiciary is a judiciary that recognizes, protects and enforces human rights as the first canon of its code of judicial conduct.

[376] The US Constitution recognizes that this nation exists and survives and thrives in a world society, and may never remain insular, and that treaties are necessary and essential to the general Welfare and to provide for a common defense, to establish Justice, to insure domestic Tranquility, to form a more perfect Union, and to secure the Blessings of Liberty to ourselves and to our Posterity.

[377] Under the Constitutional lens, such an independent body must be independent of all branches of government, and hold its strict conformity with International Law, which is authorized under Article VI of the US Constitution which provides that treaties are a separately recognized component of the supreme Law of the Land separately to the laws enacted by the legislative branch

judiciary requires an abundance of caution exercised by judges and a sincere and independent inquiry; and recognizing that disabled litigants have protections and rights provided to them by domestic legislation and by treaties; and recognizing that human rights in jurisprudence may be violated by virtue of innate bias and norms, customs and practices, including discrimination, that may require review of judicial norms from time to time based on the evolution of society; and recognizing that accommodations for the disabled litigant in the course of litigation are best determined objectively and based on science and medical expertize by an independent body of qualified persons and medical experts; we hereby proceed in this cooperation between the People and the United States Supreme Court.

FINDINGS

Without implying any wrongdoing or admitting any fault; and finding that the American judiciary recognize in their hearts and minds the importance of their commitment to excellence in the administration of justice and its role in the unity of the People, and the highest standards for ensuring Justice and the general Welfare and the securing of the Blessings of Liberty to the People; and finding that five independent litigants have alleged that the American judiciary are perpetrators of prohibited acts under International Law[378] that impinge on human rights, and that four independent litigants have alleged that the American judiciary are perpetrators of prohibited acts under domestic laws that prohibit discrimination in jurisprudence based on disability, that are also human rights violations; and finding that under the United Nations Charter and under customary international law, certain standards exist[379] for the necessary investigation of such allegations, and the prevention of such conduct, and the necessary protection of alleged victims pending such investigation; and finding that it is alleged by these victims that there is no effective national or local mechanism for the prevention or investigation of the alleged conduct that is compliant with the standards promulgated under International Law; and finding that an investigation is warranted under an abundance of caution and in compliance with International Law; and finding that the protection of these identified alleged victims is proper and necessary pending the investigation under an abundance of caution and in

---

[378] And under Article VI of the US Constitution

[379] As promulgated by the United Nations, specifically the Istanbul Protocol for the violation of the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (UNCAT). These standards are well-developed by domain experts who have decades of experience and have embodied their expertize and experience into the formulation of well-developed standards and practices which may be immediately leverage to provide excellence as a starting point for a framework and process of investigation.

compliance with International Law[380]; and finding that such an investigation is of the highest benefit when it treats every person who may be potentially affected as a beneficiary; and finding that the nation benefits by efficiency and avoidance of duplication in addressing such prohibited acts which may be achieved by establishing an effective and persistent mechanism and framework and process for this nation arising from this investigation; and finding that it benefits our nation to have a persistent mechanism and framework and process that is independent of all branches of government and which is compliant with the United Nations Charter and with International Law on an on-going basis; and finding that such a persistent domestic mechanism enhances and promotes our world stature as a nation that stands for human rights as we did through our history and bolsters our good will among nations; we, the People and the United States Supreme Court set out with the following purpose.

PURPOSE

1. To design and establish the first template for an independent[381] domestic mechanism and framework and process for: a) preventing violations of human rights; b) investigating violations of human rights and c) compliance with human rights treaties, human rights principles and the UN Charter; and d) the proper and meaningful accommodation of disabilities in the course of jurisprudence; by the judiciary;

2. To initiate the first investigation of human rights violations and of alleged prohibited acts that violate human rights, by applying the template to create an independent entity that embodies the mechanism, framework and process to investigate the organization, the rules, the policies, the procedures of the courts, the norms of judicial conduct, and judicial administration, and specific judicial conduct; with focus and guidance for efficiency provided by the alleged prohibited conduct; and to provide the independent entity the full cooperation of every identified court and judge through the rank and the respect commanded within the judiciary by this court; and to provide public transparency to the extent possible throughout the investigation;

3. To review and deliberate the findings of the investigation and issue a report on the template and its suitability for a persistent domestic mechanism and framework

---

[380] In particular, with reference to the UN Istanbul Protocol
[381] and United Nations compliant

and process for the purposes intended; and to enhance its effectiveness as learnings indicate; while ensuring that the entity maintains conformity with International Law and human rights treaties, human rights principles and the UN Charter on an on-going basis;

4. If indicated by the report, for discussion to be held with the Private Attorney General and the Justices of this court about restoration of the full function of this court based on the investigation findings, specifically addressing any finding of wrongdoing by any Justice of this court with every opportunity as appropriate provided to each justice to address issues, and ensuring that the People and their government are sound and intact and publicly seen as being highly legitimate and committed to ensuring justice and human rights;

5. Subject to the report regarding the effectiveness of the template, for the US Supreme court to continue to fund and maintain the enhanced independent entity while the Private Attorney General pursues establishing the enhanced independent entity independently of the US Supreme court and as a feature of government for the benefit of the People;

6. Subject to the report regarding the effectiveness of the template, for the Private Attorney General to pursue means to establish the persistence of the independent mechanism, framework and process; by actions including but not limited to, recommendation to Congress for a budget and resources and legislation, and by actions in concert with the United Nations, and by expansion of the scope of function of an existing government funded body, or by other means; for the establishment and persistence of an independent body and center of excellence for maintaining and evolving this independent domestic mechanism and framework and process for the purpose of preventing and investigating human rights violations, and for remedy and relief; and to provide for its nationwide availability in a distributed fashion based on need; and to endow it with authority to guide, monitor and correct jurisprudence by recommendation to this court in the event of human rights violations[382];

7. Subject to the report regarding the effectiveness of the template, to ensure that the membership of this independent domestic mechanism and framework and process for preventing and investigating human rights violations is open to all individuals,

---

[382] Including discrimination based on disability

without discrimination and without constraints on geography or nationality or any other protected characteristic, including disability, with suitable personal qualities that will distinguish their impeccable service to human rights under their membership;

8. To ensure that a template that embodies the mechanism, framework and process for determination of meaningful and appropriate disability accommodation in the courts for the course of litigation is available in every court according to a determination based on science and medicine by an independent body of qualified persons and medical experts, and is endorsed by this court to be used by judges throughout this nation in ensuring accommodations and safe harbor to every disabled litigant.

INITIAL STEPS:

With the consent and endorsement of Justice Elena Kagan on behalf of the United States Supreme Court, and with the consent and endorsement of the Private Attorney General, for a formal invitation to be made to the following experts[383], requesting initial assistance for Justice Elena Kagan and the Private Attorney General, and others as agreed between them, with establishing[384] the template for a mechanism, framework, and process[385] for an investigation pursuant to the United Nations Istanbul Protocol into judicial conduct:

- Claude Heller, Chair of the United Nations Committee Against Torture
- Alice Jill Edwards, United Nations Special Rapporteur on Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment

---

[383] And/or their nominees or substitutes, to be agreed between Justice Elena Kagan and the Private Attorney General and the nominees herein named

[384] The United States has no domestic mechanism, framework or process that meets with the well-developed mechanism, framework and process promulgated by the UN and through its Istanbul Protocol and through the expertise of the personnel involved with the United Nations bodies on human rights. Therefore, for rapid and high-quality results, a transfer of standards, approach, knowledge, expertize, and lessons-learned is advantageous to efficient and rapid establishment of a domestic mechanism, framework and process to assist our judges and courts in delivering on their constitutional mandates and regaining legitimacy that is dangerously in decline. Since no domestic mechanism, framework or process exists for investigating human rights violations in jurisprudence, it is very important that established national perspectives on Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, which may be advocated by domestic 'experts' on torture, be re-examined upon the domestic establishment of a mechanism, framework and process that is compliant with International Law, and compliant with best practices recognized under International Law.

[385] and specification for personnel and resources and reports, and the designation of the initial personnel, and other advice

- Mary Lawlor, United Nations Special Rapporteur on the situation of human rights defenders
- Suzanne Jabbour, Chairperson, United Nations Subcommittee on Prevention of Torture
- Heba Hagrass, United Nations Special Rapporteur on the rights of persons with disabilities

The steps of establishing and conducting the investigation to be funded, as necessary, by an initial budget established by the United States Supreme Court[386], and subsequently from other funding sources for the purpose of independently fostering national excellence in jurisprudence with respect to judicial compliance with human rights treaties as a fundamental aspect of judicial office and "good Behaviour"[387].

The initial steps to be taken with the goal of fostering and maintaining the interest, involvement and cooperation of appropriate international experts[388] in International Law and torture and human rights, and the periodic transfer of expertize and education to independent domestically accessible experts and investigators to be specified, in order to create a persistent independent[389] domestic body of excellence within the United States[390] to cultivate, implement, archive, educate and accommodate best practices.

The initial steps to also result in the immediate availability of a template for a mechanism and framework and process creating a tribunal[391] for the independent determination of

---

[386] But with complete independence of the framework, process and all associated personal, and the investigation itself, from the United States Supreme Court or any government entity.
[387] and the realization and securing and confirmation of best practices by the American judiciary that the world may follow, and for the United Nations to use as a reference model for education elsewhere.
[388] It benefits this nation if international experts feel a desire and interest in assisting this nation in holding and evolving best practices that may be then used to stimulate and benefit the rest of the world in return, and permit the United Nations to refer to the American judiciary as an ethical and human-rights-compliant reference model for other nations.
[389] The judiciary must not be permitted to police itself with respect to human rights, or have any influence or control over such a body, nor must Separation of Powers be compromised
[390] With very strong involvement and representation by persons with disability and persons who have experienced the limitations of jurisprudence while sick or disabled, and who must at all times hold the purpose and intention that their service must dedicated to achieving the highest possible standards for jurisprudence while ensuring that the judiciary can practically and effectively administer justice for all without too much burden, while impeccably respecting and protecting human rights of litigants in the courts and within other mechanisms for ensuring justice.
[391] See ECF 6,7,8 in 24-3353 in the Ninth Circuit court of Appeals, and ECF 5,6,7 in 24-6312 in the Ninth Circuit court of Appeals. A body for human rights protections and investigation and compliance may naturally provide the necessary resource for disability accommodations and safe harbor investigation and compliance.

safe harbor and disability accommodation[392] in courts that is readily available to every court in the United States, and which ensures that the determination of disability accommodation in the course of jurisprudence is based on objective principles and monitored and consistent with human rights requirements.

The initial steps to result in a schedule and a plan for the prompt investigation into the herein allegations.

The invitations for above individuals to be issued as soon as possible, and preferably no later than January 29, 2025.

The next steps after these initial steps to be agreed between Justice Elena Kagan and the Private Attorney General[393] and with a minimum goal of having the mutually agreed initial personnel appointed and authorized by mutual agreement following the process of initial assistance.

Neither any Justice nor the Private Attorney General to permit any conflict of interest to affect the investigation, and for the interest of human rights to be paramount.

ADDITIONAL RECOMMENDATION:

For Justice Kagan to deliberate with her colleagues in this court for the purpose of adding a specific canon to this court's Code of Conduct for discipline and punishment of judges for violations of ethics[394], and also to instill in this nation enormous trust and confidence that human rights are imperative and are in the safest hands when entrusted to the American judiciary by specific mention under ethics. In this manner, to enable the authoritative findings of the independent investigative body to be implemented by the US Supreme Court[395] through enforcement of judicial ethics, including reach outside of this court, especially with respect to discipline and punishment of judges, except criminal punishment which must proceed according to the US Constitution[396].

---

[392] consistent with the Freeman Bright Line.
[393] With a provision for replacing the Private Attorney General in the event of sudden death or permanent incapacity.
[394] I refer to the quotation from Justice Clark on Page 13 of this court's Code of Conduct
[395] And later, by lower courts upon adoption of compliant ethics
[396] And which requires respect for International Law.