Tenth Circuit case number **25-5063**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

(1) Linh Tran Stephens, sui juris, natural living breathing woman with a living soul and the Holy Spirit, Ambassador of Christ/Yahusha    —    *Plaintiff-Appellant,*
vs.

(2) CHARLES SCHWAB AND CO., INC.,

(3) CHILD SUPPORT SERVICES OF OKLAHOMA DEPARTMENT OF HUMAN SERVICES (CSS of OKDHS),

(4) Cierra Freeman, in individual and official capacity as court-appointed attorney for child-support enforcement,

(5) Mary Johnmeyer, in individual capacity and in official capacity as legal counsel of Charles Schwab,

(6) Renee Banks, in individual capacity and official capacity as CSS Director,

(7) Jason Hoenshell, in individual capacity and in official capacity as Oklahoma FIDM Coordinator,

(8) Emmalene Stringer, in individual capacity and in official capacity as State's attorney for CSS; *et. al.*    —    *Defendants-Appellees.*

On Appeal from the United States District Court for the Northern District Of Oklahoma
(Case No. 24-CV-216-JDR-CDL)
The Honorable Judge John D. Russell, Presiding

### MOTION TO STAY MANDATE PENDING PETITION FOR WRIT OF CERTIORARI

*Pursuant to Fed. R. App. P. 41(d)(1) and 10th Cir. R. 41.1*

WITHOUT RECOURSE
By: Linh Tran Stephens / sui juris, Appellant, Agent or attorney-in-fact
**in care of:** 1964 Ashley River Rd Ste B Unit 80112,
Charleston, South Carolina 00000 ZIP EXEMPT [near 29407]
without the United States District Columbia
LinhStephens7@gmail.com ;
phone: (843) 608-0294

## TABLE OF CONTENTS

I. INTRODUCTION AND PROCEDURAL HISTORY ................................................ 3

II. LEGAL STANDARD ........................................................................................... 4

III. ARGUMENT ..................................................................................................... 5

    A. The Petition Presents Substantial Questions of ERISA Law ........................... 5

    B. Good Cause Exists Due to Irreparable Harm .................................................. 8

    C. The Balance of Equities Favors a Stay .......................................................... 10

    D. THE DECISION MISAPPLIES THE DOMESTIC RELATIONS EXCEPTION

    AND YOUNGER ABSTENTION ……………………………………….………. 10

        1. The Domestic Relations Exception Does Not Bar ERISA Claims ….. 10

        2. Younger Abstention Is Inapplicable …………..……………….…..……. 11

    E. THE TENTH CIRCUIT'S WAIVER RULING CONFLICTS WITH PRO SE

    LIBERAL CONSTRUCTION REQUIREMENTS …………………………….. 12

IV. CONCLUSION ................................................................................................. 13

V. DEMAND AND RELIEF SOUGHT ..................................................................... 14

VERIFICATION AND DECLARATION ..................................................................... 15

Notary as JURAT CERTIFICATE ………………………………………….……. 17

CERTIFICATE OF COMPLIANCE ......................................................................... 19

CERTIFICATE OF SERVICE ................................................................................. 20

# TABLE OF AUTHORITIES

## CASES

*Ankenbrandt v. Richards*, 504 U.S. 689 (1992) ……………….…………… 10

*Bearden v. Georgia*, 461 U.S. 660 (1983) ………………………….…...………... 9

*Boggs v. Boggs*, 520 U.S. 833 (1997) ……………………….……………...…… 4, 6, 7

*Egelhoff v. Egelhoff*, 532 U.S. 141 (2001) …………….………….…………….… 11

*Ex parte Young*, 209 U.S. 123 (1908) ..................................................... 11, 12, 13, 15, 16

*Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836 (10th Cir. 2005) .................... 11

*Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365 (1990) ……………... 5

*Haines v. Kerner*, 404 U.S. 519 (1972) .............................................................. 12

*Hollingsworth v. Perry*, 558 U.S. 183 (2010) …………………………………….…. 5

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285 (2009) …………… 7

*Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987) ………………………..… 11

*Nken v. Holder*, 556 U.S. 418 (2009) ……………………………………………..… 5

*Pater v. City of Casper*, 646 F.3d 1290 (10th Cir. 2011) ........................................ 12, 15

*Patterson v. Shumate*, 504 U.S. 753 (1992) …………………………………………… 5

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984) ....................................................... 9

*Slaughter-House Cases*, 83 U.S. 36 (1873) ................................................................. 17

*Turner v. Rogers*, 564 U.S. 431 (2011) ...................................................................... 3

*V.L. v. E.L.*, 577 U.S. 404 (2016) ............................................................................... 3

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) ……………………………………….…... 10

*Winter v. Natural Resources Defense Council,* 555 U.S. 7 (2008) ……………….…..… 8

*Younger v. Harris*, 401 U.S. 37 (1971) ....................................................................... 11

## STATUTES AND RULES

**U.S. Constitution**

Article III ........................................................................................................ 14

Article IV, § 1 (Full Faith and Credit) ............................................................... 8

Article IV, § 2 (Privileges and Immunities) ...................................................... 17

**Federal Statutes**

28 U.S.C. § 1738 (Full Faith and Credit) ......................................................... 8

28 U.S.C. § 1746 ........................................................................................... 15

29 U.S.C. § 1056(d) (ERISA Anti-Alienation) ............................................ 4, 5, 6, 16

29 U.S.C. § 1132 (ERISA Enforcement) ........................................................ 11

42 U.S.C. § 652(k) ......................................................................................... 9

42 U.S.C. § 654(4) ........................................................................................ 16

**Rules**

Fed. R. App. P. 27(d) ..................................................................................... 19

Fed. R. App. P. 32 ......................................................................................... 19

Fed. R. App. P. 41(d) ................................................................................ 1, 3, 4

10th Cir. R. 27.1 ........................................................................................... 19

10th Cir. R. 41.1 ........................................................................................ 1, 3

Supreme Court Rule 13 .................................................................................. 3

Supreme Court Rule 22 .................................................................................. 14

## I. INTRODUCTION AND PROCEDURAL HISTORY

Pursuant to Federal Rule of Appellate Procedure 41(d)(1) and Tenth Circuit Local Rule 41.1, Appellant Linh Tran Stephens respectfully moves this Court to stay the issuance of the mandate in this matter pending the filing and disposition of a Petition for a Writ of Certiorari in the Supreme Court of the United States.

**Appellant also notifies this Court that she has prepared an Application for Stay directed to Associate Justice Neil M. Gorsuch, Circuit Justice for the Tenth Circuit, in the event this Court denies the requested relief**.

On January 10, 2026, Appellant filed an Emergency Motion for Stay Pending Appeal and for Injunction Pending Appeal (Doc. 57) to protect ERISA-qualified retirement assets worth $64,445.92 from unlawful liquidations, frauds, unlawful creditory practices violating federal laws e.g. <u>Fair Debt Collection Practices Act</u> (FDCPA), etc. On January 16, 2026, this Tenth Circuit Court entered its Order and Judgment (Doc. 59-1) affirming the District Court's dismissal of Appellant's claims and denying the emergency motion as moot, signed by **Paul J. Kelly, Jr., 10th Circuit Federal Judge**. Applicant intends to file a Petition for Writ of Certiorari on or before *March 30, 2026*, which is within the 90-day deadline under Supreme Court Rule 13**.** The petition will raise substantial federal questions of exceptional importance *including but not limited to*:

**(1)** whether due process permits incarceration for civil contempt without an ability-to-pay hearing (Turner v. Rogers, 564 U.S. 431 (2011));

**(2)** whether Oklahoma courts violated the Full Faith and Credit Clause by disregarding a binding Oregon child support judgment (V.L. v. E.L., 577 U.S. 404 (2016)); and

**(3)** whether seizure of ERISA-protected retirement accounts without a valid QDRO violates federal law (29 U.S.C. § 1056(d); Boggs v. Boggs, 520 U.S. 833 (1997)).

Without a stay, the mandate will issue 52 days after the January 16, 2026 judgment (on or about March 9, 2026), and the ministerial execution of the District Court's judgment will permanently destroy the ERISA-protected retirement assets. This will render any subsequent Supreme Court review a "hollow victory." A 90-day stay is necessary to preserve the status quo and permit meaningful Supreme Court review.

**Prior court-ordered mental health evaluations of Appellant's exhusband Adam Stephens have revealed long-term psychiatric instability, including suicidal ideation, homicidal statements, and multiple psychotropic drug prescriptions. The Oklahoma courts and OKDHS ignored this history and granted Respondent Adam Stephens sole custody in contravention of child protection laws and mandatory reporting requirements to unjustly enrich themselves with frauds-upon-the-court child support false charges and fraudulent billings**.

## II. LEGAL STANDARD

Federal Rule of Appellate Procedure 41(d)(1) provides that a stay of mandate is appropriate where the petition for certiorari presents "a substantial question" and there is "good cause for a stay." The Tenth Circuit grants such stays when the movant demonstrates that the petition is "not frivolous or filed merely for delay." 10th Cir. R. 41.1.

The Supreme Court has articulated a four-factor test for evaluating stay motions:
(1) whether the stay applicant has made a strong showing that she is likely to succeed on
the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether
issuance of the stay will substantially injure other parties interested in the proceeding;
and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 426 (2009) (citing
*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

In the certiorari context, the Supreme Court applies the *Hollingsworth* test, which
considers: (1) the likelihood of certiorari being granted; (2) the prospect of reversal; and
(3) the balance of hardships. *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010).

## III. ARGUMENT

### A. The Petition Presents Substantial Questions Regarding ERISA's Anti-Alienation Provision and Federal Preemption

Appellant's petition will present substantial questions of federal law concerning
the scope of the anti-alienation provision of the Employee Retirement Income Security
Act (ERISA), 29 U.S.C. § 1056(d)(1), which provides: "Each pension plan shall provide
that benefits provided under the plan may not be assigned or alienated."

The Supreme Court has consistently emphasized the importance of this provision.
In *Patterson v. Shumate*, 504 U.S. 753, 760 (1992), the Court held that ERISA's
anti-alienation provision reflects "a strong public policy: to protect a stream of income for
pensioners." Similarly, in *Guidry v. Sheet Metal Workers National Pension Fund*, 493
U.S. 365, 376 (1990), the Court stated that this provision "reflects a considered

congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them."

This case presents the following "cert-worthy" questions and many more not listed here (for conciseness of this motion):

1. Whether a state child support enforcement order can compel the alienation of 401(k) assets in direct contravention of ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1), where no valid Qualified Domestic Relations Order (QDRO) has been entered pursuant to 29 U.S.C. § 1056(d)(3).

2. Whether ERISA preempts state child support enforcement when the underlying precedent and finalized divorce decree of January 2016 explicitly waived all future child support obligations in exchange for property, and the retirement accounts were established years after the divorce.

3. Whether the domestic relations exception to federal jurisdiction applies to ERISA claims that do NOT seek to issue, modify, or enforce divorce decrees but rather seek to vindicate independent federal statutory rights regarding retirement accounts e.g. 401(k) and Roth IRA accounts that belong to subsequent marriage.

The Supreme Court has repeatedly addressed ERISA's interaction with domestic relations law, demonstrating the importance of this area. In *Boggs v. Boggs*, 520 U.S. 833, 844 (1997), the Court held that ERISA preempted a state law that would have allowed a non-participant spouse to transfer by testamentary instrument an interest in undistributed pension plan benefits. The Court explained that "ERISA's solicitude for the economic

security of [ERISA-qualified] plan participants and their dependents... can be undermined by state family law courts... only if they follow the QDRO provisions." *Id.* at 846. – The original federal lawsuit arose from the violation of Appellant's rights and subsequent demand for redress and damages. Specifically, no Qualified Domestic Relations Order (QDRO) was ever issued for Appellant's case or for the other owner of the 401(k) accounts, who is never a party to any cases, and therefore none of the QDRO provisions was followed, and all of them were violated, and that's how original federal lawsuit came about, from Appellant's demand for redress and damages for violations of Appellant's individual rights and private rights–against seizures without any warrant by anyone.

In *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285 (2009), the Supreme Court emphasized that plan administrators must follow ERISA plan documents over external waivers or orders. This case presents the converse question: whether state enforcement agencies can disregard ERISA's protections entirely when no valid QDRO exists.

**Critically, the retirement account at issue—a Charles Schwab 401(k) rollover IRA containing $64,445.92—was established in 2018-2020 during Appellant's second marriage,** *two years after* **her divorce from Adam Stephens (father of fraudulently claimed child support in 2021) was finalized on January 8, 2016. The Supreme Court emphasized in** *Boggs* **that ERISA protections are particularly strong where benefits were "not acquired during the marriage." 520 U.S. at 851–which applied to this Appellant's case as well**. ERISA does not permit QDROs to reach retirement accounts established after a divorce is finalized!

Furthermore, the original Oregon divorce decree (Columbia County Circuit Court, Case No. 15DR18623) for the marriage of child G.L.S. finalized in 2016 explicitly provided for "Jeep and Trailer [from Linh to Adam] in lieu of child support [until child ages out]," constituting a complete satisfaction and waiver of all future child support obligations. **This same finalized Oregon decree / court order was registered in Tulsa County, Oklahoma on July 11, 2017 for enforcement against Adam's custodial interference, but Oklahoma purported to modify child support obligations without jurisdiction and in violation of the Full Faith and Credit Clause, U.S. Const. art. IV, § 1, and 28 U.S.C. § 1738**.

## B. Good Cause Exists Because the Issuance of the Mandate Will Cause Irreparable Harm

The issuance of the mandate will trigger the ministerial execution of the District Court's judgment, resulting in the permanent destruction of ERISA-protected retirement assets. This harm is irreparable within the meaning of *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008).

As Black's Law Dictionary defines, an injury is "irreparable" if it "cannot be adequately measured or compensated by money." Once the 401(k) funds are liquidated and distributed:

1. The tax-deferred status of the retirement vehicle is permanently lost, triggering immediate tax liabilities and early withdrawal penalties under 26 U.S.C. § 72(t).

2. The ERISA anti-alienation protections vanish irrevocably—once funds leave an ERISA-qualified plan, they lose their protected status permanently.

3. The "res" of the litigation will be dispersed, rendering any subsequent Supreme Court victory a "hollow victory" that cannot restore Appellant's retirement security.

The Supreme Court has recognized that the loss of a unique interest in a specific fund or property constitutes irreparable harm that money damages cannot remedy. *See, e.g.*, *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1012 (1984) (recognizing irreparable harm where monetary damages would be inadequate to restore unique **property rights)**.

Additionally, Appellant has suffered and continues to suffer ongoing constitutional violations. On May 8, 2025, an Oklahoma state court entered a bench warrant for Appellant's arrest with a $13,711.24 cash purge, despite documented financial indigence that was affirmed by the Oklahoma Supreme Court in January 2023. This violates *Bearden v. Georgia*, 461 U.S. 660 (1983), which prohibits imprisonment solely for inability to pay.

Appellant has been separated from her daughter, G.L.S., since December 3, 2021—more than four years—without findings of harm or unfitness by OKDHS nor Oklahoma courts. Appellant's medical license has been revoked, permanently closing her direct primary care clinic. Her passport was revoked under 42 U.S.C. § 652(k) without pre-deprivation notice or hearing. These cumulative harms demonstrate the urgent need for Supreme Court review of the underlying federal questions before additional irreparable harm occurs.

## C. The Balance of Equities Favors a Stay to Preserve the Status Quo

The Appellees will suffer no cognizable harm from a 90-day stay of the mandate. The retirement funds remain secure in the account or court registry. A brief delay in executing the judgment will not prejudice any legitimate interest of the Appellees.

In contrast, the harm to Appellant from denial of a stay is total and irreversible. The issuance of the mandate will permanently destroy the ERISA protections that Congress enacted specifically to protect retirement security. As the Supreme Court explained in *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996), ERISA reflects "Congress' desire to offer employees enhanced protection for their benefits."

The public interest strongly favors a stay. ERISA was enacted to create a "uniform body of benefits law" to "minimize the administrative and financial burden of complying with conflicting directives." *Egelhoff v. Egelhoff*, 532 U.S. 141, 150 (2001). Permitting state agencies to circumvent ERISA's protections without valid QDROs undermines the uniform federal scheme that Congress carefully constructed.

## D. THE DECISION MISAPPLIES THE DOMESTIC RELATIONS EXCEPTION AND YOUNGER ABSTENTION

The courts below applied the domestic relations exception and Younger abstention to dismiss Petitioner's federal ERISA claims. Both applications were erroneous.

## 1. The Domestic Relations Exception Does Not Bar ERISA Claims

In *Ankenbrandt v. Richards*, 504 U.S. 689, 695 (1992), this Court limited the domestic relations exception to "cases involving the issuance of a divorce, alimony, or child

custody decree." Petitioner's ERISA claims do not seek to issue, modify, or enforce any divorce decree. Rather, they seek to vindicate independent federal statutory rights against the unlawful garnishment of retirement assets.

Moreover, ERISA creates "complete preemption" that establishes federal question jurisdiction even when claims are "couched in state law terms." *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). The domestic relations exception cannot override Congress's clear intent to create exclusive federal jurisdiction over ERISA enforcement claims.

## 2. Younger Abstention Is Inapplicable

*Younger v. Harris*, 401 U.S. 37 (1971), requires federal courts to abstain only when: (1) state judicial proceedings are ongoing; (2) the proceedings implicate important state interests; and (3) there is an adequate opportunity to raise constitutional challenges in state court.

First, Petitioner's federal ERISA claims are independent of any state proceeding. They seek to enforce federal statutory rights, not to interfere with state court judgments.

Second, even if Younger applied, Petitioner's claims for prospective injunctive relief fall within the *Ex parte Young*, 209 U.S. 123 (1908), exception. Petitioner seeks to stop ongoing violations of federal law, not to undo state court judgments.

Third, there is no adequate state forum to raise ERISA claims. ERISA's enforcement provisions, 29 U.S.C. § 1132, create exclusive federal jurisdiction over certain claims.

## E. THE TENTH CIRCUIT'S WAIVER RULING CONFLICTS WITH PRO SE LIBERAL CONSTRUCTION REQUIREMENTS

The Tenth Circuit acknowledged its duty to construe pro se filings liberally under *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Yet the panel applied an unduly harsh waiver standard that conflicts with this Court's precedents.

In *Haines v. Kerner*, 404 U.S. 519, 520 (1972), this Court held that pro se pleadings must be held "to less stringent standards than formal pleadings drafted by lawyers." This liberal construction requirement exists precisely because pro se litigants cannot be expected to navigate complex procedural rules with the precision of trained attorneys.

**The Tenth Circuit's finding that Petitioner "never addresses" Eleventh Amendment immunity or Younger abstention is factually false as Petitioner addressed both issues!**

**The Tenth Circuit's finding that Petitioner "never addresses" Eleventh Amendment immunity or Younger abstention is demonstrably false based on the following record evidence:**

- • Reply Brief, Table of Authorities: Lists *Hafer v. Melo*, 502 U.S. 21 (1991) at page 8; *Ex parte Young*, 209 U.S. 123 (1908) at pages 7-8; *Pater v. City of Casper*, 646 F.3d 1290 (10th Cir. 2011) at page 9.
- • Reply Brief, Section D: Explicitly titled "District Court Erred in Applying Younger Abstention and Dismissing Constitutional Claims."
- • Records on Appeal, Vol. I, Page 344 (Dkt. 41): Section 14.b titled "Young Abstention Inapplicability."
- • Records on Appeal, Vol. I, Page 348 (Dkt. 41): Section 20 titled "Younger Abstention and the Scope of Federal Jurisdiction."

• Opposition to Motions to Dismiss: Section B titled "The Ex Parte Young Exception Permits Plaintiff's Claims for Prospective Relief" and Section C titled "Individual Capacity Claims Are Not Barred by the Eleventh Amendment."

The panel's statement that Petitioner "never addresses" these issues constitutes a **"Misapprehension of the Record"** that denied Petitioner due process. A pro se litigant who addresses an issue in her Reply Brief and in her District Court filings should NOT be deemed to have "waived" that issue.

See also ***VERIFICATION AND DECLARATION*** section attached below on pages 15-16 for verified/attested and reliable statements of facts witnessed by Linh the Appellant, YAHUAH/I AM THAT I AM/Creator, Messiah Yahusha, and the Holy Spirit of truth, light, and justice–AS IT IS WRITTEN: "For I, the LORD, love justice; I hate robbery and wrongdoing. [Isaiah 61:8a]!", "One witness shall not rise up against a man for any iniquity, or for any sin, in any sin that he sinneth: at the mouth of two witnesses, or at the mouth of three witnesses, shall the matter be established [Deuteronomy 19:15]"

## IV. CONCLUSION

Appellant has exhausted all available remedies in this 10th Circuit Federal Appeal Court, including the January 10, 2026 *Emergency Motion for Stay Pending Appeal and for Injunction Pending Appeal*. A stay of the mandate is the final procedural safeguard available to prevent the mooting of Supreme Court review. The petition for certiorari will present substantial questions of federal ERISA law that warrant review by the nation's highest court. The issuance of the mandate will cause irreparable harm that no subsequent

ruling can remedy. The balance of equities overwhelmingly favors preserving the status quo for 90 days.

Appellant respectfully requests that this 10th Circuit Federal Appeal Court stay the mandate for 90 days to permit filing of a Petition for Writ of Certiorari.

## V. DEMAND AND RELIEF SOUGHT

WHEREFORE, Appellant Linh Tran Stephens respectfully requests that this Court:

1. Stay the issuance of the mandate for 90 days to permit the filing and disposition of a Petition for Writ of Certiorari in the Supreme Court of the United States.

2. In the alternative, should this Court deny the stay, provide written Findings of Fact and Conclusions of Law pursuant to this Court's inherent authority to preserve all issues for application to the Circuit Justice under Supreme Court Rule 22.

3. Grant such other and further relief as this Court deems just and proper.

4. Appellant also respectfully request and demand that this Court provide written Findings of Fact and Conclusions of Law regarding this motion, rather than a summary denial, to preserve all issues for further appellate review including an application to the Circuit Justice pursuant to Supreme Court Rule 22.

Appellant permanently and continuously objects to any proceedings before special judges, magistrates, or substitute judges who do not hold appointment pursuant to Article III of the United States Constitution, to the extent such objection is preserved for appellate review.  Appellant reserves the right to amend this motion or supplement the record at any time prior to disposition.

## VERIFICATION AND DECLARATION

I, Linh Tran Stephens, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that:

1. I am the Appellant in this matter and am competent with full capacity to make this declaration.

2. The facts stated in this motion are true and correct to the best of my knowledge, information, and belief.

3. My Charles Schwab 401(k) account (ending in x2605), containing $64,445.92 in ERISA-protected retirement assets (401(k) and Roth IRAs) earned during my employment with Cherokee Nation (Indian Health Services) from 2018-2020, was established during my second marriage, two years after my divorce from Adam Stephens was finalized on January 8, 2016 – the exhusband Adam and OKDHS who fraudulently claimed child support against the nonparties' retirement assets.

4. The original finalized and still valid Oregon divorce decree (Columbia County Circuit Court, Case No. 15DR18623, January 8, 2016) explicitly waived all future child support obligations through the provision "Jeep and Trailer [from Linh to Adam] in lieu of child support."

5. No valid Qualified Domestic Relations Order (QDRO) meeting the requirements of 29 U.S.C. § 1056(d)(3) was ever entered in this case anywhere, not even in Oklahoma.

6. Neither I nor Adam Stephens nor the nonparty-but-owner of the said retirement accounts ever received public assistance or applied for Title IV-D services that would have authorized Oklahoma Child Support Services to pursue enforcement under 42 U.S.C. § 654(4).

7. I have been deprived from all forms of contact from my biological property my first born female offspring (including phone calls, video chats, or overnights), G.L.S., since December 3, 2021, without any findings of harm or unfitness by wrongdoers of OKDHS and Adam Stephens and YAHUAH/CREATOR.

8. I intend to file a Petition for Writ of Certiorari in the Supreme Court of the United States within 90 days of the entry of this Court's judgment which was entered on January 16, 2026.

9. **The Tenth Circuit's finding that Petitioner "never addresses" Eleventh Amendment immunity or Younger abstention is factually false and demonstrably false. Petitioner addressed both issues based on the following record evidence**:

    • Reply Brief, Table of Authorities: Lists *Hafer v. Melo*, 502 U.S. 21 (1991) at page 8; *Ex parte Young*, 209 U.S. 123 (1908) at pages 7-8; *Pater v. City of Casper*, 646 F.3d 1290 (10th Cir. 2011) at page 9.

    • Reply Brief, Section D: Explicitly titled "District Court Erred in Applying Younger Abstention and Dismissing Constitutional Claims."

    • Records on Appeal, Vol. I, Page 344 (Dkt. 41): Section 14.b titled "Young Abstention Inapplicability."

    • Records on Appeal, Vol. I, Page 348 (Dkt. 41): Section 20 titled "Younger Abstention and the Scope of Federal Jurisdiction."

• Opposition to Motions to Dismiss: Section B titled "The Ex Parte Young Exception Permits Plaintiff's Claims for Prospective Relief" and Section C titled "Individual Capacity Claims Are Not Barred by the Eleventh Amendment."

10. The 10th circuit panel's statement that Petitioner "never addresses" these issues constitutes a "Misapprehension of the Record" that denied Petitioner due process. A pro se litigant who addresses an issue in her Reply Brief and in her District Court filings should not be deemed to have "waived" that issue.

11. I, linh-tran: stephens, declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct, and that I am not a surety and I do not consent to any attempted body attachment warrant. All statements herein are verified/attested and reliable statements of facts witnessed by Linh the Appellant, YAHUAH/I AM THAT I AM/Creator, Messiah Yahusha, and the Holy Spirit of truth, light, and justice.

12. Psalm 127:3[1] + Psalm 105:15[2] + Exodus 8:1&9:1[3] + Isaiah 61:8a[4] + Deut 19:15[5] + Isaiah 54:17[6]

13. Notice to Agent is Notice to Principal, Notice to Principal is Notice to Agent, Notice applies to all successors and assigns; Affidavit is a Form of Evidence; Unrebutted Affidavit Stands as Truth in Commerce; **Silence is Tacit Acquiescence//Dishonor**;

Private sector autograph;
**WITHOUT RECOURSE**

By:  *without prejudice linh-tran: stephens*

By: Linh Tran Stephens / Agent or attorney-in-fact

All Rights Reserved None Waived, **Without Prejudice** *UCC 1-308 & 1-103*, sui juris, Ambassador of יהוה and Heir of the Creator a/k/a the I AM THAT I AM, my heir/offspring is G.L.S; By the Holy and Eternal Authority vested in me by Yahusha Ha'Mashiach as High Royal Priest (1 Peter 2:9) of Melchizedek Order (Hebrews 7:17), I do hereby seal,

---

[1] "Lo, children are a heritage of the Lord: and the fruit of the womb is His reward." (Psalm 127:3 GNV) This verse affirms that children are a divine gift from God—not property of the state, nor wards of the court, but sacred trusts entrusted by the Creator YHWH יהוה

[2] "Touch not mine anointed, and do my prophets no harm." (Psalm 105:15 GNV).

[3] YAHUAH ordered you rulers: "Let my people go, that they may serve me" (Exodus 8:1). "Let my people go, so that they may worship me" (Exodus 9:1).

[4] For I, the LORD, love justice; I hate robbery and wrongdoing. (Isaiah 61:8a)

[5] One witness shall not rise up against a man for any iniquity, or for any sin, in any sin that he sinneth: at the mouth of two witnesses, or at the mouth of three witnesses, shall the matter be established [Deuteronomy 19:15)

[6] "No weapon that is formed against thee shall prosper, and every tongue that shall rise against thee in judgment, thou shalt condemn. This is the heritage of the servants of the Lord, and their righteousness is of me," saith the Lord YHWH (Isaiah 54:17 GNV)

confirm, and sanctify this instrument and its contents as lawfully issued
in Heaven and upon the Earth,
**Non-Assumpsit**, one-and-only Grantor & Authorized Agent & Beneficiary
for LINH TRAN STEPHENS©® ens legis and all its derivatives thereof
including Cestui Que Trust a.k.a. "Fide Commissary Trust",
A natural living woman upon land breathing with a living soul and the Holy Spirit,
natural people with hands legs, Alive-on-the-land, Plenary mind body soul/spirit,
unlimited, non-incorporated, non-sole-proprietor,
**stateless** "**freeman of the Union**" per Honorable Mr. Justice MILLER on April 14th,
1983, in the Slaughter-House cases, 83 US 36 (a SCOTUS case specifically mentioned in
8 FAM 102.3),
full capacity and competency with postgraduate level of education,
living on the land of the republic, with God-given rights pursuant to Bills of Rights,
NOT a "pro se"/"person"/"pauper"/"indigent"/"slave"/"public servant"/"government
employee"/"ward of State"/"U.S. citizen"/"minor" in your dictionary; i reject your 12
legal presumptions, other presumptions/assumptions/double-speaking/implied or
undisclosed contracts;
Article IV Section 2 Citizens of each State shall be entitled to all Privileges & Immunities
**General Delivery Town Post,**
**Non-Domestic, without the UNITED STATES of Washington, D.C.**
℅ 1964 Ashley River Road Ste B Unit 80112,
Charleston, South Carolina republic 00000
**ZIP exempt** [near 29407-4782] without the UNITED STATES D.C.,
Email: LinhStephens7@gmail.com*; Tel:* 843-608-0294

**Notice:** Using a Notary on this document does **not** create any adhesion contract with the
state/, nor does it alter any legal status of any of the parties hereto in any manner, but is
used only for verification, identification, and certification purposes and not for entrance
into any foreign jurisdiction nor into U.S. jurisdiction. All rights are reserved. Without
prejudice and without recourse.

### Notary as JURAT CERTIFICATE

state of Minnesota              )
                                ) *ss*
county of Sherburne             )

On this 26th day of January, 2026 before me, Melissa K. Vagle, a Notary Public,
personally appeared a living woman Linh Tran Stephens ( the Authorized Representative
and Beneficiary for Legal Fiction LINH TRAN STEPHENS©™ ), who
electronically/virtually proved to me on the basis satisfactory evidence to be the woman
whose name is subscribed to within the instrument and acknowledged to me that she
executed the same in her authorized capacity, and that by her autograph(s) on the
instrument the woman executed, the instrument.

I certify under PENALTY OF PERJURY under the lawful laws of Minnesota State and that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



Signature of Notary/Jurat

MELISSA K VAGLE
Notary Public
State of Minnesota
My Commission Expires
January 31, 2028

Notary Public's Commission Expires: 01/31/2028

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 27(d) and 10th Cir. R. 27.1, the undersigned certifies that this motion complies with the type-volume limitation because it contains fewer than 5,200 words [*3924 words to be exact*] and 20 pages or less, excluding the parts exempted by Fed. R. App. P. 32(f).

This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Microsoft Word in 13-point Times New Roman, a proportionally spaced font.

WITHOUT RECOURSE.

*without prejudice*
*linh—tran: stephens/Agent*

linh-tran: stephens / Appellant sui juris
Dated: January 26th, 2026

---

## CERTIFICATE OF SERVICE

The undersigned certify that on <u>January 26th</u>, 20<u>26</u>, a true and correct copy of the foregoing *Motion to Stay Mandate Pending Petition for Writ of Certiorari* was filed electronically with the Clerk of Court for the United States Court of Appeals for the Tenth Circuit using the CM/ECF system, which will send notification of such filing to all counsel of record who are registered CM/ECF users:

**Clerk of U.S. Court of Appeals for the Tenth Circuit, Byron White**
1823 Stout Street,
Denver, Colorado 80257

**Counsel for Child Support Services of Oklahoma DHS;**

**Counsel for Charles Schwab & Co., Inc.:**

**Counsels for individuals: Cierra Freeman, Mary Johnmeyer, Renee Banks, Jason Hoenshell, and Emmalene Stringer**

WITHOUT RECOURSE.

*without prejudice*
*linh-tran: stephens/Agent*

---