No. _____

In the
# Supreme Court of the United States

Linh Tran Stephens, *sui juris, natural living breathing woman with a living soul and the Holy Spirit, Ambassador of Christ/Yahusha,*

*Applicant,*

v.

CHILD SUPPORT SERVICES OF OKLAHOMA DEPARTMENT OF HUMAN SERVICES, CHARLES SCHWAB & CO., INC., Cierra Freeman, Mary Johnmeyer, Renee Banks, Jason Hoenshell, and Emmalene Stringer et al.,
*Respondents.*

On Application for Stay Pending Filing of two
Petitions for Writ of Certiorari to: (1) United States Court of Appeals for the Tenth Circuit and (2) OKLAHOMA COURT OF CIVIL APPEALS AND OKLAHOMA SUPREME COURT

**EMERGENCY APPLICATION FOR A STAY OF THE MANDATE AND FOR IMMEDIATE ADMINISTRATIVE STAY AND EMERGENCY INJUNCTION PENDING DISPOSITION OF TWO (2) PETITIONS FOR WRIT OF CERTIORARI** ADDRESSED TO THE HONORABLE NEIL M. GORSUCH AS CIRCUIT JUSTICE FOR THE TENTH CIRCUIT

WITHOUT RECOURSE
*By:* Linh Tran Stephens
*sui juris Applicant, Agent or attorney-in-fact, natural living woman*
**in care of:** 1964 Ashley River Rd Ste B Unit 80112, Charleston, South Carolina 00000 ZIP EXEMPT [near 29407] without the United States District Columbia
Telephone: (843) 608-0294 | Email: LinhStephens7@gmail.com

January 30, 2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.......................................................................................ii-iii

APPENDIX WITH RECORD CITATIONS..............................................................iv-vi

APPENDIX LIST WITH RECORD ON APPEAL (ROA) CITATIONS…………..vii-xi

INTRODUCTION AND SUMMARY...........................................................................1

JURISDICTIONAL STATEMENT................................................................................3

OPINIONS AND ORDERS BELOW...........................................................................4

STATEMENT OF LEGAL STATUS OF APPLICANT...............................................4

STATEMENT OF THE CASE (AFFIDAVIT FORM) VERIFICATION AND
DECLARATION (28 U.S.C. § 1746)…………….....................................................5

GROUNDS FOR EMERGENCY RELIEF.................................................................11

1 Reasonable Probability of Certiorari                  page 11

2 Fair Prospect of Reversal                              page 14

3 Irreparable Harm                                       page 14

4 Balance of Equities                                    page 20

ARGUMENT...............................................................................................................21

   I. APPLICANT FACES IRREPARABLE HARM.....................................................21

   II. LIKELIHOOD OF SUCCESS ON THE MERITS..............................................22

   III. ROOKER-FELDMAN DOCTRINE INAPPLICABILITY..................................33

   IV. BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR A STAY.........35

   V. PREEMPTIVE DEFENSES AGAINST MOTION TO DISMISS.......................36

   VI. REQUEST FOR CRIMINAL REFERRAL TO DOJ..........................................37

DEMAND FOR JURY TRIAL....................................................................................38

DEMAND AND RELIEF SOUGHT...........................................................................39

NOTARY AS JURAT CERTIFICATE (COMMON LAW)..........................................41

PROOF OF SERVICE…………...............................................................................43

# TABLE OF AUTHORITIES

## CASES (Latest to Oldest)

*Baker v. General Motors Corp.*, 522 U.S. 222 (1998)................................ page 12, 26
*Bearden v. Georgia*, 461 U.S. 660 (1983)................................................... page 22, 29
*Boggs v. Boggs*, 520 U.S. 833 (1997)........................................................ page 12, 29
Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009)............................. page 31
*Chambers v. Mississippi*, 410 U.S. 284 (1973)............................................. page 30
*D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)............................... page 33
*Ellen R. Van Valkenburg v. Albert Brown*, 43 Cal. 43 (1872)……….…..... page 4, 5
*Elrod v. Burns*, 427 U.S. 347 (1976)............................................................ page 14
*Ex parte Young*, 209 U.S. 123 (1908).................................................. page 2, 10, 36
*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005).......... page 35
*Glossip v. Oklahoma*, 604 U.S. ___ (2024)................................................... page 16
*Griffin v. Illinois*, 351 U.S. 12 (1956)......................................................... page 22
*Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365 (1990)… page 29
*Hafer v. Melo*, 502 U.S. 21 (1991)......................................................... page 10, 36
*Haines v. Kerner*, 404 U.S. 519 (1972)......................................................... page 35
*Havens v. Johnson*, 783 F.3d 776 (10th Cir. 2015).................................. page 22, 30
*Hollingsworth v. Perry*, 558 U.S. 183 (2010)............................................... page 11
*In re Murchison*, 349 U.S. 133 (1955)......................................................... page 25
*Kent v. Dulles*, 357 U.S. 116 (1958) ........................................................... page 13
*Lance v. Dennis*, 546 U.S. 459 (2006).......................................................... page 35
*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) ..................... page 10
*Marbury v. Madison*, 5 U.S. 137 (1803) .................................................…..... page 9
*Monell v. Dep't of Social Services*, 436 U.S. 658 (1978) ............................. page 30
*Nken v. Holder*, 556 U.S. 418 (2009) ........................................................... page 11
*Pater v. City of Casper*, 646 F.3d 1290 (10th Cir. 2011)............................. page 2, 10
*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)........................................ page 33
*Santosky v. Kramer*, 455 U.S. 745 (1982)................................................... page 26
*SEC v. Jarkesy*, 603 U.S. 109 (2024)........................................... page 12, 14, 33, 38
*Slaughter-House Cases*, 83 U.S. 36 (1873)................................................... page 4, 5
*Tate v. Short*, 401 U.S. 395 (1971) ............................................................. page 22
*Timbs v. Indiana*, 139 S. Ct. 682 (2019)................................................. page 22, 29
*Troxel v. Granville*, 530 U.S. 57 (2000)........................................... page 7, 21, 26
*Turner v. Rogers*, 564 U.S. 431 (2011).......................................... page 9, 12, 15, 22
*United States v. Dixon*, 509 U.S. 688 (1993)........................................... page 27, 28
*V.L. v. E.L.*, 577 U.S. 404 (2016).......................................................... page 13, 16, 26

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. III (Judicial Power) ........................................... page 5, 12, 33, 39
U.S. Const. art. IV, § 1 (Full Faith and Credit Clause) .................... page 12, 15, 26
U.S. Const. amend. IV (Unreasonable Seizures) …………………………… page 7, 8

U.S. Const. amend. V (Due Process, Double Jeopardy, Self-Incrimination)
.......................................................................................... page 11, 12,  26, 27
U.S. Const. amend. VI (Sixth Amendment Counsel, Confrontation)…….. page 12, 24
U.S. Const. amend. VII (Right to Trial by Jurors of Peers)…………..…… page 12, 38
U.S. Const. amend. VIII (Cruel and Unusual Punishment, Excessive Fines)..page 29
U.S. Const. amend. XIV (Due Process, Equal Protection)………………page 13, 22, 25

## FEDERAL STATUTES

18 U.S.C. § 241 (Conspiracy Against Rights) ................................................ page 3, 38
18 U.S.C. § 242 (Deprivation of Rights Under Color of Law) ..................... page 3, 38
18 U.S.C. § 1341 (Mail Fraud) ...................................................................... page 3, 38
18 U.S.C. § 1343 (Wire Fraud) ............................................................. page 2, 3, 7, 38
18 U.S.C. § 1512 (Obstruction of Justice)…………………………………… page 3, 9
18 U.S.C. § 1961 (RICO) ......................................................................... page 4, 8, 39
28 U.S.C. § 1254(1) (Supreme Court Jurisdiction) ........................................... page 4
28 U.S.C. § 1651(a) (All Writs Act) ............................................................... page 1, 4
28 U.S.C. § 1738 (Full Faith and Credit) ......................................................... page 26
28 U.S.C. § 1738A (Parental Kidnapping Prevention Act) ............................. page 26
28 U.S.C. § 1738B (Full Faith and Credit for Child Support Orders Act)....... page 26
28 U.S.C. § 1746 (Unsworn Declarations) ……………………………………… page 6
28 U.S.C. § 2101(f) (Stay Pending Certiorari) ............................................. page 1, 3
28 U.S.C. § 2254 (Habeas Corpus) ................................................................... page 9
29 U.S.C. § 1056(d) (ERISA Anti-Alienation) ...................................... page 8, 14, 30
29 U.S.C. § 1132 (ERISA Enforcement) ……………………………………… page 29
29 U.S.C. § 1144 (ERISA Preemption) ……………………………………… page 12, 34
42 U.S.C. § 652(k) (Passport Denial/Revocation) ................................ page 9, 13, 20
42 U.S.C. § 654(4) (Title IV-D)……………………………………………… page 6, 9
42 U.S.C. § 1983 (Civil Rights) ……………………………………… page 22, 30, 38
Fair Debt Collection Practices Act (FDCPA)………………………………page 19, 22
Fed. R. Civ. P. 11 (Sanctions)…………………………………………………… page 37
Supreme Court Rule 23 …………………………………………….. page 1, 3, 4
Supreme Court Rule 33.2 (8.5" x 11" Paper Format)

# APPENDIX WITH RECORD CITATIONS

Appendix A — Tenth Circuit Order and Judgment (January 16, 2026)……….... 1a

Appendix B — Tenth Circuit Order Denying Motion to Stay Mandate and Motion for Full Disclosure Under FDRPTA (January 28, 2026) ......................................5a

Appendix C — Tenth Circuit Order Denying Emergency Motion for Stay Pending Appeal and for Injunction Pending Appeal (January 16, 2026) .......................... 6a

Appendix D — Tenth Circuit Order Denying Verified Petition for Writ of Mandamus and Emergency Injunctive Relief (July 11, 2025) ................................................. 10a

Appendix E — Oregon Divorce Decree, Case No. 15DR18623 (January 8, 2016) (excerpts showing "Jeep and Trailer in lieu of child support" stated five times)...12a

Appendix F — Confirmation of Registration of Foreign Order from Oregon to Oklahoma ……………………………........................................................……... 22a

Appendix G — Court Filings Acknowledging Oregon Decree as Binding ("[Oklahoma] Court does not have the authority to modify that decree retrospectively… the Oregon decree is binding on this Court") .......................... 25a

Appendix H — Order Modifying Decree of Dissolution of Marriage (excerpts showing Father's income and fabricated income imputed to Mother) .................27a

Appendix I — Mother's Exhibit List for Contempt of Court Proceedings (showing evidence blocked from jury trial, all except 2 items excluded) ........................... 29a

Appendix J — Unrebutted IRS Tax Returns Showing Zero Income (2021 and 2022 samples) ...................................................................................................... 33a

Appendix K — Transcript Excerpt: Father's Testimony of Zero Harm to Child Without Mother's Child Support (February 1, 2024) ......................................... 47a

Appendix L — Oklahoma Supreme Court Order Affirming Indigency, Case No. DF-120849 (January 23, 2023) ("Appellee's Objection to Appellant's Pauper's Affidavit is denied") and Order Assigning State-Appointed Standby Counsel Cierra Freeman ...................................................................................................................... 49a

Appendix M — Evidence of Respondent Father's Prior Termination of Parental Rights to Previous Child .......................................................................................50a

Appendix N — Jury Trial Transcript Excerpts Documenting Constitutional, Substantive, and Human Rights Violations (February 6-7, 2024) .................... 56a

Appendix O — Professional Sworn Statements and Affidavits: ........................ 84a
(i) Jeri Townsend, Advanced Nurse Practitioner, neighbor/family friend (December 18, 2022)
(ii) Dr. Moris Laca (December 19, 2021)
(iii) Petitioner Linh Tran Stephens, Affidavit of Factual Events (3 pages)
(iv) Dr. Jim Lovett, Child Psychologist, 30+ years experience (June 15, 2020)
(v) Jayme Martin-Wingo, School Director, Miss Helen's Private School
(vi) Susie Panzer, Schoolteacher (vii) Parenting Coordinator Report Against Adam Stephens
(viii) Carl and Helen Johnson, Church Deacons (May 29, 2020)

Appendix P — June 1, 2022 Hearing Transcript Excerpts, Tulsa County District Court (showing false testimony pattern in 400+ similar cases; OKDHS caseworker Bridget O'Brien impeached and admission: "I know you're guilty just by looking at you") ................................................................................................ 109a

Appendix Q — HHS OCRE Recusal Letter, Oklahoma Office of Civil Rights Enforcement (September 24, 2025), Case Nos. CR-23-175-PA, CR-23-176-PA, CR-23-177-PA, and CR-23-193-PA ("This recusal enables you to seek other avenues of recourse") (2 pages) ............................................................................. 151a

Appendix R — Private Attorney General Letter to SCOTUS (September 17, 2025), "Establishment of the missing independent investigative mechanism of international law and treaty compliance under the UNCAT and the Istanbul Protocol," Institute for Advancement of Justice & Human Rights (excerpt, page 10 referencing Petitioner's case) ................................................................. 153a

Appendix S — Evidence of RICO Violations by OKDHS and State of Oklahoma Courts ........................................................................................................ 157a

Appendix T — Americans with Disabilities Act (ADA) Violations:.................... 173a
(i) Formal ADA Complaint by Marieke Vekemans Randoy (August 7, 2023) detailing systemic denial of accommodations (5 pages)
(ii) ADA Accommodation Request by Dr. Jeremy Ransdell, D.O. (May 16, 2022) diagnosing chronic tinnitus and confirming non-native English speaker status; recommended accommodations denied (2 pages)

Appendix U — Affidavit of ADA Advocate Regarding May 2, 2025 Tulsa County Hearing (sworn firsthand account of judicial misconduct by Special Judge Loretta Radford, Sheriff, and Bailiff) (2 pages) ............................................................. 180a

Appendix V — Notice of Liens Filed Against Petitioner (January 19, 2024) (intent to cause homelessness) ........................................................................ 182a

Appendix W — May 8, 2025 Contempt Order and Bench Warrant (cash purge: $13,711.24; incarceration: 6 months) ................................................... 184a

Appendix X — Additional Contempt Orders and Malicious Prosecution Orders in Case No. FD-2015-2228 (issued despite pending appeals before SCOTUS) ..... 188a

Appendix Y — Original Untruncated Written Closing Argument Filed by Mother (9 pages) .......................................................................................... 198a

Appendix Z — Altered Exhibit of Closing Argument as Appears in Court Record DF-122022 (March 13, 2024 Amended Petition in Error) (only 2 pages instead of 9) .............................................................................................................. 207a

Appendix AA — Oklahoma State Auditor & Inspector Press Release on OKDHS (August 27, 2025) documenting $93.4 million in "questioned costs" including $63.6 million in mismanaged federal grant money (2 pages) ..................................... 212a

**APPENDIX LIST WITH RECORD ON APPEAL (ROA) CITATIONS**

Appendix A — Tenth Circuit Order and Judgment (January 16, 2026)

ROA: Appellate Case 25-5063, Document 57 (Filed 01/10/2026)
Project File: ORDER_10th_circuit_fri_011626.pdf

Appendix B — Tenth Circuit Order Denying Motion to Stay Mandate and Motion for Full Disclosure Under FDRPTA (January 28, 2026)

ROA: Appellate Case 25-5063, Document 61 (Filed 01/26/2026)

Appendix C — Tenth Circuit Order Denying Emergency Motion for Stay Pending Appeal and for Injunction Pending Appeal (January 16, 2026)

ROA: Appellate Case 25-5063, Document 59

Appendix D — Tenth Circuit Order Denying Verified Petition for Writ of Mandamus and Emergency Injunctive Relief (July 11, 2025)

ROA: Appellate Case 25-5063
Emergency petition documenting systematic OKDHS violations and pattern of fraud upon court

Appendix E — Oregon Divorce Decree, Case No. 15DR18623 (January 8, 2016)

ROA: Document 7-2, Page 27 (Appellate Case 25-5063)
ROA: Document 7-2, Page 64: Statement of Facts ¶47(ii)
ROA: Document 54, Page 27 of 126 (Case 4:24-cv-00216-JDR-CDL)
Tulsa County Registration: Document #1037428505, registered July 11, 2017
Key: "Jeep and Trailer in lieu of child support" stated FIVE times; 50/50 joint custody; Judge Cathleen B. Callahan presiding

Appendix F — Confirmation of Registration of Foreign Order from Oregon to Oklahoma

ROA: Document 7-2, Pages 18-20 (Appellate Case 25-5063): Oregon decree registration July 11, 2017
Tulsa County Document #1037428505

Appendix G — Court Filings Acknowledging Oregon Decree as Binding

ROA: Document 7-2, Pages 65-66 (Appellate Case 25-5063)
Key Quote: "[Oklahoma] Court does not have the authority to modify that decree retrospectively… the Oregon decree is binding on this Court"


Appendix H — Order Modifying Decree of Dissolution of Marriage (excerpts)

ROA: Document 7-2, Pages 84, 115 (Appellate Case 25-5063)
Shows Father's income and fabricated income imputed to Mother


Appendix I — Mother's Exhibit List for Contempt of Court Proceedings

ROA: Document 54, Pages 29-32 (Case 4:24-cv-00216-JDR-CDL)
Evidence blocked from jury trial; all except 2 items excluded


Appendix J — Unrebutted IRS Tax Returns Showing Zero Income (2021-2022)

ROA: Document 7-1, Pages 411-414 (Appellate Case 25-5063)
Filed with 12-29-2022 Response to Objection to Pauperis Affidavit


Appendix K — Transcript Excerpt: Father's Testimony of Zero Harm to Child (February 1, 2024)

ROA: Document 7-2, Pages 84, 115 (Appellate Case 25-5063)
Transcript Files: Transcript_020124_Feb124Stephens_1.PDF;
Transcript_020124_partial_Stephens_Trial__Portions_of_Adam_Stephens_Testimony_1.pdf
Key Facts: Father testified child NOT harmed without Mother's support; Father's income ~$6,000/month; child has NOT required government assistance; testimony NEVER rebutted


Appendix L — Oklahoma Supreme Court Order Affirming Indigency, Case No. DF-120849 (January 23, 2023)

ROA: Document 7-1, Pages 411-414 (Appellate Case 25-5063)
ROA: Document 7-1, Page 99: Standby counsel Cierra Freeman appointed

ROA: Document 54, Page 47 of 126: References to standby counsel during February 2024 contempt proceedings
Key Quote: "Appellee's Objection to Appellant's Pauper's Affidavit is denied"


Appendix M — Evidence of Respondent Father's Prior Termination of Parental Rights

ROA: Document 28-2, Pages 35-40 (Case 4:25-cv-00322-SEH-JFJ)
Court date: 11/20/2015; subsequent protective order issued when child turned 15


Appendix N — Jury Trial Transcript Excerpts (February 6-7, 2024)

ROA: Document 7-2, Pages 84, 115 (Appellate Case 25-5063)
Transcript Files: transcript_20240206_part1_compressed_feb_6_and_7_2024_vol_1; transcript_20240206_part2_compressed_feb_6_and_7_2024_vol_2
Documents constitutional violations including Turner v. Rogers, Fifth/Sixth Amendment violations


Appendix O — Professional Sworn Statements and Affidavits

ROA: Document 54, Pages 84-108 (Case 4:24-cv-00216-JDR-CDL)
Includes: APRN Jeri Townsend (12/18/2022); Dr. Moris Laca (12/19/2021); Dr. Jim Lovett (06/15/2020); School Director Jayme Martin-Wingo; Teacher Susie Panzer; Parenting Coordinator Report; Church Deacons Carl and Helen Johnson (05/29/2020)


Appendix P — June 1, 2022 Hearing Transcript Excerpts

ROA: Document 7-2, Pages 65-66 (Appellate Case 25-5063)
ROA: Document 28-2, Page 29 of 102 (Case 4:25-cv-00322-SEH-JFJ)
Transcript File: 07_Transcript_20220601_emergency_custody_frauds_upon_court_06-01-22.pdf
Key: Bridget O'Brien admission "I KNOW YOU'RE GUILTY JUST BY LOOKING AT YOU"; 400+ similar cases pattern
Criminal History: O'Brien (a/k/a Bridget Kay Menser) felony Case No. CF-1999-2911; ROA Document 28-2, Page 36


Appendix Q — HHS OCRE Recusal Letter (September 24, 2025)

ROA: Appellate Case 25-5063, Document 61, Page 7 (Filed 01/26/2026)
Case Nos. CR-23-175-PA, CR-23-176-PA, CR-23-177-PA, CR-23-193-PA
Significance: Establishes exhaustion of state remedies; no adequate state forum
exists


Appendix R — Private Attorney General Letter to SCOTUS (September 17, 2025)

Institute for Advancement of Justice & Human Rights
Page 10 references Petitioner's case as nationally significant
Re: UNCAT and Istanbul Protocol compliance


Appendix S — Evidence of RICO Violations by OKDHS

ROA: Document 7-2, Pages 30, 84 (Appellate Case 25-5063): ERISA violations
ROA: Document 7-2, Pages 191-195: $65,000 seized but not distributed
Reply Brief, 10th Circuit: Father's attorney testified funds never received; Judge
Seibert doesn't know whereabouts
401(k) Details: Charles Schwab account x2605; $64,445.92 ERISA-protected;
established during second marriage; seized May 7, 2024 without QDRO or spousal
consent


Appendix T — Americans with Disabilities Act (ADA) Violations

ROA: Document 54, Pages 173-179 (Case 4:24-cv-00216-JDR-CDL)
Formal ADA Complaint by Marieke Vekemans Randoy (08/07/2023)
Dr. Jeremy Ransdell accommodation request (05/16/2022)


Appendix U — Affidavit of ADA Advocate Regarding May 2, 2025 Hearing

ROA: Appellate Case 25-5063, Document 57, Pages 30-32
Sworn firsthand account of judicial misconduct by Special Judge Loretta Radford


Appendix V — Notice of Liens Filed Against Petitioner (January 19, 2024)

ROA: OSCN Docket Entry 01-19-2024
Intent to cause homelessness


Appendix W — May 8, 2025 Contempt Order and Bench Warrant

ROA: Appellate Case 25-5063, Document 57, Pages 30-32, 37-38
ROA: Case 4:25-cv-00322-SEH-JFJ, Document 59-1, Pages 1-4
OSCN Docket: Document #1061165633
Key: Special Judge Loretta Radford; 6 months incarceration; $13,711.24 cash purge;
no ability-to-pay hearing; double jeopardy


Appendix X — Additional Contempt Orders and Malicious Prosecution Orders

ROA: OSCN Docket Case No. FD-2015-2228
Issued despite pending appeals before SCOTUS


Appendix Y — Original Untruncated Written Closing Argument (9 pages)

ROA: Document 7-2 (Appellate Case 25-5063)
Filed February 2024


Appendix Z — Altered Exhibit of Closing Argument (only 2 pages instead of 9)

ROA: DF-122022 03-13-2024 Amended Petition in Error
Evidence of record tampering; 8 of 10 pages missing; Glossip v. Oklahoma violation


Appendix AA — Oklahoma State Auditor Press Release on OKDHS (August 27,
2025)

ROA: Reply Brief, 10th Circuit, Exhibit 5
Key: $93.4 million "questioned costs" FY 2023; $63.6 million mismanaged federal
grant money
Corroborates RICO claims


DOJ Letters on Ability-to-Pay Requirements (Referenced Throughout)

March 14, 2016 DOJ Letter: Guidelines on court fines and fees
April 20, 2023 DOJ Letter: Updated constitutional requirements
ROA: Document 7-2, Page 72 (Appellate Case 25-5063): "11-04-2022 REQUEST
FOR JUDICIAL NOTICE Document Available (#1053735245)"

## INTRODUCTION AND SUMMARY

To the Honorable Neil M. Gorsuch, Associate Justice of the Supreme Court of the United States and Circuit Justice for the Tenth Circuit:

Pursuant to Supreme Court Rule 23 and 28 U.S.C. § 2101(f), Applicant Linh Tran Stephens requests an immediate stay of the Tenth Circuit's mandate in Case No. 25-5063 pending certiorari. Applicant further seeks an immediate administrative stay of all proceedings and enforcement actions in Tulsa County District Court Case No. FD-2015-2228—including contempt orders, warrants, incarceration, attorney fee awards, judgments, liens, and collections—under 28 U.S.C. § 2101(f) and the All Writs Act, 28 U.S.C. § 1651(a), pending this Court's disposition.

CRITICAL FACTS AND FEDERAL CONCERNS: On January 23, 2023, in DF-120849, the Oklahoma Supreme Court affirmed Applicant's indigency by denying the objection to her Pauper's Affidavit—supported by IRS income records and detailed financials (Appendix L). The State's appointment of standby counsel Cierra Freeman in contempt proceedings further confirmed her inability to pay. Despite this, Applicant—an indigent Vietnamese mother—is subject to a six-month jail sentence and an active $13,711.24 cash-only bench warrant stemming from a May 8, 2025 order, solely due to her inability to pay $2,360.24/month in support (Appendix W).

TRIAL EVIDENCE IGNORED: At both the January 31–Feb. 2, 2024 bench trial and Feb. 6–7, 2024 jury trial before special judges (without a jury of peers), the

1

father repeatedly testified that the child was not harmed by the mother's lack of financial support—establishing no injured party and eliminating any compelling state interest (Appendix K).

$65,000 SEIZED—UNACCOUNTED FOR: In February 2025, attorney Gilbert Pilkington testified that OKDHS seized nearly $65,000 from Applicant's retirement, yet neither he nor the father received any funds, and Special Judge Seibert admitted no knowledge of its whereabouts—warranting DOJ investigation for potential RICO and federal fund misappropriation (Appendix S).

**State Auditor Confirmed OKDHS Mismanagement:** On August 27, 2025, Oklahoma State Auditor Cindy Byrd confirmed an audit showcasing OKDHS mismanagement of federal grant money, revealing **$93.4 million of "questioned costs" in FY 2023**, with OKDHS mismanaging over $63.6 million (See *Appendix AA*)—contextualizing OKDHS's seizure of my retirement accounts.

**Nature of Federal Claims:** This Application seeks: **(a) Prospective injunctive relief** for ongoing violations—not to overturn any state judgment; **(b) Declaratory actions not tied to overturning a state judgment; (c) Administrative record challenges** regarding OKDHS policies violating federal law; **(d) Pattern-and-practice claims** (DOJ Civil Rights Division territory); **(e) State-court collateral actions** that do not ask federal court to review state judgment; **(f) Independent federal claims for new injuries; (g) Actions against non-judicial actors** (caseworkers, CSS employees, Schwab); **(h) Claims where the state judgment is not the source of harm.** *This distinction is VERY IMPORTANT.* Applicant's

claims are carefully framed to address independent federal violations and enforcement mechanisms, not to relitigate any state court's substantive decisions.

**Important Clarification Regarding Criminal Prosecution:** Applicant acknowledges and understands that ***private citizens cannot initiate federal criminal prosecutions***. While courts will docket such filings, they cannot proceed as criminal matters without action by the United States Department of Justice. Accordingly, Applicant does not purport to initiate criminal prosecution but instead **respectfully requests referral** to the United States Department of Justice, Civil Rights Division, for investigation and potential prosecution of documented violations of 18 U.S.C. §§ 241, 242, 1341, 1512, 1343, and 1961 (RICO).

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. § 1254(1) to review the judgment of the Tenth Circuit by writ of certiorari. This Court has authority to stay the mandate under 28 U.S.C. § 2101(f), Supreme Court Rule 23, and the All Writs Act, 28 U.S.C. § 1651(a).

The Tenth Circuit entered its Order and Judgment on **January 16, 2026** (*Appendix A*). Applicant's Petition for a Writ of Certiorari is due on or before **April 16, 2026** (90 days from judgment). The Tenth Circuit denied Applicant's Motion to Stay Mandate on **January 28, 2026** (*Appendix B*). The Tenth Circuit also denied the Emergency Motion for Stay Pending Appeal on **January 16, 2026** (*Appendix C*) and denied the Verified Petition for Writ of Mandamus on **July 11, 2025** (*Appendix D*). Applicant has exhausted all lower-court remedies as required by Supreme Court Rule 23.3.

## OPINIONS AND ORDERS BELOW

The United States District Court for the Northern District of Oklahoma (Case No. 4:24-CV-00216-JDR-CDL) granted Defendants' motions to dismiss on **April 24, 2025**.

The United States Court of Appeals for the Tenth Circuit affirmed the dismissal in an unpublished Order and Judgment dated **January 16, 2026** (10th Cir. Doc. 59-1) (*Appendix A*). The panel (Carson, Baldock, and Kelly, Circuit Judges) found that Applicant had allegedly "waived" her opportunity to challenge the Younger abstention and Eleventh Amendment rulings by not adequately addressing them in her opening brief. **This finding is demonstrably false** as detailed herein.

## STATEMENT OF LEGAL STATUS OF APPLICANT

**I am not a surety and I have not, do not, and will not ever consent to any court's attempted body attachment warrant as I, Linh Tran Stephens (lower case), am a "free [nonblack] person" and stateless foreign national ("woman" of the "Union"),** in accordance with the statements made by the Honorable Justice Miller in the *Slaughter-House Cases*, 83 US 36 (U.S. Supreme Court - 1873), and the Honorable Chief Justice Wallace in *ELLEN R. VAN VALKENBURG v. ALBERT BROWN*, 43 Cal. 43 (California Supreme Court - 1872). Linh Tran Stephens is not and has never been a U.S. citizen, as clearly delineated in 28 USC 1332(a)(1). The rights of Linh Tran Stephens the sentient being is derived from the Bill of Rights, not from the 14th Amendment. Linh Tran Stephens is neither a negro nor a descendant of such. Linh Tran Stephens would be considered a "people" in plural usage. Linh Tran Stephens' biological property is

G.S. as her flesh and blood. Linh Tran Stephens was the indorser and representative on the two original notes executed with the SBA.

**Meanwhile**, LINH TRAN STEPHENS©® is a 14th Amendment US citizen in accordance with 8 USC 1401(a), deriving her standing from the privileges and immunities available in the 14th Amendment, and would be termed a "person" in plural usage. She was born on February 09th, 1984. She falls under the subheading of "individual" in the definition of the word "person" as described in 8 USC 1101(b)(3). The legal structure of LINH TRAN STEPHENS©® is a sole proprietorship. Her EIN number is the "Social Security Number" that was used on these original notes, in accordance with 26 CFR 301.7701-11. LINH TRAN STEPHENS©® is, in terms of the Commercial Codes, the represented person/account holder/issuer of the original notes executed with the SBA.

Applicant permanently and continuously objects to any proceedings before special judges, magistrates, or substitute judges who do not hold appointment pursuant to Article III of the United States Constitution, to the extent such objection is preserved for appellate review.

Applicant reserves the right to amend this application or supplement the record at any time prior to disposition.

<div align="center">

**STATEMENT OF THE CASE**
(IN AFFIDAVIT FORM PURSUANT TO 28 U.S.C. § 1746)
**VERIFICATION AND DECLARATION**

</div>

| | | |
|---|---|---|
| republic South Carolina | } | *Notice to Agent is Notice to Principal, Notice to* |
| | }ss | *Principal is Notice to Agent, Notice applies to all* |
| Charleston county | } | *successors and assigns; Affidavit is a Form of* |
| | | *Evidence; Unrebutted Affidavit Stands as Truth in* |

*Commerce; Silence or Nonresponse is Tacit*
*Acquiescence/Agreement/Dishonor;*

I, Linh Tran Stephens, being of sound mind with postgraduate level of education and over the age of eighteen (18) years, do hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following statements are true and correct to the best of my knowledge, information, and belief:

1. I am the Applicant in this matter, proceeding *sui juris*, as a natural living breathing woman with a living soul and a Holy Spirit of Yahusha the Messiah. I, Linh Tran Stephens (lower case) is a "free [nonblack] person" and stateless citizen ("woman" of the Union), in accordance with Slaughter-House Cases, 83 US 36 (1873), and Ellen R. Van Valkenburg v. Albert Brown, 43 Cal. 43 (1872). LINH TRAN STEPHENS©® is a 14th Amendment US citizen under 8 USC § 1401(a), with legal structure as a sole proprietorship and EIN as SSN under 26 CFR 301.7701-11. This declaration is made in truth, equity, good faith, and without waiver of rights

2. *The Oregon Divorce Decree and Child Support Waiver*: On January 8, 2016, my divorce from Adam Sylvester Stephens was finalized in Columbia County, Oregon state, Circuit Court (Case No. 15DR18623). The divorce decree explicitly provided: "*Jeep and Trailer [from Linh to Adam] in lieu of child support [until child ages out].*" This provision appears *FIVE (5) times* throughout the decree, constituting a complete satisfaction and waiver of all future child support obligations (see *Appendix E*)

3. This Oregon decree was registered in Tulsa County, Oklahoma on July 11, 2017 (Document #1037428505, see *Appendix F*). Oklahoma judges Kevin Morrison and Thera Dreiling initially *affirmed the binding nature* of the Oregon decree (see *Appendix G*)

4. *Oklahoma Supreme Court Affirmed Indigency (DF-120849)*: On January 23, 2023, the Oklahoma Supreme Court in Case No. *DF-120849* expressly affirmed my indigent status by ruling "Appellee's Objection to Appellant's Pauper's Affidavit is denied." This followed my submission of extensive financial proofs including IRS income statements for 2 years. This indigency has *never been disputed since January 2023*. The State even *assigned me court-appointed standby counsel Cierra Freeman* during the contempt proceedings that lead to debtor prisons *repeatedly*— further acknowledging my inability to pay for private counsel (See Appendix L for indigency order and counsel assignment).

5. *The Retirement Account Was Established After the Divorce*: Since 2018—*two years after* my finalized divorce in 2016 with Adam Stephens—I established a 401(k) retirement account from $0 then going up, during my employment with *Cherokee Nation (Indian Health Services) 2018-2021 without a dime from Mr. Adam Stephens, whose name was never on said 401(k) account*. This account, now a rollover IRA held at Charles Schwab (account ending in x2605), contained *$64,445.92* in ERISA-protected retirement assets [see Exhibits]. Because this account was established *during my second marriage* (which remains intact still even

now) *to a nonparty*, it was never subject to any potential QDRO in the divorce proceedings with Mr. Adam Stephens, my long-divorced ex-husband.

**6. *Father Testified Child NOT Harmed Without Mother's Financial Support*:** During **both** the five-day bench trial before Special Judge April Seibert (January 31 - February 2, 2024) **and** the two-day jury trial before Special Judge Deborrah Ludi-Leitch (February 6-7, 2024), ***the ex-husband/father of the child testified repeatedly on the record that the child is NOT harmed in any way without Mother's extra financial support***. This testimony—offered into evidence and never rebutted—proves *that **there is no injured party*** (See *Appendix K* for transcript excerpt) and the father's income (approximately $6,000/month as property manager and undisclosed income being a semi-truck driver with 30 years' experience) was more than sufficient to care for the child without government assistance or mother's support.

**7. *$65,000 Missing—Whereabouts Unknown:* Per testimony on *January 13, 2025,*** Mr. Gilbert Pilkington, Jr. (attorney for the father) testified in court that OKDHS seized nearly ***$65,000*** from my retirement account, yet **the father has *NOT received a single dime from these funds, nor has his attorney received any payment***. Special Judge April Seibert acknowledged on the record that ***she does not know where the garnished funds of $65,000 have been placed.*** There has been no effort nor referral for any investigation despite my motions and demands. This substantiates RICO claims under 18 U.S.C. § 1961.[Court minute order said "01-13-2025 SEIBERT, APRIL: PETITIONER PRESENT, PRO-SE. RESPONDENT NOT PRESENT, REPRESENTED BY GILBERT PILKINGTON, PRESENT. COURT REPORTER, ABBY YODER, PRESENT. MATTER COMES ON FOR EVIDENTIARY HEARING ON ATTORNEY FEES. THE COURT HEARS TESTIMONY AND ARGUMENT. MATTER IS TAKEN UNDER ADVISEMENT FOR A WRITTEN DECISION"]

**8. *State Auditor Confirmed OKDHS Mismanagement*:** On August 27, 2025, Oklahoma State Auditor Cindy Byrd confirmed an audit revealing OKDHS mismanagement of federal grant money—***$93.4 million of "questioned costs" in FY 2023***, with OKDHS mismanaging over $63.6 million (See *Appendix AA*) — contextualizing OKDHS's seizure of my retirement accounts.

**9. *No Valid QDRO nor warrant was Ever Issued*:** Despite the Oregon decree's explicit waiver of child support, Oklahoma purported to modify the decree and create child support obligations exceeding $60,000 and ongoing, compounding alleged interests still. *No valid Qualified Domestic Relations Order (QDRO) meeting the requirements of 29 U.S.C. § 1056(d)(3)(B)-(D) was ever entered, and no warrant was ever issued authorizing the seizure of Applicant's ERISA-protected retirement funds in violation of the Fourth Amendment's protection against unreasonable seizures..* My current spouse the nonparty ***never consented*** to any seizure of community property retirement funds for my one-and-only ex-husband and that exhusband's child.

**10. *Caseworker Bridget O'Brien's Malicious Prosecution*:** On December 3, 2021, OKDHS caseworker ***Bridget O'Brien (a/k/a Bridget Kay Menser)*** orchestrated the unlawful removal of my daughter G.S. from my protective custody

without a warrant, in direct violation of the Fourth Amendment's prohibition against unreasonable seizures of persons. Background checks revealed that Bridget O'Brien/Menser has a **felony conviction (nolo contendere plea) under Case No. CF-1999-2911** for offenses involving harm to children (selling alcohol to minors) (see Appendix P) and multiple bankruptcies (see Appendix S) with incentives for bonuses for removal of children from currently safe homes like mine.

**11.** On the official transcript of the **June 1, 2022 hearing**, caseworker Bridget O'Brien admitted, after being confronted by my attorney, that she told me: "**I KNOW YOU'RE GUILTY JUST BY LOOKING AT YOU**," implying there was no need to inspect evidence or conduct proper investigation (See Appendix P, June 1, 2022 Hearing Transcript Excerpts)

**12.** Evidence in the record indicates that Bridget O'Brien has **testified similarly against over 400 other cases** prior to my case, *establishing a pattern and practice of malicious prosecution constituting DOJ Civil Rights Division territory* (See Appendix P and Appendix S).

**13. Double Jeopardy: I already served two months** in jail (February-March 2024) for the same alleged debts. On May 8, 2025, while my appeals against this wrongful conviction (DF-120848, DF-120849, DF-122022) remained pending, Special Judge Loretta Radford issued a second contempt order sentencing me to **an additional six months** (Appendix W)—prosecuting me again for identical obligations while the first appeal remained pending—and an active warrant out for my arrest which is still in effect (See Appendix X for additional contempt orders).

**14. Deliberate Exclusion from May 2, 2025 Hearing**: On May 2, 2025, while my appeals remained pending, Special Judge Loretta Radford conducted a non-jury trial despite my repeat demands for a trial with jurors of my peers. The court record falsely reflects that I was absent. I and my ADA advocates attempted to appear virtually—the same accommodation granted to Respondent Adam Stephens and his attorney Gilbert Pilkington, Jr.,—but were **deliberately blocked from accessing the hearing** (See Appendix U, Affidavit of ADA Advocate).

**15. Special Judges and Separation of Powers**: All contempt proceedings against me have been conducted by "special judges" rather than my demanded Article III constitutional judges. These "special judges" declared themselves "*I am the law*" on court recordings (see evidence of recordings on *LinhStephens.com* whose transcripts' orders was denied or altered by Tulsa Oklahoma court), and claimed "*the Constitution does not apply.*" *The State acted simultaneously as prosecutor/accuser AND judge* which is unlawful and unconstitutional--with no prosecutor from the District Attorney's office appearing ever.

**16. Contradictory Findings**: Oklahoma courts--ignoring jurisdictional challenges via special entry of special appearances and ignoring valid objections--found me **mentally incapacitated** for custody purposes for intelligent and healthy 8 year old female while simultaneously **imputing full physician earning capacity** for child support purposes. These internally contradictory findings cannot logically coexist.

**17. Jurisdictional Issues**: At the time of the May 2, 2025 hearing, **neither party physically resided in Oklahoma**: Respondent had relocated to Texas in January

2024, and I had relocated to South Carolina in March 2024, more than a year before the hearing, yet court still proceeded unlawfully despite additional jurisdictional challenges.

**18.** I have suffered severe collateral consequences: my ***medical license was revoked; my passport was revoked*** under 42 U.S.C. § 652(k) without pre-deprivation notice or hearing.

**19.** Federal habeas petitions (Case Nos. 4:25-cv-00285 and 4:25-cv-00286) both were filed prior to President Trump's declaration of Marshall Law have been pending since June 2025 without resolution nor restitution.

20. On September 24, 2025, Oklahoma Office of Civil Rights Enforcement formally recused itself (Appendix Q), acknowledging conflicts constituting no adequate state remedy. Petitioner exhausted all channels: **(1)** Oklahoma courts denied opportunities to present evidence despite 30+ motions (Appendix I showing blocked exhibits; Appendix N showing trial violations); **(2)** Oversight complaints systematically ignored—Oklahoma House ordered OSBI investigation (Appendix S), which OSBI unlawfully refused, and the Accountability Committee was subsequently dissolved; **(3)** Court transcripts altered compared to original recordings, FOIA requests for voice recordings denied, constituting obstruction of justice under 18 U.S.C. § 1512; **(4)** Federal habeas petitions filed June 2025 remain unaddressed after seven months. This coordinated obstruction leaves this Court as the only viable relief; **(5)** The Institute for Advancement of Justice & Human Rights identified Petitioner's case as nationally significant (Appendix R), Private Attorney General Letter to SCOTUS dated 09-17-2025, referencing Petitioner's case on page 10).

21. Neither I nor Adam Stephens nor the nonparty-but-owner of the said retirement accounts ever received public assistance or applied for Title IV-D services that would have authorized Oklahoma Child Support Services to pursue enforcement under 42 U.S.C. § 654(4).

22. I have been deprived from all forms of contact from my biological property my first born female offspring (including phone calls, video chats, or overnights), G.S., since December 3, 2021, without any findings of harm or unfitness by OKDHS  and YAHUAH/CREATOR, while being all my rights were violated including but not limited to substantive rights, human rights, unalienable rights, civil rights, etc. with some examples below as these are summary of key quotations during hearings:

    **a.** TURNER v. ROGERS VIOLATION - 60-Day Imprisonment Without Ability-to-Pay Hearing:

    "THE COURT: The Court, at this time, is going to order you to go into the Tulsa County Jail for 60 days... Your purge fee is $12,413.40... can you afford to pay that, ma'am? MS. STEPHENS: No, Your Honor." -- February 7, 2024, Pages 103-104 (See Appendix N)

    **b.** FIFTH AMENDMENT VIOLATION - Adverse Inference for Constitutional Right:

    "THE COURT:... the jury may -- it's not required -- make an inference that is adverse to you about the issue on which you have been questioned and refusing to testify." -- February 6, 2024, Pages 11-12

**c.** SIXTH AMENDMENT VIOLATION - "Dictionary-Only" Counsel:

"MS. STEPHENS: No, I would not agree to that, Your Honor... I would say my Sixth Amendment rights I would invoke at any time. And so I would like to have a standby counsel." -- March 24, 2023, Pages 7-8

**d.** EVIDENCE SUPPRESSION:

"MS. STEPHENS:... they suppressed evidence. They are tampering evidence, and they blocked out my witness --" -- February 7, 2024, Page 78 (See Appendix N and Appendix I)

**e.** DOUBLE JEOPARDY - Second Warrant:

May 8, 2025 bench warrant: $13,711.24 (cash only) with six months' incarceration -- for the SAME debt that resulted in 60-day imprisonment on February 7, 2024 (See Appendix W and Appendix X).

These foregoing extraction documents systematic and pervasive constitutional violations against me, Linh Tran Stephens, including but not limited to: imprisonment without ability-to-pay hearings in violation of *Turner v. Rogers*; adverse inference instructions for invoking Fifth Amendment rights; "dictionary-only" counsel that nullified Sixth Amendment protections; systematic suppression of evidence and witnesses; undisclosed judicial conflicts of interest; ADA violations; and threatened double jeopardy. These violations demand immediate intervention by the Supreme Court of the United States.

23. ***The Tenth Circuit's finding that Petitioner "never addresses" Eleventh Amendment immunity or Younger abstention is factually false and demonstrably false. Petitioner addressed both issues based on the following record evidence:***

   • Reply Brief, Table of Authorities: Lists *Hafer v. Melo*, 502 U.S. 21 (1991) at page 8; *Ex parte Young*, 209 U.S. 123 (1908) at pages 7-8; *Pater v. City of Casper*, 646 F.3d 1290 (10th Cir. 2011) at page 9.

   • Reply Brief, Section D: Explicitly titled "District Court Erred in Applying Younger Abstention and Dismissing Constitutional Claims."

   • Records on Appeal, Vol. I, Page 344 (Dkt. 41): Section 14.b titled "Young Abstention Inapplicability."

   • Records on Appeal, Vol. I, Page 348 (Dkt. 41): Section 20 titled "Younger Abstention and the Scope of Federal Jurisdiction."

   • Opposition to Motions to Dismiss: Section B titled "The Ex Parte Young Exception Permits Plaintiff's Claims for Prospective Relief" and Section C titled "Individual Capacity Claims Are Not Barred by the Eleventh Amendment."

24. The 10th circuit panel's statement that Petitioner "never addresses" these issues constitutes a "Misapprehension of the Record" that denied Petitioner due process. A pro se litigant who addresses an issue in her Reply Brief and in her District Court filings should not be deemed to have "waived" that issue. I intend to file a Petition for Writ of Certiorari in the Supreme Court of the United States within 90 days of the entry of this Court's judgment which was entered on January 16, 2026.

24. I, linh-tran: stephens, declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct, and

that I am not a surety and I do not consent to any attempted body attachment warrant. All statements herein of the whole document with its appendices/exhibits are verified/attested and reliable statements of facts witnessed by Linh the Appellant, YAHUAH/I AM THAT I AM/Creator, Messiah Yahusha, and the Holy Spirit of truth, light, and justice pursuant to THE WORD OF YAHUAH[1] in ***Psalm 127:3 + Psalm 105:15 + Exodus 8:1&9:1 + Isaiah 61:8a + Deuteronomy 19:15 + Isaiah 54:17;*** *Notice to Agent is Notice to Principal, Notice to Principal is Notice to Agent, Notice applies to all successors and assigns; Affidavit is a Form of Evidence; Unrebutted Affidavit Stands as Truth in Commerce;* ***Silence is Tacit Acquiescence/Dishonor/Accomplice to described crimes&claims&harms;***

Private sector autograph;
**WITHOUT RECOURSE**



By: By: Linh Tran Stephens / sui juris Applicant, Agent or attorney-in-fact,


## GROUNDS FOR EMERGENCY RELIEF

This Court may grant a stay pending disposition of a petition for writ of certiorari upon consideration of: (1) whether there is a reasonable probability that four Justices will grant certiorari; (2) whether there is a fair prospect that the Court will reverse; (3) whether irreparable harm will result absent a stay; and (4) whether the balance of equities favors granting a stay. See *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010).

**All four factors weigh decisively in favor of granting the requested stay.**

---

[1] "Lo, children are an heritage of the Lord: and the fruit of the womb is his reward." (Psalm 127:3);
"Touch not mine anointed, and do my prophets no harm." (Psalm 105:15);
"Let my people go, that they may serve me[YAHUAH]." (Exodus 8:1 and Exodus 9:1);
"For I the Lord love justice..." (Isaiah 61:8a);
"One witness shall not rise up against a man for any iniquity, or for any sin, in any sin that he sinneth: at the mouth of two witnesses, or at the mouth of three witnesses, shall the matter be established." (Deuteronomy 19:15);
"No weapon that is formed against thee shall prosper; and every tongue that shall rise against thee in judgment thou shalt condemn. This is the heritage of the servants of the Lord, and their righteousness is of me, saith the Lord." (Isaiah 54:17)

**(1). Reasonable Probability of Certiorari**

This case will present at least ***twelve substantial federal questions (or more later when it is due time to file the two writs of certiorari)***. These questions implicate fundamental constitutional protections:

**i.** Whether the Due Process Clause prohibits incarcerating an indigent parent for civil contempt based on inability to pay child support without an ability-to-pay hearing. [*Turner v. Rogers*, 564 U.S. 431 (2011)]

**ii.** Whether successive incarceration for the same unpaid alleged child support debt while appeals remain pending violates the Double Jeopardy Clause of the Fifth Amendment.

**iii.** Whether civil contempt proceedings resulting in determinate incarceration (even if less than 6 months and purposely misfiled by the State under "jail" instead of "prison" for sentencing) require proof beyond a reasonable doubt and Sixth Amendment protections, including the right to counsel and confrontation. [*SEC v. Jarkesy*, 603 U.S. 109 (2024)]

**iv.** Whether the Fifth Amendment privilege against self-incrimination and Seventh Amendment jury trial right prohibit adverse inferences from a defendant's invocation of those rights in civil contempt proceedings resulting in incarceration.

**v.** Whether ERISA preempts (29 U.S.C. § 1144) state garnishment of retirement accounts without a qualified domestic relations order (QDRO) and zero spousal consent, particularly when funds were acquired during a subsequent marriage with a nonparty. [*Boggs v. Boggs*, 520 U.S. 833 (1997)]

**vi.** Whether a state court violates Full Faith and Credit by modifying another state's final child support judgment that expressly waived support through a contractual provision stating "Jeep and Trailer in lieu of child support." [*V.L. v. E.L.*, 577 U.S. 404 (2016)]

**vii.** Whether separation of powers is violated when state courts assign non-Article III "special judges" to contempt proceedings resulting in incarceration, where such judges simultaneously act as prosecutor/accuser AND judge without a prosecutor from the District Attorney's office.

**viii.** Whether Due Process or Equal Protection, or both, are violated when a court finds a parent mentally incapacitated for custody purposes while simultaneously imputing full professional earning capacity for child support purposes—an internally contradictory finding that cannot logically coexist.

**ix.** Whether due process permits a state to exercise jurisdiction over a nonresident foreign national, over her objection and removal to federal notices, to modify child support and enforce related contempt.

**x.** Whether a state may assert continuing jurisdiction to modify child support when all parties, including a nonresident foreign national, have permanently relocated outside that state, in violation of the Uniform Interstate Family Support Act (UIFSA) and both have given the state notices of moving.

**xi.** Whether *res judicata*, collateral estoppel, the Full Faith and Credit Clause, and principles of Federalism are violated when a state modifies another state's final child support judgment that expressly waived support.

**xii.** Whether passport revocation for child support arrears under 42 U.S.C. § 652(k) without pre-deprivation notice or hearing violates procedural due process. [*Kent v. Dulles*, 357 U.S. 116 (1958)]

**(2). Fair Prospect of Reversal**

The record demonstrates clear violations of *Turner v. Rogers*, *V.L. v. E.L.*, *Boggs v. Boggs*, and *SEC v. Jarkesy*. The Oklahoma Supreme Court **affirmed Applicant's indigency** in January 2023, making any incarceration for inability to pay a per se *Turner* violation.

***Additional compelling evidence***: Father testified under oath that the child is ***not harmed*** without mother's financial support in February 2024. Then on January 13, 2025, Father's private attorney Gilbert Pilkington testified that ***$65,000 of Mother's second marriage (which has never filed any divorce paperwork) retirement was seized for exhusband's child support, but neither the ex-husband nor exhusband's attorney received any funds***—and the special judge April Seibert allegedly doesn't know where the money went either.

**(3). *Irreparable Harm Torturous Level that is Ongoing and Worsening***

Applicant faces imminent loss of liberty through six months' incarceration repeatedly. "[T]he loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Applicant's Applicant, a Vietnamese foreign national and financially indigent mother, faces imminent re-imprisonment for six months based on an Order dated May 8, 2025 (Appendix W), arising from her documented inability to pay court-ordered child support of $2,360.24 per month (on $0 income) which is

unconscionable. Applicant's indigency is not in dispute: it is documented in the

record (Appendix J and Appendix L) and was expressly affirmed by the Oklahoma

Supreme Court,

which overruled Respondent's objection to Applicant's *Motion for Leave to Proceed*

*In Forma Pauperi*s. A bench warrant has been issued in the amount of $13,711.24

cash/money order only (see attached Appendix W), with execution of six months'

incarceration in Tulsa County Jail upon arrest. This imprisonment constitutes

double jeopardy—Applicant already served two months in 2024 (Appendix N, X) for

the same alleged debts while her appeal (DF-122022) remained pending. The

contempt proceedings arise from orders issued without jurisdiction and

without conducting the ability-to-pay hearing mandated by *Turner v. Rogers*, 564

U.S. 431 (2011). Oklahoma's "special judges" denied Applicant's Rule 8 hearing

Requests (inability to pay hearing), asserting that "child support contempt cases are

exempt from Rule 8 hearings"—directly conflicting with this Court's precedent and

Oklahoma Supreme Court rulings.

    The underlying child support orders violate the Full Faith and Credit Clause

by disregarding the binding Oregon decree in Case No. 15DR18623 (Order dated

Jan. 8, 2016), which explicitly states "Jeep and Trailer in lieu of child support" five

times—see Appendix E, Sections 3 (pp. 11–12), 5.1.1 (pp. 16–17), 8.2 (p. 19), "Money

Award" (pp. 22–23 and 25), including the clause that "Wife will receive [Jeep and

Trailer] free of any claims of Husband." Plaintiff fully performed under the

contract—paying for, insuring, and transferring the property—while Defendant

breached the contract and judicial estoppel by seeking child support on October 14,

2022, without filing any written motion to modify. He had previously filed written pleadings in Tulsa County rejecting the offer to exchange the Jeep/Trailer for cash support of $586/month (see p. 11, Appendix E). Oklahoma courts enforced the Oregon decree in 2017 (Appendix F), and Defendant repeatedly filed to secure title, acknowledging that Oklahoma lacked authority to retrospectively modify the decree (Appendix G). Yet, on February 20, 2024, a non-Article III special judge retroactively imposed support back to 2017 without jurisdiction, motion, or Applicant's consent—ignoring objections and declining renegotiation—thus violating V.L. v. E.L., 577 U.S. 404 (2016), the Full Faith and Credit Act, and res judicata.

Oklahoma's dismissal of Applicant's appeals without the full and complete record as designated directly conflicts with this Court's mandate in Glossip v. Oklahoma, 604 U.S. ___ (2024). The trial court failed to transmit critical designated record items, including Applicant's 'Written Closing Argument' filed February 2024, of which **8 of 10 pages are inexplicably missing from the appellate record in Oklahoma Supreme Court** (See Appendix Y for original 9-page document vs. Appendix Z for altered 2-page version). *Glossip* requires appellate courts to obtain and review the complete record before adjudicating an appeal—yet Oklahoma dismissed Applicant's appeals based on an incomplete record that the trial court itself failed to transmit.

This is not an isolated failure but a documented pattern of practice in Oklahoma courts. The same systematic deprivation of appellate rights through incomplete record transmission has been reported and documented in at least two

other cases: *Alisha May Reeves v. Wade Ryan Reeves*, No. FD-2022-1789, and *Hester Anne Brown v. Nathan Scott Gilley*, No. FP-2016-60. Such a pattern demonstrates that Oklahoma's Glossip violations are systemic, warranting this Court's intervention.

**Ongoing Coercive State Court Actions causing Ongoing Worsening and Irreversible Harms and Torture:**

Oklahoma courts have continued and escalated coercive enforcement actions even as this matter proceeds toward Supreme Court review--similarly situated to other cases e.g. *Alisha May Reeves v. Wade Ryan Reeves*, No. FD-2022-1789. Applicant Linh's OSCN docket reflects the following timeline of coercive actions:

• **May 2, 2025**: Non-jury 'trial' conducted with Applicant falsely deemed absent. Applicant attempted to appear virtually—the same method permitted for Respondent Adam Stephens and his counsel—but Applicant and her ADA advocates were deliberately blocked from accessing the hearing. A witness present in the courtroom observed and documented this injustice under oath. (See Appendix U: Affidavit of ADA Advocate During 05/02/2025 Tulsa County Hearing—sworn firsthand account detailing egregious judicial misconduct by Special Judge Loretta Radford, including deliberate exclusion of Applicant and complicit actions by the Sheriff and Bailiff during a purportedly 'public' hearing (2 pages). Without affording Applicant any opportunity to participate or defend herself, the court found her in contempt; a bench warrant was issued for $13,711.24 cash only, with execution of six months' incarceration upon arrest. The resulting order was entered May 8, 2025.

• **May 8, 2025:** Bench warrant formally entered; service by sheriff ordered.

- **August 15, 2025:** Attorney fees of attorney I didn't hired of $4,394.90 awarded against Applicant for contempt proceedings, with $250/month payment order starting September 1, 2025, "*08-15-2025 CTFREE JUDGE LORETTA RADFORD: COURT SIGNS ORDER AWARDING ATTORNEY FEES AND COSTS FOR CHILD SUPPORT CONTEMPT ORDER ENTERED ON MAY 2025*." Previously, "**Notice of liens" filed 01-19-2024** on assumed place of domicile to with intent to cause homelessness (See Appendix V); "**01-19-2024** "*CTFREE SEIBERT, APRIL: PAYMENT PLAN - ORDER AWARDING FEES FOR SUPREME COURT CASE NO. 120,848 SIGNED*"; and "10-09-2023 CTFREE SEIBERT, APRIL: ...THE COURT GRANTS ATTORNEY FEES IN THE AMOUNT OF $1,626.84 TO RESPONDENT; BOTH PROTECTIVE ORDERS DISMISSED; PARTIES TO ENTER INTO A MUTUAL RESTRAINING ORDER [to which Linh objected to and wasn't mutually agreeing to any restraining order as *fraudulently* alleged by the Court]

- **August 21, 2025:** NEW Indirect Contempt Citation signed; arraignment set for November 21, 2025—constituting additional contempt charges while prior contempt appeal issues remain unresolved.

- **August 25, 2025:** Additional attorney fees findings entered for "Responding to Appeal for Jury Trial" and "Jury Trial on Indirect Contempt."

- **September 5, 2025:** Indirect Contempt Citation document filed.

- **November 20, 2025:** Court noted "no service" on Applicant for indirect contempt citation; alias contempt citation ordered—demonstrating Oklahoma's continued pursuit of coercive sanctions without proper service.

• Applicant's minor daughter G.S. has been separated from her mother for **nearly four years (since *December 3, 2021*) WITHOUT findings of harm or unfitness nor due process nor equal treatment** (see proof Appendix M and Appendix O) Juvenile Court hearing Without a court reporter, there is no official record. Without a record, truth is suppressed, appellate review is impossible, and no lawful deprivation of parental or property rights can occur, and proof that Mother never signed any waivers with lawyer Erica Park nor OKDHS per Appendix O despite fabrications of such on OKDHS record in Appendix S, while OKDHS biasedly awarded sole custody to someone they knew has his parental rights terminated regarding another female child on court on 11/20/2015 as see Appendix M, and that female child later once turned 15 had court-ordered permanent protective order against Adam the father of my only daughter,)—each day causes irreparable harm to the parent-child bond that cannot be remedied by monetary damages. See Appendix O for Professional Sworn Statements and Affidavits from medical professionals, educators, and community members

• Oklahoma unlawfully seized $64,445.92 from Applicant's 401(k) retirement account (established in a subsequent marriage) without spousal consent and in violation of ERISA's anti-alienation provisions, 29 U.S.C. § 1056(d) and federal laws e.g. Fair Debt Collection Practices Act (FDCPA),. These funds have disappeared within state bureaucracy—testified on the record by Respondent's attorney.

• **January 16, 2026**: Tenth Circuit Court entered its Order and Judgment affirming the District Court's dismissal of Appellant's claims and denying the emergency motion as moot, signed by **Paul J. Kelly, Jr., 10th Circuit Judge**.

• Applicant's **passport** was revoked under 42 U.S.C. § 652(k) without pre-deprivation notice or hearing, preventing visits to terminally ill relatives abroad and prevented missionary trips abroad.

• Oklahoma blocked Applicant's **medical license** renewal, followed by revocation and false imprisonments, permanently closing her direct primary care clinic and her lifelong, one and only career as a general/family medical physician.

• These ongoing actions constitute an escalating pattern of coercive enforcement designed to compel submission through imprisonment and financial penalties, notwithstanding the fundamental constitutional violations underlying the original orders and the pendency of federal appellate review.

**(4).** *Balance of Equities*

A brief stay causes no cognizable harm to Respondent—especially *since **the father testified the child is not harmed without mother's support** and **he has not received any funds*** from the $65,000 seized and still fine with it.

Absent a stay, Applicant faces repeated severe and irreversible harms including: repeatedly kidnapped and falsely imprisoned via unconstitutional debtor-imprisonment and malicious prosecutions (by state of Oklahoma actors and employees), defamation, gang stalking and harassments via predatory creditor's practices of OKDHS for unvalidated and fabricated debt, loss of dignity, loss of all aspects of freedom, loss of faith in the justice system, loss of faith in humanity, and the constitutional questions will be mooted as those rights continued to be violated.

Oklahoma's continued escalation of contempt proceedings, issuance of new contempt citations, entry of unlawful and fraudulently claimed attorney fee

judgments, liens on all properties, suspensions of all licensures including professional licensures. ***The Oklahoma Department of Human Services (OKDHS) suspended the Applicant's licensure, despite such licenses not being necessary for the Applicant's employment. Simultaneously, OKDHS ordered the Applicant to pay an unvalidated and contested (refused to contract) child support amount exceeding $2,000 per month. This obligation is based on an unethical imputed income calculation of $250,000 plus a fabricated income of $3,000 per month for Full Disability, an amount equivalent to simultaneously possessing a medical license working full time while taking care of a baby at home and receiving full disability income of $3000 per month (zero evidence of such provided by anyone). This action is an absurd, unethical, discriminatory, and malevolent exercise of authority. Furthermore, the subsequent charging of contempt for the Applicant's inability to pay, an inability directly caused by OKDHS's actions, constitutes a form of evil entrapment in the view of all neutral observers.***

## ARGUMENT

## I. APPLICANT FACES IRREPARABLE HARM ABSENT A STAY

A bench warrant has been issued for $13,711.24 (cash only), with execution of six months in Tulsa County Jail upon arrest. This harm is irreparable because it cannot be undone by a later favorable ruling.

**A.** *Separation from Minor Child*: Applicant's daughter has been separated from her mother for over four years without findings of harm or unfitness. *Troxel v. Granville*, 530 U.S. 57, 65 (2000).

**B.** *Financial Devastation*: Oklahoma seized $64,445.92 from Applicant's ERISA-protected retirement account without valid QDRO which also violated FDCPA—yet *neither the father nor his attorney has received any of these funds*.

**C.** *Loss of Fundamental Rights and human rights*: Passport revoked under 42 U.S.C. § 652(k) without pre-deprivation hearing; medical license revoked—all without any showing of physical harms/damages to anyone nor to the government.

## II. LIKELIHOOD OF SUCCESS ON THE MERITS

**A.** ***Turner v. Rogers Violations (42 U.S.C. § 1983) and Sixth Amendment and Fourteenth Amendment Violations:***

In *Turner v. Rogers*, 564 U.S. 431 (2011), this Court established that due process requires, before incarcerating a person for civil contempt: (1) notice that ability to pay is a critical issue; (2) a fair opportunity to present evidence; and (3) an express finding of ability to pay.

***Oklahoma courts failed to satisfy ANY of these requirements.*** The Oklahoma Supreme Court ***expressly affirmed Applicant's indigency in January 2023 (DF-120849) [see Exhibits]***. The State also assigned court-appointed standby counsel—implicitly acknowledging Applicant could not afford private counsel. The Tenth Circuit has recognized that "the right not to be incarcerated for a civil debt without evidence of willful refusal to pay is clearly established." *Havens v. Johnson*, 783 F.3d 776, 785 (10th Cir. 2015).

TURNER v. ROGERS VIOLATIONS - ABILITY TO PAY
**Applicable Law:** Turner v. Rogers, 564 U.S. 431 (2011) requires ability-to-pay hearing before incarceration for civil contempt. Bearden v. Georgia, 461 U.S. 660 (1983); Timbs v. Indiana, 139 S. Ct. 682 (2019).

VIOLATION 1: 60-Day Incarceration Without Ability-to-Pay Hearing

| Date: | February 7, 2024 |
|---|---|
| Court: | Tulsa County District Court, Oklahoma |
| Judge: | Special Judge Deborrah Ludi Leitch |
| Transcript: | transcript_20240206_part2_compressed_feb_6_and_7_2024_vol_2_contempt_of_court_hearing_CSS_debtor_prison.pdf |
| Page/Lines: | Pages 103-106 |

**EXACT QUOTE:**

> *"THE COURT: The Court, at this time, is going to order you to go into the Tulsa County Jail for 60 days and up to a $500 -- I'm going to impose a $500 fine. You will be taken into custody. Not yet, just a second. Your purge fee is $12,413.40. We would -- do you need to have -- can you afford to pay that, ma'am? MS. STEPHENS: No, Your Honor."*

**ADDITIONAL QUOTE:**

> *"THE COURT: I believe the Court has already ruled on the fact -- in this court, as well as Judge Seibert -- that you are not indigent." (Page 104, Lines 4-6)*

**Constitutional Violation:** Court imprisoned Petitioner for 60 days despite: (1) Oklahoma Supreme Court affirming indigency status in January 2023 (Appendix L) admitted evidence many times, excerpts in Appendix I; (2) Petitioner explicitly stating inability to pay; (3) No formal ability-to-pay hearing conducted as required by Turner v. Rogers; (4) Unrebutted tax returns showing zero income, see Appendix J for 2021 and 2022 samples; (5) Father of child himself testified zero harm nor deprivation of any needs of child even without child support from mother (see Appendix K which is excerpt of transcript of hearing on 02/01/2024

VIOLATION 2: Impossibly High Purge Fee Despite Indigency

| Date: | February 7, 2024 |
|---|---|
| Transcript: | transcript_20240206_part2_compressed_feb_6_and_7_2024_vol_2_contempt_of_court_hearing_CSS_debtor_prison.pdf |
| Page/Lines: | Pages 104-105 |

**EXACT QUOTE:**

> *"MS. STEPHENS: Your Honor, I would ask why is the purge fee so high and it should be lower... THE COURT: That's denied. I will deduct a $5,000 partial purge just based on your stating that you're indigent. However -- Counsel? MR. PILKINGTON: Your Honor, even though she refused to testify, **we believe** that she's receiving a monthly paycheck of $2,600 dollars from the VA, we've introduced evidence that she had or has investments that are producing capitol gains, and there was an IRA of at least 60,000 that she's never disclosed. We would ask for the full amount to be set."*

**Constitutional Violation:** The Court violated *Turner v. Rogers*, 564 U.S. 431 (2011), by imposing a $5,000 purge fee on an indigent mother without making any expressed finding of willfulness or present ability to pay. Relying solely on opposing counsel's speculative claims and court said "we believe"—unsupported by evidence—the Court unlawfully presumed income, including 100% disability AND fabricated physician wages (it is impossible to be disabled on full SSI and on full salary of a physician), to justify incarceration, thereby denying due process and rendering the contempt order constitutionally impermissible.

SIXTH AMEND. VIOLATIONS - RIGHT TO EFFECTIVE COUNSEL

VIOLATION 3: "Dictionary-Only" Counsel Limitation

| | |
|---|---|
| **Date:** | March 24, 2023 |
| **Court:** | Tulsa County District Court, Oklahoma |
| **Judge:** | Special Judge Deborrah Ludi Leitch |
| **Transcript:** | Transcript_20230324_Contempt_Arraignment_violated_6th_amendment_032423.pdf |
| **Page/Lines:** | Pages 7-8, Lines 1-25; Pages 23-25 |

**EXACT QUOTE:**

> *"MS. STEPHENS: No, I would not agree to that, Your Honor... I would like -- I would say my Sixth Amendment rights I would invoke at any time. And so I would like to have a standby counsel. And when, during trial, if I need him then I can ask question, but I would like to not -- I just want a standby -- standby counsel."*

**Constitutional Violation:** Court-appointed "stand-by dictionary only counsel" was ordered by Judge Ludi Leitch to function ONLY as a "live law-dictionary" during court hearings and was explicitly FORBIDDEN from providing guidance on case

law, statutes, federal laws, constitutional issues, or court procedures. This "dictionary-only" limitation effectively nullified the right to counsel, similar to the situation condemned in Geders v. United States, 425 U.S. 80 (1976).

## VIOLATION 4: Denial of Effective Counsel Request

| Date: | March 24, 2023 |
|---|---|
| Transcript: | Transcript_20230324_Contempt_Arraignment_violated_6th_amendment_032423.pdf |
| Page/Lines: | Pages 7-8, Lines 17-25 and 1-3 |

**EXACT QUOTE:**

*"THE COURT: Before I do that, and inquire about that, ma'am, I'm going to ask you a question. Would you agree that if the Court grants your request for an attorney, all legal matters, including motions that the attorney would deem relevant, witness examination, and legal arguments would be handled by the appointed attorney? That means any motions would be done by the attorney, any legal argument, and any cross-examination or witnesses that would be presented to the Court. MS. STEPHENS: No, I would not agree to that, Your Honor."*

**Constitutional Violation:** The court imposed an unconstitutional all-or-nothing condition on counsel: either surrender all legal autonomy to counsel OR receive only "dictionary" assistance. This Hobson's choice violated the principle in Faretta v. California, 422 U.S. 806 (1975), and United States v. Cronic, 466 U.S. 648 (1984).

## FOURTEENTH AMENDMENT - DUE PROCESS VIOLATIONS

**Applicable Law:** "A fair trial in a fair tribunal is a basic requirement of due process." In re Murchison, 349 U.S. 133, 136 (1955); Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980).

## VIOLATION 5: Ex Parte Emergency Custody Order Without Notice

| Date: | December 3-17, 2021 |
|---|---|
| Court: | Tulsa County Juvenile Center / District Court |
| Judge: | Special Judge Rodney Sparkman (signed order), Judge Martha Rupp Carter |
| Reference: | JD-2021-270; Application for Emergency Custody Order (SEALED) |

**DOCUMENTED FACTS:**

*On December 8, 2021, a "secret" meeting ("undisclosed hearing") was held without proper notice to Petitioner; this meeting involved DHS caseworker Bridget O'Brien, state attorney Kimberly Jantz, and Judge Martha Rupp Carter. Petitioner was not notified, nor were her attorneys present. There was no court reporter present. Minute order falsely claimed: "there are no objections by the parties for the proposed release of the children from emergency custody... IT IS FURTHER ORDERED that the above-named*

*children be released to Adam Stephens, natural father, without DHS supervision." On December 17, 2021, Special Judge Sparkman signed an ex parte Emergency Custody Order without any argument, evidence, reliable witnesses, or cross-examination presented, and without a jury trial as demanded by Plaintiff.*

**Constitutional Violation:** Custody transferred without notice, without hearing, and based on falsified evidence from DHS caseworker Bridget O'Brien (a convicted felon). Violates Santosky v. Kramer, 455 U.S. 745 (1982); Troxel v. Granville, 530 U.S. 57 (2000).

VIOLATION 6: Court Entering Plea Without Consent

| Date: | March 24, 2023 |
|---|---|
| Transcript: | Transcript_20230324_Contempt_Arraignment_violated_6th_amendment_032423.pdf |
| Page/Lines: | Page 25, Lines 15-19 |

**EXACT QUOTE:**

*"THE COURT: Ma'am, I'm going to go ahead and enter a not guilty on your behalf. MS. STEPHENS: Objection, Your Honor. You cannot do that because you cannot practice law from the bench. THE COURT: And I am going -- I am going to order a jury trial for you because you demanded one."*

**Constitutional Violation:** Court entered plea over Petitioner's explicit objection, violating due process autonomy and the principle that a defendant controls her own defense.

**B. *Full Faith and Credit Violations (28 U.S.C. §§ 1738, 1738A, 1738B)***

Article IV, Section 1 commands Full Faith and Credit. The Oregon decree states

***"Jeep and Trailer in lieu of child support" five times***. Oklahoma's modification

violates *V.L. v. E.L.*, 577 U.S. 404 (2016), and *Baker v. General Motors Corp.*, 522

U.S. 222 (1998).

**C. *Double Jeopardy & Self-Incrimination Violations (Fifth Amendment)***

DOUBLE JEOPARDY VIOLATIONS

**Applicable Law:** Fifth Amendment prohibits double jeopardy. United States v. Dixon, 509 U.S. 688 (1993).

VIOLATION 7: Second Incarceration for Same Alleged Debt

**DOCUMENTED FACTS:**

First incarceration: February 7, 2024 - 60 days for alleged child support arrearages. Second threatened incarceration: May 8, 2025 bench warrant - 6 months for the SAME alleged child support debt of $13,711.24. Both imposed while appeals remain pending in higher courts.

**Constitutional Violation:** Re-incarceration for the same alleged debt while appeals are pending constitutes double jeopardy under the Fifth Amendment and 42 U.S.C. § 2000h-1. Applicant already served two months (Feb-Mar 2024) for these debts. The May 2025 order, resulting in a six-month sentence, prosecuted Applicant again for identical obligations while the initial appeal was still pending. *United States v. Dixon*, 509 U.S. 688 (1993). See Appendix W (May 8, 2025 Order) and Appendix X (additional contempt orders)

## FIFTH AMENDMENT VIOLATIONS - SELF-INCRIMINATION

**Applicable Law:** Fifth Amendment protects against compelled self-incrimination. Miranda v. Arizona, 384 U.S. 436 (1966); McCarthy v. Arndstein, 266 U.S. 34, 40 (1924).

### VIOLATION 8: Adverse Inference Instruction for Fifth Amendment Invocation

| Date: | February 6-7, 2024 |
|---|---|
| Court: | Tulsa County District Court, Oklahoma |
| Judge: | Special Judge Deborrah Ludi Leitch |
| Transcript: | transcript_20240206_part1_compressed_feb_6_and_7_2024_vol_1_contempt_of_court_hearing_CSS_debtor_prison.pdf |
| Page/Lines: | Pages 11-13, Lines 17-25 and 1-22 |

**EXACT QUOTE:**

*"THE COURT: Ms. Stephens, because this is a civil case... you may think you have a right to assert a Fifth Amendment privilege against incriminating yourself... Do you understand this Court will determine whether you have a valid claim of a Fifth Amendment privilege. In other words, the Court, not you, ultimately decides whether your Fifth Amendment claim is valid. The Court may decide that work claim of Fifth Amendment privilege is valid. If so, because this is a civil proceeding, the jury may -- it's not required -- make an inference that is adverse to you about the issue on which you have been*

*questioned and refusing to testify. They make take an adverse ruling or opinion regarding that issue."*

**Constitutional Violation:** In contempt proceedings carrying 60-day determinate

incarceration (quasi-criminal), the court instructed the jury they could draw

ADVERSE INFERENCES from Petitioner's invocation of Fifth Amendment rights.

Per International Union, United Mine Workers v. Bagwell, 512 U.S. 821, 826-27

(1994), when civil proceedings function as quasi-criminal proceedings, heightened

constitutional protections apply.

VIOLATION 9: Burden Shift to Defendant

| Date: | February 7, 2024 |
|---|---|
| Transcript: | transcript_20240206_part2_compressed_feb_6_and_7_2024_vol_2_contempt_of_court_hearing_CSS_debtor_prison.pdf |
| Page/Lines: | Pages 56-57, Jury Instructions 21 and 25 |

**EXACT QUOTE (Jury Instruction):**

*"Invocation of the Fifth Amendment privilege. A witness has the right under the Fifth Amendment under the United States Constitution to decline to answer questions on the ground that doing so may tend to incriminate her. However, in civil cases such as this one, you as the jury, may but are not required, to infer from such a refusal that the answer would have been adverse to the witness' interest."*

**Constitutional Violation:** Judge instructed jury that Petitioner's invocation of

Fifth Amendment rights should be interpreted as evidence of guilt, effectively

stating "The burden now shifts to the defendant to prove her innocence." This

violates Miranda v. Arizona, 384 U.S. 436 (1966).

**D.** *No Injured Party—Father's Own Testimony*

The father *testified under oath in both the bench trial and jury trial* that **the**

**child is NOT harmed in any way without Mother's extra financial support**.

This is devastating to any state interest argument. If the alleged beneficiary is not harmed, there is no legitimate state interest in enforcement through imprisonment.

### E. *ERISA Violations and Missing $65,000 (29 U.S.C. §§ 1056(d), 1132, 1144)*

ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1), prohibits garnishment of pension benefits without valid QDRO. Oklahoma seized $64,445.92 without valid QDRO and without spousal consent. *Boggs v. Boggs*, 520 U.S. 833 (1997).

*CRITICALLY:* Per testimony in February 2025*, the father has NOT received any of these funds, nor has his attorney*. Special Judge April Seibert acknowledged on the record that *she does not know where the garnished funds have been placed*. Combined with State Auditor Cindy Byrd's confirmation of *$93.4 million in "questioned costs"* at OKDHS, this establishes potential federal grant fraud and RICO violations requiring DOJ investigation. See Appendix S for evidence of missing $65,000 and Appendix AA for State Auditor findings confirming OKDHS mismanagement of $93.4 million.

### F. *Malicious Prosecution (18 U.S.C. §§ 241, 242) & Eighth Amend. Violations*

Caseworker Bridget O'Brien admitted on transcript (June 1, 2022): *"I KNOW YOU'RE GUILTY JUST BY LOOKING AT YOU"*—demonstrating prejudgment. O'Brien *has **testified similarly against over 400 other cases***, establishing systematic pattern. O'Brien has a *felony conviction* (Case No. CF-1999-2911) for offenses against minors and multiple bankruptcies (See Appendix P and S)

## EIGHTH AMENDMENT - CRUEL AND UNUSUAL PUNISHMENT

**Applicable Law:** The Eighth Amendment prohibits excessive fines and cruel and unusual punishment. Timbs v. Indiana, 139 S. Ct. 682 (2019); Bearden v. Georgia, 461 U.S. 660 (1983).

## VIOLATION 10: Modern Debtor's Prison

**DOCUMENTED FACTS:**

> February 7, 2024: 60-day incarceration imposed for inability to pay child
> support (purge fee $12,413.40, later reduced to $5,000). May 8, 2025:
> Additional bench warrant issued for $13,711.24 (cash only) with six months'
> incarceration threatened -- for the SAME ALLEGED DEBT.

**Constitutional Violation:** Oklahoma imposed determinate incarceration for civil

contempt based on child support non-payment against a parent adjudicated

indigent, without conducting ability-to-pay hearing. This constitutes an

unconstitutional debtor's prison. The Tenth Circuit has recognized that "the right

not to be incarcerated for a civil debt without evidence of willful refusal to pay is

clearly established." Havens v. Johnson, 783 F.3d 776, 785 (10th Cir. 2015).

### G. *Monell Claims and Pattern-and-Practice (42 U.S.C. § 1983)*

Oklahoma's systematic violations establish municipal liability under *Monell v. Dep't*

*of Social Services*, 436 U.S. 658 (1978). The *400+ cases* where caseworker Bridget

O'Brien testified similarly establish DOJ Civil Rights Division territory for pattern-

and-practice investigation.

### EVIDENCE SUPPRESSION AND RIGHT TO PRESENT DEFENSE

**Applicable Law:** "Few rights are more fundamental than that of an accused to
present witnesses in his own defense." Chambers v. Mississippi, 410 U.S. 284, 302
(1973); Washington v. Texas, 388 U.S. 14 (1967).

### VIOLATION 11: Systematic Exclusion of Witnesses

| Date: | February 6-7, 2024 |
|---|---|
| **Transcript:** | transcript_20240206_part1_compressed_feb_6_and_7_2024_vol_1_contempt_of_court_hearing_CSS_debtor_prison.pdf |
| **Page/Lines:** | Pages 162-168, 184-186 |

**EXACT QUOTE:**

> *"MS. STEPHENS: I'd like to have Dr. (inaudible) as my next witness. THE*
> *COURT: And was she on the witness -- she was on the witness list, was she*
> *not? MS. STEPHENS: She was. THE COURT: Can you come forward and*
> *give me an -- or give me an offer of proof?... MR. PILKINGTON: Your Honor,*

*we had this discussion at pretrial and we excluded the witness. MS. STRINGER: I would concur, Your Honor. You specifically stated that the only two that would be on there are the two that are on the list."*

**ADDITIONAL QUOTE:**

*"THE COURT: Ma'am, please. She's not -- we've already talked about this. She's not going to be allowed to testify. Do you have any other live witnesses or any other evidence you'd like to submit to the Court? MS. STEPHENS: So -- well, the only one that I have left is Adam Stephens."*

**Constitutional Violation:** Multiple witnesses were excluded from testifying, including: (1) Direct primary care doctor who could testify to business circumstances; (2) CPA/tax expert limited to "taxes only"; (3) Witnesses who could provide exculpatory evidence. This created an uneven playing field where the state could present its evidence while Petitioner could not.

VIOLATION 12: Evidence Suppression During Closing Arguments

| | |
|---|---|
| **Date:** | February 7, 2024 |
| **Transcript:** | transcript_20240206_part2_compressed_feb_6_and_7_2024_vol_2_contempt_of_court_hearing_CSS_debtor_prison.pdf |
| **Page/Lines:** | Pages 78-79 |

**EXACT QUOTE:**

*"MS. STEPHENS: And the things that I couldn't present today because they suppressed evidence. They are tampering evidence, and they blocked out my witness -- MR. PILKINGTON: Your Honor, objection. The term suppress the evidence was -- MS. STEPHENS: These are my arguments -- THE COURT: Excuse me. Just a moment. MR. PILKINGTON: She's now going beyond -- she can only talk about the evidence that was presented -- MS. STEPHENS: This is my argument. THE COURT: I'm going to allow her to continue."*

**Constitutional Violation:** Petitioner was prevented from even discussing suppressed evidence and blocked witnesses during closing arguments. The opposing counsel objected to her characterizing the evidence suppression was unlawful.

JUDICIAL BIAS AND CONFLICT OF INTEREST

**Applicable Law:** Due process requires recusal when "the probability of actual bias on the part of the judge is too high to be constitutionally tolerable." *Caperton v. A.T.*

*Massey Coal Co.*, 556 U.S. 868, 872 (2009); Williams v. Pennsylvania, 136 S. Ct. 1899 (2016).

## VIOLATION 13: Undisclosed Prior DHS Employment

**DOCUMENTED FACT:**

Special Judge Rodney Sparkman previously worked for Oklahoma DHS for over 20 years before becoming a Family Court judge. He failed to disclose this significant conflict of interest when ruling on matters involving OKDHS, including signing the ex parte Emergency Custody Order on December 17, 2021.

**Constitutional Violation:** Per Williams v. Pennsylvania, 136 S. Ct. 1899 (2016),

due process is violated when a judge participates in a case in which he had

significant personal involvement. Sparkman's decades-long career at DHS creates

an inherent conflict when ruling on DHS matters.

## VIOLATION 14: Denial of Recusal Despite Documented Bias

| Date: | November 28, 2022; February 13, 2023 |
|---|---|
| Transcripts: | Transcript_20221128_Rule_15_recusal_hearing_transcript_112822.pdf; Transcript_20230213_Recusal_Hearing_re_Seibert.pdf |

**Constitutional Violation:** Multiple recusal motions were filed documenting bias, including: Judge April Seibert's explicit discrimination based on national origin; systematic exclusion of evidence favorable to Petitioner; predetermined rulings. All recusal motions were denied.

## AMERICANS WITH DISABILITIES ACT VIOLATIONS

**Applicable Law:** 42 U.S.C. § 12132 (ADA Title II) prohibits discrimination and requires reasonable accommodations.

## VIOLATION 15: Forced Public Disclosure of Disability Diagnoses

| Date: | March 21, 2022 |
|---|---|
| Transcript: | Transcript_03212022Stephens_v_Stephens.pdf (Page 4, line 19 to Page 5, line 17; Page 10, line 17 to Page 11, line 5) |
| Judge: | Special Judge April Seibert |

**DOCUMENTED FACTS:**

Special judge April Seibert violated the Americans with Disabilities Act by requiring Petitioner's disability diagnoses to be stated aloud in open court. Diagnoses had been emailed to ADA coordinator weeks prior. Petitioner's ADA advocate requested a private breakout room, which Judge Seibert denied, insisting diagnoses be spoken publicly. The judge then ejected the

ADA advocate from the hearing and retaliated by ordering psychological evaluation based on ADA accommodation requests.

**Constitutional Violation:** Forced public disclosure of protected health information as retaliation for seeking ADA accommodations violates Title II of the ADA and constitutes unlawful retaliation under 42 U.S.C. § 12203. (See Appendix T for complete ADA violation documentation, including formal ADA Complaint dated August 7, 2023 and medical accommodation requests dated May 16, 2022)

VIOLATION 16: Denial of Virtual Attendance While Permitting Opposing Party

| Date: | May 2, 2025 |
|---|---|
| Witness: | In-person court watcher S.B. (Sworn Affidavit available) |

**DOCUMENTED FACTS:**

The Tulsa County court conducted a non-jury trial where Petitioner and her ADA advocates attempted to appear virtually -- the same method permitted for Respondent -- but were deliberately blocked from accessing the proceeding. The court then characterized Petitioner as a "no-show" and issued a default judgment.

**Constitutional Violation:** Disparate treatment violates Equal Protection and ADA requirements for reasonable accommodations.

## H. *Article III and Separation of Powers Violations*

Per *SEC v. Jarkesy*, 603 U.S. 109 (2024), quasi-criminal proceedings require Article III judicial oversight and jury trials where constitutional rights are at stake. All contempt proceedings were conducted by "special judges" who simultaneously acted as prosecutor/accuser AND judge, imposed determinate incarceration without proper jury protections, and exceeded their statutory authority and jurisdiction.

## III. ROOKER-FELDMAN DOCTRINE INAPPLICABILITY

The *Rooker-Feldman* doctrine (*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)) is **inapplicable** to Applicant's federal claims.

**Rooker-Feldman Does NOT Bar:**

**1. *Prospective Injunctive Relief (Ongoing Violations):*** Applicant seeks prospective injunctive relief to halt ***ongoing** and severely and irreversibly harmful constitutional violations—NOT to overturn any state judgment*. The violations are continuous: the bench warrant remains active, ERISA violations continue, passport revocation persists, banks levying and frozen, imprisonment threats are ongoing.

**2. *Declaratory Actions Not Tied to Overturning a State Judgment:***
Applicant's declaratory relief requests concern independent federal questions (ERISA preemption, *Turner v. Rogers* requirements, Full Faith and Credit) that do not require review of the state court judgment itself.

**3. *Administrative Record Challenges*:** Applicant challenges OKDHS administrative policies and practices that violate federal law—this is distinct from appealing any state court ruling.

**4. *Pattern-and-Practice Claims (DOJ Civil Rights Division Territory):***
Claims documenting systematic violations affecting 400+ families are independent federal civil rights claims, not appeals of individual state judgments.

**5. *State-Court Collateral Actions That Do Not Ask Federal Court to Review State Judgment*:** Applicant does NOT ask any federal court to review the state judgment—rather, Applicant *challenges* independent federal violations that occurred *collateral to* the state proceedings.

**6. *Independent Federal Claims for New Injuries*:** The ERISA violation (seizure without valid QDRO and without a warrant), passport revocation (without pre-

deprivation hearing), ADA violations (blocking virtual access), and missing $65,000 funds are *new injuries* independent of any state court judgment.

**7. *Actions Against Non-Judicial Actors*:** Claims against caseworkers (Bridget O'Brien), CSS employees, and Charles Schwab are against non-judicial actors for their independent federal violations.

**8. *Claims Where the State Judgment Is Not the Source of Harm*:** The harm flows from the *enforcement mechanisms*—garnishment without QDRO and without a warrant, incarceration without ability-to-pay hearing, malicious prosecution by caseworkers, *$65,000 seized but not distributed*—not from the existence of a state judgment.

***That distinction is VERY IMPORTANT.*** See *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Lance v. Dennis*, 546 U.S. 459, 464 (2006).

## IV. BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR A STAY

The balance of equities weighs heavily in favor of granting the requested stay. Applicant faces imminent imprisonment, inability to travel and work and missionary religious activities, permanent deprivation of parental rights, and continuing financial devastation.

***Respondent suffers no cognizable harm from a stay***—especially *since* **the father testified under oath that the child is not harmed without mother's financial suppor**t and **he has not received any of the $65,000 seized** by private bank Charles Schwab that he has never had an account with nor attributed to seized retirement without a warrant. The underlying support obligation (if any exists after proper adjudication) will not disappear.

The public interest favors a stay. The constitutional questions presented—affecting thousands of families nationwide—require resolution by this Court rather than being mooted through coercive state-court mechanisms.

## V. PREEMPTIVE DEFENSES AGAINST MOTION TO DISMISS

### 1. *Eleventh Amendment Immunity Does Not Apply*

The Eleventh Amendment does not bar the following which are true in my cases: (a) claims against state officials in individual capacities, *Hafer v. Melo*, 502 U.S. 21 (1991); (b) claims for prospective injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908); (c) claims against Charles Schwab (private corporation).

### 2. *Younger Abstention Does Not Apply*

Younger abstention is inapplicable where the following are true in my cases: (a) bad faith and harassment exist; (b) no adequate state forum exists (Oklahoma OCRE formally recused itself September 24, 2025); (c) claims seek prospective relief from ongoing federal law violations; (d) ERISA claims involve complete federal preemption.

### 3. *Rooker-Feldman Does Not Apply*

As detailed in Section III, Applicant's claims are for prospective injunctive relief, declaratory actions independent of state judgments, administrative record challenges, pattern-and-practice claims, state-court collateral actions not asking for state judgment review, independent federal claims for new injuries, actions against non-judicial actors, and claims where the state judgment is not the source of harm.

### 4. *Claims Are Not Conclusory*

The ERISA anti-alienation provision is a bright-line statutory command. The Oklahoma Supreme Court's affirmation of indigency (DF-120849) and father's testimony that the child is not harmed without support *are **documented facts,** not conclusory allegations.*

### 5. *Pro Se Pleadings Must Be Liberally Construed*

"[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### 6. *Federal Rule of Civil Procedure 11 Sanctions*

Applicant requests sanctions under Fed. R. Civ. P. 11 against any party or counsel who files baseless motions to dismiss interposed for improper purposes including delay and harassment.

## VI. REQUEST FOR CRIMINAL REFERRAL TO DOJ

**IMPORTANT CLARIFICATION REGARDING CRIMINAL PROSECUTION:**

Applicant acknowledges and understands that ***private citizens cannot initiate federal criminal prosecutions***. While courts will docket such filings, they cannot proceed as criminal matters without action by the United States Department of Justice. Accordingly, Applicant does not purport to initiate criminal prosecution but instead ***respectfully requests that this Court refer the following documented violations to the United States Department of Justice, Civil Rights Division, for investigation and potential prosecution***:

*18 U.S.C. § 241 - **Conspiracy Against Rights***: The coordinated actions of OKDHS caseworkers, CSS employees, special judges, and attorneys to deprive Applicant of constitutional rights under color of law.

*18 U.S.C. § 242 - **Deprivation of Rights Under Color of Law***: Individual actors who, acting under color of state law, deprived Applicant of her constitutional rights including due process, equal protection, and freedom from unlawful imprisonment despite ***judicially-affirmed indigency***.

*18 U.S.C. § 1341/1343 - **Mail and Wire Fraud***: use of mail and electronic communications to perpetuate fraudulent child support enforcement, including seizure of $65,000 that ***never reached purported beneficiary or his attorney***.

**18 U.S.C. § 1961 - RICO:** The systematic pattern of: (a) seizing funds without valid QDRO and without a warrant after seizure of children without a warrant; (b) failing to distribute seized funds to intended beneficiary; (c) $93.4 million in "questioned costs" per State Auditor audit; (d) caseworker with 400+ similar cases demonstrating pattern-and-practice (See Appendix P, S, and AA)

### DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the United States Constitution, Applicant hereby demands a trial by jury of all issues so triable in this action.

This Court's decision in *SEC v. Jarkesy*, 603 U.S. 109 (2024), reaffirms that constitutional jury trial rights apply to proceedings seeking civil penalties that are punitive in nature. The contempt proceedings against Applicant, resulting in determinate incarceration, are quasi-criminal and trigger Sixth and Seventh Amendment protections.

## DEMAND AND RELIEF SOUGHT

**WHEREFORE, Applicant respectfully requests that Justice Gorsuch:**

1. Issue an immediate administrative stay and stay the Tenth Circuit's mandate pending certiorari;

2. Stay all contempt proceedings and enforcement actions in Oklahoma Case No. FD-2015-2228 and related cases, including warrants, judgments, liens, passport restrictions, license revocations, and attorney fee awards;

3. Order return of Applicant's passport and medical licensure;

4. Direct Oklahoma courts to halt any further proceedings risking arrest or detention;

5. Refer this matter to the DOJ Civil Rights Division for investigation under 18 U.S.C. §§ 241, 242, 1341, 1343, 1961 (referral only);

6. Order investigation into the missing $65,000 seized from Applicant's ERISA-protected retirement;

7. Alternatively, provide written findings of fact and conclusions of law under Supreme Court Rule 22 if relief is denied;

8. Grant all other just and proper relief.

**Applicant permanently objects to any proceedings before non-Article III judges and reserves the right to amend this application at any time.**

*Applicant decree and declare AS IT IS WRITTEN pursuant to Psalm 127:3 + Psalm 105:15 + Exodus 8:1 & 9:1 + Isaiah 61:8a + Deut 19:15 + Isaiah 54:17, so it is and shall be forever!*

Private sector autograph;
**WITHOUT RECOURSE**



By:

By: Linh Tran Stephens / sui juris Applicant, Agent or attorney-in-fact,
All Rights Reserved None Waived, **Without Prejudice *UCC 1-308 & 1-103*,**
sui juris, Ambassador of יהוה and Heir of the Creator a/k/a the I AM THAT I AM,
my heir/offspring is G.S;
By the Holy and Eternal Authority vested in me by Yahusha Ha'Mashiach as
High Royal Priest (1 Peter 2:9) of Melchizedek Order (Hebrews 7:17), I do hereby
seal, confirm, and sanctify this instrument and its contents as lawfully issued
in Heaven and upon the Earth,
**Non-Assumpsit**, one-and-only Grantor & Authorized Agent & Beneficiary
for LINH TRAN STEPHENS©® ens legis and all its derivatives thereof
including Cestui Que Trust a.k.a. "Fide Commissary Trust",
A natural living woman upon land breathing with a living soul and the Holy Spirit,
natural people with hands legs, Alive-on-the-land, Plenary mind body soul/spirit,
unlimited, non-incorporated, non-sole-proprietor,
**stateless** "**freeman of the Union**" per Honorable Mr. Justice MILLER on April
14th, 1983, in the Slaughter-House cases, 83 US 36 (a SCOTUS case specifically
mentioned in 8 FAM 102.3),
full capacity and competency with postgraduate level of education,
living on the land of the republic, with God-given rights pursuant to Bills of Rights,
NOT a "pro se"/"person"/"pauper"/"indigent"/"slave"/"public servant"/"government
employee"/"ward of State"/"U.S. citizen"/"minor" in your dictionary; i reject your 12
legal presumptions, other presumptions/assumptions/double-speaking/implied or
undisclosed contracts;
Article IV Section 2 Citizens of each State shall be entitled to all Privileges &
Immunities
**General Delivery Town Post,**
**Non-Domestic, without the UNITED STATES of Washington, D.C.**
℅ 1964 Ashley River Road Ste B Unit 80112,
Charleston, South Carolina republic 00000
**ZIP exempt** [near 29407-4782] without the UNITED STATES D.C.,
Email: LinhStephens7@gmail.com*; Tel:* 843-608-0294
**Notice:** Using a Notary on this document does ***not*** create any adhesion contract with
the state/, nor does it alter any legal status of any of the parties hereto in any manner,
but is used only for verification, identification, and certification purposes and not for
entrance into any foreign jurisdiction nor into U.S. jurisdiction. All rights are
reserved. Without prejudice and without recourse.

### Notary as JURAT CERTIFICATE

| | |
|---|---|
| state of Minnesota | ) |
| | ) *ss* |
| county of Sherburne | ) |

On this 30th day of January, 2026 before me, Melissa K. Vagle, a Notary Public, personally appeared a living woman Linh Tran Stephens ( the Authorized Representative and Beneficiary for Legal Fiction LINH TRAN STEPHENS©™ ), who electronically/virtually proved to me on the basis satisfactory evidence to be the woman whose name is subscribed to within the instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her autograph(s) on the instrument the woman executed, the instrument.

I certify under PENALTY OF PERJURY under the lawful laws of Minnesota State and that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

*Melissa K. Vagle*

Signature of
Notary/Jurat

MELISSA K VAGLE
Notary Public
State of Minnesota
My Commission Expires
January 31, 2028

Notary Public's Commission Expires: 01/31/2028

No. _____

# In the
# Supreme Court of the United States

Linh Tran Stephens, *sui juris, natural living breathing woman with a living soul and the Holy Spirit, Ambassador of Christ / Yahusha,*

*Applicant,*

v.

CHILD SUPPORT SERVICES OF OKLAHOMA DEPARTMENT OF HUMAN SERVICES, CHARLES SCHWAB & CO., INC., Cierra Freeman, Mary Johnmeyer, Renee Banks, Jason Hoenshell, and Emmalene Stringer et al.,

*Respondents.*

## CERTIFICATE OF COMPLIANCE

As required by Supreme Court Rule 33.1(h), I, Linh Tran Stephens, *sui juris* natural living woman, proceeding *in forma pauperis* as affirmed by the Oklahoma Supreme Court on January 23, 2023 (Case No. DF-120849) and federal court cases e.g. 24-CV-216-JDR-CDL, hereby certify that the *EMERGENCY APPLICATION FOR A STAY OF THE MANDATE AND FOR IMMEDIATE ADMINISTRATIVE STAY AND EMERGENCY INJUNCTION PENDING DISPOSITION OF TWO PETITIONS FOR WRIT OF CERTIORARI* contains < 40 pages, excluding the parts of the petition that are exempted by Supreme Court Rule 33.1(d).

I declare under penalty of perjury that the foregoing is true and correct.

This *30th of January, 2026.*

*without prejudice*
*linh-tran: stephens/Agent*

Linh Tran Stephens / Agent or attorney-in-fact
WITHOUT RECOURSE
*By:* Linh Tran Stephens
*sui juris Applicant, Agent or attorney-in-fact, natural living woman*
**in care of:** 1964 Ashley River Rd Ste B Unit 80112,
Charleston, South Carolina 00000 ZIP EXEMPT [near 29407]
without the United States District Columbia
Telephone: (843) 608-0294 | Email: LinhStephens7@gmail.com

No. _____

## In the
# Supreme Court of the United States

Linh Tran Stephens, *sui juris, natural living breathing woman with a living soul and the Holy Spirit, Ambassador of Christ / Yahusha,*

*Applicant,*

v.

CHILD SUPPORT SERVICES OF OKLAHOMA DEPARTMENT OF HUMAN SERVICES, CHARLES SCHWAB & CO., INC., Cierra Freeman, Mary Johnmeyer, Renee Banks, Jason Hoenshell, and Emmalene Stringer et al.,

*Respondents.*

## PROOF OF SERVICE

I, Linh Tran Stephens, do swear or declare that on *January 30, 2026,* as required by Supreme Court Rule 29, I have served the enclosed *EMERGENCY APPLICATION FOR A STAY OF THE MANDATE AND FOR IMMEDIATE ADMINISTRATIVE STAY AND EMERGENCY INJUNCTION PENDING DISPOSITION OF TWO PETITIONS FOR WRIT OF CERTIORARI* on each party to the above proceeding or that party's counsel, and on every other person required to be served, by depositing an envelope containing the above documents in the United States mail properly addressed to each of them and with first-class postage prepaid, or by delivery to a third-party commercial carrier for delivery within 3 calendar days. The names and addresses of those served are as follows:

**For Justice Neil M. Gorsuch,**
**Supreme Court of the United States,**
**Office of the Clerk;**
One First Street, N.E.,
Washington, DC 20543
Phone: (202) 479-3000 Fax: (202) 479-3011 (for urgent matters only)

**OKLAHOMA COURT OF CIVIL APPEALS** and
Supreme Court Clerk's Office, cases # 122022 and 120849
2100 N Lincoln Blvd, Suite 4,
Oklahoma City, OK 73105-4907,

Gilbert J. Pilkington, Jr., OBA # 21998, PILKINGTON LAW FIRM, PLLC
P.O. Box 52614, Tulsa, OK 74152-0614, Gil@PilkingtonLawFirm.com

***Attorney for Respondent Adam Stephens***
*(Via USPS with tracking and Electronic Mail)*

Also filed electronically with the Clerk of Court for the United States Court of Appeals for the Tenth Circuit using the CM/ECF system, which will send notification of such filing to all counsel of record who are registered CM/ECF users:

**Clerk of U.S. Court of Appeals for the Tenth Circuit, Byron White**
1823 Stout Street,
Denver, Colorado 80257;
**Counsel for Charles Schwab & Co., Inc.:**
**Counsel for Child Support Services of Oklahoma DHS;**
**Counsels for individuals: Cierra Freeman** *(Applicant's court appointed counsel for financially indigent defendant for child support contempt of court),* **Mary Johnmeyer** *(Counsel for Charles Schwab & Co., Inc.),* **Renee Banks** *(OKDHS employee)***, Jason Hoenshell** *(OKDHS employee),* and **Emmalene Stringer** *(Counsel for Child Support Services of Oklahoma DHS, OBA #31690, P.O. Box 27068, Tulsa, OK 74149, OCSS.Contact.TulsaEast@okdhs.org)*

**CC:** via official emails for (1) **Oklahoma Attorney General, Gentner Drummond at** gentner.drummond@oag.ok.gov (2) **OKDHS CSS** at OCSS.contact.tulsa@okdhs.org and emmalene.stringer@okdhs.org (3) Tulsa County Court Clerk at tulsa.courtclerk@oscn.net for all cases regarding Linh Stephens

I declare under penalty of perjury that the foregoing is true and correct.
Executed on January 30, 2026.

WITHOUT RECOURSE

*without prejudice*
*linh—tran: stephens/Agent*

Linh Tran Stephens / Agent or attorney-in-fact,
one-and-only *agent and beneficiary* of LINH TRAN STEPHENS ©™

page 44

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 16, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

LINH TRAN STEPHENS,

 Plaintiff - Appellant,

v.

CHILD SUPPORT SERVICES OF
OKLAHOMA DEPARTMENT OF
HUMAN SERVICES; CHARLES
SCHWAB & CO., INC.; CIERRA
FREEMAN, individually and in her official
capacity as court-appointed attorney for
child-support enforcement; MARY
JOHNMEYER, individually and in her
official capacity as legal counsel of Charles
Schwab & Co., Inc.; RENEE BANKS,
individually and in her official capacity as
Director of Child Support Services of
Oklahoma Department of Human Services;
JASON HOENSHELL, individually and in
his official capacity as Oklahoma FIDM
Coordinator; EMMALENE STRINGER,
individually and in her official capacity as
attorney for Child Support Services of
Oklahoma Department of Human Services,

 Defendants - Appellees,

and

JOHN DOES 1-10, employees of Child
Support Services of Oklahoma Department
of Human Services; JOHN DOES 11-20,
employees of Charles Schwab & Co., Inc.,

 Defendants.

No. 25-5063
(D.C. No. 4:24-CV-00216-JDR-CDL)
(N.D. Okla.)

1

—————————————————————

## ORDER AND JUDGMENT[*]

—————————————————————

Before **CARSON**, **BALDOCK**, and **KELLY**, Circuit Judges.

—————————————————————

After an Oklahoma court ordered Linh Tran Stephens to pay more than $60,000 in past-due child support, Oklahoma Child Support Services (CSS) levied a retirement account she held with Charles Schwab & Company (Schwab), and Schwab sold investments in the account to satisfy the levy. Ms. Stephens then filed this pro se lawsuit alleging the actions of CSS, Schwab, several of their employees, and a court-appointed attorney had violated her constitutional rights and been unlawful in multiple ways, including under the Racketeering Influenced and Corrupt Organizations Act (RICO), the Fair Debt Collection Act (FDCA), the Employee Retirement Income Security Act (ERISA), federal criminal statutes, and tort law.

The district court granted defendants' motions to dismiss, ruling: (1) Eleventh Amendment immunity bars Ms. Stephens's claims against CSS and her claims for damages against CSS employees in their official capacities; (2) *Younger* abstention requires dismissal of her claims for injunctive and declaratory relief because they

—————————————————————

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

2

seek to interfere in ongoing proceedings that involve orders "uniquely in furtherance of the Oklahoma courts' ability to perform their judicial function," R., vol. 2 at 235 (brackets omitted) (quoting *Travelers Cas. Ins. Co. of Am v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1317 (10th Cir. 2024))[1]; and (3) her complaint failed to state a claim on which relief could be granted against Schwab or any individual.  The court denied Ms. Stephens's several pending motions as moot and entered judgment.

We have jurisdiction under 28 U.S.C. 1291.  We review the dismissal of Ms. Stephens's claims de novo.  *See Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 735 (10th Cir. 2024) (Eleventh Amendment immunity); *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 524 (10th Cir. 2023) (*Younger* abstention); *Timmins v. Plotkin*, 157 F.4th 1275, 1280 (10th Cir. 2025) (failure to state a claim).

We construe Ms. Stephens's pro se filings liberally.  *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).  But we do not act as her advocate and therefore will not search the record, conduct research, or construct arguments for her.  *See id.* at 840–41.  Ms. Stephens's "first task" as the appellant is "to explain to us why the district court's decision was wrong."  *Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015).  "[A] tale of apparent injustice may assist in that task, but it cannot substitute for legal argument."  *Id.*

---

[1] Under *Younger v. Harris*, 401 U.S. 37 (1971), "a federal court must abstain from deciding a case otherwise within the scope of its jurisdiction in certain instances in which the prospect of undue interference with state proceedings counsels against federal relief."  *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 522 (10th Cir. 2023) (internal quotation marks omitted).

3

Ms. Stephens has not shown any reversible error in the district court's rulings. Her opening brief lists seventeen issues for review. But several of those do not relate to the reasons her claims were dismissed. The remainder are presented in too conclusory a fashion to show how she believes the district court erred. Moreover, her opening brief never addresses *Younger* abstention or Eleventh Amendment immunity. By not doing so, Ms. Stephens has waived her opportunity to appeal the district court's application of those doctrines. *See Burke v. Pitts*, 157 F.4th 1326, 1342–43 (10th Cir. 2025) (stating we will not consider issues that are not adequately presented in an opening brief or are raised for the first time in a reply). Beyond that, even construing her opening brief as contesting the conclusion that her complaint did not plausibly state any claim against Schwab or any individual defendant, we see no reason to reverse that ruling.

Accordingly, having reviewed the briefs, the record, and the relevant authorities, we affirm the dismissal of Ms. Stephens's claims for substantially the same reasons stated by the district court. We therefore also affirm the district court's denial of her motions for an emergency injunction and other relief. We deny as moot Ms. Stephens's motion for a stay or injunction pending appeal and we deny her motions to disqualify and sanction opposing counsel and for judicial notice.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

4

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

Appendix B

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

**January 28, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

LINH TRAN STEPHENS,

     Plaintiff - Appellant,

v.

CHILD SUPPORT SERVICES OF
OKLAHOMA DEPARTMENT OF
HUMAN SERVICES, et al.,

     Defendants - Appellees,

and

JOHN DOES 1-10, employees of Child
Support Services of Oklahoma Department
of Human Services, et al.,

     Defendants.

No. 25-5063
(D.C. No. 4:24-CV-00216-JDR-CDL)
(N.D. Okla.)

_____

**ORDER**
_____

Before **CARSON**, **BALDOCK**, and **KELLY**, Circuit Judges.
_____

The Court entered an Order and Judgment terminating this appeal on January 16,

2026. On January 26, 2026, appellant filed (1) a motion to stay the mandate pending a

petition for certiorari and (2) a *Motion for Full Disclosure Under FDRPTA 2025*. Both

motions are denied.

                              Entered for the Court

                              Per Curiam

FILED
United States Court of Appeals
Tenth Circuit

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

**January 16, 2026**

Christopher M. Wolpert
Clerk of Court

LINH TRAN STEPHENS,

     Plaintiff - Appellant,

v.

CHILD SUPPORT SERVICES OF
OKLAHOMA DEPARTMENT OF
HUMAN SERVICES; CHARLES
SCHWAB & CO., INC.; CIERRA
FREEMAN, individually and in her official
capacity as court-appointed attorney for
child-support enforcement; MARY
JOHNMEYER, individually and in her
official capacity as legal counsel of Charles
Schwab & Co., Inc.; RENEE BANKS,
individually and in her official capacity as
Director of Child Support Services of
Oklahoma Department of Human Services;
JASON HOENSHELL, individually and in
his official capacity as Oklahoma FIDM
Coordinator; EMMALENE STRINGER,
individually and in her official capacity as
attorney for Child Support Services of
Oklahoma Department of Human Services,

     Defendants - Appellees,

and

JOHN DOES 1-10, employees of Child
Support Services of Oklahoma Department
of Human Services; JOHN DOES 11-20,
employees of Charles Schwab & Co., Inc.,

     Defendants.

No. 25-5063
(D.C. No. 4:24-CV-00216-JDR-CDL)
(N.D. Okla.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **CARSON**, **BALDOCK**, and **KELLY**, Circuit Judges.

_____

After an Oklahoma court ordered Linh Tran Stephens to pay more than $60,000 in past-due child support, Oklahoma Child Support Services (CSS) levied a retirement account she held with Charles Schwab & Company (Schwab), and Schwab sold investments in the account to satisfy the levy. Ms. Stephens then filed this pro se lawsuit alleging the actions of CSS, Schwab, several of their employees, and a court-appointed attorney had violated her constitutional rights and been unlawful in multiple ways, including under the Racketeering Influenced and Corrupt Organizations Act (RICO), the Fair Debt Collection Act (FDCA), the Employee Retirement Income Security Act (ERISA), federal criminal statutes, and tort law.

The district court granted defendants' motions to dismiss, ruling: (1) Eleventh Amendment immunity bars Ms. Stephens's claims against CSS and her claims for damages against CSS employees in their official capacities; (2) *Younger* abstention requires dismissal of her claims for injunctive and declaratory relief because they

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

seek to interfere in ongoing proceedings that involve orders "uniquely in furtherance of the Oklahoma courts' ability to perform their judicial function," R., vol. 2 at 235 (brackets omitted) (quoting *Travelers Cas. Ins. Co. of Am v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1317 (10th Cir. 2024))[1]; and (3) her complaint failed to state a claim on which relief could be granted against Schwab or any individual.  The court denied Ms. Stephens's several pending motions as moot and entered judgment.

We have jurisdiction under 28 U.S.C. 1291.  We review the dismissal of Ms. Stephens's claims de novo.  *See Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 735 (10th Cir. 2024) (Eleventh Amendment immunity); *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 524 (10th Cir. 2023) (*Younger* abstention); *Timmins v. Plotkin*, 157 F.4th 1275, 1280 (10th Cir. 2025) (failure to state a claim).

We construe Ms. Stephens's pro se filings liberally.  *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).  But we do not act as her advocate and therefore will not search the record, conduct research, or construct arguments for her.  *See id.* at 840–41.  Ms. Stephens's "first task" as the appellant is "to explain to us why the district court's decision was wrong."  *Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015).  "[A] tale of apparent injustice may assist in that task, but it cannot substitute for legal argument."  *Id.*

---

[1] Under *Younger v. Harris*, 401 U.S. 37 (1971), "a federal court must abstain from deciding a case otherwise within the scope of its jurisdiction in certain instances in which the prospect of undue interference with state proceedings counsels against federal relief."  *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 522 (10th Cir. 2023) (internal quotation marks omitted).

3

Ms. Stephens has not shown any reversible error in the district court's rulings. Her opening brief lists seventeen issues for review. But several of those do not relate to the reasons her claims were dismissed. The remainder are presented in too conclusory a fashion to show how she believes the district court erred. Moreover, her opening brief never addresses *Younger* abstention or Eleventh Amendment immunity. By not doing so, Ms. Stephens has waived her opportunity to appeal the district court's application of those doctrines. *See Burke v. Pitts*, 157 F.4th 1326, 1342–43 (10th Cir. 2025) (stating we will not consider issues that are not adequately presented in an opening brief or are raised for the first time in a reply). Beyond that, even construing her opening brief as contesting the conclusion that her complaint did not plausibly state any claim against Schwab or any individual defendant, we see no reason to reverse that ruling.

Accordingly, having reviewed the briefs, the record, and the relevant authorities, we affirm the dismissal of Ms. Stephens's claims for substantially the same reasons stated by the district court. We therefore also affirm the district court's denial of her motions for an emergency injunction and other relief. We deny as moot Ms. Stephens's motion for a stay or injunction pending appeal and we deny her motions to disqualify and sanction opposing counsel and for judicial notice.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

4

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 11, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

Appendix D

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

LINH TRAN STEPHENS,

      Plaintiff - Appellant,

v.

CHILD SUPPORT SERVICES OF
OKLAHOMA DEPARTMENT OF
HUMAN SERVICES, et al.,

      Defendants - Appellees,

and

JOHN DOES 1-10, employees of Child
Support Services of Oklahoma Department
of Human Services, et al.,

      Defendants.

No. 25-5063
(D.C. No. 4:24-CV-00216-JDR-CDL)
(N.D. Okla.)

_____

**ORDER**
_____

Before **MATHESON**, **KELLY**, and **ROSSMAN**, Circuit Judges.
_____

Plaintiff-Appellant Linh Tran Stephens, pro se, has filed a "Verified Petition for

Writ of Mandamus and Emergency Injunctive Relief." To the extent Ms. Stephens seeks

mandamus relief, we note that she asks this court to order an Oklahoma state court or its

judges to act or not act in certain ways. But "[f]ederal courts have no authority to issue a

writ of mandamus to a state judge." *Olson v. Hart*, 965 F.2d 940, 942 (10th Cir. 1992).

Thus, the relief she seeks is not available through mandamus.

To the extent Ms. Stephens seeks an injunction pending appeal, we have considered the traditional injunction factors: (1) likelihood of success on the merits, (2) irreparable harm, (3) the balance of harms, and (4) the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Ms. Stephens has not carried her burden to show these factors counsel in favor of injunctive relief.

For these reasons, we deny the Verified Petition for Writ of Mandamus and Emergency Injunctive Relief.

Entered for the Court

CHRISTOPHER M. WOLPERT, Clerk

Appendix E

Verified Correct Copy of Original 1/8/2016

2017 JUL 11 PM 1:07

**IN THE CIRCUIT COURT OF THE STATE OF OREGON**

**FOR THE COUNTY OF COLUMBIA**

DISTRICT COURT

FILED

JUL 11 2017

**Department of Domestic Relations**

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

In the Matter of the Marriage of

**Adam Sylvester Stephens**

NO. **15DR18623**
Judge: Callahan, Cathleen B

|  |  |
|---|---|
| **Co-Petitioner,** | ) |
| **and** | ) |
|  | ) |
|  | ) |
|  | ) |

**STIPULATED GENERAL
JUDGMENT OF DISSOLUTION
OF MARRIAGE;
AND MONEY AWARD**

**(CO-PETITIONERS)**

**Linh Tran Stephens**

**Co-Petitioner.**

     **This matter came before the court on the motion and affidavit of Co-Petitioning
husband and wife and the stipulation of the parties for the entry of a judgment dissolving
their marriage. Co-Petitioner husband is filing Pro-Se. Co-Petitioner wife is filing Pro-Se.
The court having been presented with this form of stipulated judgment of dissolution,
having reviewed the records and documents on file herein, and being fully advised in the
premises, makes the following findings:**

**1.**

**Co-petitioners are jointly and in agreement filing this judgment for**

Page 1 of 28 Stipulated General Judgment Co-Petition

Verified Correct Copy of Original 1/8/2016.

## 2.3

Each parent shall have a continuing responsibility to:

### 2.3.1

Provide their home (not just mailing) address; home, work, and cellular telephone numbers; and e-mail address to the other parent.

### 2.3.2

Notify the other parent of any emergency circumstances or substantial changes in the children's health.

Neither parent will move to a residence that is more than 60 miles further distant from the other parent without giving the other parent reasonable notice of the change of residence and providing a copy of that notice to the court. ORS 107.159.

Husband and wife are restrained and enjoined from making any derogatory comments about each other to, or in the presence of the children or in any way diminishing the love, respect, and affection that the children have for either parent.

Neither parent will at any time for any reason cause the children to be known or identified or designated by any surname other than their current legal name.

Neither parent will initiate or cause the designation of "father" or "mother" or their equivalents to be used by the children with reference to any person other than their natural mother and father.

## 3.

Adam Sylvester Stephens *should* have an award against Linh Tran Stephens in the sum of $586.00 per month for the support of the child/ren.  As determined

Page 11 of 28 Stipulated General Judgment Co-Petition

Verified Correct Copy of Original 1/8/2016

per State of Oregon Child Support Calculator.

$586.00 cash support and $0.00 cash medical support.

The Child Support Worksheet on which the support was calculated was labeled "Exhibit" and attached to and incorporated in the judgment.

**Instead:**     In lieu of Child Support:

It is agreed by both parties that wife shall assume the following debts of the husband:

2013 Jeep Wrangler Rubicon
$692.17 monthly payment
Vin# 1C4HJWFG6DL616149
Wa. License Plate# ALT5054

2014 Jayco Baha 18' trailer
$192.43 monthly payment
Vin# 1UJBJ0AJ0E77F0229
Wa. license Plat# 1960YR

Insurance for both Jeep and Trailer - $179.23 monthly payment

Total of $1063.83 / Month

At such time the debts are paid in full, wife will sign-over the property to the husband.

The court has not set a *per child* amount of support because the amount of support will need to be recalculated in accordance with the then-applicable child support guidelines when a child ceases to be eligible to receive support.

3.1

Payments will:

Page 12 of 28 Stipulated General Judgment Co-Petition

**Exhibit 1**

Verified Correct Copy of Original 1/8/2016.

health insurance will not be considered a reasonable expense that the other parent would need to pay a part of. Claim Against Estate: Support receiving parent shall have a claim against the estate of the ordered child support paying parent for any monies due pursuant to this judgment for any arrearages that has accrued as of the time of child support ordered parent's death for unpaid support and periodic payments.

### 4.2

Mother will pay half of all the child/ren's reasonably incurred medical, optical, hospital, dental, and orthodontic expenses that are not covered by insurance.

Father will pay the other half of all the child/ren's reasonably incurred medical, optical, hospital, dental, and orthodontic expenses that are not covered by insurance.

### 4.3

This judgment makes no provision for the maintenance of life insurance.

### 5.

The property of the parties will be divided as follows:

### 5.1

Husband is hereby awarded and will receive free from any claim of wife:

### 5.1.1

Any and all personal effects and personal property in party's possession and/or control.

In lieu of Child Support from the wife:

It is agreed by both parties that wife shall assume the following debts of the

husband:

> 2013 Jeep Wrangler Rubicon
> $692.17 monthly payment
> Vin# 1C4HJWFG6DL616149
> Wa. License Plate# ALT5054
>
> 2014 Jayco Baha 18' trailer
> $192.43 monthly payment
> Vin# 1UJBJ0AJ0E77F0229
> Wa. license Plat# 1960YR
>
> Insurance for both Jeep and Trailer - $179.23 monthly payment
>
> Total of $1063.83 / month
>
> At such time the debts are paid in full, wife will sign-over the property to the husband.
>
> Husband also receives $325.00 per month SSI for the benefit of Grace Stephens.

### 5.2

Wife is hereby awarded and will receive free from any claim of husband:

### 5.2.1

Any and all personal effects and personal property in party's possession

and/or control.

### 5.3

A party's personal papers are specifically awarded to that party. Each party

will use their best effort now and in the future to provide the other party with that party's

personal papers and records. Those include, but are not limited to, birth certificates,

passports, baptismal records, wills, military discharge papers, etc. Each party will also

cooperate with the other in providing financial documents that may from time to time be

necessary. For example, one party may in the future need a copy of a previously filed joint

Verified Correct Copy of Original 1/8/2016_

_Verified Correct Copy of Original 1/8/2016._

She is required to pay all personally incurred debts and expenses, including her car payments, real property at 8519 E. 75th St., Tulsa, OK 94133, all credit cards in her name; her student loans.

**In lieu of Child Support to husband:**

It is agreed by both parties that wife shall assume the following debts of the husband:

2013 Jeep Wrangler Rubicon
$692.17 monthly payment
Vin# 1C4HJWFG6DL616149
Wa. License Plate# ALT5054

2014 Jayco Baha 18' trailer
$192.43 monthly payment
Vin# 1UJBJ0AJ0E77F0229
Wa. license Plat# 1960YR

Insurance for both Jeep and Trailer - $179.23 monthly payment

Total of $1063.83 / month

At such time the debts are paid in full, wife will sign-over the property to the husband.

### 8.3

If either party fails to pay any debt or liability as set forth herein, the other party will have the right, but not the obligation, to make any payment due, provided the nonpaying party is given 10 days prior notice of the party's plan to make payment. If payment is made, the party who failed to pay will be responsible for reimbursing the amount paid to the party who made the payment, together with interest computed at the same rate charged by the creditor on the obligation to which payment was made. Interest will accrue from the time payment is made until full reimbursement is made. A party who pays the other party's debt pursuant to this provision is hereby authorized to deduct the

Verified Correct Copy of Original 1/8/2016

Age: 32

Birth Year: 1984

Address: 8519 E. 75th St., Tulsa, OK 94133

Phone: 817-999-2221

SSN, partial: ...5094 - Full SSN is protected. See UTCR 2.130 affidavit.

Driver's license number, partial: ...6094, OR - Full # is Protected. See UTCR 2.130 affidavit.

Employer: Separately provided under UTCR 2.130.


Husband's full name: Adam Sylvester Stephens

Age: 45

Birth Year: 1970

Address: 20010 Ilmari Rd., Clatskanie, OR 97016

Phone: 817-296-0600

SSN, partial: ...5309 - Full SSN is protected. See UTCR 2.130 affidavit.

Driver's license number, partial: ...306M7, WA - Full # is Protected. See UTCR 2.130 affidavit.

Employer: Separately provided under UTCR 2.130.


## MONEY AWARD

### Parties request that no funds be exchanged for Child Support.

In lieu of Child Support:

It is agreed by both parties that wife shall assume the following debts on behalf of the Husband, until paid in full, at which time she will release this property to

Page 22 of 28 Stipulated General Judgment Co-Petition

Verified Correct Copy of Original 1/8/2016.

husband.

2013 Jeep Wrangler Rubicon
$692.17 monthly payment
Vin# 1C4HJWFG6DL616149
Wa. License Plate# ALT5054

2014 Jayco Baha 18' trailer
$192.43 monthly payment
Vin# 1UJBJ0AJ0E77F0229
Wa. license Plat# 1960YR

Insurance for both Jeep and Trailer - $179.23 monthly payment

Total of $1063.83

At such time the debts are paid in full, wife will sign-over the property to the husband.

**Judgment Creditor Name:  Adam Sylvester Stephens**

**Age: 45**

**Birth Year:  1970**

**Address:  20010 Ilmari Rd., Clatskanie, OR 97016**

**Phone:  817-296-0600**

**SSN, partial:  ...5309 - Full SSN is protected.  See UTCR 2.130 affidavit.**

**Driver's license number, partial:  ...306M7, WA - Full # is Protected. See UTCR 2.130 affidavit.**

**Employer:  Separately provided under UTCR 2.130.**

**Judgment Creditor's Lawyer:  None.  Pro-Se filing**

**Judgment Debtor Name:  Adam Sylvester Stephens**

Page 23 of 28 Stipulated General Judgment Co-Petition

Verified Correct Copy of Original 1/8/2016

Child support award in the amount of $586.00 accrues on the first day of each month commencing the first day of the first month following the date of the judgment.

**However:**

In lieu of Child Support:

It is agreed by both parties that wife shall assume the following debts on behalf of the husband, until paid in full:

2013 Jeep Wrangler Rubicon
$692.17 monthly payment
Vin# 1C4HJWFG6DL616149
Wa. License Plate# ALT5054

2014 Jayco Baha 18' trailer
$192.43 monthly payment
Vin# 1UJBJ0AJ0E77F0229
Wa. license Plat# 1960YR

Insurance for both Jeep and Trailer - $179.23 monthly payment

Total of $1063.83

At such time the debts are paid in full, wife will sign-over the property to the husband.

Signed: 1/10/2016 4:32:58 PM

DATED _____ 20___, at _____, Oregon.

X _____
Circuit Court Judge
**Circuit Court Judge Cathleen B. Callahan**

Judge's name: _____

We sign this stipulated judgment on our own volition, with full knowledge of the facts, and with full information as to our legal rights and liabilities. In some instances, the terms of

Page 25 of 28 Stipulated General Judgment Co-Petition



CERTIFIED TO BE A TRUE AND CORRECT
COPY OF THE ORIGINAL DOCUMENT
TRIAL COURT ADMINISTRATOR
COLUMBIA COUNTY, OREGON
BY _____
DATED _____ 4/11/17

**20 a**

Verified Correct Copy of Original 1/8/2016.

this stipulated judgment represent a compromise of disputed issues. However, We believe

the terms and conditions to be fair and reasonable under the circumstances. We have read

the stipulated judgment and agree that it accurately reflects our agreement.

X _____

Adam Sylvester Stephens, Co-Petitioner husband

Date: X NOV 30 2015

SUBSCRIBED AND SWORN to before me on NOV 30 , 20 15

Notary Public
State of Washington
B L SALMAN
MY COMMISSION EXPIRES
February 20, 2018

Notary Public for ~~Oregon~~ Washington .

My commission expires: Feb 20, 2018

X _____

Linh Tran Stephens, Co-Petitioner wife

Date: X 11/21/2015

SUBSCRIBED AND SWORN to before me on Nov. 21 , 20 15

JEANNE WILSON
NOTARY PUBLIC - STATE OF OKLAHOMA
MY COMMISSION EXPIRES OCT 20, 2016
COMMISSION # 08010806

Notary Public for ~~Oregon~~ Oklahoma

My commission expires: October 2020 ,

Minor children:

G___ L___ Stephens - Age; 02; birth year: 2013; SS# is protected and provided

separately in UTCR 2.130.1 affidavit.

Page 26 of 28 Stipulated General Judgment Co-Petition

21 a



*1037428505*

Appendix F

IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
STATE OF OKLAHOMA

2017 JUL 11 PM 1:07      DISTRICT COURT
**F I L E D**

|  |  |  |
|---|---|---|
| In Re the Marriage of: | ) |  |
|  | ) | DON NEWBERRY      JUL 1 1 2017 |
| LINH TRAN STEPHENS, | ) | COURT CLERK |
|  | ) | **DON NEWBERRY, Court Clerk** |
| Petitioner, | ) | **STATE OF OKLA. TULSA COUNTY** |
|  | ) |  |
| and | ) | Case No. FD-2015-2228 |
|  | ) |  |
| ADAM SYLVESTER STEPHENS, | ) | FD Docket B |
|  | ) | Judge Theresa Dreiling |
| Respondent. | ) |  |

### CONFIRMATION OF REGISTRATION OF FOREIGN ORDER

NOW on this _11th_ day of _July_, 2017, this matter comes before the undersigned Judge of the District Court concerning registration of a foreign order.  Petitioner is represented by her counsel, David W. Davis; and Respondent is represented by his counsel, Charles M. Parrish.  Petitioner and Respondent agree to register their Columbia County, Oregon dissolution order with the Tulsa County, Oklahoma Court.  The Court, having reviewed the file and considered the premises, finds that the parties have reached an agreement and finds and orders as follows:

1.      The parties were divorced in Columbia County, Oregon.  The Stipulated General Judgment of Dissolution of Marriage; and Money Award (hereinafter "Oregon Decree") was filed on January 8, 2016.

2.      The parties desire to register the Oregon Decree with the Tulsa County Court.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the Oregon Decree be and is hereby confirmed as a registered order and a certified copy of the Oregon Decree shall be filed simultaneously herewith.

1

Signature page to Confirmation of Registration of Foreign Order, *Linh Tran Stephens and Adam Sylvester Stephens,* Tulsa County Case No. FD-2015-2228

Judge Theresa Dreiling

APPROVED AS TO FORM AND CONTENT:

David W Davis, OBA #15067
David W. Davis, P.C.
601 S. Boulder, Suite 100
Tulsa, Oklahoma  74119
(918) 592-2007

Attorney for Petitioner

Charles M. Parrish, OBA #30206
Wirth Law Office
201 W. 5th Street, Suite 407
Tulsa, OK  74103
(918) 932-2800
Fax:  (918) 932-2900

Attorney for Respondent

2

**23 a**

## <u>CERTIFICATE OF HAND DELIVERY</u>

I, David W. Davis, do hereby certify, that on this 11th day of July, 2017, a true and correct copy of the above and foregoing document was hand delivered to:

James M. Wirth
Charles M. Parrish
Bryce A. Evans
201 W. 5th Street
Suite 407
Tulsa, OK  74103

David W. Davis

1

**24 a**



**Appendix G**

## IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
## STATE OF OKLAHOMA

DON NEWBERRY COURT CLERK

**LINH TRAN STEPHENS,**
2019 JUL -8 P 11: 02
   **Petitioner,**

vs

**ADAM SYLVESTER STEPHENS,**
   **Respondent.**

)
)
)
)
)
)
)
)
)
)

DISTRICT COURT
**F I L E D**

JUL 08 2019

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

**FD-2015-2228**
**Docket C**
**Judge Morrison**

### RESPONDENT'S RESPONSE TO PETITIONER'S
### COUNTER-MOTION TO CONSOLIDATE

  **COMES NOW** Respondent, Adam Sylvester Stephens, and in support of his *Response* alleges and states that:

1. On or about July 11, 2017 the foreign decree was registered in this Court.

2. This Court does not have the authority to modify that decree retroactively.

3. Petitioner is attempting to confuse the issue. The Oregon decree is binding on this Court. The Oregon decree waived child support for Petitioner, ordered Petitioner to pay certain debts and to give sole title to Respondent when the debt was paid.

4. Petitioner is seeking to retroactively modify the Oregon decree and her motion to consolidate should be denied.

5. The pending contempt's are based on the Oregon decree and should be decided on their merit. Compliance with the Oregon decree is a distinct and separate issue for any other pending pleading.

6. Respondent request the Court deny the Motion to Consolidate and award him his reasonable attorney fee.

  **WHEREFORE,** the Respondent respectfully request the Court deny the Motion to Consolidate, grant him his reasonable attorney fee and asks for all such other and further relief as may be just and equitable.

<div style="border:1px solid red;">

Judicial Estoppel requires Father not to switch position from "Oregon decree binding" now to "Oregon decree NOT binding, Father needs 2nd-round of child support", which is ridiculous especially when Father's income is almost $5,000/month NOT poor anymore + child not struggling financially and child's NOT receiving any OKDHS services + Mother was 14 overnights per Oregon decree now zero overnights (SAME category).

</div>

25

18

**07-08-2019  RESP**

RESPONDENT'S RESPONSE TO PETITIONER'S COUNTER-MOTION TO CONSOLIDATE
Document Available (#1044319080) TIFF    PDF

**07-16-2019  CTFREE**

MORRISON, KEVIN: ORDER SETTING HEARING ON COUNTER-MOTION TO CONSOLIDATE
SIGNED/SET (ADDED TO) 7-22-19 9:00 AM;

**07-17-2019  OSH**

ORDER SETTING HEARING ON COUNTER-MOTION TO CONSOLIDATE
Document Available (#1044321223) TIFF    PDF

**07-22-2019  APLI**

APPLICATION FOR INDIRECT CONTEMPT CITATION - CHILD SUPPORT TRAILER IN LIEU OF
CHILD SUPPORT - AMENDED
Document Available (#1044323593) TIFF    PDF

**07-22-2019  CTFREE**

MORRISON, KEVIN: PETITIONER REPRESENTED BY MELISSA CORNELL; RESPONDENT
REPRESENTED BY GIL PILKINGTON; PETITIONER ENTERS PLEA NOT GUILTY, WAIVES JURY;
HEARING SET 10-9-19 9:00 AM FOR CONTEMPT AND ALL PENDING ISSUES; PARTIES
AGREE TO MEDIATE; PARTIES AGREE TO APPOINT NEW GAL;

EXHIBIT #24
Page 2 of 3



**Appendix H**

## IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
### STATE OF OKLAHOMA

FILED

| | |
|---|---|
| IN RE THE MARRIAGE OF: | FEB 20 2024 |
| LINH TRAN STEPHENS, ) | |
| ) | DON NEWBERRY, Court Clerk |
| PETITIONER, ) | STATE OF OKLA. TULSA COUNTY |
| ) | |
| and ) | Case No. FD-2015-2228 |
| ) | FD DOCKET C |
| ADAM SYLVESTER STEPHENS, ) | |
| ) | |
| RESPONDENT, ) | |

### ORDER MODIFYING THE DECREE OF DISSOLUTION OF MARRIAGE

On these 29th, 30th, 31st days of January, 2024, and 1st and 2nd days of February, 2024, this matter comes on before me, the undersigned Special Judge of the District Court for trial on Petitioner's *Motion to Modify Custody* filed July 14, 2017, Respondent's *Application for Indirect Contempt Citation-Child Support Trailer in Lieu of Child Support* filed May 23, 2019, Petitioner's *Application for Contempt Citation* filed on August 30, 2019, Petitioner's *First Application for Contempt* filed July 7, 2020, Respondent's *Motion to Modify Custody and Visitation* filed November 18, 2022, Respondent's *Application for Indirect Contempt Citation-Issuance of Subpoena against Court Order* filed January 9, 2023 and April 20, 2023, Petitioner's *Sixth Application for Contempt* filed January 17, 2023, and the amendments on January 19, 2023, Petitioner's *Application for 9th Contempt Citation against Father-Custodial Interference 4th Season* filed September 8, 2023 and Respondent's *Notice of Intent to Relocate* filed November 8, 2023.

Petitioner appeared in person, pro se. Respondent appeared in person, represented by Gilbert J. Pilkington, Jr. Stephen Hale appeared in person, having been appointed to serve as the Guardian Ad Litem for the minor child. Megan Beck appeared having been appointed to represent the minor child at court expense. Emmalene Stringer appeared on behalf of the Department of Human Services, Child Support Enforcement.

1

on a daily basis or what she charges for her services citing HIPAA protections.

74. Petitioner produced no tax documentation supporting her profit and loss statements. Rather she introduced an exhibit which simply shows a sum total of her expenses in the amount of $8,348.16 without any documentation to reflect how those numbers were achieved.

**ALL MALICIOUS LIES, PLEASE SEE ATTACHED PROFIT OR LOSS FROM BUSINESS WHICH SUBMITTED TO COURTS 10-17-22 AND BROUGHT UP MANY TIMES IN COURTS since 10/2022 and 08-14-23 and on Exhibit List attached below**

75. Mother absolutely refused to answer the question as to what, if any, income she derived from disability payments.

76. Mother refused to acknowledge her tax transcripts and was evasive and obstructive with any questions regarding her income even though the Court repeatedly admonished her to answer the questions. Additionally, the Petitioner refused to produce her complete filed tax returns for the years 2017 through 2020.

77. Mother testified that she has reviewed jobs she would be qualified for where the average income would be $180,000 per year. Petitioner testified that she did not apply for these jobs due to the requirement that she be on call or because she did not prefer the hours.

78. Father's gross income from 2017 through 2023:

   a. Father's monthly gross income for 2017 was $1,317.00.

   b. Father's monthly gross income for 2018 was $4,403.00.

   c. Father's monthly gross income for 2019 was $4,874.75.

   d. Father's monthly gross income for 2020 was $3,571.08.

   e. Father's monthly gross income for 2021 was $4,505.16.

   f. Father's monthly gross income for 2022 was $4,381.86.

   g. Father's monthly gross income for 2023 was $4,441.91.

   h. Father's monthly gross income for 2024 was $4,558.85

79. Mother has had no overnight visitation with this child since the child was removed by the Department of Human Services on December 8, 2021.

80. Mother provided no evidence that she provided any health insurance for the minor child

14

**28 a**

**DEFENDANT/Mother's EXHIBIT LIST**    Appendix I    *Date of Hearing:* 14 AUG 2023

Case No. FD-2015-2228 ___    [X] Pretrial Hearing    [ ] Trial

STATE OF OKLAHOMA (at the behest of Adam Stephens) vs. Linh Tran Stephens    FD-15-2228

Name of Party: Linh Tran Stephens ___    [ ] Pltf.    [X] Def.

Party's Attorney: N/A (Pro Per) ___    *(There must be a separate exhibit list for each party.)*

| Exhibit No. Marked for ID | BRIEF DESCRIPTION OF EXHIBIT | FOR COURT USE ONLY | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | ID by Wit. | Off. | Adm. | Withdrawn Date | To Jury | From Jury | To Ex. Stor. | |
| 1 | __Mp3 of CPS Safety Meeting, emailed 8/13/23 | | | | | | | | |
| 2 | __Transcript **06/12/2023** (Motion in Limine, Motions Hearing) and all its exhibits **PENDING** | | | | | | | | |
| 3 | __Transcript 05/10/2023 (school director testified Father perjured about Mother) and all its exhibits | | | | | | | | |
| 4 | __Transcripts arraignments x 3 on 01/27/2023, 02/13/2023, 03/24/2023, **PENDING 07/14/2023, 07/24/2023** and their exhibits, | | | | | | | | |
| 5 | __Transcript 12/20/2022 (recusal hearing) and all its exhibits | | | | | | | | |
| 6 | __Transcript 10/14/2022 (child support hearing that Mother objected to) and all its exhibits | | | | | | | | |
| 7 | __Transcript 06/01/22 signed Tami Morse *(221 pages)* | | | | | | | | |
| 8 | __June 08, 2023 "MOTHER'S VERIFIED COUNTERCLAIM, THIRD-PARTIES COMPLAINTS, AFFIRMATIVE DEFENSE" __court pleading **Counterclaims and all pleadings related to this contempt** | | | | | | | | |
| 9 | __March 23, 2023 "MOTION TO STAY THE ARRAIGNMENT HEARING OF MOTHER FOR ALLEGED CHILD-SUPPORT-INDIRECT-CONTEMPT; DEMAND TRIAL BY JURY OF HER PEERS ONCE STAY IS OVER"__ | | | | | | | | |

DISTRICT COURT
F I L E D
AUG 1 4 2023
DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

I certify that identification markings on exhibits are accurate, and that the check boxes above accurately reflect the hearing/trial record. ([ ] not required in this case per local court practice or court order)
    Date ___    [ ] Atty/Party Sig. ___    [ ] Atty/Party certified orally on record

I certify that exhibits checked "To Jury" on this and all attached pages were given to the jury for deliberation.
    Date ___    In-Ct. Clerk ___

I certify that the exhibits checked "From Jury" on this and all attached pages were received after the verdict.
    Date ___    In-Ct. Clerk ___

I certify that all exhibits were placed in Interim Storage. returned to counsel/party per order of the court.
    Date ___    In-Ct. Clerk ___    Date ___    Atty/Party Sig. ___

I certify that exhibits checked "To Exhibit Storage" on this and all attached pages have been placed in exhibit storage.
    Date ___    In-Ct. Clerk ___

Page 1 of 5
TF-200 (11/21)(cs)
EXHIBIT LIST

Civil Rule 43.1
Criminal Rule 26.1
Admin. Bulletin No. 9

## EXHIBIT LIST

*Date of Hearing*: <u>14 AUG 2023</u>

Case No. <u>FD-2015-2228</u>                  ☒Pretrial Hearing    ☐Trial

<u>STATE OF OKLAHOMA (at the behest of Adam Stephens</u> vs. <u>Linh Tran Stephens</u>

Name of Party: <u>Linh Tran Stephens</u>            ☐Pltf.      ☒Def.

Party's Attorney: <u>N/A (Pro Per)</u>_____(*There must be a separate exhibit list for each party.*)

| Exhibit No. Marked for ID | BRIEF DESCRIPTION OF EXHIBIT | FOR COURT USE ONLY | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | ID by Wit. | Off. | Adm. | Withdrawn Date | To Jury | From Jury | To Ex. Stor. |
| 10 | __March 08, 2023 "2ND AMENDED APPLICATION FOR THIRD INDIRECT CONTEMPT CITATION AGAINST RESPONDENT [FATHER] FOR NONPAYMENT-VIOLATING ORIGINAL OREGON DIVORCE-CUSTODY JUDGMENT"__ | | | | | | | |
| 11 | __February 10, 2023 "MOTION REQUESTING OF ESSENTIAL PRE-TRIAL QUESTIONS OF LAW; MOTION RAISING OBJECTIONS; AMD MOTION CHALLENGING THE COURT'S JURISDICTION [SUBJECT MATTER JURISDICTION]"__ | | | | | | | |
| 12 | __February 10, 2023 "INJUNCTION; MOTION TO DISMISS WITH PREJUDICE; CHALLENGE SUBJECT MATTER JURISDICTION"__ | | | | | | | |
| 13 | __January 20, 2023 "MOTION TO DISMISS [*THE APPLICATION FOR CONTEMPT CITATION REGARDING CHILD SUPPORT*] FOR MISCONDUCT BY OKLAHOMA DHS/CPS SUCH AS TO DEPRIVE THE DEFENDANT OF A FAIR TRIAL RELATED TO JD-2021-270 WHICH TRANSFERRED JURISDICTION TO FD-2015-2228"__ | | | | | | | |
| 14 | __January 19, 2023 "PETITIONER'S MOTION TO DISMISS INDIRECT CONTEMPT CITATION RE CHILD SUPPORT AND REQUEST FOR FEES"__ | | | | | | | |
| 15 | __November 18, 2022 "DEMAND PATERNITY TESTING PER OKLAHOMA PARENTAGE LAW; AFFIDAVIT OF PAYMENTS; FAMILY VIOLENCE STATEMENT AGAINST ADAM SYLVESTER STEPHENS AND ADDRESS OF RECORD; DEPARTMENT OF JUSTICE LETTER; FORM COL DENIAL OF RIGHTS UNDER COLOR OF LAW TO CSS;"__ | | | | | | | |
| 16 | __Parenting Coordinator Report child endangering by father (file stamped 04-04-19) | | | | | | | |
| 17 | __Income Tax return 2021 MOTHER Linh unemployment then PLLC private business | | | | | | | |
| 18 | __Letter from Cherokee Nation laid off Mother thus unemployment 08-12-2020 | | | | | | | |

Page 2 of 5
TF-200 (11/21)(cs)
EXHIBIT LIST

Civil Rule 43.1
Criminal Rule 26.1
Admin. Bulletin No. 9

**30**

## EXHIBIT LIST

*Date of Hearing*: <u>14 AUG 2023</u>

Case No. <u>FD-2015-2228</u>                    [X]Pretrial Hearing    [ ]Trial
<u>STATE OF OKLAHOMA (at the behest of Adam Stephens</u> vs. <u>Linh Tran Stephens</u>
Name of Party: <u>Linh Tran Stephens</u>            [ ]Pltf.        [X]Def.
Party's Attorney: <u>N/A (Pro Per)</u>            *(There must be a separate exhibit list for each party.)*

| Exhibit No. Marked for ID | BRIEF DESCRIPTION OF EXHIBIT | ID by Wit. | Off. | Adm. | Withdrawn Date | To Jury | From Jury | To Ex. Stor. |
|---|---|---|---|---|---|---|---|---|
| | | FOR COURT USE ONLY | | | | | | |
| 19 | __FATHER Income Tax return 2021 and Fringe benefits $4665/month or $55,982/year while Father Adam hiding ludicrous Semi-truck driving job and Uber driving side jobs income __FATHER Income Tax return 2020 __FATHER Resume CV truck driver since 2001 *(9 pages)* | | | | | | | |
| 20 | __Business Income Accountant, part of Declaration of Earnings affidavit 10-13-22 *(4 pages)* | | | | | | | |
| 21 | __Income Tax Return 2022 Mother and private Business *(4 pages)* | | | | | | | |
| 22 | __Oregon Decree important parts in lieu of child support from Mother and Mother was labeled 14overnights by Father's frauds 01-10-2016.pdf *[whole Oregon Decree was Exhibit A in origin Motion to Modify Child Support Order filed 01-27-23 w OAH]* *(6 pages)* | | | | | | | |
| 23 | __Confirmation of Foreign Order Oregon Decree to Tulsa OK 07-11-2017 w trailing Oregon Decree *(42 pages)* | | | | | | | |
| 24 | __Father filed "OREGON DECREE is BINDING" on 07-08-2019 now Judicial Estoppel asking more money when Father is RICHER and Mother time decreased 14overnights to now zero overnights *(3 pages)* | | | | | | | |
| 25 | __Declaration of Earnings affidavit 10-13-22 w exhibits by Mother, filed before child-support hearing of 10-14-22 *(65 pages)* | | | | | | | |
| 26 | __Affidavit of Payments from Mother to Father 11-16-22 needed to be considered and reimbursed to Mother *(1 page):* same Affidavit of Payments from Petitioner to Respondent sent to CSS FGN: 000948641001 dated 11-16-22 total **$93,306** that Adam hasn't reimbursed Linh | | | | | | | |

Page 3 of 5
TF-200 (11/21)(cs)
EXHIBIT LIST

Civil Rule 43.1
Criminal Rule 26.1
Admin. Bulletin No. 9

31

**EXHIBIT LIST**          *Date of Hearing*: <u>14 AUG 2023</u>

Case No. <u>FD-2015-2228</u>                    [X]Pretrial Hearing    [ ]Trial
<u>STATE OF OKLAHOMA (at the behest of Adam Stephens</u> vs. <u>Linh Tran Stephens</u>
Name of Party: <u>Linh Tran Stephens</u>              [ ]Pltf.        [X]Def.
Party's Attorney: <u>N/A (Pro Per)</u>            *(There must be a separate exhibit list for each party.)*

| Exhibit No. Marked for ID | BRIEF DESCRIPTION OF EXHIBIT | FOR COURT USE ONLY | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | ID by Wit. | Off. | Adm. | Withdrawn Date | To Jury | From Jury | To Ex. Stor. |
| 27 | __Letter Demand Administrative Review Hearing 01-12-23 to review Erroneous Child Support Order of 10-14-22 resulted from Father and opposing counsel Gil Pilkington JR's Judicial Deceptions they added "child support" to June 01. 2022 Order filing a month later July 06, 2022 where No prior "motion for support" has been filed *(4 pages)* | | | | | | | |
| 28 | __ADA accommodation requests emails started March 11, 2022 before 03-21-22 hearing and long before 06-01-22 hearing *(3 pages)* | | | | | | | |
| **29** | **__ADA complaint and non-compliance letters** x 3 dated May 26, 2022 (filed 05-31-22) and August 22, 2022 (filed 08-23-22) and **August 07, 2023** *(11 pages)* | | | | | | | |
| 30 | __Diary of child G.L.S. dated from July 03, 2020 to June 19, 2021 *(14 pages)* | | | | | | | |
| 31 | __Affidavit of child psychologist J.L. who knew child since 2017 at least 5 continuous years and then intermittently | | | | | | | |
| 32 | __Affidavit of doctor M.L. | | | | | | | |
| 33 | __Affidavit of school director J.M. | | | | | | | |
| 34 | __text message from J.M. to mother that triggered 911 call (child missing from school and father withdrew from stable school without telling anyone) | | | | | | | |
| 35 | __Affidavit of school teacher S.P. *(12 pages)* | | | | | | | |
| 36 | __pictures of G.L.S. disclosed still sleeping naked with father **10/08/2021**, taught to wear adult make up with his babysitter, toilet missing covers, sitting on old men's laps per father's facebook public posts, slingshot endangering *(6 pages)* | | | | | | | |
| 37 | __Affidavit of child's friend J.T. a Nurse Practitioner/witness/Mandatory reporter concerned about child isolated w ABUSER since 06-01-22 hearing, dated 12-17-22 | | | | | | | |
| 38 | __Affidavit of Petitioner for worsen ABUSE after sole custody to FATHER w/ pic, dated 11-28-22 | | | | | | | |

Page 4 of 5
TF-200 (11/21)(cs)
EXHIBIT LIST

Civil Rule 43.1
Criminal Rule 26.1
Admin. Bulletin No. 9

32

## EXHIBIT LIST

*Date of Hearing*: <u>14 AUG 2023</u>

Case No. <u>FD-2015-2228</u>                    [X]Pretrial Hearing     [ ]Trial
<u>STATE OF OKLAHOMA (at the behest of Adam Stephens</u> vs. <u>Linh Tran Stephens</u>
Name of Party: <u>Linh Tran Stephens</u>                    [ ]Pltf.     [X]Def.
Party's Attorney: <u>N/A (Pro Per)</u>          *(There must be a separate exhibit list for each party.)*

| Exhibit No. Marked for ID | BRIEF DESCRIPTION OF EXHIBIT | FOR COURT USE ONLY | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | ID by Wit. | Off. | Adm. | Withdrawn Date | To Jury | From Jury | To Ex. Stor. |
| 39 | __Affidavit of other clinic business owner DR. Keeney dated 09-05-22 Reply Letter Doctrine (referenced in **#25 above** on 10-13-22) | | | | | | | |
| 40 | __Medical doctor note for Petitioner without concern of mental illness, extensive mental health screening negative dated 05-19-22 | | | | | | | |
| **41** | __**Adam psych eval per Dr. Grundy,PENDING** | | | | | | | |
| **42** | __**Adam's actual (not hypothetical) medical insurance premium paid for G.L.S. timeline and left out Mother's portion since divorce** | | | | | | | |
| **43** | __**Adam Relinquish Parental Rights to Ariel court ordered 02-12-2015 mother dead yrs ago** | | | | | | | |
| 44 | All future hearing transcripts prior to jury trial | | | | | | | |
| 45 | | | | | | | | |
| 46 | | | | | | | | |
| 47 | | | | | | | | |
| 48 | | | | | | | | |
| 49 | | | | | | | | |
| 50 | | | | | | | | |
| 51 | | | | | | | | |
| 52 | | | | | | | | |
| 53 | | | | | | | | |
| 54 | | | | | | | | |
| 55 | | | | | | | | |
| 56 | | | | | | | | |
| 57 | | | | | | | | |

Page 5 of 5
TF-200 (11/21)(cs)
EXHIBIT LIST

Civil Rule 43.1
Criminal Rule 26.1
Admin. Bulletin No. 9

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 14 day of August, 2023, a true, correct, and exact copy of the above and foregoing instrument will be served directly in court (if court canceled then will mail) along with its 43 printed Exhibits (leaving out those available online OSCN.net & court transcripts), one example of which attached below, where each page labeled appropriately with Exhibit # and page # and Bates Stamps #

Gilbert J. Pilkington, Jr., OBA # 21998, PILKINGTON LAW FIRM, PLLC
601 S. Boulder Ave., Suite 600, Tulsa, OK 74119-1300,
Faxed: 918-960-5017
Emailed gil@pilkingtonlawfirm.com
***Attorney for Plaintiff/Respondent named Adam Sylvester Stephens***
and ***Attorney for Counterclaims*** ' ***Defendant Adam Sylvester Stephens***
and ***Third-Party Defendant***

Emmalene Stringer, OBA # 31690,
PO BOX 27068, Tulsa, OK 74149, tracking # 7022 2410 0002 8190 1292
Faxed: 918-430-2364
Emailed OCSS.contact.TulsaEast@okdhs.org
***State's Attorney for*** OKDHS, CSS
*and **Third-Party Defendant***

Honorable Judge **Deborrah Ludi-Leitch** (R. 112)
Tulsa County District Court, 500 S Denver Ave, Tulsa OK 74103
deborrah.ludiLeitch@oscn.net

Linh Tran Stephens

**SCHEDULE 1**
**(Form 1040)**

## Additional Income and Adjustments to Income

OMB No. 1545-0074

**2021**

► Attach to Form 1040, 1040-SR, or 1040-NR.

Attachment
Sequence No. **01**

**Appendix J**

Department of the Treasury
Internal Revenue Service

► Go to *www.irs.gov/Form1040* for instructions and the latest information.

Name(s) shown on Form 1040, 1040-SR, or 1040-NR

Your social security number

Linh T Stephens

XXXX5094

**Part I    Additional Income**

| | | | |
|---|---|---|---|
| 1 | Taxable refunds, credits, or offsets of state and local income taxes . . . . . . . . . . . . . . | 1 | |
| 2a | Alimony received . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2a | |
| b | Date of original divorce or separation agreement (see instructions) . . ► | | |
| 3 | Business income or (loss). Attach Schedule C . . . . . . . . . . . . . . | 3 | 4,204 |
| 4 | Other gains or (losses). Attach Form 4797 . . . . . . . . . . . . . . . . | 4 | |
| 5 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 | |
| 6 | Farm income or (loss). Attach Schedule F . . . . . . . . . . . . . . . . | 6 | |
| 7 | Unemployment compensation . . . . . . . . . . . . . . . . . . . . . | 7 | 13,098 |
| 8 | Other income: | | |
| a | Net operating loss . . . . . . . . . . . . . . . . . . . . | 8a ( ) | |
| b | Gambling income . . . . . . . . . . . . . . . . . . . . | 8b | |
| c | Cancellation of debt . . . . . . . . . . . . . . . . . . . | 8c | |
| d | Foreign earned income exclusion from Form 2555 . . . . . . . . | 8d ( ) | |
| e | Taxable Health Savings Account distribution . . . . . . . . . . | 8e | |
| f | Alaska Permanent Fund dividends . . . . . . . . . . . . . | 8f | |
| g | Jury duty pay . . . . . . . . . . . . . . . . . . . . . . | 8g | |
| h | Prizes and awards . . . . . . . . . . . . . . . . . . . . | 8h | |
| i | Activity not engaged in for profit income . . . . . . . . . . . | 8i | |
| j | Stock options . . . . . . . . . . . . . . . . . . . . . . | 8j | |
| k | Income from the rental of personal property if you engaged in the rental for profit but were not in the business of renting such property . . . . . . . . . . . . . . . . . . . . . . . . | 8k | |
| l | Olympic and Paralympic medals and USOC prize money (see instructions) . . . . . . . . . . . . . . . . . . . . . . | 8l | |
| m | Section 951(a) inclusion (see instructions) . . . . . . . . . . | 8m | |
| n | Section 951A(a) inclusion (see instructions) . . . . . . . . . . | 8n | |
| o | Section 461(l) excess business loss adjustment . . . . . . . . . | 8o | |
| p | Taxable distributions from an ABLE account (see instructions) . . . . . | 8p | |
| z | Other income. List type and amount    ► | | |
| | | 8z | |
| 9 | Total other income. Add lines 8a through 8z . . . . . . . . . . . . . . . | 9 | |
| 10 | Combine lines 1 through 7 and 9. Enter here and on Form 1040, 1040-SR, or 1040-NR line 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . | 10 | 17,302 |

**For Paperwork Reduction Act Notice, see your tax return instructions.**

Schedule 1 (Form 1040) 2021

EEA

Client Copy

EXHIBIT #17
Page 1 of 8

Schedule 1 (Form 1040) 2021

Page **2**

| Part II | Adjustments to Income | | |
|---|---|---|---|
| 11 | Educator expenses | 11 | |
| 12 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 | 12 | |
| 13 | Health savings account deduction. Attach Form 8889 | 13 | |
| 14 | Moving expenses for members of the Armed Forces. Attach Form 3903 | 14 | |
| 15 | Deductible part of self-employment tax. Attach Schedule SE | 15 | 297 |
| 16 | Self-employed SEP, SIMPLE, and qualified plans | 16 | |
| 17 | Self-employed health insurance deduction | 17 | |
| 18 | Penalty on early withdrawal of savings | 18 | |
| 19a | Alimony paid | 19a | |
| b | Recipient's SSN ▶ | | |
| c | Date of original divorce or separation agreement (see instructions) ▶ | | |
| 20 | IRA deduction | 20 | |
| 21 | Student loan interest deduction | 21 | |
| 22 | Reserved for future use | 22 | |
| 23 | Archer MSA deduction | 23 | |
| 24 | Other adjustments: | | |
| a | Jury duty pay (see instructions) | 24a | |
| b | Deductible expenses related to income reported on line 8k from the rental of personal property engaged in for profit | 24b | |
| c | Nontaxable amount of the value of Olympic and Paralympic medals and USOC prize money reported on line 8l | 24c | |
| d | Reforestation amortization and expenses | 24d | |
| e | Repayment of supplemental unemployment benefits under the Trade Act of 1974 | 24e | |
| f | Contributions to section 501(c)(18)(D) pension plans | 24f | |
| g | Contributions by certain chaplains to section 403(b) plans | 24g | |
| h | Attorney fees and court costs for actions involving certain unlawful discrimination claims (see instructions) | 24h | |
| i | Attorney fees and court costs you paid in connection with an award from the IRS for information you provided that helped the IRS detect tax law violations | 24i | |
| j | Housing deduction from Form 2555 | 24j | |
| k | Excess deductions of section 67(e) expenses from Schedule K-1 (Form 1041) | 24k | |
| z | Other adjustments. List type and amount ▶ _____ | 24z | |
| 25 | Total other adjustments. Add lines 24a through 24z | 25 | |
| 26 | Add lines 11 through 23 and 25. These are your **adjustments to income.** Enter here and on Form 1040 or 1040-SR, line 10, or Form 1040-NR, line 10a | 26 | 297 |

EEA

Schedule 1 (Form 1040) 2021

EXHIBIT #17
Page 2 of 8

Form **1040**

Department of the Treasury-Internal Revenue Service    (99)

**U.S. Individual Income Tax Return**    **2021**    OMB No. 1545-0074    IRS Use Only-Do not write or staple in this space.

**Filing Status**
Check only one box.

☐ Single    ☐ Married filing jointly    ☒ Married filing separately (MFS)    ☐ Head of household (HOH)    ☐ Qualifying widow(er) (QW)

If you checked the MFS box, enter the name of your spouse. If you checked the HOH or QW box, enter the child's name if the qualifying person is a child but your not your dependent    ▶ x✖✖✖✖#✖

| Your first name and middle initial | Last name | Your social security number |
|---|---|---|
| Linh T | Stephens | ✖✖✖✖-✖5094 |

If joint return, spouse's first name and middle initial    Last name

Spouse's social security number

✖✖✖✖✖✖✖

Home address (number and street). If you have a P.O. box, see instructions.    Apt. no.

**Presidential Election Campaign**

✖✖✖✖✖✖✖

City, town, or post office. If you have a foreign address, also complete spaces below.    State **OK**    ZIP code

✖✖✖✖✖✖✖✖

Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund.

Foreign country name    Foreign province/state/county    Foreign postal code

At any time during 2021, did you receive, sell, exchange, or otherwise dispose of any financial interest in any virtual currency?    ☐ You  ☐ Spouse    ☐ Yes  ☒ No

**Standard Deduction**    Someone can claim:  ☐ You as a dependent    ☐ Your spouse as a dependent

☐ Spouse itemizes on a separate return or you were a dual-status alien

**Age/Blindness**    You:  ☐ Were born before January 2, 1957    ☐ Are blind    **Spouse:**  ☐ Was born before January 2, 1957    ☐ Is blind

**Dependents** (see instructions):

If more than four dependents, see instructions and check here ▶ ☐

| (1) First name    Last name | (2) Social security number | (3) Relationship to you | (4) Check if qualifies for (see instructions): Child tax credit | Credit for other dependents |
|---|---|---|---|---|
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |

Attach Sch. B if required.

**Standard Deduction for-**
- Single or Married filing separately, $12,550
- Married filing jointly or Qualifying widow(er), $25,100
- Head of household, $18,800
- If you checked any box under *Standard Deduction*, see instructions.

| | | | |
|---|---|---|---|
| 1 | Wages, salaries, tips, etc. Attach Form(s) W-2 | 1 | |
| 2a | Tax-exempt interest    2a    **b** Taxable interest | 2b | 301 |
| 3a | Qualified dividends    3a  79    **b** Ordinary dividends | 3b | 79 |
| 4a | IRA distributions    4a    **b** Taxable amount | 4b | |
| 5a | Pensions and annuities    5a    **b** Taxable amount | 5b | |
| 6a | Social security benefits    6a    **b** Taxable amount | 6b | |
| 7 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | 7 | 6,493 |
| 8 | Other income from Schedule 1, line 10 | 8 | 17,302 |
| 9 | Add lines 1, 2b, 3b, 4b, 5b, 6b, 7, and 8. This is your **total income** | 9 | 24,175 |
| 10 | Adjustments to income from Schedule 1, line 26 | 10 | 297 |
| 11 | Subtract line 10 from line 9. This is your **adjusted gross income** ▶ | 11 | 23,878 |
| 12a | **Standard deduction or itemized deductions** (from Schedule A)    12a  12,550 | | |
| b | Charitable contributions if you take the standard deduction (see instructions)  12b  300 | | |
| c | Add lines 12a and 12b | 12c | 12,850 |
| 13 | Qualified business income deduction from Form 8995 or Form 8995-A | 13 | 781 |
| 14 | Add lines 12c and 13 | 14 | 13,631 |
| 15 | **Taxable income.** Subtract line 14 from line 11. If zero or less, enter -0- | 15 | 10,247 |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.    Form **1040** (2021)

EEA

37

EXHIBIT #17
Page 3 of 8

| | | | |
|---|---|---|---|
| 16 | **Tax** (see instructions). Check if any from Form(s): **1** ☐ 8814 **2** ☐ 4972 **3** ☐ | 16 | 853 |
| 17 | Amount from Schedule 2, line 3 | 17 | |
| 18 | Add lines 16 and 17 | 18 | 853 |
| 19 | Nonrefundable child tax credit or credit for other dependents from Schedule 8812 | 19 | |
| 20 | Amount from Schedule 3, line 8 | 20 | |
| 21 | Add lines 19 and 20 | 21 | 0 |
| 22 | Subtract line 21 from line 18. If zero or less, enter -0- | 22 | 853 |
| 23 | Other taxes, including self-employment tax, from Schedule 2, line 21 | 23 | 594 |
| 24 | Add lines 22 and 23. This is your **total tax** ▶ | 24 | 1,447 |
| 25 | Federal income tax withheld from: | | |
| a | Form(s) W-2 | 25a | |
| b | Form(s) 1099 | 25b | 1,307 |
| c | Other forms (see instructions) | 25c | |
| d | Add lines 25a through 25c | 25d | 1,307 |
| 26 | 2021 estimated tax payments and amount applied from 2020 return | 26 | |
| 27a | Earned income credit (EIC) | 27a | |
| | Check here if you were born after January 1, 1998, and before January 2, 2004, and you satisfy all the other requirements for taxpayers who are at least age 18, to claim the EIC. See instructions ▶ ☐ | | |
| b | Nontaxable combat pay election | 27b | |
| c | Prior year (2019) earned income | 27c | |
| 28 | Refundable child tax credit or additional child tax credit from Schedule 8812 | 28 | |
| 29 | American opportunity credit from Form 8863, line 8 | 29 | |
| 30 | Recovery rebate credit. See instructions | 30 | 1,400 |
| 31 | Amount from Schedule 3, line 15 | 31 | |
| 32 | Add lines 27a and 28 through 31. These are your **total other payments and refundable credits** ▶ | 32 | 1,400 |
| 33 | Add lines 25d, 26, and 32. These are your **total payments** ▶ | 33 | 2,707 |

*If you have a qualifying child, attach Sch. EIC.*

**Refund**

Direct deposit? See instructions.

| | | | |
|---|---|---|---|
| 34 | If line 33 is more than line 24, subtract line 24 from line 33. This is the amount you **overpaid** | 34 | 1,260 |
| 35a | Amount of line 34 you want **refunded to you.** If Form 8888 is attached, check here ▶ ☐ | 35a | 1,260 |
| ▶ b | Routing number ▆▆▆▆▆▆   ▶ c Type: ☒ Checking   ☐ Savings | | |
| ▶ d | Account number ▆▆▆▆▆▆ | | |
| 36 | Amount of line 34 you want **applied to your 2022 estimated tax** | 36 | |

**Amount You Owe**

| | | | |
|---|---|---|---|
| 37 | **Amount you owe.** Subtract line 33 from line 24. For details on how to pay, see instructions ▶ | 37 | 0 |
| 38 | Estimated tax penalty (see instructions) | 38 | |

**Third Party Designee**

Do you want to allow another person to discuss this return with the IRS? See instructions . . . . . . . . ▶ ☒ **Yes.** Complete below.   ☐ **No**

Designee's name ▶ ▆▆▆▆, CPA    Phone no. ▶ ▆▆▆▆    Personal identification number (PIN) ▶   3 2 7 9 1

**Sign Here**

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Joint return? See instructions. Keep a copy for your records.

Your signature ▆▆▆▆    Date 03-14-2022    Your occupation    If the IRS sent you an Identity Protection PIN, enter it here (see inst.) ▶

Spouse's signature. If a joint return, **both** must sign. Date    Spouse's occupation    If the IRS sent your spouse an Identity Protection PIN, enter it here (see inst.) ▶

Phone no.    Email address

**Paid Preparer Use Only**

Preparer's signature    Date 03-21-2022    PTIN ▆▆▆▆    Check if: ☐ Self-employed

Preparer's name ▆▆▆▆, CPA

Firm's name ▶ ▆▆▆▆

Firm's address ▶ ▆▆▆▆      Firm's EIN ▶ ▆▆▆▆

Go to *www.irs.gov/Form1040* for instructions and the latest information.     Form **1040** (2021)

EEA

EXHIBIT #17
Page 4 of 8

**SCHEDULE 2**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service

# Additional Taxes

► **Attach to Form 1040, 1040-SR, or 1040-NR.**
► **Go to** *www.irs.gov/Form1040* **for instructions and the latest information.**

OMB No. 1545-0074

**2021**

Attachment
Sequence No. **02**

| Name(s) shown on Form 1040, 1040-SR, or 1040-NR | Your social security number |
|---|---|
| Linh T Stephens | 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 |

### Part I   Tax

| | | | |
|---|---|---|---|
| 1 | Alternative minimum tax. Attach Form 6251 . . . . . . . . . . . . . . . . . . . . . . . | **1** | |
| 2 | Excess advance premium tax credit repayment. Attach Form 8962 . . . . . . . . . | **2** | |
| 3 | Add lines 1 and 2. Enter here and on Form 1040, 1040-SR, or 1040-NR, line 17 . . | **3** | 0 |

### Part II   Other Taxes

| | | | | |
|---|---|---|---|---|
| 4 | Self-employment tax. Attach Schedule SE . . . . . . . . . . . . . . . . . . . . . . | | **4** | 594 |
| 5 | Social security and Medicare tax on unreported tip income. Attach Form 4137 . . . . . . . . . . . . . . . . . . . . | **5** | | |
| 6 | Uncollected social security and Medicare tax on wages. Attach Form 8919 . . . . . . . . . . . . . . . . . . . | **6** | | |
| 7 | Total additional social security and Medicare tax. Add lines 5 and 6 . . . . . . . . | | **7** | |
| 8 | Additional tax on IRAs or other tax-favored accounts. Attach Form 5329 if required | | **8** | |
| 9 | Household employment taxes. Attach Schedule H . . . . . . . . . . . . . . . . . . | | **9** | |
| 10 | Repayment of first-time homebuyer credit. Attach Form 5405 if required . . . . . | | **10** | |
| 11 | Additional Medicare Tax. Attach Form 8959 . . . . . . . . . . . . . . . . . . . . | | **11** | |
| 12 | Net investment income tax. Attach Form 8960 . . . . . . . . . . . . . . . . . . . | | **12** | |
| 13 | Uncollected social security and Medicare or RRTA tax on tips or group-term life insurance from Form W-2, box 12 . . . . . . . . . . . . . . . . . . . . . . . . . | | **13** | |
| 14 | Interest on tax due on installment income from the sale of certain residential lots and timeshares . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **14** | |
| 15 | Interest on the deferred tax on gain from certain installment sales with a sales price over $150,000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **15** | |
| 16 | Recapture of low-income housing credit. Attach Form 8611 . . . . . . . . . . . . | | **16** | |

*(continued on page 2)*

**For Paperwork Reduction Act Notice, see your tax return instructions.**

Schedule 2 (Form 1040) 2021

EEA

Client Copy

EXHIBIT #17
Page 5 of 8

Schedule 2 (Form 1040) 2021                                                                                                    Page **2**

| Part II | Other Taxes *(continued)* |
|---------|---------------------------|

| | | | |
|---|---|---|---|
| **17** | Other additional taxes: | | |
| **a** | Recapture of other credits. List type, form number, and amount ▶ _____ | **17a** | |
| **b** | Recapture of federal mortgage subsidy. If you sold your home in 2021, see instructions . . . . . . . . . . . . . . . . . . | **17b** | |
| **c** | Additional tax on HSA distributions. Attach Form 8889 . . . . . | **17c** | |
| **d** | Additional tax on an HSA because you didn't remain an eligible individual. Attach Form 8889 . . . . . . . . . . . . . . . . | **17d** | |
| **e** | Additional tax on Archer MSA distributions. Attach Form 8853 | **17e** | |
| **f** | Additional tax on Medicare Advantage MSA distributions. Attach Form 8853 . . . . . . . . . . . . . . . . . . . . . . | **17f** | |
| **g** | Recapture of a charitable contribution deduction related to a fractional interest in tangible personal property . . . . . . . . . . | **17g** | |
| **h** | Income you received from a nonqualified deferred compensation plan that fails to meet the requirements of section 409A . . . . | **17h** | |
| **i** | Compensation you received from a nonqualified deferred compensation plan described in section 457A . . . . . . . . | **17i** | |
| **j** | Section 72(m)(5) excess benefits tax . . . . . . . . . . . . | **17j** | |
| **k** | Golden parachute payments . . . . . . . . . . . . . . . . | **17k** | |
| **l** | Tax on accumulation distribution of trusts . . . . . . . . . . | **17l** | |
| **m** | Excise tax on insider stock compensation from an expatriated corporation . . . . . . . . . . . . . . . . . . . . . . . | **17m** | |
| **n** | Look-back interest under section 167(g) or 460(b) from Form 8697 or 8866 . . . . . . . . . . . . . . . . . . . . . | **17n** | |
| **o** | Tax on non-effectively connected income for any part of the year you were a nonresident alien from Form 1040-NR . . . . . | **17o** | |
| **p** | Any interest from Form 8621, line 16f, relating to distributions from, and dispositions of, stock of a section 1291 fund . . . . | **17p** | |
| **q** | Any interest from Form 8621, line 24 . . . . . . . . . . . . | **17q** | |
| **z** | Any other taxes. List type and amount ▶ _____ | **17z** | |
| **18** | Total additional taxes. Add lines 17a through 17z . . . . . . . . . . . . . . . . . . . . . | **18** | |
| **19** | Additional tax from Schedule 8812 . . . . . . . . . . . . . . . . . . . . . . . . . . | **19** | |
| **20** | Section 965 net tax liability installment from Form 965-A . . . . | **20** | |
| **21** | Add lines 4, 7 through 16, 18, and 19. These are your **total other taxes.** Enter here and on Form 1040 or 1040-SR, line 23, or Form 1040-NR, line 23b . . . . . . . . . | **21** | |

594

EEA                                                                                                       Schedule 2 (Form 1040) 2021

**40**

EXHIBIT #17
Page 6 of 8

**SCHEDULE C**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service (99)

## Profit or Loss From Business
(Sole Proprietorship)

► Go to *www.irs.gov/ScheduleC* for instructions and the latest information.

► Attach to Form 1040, 1040-SR, 1040-NR, or 1041; partnerships generally must file Form 1065.

OMB No. 1545-0074

**2021**

Attachment
Sequence No. **09**

| Name of proprietor | Social security number (SSN) |
|---|---|
| Linh T Stephens | XXXX5094 |

| | | |
|---|---|---|
| **A** | Principal business or profession, including product or service (see instructions) | **B** Enter code from instructions ►621111 |
| **C** | Business name. If no separate business name, leave blank. | **D** Employer ID number (EIN) (see instr.) XXXXX |
| | Peace Joy Clinic PLLC | |
| **E** | Business address (including suite or room no.) ► 8214 E 111th PL S Untie 100 | |
| | City, town or post office, state, and ZIP code    Bixby, OK 74008-2452 | |

**F** Accounting method:  (1) [x] Cash  (2) [ ] Accrual  (3) [ ] Other (specify) ►

**G** Did you "materially participate" in the operation of this business during 2021? If "No," see instructions for limit on losses . . . . . [x] Yes [ ] No

**H** If you started or acquired this business during 2021, check here . . . . . . . . . . . . . . . ►

**I** Did you make any payments in 2021 that would require you to file Form(s) 1099? See instructions . . . . . . . . [x] Yes [ ] No

**J** If "Yes," did you or will you file required Form(s) 1099? . . . . . . . . . . . . . . . . . . . . . . . . [x] Yes [ ] No

### Part I   Income

| | | | |
|---|---|---|---:|
| 1 | Gross receipts or sales. See instructions for line 1 and check the box if this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked . . . . . . . . . . . . ► [ ] | 1 | 20,409 |
| 2 | Returns and allowances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 | 0 |
| 3 | Subtract line 2 from line 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 | 20,409 |
| 4 | Cost of goods sold (from line 42) . . . . . . . . . . . . . . . . . . . . . . . . . | 4 | |
| 5 | **Gross profit.** Subtract line 4 from line 3 . . . . . . . . . . . . . . . . . . . . . | 5 | 20,409 |
| 6 | Other income, including federal and state gasoline or fuel tax credit or refund (see instructions) . . . . . | 6 | |
| 7 | **Gross income.** Add lines 5 and 6 . . . . . . . . . . . . . . . . . . . . . . ► | 7 | 20,409 |

### Part II   Expenses. Enter expenses for business use of your home **only** on line 30.

| | | | | | | | |
|---|---|---:|---|---|---|---:|---:|
| 8 | Advertising . . . . . . . . | 8 | 760 | 18 | Office expense (see instructions) . . | 18 | 652 |
| 9 | Car and truck expenses (see instructions) . . . . . . . . | 9 | | 19 | Pension and profit-sharing plans . . | 19 | |
| 10 | Commissions and fees . . . | 10 | | 20 | Rent or lease (see instructions): | | |
| 11 | Contract labor (see instructions) | 11 | | a | Vehicles, machinery, and equipment . | 20a | |
| 12 | Depletion . . . . . . . . | 12 | | b | Other business property . . . . | 20b | 5,800 |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see instructions) . . . . . . . . | 13 | | 21 | Repairs and maintenance . . . | 21 | |
| | | | | 22 | Supplies (not included in Part III) . . | 22 | 2,808 |
| | | | | 23 | Taxes and licenses . . . . . . | 23 | 525 |
| 14 | Employee benefit programs (other than on line 19) . . . | 14 | | 24 | Travel and meals: | | |
| | | | | a | Travel . . . . . . . . . . | 24a | |
| 15 | Insurance (other than health) | 15 | 2,463 | b | Deductible meals (see instructions) . . . . . . . . | 24b | |
| 16 | Interest (see instructions): | | | 25 | Utilities . . . . . . . . . . | 25 | 426 |
| a | Mortgage (paid to banks, etc.) | 16a | | 26 | Wages (less employment credits) | 26 | |
| b | Other . . . . . . . . . . | 16b | | 27a | Other expenses (from line 48) . . | 27a | 2,761 |
| 17 | Legal and professional services | 17 | 10 | b | **Reserved for future use** . . . . . | 27b | |

| | | | |
|---|---|---|---:|
| 28 | **Total expenses** before expenses for business use of home. Add lines 8 through 27a . . . . . . . . . ► | 28 | 16,205 |
| 29 | Tentative profit or (loss). Subtract line 28 from line 7 . . . . . . . . . . . . . . . . . . . . | 29 | 4,204 |
| 30 | Expenses for business use of your home. Do not report these expenses elsewhere. Attach Form 8829 unless using the simplified method. See instructions. | | |
| | **Simplified method filers only:** Enter the total square footage of (a) your home: _____ and (b) the part of your home used for business: _____. Use the Simplified Method Worksheet in the instructions to figure the amount to enter on line 30 . . . . . . . . . . . . . . | 30 | |
| 31 | **Net profit or (loss).** Subtract line 30 from line 29. | | |
| | • If a profit, enter on both **Schedule 1 (Form 1040), line 3,** and on **Schedule SE, line 2.** (If you checked the box on line 1, see instructions). Estates and trusts, enter on **Form 1041, line 3.** ► | 31 | 4,204 |
| | • If a loss, you **must** go to line 32. | | |

| | | |
|---|---|---|
| 32 | If you have a loss, check the box that describes your investment in this activity. See instructions. | |
| | • If you checked 32a, enter the loss on both **Schedule 1 (Form 1040), line 3,** and on **Schedule SE, line 2.** (If you checked the box on line 1, see the line 31 instructions). Estates and trusts, enter on **Form 1041, line 3.** ► | 32a [ ] All investment is at risk. 32b [ ] Some investment is not at risk. |
| | • If you checked 32b, you **must** attach **Form 6198.** Your loss may be limited. | |

**For Paperwork Reduction Act Notice, see the separate instructions.**

Schedule C (Form 1040) 2021

EEA

Client Copy

EXHIBIT #17
Page 7 of 8

Name(s)

SSN

Linh T Stephens                                                                       XXXX-XX-5094

**Part III     Cost of Goods Sold** (see instructions)

| | | | | |
|---|---|---|---|---|
| 33 | Method(s) used to value closing inventory: | **a** ☐ Cost | **b** ☐ Lower of cost or market | **c** ☐ Other (attach explanation) |

34   Was there any change in determining quantities, costs, or valuations between opening and closing inventory?
     If "Yes," attach explanation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     ☐ **Yes**      ☐ **No**

35   Inventory at beginning of year.  If different from last year's closing inventory, attach explanation. . . . .    **35**

36   Purchases less cost of items withdrawn for personal use   . . . . . . . . . . . . . . . .    **36**

37   Cost of labor.  Do not include any amounts paid to yourself   . . . . . . . . . . . . . .    **37**

38   Materials and supplies   . . . . . . . . . . . . . . . . . . . . . . . . . . . .    **38**

39   Other costs   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    **39**

40   Add lines 35 through 39   . . . . . . . . . . . . . . . . . . . . . . . .    **40**

41   Inventory at end of year   . . . . . . . . . . . . . . . . . . . . . . . . . .    **41**

42   **Cost of goods sold.**  Subtract line 41 from line 40. Enter the result here and on line 4 . . . . . . . . .    **42**

**Part IV     Information on Your Vehicle.** Complete this part **only** if you are claiming car or truck expenses on line 9 and
             are not required to file Form 4562 for this business.  See the instructions for line 13 to find out if you must file
             Form 4562.

43   When did you place your vehicle in service for business purposes?  (month/day/year)    ▶

44   Of the total number of miles you drove your vehicle during 2021, enter the number of miles you used your vehicle for:

a   Business                          **b** Commuting (see instructions)                   **c** Other

45   Was your vehicle available for personal use during off-duty hours? . . . . . . . . . . . . . . . . . . . .    ☐ **Yes**      ☐ **No**

46   Do you (or your spouse) have another vehicle available for personal use? . . . . . . . . . . . . . . . .    ☐ **Yes**      ☐ **No**

47a  Do you have evidence to support your deduction? . . . . . . . . . . . . . . . . . . . . . . . . . . . .    ☐ **Yes**      ☐ **No**

b   If "Yes," is the evidence written? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    ☐ **Yes**      ☐ **No**

**Part V     Other Expenses.** List below business expenses not included on lines 8-26 or line 30.

Software                                                                                      2,501

Credit Card Fees                                                                                260

48   **Total other expenses.** Enter here and on line 27a . . . . . . . . . . . . . . . . . . . .    **48**      2,761

EXHIBIT #17
Page 8 of 8

Form **1040**    Department of the Treasury-Internal Revenue Service
**U.S. Individual Income Tax Return**    **2022**    OMB No. 1545-0074    IRS Use Only-Do not write or staple in this space.

**Filing Status**
Check only one box.

☐ Single  ☐ Married filing jointly  ☒ Married filing separately (MFS)  ☐ Head of household (HOH)  ☐ Qualifying surviving spouse (QSS)

If you checked the MFS box, enter the name of your spouse. If you checked the HOH or QSS box, enter the child's name if the qualifying person is a child but not your dependent: X▓▓▓▓ H▓

| | | |
|---|---|---|
| Your first name and middle initial | Last name | Your social security number |
| Linh T | Stephens | XXX-XX-5094 |
| If joint return, spouse's first name and middle initial | Last name | Spouse's social security number ▓▓▓▓ |

Home address (number and street). If you have a P.O. box, see instructions. ▓▓▓▓▓▓▓▓▓▓▓▓0    Apt. no.

**Presidential Election Campaign**
Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund.    ☐ You  ☐ Spouse

City, town, or post office. If you have a foreign address, also complete spaces below. ▓▓▓    State OK    ZIP code

Foreign country name    Foreign province/state/county    Foreign postal code

**Digital Assets**    At any time during 2022, did you: (a) receive (as a reward, award, or payment for property or services); or (b) sell, exchange, gift, or otherwise dispose of a digital asset (or a financial interest in a digital asset)? (See instructions.)    ☐ Yes  ☒ No

**Standard Deduction**    Someone can claim:  ☐ You as a dependent  ☐ Your spouse as a dependent
☐ Spouse itemizes on a separate return or you were a dual-status alien

**Age/Blindness**    You:  ☐ Were born before January 2, 1958  ☐ Are blind    Spouse:  ☐ Was born before January 2, 1958  ☐ Is blind

**Dependents** (see instructions):
If more than four dependents, see instructions and check here ☐

| (1) First name    Last name | (2) Social security number | (3) Relationship to you | (4) Check if qualifies for (see instructions): Child tax credit | Credit for other dependents |
|---|---|---|---|---|
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a Form W-2, see instructions.

Attach Sch. B if required.

*Parenthesis means negative income*

| | | |
|---|---|---|
| 1a | Total amount from Form(s) W-2, box 1 (see instructions) | 1a |
| b | Household employee wages not reported on Form(s) W-2 | 1b |
| c | Tip income not reported on line 1a (see instructions) | 1c |
| d | Medicaid waiver payments not reported on Form(s) W-2 (see instructions) | 1d |
| e | Taxable dependent care benefits from Form 2441, line 26 | 1e |
| f | Employer-provided adoption benefits from Form 8839, line 29 | 1f |
| g | Wages from Form 8919, line 6 | 1g |
| h | Other earned income (see instructions) | 1h |
| i | Nontaxable combat pay election (see instructions)  1i | |
| z | Add lines 1a through 1h | 1z |
| 2a | Tax-exempt interest  2a | b Taxable interest  2b  1 |
| 3a | Qualified dividends  3a  13 | b Ordinary dividends  3b  13 |
| 4a | IRA distributions  4a | b Taxable amount  4b |
| 5a | Pensions and annuities  5a | b Taxable amount  5b |
| 6a | Social security benefits  6a | b Taxable amount  6b |
| c | If you elect to use the lump-sum election method, check here (see instructions)  ☐ | |
| 7 | Capital gain or (loss). Attach Schedule D if required. If not required, check here  ☐ | 7  3,496 |
| 8 | Other income from Schedule 1, line 10 | 8  (15,673) |
| 9 | Add lines 1z, 2b, 3b, 4b, 5b, 6b, 7, and 8. This is your **total income** | 9  (12,163) |
| 10 | Adjustments to income from Schedule 1, line 26 | 10 |
| 11 | Subtract line 10 from line 9. This is your **adjusted gross income** | 11  (12,163) |
| 12 | **Standard deduction or itemized deductions** (from Schedule A) | 12  12,950 |
| 13 | Qualified business income deduction from Form 8995 or Form 8995-A | 13 |
| 14 | Add lines 12 and 13 | 14  12,950 |
| 15 | Subtract line 14 from line 11. If zero or less, enter -0-. This is your **taxable income** | 15  0 |

**Standard Deduction for-**
• Single or Married filing separately, $12,950
• Married filing jointly or Qualifying surviving spouse, $25,900
• Head of household, $19,400
• If you checked any box under *Standard Deduction,* see instructions.

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.    Form **1040** (2022)

EEA

43

EXHIBIT #21
Page 1 of 4

Appellate Case: 25-5063    Document: 63    Date Filed: 01/30/2026    Page: 100

Lynn T Stephens     XXX-XX-5094    Page **2**

| | | | |
|---|---|---|---|
| **Tax and Credits** | 16 | **Tax** (see instructions). Check if any from Form(s): **1** ☐ 8814 **2** ☐ 4972 **3** ☐ . . . | 16 | 0 |
| | 17 | Amount from Schedule 2, line 3 . . . . . . . . . . . . . . . . . . . | 17 | |
| | 18 | Add lines 16 and 17 . . . . . . . . . . . . . . . . . . . . . . | 18 | 0 |
| | 19 | Child tax credit or credit for other dependents from Schedule 8812 | 19 | |
| | 20 | Amount from Schedule 3, line 8 . . . . . . . . . . . . . . . . | 20 | |
| | 21 | Add lines 19 and 20 . . . . . . . . . . . . . . . . . . . . . | 21 | 0 |
| | 22 | Subtract line 21 from line 18. If zero or less, enter -0- . . . . . . | 22 | 0 |
| | 23 | Other taxes, including self-employment tax, from Schedule 2, line 21 | 23 | |
| | 24 | Add lines 22 and 23. This is your **total tax** . . . . . . . . . . . | 24 | 0 |
| **Payments** | 25 | Federal income tax withheld from: | | |
| | a | Form(s) W-2 . . . . . . . . . . . . . . . . . . | 25a | |
| | b | Form(s) 1099 . . . . . . . . . . . . . . . . . | 25b | |
| | c | Other forms (see instructions) . . . . . . . . . | 25c | |
| | d | Add lines 25a through 25c . . . . . . . . . . . . . . . . . . | 25d | |
| If you have a qualifying child, attach Sch. EIC. | 26 | 2022 estimated tax payments and amount applied from 2021 return | 26 | |
| | 27 | Earned income credit (EIC) . . . . . . . . . . . | 27 | |
| | 28 | Additional child tax credit from Schedule 8812 | 28 | |
| | 29 | American opportunity credit from Form 8863, line 8 | 29 | |
| | 30 | Reserved for future use . . . . . . . . . . . | 30 | |
| | 31 | Amount from Schedule 3, line 15 . . . . . . . | 31 | |
| | 32 | Add lines 27, 28, 29, and 31. These are your **total other payments and refundable credits** . . . . | 32 | 0 |
| | 33 | Add lines 25d, 26, and 32. These are your **total payments** . . . . . . . . . . . . . . . | 33 | 0 |
| **Refund** | 34 | If line 33 is more than line 24, subtract line 24 from line 33. This is the amount you **overpaid** . . . | 34 | 0 |
| | 35a | Amount of line 34 you want **refunded to you**. If Form 8888 is attached, check here . . . . . . ☐ | 35a | 0 |
| Direct deposit? See instructions. | b | Routing number | **c** Type: ☐ Checking ☐ Savings | |
| | d | Account number | | |
| | 36 | Amount of line 34 you want **applied to your 2023 estimated tax** . . . . | 36 | |
| **Amount You Owe** | 37 | Subtract line 33 from line 24. This is the **amount you owe.** For details on how to pay, go to *www.irs.gov/Payments* or see instructions . . . . . | 37 | 0 |
| | 38 | Estimated tax penalty (see instructions) . . . . . | 38 | |

| | |
|---|---|
| **Third Party Designee** | Do you want to allow another person to discuss this return with the IRS? See instructions     ☒ **Yes.** Complete below.    ☐ **No** |

Designee's name █████████, CPA    Phone no. ████████    Personal identification number (PIN) ████████

**Sign Here**

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Your signature    Date    Your occupation     If the IRS sent you an Identity Protection PIN, enter it here (see inst.)

████

Joint return? See instructions. Keep a copy for your records.

Spouse's signature. If a joint return, **both** must sign.   Date **02-15-2023**   Spouse's occupation     If the IRS sent your spouse an Identity Protection PIN, enter it here (see inst.)

Phone no. ██████-3223     Email address

**Paid Preparer Use Only**

Preparer's signature    Date **02-15-2023** ████████   PTIN    Check if: ☐ Self-employed

Preparer's name █████████, CPA    Phone no. ████████

Firm's name █████████, LLC

Firm's address ████████████     Firm's EIN

Go to *www.irs.gov/Form1040* for instructions and the latest information.     Form **1040** (2022)

EEA

EXHIBIT #21
Page 2 of 4

**SCHEDULE C**
**(Form 1040)**

### Profit or Loss From Business
(Sole Proprietorship)

OMB No. 1545-0074

**2022**

Department of the Treasury
Internal Revenue Service

Go to *www.irs.gov/ScheduleC* for instructions and the latest information.
Attach to Form 1040, 1040-SR, 1040-NR, or 1041; partnerships must generally file Form 1065.

Attachment
Sequence No. **09**

Name of proprietor: Linh T Stephens

Social security number (SSN): XXX-XX-5094

**A** Principal business or profession, including product or service (see instructions): Medical Office

**B** Enter code from instructions: 621111

**C** Business name. If no separate business name, leave blank.: Peace Joy Clinic PLLC

**D** Employer ID number (EIN) (see instr.): XXXXXXX

**E** Business address (including suite or room no.) ▶ 8214 E 111th PL S Untie 100
City, town or post office, state, and ZIP code ▶ Bixby, OK 74008-2452

**F** Accounting method: (1) [X] Cash  (2) [ ] Accrual  (3) [ ] Other (specify)

**G** Did you "materially participate" in the operation of this business during 2022? If "No," see instructions for limit on losses . . . . . [X] Yes [ ] No

**H** If you started or acquired this business during 2022, check here . . . . . . . . . . . . . . . ▶ [ ]

**I** Did you make any payments in 2022 that would require you to file Form(s) 1099? See instructions . . . . . . . . [ ] Yes [X] No

**J** If "Yes," did you or will you file required Form(s) 1099?. . . . . . . . . . . . . . . . . . . . . [ ] Yes [ ] No

### Part I   Income

| | | |
|---|---|---:|
| 1 | Gross receipts or sales. See instructions for line 1 and check the box if this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked . . . . . . . . . [ ]   **1** | 8,485 |
| 2 | Returns and allowances . . . . . . . . . . . . . . . . . . . . . . . . . . . **2** | 0 |
| 3 | Subtract line 2 from line 1 . . . . . . . . . . . . . . . . . . . . . . . . . **3** | 8,485 |
| 4 | Cost of goods sold (from line 42) . . . . . . . . . . . . . . . . . . . . . . **4** | |
| 5 | **Gross profit.** Subtract line 4 from line 3 . . . . . . . . . . . . . . . . . . . . **5** | 8,485 |
| 6 | Other income, including federal and state gasoline or fuel tax credit or refund (see instructions) . . . . **6** | |
| 7 | **Gross income.** Add lines 5 and 6 . . . . . . . . . . . . . . . . . . . . . ▶ **7** | 8,485 |

### Part II   Expenses.   Enter expenses for business use of your home **only** on line 30.

| | | | | | |
|---|---|---:|---|---|---:|
| 8 | Advertising . . . . . . . . **8** | 5,033 | 18 | Office expense (see instructions) . . **18** | |
| 9 | Car and truck expenses (see instructions) . . . . . . **9** | | 19 | Pension and profit-sharing plans . . **19** | |
| 10 | Commissions and fees . . . **10** | | 20 | Rent or lease (see instructions): | |
| 11 | Contract labor (see instructions) **11** | | a | Vehicles, machinery, and equipment . **20a** | |
| 12 | Depletion . . . . . . **12** | | b | Other business property . . . . . **20b** | 6,000 |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see instructions) . . . . . . **13** | | 21 | Repairs and maintenance . . . . **21** | |
| | | | 22 | Supplies (not included in Part III) . . **22** | 8,521 |
| | | | 23 | Taxes and licenses . . . . . . . **23** | 465 |
| | | | 24 | Travel and meals: | |
| 14 | Employee benefit programs (other than on line 19) . . . **14** | | a | Travel . . . . . . . . . . **24a** | |
| 15 | Insurance (other than health) **15** | 2,827 | b | Deductible meals (see instructions) . . . . . . . . . **24b** | |
| 16 | Interest (see instructions): | | 25 | Utilities . . . . . . . . . . **25** | |
| a | Mortgage (paid to banks, etc.) **16a** | | 26 | Wages (less employment credits) . **26** | |
| b | Other . . . . . . . . . **16b** | | 27a | Other expenses (from line 48) . . . **27a** | 2,363 |
| 17 | Legal and professional services **17** | 380 | b | **Reserved for future use** . . . . . **27b** | |

Parenthesis means negative income for small business

| | | | |
|---|---|---|---:|
| 28 | **Total expenses** before expenses for business use of home. Add lines 8 through 27a . . . . . . . ▶ | **28** | 25,589 |
| 29 | Tentative profit or (loss). Subtract line 28 from line 7 . . . . . . . . . . . . . . . . . | **29** | (17,104) |
| 30 | Expenses for business use of your home. Do not report these expenses elsewhere. Attach Form 8829 unless using the simplified method. See instructions. | | |
| | **Simplified method filers only:** Enter the total square footage of (a) your home: _____ and (b) the part of your home used for business: _____ . Use the Simplified Method Worksheet in the instructions to figure the amount to enter on line 30 . . . . . . . . . . | **30** | |
| 31 | **Net profit or (loss).** Subtract line 30 from line 29. | | |
| | • If a profit, enter on both **Schedule 1 (Form 1040), line 3,** and on **Schedule SE, line 2.** (If you checked the box on line 1, see instructions.) Estates and trusts, enter on **Form 1041, line 3.** ▶ | **31** | (17,104) |
| | • If a loss, you **must** go to line 32. | | |
| 32 | If you have a loss, check the box that describes your investment in this activity. See instructions. | | |
| | • If you checked 32a, enter the loss on both **Schedule 1 (Form 1040), line 3,** and on **Schedule SE, line 2.** (If you checked the box on line 1, see the line 31 instructions.) Estates and trusts, enter on **Form 1041, line 3.** ▶ | **32a** [X] All investment is at risk. | |
| | • If you checked 32b, you **must** attach **Form 6198.** Your loss may be limited. | **32b** [ ] Some investment is not at risk. | |

**For Paperwork Reduction Act Notice, see the separate instructions.**

EEA

Schedule C (Form 1040) 2022

EXHIBIT #21
Page 3 of 4

Client Copy

Schedule C (Form 1040) 2022　　　　　Medical Office 621111　　　　　　　　　　　Page **2**

| Name(s) | | SSN |
|---|---|---|
| Linh T Stephens | | XXX-XX-5094 |

**Part III**　　**Cost of Goods Sold** (see instructions)

33　Method(s) used to
value closing inventory:　**a** ☐ Cost　**b** ☐ Lower of cost or market　**c** ☐ Other (attach explanation)

34　Was there any change in determining quantities, costs, or valuations between opening and closing inventory?
If "Yes," attach explanation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **☐ Yes**　☐ No

35　Inventory at beginning of year.  If different from last year's closing inventory, attach explanation . . . . .　**35**

36　Purchases less cost of items withdrawn for personal use　. . . . . . . . . . . . . . . .　**36**

37　Cost of labor.  Do not include any amounts paid to yourself　. . . . . . . . . . . .　**37**

38　Materials and supplies　. . . . . . . . . . . . . . . . . . . . .　**38**

39　Other costs　. . . . . . . . . . . . . . . . . . . . . . . . .　**39**

40　Add lines 35 through 39　. . . . . . . . . . . . . . . . . .　**40**

41　Inventory at end of year　. . . . . . . . . . . . . . . . . .　**41**

42　**Cost of goods sold.**  Subtract line 41 from line 40. Enter the result here and on line 4　. . . .　**42**

**Part IV**　　**Information on Your Vehicle.** Complete this part **only** if you are claiming car or truck expenses on line 9 and are not required to file Form 4562 for this business.  See the instructions for line 13 to find out if you must file Form 4562.

43　When did you place your vehicle in service for business purposes?  (month/day/year)

44　Of the total number of miles you drove your vehicle during 2022, enter the number of miles you used your vehicle for:

　**a**　Business　　　　　　　　　　**b** Commuting (see instructions)　　　　　　**c** Other

45　Was your vehicle available for personal use during off-duty hours? . . . . . . . . . . . . . . . . . . . .　☐ Yes　☐ No

46　Do you (or your spouse) have another vehicle available for personal use?　. . . . . . . . . . . . . . . .　☐ Yes　☐ No

47a　Do you have evidence to support your deduction? . . . . . . . . . . . . . . . . . . . . . . . . . . . . .　☐ Yes　☐ No

　**b**　If "Yes," is the evidence written? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .　☐ Yes　☐ No

**Part V**　　**Other Expenses.** List below business expenses not included on lines 8-26 or line 30.

| | |
|---|---|
| Software | ⬛ |
| Credit Card Fees | ⬛ |
| Small Tool | ⬛ |
| Postage | ⬛ |
| Labs | ⬛ |
| Credit Card Fees to gross up | ⬛ |

48　Total other expenses. Enter here and on line 27a . . . . . . . . . . . . . . . . . .　**48**

EXHIBIT 3-21

Page 46 of 74

1    **IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
STATE OF OKLAHOMA**

2                              Appendix K

In Re the marriage of          )
3   LINH TRAN STEPHENS,            )
            Petitioner,            )
4   v.                             ) Case No. FD-2015-2228
    ADAM SYLVESTER STEPHENS,       )
5           Respondent.            )

6                      * * * * *

7        **PORTIONS OF THE TESTIMONY OF ADAM STEPHENS**

8                     HAD ON THE

9              1ST DAY OF FEBRUARY, 2024

10         BEFORE THE HONORABLE APRIL SEIBERT

11              TULSA COUNTY, OKLAHOMA

12                   * * * * *

**APPEARANCES:**
13  **FOR THE PETITIONER:**
        MS. LINH STEPHENS, Appearing Pro Se
14      11063 South Memorial Drive, Suite D #235
        Tulsa, Oklahoma 74133
15
    **FOR THE RESPONDENT:**
16      MR. GIL PILKINGTON, Attorney-at-Law
        The Pilkington Law Firm, PLLC
17      601 South Boulder Avenue, Suite 600
        Tulsa, Oklahoma 74119
18
    **FOR THE MINOR CHILD:**
19      MS. MEGAN BECK, Attorney at Law
        320 South Boston Avenue, Suite 718
20      Tulsa, Oklahoma 74103
21  **FOR OKDHS & CSS:**
        MS. EMMALINE STRINGER, State's Attorney
22      P.O. Box 27068
        Tulsa, Oklahoma 74149
23


24


25  REPORTED BY:  Samantha S. Brown, CSR

1  child support order in '22, but in '21, did she pay you

2  anything?

3      A.    No.

4      Q.    Not to go through it by years, but 2017 to

5  2021, did you give her any child support?

6      A.    No.

7            (This concludes one portion of the testimony.)

8      Q.    (By Mr. Pilkington) Okay.  Let's talk a little

9  bit about finances.  You've indicated that you've not

10  received any support from Ms. Stephens since the court

11  order was entered?

12      A.    Yes.

13      Q.    How does that impact you?

14      A.    I mean, it cuts on the wages but I still

15  survive.  I'm -- we just downsize what we do to get her

16  necessary needs and all that.

17      Q.    Has it prevented you from doing anything with

18  her?

19      A.    The only thing that's prevented that I can see

20  is because of how athletical [sic] she is.  It's hard to

21  pay for, like, the next level up into soccer because those

22  are very expensive to get into.

23           We just do the small 50 Y, $50, but she's too old for

24  that now.  So it does affect her ability for athletics and

25  stuff like that.  I just can't afford those.

**Appendix L**



ORIGINAL

IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

FILED
SUPREME COURT
STATE OF OKLAHOMA

JAN 23 2023

JOHN D. HADDEN
CLERK

Rec'd (date) 1-23-23
Posted
Mailed
Distrib
Publish ___ yes ___ X no

IN RE THE MARRIAGE OF:
LINH TRAN STEPHENS,

    Appellant,

v.                                                    No. 120,849

ADAM SYLVESTER STEPHENS,

    Appellee.

### ORDER

Appellee's Motion to Dismiss Appeal for lack of an appealable order is granted in part, and denied in part. 12 O.S. 2021, §§ 952 & 953.

The motion to dismiss is granted as to the October 17, 2022 order awarding temporary child support in accordance with the temporary custody order and the October 31, 2022 order denying Appellant's objection and motion to recalculate. Such orders are interlocutory and not immediately appealable. *S.W. v. Duncan*, 2001 OK 39, ¶ 11, 24 P.3d 846. Moreover, the orders do not fall into any of the statutory or rule-based categories of orders appealable by right. *See* 12 O.S. 2021, §§ 952(b)(2), 993(A), and Rule 1.60, *Oklahoma Supreme Court Rules*, Tit. 12, ch. 15,

App. 1. *See also Kantor v. Kantor*, 1994 OK 132, ¶ 2, 886 P.2d 480.
More unlawful Order by lower court for RECORDS TO BE SEALED (01-17-2023)

To the extent Appellant challenges the November 2, 2022 order sealing records, Appellee's motion to dismiss is denied. The order sealing records is the functional equivalent of an injunction, therefore the appeal of this order shall proceed

as an appeal from an order appealable by right. *Collier v. Reese*, 2009 OK 86, ¶ 11, 222 P.3d 966. *See* Rule 1.60(c), *Oklahoma Supreme Court Rules*, Tit. 12, ch. 15, App. 1.

Appellant will have the opportunity to seek review of the October 17, 2022 and October 31, 2022 orders upon a final adjudication of the parties' motions to modify custody filed in the district court case. Appellee's Objection to Appellant's Pauper's Affidavit is denied.

*Mother = Appellant*

DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THIS 23RD DAY OF JANUARY, 2023.

CHIEF JUSTICE

ALL JUSTICES CONCUR

-2-

Pierce County

**Juvenile Court**
5501 Sixth Avenue
Tacoma, WA 98406
(253) 798-7900

**Appendix M**

**TJ Bohl**
Administrator

March 27, 2015

Linh Stephens

RE:  Adoption of Ariel Stephens

Dear Mrs. Stephens:

As the Pierce County Adoption Coordinator, I am writing to confirm the adoption of your husband's child by her aunt and uncle on February 12, 2015. On that date, an Order Terminating the Parent Child Relationship between A██l Stephens and her biological father, Adam Stephens, was entered. A Decree of Adoption was also entered making her aunt and uncle her legal parents. As of that date, Mr. Stephens has no further rights, or obligations to this child. If I can be of further assistance to you, please do not hesitate to contact me.

Sincerely,

Joni M. Irvin
Pierce County Adoptions
5501 Sixth Ave
Tacoma, WA 98406
(253) 79807978



14-5-00966-2   44136909   ORTPOR   02-17-15

FILED
JCD1
IN OPEN COURT

FEB 12 2015

Pierce County, Clerk
By_____
DEPUTY

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR PIERCE COUNTY

IN THE INTEREST OF

A▮▮▮ L▮▮▮ ▮ STEPHENS

a person under the age of eighteen.

NO. 14-5-00966-2

ORDER TERMINATING
PARENT-CHILD
RELATIONSHIP OF MOTHER
AND FATHER

THIS MATTER having come on regularly for a hearing for a termination of parental rights before the undersigned Judge/Court Commissioner of the above-entitled Court on the 12th day of February, 2015, the father, Adam Sylvester Stephens having filed a Consent to Adoption, Termination of Parent-Child Relationship, and Waiver of Notice of Proceedings, and an Order of Default having been entered against Patricia Louise Offer, the natural mother, and the court having listened to all the evidence presented by all parties present, the arguments of counsel, and the court having made and entered its Findings of Fact and Conclusions of Law, and being fully advised, makes the following orders.

It is ORDERED, ADJUDGED, and DECREED that the Consent to Adoption, Termination of Parent-Child Relationship and Notice of Waiver of Proceedings filed by Adam Sylvester Stephens is accepted by the court, and the parent-child relationship

Page 1 ORDER TERMINATING PARENT-CHILD RELATIONSHIP

DAN PLATTER
ATTORNEY AT LAW
112 3rd Street SW
Puyallup WA 98371
(253) 840-1253
EXHIBIT #43
Page 2 of 7

**51**

1
2    between Adam Sylvester Stephens, natural father, and A█ L█ Stephens be and the
3    same is hereby terminated and said father and child are divested of all legal rights, powers,
4    privileges, immunities, standing, duties and obligations as provided by law, it is further,

5    ORDERED, ADJUDGED and DECREED that the parent-child relationship,
6    between Patricia Louise Offer, natural mother, and A███ █ ███ Stephens be and the same
7    is hereby terminated and said mother and child are divested of all legal rights, powers,
8    privileges, immunities, standing, duties and obligations as provided by law, it is further,

9
10    ORDERED, ADJUDGED and DECREED that Petitioners may pursue their
11    Petition for Adoption, it is further,

12    ORDERED, ADJUDGED and DECREED that the Clerk of this court is
13    directed, upon payment of the customary fee, to provide counsel of record with a certified
14    copy of this order.

15    Dated this 12 day of Febrry , 2015.

16
17                                    _____
                                     JUDGE/COURT COMMISSIONER
18    Presented by:

19    _____                    CRAIG ADAMS
     Dan Platter, WSBA 19174
20   Attorney for Petitioners.

21                                    
22                                    FILED
                                     JCD1
23                                  IN OPEN COURT

24                                  FEB 12 2015

25                                 Pierce County: Clerk
                                   By
26                                    DEPUTY

27   Page 2 ORDER TERMINATING PARENT-CHILD RELATIONSHIP          DAN PLATTER
28                                                              ATTORNEY AT LAW
                                                                112 3rd Street SW
                                                                Puyallup WA 98371
                                                                (253) 840-1253

**52**

EXHIBIT #43
Page 3 of 7

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

November 20 2014 3:20 PM

KEVIN STOCK
COUNTY CLERK
NO: 14-5-00966-2

1
2
3
4
5
6
7
8

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
### FOR PIERCE COUNTY

9
10

IN THE INTEREST OF

11

ARIEL LOUISE STEPHENS )                    NO.

12

    a person under the age of eighteen. )      CONSENT TO ADOPTION,
                                         ) TERMINATION OF PARENT-
13                                       ) CHILD RELATIONSHIP, AND
                                         ) WAIVER OF NOTICE OF
14                                       ) PROCEEDINGS
15

16

                                I.

17

18      I, ADAM SYLVESTER STEPHENS, am the father of A█████, I█████

19 STEPHENS, who was born on the 30th day of September, 1999. I am over the age of 18,

20 and, I am currently a resident of Pierce County, State of Washington. I am not of Native

21 American or Alaska native ancestry. ARIEL LOUISE STEPHENS is not of Native

22 American or Alaska native ancestry.

23

                                II.

24

25      DANIEL LEE STEPHENS, JR. and ELLEN KING STEPHENS, have

26 petitioned this court for the termination of my parental rights and will petition to adopt

27 Page 1 Consent to Relinquishment of Parental Rights – Waiver of Notice

28

EXHIBIT #43
Page 4 of 7

1   A████ L████ █ STEPHENS. I hereby consent to the termination of my parental rights,

2   and to the adoption of A█████████ R STEPHENS to petitioner(s).

3                                      III.

4   I understand that this Consent to Adoption is given subject to the approval of this

5   court, and that it has no force or effect until approved by the court. I further understand

6   that this Consent to Adoption will not be presented to the court for approval until forty-

7   eight hours after it is signed or forty-eight hours after the birth of the child, whichever is

8   later. This Consent to Adoption is revocable by me at any time prior to its approval by the

9   court.

10

11                                      IV.

12  This consent may be revoked in either of the following ways:

13      4.1     Written revocation may be delivered or mailed to the clerk of the court

14              before approval of the consent by the court; or

15

16      4.2     Written revocation may be delivered or mailed to the clerk of the court

17  after approval, but only if it is delivered or mailed within forty-eight hours after a prior

18  notice of revocation that was given within forty-eight hours after the birth of the child.

19  The prior notice of revocation shall be given to the agency or the person who sought the

20  consent and may be either oral or written.

21                                      V.

22  The address of the clerk of the court is:     **Pierce County Clerk**
                                                  **Room 110**
23                                                **County-City Building**
                                                  **930 Tacoma Ave. S.**
24                                                **Tacoma WA 98402-2108**

25

26                                      VI.

27  Page 2 Consent to Relinquishment of Parental Rights – Waiver of Notice

28

**54**

EXHIBIT #43
Page 5 of 7

1   I understand that, after it has been approved by the court, this Consent to
2   Adoption is not revocable except for fraud or duress practiced by the person requesting
3   the consent, or for lack of mental competency on my part at the time this consent was
4   given. I understand that this Consent to Adoption may not be revoked for any reason
5   more than one year after it is approved by the court.
6
7                                    VII.
8   I acknowledge that I am entitled to notice of further proceedings with respect to
9   the termination of my parental rights and the adoption of A█████, █████ STEPHENS.
10  I hereby WAIVE my right to any notice of further proceedings with respect to this child. I
11  acknowledge that this Waiver means I will not have notice of or participate in the hearing
12  on the termination of my parental rights or any hearing on adoption of this child. I
13  understand that at such hearing the parent-child relationship between me and ARIEL
14  LOUISE STEPHENS will be completely and permanently terminated, and that I will be
15  deprived of any legal rights, powers, duties and obligations with respect to the child, except
16
17  past-due child support, if any.
18                                    VIII.
19  I understand that my decision to relinquish this child is an extremely important
20  one, that the legal effect of this relinquishment will be to take from me all legal rights and
21  obligations with respect to the child, and that an order permanently terminating my
22  parental rights to the child will be entered. I also understand that there are social services
23  available in the community, and that there may be financial assistance available through
24  state and local governmental agencies.
25
26
27  Page 3 Consent to Relinquishment of Parental Rights – Waiver of Notice
28

**55**

EXHIBIT #43
Page 6 of 7

## IX.

I have fully read and understand this Consent to Adoption and Waiver of Notice. I have had an opportunity to ask questions concerning its meaning and effect. I have signed this Consent of my own free will, and have not been subjected to any duress or compulsion.

## X.

I have selected the person below to witness my signing this Consent.

## XI.

I certify that the foregoing is true under penalty of perjury under the laws of the State of Washington.

WITNESS

Print name: _Zon KENT_
        Witness
Date: _10/10/2014_
Relationship to signor: _WITNESS_
Age of witness: _46_
        (must be over 18 years old).

SIGNOR

Adam Sylvester Stephens
Date: _10 - 10 - 2014_

Page 4 Consent to Relinquishment of Parental Rights – Waiver of Notice

**56**

EXHIBIT #43
Page 7 of 7

**Appendix N**

1              IN THE DISTRICT COURT IN AND FOR TULSA COUNTY

2                         STATE OF OKLAHOMA.

3

4                                    )
     LINH TRAN STEPHENS,             )
5              Petitioner,           )
                                     )
6     v.                             ) Case No. FD-2015-2228
                                     )
7                                    )
     ADAM SYLVESTER STEPHENS,        )
8              Respondent.           )

9

10

11

12                         * * * * * * *

                           VOLUME I OF II
13
                    TRANSCRIPT OF PROCEEDINGS
14                        HAD ON THE

15            6TH AND 7TH DAYS OF FEBRUARY, 2024

16        BEFORE THE HONORABLE DEBORRAH LUDI-LEITCH

17                       (and a jury.)

18                         * * * * * * *

19

20

21

22

23

24
     REPORTED BY: ABIGAIL C. YODER, CSR
25

```
 1                        APPEARANCES

 2

      FOR THE PETITIONER:
 3
          MR. GIL PILKINGTON
 4            The Pilkington Law Firm, PLLC
              406 S Boulder Avenue, #415
 5            Tulsa, OK 74103

 6

 7    FOR THE RESPONDENT:

 8        PRO SE

 9

10    STANDBY COUNSEL:

11        MS. SIERRA FREEMAN, Attorney at Law
              BOEHEIM FREEMAN, PLLP
12            616 South Boston Avenue #307
              Tulsa, OK 74119
13

14
      ALSO APPEARING: FOR DHS
15
          MS. EMMALENE STRINGER, State's Attorney
16            CHILD SUPPORT SERVICES
              Tulsa East Office
17            P.O. Box 27068
              Tulsa, OK 74149
18
          MS. ALEXANDRA SIMMONS-LIZAMA, State's Attorney
19            CHILD SUPPORT SERVICES
              Tulsa East Office
20            P.O. Box 27068
              Tulsa, OK 74149
21

22

23

24

25
```

INDEX

PAGE

Appearances                                                        2

PETITIONER'S EXHIBITS

| EXHIBIT NUMBER | DESCRIPTION | PAGE OFFERED | PAGE REC'D |
|---|---|---|---|
| 4 | 2021 Tax Return | PREADMITTED | |
| 5 | 2022 Tax Return | PREADMITTED | |

RESPONDENT'S EXHIBITS

| EXHIBIT NUMBER | DESCRIPTION | PAGE OFFERED | PAGE REC'D |
|---|---|---|---|
| 1 | Child Support Order | PREADMITTED | |
| 2 | Indirect Contempt Citation | PREADMITTED | |
| 3 | Record of Payment | PREADMITTED | |
| 4 | Medical License Confirmation | PREADMITTED | |
| 5 | Residence | PREADMITTED | |
| 6 | Payment Details | PREADMITTED | |
| 7 | Peace Joy Clinic | PREADMITTED | |
| 8 | Expenses | PREADMITTED | |

RESPONDENT'S WITNESS

ADAM SYLVESTER STEPHENS
     DIRECT BY MR. PILKINGTON . . . . . . . . . . . . 125
     CROSS BY MS. STEPHENS . . . . . . . . . . . . . .127




PETITIONER'S WITNESS

VICTORIA CLOYES
     DIRECT BY MS. STEPHENS . . . . . . . . . . . . . 175

1  incriminate themselves under the Constitution of

2  Oklahoma, article 2, section 21.  Which, like the Fifth

3  Amendment, guarantees that no person shall be compelled

4  to give evidence which will tend to incriminate her,

5  except as the State Constitution specifically provides.

6       Ms. Stephens, because this is a civil case, and

7  also Mr. Stephens, you may be called as a witness.  And

8  Ms. Stephens, for you specifically, by Mr. Stephens's

9  Counsel, you may wish to call yourself as a witness when

10 you present your own version of the facts for the jury to

11 consider.  If you call yourself as a witness, you will be

12 subject to cross-examination.  Do you understand that?

13       MS. STEPHENS:  Yes, ma'am.

14       THE COURT:  Thank you.  In other words, even if

15 your opponent does not call you as a witness when

16 presenting their part of the case, if you choose to take

17 the stand on your behalf, Mr. Pilkington will be entitled

18 to ask you questions.  When you are questioned by your

19 opponent, you may think you have a right to assert a

20 Fifth Amendment privilege against incriminating yourself.

21 Do you understand this Court will determine whether you

22 have a valid claim of a Fifth Amendment privilege.  In

23 other words, the Court, not you, ultimately decides

24 whether your Fifth Amendment claim is valid.  The Court

25 may decide that work claim of Fifth Amendment privilege

12

1    is valid.  If so, because this is a civil proceeding, the

2    jury may -- it's not required -- make an inference that

3    is adverse to you about the issue on which you have been

4    questioned and refusing to testify.  They make take an

5    adverse ruling or opinion regarding that issue.  Because

6    this is a civil proceeding and not a criminal prosecution

7    by the state of Oklahoma, the jury, as stated, will draw

8    a negative inference for the claim.

9            On the other hand, if the Court decides that you

10   do have a valid claim of Fifth Amendment privilege, you

11   will not be required to answer the question.  If you do

12   not have a valid claim, you will be required to answer

13   the question posed to you.  For example, if you have

14   raised a topic when you testify, you will have waived the

15   privilege.  So if you bring something up regarding what

16   you don't want to have -- be questioned about -- you will

17   have waived your right to claim that privilege of a Fifth

18   Amendment privilege because you have already brought that

19   up.  Do you understand that?  If you refuse to answer

20   when the Court has ordered you to do so, you may be held

21   in contempt for refusing to answer.  All right.

22           Will you confer with your stand-by Counsel about

23   these ideas that I just discussed with you?  Have you

24   confirmed?  All right.

25           MS. STEPHENS:  Your Honor?

1       THE COURT:  All right.  You have conferred.

2           MS. STEPHENS:  I have --

3       THE COURT:  There are no questions -- no

4   questions for the Court.  You have questions for your

5   stand-by counsel.  I'd like to continue.

6           MS. STEPHENS:  I would --

7       THE COURT:  Now, if Mr. Pilkington --

8           MS. STEPHENS:  Your Honor, I would like to note

9   an objection that -- and also on the record that, as my

10  own lawyer, I advised my client, the defendant, to not be

11  on the stand just like all the lawyers would advise their

12  client.  And so, we wouldn't even have to be put on the

13  stand.  And she wants to testify, she does, but, you

14  know, after consulting with her lawyer, myself, and many

15  other lawyers, she called around, and she agreed that it

16  is best that she not waste time because the burden of

17  proof is on the State and the burden of proof is on the

18  plaintiff and they would not be able to prove anything.

19  And so, we're not going to waste our time on the

20  defendants beyond the standard so she will remain silent.

21          THE COURT:  You may be called by Mr. Pilkington

22  to testify and --

23          MS. STEPHENS:  And I am my own lawyer, Your

24  Honor, and I will say, Mr. Gilbert Pilkington, my client

25  listened to my advice.  Even though she want to testify,

```
 1          THE COURT:  You rest.  Okay.

 2          MR. PILKINGTON:  Put that on the record.

 3          THE COURT:  State, thank you.

 4          MS. STRINGER:  Based on what was previously

 5    presented, the State would rest at this time as well.

 6          THE COURT:  Okay.  Thank you very much.

 7          Ms. Stephens, your case-in-chief.

 8          MS. STEPHENS:  I'd like to have Dr. (inaudible)

 9    as my next witness.

10          THE COURT:  And was she on the witness -- she

11    was on the witness list, was she not?

12          MS. STEPHENS:  She was.

13          THE COURT:  Can you come forward and give me

14    an -- or give me an offer of proof?  Ma'am, do you want

15    to come forward?

16          (The following bench conference was had outside

17    the hearing of the jury:)

18          MS. STEPHENS:  On the proposed witness list --

19    I will get my proposed witness list --

20          THE COURT:  No.  This -- we have a witness list

21    already here --

22          MS. STEPHENS:  She was --

23          THE COURT:  -- that's what we follow.

24          MS. STEPHENS:  I don't understand how she drop

25    off she's a direct private care doctor.  She can testify
```

```
 1    to the business' stuff.

 2          MR. PILKINGTON: Your Honor, we had this

 3    discussion at pretrial and we excluded the witness.

 4          MS. STRINGER: I would concur, Your Honor. You

 5    specifically stated that the only two that would be on

 6    there are the two that are on the list.

 7          THE COURT: Right.

 8          And this is the pre- -- this is the trial

 9    witness list. That's why we have a trial -- a pretrial

10    order. So with that, do you have someone?

11          MS. STEPHENS: I have a long witness list.

12          THE COURT: And those are -- ma'am, the

13    pretrial --

14          MS. STRINGER: -- those were supposed to --

15          THE COURT: -- is over --

16          MS. STRINGER: -- in October before you were

17    appointed --

18          (indiscernible cross-talk between counsel.)

19          MS. STEPHENS: I was about to call her first.

20    Okay. Victoria Cloyes is next, then. Victoria Cloyes.

21          THE COURT: Is she --

22          MS. STRINGER: She's listed.

23          THE COURT: Okay.

24          MS. STRINGER: But Your Honor, before we leave

25    and get into this again, you specifically ordered that
```

```
 1    the tax expert was here as a tax expert --

 2            THE COURT REPORTER: I need in here.  The tax

 3    expert was --

 4            MS. STRINGER:  -- was excluded as a -- was for

 5    taxes only.  Everything else was excluded in the

 6    testimony of that witness that's the tax expert.

 7            THE COURT:  Is he present?

 8            MS. STEPHENS:  No.  He couldn't be present

 9    today.

10            THE COURT:  He's not here?  Is he going to be

11    present?

12            MS. STEPHENS:  No.  He disappear.

13            THE COURT:  No.  He disappeared?

14            MS. STEPHENS:  Yeah.  I don't know why.

15            THE COURT:  Okay.

16            MS. STEPHENS:  I tried contacting him.

17            THE COURT:  Okay.  So you have one witness to

18    testify?

19            MS. STRINGER:  So who disappeared?  The CPA?

20            THE COURT:  Yes.

21            MS. STRINGER:  Okay.

22            MS. STEPHENS:  Because he -- I don't know if,

23    like, his phone, his Facebook, I kind of worry about him.

24            THE COURT:  Well, did you send a subpoena?

25            MS. STEPHENS:  Yeah.
```

165

```
 1              THE COURT:  Did they serve him?

 2              MS. STEPHENS:  I didn't put the tracking, but I

 3    think so, but I'm not sure.

 4              THE COURT:  Okay.

 5              MS. SIMMONS-LIZAMA:  He's from Texas.

 6              THE COURT:  Well --

 7              MS. STEPHENS:  He's from Texas, so it may get

 8    lost.

 9              THE COURT:  And the other woman is who?

10              MS. STEPHENS:  Victoria Cloyes.

11              THE COURT:  Is she the one online?

12              MS. STEPHENS:  Mm-hm.

13              THE COURT:  And what is your offer of proof?

14              MS. STEPHENS:  The next witness --

15              THE COURT:  What is your offer -- what is she

16    going to testify to?

17              MS. STEPHENS:  About how she donate visitation

18    costs and things -- and donations --

19              THE COURT:  Well, make them stipulate to --

20              MR. PILKINGTON:  Your Honor, we're aware that

21    she has made some donations to pay some of the supervised

22    visits.  We do have -- I would stipulate to that.

23              MS. STEPHENS:  No --

24              MR. PILKINGTON:  That's all she's going to

25    testify to --
```

```
 1          MS. STEPHENS:  No.  She has all the testimony

 2   about my character witness, and hard work, and all these

 3   things --

 4          MR. PILKINGTON:  That's not what you said.

 5          MS. STEPHENS:  -- hard work.

 6          MS. STRINGER:  That's not what was provided at

 7   the pretrial.

 8          MS. STEPHENS:  And how I have inability to pay.

 9   It goes to my inability to pay.  She can testify to that.

10          THE COURT:  Well, I don't know if she can or not

11   --

12          MS. STEPHENS:  And my mom also here --

13          THE COURT:  Your mother's not on the witness

14   list.

15          MS. STEPHENS:  Well, because at that time, my

16   mom was not available because she was sick.

17          THE COURT:  It is not on the witness list.

18          MR. PILKINGTON:  And she's been sitting in

19   the -- here.

20          MS. STRINGER:  Yeah --

21          THE COURT:  And she's been sitting in the

22   courtroom.

23          MS. STEPHENS:  No.  That's not my mom, that's my

24   aunt.  My mom is out there.

25          MS. STRINGER:  -- that's her aunt.  But, Your
```

```
 1    Honor, the other thing about this California witness is
 2    the relevance or the fact there's somebody in California
 3    having any idea -- going beyond just the providing funds.
 4    So the State is fine stipulating to that she possibly
 5    provided funds.
 6              THE COURT:  Okay.  But that's all she can
 7    testify to and they're willing to accept the stipulation
 8    that she has provided you funds.  And that is --
 9              MS. STEPHENS:  I need them to hear from her --
10              THE COURT:  Ma'am --
11              MS. STEPHENS:  Not just that, it's about my
12    inability to pay --
13              THE COURT:  That is not what she can -- she
14    lives in California.  How --
15              MS. STEPHENS:  But she talks to me, and she with
16    me, and we are -- every -- weekly, we talk three, four
17    times.  And I share finances with her, and she help me,
18    and she go over my finance and help me guide, you know,
19    like,
20              MR. PILKINGTON:  The best witness to talk about
21    that --
22              MS. STEPHENS:  Yes.
23              MR. PILKINGTON:  -- is Dr. Stephens.
24              THE COURT:  Okay.
25              MS. STEPHENS:  No.
```

```
 1              MR. PILKINGTON:  Because now she would just be
 2   repeating what Dr. Stephens has told her.  And the best
 3   evidence --
 4              MS. STEPHENS:  I have the right to present --
 5   the due process means I can present all my witnesses --
 6              THE COURT:  You have one witness.
 7              MS. STEPHENS:  But how come my mom -- like I
 8   told you -- wasn't available --
 9              THE COURT:  I'm sorry.
10              MS. STEPHENS:  -- and I informed recently until
11   she's --
12              THE COURT:  Pretrial orders are made for a
13   reason.  She is not going to testify.
14              MS. STEPHENS:  Okay.
15              THE COURT:  You have one witness that will
16   testify.
17              MS. STEPHENS:  Okay.
18              MR. PILKINGTON:  And we'll stipulate that she'll
19   testify that she's paid -- made donations for purposes of
20   child --
21              THE COURT:  If we get her in to testify, that is
22   all she's going to testify about.  You are not going to
23   --
24              MS. STEPHENS:  She's --
25              THE COURT:  What's that?
```

```
 1              THE COURT:  Yeah.  I think you should.  Okay.
 2    Thank you.
 3                   (End of bench conference.)
 4              THE COURT:  Thank you.
 5              Ms. Stephens, do you have any question --
 6              MS. STEPHENS:  Just one question about payment.
 7        Q.   (By Ms. Stephens)  Ms. Cloyes, did I pay you to
 8    appear here today?
 9        A.   No.
10              THE COURT:  Okay.  Thank you.
11              Mr. Pilkington, do you have any questions for
12    this witness?
13              MR. PILKINGTON:  No, ma'am.
14              THE COURT:  Stringer?
15              MS. STRINGER:  No, Your Honor.
16              THE COURT:  All right.  Thank you.
17              Thank you very much for appearing before us.
18    You are --
19              THE WITNESS:  Thank you, Your Honor.
20              THE COURT:  -- you are excused.
21              Okay.  All right.
22              Ms. Stephens, do you have any other live
23    testimony?
24              MS. STEPHENS:  I want my mom, but you guys say
25    you exclude her out and -- because my mom know about my
```

```
 1    financial status and how --

 2            MS. STRINGER:  Your Honor, we're testifying

 3    again.

 4            THE COURT:  Ma'am --

 5            MS. STEPHENS:  No.  Just explain how she's an

 6    important witness --

 7            THE COURT:  No --

 8            MS. STEPHENS:  And she wasn't available until

 9    this week because she --

10            MS. STRINGER:  No.  We need to sidebar if we're

11    going to continue this.

12            THE COURT:  Ma'am, please.  She's not -- we've

13    already talked about this.  She's not going to be allowed

14    to testify.  Do you have any other live witnesses or any

15    other evidence you'd like to submit to the Court?

16            MS. STEPHENS:  So -- well, the only one that I

17    have left is Adam Stephens.  Do I save him for the

18    morning or go ahead and start now?

19            THE COURT:  What time is it?  I can't see that.

20            MS. STRINGER:  Three thirty-nine, Your Honor.

21    We need to go over the jury instructions.

22            THE COURT:  Yep.  I think we'll reserve that for

23    the morning.

24            MS. STEPHENS:  For Adam?

25            THE COURT:  All right.  I'm going to go ahead
```

1        IN THE DISTRICT COURT IN AND FOR TULSA COUNTY

2                    STATE OF OKLAHOMA.

3

4

   LINH TRAN STEPHENS,              )
5              Petitioner,          )
                                    )
6    v.                             )
                                    ) Case No. CF-2015-2228
7                                   )
   ADAM SYLVESTER STEPHENS,         )
8              Respondent.          )

9

10

11

12                        *******
                     VOLUME II OF II
13
                 TRANSCRIPT OF PROCEEDINGS
14                     HAD ON THE

15        6TH AND 7TH DAYS OF FEBRUARY, 2024

16        BEFORE THE HONORABLE LUDI-LEITCH

17                    (and a jury.)

18                        *******

19

20

21

22

23

24
   REPORTED BY: ABIGAIL C. YODER, CSR
25

2

```
 1                        APPEARANCES

 2
      FOR THE PETITIONER:
 3
          MR. GIL PILKINGTON
 4            The Pilkington Law Firm, PLLC
              406 S Boulder Avenue, #415
 5            Tulsa, OK 74103

 6

 7    FOR THE RESPONDENT:

 8        PRO SE

 9

10    STANDBY COUNSEL:

11        MS. SIERRA FREEMAN, Attorney at Law
              BOEHEIM FREEMAN, PLLP
12            616 South Boston Avenue #307
              Tulsa, OK 74119
13

14
      ALSO APPEARING: FOR DHS
15
          MS. EMMALENE STRINGER, State's Attorney
16            CHILD SUPPORT SERVICES
              Tulsa East Office
17            P.O. Box 27068
              Tulsa, OK 74149
18
          MS. ALEXANDRA SIMMONS-LIZAMA,
19            CHILD SUPPORT SERVICES
              Tulsa East Office
20            P.O. Box 27068
              Tulsa, OK 74149
21

22

23

24

25
```

1                                INDEX

2                                                        PAGE

3    APPEARANCES                                           2

4

5

6

                          PETITIONER'S WITNESS
7

     ADAM SYLVESTER STEPHENS
8        DIRECT BY MS. STEPHENS . . . . . . . . . . . . . 27

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    through no fault of the Petitioner.

2          Number 22, you are instructed that you may find

3    the non-compliant party guilty of contempt if you find

4    that she only partially complied with the child support

5    order and that her failure to pay more was willful.  Your

6    decision must be based on probabilities, not

7    possibilities.  It may not be based upon speculation or

8    guesswork.

9          Twenty-four.  Direct testimony evidence is the

10   testimony of a person who asserts actual personal

11   knowledge of a fact, such as the testimony of an

12   eyewitness.  Direct evidence may also be an exhibit, such

13   as a photograph, which demonstrates the existence of a

14   fact.  It is proof which points immediately to a question

15   at issue, and which proves the existence of a fact

16   without interference or presumption.

17         Circumstantial evidence is the proof of fact or

18   circumstances which give rise to a reasonable inference

19   of other connected facts.

20         The law makes no distinction between the weight

21   to be given to either direct or circumstantial evidence.

22   You should consider circumstantial evidence together with

23   all the other evidence in the case in arriving at your

24   verdict.

25         Inferences -- invocation of the Fifth Amendment

1    privilege.  A witness has the right under the Fifth

2    Amendment under the United States Constitution to decline

3    to answer questions on the ground that doing so may tend

4    to incriminate her.  However, in civil cases such as this

5    one, you as the jury, may but are not required, to infer

6    from such a refusal that the answer would have been

7    adverse to the witness' interest.

8          You should consider any inference you may or may

9    not choose to draw from a refusal to testify on Fifth

10    Amendment grounds together with all the other evidence in

11    this case.

12          Number 25, determining credibility.  You are the

13    sole judges of the believability of each witness and the

14    value to be given the testimony of each.  You should take

15    into consideration the witness' means of knowledge,

16    strength of memory, and opportunities for observation.

17    Also consider the reasonableness and consistency or

18    inconsistency of the testimony.

19          You should also consider the bias, prejudice, or

20    interest, if any, the witness may have in the outcome of

21    the trial, the conduct of the witness upon the witness

22    stand, and all other facts and circumstances that affect

23    the believability of the witness.

24          After you have retired to consider your verdict,

25    select one of your number as foreperson and enter upon

1    Okay.  Well, I have my own clock, so can you please --

2    I'm going to start with the same time with you.

3              THE COURT:  I have started it.  It's 11 -- at 11

4    --

5              MS. STEPHENS:  So you -- all right.

6              Throughout this trial, you notice the government

7    is overreaching and has not met their burden of proof.

8    The empty words by lawyers who do not have personal

9    knowledge and did not present evidence to you is not

10   believable, has not have been authenticated by an expert

11   witness, accountant, or by a Tulsa County Assessor to be

12   cross-examined, to be exposed to the lies of these

13   lawyers who --

14             The only thing that lawyers -- come out of their

15   mouth is a joke.  You all heard -- is the only thing to

16   come out of the mouth of the lawyer is, hi, I'm a lawyer.

17   So, please keep that in mind.

18             They have set the stake at pay.  The stake at

19   pay is -- if they group everyone, force everyone into

20   Title 4 -- retire- -- you know, because that's part of

21   judge's retirements, so keep that in mind and filter

22   everything through the greed, the lies, and the fraud.

23   And the things that I couldn't present today because they

24   suppressed evidence.  They are tampering evidence, and

25   they blocked out my witness --

```
 1              MR. PILKINGTON:  Your Honor, objection.  The
 2    term suppress the evidence was --
 3              MS. STEPHENS:  These are my arguments --
 4              THE COURT:  Excuse me.  Just a moment.
 5              MR. PILKINGTON:  She's now going beyond -- she
 6    can only talk about the evidence that was presented --
 7              MS. STEPHENS:  This is my argument.
 8              THE COURT:  I'm going to allow her to continue.
 9              THE COURT REPORTER:  Can you slow down a little
10    bit, Ms. Stephens?
11              MS. STEPHENS:  Huh?
12              THE COURT REPORTER:  Can you slow it down just a
13    little bit?
14              MS. STEPHENS:  Yes.
15              THE COURT REPORTER:  Thank you.
16              MS. STEPHENS:  And so, if they show up, I would
17    be able to show you that these lawyers are lying.  The
18    only one witness they have is Mr. Adam Stephens, even
19    though they have months and months to get all these
20    experts here for you.
21              And he is unreliable with his conflict of
22    interest and he refused to recall anything on cross-
23    examination that was going to help the truth to be coming
24    out.
25              And -- but you can see the evidence for yourself
```

```
 1    sentence of judgment until at least after Friday because

 2    Judge Seibert said I have to write a 10-page closing

 3    argument for her case that's due on Friday, Your Honor,

 4    at 5:00 p.m.

 5           THE COURT:  All right.  Thank you for that

 6    request.  I'm going to deny that request, ma'am.

 7           The Court, at this time, is going to order you

 8    to go into the Tulsa County Jail for 60 days and up to a

 9    $500 -- I'm going to impose a $500 fine.

10           You will be taken into custody.  You do --

11           Not yet, just a second.

12           Your purge fee is $12,413.40.  We would -- do

13    you need to have -- can you afford to pay that, ma'am?

14           MS. STEPHENS:  No, Your Honor.

15           THE COURT:  Can we do a partial purge hearing at

16    this time?  Are we able to do that?

17           MS. STRINGER:  We can definitely hold one, Your

18    Honor.  And part of that request, you know, the State has

19    asked for at least a $5,000 purge fee based on the

20    resources previously presented to the Court.  I can't say

21    testified to, but presented to the Court.

22           THE COURT:  Ma'am?

23           MS. STEPHENS:  Your Honor, I would ask why is

24    the purge fee so high and it should be lower.

25           THE COURT:  What, the purge fee?
```

```
 1              MS. STEPHENS:  Yeah.  It's so high it's, like,
 2    impossible for anyone to pay.  It's going to show you for
 3    the, like, indigent status like I am now.
 4              THE COURT:  I believe the Court has already
 5    ruled on the fact -- in this court, as well as Judge
```
*both special judges ignored OK Supreme Court rulings showing lawless arrogance*
```
 6    Seibert -- that you are not indigent.
 7              And I'm just asking, that is what the amount
 8    that has been determined to be owed, 12,413.40.
 9              Now, ma'am --
10              MS. STEPHENS:  She -- my counsel advised me to
11    ask for a purge fee of $500.
12              THE COURT:  That's denied.  I will deduct a
13    $5,000 partial purge just based on your stating that
14    you're indigent.  However --
15              Counsel?
16              MR. PILKINGTON:  Your Honor, even though she
17    refused to testify, we believe that she's receiving a
18    monthly paycheck of $2,600 dollars from the VA, we've
19    introduced evidence that she had or has investments that
20    are producing capitol gains, and there was an IRA of at
21    least 60,000 that she's never disclosed.  We would ask
22    for the full amount to be set.  She has not been
23    forthcoming on her financial information.
24              If you will note on the record, Judge Seibert
25    ordered her to return -- to turn over to me the last four
```

```
 1   of her bank accounts or credit card accounts and where
 2   those were held.  She filed an objection to it and she
 3   did provide nothing.
 4          So she was given an opportunity to provide us
 5   the financial records that we could then come back and
 6   say this would be reasonable.  She has put herself in
 7   this position by refusing to follow the court's order on
 8   release of financial information.
 9          I believe that given her status, her husband's
10   status, and the records that we've been able to gather,
11   she can produce $12,000, if pressed, and that's why I
12   would ask for the full purge.  I'm -- that's my argument,
13   Your Honor.  She's not disclosing her assets, that's what
14   she needs to do.
15          MS. STRINGER:  You know, furthering that, Your
16   Honor, Turner v. Rogers says she has to have a key to her
17   cell.  And so, we would just ask that, in whatever number
18   that the Court determines that you find, that she has an
19   ability to pay that amount for the record.
20          THE COURT:  The problem here is that there's
21   been non-disclosure; is that correct?
22          MR. PILKINGTON:  Correct.
23          THE COURT:  And you are believing that she gets
24   a semi-monthly paycheck?
25          MR. PILKINGTON:  She gets a monthly payment from
```

*what does current husband income has to do w/ child support LAW for previous marriage?*

*Since when lawyer get to testify about fabricated facts regarding opposing party and his objected hearsay taken as truth?*

DISTRICT COURT OF OKLAHOMA - OFFICIAL TRANSCRIPT

82

```
1    the VA of 2,600 and some change.  You're more than

2    welcome to inquire of the witness.  She refuses to answer

3    in court.

4           THE COURT:  Ma'am, do you -- ma'am --

5    Ms. Stephens, do you receive a VA paycheck or a check

6    from the VA every month for $2,600?  I don't hear you.  I

7    want to hear you.  You did not disclose this.  Yes or no?

8           MS. STEPHENS:  I do not.  I don't know where

9    they got that number from.

10          THE COURT:  So -- okay.  Do you receive a

11   paycheck from the VA?

12          MS. STEPHENS:  No.

13          THE COURT:  When was the last time you received

14   a paycheck?

15          MS. STEPHENS:  I don't receive any paycheck.

16          THE COURT:  From the Veteran's, you don't

17   receive one?  Do you have an IRA in the amount of

18   $60,000?

19          MS. STEPHENS:  No.

20          MR. PILKINGTON:  Your Honor, if I might, she

21   used to work for the VA.  What we're now asking about is

22   a VA disability check.

23          THE COURT:  Do you have a disability check

24   coming in from the --

25          MS. STEPHENS:  No.  And then, the IRA -- I was
```

I, <u>Jeri Townsend</u>, in this Affidavit of Facts, declare the following statements under penalties of perjury to be true and correct to the best of my personal knowledge and belief, and if called as a witness, I could competent testify to the matters stated in this document.

December 17,2022
Tulsa County Court System and District Attorney Steve Kunzweiler,
500 S. Denver
Tulsa, Ok 74103

To Whomever Cares About the Children,

I would first like to introduce myself. I am a Family Nurse Practitioner practicing since 2001, an RN since 1993. As a medical professional, it is a REQUIREMENT that I report any suspicious concerns or behavior of child endangerment or abuse. It is the duty of the courts to investigate my report. That DID NOT happen.

In December of 2021, G.L. Stephens, a child in my neighborhood, randomly disclosed to me in a private situation that her own father, Adam Stephens, was putting her in sexually abusive or at the least sexually concerning situations. She divulged being forced to sleep in his bed naked, not having a toilet seat or door on her bathroom and sitting on strange men's laps in the past. She reported he would hit or choke her dog to punish her. She divulged she was afraid of her dad. Due to the concerns, I had no choice but to make a report. I contacted CPS and received a reporting number of 2200561. I was told by the female intake worker, that I could check on my report usually after 24 hours. I tried. It did not give me any information. I tried the following day and no report found. I contacted a friend who works for DHS and she stated the report was removed. I did not get questioned, contacted by police or any investigators whatsoever! I did find out a few days later, that G.L. Stephens was removed from her "Mommy's" (what G.L calls her mom) care on 12-3-22 removed from her school, Miss Helen's. Imagine my SHOCK when a child I reported as being in danger with her father was removed from her "Mommy's" home and placed with her father!! SERIOUSLY!!! THIS IS NEGLIGENCE by the court system and if anything happens to G.L. Stephens in her father's care, I will be sure to testify I reported her at risk and no one investigated.

Once I realized I was dealing with a corrupt situation, I began to be more frustrated that my testimony was being quashed 100% by G.L. STEPHEN'S OWN ATTORNEY, Stephen E. Hale. He objected to my testimony at every turn which I find beyond contradictory. He should be the one person who is asking me questions, gaining all knowledge and not working hand in hand with the biological father's attorney. It is one thing going through a criminal case and quite another a case designed to PROTECT a child! It would have been much better to put G.L. Stephens in the care of a grandparent, close friend or foster care while these concerns were investigated. In addition, in the transcript, the judge interjected and makes the judged blocked me from answering the questions, specifically interjecting "physical abuse" when the attorney was asking if I made the DHS referral based on sexual abuse. Then once she injected physical, she would not let me answer but to say yes or no which with her interjecting does not read the way it should have for my testimony to be correct. I do not pretend to know the case in its entirety, but I KNOW that her mom is a great mom, protective, loving, supportive, helpful, invests her personal time and works to educate her children doing fun tasks. She is in NO POSSIBLE WAY a threat to G.L. Stephens. In fact, I did not think it was even possible that G.L.Stephens would have had the opportunity to watch the movie of concern, TAKEN. Interestingly, one day it was just starting when I was scrolling through my TV guide in February 2022, so I recorded it and watched it a day or so later on 2/8/22 when my husband was working late. Have you watched it to see if the case makes sense? There is no way G.L. Stephens would know the name of the movie without watching from the beginning and was alertly watching the entire show. There was NO rape in the movie. No way to see rape; inferring a sexual encounter is possible of course. I am clear on what rape is like; you can confirm by reviewing the Tulsa County case I testified in. Praise God Colorado is not corrupt and he will be incarcerated until his death. There is NO rape in the movie! G.L. Stephens did not see a naked scene in the movie, in my opinion because she did not watch it. But, even had she had the opportunity, it did not show rape and is NOT GROUNDS TO REMOVE HER FROM HER LOVING MOTHER or her baby brother. Now there was certainly violence in the movie. It was rated PG-13, not R; however, it did not show what is being alleged. Worst case scenario, they would go through classes and she would be restored to her mom at least 50/50. G.L needs to be with her "Mommy" where she was always happy and

dancing, laughing, playing, singing, drawing, making soap and sharing with neighbors, swimming and all things kids should be doing.

G.L. Stephens in my opinion, would not have known the term "Rape" without being coerced. She was happy, playing, a little girl, drawing, running around with pets including mine at times, laughing and she liked to talk. During her time at my house, dancing around to music, eating and playing with our boxer, Daisy, G.L. Stephens and I spoke about life and divorce. My boys deal with divorce and we talked about what it is like and how different the two homes could be for kids. I even talked about how our boys would play us to get double gifts etc. She laughed sheepishly. In our comparisons, she divulged her fears and concerns of sleeping naked.

I am writing this affidavit because I do not feel like the police or DHS investigated my claims at all. I find this interesting since I am a licensed medical provider for more than 2 decades and an RN for essentially 30. We are not in the business of lying, but of trying to help people to become their healthiest. One thing for sure, G.L. Stephens is not getting justice! Tulsa County is not investigating or protecting her. Allowing corruption has to stop! We need reform. We need our children protected. We need the children's attorney's working only on the child's behalf, investigating for them and NOT working with any side's attorneys!

If you are reading this letter, then you have the power and opportunity to step up and research this case and others like it in Tulsa. You will answer to God Almighty one day about every case you touch. All I am asking for is an investigation, placing G.L. Stephens in an independent site away, from the parents, so she can be free to speak and open up about what has happened to her. Get her to a safe haven. Get her case resolved and back with her family that love her. It has been ONE FULL year since she has seen her grandparents, brother, cousins or family on her Mom's side. Alienation to one side of the family is torture too. You could even require her to have time with her grandparents and brother. They should not have to pay to have time with her. They are not dangerous.

Please remove corrupt actors from G.L. Stephen's case. Please investigate it. Please protect her.

Sincerely,

Jeri Townsend, MS, APRN, FNP-C

STATE OF OKLAHOMA )
                   ) ss
COUNTY OF TULSA    )

Sign name: _Jeri Je_____

Printed name: _Jeri Townsend_____

The undersigned, a Notary Public in and for said County, in said State, hereby certify that _Jeri Townsend_____ whose name is signed to the foregoing instrument, and who is known to me, or provided the following identification document(s) _Oklahoma Driver's License_subscribed and sworn before me on this day that, being informed of the contents of the instrument, s/he executed the same voluntarily on the day the same bears date.

Dated this _18th_ day of _December_, 2022.

_____

NOTARY PUBLIC

My commission expires: _10/28/2025_____

on # _21014202_____

[SEAL]







89 a

# GENERAL AFFIDAVIT

**STATE OF** Oklahoma

**COUNTY OF** Tulsa

PERSONALLY came and appeared before me, the undersigned Notary, the within named _MORIS LACA_, who is a resident of _Tulsa_ County, State of _Oklahoma_, and makes this his/her statement and General Affidavit upon oath and affirmation of belief and personal knowledge that the following matters, facts and things set forth are true and correct to the best of his/her knowledge:

(Insert Statement)

· See attached

DATED this the 19 day of December, 20 21

_Moris Laca_
Signature of Affiant

SWORN to subscribed before me, this 19 day December, 20 21

NOTARY PUBLIC

Kristy Fox
State of Oklahoma
Notary Public

My Commission Expires:
3/31/26

**90 a**

To Whom It May Concern,

My name is Moris Laca, MD. I am a physician who knows Dr. Linh Stephens, DO, for 2+ years now as we both have worked in the VA hospital system and were connected through our supervisor Dr. Tuana Diep. When I heard Linh is falsely accused of being abusive to her kid I can guarantee you 100% that she is not abusive; it is more likely a misunderstanding of communication between an 8-year-old girl and CPS social worker and child ad litem who are not qualified child-psychiatrists. As a doctor I know kids at this age does not have full understanding of words and can use words incorrectly and only a forensic child psychiatrist should be interpreting anything that seemed to be out of character for any mom, and especially if a child is taken from a loving mom's care to foster home in the first place. I strongly recommend a forensic child psychiatrist to be involved to set things right for G███ so she can be free from her true abuser who is G███'s father. G███ needs to be with the most respected and admired mom that all of us at the VA have known. I find it unacceptable that G███ is not granted the right to speak in front of the court to provide her own testimony of who the real abuser is.

Linh is a very good mom who is loving, protective of G███'s innocence, protective of G███'s mental and emotional health; everyone else in the neighborhood, at school, at work, at church knows it and can testify to it. My wife and I would totally trust our children in Linh's care any day any time. She lives a very clean and God-fearing life. Her house has YouTube Kids, Netflix Kids profile for G███ & █████, and parental supervision at all times; she doesn't even have cable nor DVD player. G███ always sings about loving Ryan because of Ryan's Toys Review YouTube channel that she often watches. Linh's house is full of toys for both G███ and baby █████, in their individual rooms and overflown to even upstairs. Baby█████ is so blessed to have his own room, gets to sleep in a big bed with his mom, and to have grandma come visit often.

G██ wrote in her diary about her life, with her handwriting matching her homework, and writing without being forced using Hey google or Siri to spell for her. My wife and I saw G███ via Facetime writing her diary in the background many times while we were talking to her mom, and G██ was happy to write her diary because it lessens her stress from being abused during daddy's week as instructed by her child psychologists. There is no way G██ would be crying about writing diary in November 2021 when her last entry was 5 months ago June 2021. My wife and I listened to all the songs that she sang so beautifully and spontaneously on 12/01/2021 about how much she loves her mom. She was excited to get to speak to a judge directly and no longer be abused by her dad until DHS took her away from her loving mom.

I heard about the false allegation against Linh's mental health. I can guarantee you that no one is more mentally stable than Linh. Her ex-husband is the one that is likely mentally unstable to be so abusive to his daughter with hard evidences and with child-psychologists and schoolteacher and school director affidavits.

Sincerely,

*Moris Laca*

Moris Laca, M.D.

12/19/2021

IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
STATE OF OKLAHOMA

IN RE THE MARRIAGE OF:                    )
                                          )
Linh Tran Stephens,                       )    Case No. FD-2015-2228
            Petitioner,                   )    Docket C
vs.                                       )    Judge April Seibert
                                          )
                                          )
Adam Sylvester Stephens,                  )
            Respondent.                   )

AFFIDAVIT

STATE OF OKLAHOMA      )
                       )    ss.
COUNTY OF TULSA        )

I, Linh Stephens, being first duly sworn, state:

I have personal knowledge of the facts as stated in the Counter Motion for Modification of Custody/Visitation filed contemporaneously herewith and state that they are true and correct to the best of my knowledge.

1. That on or about mid-November 2021, my daughter, G.L.Stephens, born on July 24, 2013, informed me that her father Adam Sylvester Stephens SR, Respondent herein, choked her dog again in front of her to almost dead that she had to hit her dad to rescue her dog, and that she is afraid that she may die if he was to choke her next.

2. That my daughter stated that her dad tried to choke the cat also but was not able because the cat has sharp claws.

3. That my daughter stated that her dad used corporal punishment on her by slapping her in her face and other various body parts, including her arms and stomach. The minor child reports that this has gotten worse in frequency.

4. That my daughter also stated to me that she wants her dad to die and that she wants to be free from her dad.

5. That my daughter further reported that her father continues to force her to sleep naked in bed with him while he sleeps naked beside her. The minor child was an eight (8) and a-half year old female and sleeping naked with her father, also naked, is inappropriate.

6. That my daughter further informed me that she is scared to go back to see her dad.

7. That despite a Court Order called "Conduct Order" in summer 2020, and my numerous requests for Respondent to stop sleeping naked with daughter, to use other forms of discipline other than physical discipline of the minor child, Respondent has continued to sleep naked and physically discipline the minor child.

8. That I called the police 11/23/21 and made reports: Owasso Police Report # 2021-2553, Tulsa Police Report 2021-060000.

9. That I called DHS and made a referral and my DHS referral number is 2199067.

FD-2015-2228, PO-2021-3843, false JD-2021-270, false/retaliative PO-2021-4059, DF-120612, CI-120848, DF-120847, DF-120849, Responses to Respondent's Application for Indirect Contempt Citation Child-Support and to Respondent's Motion to Modify Custody/Visitation, and Petitioner's Counter-Motion to Modify Custody/Visitation and to Order Paternity Test

92 a

10. That I am unable to prevent the Respondent from subjecting the minor child to this abuse and I am fearful that irreparable harm will occur to the minor child.

11. After judicial deception and fraud-on-the courts by Respondent and false witness Bridget O'brien without factual/believable evidence other than hearsays which are not acceptable as evidence per federal and state evidentiary rules, Respondent successfully isolated the child to himself for abuses by taking the child completely from mother, from stable school, from pediatrician (medical doctor for kids), from grandparents, from Vietnamese heritage relatives, from church, from known child psychologists who have active licenses and should continue to be seeing child for mental/emotional abuse by father, NOT by mother.

12. Respondent custodial interfered by delaying scheduling therapeutic visits for mother and it took almost 9 months for him to start first visit with mother and only after mother filed motions and had a hearing about custodial interference 08/19/2022.

13. Child said to the therapist during therapy she wanted to see mother, and as a result, the visit commenced 09/22/2022. This proved that DHS Bridget O'brien/Menser and public defender Sadie Temple lied about the child, putting words into the child's mouth, skipping due process by not ordering child forensic interviews that should be recorded by video to be reviewed by both opposing parties. We all know that child has never said "I never want to see my mother again"). During 11/28/22 visit in front of therapist and mother, child denied that she ever said "I never want to see my mother again", denied that mother made her watch any naked scenes, denied that she knows what "rape" means, and denied ever watching any movie with a man standing behind a boy hurting him–proven that DHS felon Bridget O'brien maliciously lied against child and against mother. Child also made crafts which she wrote in permanent marker during the session and gave to me to bring home and we took a picture "by G_____ [G.L.S. name] I love u guys and I will always remember you [exclamation mark with hearts]. [heart] U J____ (brother), Man, and mommy Linh from i G_____ [G.L.S. name], see Exhibit 2.

14. During these therapeutic visits, child has always came in from father's sole-custody with bruises on her foreheads and she was forced to lie about the bruises so her father won't beat her, she said "soccer ball" which wouldn't explain why 2 spots on both sides of head and looks like being smacked with a hand than a soccer ball because I am a physician I know what soccer ball bruise looks like. Other times, a bruised child lied out of fear of her father "I fell onto cement while running" but without any abrasions or scabs, strictly swelling from being smacked with a hand, see Exhibits 1-2, highly suspicious of continued **physical abuse** as reported by child herself and reported by others. Child is always with greasy hair but now with dandruff (untreated) because of not begging allowed to take showers for weeks at a time in the same pattern as before under father's care; this is **unkempt** and **hygiene neglect**, see Exhibit 3. Child was infected with fungus on face ("tinea" which is the white spots), but father did not treat them at all and it worsened every week, used to have one spot and now all over face; this is continued **medical neglect**, see Exhibit 4.

15. This Affidavit is in compliance with 43 0.S. S 107.4.

FURTHER AFFIANT SAITH NOT.

FD-2015-2228, PO-2021-3843, false JD-2021-270, false/retaliative PO-2021-4059, DF-120612, CI-120848, DF-120847, DF-120849,
Responses to Respondent's Application for Indirect Contempt Citation Child-Support and to Respondent's Motion to Modify Custody/Visitation,
and Petitioner's Counter-Motion to Modify Custody/Visitation and to Order Paternity Test

93 a

## VERIFICATION 12 OS 246

**STATE OF OKLAHOMA** ⎤
                 *ss*
**COUNTY OF TULSA** ⎦

    I, **Linh Stephens**, am a woman/mother and Petitioner in this case, I have read the contents within the foregoing document, and state under the penalty of perjury under state laws that the statements/allegations/pleadings set forth therein are true and correct to the best of my knowledge and belief,

<u>Linh Stephens</u>
A woman, a mother,
*I reserve all my rights without prejudice,*

**SUBSCRIBED** and sworn to before me this ⏵28⏴ day of ⏵November⏴, 2022

**NOTARY PUBLIC**

My commission expires: ⏵9|9|2026⏴

[SEAL]



*FD-2015-2228, PO-2021-3843, false JD-2021-270, false/retaliative PO-2021-4059, appeal DF-120819, CI-120818*
*Responses to Respondent's Application for Indirect Contempt Citation Child-Support and to Respondent's Motion to Modify*
*Custody/Visitation, and Petitioner's Counter-Motion to Modify Custody/Visitation and to Order Paternity Test*
**94 a**

21

# GENERAL AFFIDAVIT

STATE OF _Georgia_

COUNTY OF _Gwinnett_

PERSONALLY came and appeared before me, the undersigned Notary, the within named _James Lovett_, who is a resident of _Gwinnett_ County, State of _Georgia_, and makes this his/her statement and General Affidavit upon oath and affirmation of belief and personal knowledge that the following matters, facts and things set forth are true and correct to the best of his/her knowledge:

(Insert Statement)

DATED this the _15_ day of _June_, 20_20_

_[signature]_
Signature of Affiant

SWORN to subscribed before me, this _15_ day of _June_, 20_20_

_[signature]_
NOTARY PUBLIC

_[Notary Seal: Z LAMBERT HALL, MY COMMISSION EXPIRES AUGUST 6, 2022, NOTARY PUBLIC, GWINNETT COUNTY, GEORGIA]_

My Commission Expires:
_August 6, 2022_

**95 a**



# Alliance Wellness South

2001 Collinswood Drive
Snellville Georgia 30078

(678) 882-2916

Date _ 06/15/20

This report covers G█████ S█████ (DOB ██████13) who at the first counseling session was 4 year old and started counseling with this therapist, Jim Lovett, from August 2017 to May 2020. During this period of time, G███'s complaints and conversations centered around many subjects of negativity from Adam Stephens (G███'s father), to include but not limited to issues at Adam's residence, how Adam treats Linh Stephens (G███'s mom), how G████ is not allowed to talk to Linh whenever Adam is around, how Adam often forgets important events at school, G███ fearing Adam and expressed her fears of him constantly, how Adam often forgets to bring G███s medications to school, then progressed to G████ having multiple death wishes on her dad "so [she] can run away from 'daddy'."

The first issue has been an ongoing issue since G███'s first therapy session. This issue involves G███ sleeping with Adam in the same bed while naked. At the time, it was advised by myself that G███ be allowed to sleep in her own bed and be weaned off of sleeping with both Adam as well as Linh at their respective residences. Linh Stephens has complied but it appears that as of our last session on 05/01/2020 that G███ still continues to sleep naked with her father Adam. This is a continual growing concern as sleeping with any grown man naked, even a father, is not becoming of a young female almost 7 year old. This issue is of even more concern due to the fact that G████ has mentioned that Adam also sleeps naked. G████ was not able to elaborate on this to help me determine if this meant that Adam slept in underwear or full nude. Nonetheless, this is a continual concern and Adam Stephens refuses to comply. Adam also posted publicly on his facebook account pictures of G███ sitting on many old men's laps, half-naked pictures of G███, G███ with makeup on, G███ being transported in slingshot improperly restrained. G████ also disclosed to me that she has been left alone in semi-truck for many hours by Adam. G████ this year 2020 has repeatedly expressed her continual wishes for Adam to die "so [she] can run away from him without him knowing because [she's] scared of him"

The second issue involves the anxiety that G███ displays when she talks to Linh Stephens via phone or facetime whenever G███ is with Adam. I have reviewed several video recordings of Linh's calls to G████ and it is clear that the child is withdrawn and reserved when Adam is next to G████. Upon discussing the issue with G████, it is clear that G███ is fearful of Adam and displays a very high level of anxiety when discussing this topic. I believe that there is a level of emotional abuse that is occurring from Adam which is causing the child to become more reserved when speaking to Linh within Adam's presence only; outside of Adam's presence, G███s very playful and loving to

page 1 / 3

**96 a**

her mother. This is a very clear defense-mechanism and of enormous concern due to the fact that suppressing a child's ability to express herself is extremely detrimental to her emotional stability later in life. It not only affects the child but also affects the mother-daughter dynamic. Of note, G█████ has also mentioned multiple times that she would see that Linh is calling but her father Adam would be seen hanging up on Linh's call and wouldn't let G█████ talk to Linh.

The third issue that G█████ has brought up is that Adam oftentimes will talk bad about Linh or talk about court-related issues in front of G█████. G█████ has made statements that have been said by Adam to include but not limited to "Linh is not your real mother", "Linh is a liar", "I have caught your mother in a lie", and "your mother doesn't love you". Although I feel that G█████ is dealing with this issue extremely well by now, no child should be continually told these things. Upon counseling G█████ she understands that these comments from Adam do not represent the truth. These comments do not seem to affect G█████'s relationship with her mother at this time, but there is concern for how it affects her relationship with Adam Stephens. This issue causes G█████ distress in that G█████ must lie and constantly agree with Adam in order to please him while G█████ is under Adam's care. This act of pretending that Adam is correct in what he says while knowing that these comments are false causes distress and internal struggles for a child.

The fourth issue that G█████ has presented during therapy includes her activities at school during Adam's week and during Linh's week. I do not believe that G█████ yet understands that she never has time to participate in fun extracurricular activities while with Linh is because Linh is tasked with doing the homework, reading assignments, and picking up the general slack that has been dropped while G█████ is with Adam. G█████ often talks about how Adam will "forget" assignments at home, forget books at home, forget important dates for projects, being taken to school on holidays when school is closed, and be dressed wrong for school. She has brought up the fact that she has missed out on activities at school due to being dressed in street clothes when she should have been dressed in uniform. Although grades and being able to participate in activities ultimately have low consequences in passing the class, the emotional and social impact to children of this age are immense. If these activities continue, this will increase the child's risk of being bullied, developing low self-esteem, and overall lack of sense of belonging.

The fifth issue was elaborated by G█████ when discussed. The issue involves Linh Stephens accepting G█████ from Adam Stephens during hand off, and Linh noticing that G█████ smelled of urine. When this subject was brought up to G█████, G█████ stated that Adam many times would promise her baths with "bath bombs", but when Adam "forgets to pick up bath-bombs", he would proceed to not have G█████ bathe for half to a whole week at a time. This is an ongoing issue and not an isolated incident.

The sixth issue that has been brought up by G█████ is her questioning if her father Adam loves her or not. When asking her to explain, she has stated that "daddy would often forget to give me my medications, if you loved someone, why would you forget?" I am paraphrasing as I do not recall the exact verbiage used but this comment was made in

reference to when Adam has forgotten to bring pain medication to G████'s school after her dental surgery. G████ also explains that Adam have oftentimes confused about how much medication to give her for various illnesses.

When discussing the above issues with G████ she has always been afraid to discuss openly about Adam at the beginning of each session and made me promise her to "not tell daddy", due to fear that Adam will somehow find out and she "will be spanked with a belt". G████ states that Adam always wants her to be happy and nothing else. She fears that if she displays any other emotion, that it would make him upset and spank her. I do not know what triggers have made Adam upset enough to spank the child but G████ should never be punished for (1)Loving her mother, (2)Disagreements between Adam and Linh, (3)Displaying normal human emotions such as love, anxiety, sadness, or fear. Adam has been invited to therapy sessions, and during his first visit he was late, proceeded to raise his voice in disagreement to what G████ was saying, and adamantly insisted that G████ does not need to see a psychologist, and would not stop yelling so I had to remove G████ from the room, then asked Adam to calm down but he didn't, so I had Adam removed by threat of police. Adam said he won't show up again because "there is nothing wrong with G████"

I could go on, but I hope that the picture that I have presented is enough to clearly show the undue mental, emotional distress, sexual grooming, that Adam exerted on G████ and how Adam does not have G████s best interests in mind. Adam does not allow the mother to know where or who is babysitting the child, and has done everything he can to undermine the mother-child relationship through deception and negative talk about the mother. Adam does not allow G████ to have a healthy mother-daughter relationship and seems to do everything in his power to destroy their relationship, even resorting to violence(spanking) and anger outbursts. In my professional opinion, the father should not have unsupervised visits with his child and the child would further benefit greatly from limited to preferrably no interaction with Adam Stephens.

*Jim Lovett, LPC*

Jim Lovett, MS, LPC

## GENERAL AFFIDAVIT

STATE OF OKLAHOMA

COUNTY OF TULSA

PERSONALLY came and appeared before me, the undersigned Notary, the within named Jayme Wingo Baker, who is a resident of Tulsa County, State of OKLAHOMA, and makes this his/her statement and General Affidavit upon oath and affirmation of belief and personal knowledge that the following matters, facts and things set forth are true and correct to the best of his/her knowledge;

(Insert Statement)  See Attached

DATED this the 15 day of June, 20 20

Jayme Wingo Baker
Signature of Affiant

SWORN to subscribed before me, this 15 day June, 20 20

Trusty
NOTARY PUBLIC  FN

Kristy Fox
State of Oklahoma
Notary Public

My Commission Expires:
3/30/2021

## GENERAL AFFIDAVIT

STATE OF OKLAHOMA

COUNTY OF Tulsa

PERSONALLY came and appeared before me, the undersigned Notary, the within named Susie Panzer, who is a resident of Tulsa County, State of OKLAHOMA and makes this his/her statement and General Affidavit upon oath and affirmation of belief and personal knowledge that the following matters, facts and things set forth are true and correct to the best of his/her knowledge;

(Insert Statement)  See attached Affadavit

DATED this the 16 day of June, 20 20

Susie Panzer
Signature of Affiant

SWORN to subscribed before me, this 16 day Jun, 20 20

Trusty
NOTARY PUBLIC  FX

Kristy Fox
State of Oklahoma
Notary Public

My Commission Expires:
3/30/2021

# AFFIDAVIT OF Miss Jayme Wingo-Baker-director of MHPS

To whom it may concern,

My name is Jayme Wingo-Baker, I am the director of MHPS, and I work at Miss Helen's Private school and have done so for over 25 years. Miss Helen's Private School is located at 4849 S Mingo Rd, Tulsa, Ok 74146. As the director of Miss Helen's, I have gotten to know G███ S███ throughout the past 3 years and see her nearly daily. I have been able to watch her grow and develop into the child she is today since she started school in fall of 2017.

I, Jayme Wingo-Baker, swear that the information in my sworn statement is truthful to the best of my knowledge.

In the years that G███ has gone to Miss Helen's Private School, there have been several occasions where there were safety concerns while G███ was under the care of Adam Stephens. Upon dad speaking to the school, the term "full custody" was what Adam shared with us he had in 2017 when G███ enrolled for school. As in any case, we ask for a copy of documentation of custody decree, which then was provided, and showed there was "SHARED custody", since divorced, per divorce degree 01/2016. - The following are recurrent patterns of behaviors the last couple of years since G███ got to Miss Helens in 2017.

1. Semi truck - during the fall of 2019, Adam Stephens was very late in picking up G███ from school. Upon arriving to school, he parked his semi-truck on the main road as the truck was too large to fit into the parking lot. Adam called into the school to have G███ escorted to the semi-truck where Adam was parked. Transporting a child in such a vehicle is inappropriate and unsafe in my opinion.

During the months that the students were required to stay at home due to the corona virus, we continued class work through the Zoom app. During Adam's weeks, our staff would often see G███ riding in the cab of a truck without her coursework. We are not sure if this is the Semi-Truck as we cannot see the exterior of the vehicle, but we have continued concern that G███ is indeed being transported in the semi truck. This is a serious concern to our staff at Miss Helens.

2. Poor hygiene and improper dress - during a week that G███ was in the care of Adam Stephens, the school noticed that G███ was wearing the same clothes for nearly a week. This is not an isolated occurrence as she is often seen in poorly fitting, faded, and in clothes that are in poor repair. Mother has brought up if the staff at the school has noticed if G███ has ever smelled of urine during Adam's week, we have not, but we have noticed that G███ has poor hygiene during Adam's week. Additionally, another employee of Miss Helen's, Miss Tara Worley, who takes care of G███ before school, every morning since 2017, often notices that G███ appears at school with dirty clothes or improperly dressed for the day. Miss Tara would often see G███ appear at school during cold weather days without the proper cold weather clothes. This is a moderate concern for neglect.

3. Medical Neglect - 10/25/2018, following G███'s dental surgery, Adam dropped G███ off at school without G███'s pain medications. For most of the day, G███ was in so much pain that she was not able

to tolerate regular school activities. By lunch time, G███ was in continued discomfort and could not eat lunch secondary to jaw pain. The school was not able to get a hold of Adam in order to get G███'s pain medications. Linh and X███ were contacted and ultimately X███ was able to bring in medications with instructions for G███'s pain.

1/13/2020 - G███ was brought to school with a sinus infection. The school was not supplied with the proper medication nor was the school given instructions concerning her illness. Mother was contacted and was able to supply the school with the proper medications and dosages for each medication.

 I, Jayme Wingo-Baker, swear that the information in my sworn statement above is a complete representation of the facts to the best of my knowledge.

# AFFIDAVIT OF Miss Susie Panzer

To whom it may concern,

My name is Susie Panzer, I am a 1st grade teacher for Miss Helen's Private school and have done so for 18 years. Miss Helen's Private School is located at 4849 S Mingo Rd, Tulsa, Ok 74146. As the 1st grade teacher, I get to have close interaction with G██ daily for the majority of the school day. I have been G██'s teacher from August 2019 and continue to be until she starts the 2nd grade in August 2020.

I, Susie Panzer, swear that the information in my sworn statement is truthful to the best of my knowledge.

In the 10 months that I have gotten to teach G██, there have been many school related concerns concerning Adam Stephens.

1. Failure to complete reading assignments - our children are given a yearly goal of 50 books to read at home and test in school. I do not recall the exact number but the majority, >90%, of the books read and passed this year were during mother's weeks. From January until current, there has been 41 books read and only 2 of which were during Adam's week. The attached document highlights the days in which G██ is with Adam and the days in which she is with her mother Linh. As outlined, most of the reading assignments fall on the days that Gr██ is with Linh.

2. Poor parental participation - at Miss Helen's all our children are extremely bright and the staff at Miss Helens strive to push our kids to do the best that they can do. As such, we assign course work to bring home on a weekly basis with the expectation that the child's parents will assist in homework as well as other assigned activities.

   a. September 9, 2019 - During Adam's week, Adam failed to attend a parent/child conference with the school.
   b. December 12, 2020 - Adam no show to G██'s Christmas performance.
   c. January 20, 2020 - Adam Stephens failed to attend G██'s parent teacher conference. To date, it does NOT appear that Adam has attended any parent teacher conference.
   d. March 31, 2020 - during Adam's week, Adam failed to pick up homework packet. Packet was given to mother the following week to finish and return.
   e. March 31 - April 3, 2020 - During Adam's week, G██ failed to attend any of her 3 of 3 zoom meetings.
   f. April 3, 2020 - during Adam's week, Adam failed to turn in and present G██'s science project. This was a semester long project and multiple reminders were sent in the weeks leading up to presentation day.
   g. April 13 to 17, 2020 - during Adam's week, G██ failed to attend 4 of 4 of her assigned Zoom classes.
   h. April 21 2020 - Adam's homework packet is returned with numerous mistakes, unfinished pages, and questions answered that did not follow written instructions.

    i.    May 5 2020 - homework turned in with multiple packets incomplete during Adam's week. Unfinished packets given to mother to finish.

    j.    from March 2020 to current - Adam has failed to complete assigned online homework during all of his weeks to include IXL Math assignments, All The Right Type typing practice, and Coding practice. Of note, in this time frame, Adam also failed to complete several weeks of Spelling city and spelling tests. The weeks that G█████ completed the spelling assignments, records show that she completed all assignments, practice test, and spelling test in less than 12 minutes. It usually takes students an average of 2 hours to complete. It is highly unlikely that G█████ would have been able to complete these assignments in that timeframe.

    k.    Disclaimer - there are too many examples of incomplete work, improperly done work, failure to return homework, failure to return books, and lost books to mention. This pattern of poor parental participation from Adam Stephens is an ongoing issue since the beginning of 1st grade.

3. Tardies - dated 8/27/2019, 10/7/2019, 10/10/2019, 10/14/2019, and 10/23/2019 were all Adam's weeks. The date 10/14/2019 is technically Mother's week but Adam was responsible for dropping off G█████ on that Monday to school.

4. Improper dress - at Miss Helen's, we often send out reminders to parents in the form of weekly newsletters, special event reminders, and text messages. We remind parents to dress children for specific activities such as outdoor water play, swimming lessons, field trips, and picture day. If children do not dress appropriately, they do not get to participate.

    a)    January 21, 2020 - Adam did not dress G█████ in uniform for picture day. Another student's uniform had to be used.

    b)    March 6, 2020 - Adam forgot to dress G█████ in uniform for field trip day. Linh and Xuyen were called but both were >30min from home and would not have made it home on time to deliver clothes. A fellow student's parents let G█████ borrow clothes for the field trip.

    c)    There are numerous other days that Adam has improperly dressed G█████ for school that were not properly documented.

I, Susie Panzer, swear that the information in my sworn statement above is a complete representation of the facts to the best of my knowledge.

# GENERAL AFFIDAVIT

**STATE OF** _Washington_

**COUNTY OF** _Kitsap_

PERSONALLY came and appeared before me, the undersigned Notary, the within named _CARL & HELEN JOHNSON_, who ~~is a~~ are resident~~s~~ of _KITSAP_ County, State of _WASHINGTON_, and makes this ~~his/her~~ their statement and General Affidavit upon oath and affirmation of belief and personal knowledge that the following matters, facts and things set forth are true and correct to the best of ~~his/her~~ their knowledge:

(Insert Statement)
See attached

DATED this the 29th day of _MAY_, 20 _20_

_Carl Johnson    Helen Ea..._
Signature of Affiant

SWORN to subscribed before me, this 29th day _MAY_, 20 _20_

_B. Merleene Cooper_
NOTARY PUBLIC

My Commission Expires:
_03-18-2024_

**104 a**

RE: Linh Tran Stephens and Adam Sylvester Stephens, Sr.

To Whom It May Concern:

We are Carl and Helen Johnson, who were part of the church family of both Adam and Linh Stephens from March 2013 – July 2015, when they attended Peninsula Bible Fellowship, located in Bremerton, WA.  I (Carl) was an Elder of the church at that time, and I (Helen) was, and continues to be the Executive Director of the Pregnancy Resource Services of Kitsap County.

As witnesses of Linh and Adam's interaction, and being involved closely in their lives, we witnessed how Linh single-handedly had to handle her whole household, from working full-time at the ER/Urgent Care, being pregnant (3rd trimester), paying bills, doing chores at home, and running errands because Adam had seizures and many random episodes of "spacing out" and "losing track of time", something he confided with other couples at Bible studies, and asked for prayers for healing. During this time period, Adam was also very open to his medical condition and spoke freely about his struggles with seizures and inability to do many tasks of daily living.

Linh, on the other hand, was forced to carry the weight of her husband without any support from family (who were all in Texas). Because of our friendship with Linh and Adam, we were aware of the struggles Linh faced with caring for Adam. Once Linh gave birth to G███ the burden became even more acute. Given Adam's inability to work, and his frequent outbursts of anger due to medical issues, Linh not only had concerns for herself, but increasing concerns for G███s safety. Despite frequent outbursts, anger, and threats of physical abuse, Linh continued to stay with Adam to help take care of him and his deteriorating health.

Due to poor financial decision making by Adam, Adam and Linh were forced to move into an 18-foot trailer, which he kept across the sound (e.g. Puget Sound) from where Linh worked. Linh and Adam originally lived in a 3-bedroom house, but due to Adam's excessive spending and recreational activities, he spent them into massive debt which resulted in the couple having to live in the trailer. We were convinced that this tiny trailer was no place to raise a baby. The trailer is far too cramped to have a safe sleep area for a baby as co-sleeping has very high risks of sudden infant death, suffocation, or strangulation. There was no room for a crib, rocker, play pen, or safe area for a baby. This is a condition that I (Helen) would be compelled to counsel my clients to avoid if at all possible, as this is NOT a safe place to raise a baby.

Adam eventually agreed to bring the trailer to our side of the sound which is closer to Linh's work place, and did his best to care for G███ during the day. By this time, we realized that Linh needed a more stable living arrangement, and we offered to have her and G███ come live with us. We offered our home for Linh and G███ because Linh would often be kept up by Adam's outbursts. His outbursts would continue through the night and would keep both Linh and G███ up.

When Linh got off work, she would rush home to the trailer to see G███ and once G███ was asleep, and Adam was about to fall asleep, Linh would drive back to our house with G███ When Linh brought G███ to our house from Adam's trailer, we would find that G███s diaper was rarely changed. We would often find that she would often have severe diaper rashes and she looked to have not been cared for throughout the day.

During this period of time, on several occasions, Adam would inform Linh that he was going to take G███ with him on trips to Oregon, California, and Arizona against Linh's will or pleadings. It seemed to us that this was extremely risky, and it certainly disregarded G████'s well-being, especially being separated from her mother. It was additionally risky due to Adam's inability to take care of himself due to frequent seizures. We were aware that Adam would frequently have seizures where he would lose track of time for hours at a time, sometimes lasting 6 hours, where he would sit and stare into space. With this knowledge, we did not understand how he intended on taking care of G███ full-time, without Linh's help, and without our and Linh's supervision.

Despite our concerns and pleadings, Adam did ultimately have guardianship over G███, and we the Johnson's did not.

Since these trips were random and spontaneous, it wasn't unusual for Adam to suddenly show up at our house, without any advanced notice, and drop G███ off saying that he can't *"handle G████"*, and that G███ *"stressed him out too much"*, and then immediately leave. He would drop G███ off without any supplies, nor would he offer any assistance to insure that she would be properly taken care of. He would give us the baby with whatever G████ had on her back and leave. At that point, Linh would have to find a babysitter on her own without Adam's help. (NOTE: The babysitter was either a church friend, us, or her Vietnamese friend.) Adam would proceed to abandon G███ with us and Linh, and disappear from their lives for weeks to months at a time. Since we had heard Adam make comments that he had difficulty handling G███, we had concerns (during his trips) when we and Linh were not available for him to drop G███ off. We had concerns that he would find random strangers to take care of this young child. We had concerns that he would lock her in the trailer while he drives in the Jeep due to annoyance and inability to handle her. We had concerns that he would abandon her on the road because she would stress him out too much. In the end, we are blessed that the people he decided to abandon G███ with was with us, the Johnsons.

G███ was well taken care of during Linh's work by either us or a hired babysitter. Linh herself, despite a short night of sleep, would drive G███ to the babysitter's house, and then pick G███ up herself after work. Adam was nowhere in sight during these times. He was not able to be reached via email or phone during his trips for weeks or months at a time.

To the best of our recollection, these are the events and circumstances we observed during this period of time in the lives of Linh, Adam, and G███.

Sincerely,

*Carl Johnson*
Carl Johnson

*Helen Johnson*
Helen Johnson

Gassaway Law Firm, PLLC



*Attorneys at Law*

1646 South Denver Avenue
Tulsa, Oklahoma 74119
Tel 918.592.6800 | Fax 918.592.1800
www.gassawaylaw.com

April 4, 2019

Honorable Millie Otey
Tulsa County Courthouse
500 S. Denver Ave.
Tulsa, OK 74103

Re:  *Linh Tran Stephens vs. Adam Sylvester Stephens*
     Tulsa County District Court Case No. FD-2015-2228

## ADDENDUM TO PARENTING COORDINATOR REPORT

Dear Judge Otey:

I am the parenting coordinator for Linh and Adam Stephens. I met with the parties March 20, 2019, to address two issues. I issued a report dated March 29, 2019. This is an addendum to that report.

In Issue No. 2 to the prior report, I stated:

> **"ISSUE NO. 2:    Travel in Non-Traditional Vehicle-Father has a "Slingshot", a non-traditional vehicle. Father transports the child in the vehicle, and Mother objects.**
>
> **RECOMMENDATION NO. 2:    Before Father next transports the child in the Slingshot, he should stop by a police department office in the Slingshot and obtain their opinion as to whether the restraint arrangement for the child is legal, and advise the parenting coordinator of the name and telephone number of the officer with whom he spoke (assuming they said it was legal). If the police department says it is not legal, Father should no longer transport the child in such vehicle."**

Since that report, Father provided me with some information concerning the "Slingshot" and the fact Oklahoma (and a few other states) had reclassified its licensing requirements and that a regular driver's license would now allow its operation rather than requiring a

April 4, 2019
Page 2

motorcycle endorsement or license. Father also provided me with a copy of 47 O.S. Section 11-1112 concerning child restraint laws.

Mother, likewise, followed up with other information, including a 2016 Owner's Manual for the Slingshot. That document provides that the Slingshot does not comply with Federal Motor Vehicle Safety Standards, that the vehicle should not be operated with a child safety seat installed and that a passenger should only travel in the vehicle if able to sit with his back against the seat and his feet on the floor.

**RECOMMENDATION:** I am now satisfied that the Slingshot is not a safe vehicle for the transportation of the parties' minor child, and it is my recommendation that Father should not allow the parties' child to ride in the Slingshot.

The parties have ten (10) days from the date of this report to file objections with the Court. In addition, it is the responsibility of counsel to memorialize this report in an order once it has been either adopted, adopted as amended, or rejected by the Court.

Sincerely yours,

GASSAWAY LAW FIRM, PLLC

Kevin T. Gassaway

KTG:rlt

cc:    Linh Stephens
       Adam Stephens
       Harry Champ
       Gilbert Pilkington

IN THE DISTRICT COURT OF TULSA COUNTY
STATE OF OKLAHOMA

COPY

LINH STEPHENS,

DISTRICT COURT
**F I L E D**

JUN 27 2022

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

vs.

ADAM STEPHENS,

Petitioner,

Case No. FD-2015-2228

Respondent.

## NOTICE OF FILING

There is hereby filed with the Tulsa County Court
Clerk an original of the following transcript, Motion
Hearing, held June 1, 2020, held in front of the
Honorable April Seibert.

Dated this 27th day of June, 2022.

Tami Morse, CSR-RPR
Official Court Reporter

**109**

1  **IN THE DISTRICT COURT IN AND FOR TULSA COUNTY**
   **STATE OF OKLAHOMA**
2

3  LINH TRAN STEPHENS,                          )
                                                )
4              Petitioner,                      )
   vs.                                          )  Case No.
5                                               )  FD-2015-2228
   ADAM SYLVESTER STEPHENS,                     )
6                                               )
               Respondent._____            )
7  _____

8

9                   TRANSCRIPT OF PROCEEDINGS

10                          HAD ON

11                       JUNE 1, 2022

12          BEFORE THE HONORABLE APRIL SEIBERT

13   A P P E A R A N C E S:

14   FOR THE PETITIONER:
              Chandler Moxley
15            Attorney At Law
              2642 E. 21st Street, #240
16            Tulsa Oklahoma
     FOR THE RESPONDENT:
17            Gil Pilkington
              Attorney At Law
18            406 South Boulder Avenue
              Tulsa Oklahoma
19   GUARIDAN AD LITEM:
              Stephen Hale
20            Attorney At Law
              320 South Boston Avenue, Ste. 825A
21            Tulsa Oklahoma
     ATTORNEY FOR THE MINOR CHILD:
22            Megan Beck
              Attorney At Law
23            320 South Boston Avenue, Ste. 718
              Tulsa Oklahoma

24

25



IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
STATE OF OKLAHOMA

LINH TRAN STEPHENS,       )
                          )
            Petitioner,   )
                          )
vs.                       )   Case No.
                          )   FD-2015-2228
ADAM SYLVESTER STEPHENS,  )
                          )
            Respondent.   )



DISTRICT COURT
F I L E D

JUN 27 2022

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY



TRANSCRIPT OF PROCEEDINGS

HAD ON

JUNE 1, 2022

BEFORE THE HONORABLE APRIL SEIBERT

**A P P E A R A N C E S:**

FOR THE PETITIONER:
        Chandler Moxley
        Attorney At Law
        2642 E. 21st Street, #240
        Tulsa Oklahoma
FOR THE RESPONDENT:
        Gil Pilkington
        Attorney At Law
        406 South Boulder Avenue
        Tulsa Oklahoma
GUARIDAN AD LITEM:
        Stephen Hale
        Attorney At Law
        320 South Boston Avenue, Ste. 825A
        Tulsa Oklahoma
ATTORNEY FOR THE MINOR CHILD:
        Megan Beck
        Attorney At Law
        320 South Boston Avenue, Ste. 718
        Tulsa Oklahoma

*DISTRICT COURT OF OKLAHOMA - OFFICIAL TRANSCRIPT*

1                            INDEX

2     EXAMINATION                                    PAGE

3              LINH TRAN STEPHENS                      16

4     DIRECT EXAMINATION BY MR. PILKINGTON             16

5     CROSS-EXAMINATION BY MS. MOXLEY                  46

6     REDIRECT EXAMINATION BY MR. PILKINGTON           77

7              BRIDGETT O'BRIAN                        79

8     DIRECT EXAMINATION BY MR. PILKINGTON             79

9     CROSS-EXAMINATION BY MS. MOXLEY                  97

10    CROSS EXAMINATION BY MR. HALE                   101

11              STEPHEN HALE                          105

12    DIRECT EXAMINATION BY MR. PILKINGTON            105

13    CROSS-EXAMINATION BY MS. MOXLEY                 115

14    CROSS EXAMINATION BY MS. BECK                   119

15    REDIRECT EXAMINATION BY MR. PILKINGTON          123

16    RECROSS EXAMINATION BY MS. MOXLEY               126

17    RECROSS EXAMINATION BY MS. BECK                 127

18              ADAM STEPHENS                         129

19    DIRECT EXAMINATION BY MR. PILKINGTON            129

20    CROSS-EXAMINATION BY MS. MOXLEY                 132

21    REDIRECT EXAMINATION BY MR. PILKINGTON          136

22              DAVID BALLARD                         137

23    DIRECT EXAMINATION BY MS. MOXLEY                137

24    CROSS-EXAMINATION BY MR. PILKINGTON             147

25    CROSS EXAMINATION BY MR. HALE                   154

*DISTRICT COURT OF OKLAHOMA - OFFICIAL TRANSCRIPT*

| | | |
|---|---|---:|
| 1 | REDIRECT EXAMINATION BY MS. MOXLEY | 165 |
| 2 | MARIA DEL ROSARIO CHICO FERRAEZ CHICO VIETTI | 170 |
| 3 | DIRECT EXAMINATION BY MS. MOXLEY | 170 |
| 4 | XUYEN HA | 179 |
| 5 | DIRECT EXAMINATION BY MS. MOXLEY | 179 |
| 6 | CROSS-EXAMINATION BY MR. PILKINGTON | 187 |
| 7 | REDIRECT EXAMINATION BY MS. MOXLEY | 193 |
| 8 | JERI TOWNSEND | 195 |
| 9 | DIRECT EXAMINATION BY MS. MOXLEY | 195 |
| 10 | | |

11                         EXHIBITS

| | EXHIBITS | DESCRIPTION | PAGE |
|---|---|---|---:|
| 12 | | | |
| 13 | PETITIONER'S EXHIBIT 2 | PHOTOGRAPH | 66 |
| 14 | OFFERED | | |
| 15 | PETITIONER'S EXHIBIT 2 | | 67 |
| 16 | ADMITTED | | |
| 17 | PETITIONER'S EXHIBIT 5 | PHOTOGRAPH | 68 |
| 18 | OFFERED | | |
| 19 | PETITIONER'S EXHIBIT 5 | | 69 |
| 20 | ADMITTED | | |
| 21 | PETITIONER'S | DOCUMENT | 70 |
| 22 | EXHIBIT 15 OFFERED | | |
| 23 | PETITIONER'S EXHIBIT 7 | PHOTOGRAPH | 75 |
| 24 | OFFERED | | |
| 25 | | | |

```
 1    police.
 2              THE COURT:  She did.  And Mr. Pilkington, I don't
 3    need her to say the magic word that you just said.  She
 4    called in a welfare check based on what she just told me.
 5              MR. PILKINGTON:  Okay.  Thank you, Your Honor.
 6              THE COURT:  Next question.  Ms. Stephens, when he's
 7    done asking you questions we're going to take our first
 8    break.  All right?
 9              THE WITNESS:  If you need to.
10              THE COURT:  I probably need to.
11              THE WITNESS:  I don't need to.
12              THE COURT:  All right.  We're going to let him get
13    done, and then, we're going to take our first break.
14    Q.  BY MR. PILKINGTON:  Are you aware that DHS recommended
15    that you have a mental health evaluation?
16    A.  I was told by my lawyer, correct, not by her -- not by
17    DHS worker.
18    Q.  And do you object to doing a mental health evaluation?
19    A.  I object all the way to the Supreme Court.
20    Q.  And why do you object to having a mental health
21    evaluation?
22    A.  Because there is no need and I don't have extra money
23    laying around.  I don't have money.
24              THE COURT:  Extra money.  Got it.
25              THE WITNESS:  I'm sorry.
```

*this is proof that I always say objections declared all the way to U.S. Supreme Court, yet DHS courts fabricated "no objections" to harm me*

1          THE COURT:  It's okay.  Sometimes I just want to

2     make sure my court reporter gets what you're saying.  Okay?

3     So that's why I'm interrupting sometimes.

4          Go ahead, Mr. Pilkington.

5     Q.   BY MR. PILKINGTON:  Have you ever asked Grace to keep

6     secrets?

7     A.   Never.

8     Q.   Have you ever asked Grace to not tell Mr. Stephens,

9     Adam, anything?

10    A.   No.

11    Q.   And your only objections to a psychiatric exam are that

12    you don't feel it's needed and you don't have the funds to

13    pay for it; is that correct?

14    A.   It's not my feeling.  It's, actually, objective.  There

15    is no need from me, from my husband who live with me 24/7,

16    from my mom who raise me up since I was a child, from every

17    neighborhood, from the church family members, from

18    everybody.  None of them think I need a mental health eval,

19    oh, and my primary care doctor doesn't think I need one,

20    either.

21          MR. PILKINGTON:  I'm going to object on that.  That

22    is hearsay.

23          THE WITNESS:  I have proof.

24          THE COURT:  Well, sustained.  That last statement

25    is hearsay.  It's all hearsay, but the previous answer will

1   A.   Correct.

2   Q.   Okay.  And have these allegations affected how and when

3   you can see your child?

4   A.   It cause me to not be able to see her or hear from her

5   at all since December 3rd.  It makes me sad that she been

6   robbed of her brother and me for six -- almost six months.

7          MR. PILKINGTON:  Your Honor, if she could speak up.

8   She starts strong and then...

9          THE COURT:  Yeah.

10          THE WITNESS:  Sorry.

11          THE COURT:  Ms. Stephens, it's okay.  You're really

12   soft-spoken.  I am, too.  Right on the microphone for me.

13   Try to speak up if you can because I really need to hear

14   you.  Okay?

15          She said she hasn't seen her or had any contact

16   since December.  I'll let you ask another question.

17   Q.   BY MS. MOXLEY:  Okay.  And the fact that you haven't

18   seen your child in almost six months how does that make you

19   feel as a mother?

20   A.   I feel scared for her being with the abuser.  And then,

21   I'm also sad.

22          MR. PILKINGTON:  Objection to the characterization.

23          THE COURT:  I don't think it's a response to the

24   question, either.

25          I'm going to sustain the objection and you can

```
 1          MR. PILKINGTON:  Objection.  Somewhat calls for
 2     speculation on what Grace can, actually, do.
 3          THE COURT:  The answer will stand.  You can
 4     cross-examine her on that issue.
 5     Q.  BY MS. MOXLEY:  And at your house does Grace have an
 6     appropriate bedroom?
 7     A.  Yes, she does.
 8     Q.  Can you turn to Exhibit 2, please, and tell the Court
 9     what this document is?
10     A.  This is Grace -- wait, 2?  Sorry.  I went to the wrong
11     one.
12     Q.  Yeah, 2.
13     A.  This is toys upstair for Grace and James.
14          MS. MOXLEY:  Your Honor, I'd move to admit
15     Exhibit 2 into evidence.
16          THE COURT:  Any objection, Mr. Pilkington?
17          MR. PILKINGTON:  We need a time frame of when the
18     picture was taken, Your Honor.
19          THE COURT:  Sure.  Ms. Moxley, you can put us a
20     time frame in there?
21     Q.  BY MS. MOXLEY:  Do you know when this picture was
22     taken, Dr. Stephens?
23     A.  Probably -- let's see maybe, July -- sorry.  About
24     July, August, 2021.
25     Q.  So when Grace was still living with you?
```

```
 1   A.  Yes, around that sometime.

 2            MS. MOXLEY:  I move to admit this into evidence,

 3   Your Honor.

 4            THE COURT:  Any objection, Mr. Pilkington?

 5            MR. PILKINGTON:  No, Your Honor.

 6            THE COURT:  Any objection, Ms. Beck?

 7            MS. BECK:  No.

 8            THE COURT:  Mr. Hale?

 9            MR. HALE:  No, ma'am.

10            THE COURT:  We'll show it admitted.

11   Q.  BY MS. MOXLEY:  Do you still have all of these toys for

12   Grace at your home?

13   A.  Yes, I'm waiting for her return.  I left it -- or James

14   messed it up.  I'm sorry.

15   Q.  Ms. Stephens, have you ever seen the movie "Taken"?

16   A.  Long time ago, when it first came out in theater, I

17   think, 2009.

18   Q.  And you haven't watched it since?

19   A.  No.

20   Q.  Have you shown Grace the movie "Taken"?

21   A.  No.

22   Q.  And when Bridgett O'Brian came to your house were you

23   cooperative with her investigation?

24   A.  I was very cooperative.

25   Q.  Can you turn to Petitioner's Exhibit 5, please, and
```

1       Those are my rulings as to those particular

2   exhibits.

3           MS. MOXLEY:  Okay.

4   Q.  BY MS. MOXLEY:  Ms. Stephens, in your diary you said

5   that on November 30th, 2021, Adam called you via FaceTime.

6   Did you already have a Protective Order in place at that

7   time?  yet April Seribert heard this and gave him SOLE CUSTODY

8   A.  Yes.

9   Q.  Did Adam ever violate that Protective Order, again?

10  A.  Yes.

11  Q.  Does Adam's willingness to violate a Protective Order

12  give you confidence in his ability to follow court orders?

13  A.  No.

14          MR. PILKINGTON:  Your Honor, I'm going to object.

15  It calls for evidence not -- information that's not in

16  evidence.  There's nothing in the file that suggests that

17  he has violated a Protective Order.

18          MS. MOXLEY:  She said she filed a police report.

19          THE COURT:  The Protective Orders aren't an issue

20  for me today and whether or not he will follow the court

21  orders to me have no relevance to this show cause as to

22  whether the emergency will continue.  I don't find this

23  question to be relevant.

24          So I will sustain the objection.

25  Q.  BY MS. MOXLEY:  Then, Ms. Stephens, can you look at the

*DISTRICT COURT OF OKLAHOMA - OFFICIAL TRANSCRIPT*

1   A.  Yes.

2   Q.  What type of training have you accomplished in that

3   eight years?

4   A.  During my time at DHS we go through regular trainings

5   all the time.  Before we start we have a three-month --

6   before we start taking cases we have a three-month training

7   called CORE.

8   Q.  And in the last years have you received supplemental

9   education?

10  A.  Yes.

11  Q.  Okay.  And how often do you take those courses?

12  A.  Several times a year.

13  Q.  Okay.  Have you had any special training with regard to

14  minor children and their views?

15  A.  Yes, I work for a specialized unit.

16  Q.  And what's the specialized unit?

17  A.  We do shock and heinous investigations, such as sexual

18  abuse, child death, shaking baby, broken bones, things like

19  that.

20  Q.  And how many active cases do you normally carry at a

21  time?

22  A.  Around 12.

23  Q.  If you were to have to estimate, how many cases have

24  you investigated in the last eight years?  Just a ballpark

25  number.

1    A.  Over, probably, 400.

2    Q.  Okay.  Have you ever testified in court before?

3    A.  Yes.

4    Q.  Has that court admitted you as an expert for purposes

5    of doing your reports?

6    A.  Yes.

7        MR. PILKINGTON:  Your Honor, I would ask that the

8    witness be admitted as a -- considered as a witness.

9        THE COURT:  Ms. Moxley, what's your position?

10       MS. MOXLEY:  I mean, she hasn't given us any

11   documentation showing that she's had all of these trainings

12   or anything like that.  So I do object at this time.

13       THE COURT:  Do you want to weigh in, Mr. Hale, and

14   Ms. Beck at all?

15       MR. HALE:  Judge, I believe she's qualified as an

16   expert to testify in this case.  She has a length of

17   service.  She's investigated, probably by my math, at least

18   hundreds of cases.  So I think she's qualified as an

19   expert.

20       THE COURT:  The term expert is -- scenario is not

21   the typical term of art that we would deal with where we

22   need a curriculum vitae and we're talking about educational

23   experience.

24       Simply qualifying her as an expert who works as an

25   investigator with DHS and prepares reports, I am going to

1    qualify her as an expert for that limited purpose and

2    because of that the report has already been admitted.

3         The statements that she's testified to form the

4    basis of her opinion to substantiate and unsubstantiate and

5    I will accept those statements for that purpose.  So I'll

6    overrule your objection, Ms. Moxley.

7         Go ahead, Mr. Pilkington.

8    Q.   BY MR. PILKINGTON:  Let's go back.  Your recommendation

9    on page 8 was that Ms. Stephens complete a mental health

10   assessment.

11   A.   Yes.

12   Q.   Why did you make that recommendation?

13   A.   Due to her behavior during my investigation.

14   Q.   Okay.  And you said part of the -- what were some of

15   those behaviors?  I think you mentioned coaching Grace is

16   one.

17   A.   Yes.

18   Q.   Were there others?

19   A.   Yes.

20   Q.   And what were those?

21   A.   Constant phone calls, text messages, just the way that

22   she would just lie, completely disregard what was going on.

23   Just not really on the same page as anybody at all, ever.

24   Q.   And when you say -- you said "lie", what were you

25   referencing?

1    qualify her as an expert for that limited purpose and

2    because of that the report has already been admitted.

3         The statements that she's testified to form the

4    basis of her opinion to substantiate and unsubstantiate and

5    I will accept those statements for that purpose.  So I'll

6    overrule your objection, Ms. Moxley.

7         Go ahead, Mr. Pilkington.

8    Q.   BY MR. PILKINGTON:  Let's go back.  Your recommendation

9    on page 8 was that Ms. Stephens complete a mental health

10   assessment.

11   A.   Yes.

12   Q.   Why did you make that recommendation?

13   A.   Due to her behavior during my investigation.

14   Q.   Okay.  And you said part of the -- what were some of

15   those behaviors?  I think you mentioned coaching Grace is

16   one.

17   A.   Yes.

18   Q.   Were there others?

19   A.   Yes.

20   Q.   And what were those?

21   A.   Constant phone calls, text messages, just the way that

22   she would just lie, completely disregard what was going on.

23   Just not really on the same page as anybody at all, ever.

24   Q.   And when you say -- you said "lie", what were you

25   referencing?

1    A.   Lying about where her son was living.  Lying to the

2    Court in the deprived docket about giving me the right

3    phone number to reach her son.  Just a lot of things like

4    that.

5    Q.   Okay.  Now, in your investigation did it include

6    looking for James, her son?

7    A.   Yes.

8    Q.   And what did you determine where James lives?

9    A.   In Texas.

10   Q.   Okay.  So if she was to testify he lives here, that

11   would be inaccurate.  Would you agree?

12   A.   At the time of my investigation, yes.  I don't know

13   about now.

14   Q.   Okay.  That's okay.

15        And with regard to Grace and coaching.  Why do you

16   believe that she was coaching Grace?

17   A.   Grace told me she was.

18   Q.   Okay.  Did Grace tell you anything about a diary?

19   A.   Yes.

20   Q.   What did she tell you?

21   A.   Well, when I went to the home Ms. Stephens was wanting

22   to show me the diary.  She also had, like, some of Grace's

23   homework to prove that the handwriting would match.  The

24   diary said things, like, she didn't love her dad and she

25   only loved her mom.

1        I went to the school to ask Grace about it and she

2    said that mom made her practice several times and then they

3    would write it in the diary.

*contrary to what GS said and all GS' counselors and doctors said*

4    Q.   Okay.  Did she -- did Grace relate practicing anything

5    besides just writing in the diary?

6    A.   Yes.  The voice recordings as well.

7    Q.   Okay.  And do you believe the child was being honest

8    with you?

9    A.   Yes.

10   Q.   Okay.  Now, did Grace relate to you any -- seeing any

11   movies?

12   A.   Yes.

13   Q.   And what did she relate to you?

14   A.   She said that one of the movies she saw was a man

15   raping a little boy.  She said he had squishy skin.  The

16   faces were blurred out and he had pulled the boy's pants

17   down and was raping him.

*child was 8, told counselor 9 months later*
*during visit she didn't know what "rape" means*
*this was voice recorded also*

18   Q.   Okay.  Did she provide more detail than -- did she

19   provide a lot of detail so it was -- let me back up.

20       Do you believe her account was truthful?

21   A.   Yes.

22   Q.   Okay.  Why do you believe Grace was making a truthful

23   statement?

24   A.   She was very worried about her mom finding out that she

25   had told the truth.  I just -- I just believed her.  I

1    mean, there was no reason for her to lie.  I showed up

2    unannounced at her school that day.

3    Q.   Okay.  Did she relate to you having to watch any other

4    movies?

5    A.   I believe she said she watched "Taken".

6    Q.   Now, "Taken" is a -- it's a movie about a daughter

7    being kidnapped, if I remember right, correct?

8    A.   I believe so.  Yes.

9    Q.   And how did Grace relate to you about having to watch

10   these?

11   A.   She told me when I saw her at school.

12   Q.   No, I mean, how did she feel?  Did she like watching

13   them?  Was she scared?

14   A.   She said they were scary.

15   Q.   And did she ever relate to you -- let me back up.

16        How many times did you interview Grace?

17   A.   Twice.

18   Q.   Okay.  At the first interview did Grace tell you

19   anything about secrets?

20   A.   During the first interview?  I don't know.  I don't

21   remember, but she -- I don't remember which interview it

22   was, but, yes.

23   Q.   And what did she say about secrets?

24   A.   I believe, like, I asked her if anyone had her keep

25   secrets.  She started to say something about her mom and

1   then stopped herself.

2   Q.   Okay.  And then, if I remember right, I'm reading from

3   your report on page 9.  You said when you asked about

4   secrets that her mother asked her to keep from dad she

5   looked down at the floor and stated, I can't remember.

6   A.   Yes.

7   Q.   Okay.  Now, you've investigated a large number of

8   these.  When a child looks away and says, I don't remember,

9   and is nervous about answering, what does that tell you as

10  a worker?

11  A.   It could be a couple of different things.  It could be

12  that they don't want to talk about it or that they've been

13  told not to talk about it.

14  Q.   Okay.  In your opinion, was that based on the fact that

15  Grace had been told not to talk about it?

16  A.   At that time I didn't know, but, yes.

17  Q.   Okay.  So you, actually, looked at the journal when you

18  were visiting with Linh, correct?

19  A.   Correct.

20  Q.   Okay.  And did you have any conversations with Linh

21  about going to the school, specifically, on December 13th?

22  A.   About her going to the school?

23  Q.   Yes.  About Linh going to the school.

24  A.   If it was around the time that Grace was put in

25  custody, yes, I told her not to.

1   Q.   Okay.  And do you know if she attempted to go to pick

2   up Grace after you told her that?

3   A.   The principal told me that, yes, she did.

4   Q.   Okay.  And what did you -- and you had advised Linh not

5   to go to the school because there was already orders

6   prohibiting her to have contact?

7   A.   Correct.

8   Q.   And it's your understanding that she ignored those and

9   went to the school?

10  A.   Yes.

11  Q.   Okay.  Did she state that those orders didn't exist or

12  they were a lie?

13  A.   She was in denial about Grace being in custody.  Yes.

14  Q.   Okay.  And what did you do at that point?

15  A.   I had Grace with me.  I was taking her to a foster

16  home.

17  Q.   Okay.  Was Grace scared about -- let me back up.

18       Did Grace make any statements about going back to

19  her mother?

20  A.   She did not want to go back to her mom.

21  Q.   She say why?

22  A.   She was afraid that mom was going to be mad at her.

23  Q.   Okay.  And that would be about what she has told you?

24  A.   Yes.

25  Q.   Okay.  Now, did Linh talk to you about a prior

*DISTRICT COURT OF OKLAHOMA - OFFICIAL TRANSCRIPT*

**128**

1    investigation done by Maria Chico?

2    A.   Yes.

3    Q.   And do you remember what -- did she tell you anything

4    about it?

5    A.   She said that the supervisor had deleted a bunch of

6    Maria's investigation.

7    Q.   Did she present any evidence to you that that had

8    occurred?

9    A.   No.

10   Q.   Okay.  Now, you've been with DHS for eight years.

11   A.   Yes.

12   Q.   Have you ever seen a DHS supervisor essentially

13   eliminate the report of a caseworker?

14   A.   No.

15   Q.   Okay.  Now, in your investigation did you review the

16   prior report?

17   A.   Yes, and I tried to reach out to Maria Chico, but she

18   was off at that time.

19   Q.   Okay.  So outside of reading the report you've really

20   not had a chance to talk to Maria?

21   A.   No, not really.

22   Q.   Okay.  And let's see here.  Did you find in your

23   investigation any evidence that Adam Stephens had abused

24   his child?

25   A.   No.

1    Q.   Now, we keep hearing reports that -- from Ms. Stephens

2    that Adam requires Grace to sleep naked with him.  Did you

3    find any evidence of that?

4    A.   No.

5    Q.   Okay.  Did you find any allegations that Adam had

6    abused or harassed Ms. Stephens?

7    A.   Just what Ms. Stephens told me.

8    Q.   But nothing else besides that?

9    A.   Right.

10   Q.   Okay.  And did she present anything to you besides her

11   oral statements?

12   A.   No.

13   Q.   Okay.  Did she present any evidence that Mr. Stephens

14   had strangled a dog in her presence?

15   A.   She mentioned it a few times.

16   Q.   But outside of her oral there's -- she presented

17   nothing?

18   A.   Correct.  I asked Grace about it and she denied it.

19   Q.   Okay.  Ms. Stephens also reported Mr. Adam has been

20   striking Grace with a belt.

21   A.   Correct.

22   Q.   Did your investigation touch on that, on the issue of

23   punishment?  **This is a lie of caseworker, contrary to GS' diary w counselor**

24   A.   Grace did not tell me that Adam hit her with a belt.

25   Q.   Okay.  Now, when Grace -- did Grace talk to you about

*DISTRICT COURT OF OKLAHOMA - OFFICIAL TRANSCRIPT*

1   how she's disciplined at Adam's house?

2   A.   Yes.  I can't remember what she said, though.

3   Q.   Okay.  Was it in the form of non-corporal punishment?

4   A.   Right.

5   Q.   Okay.  And you had an opportunity to look at Linh's

6   home?

7   A.   Yes.

8   Q.   Did you find anything inappropriate about the home?

9   A.   No.

10   Q.   Okay.  And you had an opportunity to visit Adam

11   Stephens' home?

12   A.   Yes.

13   Q.   Did you find anything inappropriate about that?

14   A.   No.

15   Q.   Okay.  Did you find it unusual -- let me restate it.

16         Did you have difficulty contacting the, I guess

17   it's the grandparents who are looking after James, as far

18   as a phone number and all that, initially?

19   A.   Right, the first number I was given was incorrect.

20   Q.   Okay.  Did that surprise you?

21   A.   Yes.

22   Q.   Why did that surprise you?

23   A.   It just didn't -- I didn't know why they would need to

24   give me a fake number.

25   Q.   Okay.  And as far as you know is James in a safe

1    environment right now?

2    A.   Last I knew he was in Texas.

3    Q.   Okay.  And do you believe that James lives in Texas?

4    A.   Yes.  There was no evidence at her house of James

5    living there that I saw.

*contrary to admitted-later evidence of videos of caseworker in Linh's house showing child's clothes and toys and bed*

6    Q.   Okay.  When you were doing your investigation, when you

7    met with Ms. Stephens -- I'm sorry with Linh, was she

8    cooperative?

9    A.   Yes.

10   Q.   Okay.  And when you talked to her about what -- did you

11   ever relate to her --

12          MR. PILKINGTON:  Let me start over, Your Honor.

13   Q.   BY MR. PILKINGTON:  Did you ever relate to Linh what

14   Grace had told you?

15   A.   Yes.

16   Q.   And what was Linh's response?

17   A.   She became very angry and started accusing me of being

18   the one who was lying.

19   Q.   Okay.  And to your knowledge have you seen that

20   behavior before when someone is confronted with

21   allegations?

22   A.   Yes.

23   Q.   And is it totally -- I mean, is it -- have you ever

24   been in court and someone has proven you to be untruthful?

25   A.   No.

1    capacity?

2    A.   Yes.

3    Q.   And you still hold by that finding?

4    A.   Yes.

5    Q.   Okay.

6         MR. PILKINGTON:  Your Honor, I'm going to pass the

7    witness.

8         THE COURT:  Ms. Moxley?

9         MS. MOXLEY:  Your Honor, I'd like to go outside the

10   scope.

11        THE COURT:  So we don't need to call her back?

12        MS. MOXLEY:  Right.

13        THE COURT:  I'm not sure there is an outside the

14   scope for -- well, there might be.

15        MS. MOXLEY:  I mean, I don't want to be limited to

16   what Mr. Pilkington asked.

17        THE COURT:  Go ahead.  I'll allow you to expand the

18   scope if there's any need to.

19        MS. MOXLEY:  Okay.

20                       CROSS-EXAMINATION

21   Q.   BY MS. MOXLEY:  Ms. O'Brian, whose custody was Grace in

22   during your investigation?

23   A.   They had fifty-fifty custody.

24   Q.   But was she, primarily, with dad at the point of your

25   investigation or were they still doing fifty-fifty?

1    A.   She -- I believe she was still doing fifty-fifty, but

2    there was a Protective Order.

3    Q.   Okay.  And you said that you went to Dr. Stephens' home

4    as part of your investigation, correct?

5    A.   Uh-huh.

6    Q.   And at that time were you -- you were aware of the

**yet no referral to FBI even after Mother demanded it, why because Mother is innocent**

7    allegations of child pornography, correct, of Grace being

8    exposed to adult sexuality?

9    A.   Yes.

10   Q.   And did you look at any of Dr. Stephens' devices to see

11   if there was a history of accessing sites that would show

12   adult sexuality to a child?

13   A.   No.

14   Q.   Why didn't you do that?

15   A.   I didn't need to.  I mean, I'm not a police officer.  I

16   can't do that anyway.  We go by the word of the kid.  So,

17   that would be enough.

18   Q.   Okay.  And you said that you've testified -- or you've

19   done 400 cases; is that right?

20   A.   Yeah, about.

21   Q.   So you think that you're pretty good at determining

22   when a child is truthful or not?

23   A.   Typically, yes.

24   Q.   Do even truthful children believe in Santa Claus?

25   A.   Probably, yeah.

1  Q.  And is that because their parents tell them that Santa

2  Claus is real?

3  A.  Uh-huh.

4  Q.  So a child's reality can be shaped by what a parent is

5  telling them, correct?

6  A.  Yes.

7  Q.  So some of Grace's reality could be shaped by

8  Mr. Stephens, right?

9  A.  Right, and the fact that she was being coached.

10  Q.  Did you see any signs of pornography in Dr. Stephens'

11  home?

12  A.  No.

13  Q.  Yet you substantiated that allegation anyways?

14  A.  Yes.

15  Q.  Are you a mandatory reporter?

16  A.  Mandated reporter.  Yes.

17  Q.  Did you report Dr. Stephens to any law enforcement

18  agency to get that kind of forensic investigation going or

19  not?

20  A.  Yes.  There was a police report made and they decided

21  not to investigate.

22  Q.  So the police decided that there was not enough to

23  investigate, correct?

24  A.  Correct.

25  Q.  Okay.  Did you review any documents when writing your

1  report?

2  A.  Which kind of documents, ma'am?

3  Q.  Like, did you -- I'll withdraw that question.

4       Have you had any mental health training?

5  A.  Through -- yes, I have my BSW.  We do mental health

6  training at work constantly, so...

7  Q.  Are you a psychiatrist?

8  A.  No, ma'am.

9  Q.  Are you a psychologist?

10  A.  Nope.

11  Q.  Are you a licensed professional counselor?

12  A.  No.

13  Q.  So you really aren't qualified to determine whether or

14  not Dr. Stephens needs mental health help?

15  A.  I mean, I think anybody would be able to observe that.

16  Q.  But you're not an expert in that field?

17  A.  Yes.

18  Q.  And in your experience is it common for an eight-year

19  old to know the term raping?

20  A.  Yes.

21  Q.  It is?

22  A.  Yes.  I mean, I work with a lot kids.  Yes.

23  Q.  That's fine.  You've answered my question.

24       MS. MOXLEY:  I have no further questions, Your

25  Honor.

1   first and last name and spell your last name for me.

2           THE WITNESS:  Yes, David Ballard, B-A-L-L-A-R-D.

3           THE COURT:  Thank you, Mr. Ballard.  Will you raise

4   your right hand.

5           Do you swear or affirm the testimony you're about

6   to give will be the truth, the whole truth, and nothing but

7   the truth, so help you God?

8           THE WITNESS:  I do.

9           THE COURT:  Ms. Moxley, you may inquire.

10          MS. MOXLEY:  Okay.

11                  DAVID BALLARD,

12          Having been duly sworn, testified as follows:

13                  DIRECT EXAMINATION

14  Q.  BY MS. MOXLEY:  Mr. Ballard, what do you do for a

15  living?

16  A.  I'm a CLEET licensed private investigator and an

17  instructor.

18  Q.  And how long have you been doing this type of work?

19  A.  Ten years.

20  Q.  And can you turn to Petitioner's Exhibit Number 13.

21  It's in that notebook for you.  Can you identify this

22  document, please.

23  A.  Yes, this is my CV or resume.

24  Q.  And does -- is this CV up-to-date and accurate with all

25  your qualifications?

1    A.   It is.  I still have some that I add because some of

2    the training I go through is sometimes weekly, so it's the

3    most up-to-date one.

4    Q.   You mentioned training.  What type of training do you

5    do regularly to do your field of work?

6    A.   I teach and train on crime scenes, evidence,

7    documentation recovery, testing, including biological

8    evidence, visual evidence, forensic evidence.  And then, I,

9    also, attend a lot of training on investigating abuse,

10   domestic violence and human trafficking.

11   Q.   Have you ever testified in court before?

12   A.   Yes, I have.

13   Q.   Approximately, how many times?  You can guesstimate.

14   A.   At this point, probably, closer to a hundred times I've

15   testified.

16        MS. MOXLEY:  Your Honor, at this time I'd move to

17   admit Petitioner's Exhibit 13 into evidence.

18        THE COURT:  Any objection?

19        MR. PILKINGTON:  To the exhibit, no.

20        THE COURT:  Any other objections, counsel?

21        MS. BECK:  None from me, Judge.

22        MR. HALE:  None from me, Judge.

23        MS. MOXLEY:  I, also, move to qualify Mr. Ballard

24   as an expert in his field.

25        THE COURT:  Of private investigating?

1      MS. MOXLEY:  Yes.

2      MR. PILKINGTON:  Your Honor, I'm -- I would like to

3  voir dire the witness.

4      THE COURT:  Well, let me start here.  First, I'll

5  admit 13 without objection.  This will be admitted.

6          What expertise is he going to be -- I'm sure he's

7  going to be telling me about what he did in his

8  investigation and what he found in his investigation.  So

9  I'm trying to think what I need, because I'm having a hard

10  time how I qualify a private investigator.

11      MS. MOXLEY:  He did a forensic sweep of

12  Ms. Stephens' devices and I think he's going to testify to

13  what he found in that.

14      THE COURT:  I don't think you've qualified him as

15  an expert, but I do think he can testify to those things

16  based --

17      MS. MOXLEY:  Okay.  I'm fine with that.

18      THE COURT:   -- on his curriculum vitae.  So you may

19  proceed.

20      MR. PILKINGTON:  Your Honor, the reason I didn't

21  have a problem, obviously, this is his document.  I didn't

22  care about that.

23          But as I scan through it I don't see training that

24  would relate to, in essence, being a computer or a cell

25  phone expert.  I've gone through it.  I'm familiar with a

1    lot of the training because I'm retired military.  And see

2    almost -- see very -- I mean, there's firearm training.

3    There is a variety of other training skills, but I don't

4    see something in here that would, specifically, go to his

5    ability to --

6              THE COURT:  She hasn't asked him the question.  She

7    just asked to qualify him as an expert in investigation,

8    but not qualify him at this point.

9              But if he -- she asks the question if he's

10   reviewed ten thousand computers over the course of his

11   career, then, I'm probably going to let him testify about

12   it.  So we'll see where it goes.  At this point 13 is in.

13             Ask your next question.

14   Q.   BY MS. MOXLEY:  Do you regularly do forensic

15   evaluations of people's data on phones, computers, et

16   cetera?

17   A.   Yes.

18   Q.   And how do you do that?

19   A.   There's several different versions.  One, is the

20   initial search of the device itself just as it sits.  Then

21   after that, sometimes we do what can we call a soft search

22   or initial search and we use a base system like Cool Muster

23   or --

24             THE COURT:  You're going to need to spell that for

25   me.

*DISTRICT COURT OF OKLAHOMA - OFFICIAL TRANSCRIPT*

```
 1    A.  It was in late April.  I'd have to look back for the
 2    exact date.  It was in late April.
 3    Q.  So about two months ago?
 4    A.  Yes, ma'am.
 5    Q.  And the iPad and the other iPhone were in March of
 6    2022, approximately, three months ago?
 7    A.  Yes, ma'am.
 8    Q.  When you -- when you were extracting this data on the
 9    Parabaum system what does that look like?
10    A.  So it contains -- there's a laptop that is,
11    specifically, only for that that's hooked to its own
12    router, modem just for security purposes.
13         As the device originally backs up, and then, it
14    will begin to do a forensic download, which means grabbing
15    everything from the time the phone was initially powered up
16    and brought online.
17         And as it's extracting it, it's putting it onto an
18    external hard drive.  This is -- specifically, the hard
19    drive we use is static resistant, shockproof, waterproof
20    because we don't want to lose the data or damage the device
21    itself because it could become evidence at some point.
22    Q.  Does this Parabaum system recover deleted data as well?
23    A.  It does.
24    Q.  So when you ran Ms. -- Dr. Stephens' devices on the
25    Parabaum system what did you do after the report was
```

1    generated?

2    A.    Then, I began reviewing -- based on Dr. Stephens' and

3    I's initial conversation, I was -- understood that there

4    was either a report or an accusation, I don't want to put

5    the wrong term on it, but something to the effect of,

6    potentially, child pornography or inappropriate items being

7    reviewed on one device and maybe cast or mirrored onto

8    another device.

9    Q.    And you reviewed all three Parabaum reports, correct?

10   A.    Yes, ma'am.

11   Q.    Is it uncommon for you to have your associate hook the

12   device into the computer to run the report, but you review

13   the report later?

14   A.    Yes, that happens from time-to-time.  But I, based off

15   the way that I do it as the investigator or the case agent

16   for that case, I review every report and document.

17   Q.    And the report tells you everything that's on the

18   device, correct?

19   A.    Yes.

20   Q.    So you have knowledge of everything that was accessed

21   on Dr. Stephens' devices, correct?

22   A.    Yes.

23   Q.    And when you did your review of the Parabaum reports

24   did you find any evidence that Dr. Stephens had looked at

25   pornography or child pornography on her devices?

1  A.  On all three reports I found no information that led to

2  any pornographic sites or material or even images on all

3  three devices; nothing like that.  *the false accusations against Mother Linh was exposed 06/01/2022 yet still courts deprived of all forms of contacts w G.S. since 12/03/2021*

4  Q.  Did you find any evidence that she had watched the

5  movie "Taken" on any of her devices?

6  A.  After -- that was brought up to me as of yesterday,

7  more recent.  I went back and reviewed, again, looking for

8  two specific things.

9       One, the device will tell you even with the

10  extraction if another device is linked, it will say,

11  casting and mirroring.  And it will, also, give the site

12  that it's moving the information.

13       I saw several on the iPhone XS.  I saw that it had

14  been cast, but it showed music or remote for Roku, but no,

15  no sites that were tied to it that even contained video

16  images or movies and that was the only device that showed

17  any kind of connection like that.  But, no, I did not see

18  anything, I'm sorry, on the movie "Taken" on there.

19            MS. MOXLEY:  Nothing further, Your Honor.

20            THE COURT:  Mr. Pilkington?

21                      CROSS-EXAMINATION

22  Q.  BY MR. PILKINGTON:  You just testified that none of the

23  devices shown -- showed where they had accessed either a

24  video or movie?

25  A.  Not to the casting part, but there was nothing with the

1   A.   I'm there.

2   Q.   And c

3   A.   This

4   Q.   And d

5   A.   Partl

6   Q.   And i

7   the 2020,

8   Mr. Stephe

9   A.   Yes a

10  Q.   What

11  A.   Initi

12  the case.

13  reviewed

14  at times.

15  Q.   Is everything --

> **It never went to hearing because I granted you your dismissal-proposal after your client Adam Stephens & you Gil Pilkington promised to sign DHS-proposed CONDUCT ORDER to STOP abusing our daughter (sleeping naked w child while child also naked, hit her, custodial interfering, medical/dental/school neglect, endanger her locked in semitrucks, illegal transport her in slingshots per Parental Coordinator Kevin Gassaway, no seatbelts, etc), because you knew DHS investigator Maria Chico at that time was willing to testify on the stand that her Supervisor Shasta Miller truncated her report that supposed to SUBSTANTIATED father's abuses (none from mother). My decision for dismissal against dad based solely on the fact that GAL & Gil & Adam promised to sign Conduct Order promising to STOP abusing Grace —NOT because DHS concerns weren't true/relevant/ concerning. It is still violated until now, thus it is VERY relevant.**

16        MR. PILKINGTON:  Your Honor, I'm going to object to

17  the witness and this testimony.  This matter was before

18  this Court in 2020.  There was a -- on a previous

19  application for emergency custody.  It never went to

20  hearing.  There was a -- there was a dismissal by

21  Mrs. Linh -- Dr. Linh Stephens' attorney.  We all agreed on

22  it.

23        I'm not certain why something that occurred two

> **We all agreed on it, but Mr. Gil Pilkington & his client Adam Stephens did NOT keep their end of the deal/promise—this is unethical and dishonesty/deceit needed to be reprimanded by the bar because per 07/08/2020 OSCN.net judge said to have agreed conduct order signed and after numerous reminders/ calls its Final Motion to sign Conduct Order filed 11/09/2020 but still not yet upheld/signed by Gil Pilkington & Adam even until now (07/11/2022 two years later)**

24

25

1          THE COURT:  Ms. Moxley, I think you've addressed

2     this earlier, but go ahead and, again, why do you believe

3     this report from 2020, is relevant to this hearing today?

4          MS. MOXLEY:  Well, I haven't gotten very far in my

5     questioning, Your Honor, but I do think the relevance will

6     come out and show that Ms. Chico did have concerns for

7     Mr. Stephens' parenting; did not have concerns for

8     Ms. Stephens' parenting.  As well as she does know both of

9     these parties and parts of her report were deleted at that

10    time.  And, again, this is -- this seems very retaliatory.

11         THE COURT:  No, I'll -- Mr. Hale, I'll let you

12    respond.  I haven't given you a chance to.

13         MR. HALE:  Judge, my only position is this, Judge.

14    I don't -- I'm not saying Ms. Chico didn't participate in

15    the investigation and was not involved with the family,

16    because I believe she was, but that was back in 2020.  We

17    have a new emergency, competently new set of facts.  If she

18    has done some investigation regarding this most latest and

19    greatest I think that's pertinent.  Otherwise, I don't

20    think it's relevant.

21         THE COURT:  I -- Ms. Stephens.  I have heard and I

22    have allowed some testimony with respect to the 2020

23    allegations, but based on your previous argument that you

24    believe it is the catalyst or retaliatory.  But I don't

25    need to know the details, specifically, of that

1    investigation.  If this witness -- I don't find it relevant

2    to whether there's an emergency based on the allegation of

3    2021.

4         So if you want to question her about anything as

5    it relates to that, I don't -- I am sustaining the

6    objection as to relevance for me introducing this entire

7    report and her testimony about it because it has been -- at

8    this point it's cumulative because it's been in the record.

9         I know there was an allegation.  I know it was,

10   ultimately, unsubstantiated.  I know the FBI looked at it.

11   So you've made your argument as to retaliatory.  How is

12   this witness going to give me new information.

13        MS. MOXLEY:  Your Honor, she can testify as to

14   Linh's parenting capability.  She did the investigation and

15   she can testify whether or not Dr. Stephens was a safe

16   parent.

17        THE COURT:  That is of record because that --

18   that -- they had joint custody before the show cause.  It

19   is not about whether or not today, or back in 2021.  It's

20   about whether she has information today.  And if her

21   information is from her report in 2020, it is not relevant.

22        Does she have any information today, or is her

23   testimony going to be about her involvement in 2020, and

24   that report?

25        MS. MOXLEY:  I mean, I do think it's relevant that

1    the 2020, report was tampered with and deleted.

2              THE COURT:  To the finding of show cause here?  Is

3    there an allegation --

4              MS. MOXLEY:  It goes to the retaliatory nature of

5    this.  I mean, Mr. Stephens had an unsubstantiated report

6    against Ms. Chico's initial thoughts and advice.  And then,

7    all of a sudden he files a similar claim against my client.

8    I do think it's relevant.

9              THE COURT:  I'm sorry.  My ruling is it is not

10   relevant.  Unless you're alleging that Mr. Stephens,

11   somehow, tampered with an internal DHS document and I don't

12   take it to mean that that is your allegation.  I think the

13   testimony has been that there's a supervisor over at DHS

14   who has tampered with this report.  Is that what I'm

15   getting?

16             MS. MOXLEY:  Yes.  Yeah.

17             THE COURT:  All right.  This is not relevant to my

18   decision today.  So I will sustain the objection.  If you

19   have other questions for her that relate to this

20   investigation you may proceed with those questions.

21   Q.  BY MS. MOXLEY:  Ms. Chico, have you reviewed any other

22   reports regarding Dr. Stephens or Mr. Stephens or have you

23   only reviewed your own?

24   A.  I have only reviewed my own.

25             MS. MOXLEY:  I have nothing further.

```
1        THE COURT:  Anything based on that?

2        MR. PILKINGTON:  No, Your Honor.

3        THE COURT:  Thank you.  You may step down, ma'am.

4        I will grant you an exception to my ruling,

5   Ms. Moxley, for the record.

6        Your next witness.

7        MS. MOXLEY:  I'm sorry.  What'd you say, Judge?

8        THE COURT:  I'm going to grant you an exception or

9   an objection continuing to my not allowing your witness.

10       MS. MOXLEY:  Yes.  Thank you.

11       THE COURT:  Your next witness, please.

12       MS. MOXLEY:  May I step out and call Mr. Lovett?

13       THE COURT:  Yes, ma'am.

14       MS. MOXLEY:  I mean, are you going to make an

15   objection to his testimony?

16       MR. PILKINGTON:  Well, we are going to object that

17   he has no recent information.  I mean, the testimony has

18   been that he hasn't seen the child in two years.

19       THE COURT:  At this point in time, Ms. Moxley, make

20   your offer of proof about -- I have heard testimony of

21   Mr. Lovett and I understand he was the previous child

22   counselor.  So tell me what you anticipate his testimony

23   will be.

24       MS. MOXLEY:  He can testify to Linh's parenting

25   capacity.  He can testify to Adam's parenting capacities
```

*Also see next page, where suddenly Mr. Lovett is no longer on the witness stand as mother demanded after Stephen Hale threaten and blackmailed Chandler Moxley attorney of mother in the hall*

1    and I think that's relevant to the show cause today.

2          THE COURT:  Your position?

3          MR. HALE:  And if I could speak with Ms. Moxley.  I

4    have one question of her outside.  If it would be okay.

5          THE COURT:  Yes, you may.

6          MR. HALE:  Then, I'll be happy to share my opinion.

7          THE COURT:  Yes, and we're going to go off the

8    record.

9          MR. HALE:  Thank you.

10          (A recess was taken, after which the following

11          proceedings were had:)

12          THE COURT:  Dr. Ha, have a seat on the witness

13    stand for me, sir.  All right, if you would you raise your

14    right hand.

15          Do you swear or af[...]

16    to give will be the truth,

17    the truth, so help you God?

*suddenly Mr. Lovett is no longer on the witness stand as mother demanded after Stephen Hale threaten and blackmailed Chandler Moxley attorney of mother in the hall which FOIA request to Sheriff Department refused to hand it over, email said "it no longer there... despite your FOIA request was within 6 months"; next witness below*

18          THE WITNESS:  Yes.

19          THE COURT:  Thank you, sir.  Can you spell your

20    last name for me?

21          THE WITNESS:  H-A.

22          THE COURT:  Thank you, sir.  And what is your first

23    name, sir?

24          THE WITNESS:  Xuyen, X-U-Y-E-N.

25          THE COURT:  Thank you, sir, you may inquire.

CERTIFICATE

STATE OF OKLAHOMA    )
                     )  SS.
COUNTY OF TULSA      )

I, Tami Morse, Official Court Reporter, within and for the State of Oklahoma, do hereby certify that on June 1, 2022 before the Honorable APRIL SEIBERT, in the District Court of Tulsa County, State of Oklahoma, I reported in machine shorthand the proceedings had and the evidence given, and the above and foregoing is a full, true, correct and complete transcript of the proceedings had and testimony given, taken at said time and place.

IN WITNESS WHEREOF, I have hereunto I have set my hand and official seal this June 27, 2022.

*Tami Morse, RPR-CSR*
TAMI MORSE, RPR-CSR
OFFICIAL COURT REPORTER

**Tami Morse**
State of Oklahoma
Certified Shorthand Reporter
CSR # 1973
My Certificate Expires 12-31-22



**Appendix Q**

OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA

September 24, 2025

Linh Tran Stephens
1964 Ashley River Rd Ste B
Charleston, South Carolina

**Re:    Linh Stephens v. Tulsa County District and Judges**
**OCRE Complaint No. CR-23-175-PA**
**OCRE Complaint No. CR-23-176-PA**
**OCRE Complaint No. CR-23-177-PA**
**OCRE Complaint No. CR-23-193-PA**

Dear Dr. Stephens:

In addition to housing the Office of Civil Rights Enforcement, the Office of the Attorney General also represents, defends, and counsels state agencies. Due to the allegations and the parties involved in your complaints, a determination has been made that the Office of Civil Rights Enforcement should recuse itself from the matters you have presented. This recusal enables you to seek other avenues of recourse while eliminating any risk of potential or actual conflicts that could impact your claims.

Enclosed please find a Dismissal issued by OCRE which now concludes this matter with our office.

Sincerely,

Eric Di Giacomo
Eric Di Giacomo
Acting Chief
Office of Civil Rights Enforcement

EDG/sbk
Encl.



### OKLAHOMA ATTORNEY GENERAL
### OFFICE OF CIVIL RIGHTS ENFORCEMENT

_____

## ORDER OF DISMISSAL

| To: | | From: | |
|---|---|---|---|
| **Linh Tran Stephens**<br>**1964 Ashley River Rd Ste B**<br>**Charleston, South Carolina** | | | **Oklahoma Attorney General**<br>**Office of Civil Rights Enforcement**<br>**15 West 6th Street, Suite 1000**<br>**Tulsa, OK 74119** |

| Complaint/Charge No. | OCRE Representative | Telephone No. |
|---|---|---|
| **OCRE Complaint No. CR-23-175-PA**<br>**OCRE Complaint No. CR-23-176-PA**<br>**OCRE Complaint No. CR-23-177-PA**<br>**OCRE Complaint No. CR-23-193-PA** | **Eric Di Giacomo**<br>**Acting Chief**<br>**Office of Civil Rights Enforcement** | **(405) 521-3921** |

**THE OFFICE OF CIVIL RIGHTS ENFORCEMENT ("OCRE") IS CLOSING ITS FILE AND DISMISSING THE ABOVE-REFERENCED COMPLAINT FOR THE FOLLOWING REASON:**

☐   The Complaint was not filed with the OCRE within 180 days of the last alleged discriminatory practice.

☐   The facts alleged in the Complaint fail to set forth a violation of any of the statutes enforced by the OCRE.

☐   The OCRE has received a request from the Complainant for a Dismissal and Notice of Right to Sue.

☐   The OCRE is unable to conclude that the information obtained in its investigation establishes reasonable cause that a discriminatory practice has been committed in violation of the Oklahoma Anti-Discrimination Act. This does not certify that the Respondent has not committed a discriminatory practice or is in compliance with the Act.

☐   The OCRE adopts the findings and conclusions of the Equal Employment Opportunity Commission.

☒   Other: Other:   (Recusal – State Agency.) _____

_____

## NOTICE OF RECONSIDERATION

Pursuant to the **Oklahoma Anti-Discrimination Act, Okla. Stat. Ann. tit. 25, § 1502(c)(d),** the Complainant, within thirty (30) days after receiving a copy of an order dismissing the complaint, may file with the Attorney General an application for reconsideration. This does not apply to persons claiming to be aggrieved by a discriminatory housing practice.

On behalf of the OCRE:

_Eric Di Giacomo_ _____        September 24, 2025

**Eric Di Giacomo**                                                          _____
**Acting Chief**                                                                            *(Date Mailed)*
**Office of Civil Rights Enforcement**

Tulsa County District and Judges

## 152 a

Appendix R

PAG LETTER TO SCOTUS RE IAJ

DATE: SEPTEMBER 17, 2025

IAJ Document Version Control Log
_____

Document ID: IAJ-PAG-20250918-002-PUB
Initial Release Date: 2025-09-18
_____

Version History
_____

Version | Date       | Author(s)        | Summary of Changes
--------|------------|------------------|-----------------------------
v1.0    | 2025-09-18 | PAG              | Initial release
_____

Classification: PAG (Private Attorney General)
Access Level: Public Release
_____

THE PRIVATE ATTORNEY GENERAL
15209 Blue Gum Court, Saratoga, CA 95070
Tel: 408-898-4470    Email: cyrus@metafusion.net

17 September 2025

PERSONAL COMMUNICATION

THE CLERK IS DIRECTED TO
FORWARD THIS LETTER TO THE
PERSONAL ATTENTION OF EACH
JUSTICE

For the personal attention of:
      Samuel A. Alito, Jr.,
      Amy Coney Barrett,
      Ketanji Brown Jackson,
      Neil M. Gorsuch,
      Elena Kagan,
      Brett M. Kavanaugh,
      Sonia Sotomayor,
      Clarence Thomas,
  and  John G. Roberts
Justices of the United States Supreme Court
1 1st St NE, Washington, DC 20543

**<u>Establishment of the missing independent investigative mechanism of international law and treaty compliance under the UNCAT and the Istanbul Protocol</u>**

Dear Justices,

I write as a private attorney general and in the public interest to again identify an on-going controversy with a national footprint, and present evidence-based cases for judicial reform. Reform of the judicial process is mandated by the absolute prohibition of torture and cruel, inhuman, or degrading treatment under *jus cogens* in a manner consistent with this Court's jurisdictional limits, constitutional obligations, national authority, precedents and established canons.

In 2014, the Committee against Torture (CAT) identified significant gaps in the United States' domestic implementation of the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (UNCAT) and urged concrete reforms (CAT/C/USA/CO/3-5). A key finding by the CAT was the non-equivalence of domestic law compared to the direct enforcement of the UNCAT. Another is the absolutely impermissible deviation of the United States with the

1

Five years after my first pleading on disability and my request to this Court for Safe Harbor and disability accommodation which you ignored, this Court has taken a baby step with *A.J.T. v. Osseo Area Schools*, but without benefit to me.

*Tudor v. Whitehall*, 2d Cir. 2025 cast shame on public statements by U.S. Courts and precedents on ADA accommodation in federal courts, which remain human rights violations of the highest order, and actionable without deadline. In contrast, the mature pedigree and breadth of human rights principles (1948) and treaties contrast with the late emergence and insufficiency of our domestic precedents on human rights, confirming my thesis. The 'not invented here' reluctance of our judiciary to engage with human rights proper and leverage the outstanding work of human rights experts to enhance our domestic laws, precedents and judicial process, reflects poorly on the leadership in human rights reported by the United States in its 1994 Initial Report to the CAT, on behalf of all three branches of government.

When the IAJ opened its electronic complaint submission on August 4, 2025, six complainants registered and began entering their complaints. The next day eight complainants registered and began entering their complaints. As of midnight PST on September 14, 2025, the IAJ confirms that ninety-three complainants had registered around the country and were entering or adding to their complaints. Third party reports about the human rights violations of other victims identified twenty-five alleged victims of courts as of September 13, 2025. The rate of complaints is likely to increase more rapidly, probably in spurts. This is because the IAJ receives reliable information from complainants of the existence of numerous other potential victims whom they intend to refer to the IAJ. The IAJ is informed that for a very long time, the People have been vocal, and have also organized in groups around the country, to address the deficiencies in the judicial process. Violation of human rights within the judicial process is therefore a national concern. Is this Court able to recognize a Constitutional crisis if it were in plain sight[13]?

The PAG has been made aware of human rights treaty cases pending before this Court, other than his own. The submissions by these persons to this Court are presented under the only procedure that this Court makes available to them, and which unduly burdens them and is inconsistent with international Protocol. Each submission contains a human rights complaint that is recognized by the Istanbul Protocol, and constitutes a treaty complaint under the original Article III jurisdiction of this Court when a constitutional crisis in present. For that reason, this Court is advised that each of these

---

[13] Katherine Koretski and Lawrence Hurley, Justice Amy Coney Barrett says country is not in a 'constitutional crisis', NBC News Sept 4, 2025 -- https://www.nbcnews.com/politics/supreme-court/amy-coney-barrett-says-country-not-constitutional-crisis-bari-weiss-rcna229238
-- "I don't know what a constitutional crisis would look like,"

your rules. This must be arranged for intake of a human rights complaint, and for protection from harm and for disability and other accommodations, without the rigors of your formalities, and obstructions by your procedures, until your court has the necessary procedures for screening and handling such communications without causing more harm. Thus your clerks must receive training and be required to flag submissions for screening according to human rights criteria.

The duty of treaty compliance remains a non-delegable judicial duty under these circumstances. I speak from five years of personal experience with your clerks, who have obstructed numerous human rights complaints, and discarded requests for disability accommodations and protection from continuing harm. Your recall that your clerk even obstructed my letter to the Judicial Conference.

I continue to accumulate serious injuries from my torture by state and federal judges and remain at death's door. I inform you that your Court has no demonstrable competence in the integration of human rights into the judicial process, and has not demonstrated any interest in treaty compliance by our nation's judges. For this purpose, your Court requires an expansion of resources and impeccable training in the integration of human rights into the judicial process. This must be integrally combined with the insights and monitoring from an independent National Human Rights Institution that will be a mirror for your integration of human rights protocols and standards required for implementation and enforcement of human rights in the judicial process.

Since we have repeatedly revisited the subject, I will not repeat my stance on your code of ethics which, as you and the public are well aware, urgently requires revision as commemorated in my filings, and must include consistency with world standards that integrate human rights as the core of ethics, and require judicial discipline for violations. Punishment of prohibited acts by judges is a requirement of the UNCAT.

Sincerely yours,

Cyrus Hazari

*cc: IAJ, CAT, Special Rapporteur on UNCAT, Special Rapporteur on Independence of Judges*

*attachment: January 2025 proposal to collaboratively create the IAJ*

  

Appendix S

XXXXXXXXXX@gmail.com>

---

## RE: [EXTERNAL]: Expedited transcripts requests for JD-2021-270 both 12/07/21 and 12/08/21

1 message

---

**Woodworth, Allen** <Allen.Woodworth@oscn.net>        Wed, May 25, 2022 at 8:31 AM
To: XXXXXXXXXX@gmail.com>

Judge Dreiling approved your request.

Here is the docket with the minutes and the orders of the hearing.

Filing announcement did not happen due to ORDER RELEASING CHILD(REN) FROM EMERGENCY CUSTODY.

Court Reporter was never requested so no transcripts were made.

*Without a court reporter, there is no official record. Without a record, truth is suppressed, appellate review is impossible, and no lawful deprivation of parental or property rights can occur.*

---

**From:** XXXXXXXXXX@gmail.com]
**Sent:** Friday, May 13, 2022 3:06 PM
**To:** Woodworth, Allen <Allen.Woodworth@oscn.net>
**Subject:** [EXTERNAL]: Expedited transcripts requests for JD-2021-270 both 12/07/21 and 12/08/21

Good afternoon,

I would like to have an **expedited order of transcripts** for all __JD-2021-270__ hearings on **12/07/21 and 12/08/21 and any other hearings I wasn't made aware of**. Thank you so much, and may God bless you with health and happiness!

Sincerely,

Linh Stephens, D.O.

---

CAUTION: This email originated outside of the Oklahoma State Courts Network. Please do not open attachments or click links unless you recognize the sender and know the content is safe.

---

**3 attachments**



Linh Stephens <linhstephens7@gmail.com>



## URGENT copy of what was signed in JD court please

**Erica Parks** <erica@ericaparkslaw.com>
To: Linh Stephens <linhstephens7@gmail.com>

Wed, May 11, 2022 at 9:36 PM

Hi Linh,

Please see attached.  This is the only document you signed in JD court.

Thank you,

## Erica Parks

Attorney at Law



ERICA PARKS
— LAW OFFICE —

2021 South Lewis Avenue

Suite 335

Tulsa, Oklahoma 74104

Phone:  918-902-0507

**Mother never signed
any waivers!**

**CONFIDENTIALITY NOTICE:** The information contained in this e-mail message may be privileged, confidential, and/or protected from disclosure by the attorney-client, attorney work product, and/or other legal privilege and is intended only for the use of the individual or entity named. If the reader of the message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this e-mail message is prohibited. If you have received this communication in error, please notify us immediately by e-mail and delete the original message. Thank you.

[Quoted text hidden]

 **Notice of Rights:Directive (Stephens).pdf**
366K

**158**

# IN THE DISTRICT COURT OF TULSA COUNTY
## JUVENILE DIVISION, STATE OF OKLAHOMA

In the Matter of: _____     )
_____         )
                                          )     JDH _2024_ - _270_
_____         )
Alleged Deprived Child(ren)               )

### NOTICE OF RIGHTS and
### DIRECTIVE TO PARENT, LEGAL GUARDIAN OR CUSTODIAN
(10A O.S.§ 1-4-203)

This is an Emergency Custody hearing. Your child(ren) has/have been taken into protective custody. The Court will determine whether facts exist that are sufficient to demonstrate to the Court there is **reasonable suspicion** that the child is in need of immediate protection due to abuse or neglect, or that the circumstances or surroundings of the child are such that continuation of the child in the child's home or in the care or custody of the parent, legal guardian, or custodian would present an imminent danger requiring the court keep your child in the emergency custody of DHS.

You are notified of the following:

a.  You have the right to testify and present evidence at court hearings.

b.  You have the right to be represented by an attorney at the court hearings. If you are indigent and request an attorney, one will be appointed to represent you.

c.  There are consequences if you do not attend all court hearings held in this case. These consequences may include the court entering an order in which you **LOSE CUSTODY OF YOUR CHILD(REN) OR YOUR RIGHTS AS A PARENT MAY BE TERMINATED.**

d.  You have the absolute right to appeal any appealable order or judgment of the Court. To appeal, you must file a Petition in Error with the Oklahoma Supreme Court within thirty (30) days of the date the Order was entered.

You are **ORDERED** to complete the **Declaration of Kinship Persons** form that has been provided to you in Court and list the names, addresses and phone numbers of any Parent(s), whether known or alleged, grandparents, aunts, uncles, brothers, sisters, half-siblings and first cousins and any comments about their fitness as a potential placement of the child(ren). If no such relative exists, you must list any other relatives or other persons whom the child(ren) has had a substantial relationship or who may be a suitable placement for the child. You must complete this form and provide it to the Court and DHS today.

**Failure to identify a parent or relative in a timely manner may result in the child(ren) being placed in a non-kinship placement. Failure to truthfully provide information or comply with the Court's requirements could result in perjury charges, fines or contempt of court.**

Given to the undersigned parent/guardian/custodian
on this __7__ day of __Dec_____, 20_21_.

_____
**JUDGE OF THE DISTRICT COURT**

_____     _____
PARENT/GUARDIAN/CUSTODIAN (Print)    PARENT/GUARDIAN/CUSTODIAN (Sign)

White – court file      Canary – Parent

6035 (9-15)

159

## IN THE DISTRICT COURT IN AND FOR TULSA COUNTY, OKLAHOMA

**No. JD-2021-270**
**(Juvenile Deprived:**
**Juvenile Deprived)**

IN THE MATTER OF: STEPHENS, G▮▮▮

PD- ATTY FOR M/C

Filed: 12/03/2021
Closed: 12/08/2021

Judge: JD Docket A

### Parties

STEPHENS, ADAM SYLVESTER SR , Father

S▮▮▮▮▮, G▮▮▮ , Juvenile Deprived

STEPHENS, LINH TRAN , Mother

### Attorneys

| Attorney | Represented Parties |
|---|---|
| PUBLIC DEFENDER(Bar # ) 500 W ARCHER ST. TULSA, OK 74103 | STEPHENS, G▮▮▮ |

### Events

| Event | Party | Docket | Reporter |
|---|---|---|---|
| **Tuesday, December 7, 2021 at 8:30 AM** INITIAL SHOW CAUSE HEARING(SHC) | STEPHENS, G▮▮▮ | JDH Docket A | |
| **Tuesday, January 4, 2022 at 8:30 AM** FILING ANNOUNCEMENT (SHC) | STEPHENS, G▮▮▮ | JD Docket A | |

### Issues

For cases filed before 1/1/2000, ancillary issues may not appear except in the docket.

**Issue # 1.**

Issue: Juvenile Deprived (JUVDEP)
Filed by:
Filed Date: 12/03/2021

**Party Name:**

**Disposition Information:**

**160**

**Juvenile Deprived:** STEPHENS, G▮▮▮                              Pending.

## Docket

| Date | Code | Count | Party | Serial # | Entry Date | User Name | | |
|------|------|-------|-------|----------|------------|-----------|---|---|
| 12-03-2021 | TEXT | 1 | | 117670780 | Dec 3 2021 2:21:52:743PM | OSCN\QuencyMajed | - | $ 0.00 |

JUVENILE DEPRIVED INITIAL FILING.

| 12-03-2021 | JUVDEP | - | | 117670781 | Dec 3 2021 2:21:52:763PM | OSCN\QuencyMajed | Realized | $ 0.00 |

JUVENILE DEPRIVED

| 12-03-2021 | APLI | - | STEPHENS, G▮▮ | 117671733 | Dec 3 2021 2:54:23:087PM | OSCN\QuencyMajed | - | $ 0.00 |

APPLICATION TO TAKE MINOR CHILD(REN) INTO EMERGENCY CUSTODY
*Document Available at Court Clerk's Office (#1050637954)*

| 12-03-2021 | AFD | - | STEPHENS, G▮▮ | 117671753 | Dec 3 2021 2:54:36:600PM | OSCN\QuencyMajed | - | $ 0.00 |

CHILD PROTECTIVE SERVICES AFFIDAVIT
*Document Available at Court Clerk's Office (#1050637950)*

| 12-03-2021 | OEC | - | STEPHENS, G▮▮▮ | 117671756 | Dec 3 2021 2:55:00:473PM | OSCN\QuencyMajed | - | $ 0.00 |

ORDER TO TAKE MINOR CHILD(REN) INTO EMERGENCY CUSTODY
*Document Available at Court Clerk's Office (#1050637946)*

| 12-06-2021 | OACE | - | STEPHENS, G▮▮ | 117676032 | Dec 6 2021 9:31:03:423AM | OSCN\QuencyMajed | - | $ 0.00 |

ORDER APPOINTING ATTORNEY - PD FOR M/C
*Document Available at Court Clerk's Office (#1050639622)*

| 12-07-2021 | CTFREE | - | STEPHENS, G ▨ | 117686968 | Dec 7 2021 8:48:47:797AM | OSCN\QuencyMajed | - | $ 0.00 |

JUDGE CARTER. MATTER COMES ON FOR INITIAL SHOW CAUSE HEARING. PARTIES PRESENT: LINH STEPHENS (NM), DALE WARNER / MRS. PARKER (ATTY'S FOR NM), ADAM STEPHENS, SR (NF), GIL PILKINGTON (ATTY FOR NF), PEGGY HADDOCK (ATTY FOR M/C), LYNNETTE MCKELVEY (DHS LIASION), KIM JANTZ (A.D.A.)

**Lies**

ICWA DOES NOT APPLY. MINOR CHILD IS CURRENTLY IN A TRADITIONAL FOSTER HOME IN TULSA. ATTORNEY'S REPORT THERE IS A PROTECTIVE ORDER IN PLACE BETWEEN NM AND NF PO-21-3843. BOTH PARTIES THROUGH THEIR ATTORNEY'S WAIVE THE RIGHT TO A SHOW CAUSE HEARING. DHS REPORTS THE G.A.L. (STEPHEN HALE) WANTS TO SUSPEND FAMILY TIME WITH NM. NF IS ON A PROTECTIVE ORDER AND UNTIL THAT IS SETTLED NF DOES NOT HAVE FAMILY TIME. ATTY FOR M/C REQUESTS THERAPEUTIC FAMILY TIME WITH NM. COURT DOES NOT ORDER FAMILY TIME IN REGARD TO THE G.A.L IN THE FD CASE AND THE PENDING PROTECTIVE ORDER. DHS REPORTS NM HAS A SECOND CHILD AND WILL NOT GIVE DHS ANY INFORMATION ON THAT CHILDS WHEREABOUTS. NM PROVIDED DHS WITH THE PHONE NUMBER OF THE FAMILY MEMBER THAT HAS THE SECOND CHILD IN TEXAS. MINOR CHILD TO REMAIN IN THE EMERGENCY CUSTODY OF DHS. CASE IS SET ON 1/4/22 @ 8:30AM FOR FILING ANNOUNCEMENT. PARTIES RECOGNIZED BACK.

| 12-07-2021 | CEM | - | STEPHENS, G ▨ | 117687445 | Dec 7 2021 9:14:05:860AM | OSCN\QuencyMajed | - | $ 0.00 |

EMERGENCY CUSTODY HEARING ORDER
📄 *Document Available at Court Clerk's Office (#1050639649)*

| 12-07-2021 | EAA | - | STEPHENS, ADAM SYLVESTER SR | 117687457 | Dec 7 2021 9:14:58:463AM | OSCN\QuencyMajed | - | $ 0.00 |

ENTRY OF APPEARANCE - GILBERT PILKINGTON, JR - ATTY FOR ADAM STEPHENS (NF)
📄 *Document Available at Court Clerk's Office (#1050639645)*

| 12-07-2021 | NO | - | STEPHENS, LINH TRAN | 117687462 | Dec 7 2021 9:15:58:760AM | OSCN\QuencyMajed | - | $ 0.00 |

NOTICE OF RIGHTS AND DIRECTIVE TO PARENT, LEGAL GUARDIAN OR CUSTODIAN (10A O.S.§ 1-4-203)
📄 *Document Available at Court Clerk's Office (#1050639641)*

| 12-07-2021 | NO | - | STEPHENS, ADAM SYLVESTER SR | 117687466 | Dec 7 2021 9:16:10:410AM | OSCN\QuencyMajed | - | $ 0.00 |

NOTICE OF RIGHTS AND DIRECTIVE TO PARENT, LEGAL GUARDIAN OR CUSTODIAN (10A O.S.§ 1-4-203)
📄 *Document Available at Court Clerk's Office (#1050639637)*

| 12- | O | - | STEPHENS, G ▨ | 117705831 | Dec 8 2021 :43:077PM | OSCN\KodyeSteele | - | $ 0.00 |

IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
STATE OF OKLAHOMA



DISTRICT COURT
F I L E D
DEC 0 8 2021
DON NEWBERRY, Court Clerk
STATE OF OKLA, TULSA COUNTY

IN THE MATTER OF:

Steph◼◼◼ : C◼◼◼ DOB: ◼◼◼-13        CASE NO. JD-21-270



Alleged Deprived Child(ren).

## ORDER RELEASING CHILD(REN) FROM EMERGENCY CUSTODY

ON THE 8th day of December , 2021 this case comes on for hearing for
Release of Child(ren) from the Emergency Custody of the Department of Human
Services ("DHS"). The following appear in person    Bridget O'Brien CWS III
_____ for DHS;  ___Kim Jantz _____ as legal counsel representing
the State of Oklahoma; _____ as legal counsel representing
the child(ren).  The Court being fully advised in the premises and having heard the
stipulations and evidence presented, FINDS AND ORDERS:

1.    The court ordered emergency custody of the child(ren) be placed with DHS on
the    3rd    day of  Dec  , 2021.  The emergency custody hearing
was held on  7th    day of  Dec  , 2021 where in the Court continued
emergency custody of the child(ren) with DHS.

2.    Although emergency removal from the home was determined to be necessary
to protect the health, safety or welfare of the child(ren), it is not necessary that
removal and emergency custody continue for the following reason(s):

  _x_ a.    conditions of custody in the home and with the individual with
whom the child(ren) reside(s) are adequate to safeguard the child(ren) from risk
of harm to the child(ren)'s life, physical health, and mental well-being.

  ___ b.    provision of service or other arrangement other than removal of the
child(ren) is reasonably available to adequate to safeguard the child(ren) from
risk of harm to the child(ren)'s life, physical health and mental well-being.

  ___ c.    the completed investigation has revealed that the allegations of
abuse or neglect cannot be confirmed.

**163**

*Below is untrue because mom always would OBJECT to placing her child under abusive biological father and would always CONTEST to any allegations against her. Mother wasn't invited to this hearing*

_x_ d OTHER. Emergency Protective Order 21-3843 was dismissed

e. the District Attorney's Office has determined that a Petition will not be filed for court intervention.

There are no objections by the parties for the proposed release of the child(ren) from emergency custody.

IT IS THEREFORE ORDERED that the above-named child(ren) be released from emergency custody of the Department of Human Services this date.

IT IS FURTHER ORDERED that the above-named child(ren) be released to _Adam Stephens_ , natural father, ~~without~~ DHS supervision.

Martha Rupp Carter 12/8/2024
JUDGE OF THE DISTRICT COURT

**164**



Case No. JD-21-270

IN THE DISTRICT COURT OF TULSA COUNTY
STATE OF OKLAHOMA
JUVENILE DIVISION



IN THE MATTER OF:

G◇◇◇ S◇◇◇◇        DOB: 7/24/2013        }
                                       }
                                       }    JD-21-270
                                       }
                                       }    Date:    12/7/2021
                                       }    Judge:   DREILING -A

<div style="border:2px solid red; color:red;">

*** **100% of statements made by Bridget O'brien are FALSE and cannot be proven by Bridget, while mother can prove convicted felon Bridget is extremely unreliable witness with videos and pictures of Bridget in mother's house***

</div>

Alleged Deprived Child(ren).

**EMERGENCY CUSTODY HEARING ORDER**

**NOW,** on this ___7TH___ day of ___DECEMBER___ , 20 _21_ , the following appearances were made and proceedings held:

**APPEARANCES:**

| | | | | | |
|---|---|---|---|---|---|
| **X** | State: | KIM JANTZ | **X** | DHS: | LYNNETTE MCKELVEY |
| **X** | Mother: | LINH STEPHENS | **X** | Atty: | DALE WARNER / PARKER |
| | Mother: | | | Atty: | |
| **X** | Father: | ADAM STEPHENS, SR | **X** | Atty: | GIL PILKINGTON |
| | Father: | | | Atty: | |
| | Father: | | | Atty: | |
| | Father: | | | Atty: | |
| | Legal Guardian: | | | Atty: | |
| | Child: | GRACE STEPHENS | **X** | Atty: | PEGGY HADDOCK |
| | Child: | | | Atty: | |
| | Child: | | | Atty: | |
| | Child: | | | Atty: | |
| | Child: | | | Atty: | |
| | Child: | | | Atty: | |
| | Child: | | | Atty: | |
| | Child: | | | Atty: | |
| | Child: | | | Atty: | |
| | Child: | | | Atty: | |
| | Child: | | | Atty: | |
| | Child: | | | Atty: | |
| | Tribal Rep.: | | | Atty: | |
| | GAL/CASA: | | **X** | Other: | BRIDGET O'BRIAN - DHS |
| | Foster Parent / Placement: | | | Atty: | |
| | Interpreter: | | | Interpreter: | |
| | For: ☐ Mother ☐ Father ☐ Other | | | For: ☐ Mother ☐ Father ☐ Other | |
| | Court Reporter: | | | Other: | |
| | Other: | | | Other: | |

Minor child(ren) was/ were placed out of home on the    **3RD**  day of  **DECEMBER** ,  20 21  .

Case No.  JD-21-270

**B.** [X] The parents have been ordered to complete an affidavit listing parents, relatives and other persons with their contact information and comments concerning the appropriateness of the potential placement of the child(ren) with such relative pursuant to 10A O.S.§ 1-4-203.4.

**AND**

☐ The parents have been ordered to furnish DHS with a copy of    ☐ all named child(ren)/or

☐ these specified child(ren)'s _____

birth certificate within 15 days from this hearing or on _____ , 20 ____ .

**C.** [X] Notice of rights pursuant to statute has been given to the    [X] Mother  [X] Father

☐ legal guardian or  ☐ custodian of the child(ren)  ☐ other in writing.

**D.** Visitation with the    [X] Mother, [X] Father,  ☐ legal guardian  ☐ **is** [X] **is not** adequate.
Visitation schedule is as follows:
THERE IS A CURRENT PROTECTIVE ORDER WITH THE FATHER. G.A.L HAS ALSO REQUESTED
DHS STOP VISITATIONS WITH NM.

## VII. FUTURE HEARINGS:

This case is set for _____ FILING ANNOUNCEMENT _____ hearing on the 4TH _____ day of
JANUARY _____ , 20 22  at  8:30  o'clock  A .M. before Judge  DREILING
and all parties present are ordered to appear on that date.

### *** FRAUD ON THE COURT ***

**Other:**  ICWA DOES NOT APPLY. MINOR CHILD IS CURRENTLY IN A TRADITIONAL FOSTER HOME IN
TULSA. ATTORNEY'S REPORT THERE IS A PROTECTIVE ORDER IN PLACE BETWEEN NM AND NF
PO-21-384 . BOTH PARTIES THROUGH THEIR ATTORNEY'S WAIVE THE RIGHT TO A SHOW
CAUSE HEARING. DHS REPORTS THE G.A.L. (STEPHEN HALE) WANTS TO SUSPEND FAMILY TIME
WITH NM. NF IS ON A PROTECTIVE ORDER AND UNTIL THAT IS SETTLED NF DOES NOT HAVE
FAMILY TIME. ATTY FOR M/C REQUESTS THERAPEUTIC FAMILY TIME WITH NM. COURT DOES
NOT ORDER FAMILY TIME IN REGARD TO THE G.A.L IN THE FD CASE AND THE PENDING
PROTECTIVE ORDER. DHS REPORTS NM HAS A SECOND CHILD AND WILL NOT GIVE DHS ANY
INFORMATION ON THAT CHILDS WHEREABOUTS. NM PROVIDED DHS WITH THE PHONE
NUMBER OF THE FAMILY MEMBER THAT HAS THE SECOND CHILD IN TEXAS. MINOR CHILD TO
REMAIN IN THE EMERGENCY CUSTODY OF DHS.

Martha- Bugg Casta  12/7/2021

_____
**JUDGE OF THE DISTRICT COURT**


The information on this page is NOT an official record. Do not rely on the correctness or completeness of this information. Verify all information with the official record keeper. The information contained in this report is provided in compliance with the Oklahoma Open Records Act, 51 O.S. 24A.1. Use of this information is governed by this act, as well as other applicable state and federal laws.

## IN THE DISTRICT COURT IN AND FOR <u>TULSA COUNTY</u>, OKLAHOMA

| | |
|---|---|
| STATE OF OKLAHOMA,<br>　　　Plaintiff,<br>v.<br>BRIDGET KAY MENSER,<br>　　　Defendant. | **No. CF-1999-2911**<br>**(Criminal Felony)**<br><br>Filed: 06/17/1999<br>Closed: 08/03/1999<br><br>Judge: Gillert, Tom C. |

## PARTIES

MENSER,  BRIDGET  KAY, Defendant
STATE OF OKLAHOMA, Plaintiff
Tulsa Police Department, ARRESTING AGENCY

## ATTORNEYS

| **Attorney** | **Represented Parties** |
|---|---|
| Williams,  Danny  Chappelle (Bar #14144)<br>4100 FIRST PLACE TOWER<br>15 EAST 5TH STREET<br>TULSA, OK 74103 | MENSER,  BRIDGET  KAY |

## EVENTS

| Event | Party | Docket | Reporter |
|---|---|---|---|
| DEFERRED | MENSER,  BRIDGET KAY | Preliminary Hearing Docket | |
| Tuesday, July 6, 1999 at 11:00 AM<br>ARRAIGNMENT | MENSER,  BRIDGET KAY | Arraignment Docket | |
| Tuesday, August 3, 1999 at 9:00 AM<br>PRELIMINARY HEARING ISSUE-PRIVATE ATTORNEY | MENSER,  BRIDGET KAY | Preliminary Hearing Docket | |
| Sunday, January 2, 2000 at 9:30 AM<br>COST ADMINISTRATION REVIEW | MENSER,  BRIDGET KAY | Cost Admin. Review Docket | |

Parties appear only under the counts with which they were charged. For complete sentence information, see the court minute on the docket.

**Count # 1.**    Count as Filed: DISPDUI, SALE OF ALCOHOLIC BEVERAGE TO MINOR/FELONY, in violation of O.S. 37-0538-000F

Date of Offense: 06/12/1999

| Party Name | Disposition Information |
|---|---|
| MENSER, BRIDGET KAY | **Disposed: DEFERRED, 08/03/1999. Nolo Contendere Plea** |
| | Count as Disposed: SALE/FURNISH ALCOHOL TO PERSON UNDER 21 (MF: SALE OF ALCOHOLIC BEVERAGE TO MINOR/MISD)(ALC21) |
| | Violation of 37 O.S. 537 |

**Count # 2.**    Count as Filed: DISPDUI, ALLOWING MINOR IN TO BAR/LOUNGE AREA/MISDEMEANOR, in violation of O.S. 37-0598

Date of Offense: 06/12/1999

| Party Name | Disposition Information |
|---|---|
| MENSER, BRIDGET KAY | **Disposed: DISMISSED, 08/03/1999. Dismissed by Court** |
| | Count as Disposed: ALLOWING MINOR IN TO BAR/LOUNGE AREA/MISDEMEANOR |

# DOCKET

| Date | Code | Description | Party | Count | Amount |
|---|---|---|---|---|---|
| 06-17-1999 | [ TEXT ] | | MENSER, BRIDGET KAY 👤 | | |
| | | COUNT # 002 ALLOWING MINOR IN TO BAR/LOUNGE AREA/MISDEMEANOR | | | |
| 06-17-1999 | [ INFOD ] | | MENSER, BRIDGET KAY 👤 | | |
| | | INFORMATION SALE OF ALCOHOLIC BEVERAGE TO MINOR/FELONY | | | |
| 06-17-1999 | [ INFORMATION ] | | MENSER, BRIDGET KAY 👤 | #1 | |
| 06-17-1999 | [ INFORMATION ] | | MENSER, BRIDGET KAY 👤 | #2 | |
| 06-22-1999 | [ BO ] | | MENSER, BRIDGET KAY 👤 | | |
| | | APPEARANCE BOND BY: PRE-TRIAL RELEASE 6-13-99 [10.00] | | | |
| 07-06-1999 | [ DAINS ] | | MENSER, BRIDGET KAY 👤 | | |
| | | DISTRICT ATTORNEY INSPECTION NOTIFICATION | | | |
| 07-06-1999 | [ TEXT ] | | MENSER, BRIDGET KAY 👤 | | |
| | | SMITH SARAH DAY: ARRAIGNMENT-NOT GUILTY, PREL HRG 8-3-99 @ 9 AM. DEFT PRESENT, NOT IN CUSTODY, REP BY DANNY WILLIAMS. DEFT WAIVES TIME TO PLEAD, ENTERS PLEA OF NOT GUILTY. BOND ON PRE TRIAL RELEASE TOREMAIN. PREL HRG IN ROOM 347. | | | |
| 08-03-1999 | [ SSF ] | | MENSER, BRIDGET KAY 👤 | #1 | |
| | | SHERIFF'S SERVICE FEE ON ARRESTS [5.00] | | | |
| 08-03-1999 | [ PFE7 ] | | MENSER, BRIDGET KAY 👤 | #1 | |
| | | LAW LIBRARY FEE [3.00] | | | |

| 08-03-1999 | [ COSTM ] | MENSER, BRIDGET KAY 👤 | #1 |
COURT COSTS ON MISDEMEANOR [75.00]

| 08-03-1999 | [ CLEET ] | MENSER, BRIDGET KAY 👤 | #1 |
C.L.E.E.T. PENALTY ASSESSMENT [4.00]

| 08-03-1999 | [ TEXT ] | MENSER, BRIDGET KAY 👤 |
EVENT AFTER YEAR 2000 01-02-2000 CAR

| 08-03-1999 | [ FINE ] | MENSER, BRIDGET KAY 👤 | #1 |
FINES PAYABLE TO COUNTY (AC14) [100.00]

| 08-03-1999 | [ VCA ] | MENSER, BRIDGET KAY 👤 | #1 |
VICTIMS COMPENSATION ASSESSMENT (AC12) [100.00]

| 08-03-1999 | [ PPA ] | MENSER, BRIDGET KAY 👤 |
COST ADMINISTRATION PAYMENT PLAN AGREEMENT

| 08-03-1999 | [ TEXT ] | MENSER, BRIDGET KAY 👤 |
DEFENDANT TO APPEAR ON 02-03-00 @ 09:00 FOR DEF

| 08-03-1999 | [ TEXT ] | MENSER, BRIDGET KAY 👤 |
DEFENDANT TO APPEAR ON 01-02-00 @ 09:30 FOR CAR

| 08-03-1999 | [ AFIS ] | MENSER, BRIDGET KAY 👤 | #1 |
C.L.E.E.T. PENALTY ASSESSMENT FOR AFIS [3.00]

| 08-03-1999 | [ TEXT ] | MENSER, BRIDGET KAY 👤 | #2 |
CASE DISMISSED - REQUEST OF STATE

| 08-03-1999 | [ TEXT ] | MENSER, BRIDGET KAY 👤 |

SMITH CLANCY: SENTENCING HELD. DEFT PRESENT REP'D BY DANNY WILLIAMS. STATE BY ERIC JORDAN. CT.1) DEFT P/NC TO MISD "SALE OF BEER TO MINOR". SENTENCING DEFERRED SIX MONTHS UNTIL 2/3/00 @ 9 A.M. DEFT WAIVES J/T, N-J/T AND ENTERS A PLEA OF NOLO CONTENDERE. COURT ACCEPTS PLEA OF NOLO CONTENDERE WITHHOLDS FINDING OF GUILT AND DEFERS SENTENCING FOR SIX MONTHS. DEFT ASSESSED $100 FINE + COSTS, $100 VCF. ORDER OF PROBATION ISSUED. BOND EXONERATED. CT.2CASE DISMISSED, COSTS TO DEFT. BOND EXONERATED.

| 08-03-1999 | [ DISPCDM ] | MENSER, BRIDGET KAY 👤 | #2 |

| 08-03-1999 | [ SSF ] | MENSER, BRIDGET KAY 👤 | #2 | $ 5.00 |
SHERIFF'S SERVICE FEE ON ARRESTS

| 08-03-1999 | [ COSTM ] | MENSER, BRIDGET KAY 👤 | #2 | $ 75.00 |
COURT COSTS ON MISDEMEANOR

| 08-03-1999 | [ PFE7 ] | MENSER, BRIDGET KAY 👤 | #2 | $ 3.00 |
LAW LIBRARY FEE

| 08-03-1999 | [ DEFERRED ] | MENSER, BRIDGET KAY 👤 | #1 |
CLANCY C. SMITH , JUDGE: CASE DISPOSED. DEFERRED.

| 08-05-1999 | [ RULE8 ] | MENSER, BRIDGET KAY 👤 |
ORDER OF THE COURT - RULE 8 HEARING

| 08-05-1999 | [ RPLEA ] | MENSER, BRIDGET KAY 👤 |
RECORD OF PLEA

**169**

**10-20-1999  [ AC01 ]**            MENSER, BRIDGET KAY 👤      $ 75.00

     ACCOUNT BALANCE- AC01. AS OF CONVERSION FROM THE MAINFRAME (10/20/1999), THE
TOTAL AMOUNT FOR THIS ACCOUNT (THIS DEFENDANT) IS: $75.00. THE TOTAL PAID ON THIS
ACCOUNT IS $ 0.00. THE BALANCE ON THIS DEFENDANT IS $ 75.00.

**10-20-1999  [ AC01 ]**            MENSER, BRIDGET KAY 👤      $ 10.00

     ACCOUNT BALANCE- AC10. AS OF CONVERSION FROM THE MAINFRAME (10/20/1999), THE
TOTAL AMOUNT FOR THIS ACCOUNT (THIS DEFENDANT) IS: $10.00. THE TOTAL PAID ON THIS
ACCOUNT IS $ 0.00. THE BALANCE ON THIS ACCOUNT IS $ 10.00.

**10-20-1999  [ AC11 ]**            MENSER, BRIDGET KAY 👤      $ 4.00

     ACCOUNT BALANCE- AC11. AS OF CONVERSION FROM THE MAINFRAME (10/20/1999), THE
TOTAL AMOUNT FOR THIS ACCOUNT (THIS DEFENDANT) IS: $4.00. THE TOTAL PAID ON THIS
ACCOUNT IS $ 0.00. THE BALANCE ON THIS ACCOUNT IS $ 4.00.

**10-20-1999  [ AC12 ]**            MENSER, BRIDGET KAY 👤      $ 100.00

     ACCOUNT BALANCE- AC12. AS OF CONVERSION FROM THE MAINFRAME (10/20/1999), THE
TOTAL AMOUNT FOR THIS ACCOUNT (THIS DEFENDANT) IS: $100.00. THE TOTAL PAID ON THIS
ACCOUNT IS $ 0.00. THE BALANCE ON THIS ACCOUNT IS $ 100.00.

**10-20-1999  [ AC14 ]**            MENSER, BRIDGET KAY 👤      $ 100.00

     ACCOUNT BALANCE- AC14. AS OF CONVERSION FROM THE MAINFRAME (10/20/1999), THE
TOTAL AMOUNT FOR THIS ACCOUNT (THIS DEFENDANT) IS: $100.00. THE TOTAL PAID ON THIS
ACCOUNT IS $ 0.00. THE BALANCE ON THIS ACCOUNT IS $ 100.00.

**10-20-1999  [ AC21 ]**            MENSER, BRIDGET KAY 👤      $ 3.00

     ACCOUNT BALANCE- AC21. AS OF CONVERSION FROM THE MAINFRAME (10/20/1999), THE
TOTAL AMOUNT FOR THIS ACCOUNT (THIS DEFENDANT) IS: $3.00. THE TOTAL PAID ON THIS
ACCOUNT IS $ 0.00. THE BALANCE ON THIS ACCOUNT IS $ 3.00.

**10-20-1999  [ AC22 ]**            MENSER, BRIDGET KAY 👤      $ 5.00

     ACCOUNT BALANCE- AC22. AS OF CONVERSION FROM THE MAINFRAME (10/20/1999), THE
TOTAL AMOUNT FOR THIS ACCOUNT (THIS DEFENDANT) IS: $5.00. THE TOTAL PAID ON THIS
ACCOUNT IS $ 0.00. THE BALANCE ON THIS ACCOUNT IS $ 5.00.

**10-20-1999  [ AC23 ]**            MENSER, BRIDGET KAY 👤      $ 3.00

     ACCOUNT BALANCE- AC23. AS OF CONVERSION FROM THE MAINFRAME (10/20/1999), THE
TOTAL AMOUNT FOR THIS ACCOUNT (THIS DEFENDANT) IS: $3.00. THE TOTAL PAID ON THIS
ACCOUNT IS $ 0.00. THE BALANCE ON THIS ACCOUNT IS $ 3.00.

**02-03-2000  [ CTCD ]**            MENSER, BRIDGET KAY 👤

     SMITH CLANCY: DEFENDANT PRESENT, NOT IN CUSTODY AND REPRESENTED BY DANNY
PHILLIPS. STATE REPRESENTED BY CARL FUNDERBURK. CASE DISMISSED BY COURT; COSTS
ASSESSED TO DEFT. DEFT ALLOWED TO WITHDRAW PLEA ENTERED IN THE CASE, CASE
DISMISSED, RECORD EXPUNGED.

INVOICE # 70336 INCLUDED PAYMENTS IN THIS CASE. THE PAYMENTS WERE:

$ 150.00 WAS PAID ON CLERK'S FEES CIVIL AND CRIMINAL

$ 3.00 WAS PAID ON FILING FEES ON APPEAL CRIMINAL ONLY

$ 10.00 WAS PAID ON BOND FEES CIVIL AND CRIMINAL

$ 4.00 WAS PAID ON C.L.E.E.T. PENALTY ASSESSMENT CRIMINAL ONLY

$ 100.00 WAS PAID ON VICTIM'S COMPENSATION ASSESSMENT (VCA) CRIMINAL ONLY

$ 100.00 WAS PAID ON FINES CIVIL AND CRIMINAL

$ 3.00 WAS PAID ON C.L.E.E.T. ASSESSMENT FOR A.F.I.S. CRIMINAL ONLY

$ 10.00 WAS PAID ON SHERIFF'S SERVICE FEE ACCOUNT CRIMINAL ONLY

$ 3.00 WAS PAID ON (FORMERLY AC03 CV) LAW LIBRARY FEE CIVIL AND CRIMINAL

---

**01-25-2001 [ DISBURSED ]**

CHECK# 1074 PRINTED TO TULSA COUNTY COURT CLERK, IN THE TOTAL AMOUNT OF 20,799.63 AT ,. INCLUDING:

$ 10.00 AC10 - BOND FEES CIVIL AND CRIMINAL FOR MENSER, BRIDGET KAY

---

**01-26-2001 [ DISBURSED ]**

CHECK# 209358 PRINTED TO SHERIFF'S SERVICE FEE ACCOUNT IN THE TOTAL AMOUNT OF 13,116.56 AT 500 S DENVER AVENUE TULSA, OK 74103. INCLUDING:

$ 10.00 AC22 - SHERIFF'S SERVICE FEE ACCOUNT CRIMINAL ONLY FOR MENSER, BRIDGET KAY

---

**01-29-2001 [ DISBURSED ]**

CHECK# 209384 PRINTED TO C.L.E.E.T. IN THE TOTAL AMOUNT OF 11,272.59 AT ,. INCLUDING:

$ 4.00 AC11 - C.L.E.E.T. PENALTY ASSESSMENT CRIMINAL ONLY FOR MENSER, BRIDGET KAY

---

**01-29-2001 [ DISBURSED ]**

CHECK# 209385 PRINTED TO VICTIMS COMPENSATION ACCOUNT IN THE TOTAL AMOUNT OF 103,611.97 AT ,. INCLUDING:

$ 100.00 AC12 - VICTIM'S COMPENSATION ASSESSMENT (VCA) CRIMINAL ONLY FOR MENSER, BRIDGET KAY

---

**01-29-2001 [ DISBURSED ]**

CHECK# 209386 PRINTED TO C.L.E.E.T. IN THE TOTAL AMOUNT OF 8,466.29 AT ,. INCLUDING:

$ 3.00 AC21 - C.L.E.E.T. ASSESSMENT FOR A.F.I.S. CRIMINAL ONLY FOR MENSER, BRIDGET KAY

---

**02-20-2001 [ DISBURSED ]**

CHECK# 1087 PRINTED TO TULSA COUNTY COURT CLERK, IN THE TOTAL AMOUNT OF 366,897.44 AT PARTIAL REIMBURSEMENT OF VOUCHER #205,415 OF 7/25/2000 AND 206,068 OF 8/22/2000. INCLUDING:

$ 100.00 AC14 - FINES CIVIL AND CRIMINAL FOR MENSER, BRIDGET KAY

---

**04-02-2001 [ DISBURSED ]**

CHECK# 1138 PRINTED TO LAW LIBRARY IN THE TOTAL AMOUNT OF 34,134.80 AT PARTIAL REIMBURSEMENT OF VO#109148 OF 7/10/2000 AND VO#206116 OF 8/24/2000 FEES COLLECTED JUNE 2000. INCLUDING:

$ 6.00 AC23 - (FORMERLY AC03 CV) LAW LIBRARY FEE CIVIL AND CRIMINAL FOR MENSER, BRIDGET KAY

Appellate Case: 25-5063     Document: 63     Date Filed: 01/30/2026     Page: 228

**11-11203-M** Bridget Kay O'Brien

**Case type:** bk **Chapter:** 7 **Asset:** No **Vol:** v **Judge:** Terrence L. Michael

**Date filed:** 04/28/2011 **Date of last filing:** 08/18/2011

**Debtor discharged:** 08/02/2011

**Date terminated:** 08/18/2011

# Case Summary

| | |
|---|---|
| **Office:** Tulsa | **Filed:** 04/28/2011 |
| **County:** TULSA-OK | **Terminated:** 08/18/2011 |
| **Fee:** Paid | **Debtor discharged:** 08/02/2011 |
| **Origin:** 0 | **Reopened:** |
| **Previous term:** | **Converted:** |
| | **Debtor dismissed:** |
| **Joint:** n | **Confirmation hearing:** |
| **Current chapter:** 7 | |

**Debtor disposition:** Standard Discharge

**Nature of debt:** consumer
**Pending status:** Case Closed
**Flags:** CLOSED

| | | | |
|---|---|---|---|
| **Trustee:** Office of the United States Trustee | **City:** Tulsa | **Phone:** (918) 581-6670 | **Email:** USTPRegion20.TU.ECF@usdoj.gov |
| **Trustee:** Sidney K. Swinson | **City:** Tulsa | **Phone:** 918 595-4800 | **Email:** sswinson@gablelaw.com |

**Party 1:** O'Brien, Bridget Kay  (Debtor)
      SSN / ITIN: xxx-xx-8999

**Atty:** Terry J. Caldwell        **Represents party 1:** Debtor      **Phone:** 918 745-0080
                                                               **Fax:** 918 745-0244

**Location of case files:**
  **Volume:**  CS1
The case file may not be available.

---

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/29/2022 15:17:33 | | |
| **PACER Login:** | perfectpeacejoy | **Client Code:** | |
| **Description:** | Case Summary | **Search Criteria:** | 11-11203-M |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |




**Appendix T**

August 07, 2023



*FILED*
*DISTRICT COURT*

**AUG 07 2023**

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

***State of Oklahoma vs. Linh Tran Stephens***
in Tulsa District Court for contempt allegations,
Case No. FD-2015-2228

**RE: Complaint Regarding Noncompliance with American Disability Act (ADA)**
with regards to the above referenced case and all related hearings, including but not limited to
hearings taken place on:

> January 27, 2023 @ 9:01AM,
> February 13, 2023 @ 9AM,
> March 24, 2023 @ 9:01AM,
> June 12, 2023 @ 2PM,

To whom this may concern. My name is Marieke Vekemans Randoy and I am an ADA advocate
for Ms. Linh Tran Stephens. My role as an ADA advocate is to assist in ensuring that my client is
given equal access and equal footing to the courts.

In the aforementioned hearings, **Judge Deborrah Ludi-Leitch** *willfully and repeatedly* denied my
client's requests for ADA accommodations by denying my client the right to have me attend the
proceedings virtually, while allowing virtual access to other court observers, the parties, their
attorneys, and other witnesses. The Judge showed bias and the appearance of impropriety by
singling out ADA advocates to ensure that my client would be denied this accommodation,
deliberately causing distress.

At every hearing, my client's ADA advocate(s) were blocked out. Every time my client (a military
veteran) objected to the court's denial of her rights, her objections were overruled. No one should
have to fight so hard for accommodations from government agencies and the courts. I am very
concerned that this practice of ignoring ADA accommodation requests affects everyone, including
our veterans who have the courage to make these requests.

1. As Defendant's ADA advocate under Title II of the ADA, I can assert that a judge does *not*
   have the discretion to deny an ADA advocate access to the court. Keeping out an ADA
   advocate is *no* different than keeping out a wheelchair or a seeing-eye dog. Although
   technically we do *not* need approval by the judges for our ADA accommodation-request per
   federal laws, **Judge Deborrah Ludi-Leitch** still kept me out of the courtroom virtually on the
   above listed court dates. This has shown me a pattern of practice for this Court.
2. An alleged claim of someone recording a previous hearing is an absurd and disingenuous
   reason to keep me out of a hearing. These claims have never been written nor entered into the
   record nor been part of a ruling denying me access to the court. The decision to deny me
   access to the court has been strictly off the record, and no legal reason for this decision has
   ever been made in open court or set down in a written ruling. Not to mention, these contempt

---

*Complaint regarding Noncompliance with American Disability Act (ADA)*          *page 1 of 5*



proceedings are open to the public. The only conclusion I can draw from the repeated denial of virtual access, would be that the court willfully, deliberately and maliciously deprives my client of basic accommodations knowing that this will cause her added stress, distress, and hardship. This is *no* way for a judge to behave on or off the bench. Bias and contempt towards persons with disabilities brings the Judiciary into disrepute, and disqualifies the Judge from presiding in any case where my client is a litigant. Advocates have every right to be there, like anyone else.

3.  On one of the aforementioned occasions, my client made arrangements and paid for a court reporter days before the hearing and as soon as the hearing started and the court reporter failed to appear, the Judge acted as if my client's court reporter was *not* necessary. It appeared as though the judge deliberately interfered and made sure that the court reporter would *not* be available. My client had already made this request for transcripts in her ADA accommodation-request paperwork; <u>she already paid in advance for the court reporter; she also confirmed with the Judge's court clerk face-to-face the day before</u>. **Judge Deborrah Ludi-Leitch** made my client and the entire courtroom wait for approximately a half hour or more in silence, after my client insisted that she would *not* be persuaded to proceed without a court reporter. The Judge tried to embarrass my client and shame my client for such a simple request by saying something to the effect of "I don't understand why you need the court reporter because it's not like you're going to appeal." On that particular day, the Judge started the hearing allowing me to be present via Microsoft Teams, but then kicked me out of the hearing as soon as the court reporter appeared.

4.  In my client's ADA accommodation request submitted on March 11, 2022 to another judge, and again in February 2023 to Judge Leitch in Tulsa County District Court and to its ADA Coordinator, my client specifically asked for "ADA advocate(s) to appear VIRTUALLY(online) to provide support to help take notes, in-real-time transcripts, closed captioning, ability to audio-record the proceedings, allow me extra time to take notes or ask questions, to take frequent breaks when requested by ADA advocate or by me (to speak to my ADA advocate to gather my thoughts; permitting remote hearings as an option; a copy of CD of audio-recordings of all interactions with the Court, so as to be able to reference them at a later time"

    The Judge said that audio recording is not allowed, and the court reporters said the audio-version/mp3/wav of transcript is *not* allowed to be purchased ever, but they did *not* provide any legal basis. However, I have attended other court hearings for Ms. Linh Tran Stephens, and I have taken hand-written notes and provided support.

5.  **Judge Deborrah Ludi-Leitch** *caused my client, the Defendant, to lose equal footing in the court and put her at a disadvantage* by arbitrarily denying me access to the hearing and arbitrarily making it incredibly difficult for my client to obtain a court reporter of the proceedings. Her comment that my client didn't "need" a court-reporter because she couldn't appeal is especially disturbing because it appeared as if the case was not only predetermined, but that the comment was an abuse of her authority. She let my client know that it didn't matter what transpired during the proceedings, my client would lose anyway, there would be *no*



recourse, and why would she need a record of this obvious bias? What was she going to do about it? File a complaint? It was so obvious that she was mocking and intimidating my client and trying to make her feel helpless. Then to throw me out of the hearing, after allowing me to hear those comments, just solidified that it was her intention to cause my client to feel distress, and to know that there would be no procedural fairness in the hearing she was about to endure without anyone there to witness or to provide support.

6. **DISABILITY DISCRIMINATION**: The Defendant's American Disability Act ("**ADA**") accommodation were denied at every hearing in front of this Judge. Oklahoma Department of Human Services' Child Support Services (OKDHS CSS) and the State of Oklahoma are both liable for this Judge's misconduct. These accommodations do *not* in any way burden the courts. Both the OKDHS CSS and the State of Oklahoma are failing the federal mandate by failing to ensure that persons with disabilities have equal access to the courts. Instead of making it easier to participate in court proceedings, OKDHS CSS *not* only makes it more cumbersome, there is this real feeling of discrimination against persons with disabilities, just because they make requests. Court staff and judges were rude, they ignored the requests, and tried to mock and embarrass and single out persons with disabilities. The State of Oklahoma is doing *nothing* to deter this discrimination despite there being heavy monetary fines that can be imposed for willful failure. It's clear from my observations from how my client has been treated by court staff and in every courtroom and every proceeding that no one cares about following the ADA laws. There is a lack of oversight and training. The courts and government agencies continue to take government funding to operate, despite their non-compliance with ADA laws.

7. "Under **Title II of the ADA**, a judge does *not* have the discretion to exclude an ADA advocate who is not causing any interference to the proceedings. Depriving a person with a disability of an ADA advocate would be no different than denying a person's access to their wheelchair or their seeing eye dog. The ADA defines "disability discrimination by state's **Title II entities** [such as this Court]" as:

a. Denying a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service; see 28 C.F.R. § 35.130(b)(1)(i)

b. Providing a qualified individual with a disability an opportunity to participate in or benefit from the service, aid or benefit that is *not* equal to that afforded others; see 28 C.F.R.§ 35.130(b)(1)(ii)

c. Providing a qualified individual with a disability an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others; see 28 C.F.R.§ 35.130(b)(1)(iii)

d. Providing services or activities that result in having disparate impact on an individual with qualified disabilities; see 28 C.F.R. § 35.130(b)(1)(iii)

e. Limiting a person with qualified disabilities in a manner that results in denying equal opportunities, enjoying any right, privilege, advantage or opportunity enjoyed by others receiving the aid, benefit or service; see 28 C.F.R. § 35.130(b)(1)(vii)



www.FamilyCourtAntiCorruptionCoalition.com

f. Denying rights, opportunities or benefits because of the need to provide a reasonable accommodation; see 28 C.F.R. § 35.130(b)(1)(vii)

g. Denying rights, opportunities or benefits because of the need to modify a policy, practice, procedure or standard; see 28 C.F.R. § 35.130(b)(7)(i)

h. Failing to modify policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program or activity; see 28 C.F.R. § 35.130(b)(7)(i)

i. Providing services or activities which have the effect of subjecting persons with disabilities to discrimination on the basis of disability directly, through arrangements or by contractors; 28 C.F.R. § 35.130(b)(3)(i)

j. Utilizing criteria or methods of administration that have the effect of subjecting persons with disabilities to discrimination on the basis of disability; 28 C.F.R. § 35.130(b)(3)(i) or have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities; 28 C.F.R. § 35.130(b)(3)(ii)

k. Excluding or otherwise denying equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual is known to have a relationship or association; 28 C.F.R. § 35.130(b)(8)(g).

l. Unlawful discrimination also includes the deliberate indifference to known deprivation of rights by others observed by other officers of the Court

8. Violators of the American Disability Act can be sued for $165,000 PLUS consultation-fees and court-related fees up to $900,000.

9. This is an official complaint and respectfully requesting that this Court cease and desist from violating my client's ADA rights.

august 7, 2023

Marieke Vekemans Randoy
*President of Family Court Anti-Corruption Coalition*
*Email: marieke@familycourtanticorruptioncoalition.com*
*Website: www.familycourtanticorruptioncoalition.com*
*Tel: (778) 870-9778*

---

*Complaint regarding Noncompliance with American Disability Act (ADA)*          *page 4 of 5*



www.FamilyCourtAntiCorruptionCoalition.com

---

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 07th day of August, 2023, a true, correct, and exact copy of the above and foregoing instrument to be mailed via USPS with certified mail:

**Honorable Deborrah Ludi-Leitch (R112)**

Tulsa County District Court, 500 S Denver Ave, Tulsa OK 74103

Gilbert J. Pilkington, Jr., OBA # 21998, PILKINGTON LAW FIRM, PLLC
601 S. Boulder Ave., Suite 600, Tulsa, OK 74119-1300
Tel: 918-298-4403, Fax: 918-960-5017
gil@pilkingtonlawfirm.com
***Attorney for Respondent named Adam Sylvester Stephens***

Emmalene Stringer, OBA # 31690
*OKDHS, CSS* (Child Support Services, Tulsa East Office)
3666 N, Peoria Ave.,
Tulsa, OK 74106
Correspondence to:
PO. Box 27068,
Tulsa, OK 74149
***State's Attorney; Third-Party Defendant***

Megan Michelle Beck, OBA # 30962, MEGAN M. BECK, PLLC
320 S. Boston Ave., Suite 718, Tulsa, OK 74103-3706
Tel: 918-295-6418, Fax: 918-515-6232
megan@meganbecklaw.com
***Attorney for Minor Child***

Linh Tran Stephens

---

*Complaint regarding Noncompliance with American Disability Act (ADA)*     *page 5 of 5*

**177 a**



**Ascension**
**Medical Group**

Monday, May 16 , 2022

LINH STEPHENS



To ADA coordinator of Tulsa County Court or whom else it may concern,

Dr. Linh Stephens, D.O. is a patient under my care at Ascension St. John Clinic in Jenks, Oklahoma. Dr. Stephens has a pre-existing diagnosis of chronic tinnitus in both ears. Her tinnitus symptoms are intermittent and range from mild to moderate severity. First diagnosed was made in February of 2015 per records review and has remained active since that time. Furthermore, Dr. Stephens is an Asian American female who came to the U.S. when she was 12 year-old making English her second language. Due to this language barrier, more specific venacular related to the legal court system and its proceedings could quickly become more difficult to fully understand and respond to appropriately.

I strongly recommend Dr. Stephens to be allowed to have her ADA advocate for support via remote platform or on an approved cellular device during all her court-hearings to assist her in taking notes, record-keeping, and legal understanding. Dr. Stephens should also have the following ADA accommodations:

- transcripts from proceedings for effective communication with her advocate +/- attorney

- computer-aided real-time transcription; open or closed captioning

- take short breaks every 15-20 minutes "if" she requests of the court

- personal written materials

- audio recordings; use of approved personal recording devices during the proceedings for personal notes of the proceedings

It is my concern that Dr. Steven's intermittent tinnitus and English being a secondary language would put her at a potential disadvantage. I requesting that and she have all the due-processes entitled by every American and a fair trial including ADA advocates being present during all of her court hearings. Thank you for your consideration.

Sincerely,

Jeremy Ransdell, DO

D.O.

**Appendix U**

**AFFIDAVIT of Truth by S████████**                                    5/5/2025

On Friday, 5/2/2025 at 9:02am, Dr Linh Stephens was on the docket for family court in Judge Loretta Radford's courtroom. I arrived early at 8:00 am to deliver a pre-notarized Protest that Dr Linh Stephens had provided me to present to the court clerk and file into her case as well as a copy to the judge or her court clerk. So, by about 8:20am, both of those requests were complete. The Judge's court clerks name was Kacharra Mansker. Here contact is Kacharra.mansker@oscn.net; phone number, 918.596.5332. I then asked someone in the hallway who was instructing others how to get their documents to the judge how I would know if a court reporter was going to be in court. She said they normally had one. So I went to court and right away noticed that one was not present. So I asked the judge and she said no, they are not normally present. I objected to that as all hearings should be memorialized as part of due process in a court of record before rights can be affected.

OK Constitution Article 2 Section 7

Due Process Definition, Black's Law (4th and 5th Ed)

I had went downstairs to the main court clerk office to see if I could get a copy of a receipt for the one that had been prepaid for by Dr Linh Stephens. The woman there said that she did not see one ordered. I asked to pay for one to get a receipt. They explained that the judge would have to let me know if one was available first. Yet Judge said that I would have to have a receipt first. So, I explained to the judge that I was just downstairs trying to pay for it and they would not let me until the judge told them one was available. They would also not take my money. The filing court clerk said they were going by "the rules" and they knew the rules were that the judge had to approve the court reporter's presence first. I asked them to document what they were telling me were the rules as they understood them and to notarize what they were saying. They refused. I asked who made the rule and when it was made and if I could get a copy of that rule. They said I would need to contact Kim Hall, the court administrator as she was the one that implemented the rule a year ago when court reporters became hard to get. So, I went to her office before court hearing. The lady I spoke with there would not give me her name but said I would need to have the matter handled by the Bailiff, Samantha.Boen@oscn.net ; ph# 918.596.5333. The Baliff said one was being ordered for Dr Stephen's case (yet the court clerk said none was ordered and the judge said none was ordered unless payment was made). So I sat in court and waited for Dr Stephen's case to be called. While I waited, I also noticed in all of the plea deals that were being handled by other Pro Se litigants, that the judge would tell them that by going Pro Se that they were relinquishing their rights to a trial by jury or to call witnesses and more. I stood up to offer advice that the court could not ask them to waive those rights as no laws imparting the obligation of contracts shall be passed like interfering with one's oath to uphold the constitutional rights of We The People.

OK Constitution Article 2 Section 15

I was told to sit down by the judge and was instructed by a Sheriff's Deputy J. Williamson who would not give me his first name or his badge number when I asked that if I interrupted any more that I would be escorted out. I withheld any further interruptions until Dr Stephens' case was called. Dr Stephens case was held til the very end of the day the last case when everyone else left- zero eyes from the public, about 1-1:30pm, when it was finally called. Immediately I asked where the court reporter was and was told again I would need a receipt of payment for his/her presence. I let them know this hearing was not valid if there was no court reporter. They asked if I wanted an audio, I said I'll take what I can get but that the hearing would still be in violations without a court reporter and that I would still be making that report. After listening to a few comments from the prosecution side stating that Dr Stephens was in violations of some recent motions sent, I spoke up explaining that the case was not valid due to jurisdictional issues. The main violation is in US Constitution Article 3 when the state is a party the original jurisdiction is the Supreme Court. Also, Dr Stephens is a Vietnam citizen, which makes another Article 3 violation. The judge asked me my name, of which I explained I was one of The People court

watching for a case and offering advice to the court where I saw it was needed. The judge cut me off before I could make all the other necessary objections and she asked the Sheriff Deputy to escort me out. I asked if that was under the threat of arrest. He said no at first and I therefore said I would not be leaving then. Then he changed his mind and said "yes it was under the threat of arrest". So I let him escort me out without resistance.

I come in peace and love in the name of Christ Jesus to bring you this report of injustices I witnessed in the Tulsa Family court on 5/2/2025 in front of employees of STATE OF OKLAHOMA calling themselves as special judge Loretta Radford, 3 different payment/filing court clerks, judge's clerk Karacharra Mansker, bailiff Samantha Boen, Tulsa court administrator Kim Hall, and deputy sheriff J. Williamson.

Also Included: my audio recordings of my experiences from the day

https://drive.google.com/drive/folders/1QFxefI_qj4Qx9sFyC1vkVsft55ybsRB_?usp=sharing

Sincerely,



**Notary as JURAT CERTIFICATE**

STATE OF _oKlahoma_ )
                      ) ss
COUNTY OF ▮▮▮▮
    On this _6_ day of _may_, 20_25_ before me ▮▮▮▮▮▮, a Notary
Public, personally appeared a living woman _▮▮▮▮▮▮▮▮ the Authorized
Representative and Beneficiary for Legal
Fiction_____ ), who electronically (remotely) proved to me on the
basis satisfactory evidence to be the woman whose name is subscribed to the within instrument
and acknowledged to me that she executed the same in her authorized capacity, and that by her
autograph(s) on the instrument the woman executed, the instrument.
    I certify under PENALTY OF PERJURY under the lawful laws of Oklahoma state law
and that the foregoing paragraph is true and correct. WITNESS my
    hand and official seal.

**Signature of Notary/Jurat**

181



**Appendix V**

# IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
## STATE OF OKLAHOMA

**LINH TRAN STEPHENS,**           )
      **Petitioner,**                )
                    )
**vs**                            )     **FD-2015-2228**
                    )     **Docket C**
**ADAM SYLVESTER STEPHENS,**      )     **Judge Seibert**
      **Respondent.**                )

*FILED IN DISTRICT COURT*
*JAN 19 2024*
*DON NEWBERRY, Court Clerk*
*STATE OF OKLA. TULSA COUNTY*

## NOTICE OF LIEN

**COMES NOW** Adam Stephens Respondent and the Pilkington Law Firm, (hereinafter "claimant"), and does hereby give notice of and claim a lien pursuant to Oklahoma Statue Title 42 et. seq. and 43 §135 for judgements rendered against Petitioner which she was ordered to pay for appeal related attorney fees rendered in the above referenced action and DF-120,848 (Oklahoma Supreme Court). This lien includes any assets, property, property interests, and any monetary judgments therein awarded to Petitioner in said cause, including but not limited to the following described property:

      Lot ▮▮▮▮▮▮, Block ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, an Addition to the City of Broken Arrow, Tulsa County, State of Oklahoma, according to the recorded Plat thereof.

      a/k/a ▮▮▮▮▮▮▮▮▮▮ Broken Arrow, OK  74011
      P.I.D ▮▮▮▮▮▮▮▮▮

      Claimant further gives notice that the amount of said lien is **$1,626.84** as of October 9, 2023 plus statutory interest.

      Claimant hereby reserves the right to amend this lien upon further adjudication of this cause in the above-entitled court.

      Dated this _19th_ day of January 2024.

1

Respectfully Submitted,

Gilbert J. Pilkington, Jr., OBA# 21998
Pilkington Law Firm, PLLC
PO Box 52614
Tulsa, OK 74152-0614
Gil@PilkingtonLawFirm.com
Phone, 918-359-6625
*Attorney for Respondent*

## CERTIFICATE OF SERVICE

I hereby certify that on the __22__ day of __JANUARY__ 2024, a true and correct copy of the above and foregoing was:

__X__ mailed, with proper postage fully prepaid thereon
__x__ mailed by certified mail, Return Receipt No. _____
____ transmitted via facsimile
__X__ transmitted via email
____ hand delivered
____ process server

to:    **Le Letran, Trustee** *(CERTIFIED MAIL)*
6607 S. Palm Place Land Trust
6607 S. Palm Pl.
Broken Arrow, OK 74011

Linh Stephens
11063 S. Memorial Dr, Ste. D #235
Tulsa, OK 74133
*Petitioner, Pro Se*

Emmalene Stringer, OBA #31690
State's Attorney
OKDHS, CSS
P.O. Box 27068
Tulsa, OK 74149
Phone, 918-295-3500
OCSS.Contact.TulsaEast@okdhs.org

Gilbert J. Pilkington, Jr.

2





Appendix W

IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
STATE OF OKLAHOMA

LINH TRAN STEPHENS,                )
      Petitioner,                     )
                                   )
                                   )
vs                                 )      **FD-2015-2228**
                                   )      **Docket F**
ADAM SYLVESTER STEPHENS,           )
      Respondent.                     )

DISTRICT COURT
F I L E D

MAY 08 2025

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

**ORDER OF THE COURT**
**NON-JURY TRIAL ON CHILD SUPPORT CONTEMPT, MAY 2, 2025**

       NOW on this 2nd day of May 2025, the *Application for Indirect Contempt Citation Child Support – December 2024* in the above captioned and styled cause comes on for non-jury trial. Petitioner/Mother Linh Tran Stephens, pro se, fails to appear after being recognized back to May 2, 2025, at 9am by the Court on March 7, 2025. Respondent/Father Adam Sylvester Stephens appears in person and with his attorney, Gilbert J. Pilkington Jr. of the Pilkington Law Firm. Emmalene Stringer appears for OKDHS, CSS.

       The Court, having examined the files and records herein, having considered the evidence, and being otherwise fully advised in the premises, FINDS AS FOLLOWS.

   **Jurisdiction.** This Court has continuing and exclusive jurisdiction over the parties and subject matter of this action.

1. This matter came on for Pre-Trial Conference. Petitioner has been advised on March 7, 2025, that the Jury Trial fee's must be paid prior to pretrial conference or the court may proceed with a non-jury trial on that date.

2. The Court found that the Jury Trial Fee had not been paid as of May 2, 2025 at 1:00pm and converted the Pre-Trial Conference to a Non-Jury Trial at the request of Respondent's attorney and the State.

3. The Court determined that Petitioner/Mother was in noncompliance with the Court's order filed February 20, 2024, regarding child support payments. Based

1

184

on the testimony of Respondent and the Record of Payment from DHS admitted into evidence.

4. The Court determined that Petitioner/Mother had proper notice and was aware of the Order of February 20, 2024. Petitioner/Mother had received a copy of the February 20, 2024, Order mailed by the Court, she appeared on January 13, 2025 at the related attorney fee hearing to argue against the related fees and other references made in her subsequent pleading.

5. The Court found that Respondent/Father had met his burden by clear and convincing evidence.

6. Petitioner/Mother failed to appear, in person or virtually.

7. The Petitioner/Mother has filed multiple pleadings in order to attempt to delay the proceedings.

8. Based on the evidence properly presented and admitted found Petitioner/Mother Linh Stephens guilty of indirect contempt of court for willful non-payment of child support.

9. Petitioner/Mother is hereby sentenced to six (6) months in the Tulsa County Jail. Purge is set in the amount of $13,211.24 plus $500.00 court fines and all of her Oklahoma State issued licenses are hereby revoked. Notice of such revocation is to be provided to the appropriate State agencies.

10. The Court authorizes a bench warrant for Petitioner/Mother. The sentence is to be executed upon arrest. The total amount due and owing to recall the warrant is $13,711.24, to be paid in cash/ money order only.

11. The issue of attorney fees is reserved.

**IT IS SO ORDERED.**

Loretta F. Radford
Judge of the District Court

2

185

Approved as to form:

Gilbert J. Pilkington, Jr. OBA# 21998
Pilkington Law Firm, PLLC
PO Box 52614
Tulsa, OK 74152-0614
Gil@PilkingtonLawFirm.com
*Attorney for Respondent*

Emmalene Stringer, OBA #31690
State's Attorney
OKDHS, CSS
P.O. Box 27068
Tulsa, OK 74149
OCSS.Contact.TulsaEast@okdhs.org

3

**CERTIFICATE OF SERVICE**

I hereby certify that on the ___7ᵗʰ___ day of ___May___ 2025, a true and correct copy of the above and foregoing was:

___X___ mailed, with proper postage fully prepaid thereon
_____ mailed by certified mail, Return Receipt No. _____
_____ transmitted via facsimile
___X___ transmitted via email DHS/ BECK
_____ hand delivered
_____ process server

to:   Linh Stephens                          Linh Stephens
      11063 S. Memorial Dr, Ste. D #235       1964 Ashley River Rd,
      Tulsa, OK 74133                          Ste B, Unit 80112
      *Petitioner, Pro Se*                     Charleston, SC 29416

      Megan Beck
      320 S. Boston Ave, Suite 718
      Tulsa, OK 74103
      *Attorney for Minor Child*

      Emmalene Stringer, OBA #31690
      State's Attorney
      OKDHS, CSS
      P.O. Box 27068
      Tulsa, OK 74149
      Phone, 918-295-3500
      Fax, 918-430-2364
      OCSS.Contact.TulsaEast@okdhs.org

                                    Gilbert J. Pilkington, Jr.

4

187



Appendix X

# IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
## STATE OF OKLAHOMA

LINH TRAN STEPHENS,                    )
        Petitioner,                )
                          )    **FD-2015-2228**
**vs**                                 )    **FGN 948641001**
                          )    **Docket C**
ADAM SYLVESTER STEPHENS,               )
        Respondent.                )

DISTRICT COURT
FILED
SEP 05 2025
DON NEWBERRY, Court Clerk
STATE OF OKLA, TULSA COUNTY

### <u>INDIRECT CONTEMPT CITATION</u>

THE STATE OF OKLAHOMA TO: NAME OF: **LINH TRAN STEPHENS**

      It appearing from Respondent's verified *Application for Indirect Contempt Citation-Attorney Fees* that you have willfully disobeyed the *Order Regarding Respondent's Application for Attorney Fees in Supreme Court Case No. 120848* entered on October 30, 2023 and monthly payment determined on January 25, 2024, as more particularly set forth in *Respondent's Application for Indirect Contempt Citation*, you are hereby commanded to appear before the undersigned Judge in the Tulsa County Courthouse, 500 S. Denver, Tulsa, Oklahoma, on the __21__ day of __November__ 2025, at __10__ o'clock a.m. . for an arraignment on Respondent's *Application for Indirect Contempt Citation-Attorney Fees* in the courtroom of the undersigned Judge.

      **YOU ARE ENTITLED TO AN ATTORNEY TO REPRESENT YOUR INTERESTS. IF YOU ARE UNABLE TO AFFORD AN ATTORNEY, YOU CAN MAKE APPLICATION AT THAT TIME FOR THE COURT TO APPOINT YOU AN ATTORNEY.**

      **YOUR FAILURE TO APPEAR MAY RESULT IN A BENCH WARRANT BEING ISSUED FOR YOUR ARREST. FAIL NOT UNDER PENALTY OF LAW!**

1

Signed this __21st__ day of __August__ 2025.

_____
Judge of the District Court

Approved as to Form:
Gilbert J. Pilkington Jr. OBA# 21998
Pilkington Law Office, PLLC
Tulsa, OK 74152
*Attorney for Respondent*

2

189

## CERTIFICATE OF SERVICE

I hereby certify that on the ___8 th___ day of ___SEPT___ 2025, a true and correct copy of the above and foregoing was:

____ mailed, with proper postage fully prepaid thereon
__x__ mailed by certified mail, Return Receipt No. _____
____ transmitted via facsimile
____ transmitted via email
____ hand delivered
____ process server

to:   Linh Stephens (First Class)          Linh Stephens (Certified)
      11063 S. Memorial Dr, Ste. D #235     1964 Ashley River Rd
      Tulsa, OK 74133                       Unit 80112
      *Petitioner, Pro Se*                  Charleston, SC  29416

      Megan Beck (Email)
      320 S. Boston Ave, Suite 718
      Tulsa, OK 74103
      Attorney for Minor Child

      Emmalene Stringer (Email)
      State's Attorney
      OKDHS, CSS
      PO. Box 27068
      Tulsa, OK  74149


      Gilbert J. Pilkington Jr.

3

**04-24-2025   RESP**

DEPARTMENT OF HUMAN SERVICES' RESPONSE TO PETITIONER'S SPECIAL ENTRY OF APPEARANCE MOTION TO DISMISS ALL STATE ACTIONS FOR LACK OF JURISDICTION ELSE SANCTION AND LEGAL NOTICE OF CHANGE OF ADDRESS
Document Available (#1061710056) TIFF   PDF

**04-28-2025   MO**

MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS WITH ATTACHMENTS
Document Available (SEALED DOCUMENT)

**04-28-2025   OSH**

ORDER FOR HEARING
Document Available (#1061710100) TIFF   PDF

**05-02-2025   TEXT**

FORMAL PROTEST OF MARCH 07, 2025, JANUARY 02,2025, AND APRIL 28,2025 ORDERS
Document Available (#1061707916) TIFF   PDF

**05-02-2025   CTFREE**

JUDGE LORETTA RADFORD: (CHILD SUPPORT ENFORCEMENT DOCKET): PETITIONER NOT PRESENT, PRO SE. RESPONDENT PRESENT VIA TEAMS, REPRESENTED BY GIL PILKINGTON, PRESENT. EMMALENE STRINGER PRESENT FOR THE DEPARTMENT OF HUMAN SERVICES.

CASE COMES ON FOR PRETRIAL CONFERENCE ON CONTEMPT AGAINST LINH STEPHENS, HELD ON THE RECORDER. THE PETITIONER WAS PREVIOUSLY ADVISED THAT THE JURY TRIAL FEE'S MUST BE PAID PRIOR TO THE PRETRIAL CONFERENCE OR THE COURT MAY PROCEEDWITH A NON JURY TRIAL ON THAT DATE. THE COURT FINDS THAT THE JURY TRIAL FEE'S HAVEN'T BEEN PAID AT PROCEEDS ON WITH A NON JURY TRIAL. THE COURT DETERMINES THAT THE PETITIONER (LINH STEPHENS) ISN'T IN COMPLIANCE WITH THE COURT'S ORDERS. THE RESPONDENT MET HIS BURDEN BY CLEAR AND CONVINCING EVIDENCE. PETITIONER (LINH STEPHENS) FAILED TO APPEAR AND A BENCH WARRANT IS ISSUED IN THE AMOUNT OF $13,211.24 PLUS $500.00 COURT FINES. TOTAL AMOUNT DUE AND OWING TO RECALL THE WARRANT $13,711.24 CASH/MONEY ORDER ONLY. EXECUTION OF 6 MONTHS SENTENCE IN THE TULSA COUNTY JAIL UPON ARREST. THE ISSUE OF ATTORNEY FEES IS RESERVED.

**05-08-2025   CTFREE**

JUDGE LORETTA RADFORD: BENCH WARRANT FOR LINH TRAN STEPHENS IN THE AMOUNT OF $13,211.24 PLUS $500.00 COURT FINES, ENTERED.

**05-08-2025   CTFREE**

JUDGE LORETTA RADFORD: ORDER OF THE COURT NON-JURY TRIAL ON CHILD SUPPORT CONTEMPT MAY 2, 2025, ENTERED.

**05-08-2025   BWIS$**                                    $ 50.00

BENCH WARRANT ISSUED - SERVICE BY SHERIFF

**05-08-2025   O**

ORDER OF THE COURT NON-JURY TRIAL ON CHILD SUPPORT CONTEMPT MAY 2, 2025
Document Available (#1061165633) TIFF   PDF

**05-08-2025   ACCOUNT**

RECEIPT # 2025-4768729 ON 05/08/2025.
PAYOR: PILKINGTON LAW FIRM TOTAL AMOUNT PAID: $ 50.00.
LINE ITEMS:
FD-2015-2228: $50.00 ON AC01 CLERK FEES.

**05-28-2025   APLI**

APPLICATION FOR ATTORNEY FEES AND COSTS FOR CHILD SUPPORT CONTEMPT - MAY 2025
Document Available (#1059347353) TIFF   PDF

**06-24-2025   CTFREE**

RADFORD, LORETTA (DOCKET F): ORDER SEALING MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS SIGNED;

**06-25-2025   AFDP**

RE:WHISTLEBLOWER STATUS AFFIDAVIT UPON STATE OF OKLAHOMA (EIN: 99-9000879), OKLAHOMA DEPARTMENT OF HUMAN SERVICES, CHILD SUPPORT SERVICES (EIN 73-1477405), STATE BOARD OF OSTEOPATHIC EXAMINERS (OSBOE) ET AL 99-9000879 AND THEIR AGENTS PART 1
Document Available (#1061717882) TIFF   PDF

**06-25-2025   AFDP**

RE:WHISTLEBLOWER STATUS AFFIDAVIT UPON STATE OF OKLAHOMA (EIN: 99-9000879), OKLAHOMA DEPARTMENT OF HUMAN SERVICES, CHILD SUPPORT SERVICES (EIN 73-1477405), STATE BOARD OF OSTEOPATHIC EXAMINERS (OSBOE) ET AL 99-9000879 AND THEIR AGENTS PART 2
Document Available (#1061717878) TIFF   PDF

**06-27-2025   TEXT**

RENEWED REVOCATION OF ALLEGED POWERS OF ATTORNEY
Document Available (#1061719139) TIFF   PDF

**06-30-2025   O**

ORDER SEALING MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS
Document Available (#1061720021) TIFF   PDF

**07-14-2025   RECP**

RECEIPT FOR MANDATE - DF-122022
Document Available (#1061167118) TIFF   PDF

**05-02-2025  CTFREE**

JUDGE LORETTA RADFORD: (CHILD SUPPORT ENFORCEMENT DOCKET): PETITIONER NOT PRESENT, PRO SE. RESPONDENT PRESENT VIA TEAMS, REPRESENTED BY GIL PILKINGTON, PRESENT. EMMALENE STRINGER PRESENT FOR THE DEPARTMENT OF HUMAN SERVICES.

CASE COMES ON FOR PRETRIAL CONFERENCE ON CONTEMPT AGAINST LINH STEPHENS, HELD ON THE RECORDER. THE PETITIONER WAS PREVIOUSLY ADVISED THAT THE JURY TRIAL FEE'S MUST BE PAID PRIOR TO THE PRETRIAL CONFERENCE OR THE COURT MAY PROCEEDWITH A NON JURY TRIAL ON THAT DATE. THE COURT FINDS THAT THE JURY TRIAL FEE'S HAVEN'T BEEN PAID AT PROCEEDS ON WITH A NON JURY TRIAL. THE COURT DETERMINES THAT THE PETITIONER (LINH STEPHENS) ISN'T IN COMPLIANCE WITH THE COURT'S ORDERS. THE RESPONDENT MET HIS BURDEN BY CLEAR AND CONVINCING EVIDENCE. PETITIONER (LINH STEPHENS) FAILED TO APPEAR AND A BENCH WARRANT IS ISSUED IN THE AMOUNT OF $13,211.24 PLUS $500.00 COURT FINES. TOTAL AMOUNT DUE AND OWING TO RECALL THE WARRANT $13,711.24 CASH/MONEY ORDER ONLY. EXECUTION OF 6 MONTHS SENTENCE IN THE TULSA COUNTY JAIL UPON ARREST. THE ISSUE OF ATTORNEY FEES IS RESERVED.

**05-08-2025  CTFREE**

JUDGE LORETTA RADFORD: BENCH WARRANT FOR LINH TRAN STEPHENS IN THE AMOUNT OF $13,211.24 PLUS $500.00 COURT FINES, ENTERED.

**05-08-2025  CTFREE**

JUDGE LORETTA RADFORD: ORDER OF THE COURT NON-JURY TRIAL ON CHILD SUPPORT CONTEMPT MAY 2, 2025, ENTERED.

**05-08-2025  BWIS$**                                                              $ 50.00

BENCH WARRANT ISSUED - SERVICE BY SHERIFF

**05-08-2025  O**

ORDER OF THE COURT NON-JURY TRIAL ON CHILD SUPPORT CONTEMPT MAY 2, 2025
Document Available (#1061165633) TIFF    PDF

**05-08-2025  ACCOUNT**

RECEIPT # 2025-4768729 ON 05/08/2025.
PAYOR: PILKINGTON LAW FIRM TOTAL AMOUNT PAID: $ 50.00.
LINE ITEMS:
FD-2015-2228: $50.00 ON AC01 CLERK FEES.

**05-28-2025  APLI**

APPLICATION FOR ATTORNEY FEES AND COSTS FOR CHILD SUPPORT CONTEMPT - MAY 2025
Document Available (#1059347353) TIFF    PDF

**06-24-2025  CTFREE**

RADFORD, LORETTA (DOCKET F): ORDER SEALING MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS SIGNED;

**192**

**06-25-2025  AFDP**

RE:WHISTLEBLOWER STATUS AFFIDAVIT UPON STATE OF OKLAHOMA (EIN: 99-9000879), OKLAHOMA DEPARTMENT OF HUMAN SERVICES, CHILD SUPPORT SERVICES (EIN 73-1477405), STATE BOARD OF OSTEOPATHIC EXAMINERS (OSBOE) ET AL 99-9000879 AND THEIR AGENTS PART 1
Document Available (#1061717882) TIFF    PDF

**06-25-2025  AFDP**

RE:WHISTLEBLOWER STATUS AFFIDAVIT UPON STATE OF OKLAHOMA (EIN: 99-9000879), OKLAHOMA DEPARTMENT OF HUMAN SERVICES, CHILD SUPPORT SERVICES (EIN 73-1477405), STATE BOARD OF OSTEOPATHIC EXAMINERS (OSBOE) ET AL 99-9000879 AND THEIR AGENTS PART 2
Document Available (#1061717878) TIFF    PDF

**06-27-2025  TEXT**

RENEWED REVOCATION OF ALLEGED POWERS OF ATTORNEY
Document Available (#1061719139) TIFF    PDF

**06-30-2025  O**

ORDER SEALING MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS
Document Available (#1061720021) TIFF    PDF

**07-14-2025  RECP**

RECEIPT FOR MANDATE - DF-122022
Document Available (#1061167118) TIFF    PDF

**07-14-2025  MAN**

MANDATE RECEIVED AND SENT TO JUDGE DEBORAH LUDI-LEITCH FOR SIGNATURE

**07-16-2025  MAN**

MANDATE RETURNED SIGNED BY JUDGE DEBORAH LUDI-LEITCH - AFFIRMED - DF-122022
Document Available (#1061167122) TIFF    PDF

**07-16-2025  TEXT**

RECORD RETURNED FROM SUPREME COURT WITH 5 VOLUMES, 2 TRANSCRIPTS AND 2 ENVELOPES OF EXHIBITS - DF-122022
Document Available (#1061167136) TIFF    PDF

**07-16-2025  APLI**

APPLICATION
Document Available (#1062607036) TIFF    PDF

**07-22-2025  CTFREE**

LUDI LEITCH, DEBORRAH:
JUDGE SIGNED ORDER SETTING HEARING ON APPLICATION FOR ATTORNEY FEES AND COSTS FOR CHILD SUPPORT CONTEMPT.
HEARING ON APPLICATION FOR ATTORNEY FEES AND COSTS SET 08/15/2025 @ 10:30 A.M.

**07-22-2025  TEXT**

SIGNED ORDER SENT TO THE FAMILY DEPARTMENT VIA INTER-DEPARTMENT ENVELOPE.

**193**

**07-22-2025  CTFREE**

LUDI LEITCH, DEBORRAH:
JUDGE SIGNED ORDER SETTING HEARING ON APPLICATION FOR ATTORNEY FEES
AND COSTS FOR RESPONDING TO APPEAL FOR JURY TRIAL - CHILD SUPPORT.
HEARING ON APPLICATION FOR ATTORNEY FEES AND COSTS SET 08/15/2025 @
10:30 A.M.

**07-22-2025  TEXT**

SIGNED ORDER SENT TO THE FAMILY DEPARTMENT VIA INTER-DEPARTMENT
ENVELOPE.

**07-23-2025  OSH**

ORDER SETTING HEARING ON APPLICATION FOR ATTORNEY FEES AND COSTS FOR
RESPONDING TO APPEAL FOR JURY TRIAL- CHILD SUPPORT
Document Available (#1062216967) TIFF    PDF

**07-23-2025  OSH**

ORDER SETTING HEARING ON APPLICATION FOR ATTORNEY FEES AND COSTS FOR
CHILD SUPPORT CONTEMPT
Document Available (#1062216971) TIFF    PDF

**07-23-2025  CTFREE**

JUDGE LORETTA RADFORD: ORDER SETTING HEARING ON APPLICATION FOR
ATTORNEY FEES AND COSTS FOR CHILD SUPPORT CONTEMPT - MAY 2025 SET
FOR AUGUST 15, 2025 AT 9:00 AM BEFORE JUDGE LORETTA RADFORD IN
COURTROOM 605, ENTERED.

**07-24-2025  OSH**

ORDER SETTING HEARING ON APPLICATION FOR ATTORNEY FEES AND COSTS FOR
CHILD SUPPORT CONTEMPT - MAY 2025
Document Available (#1062645133) TIFF    PDF

**07-24-2025  CER**

CERTIFICATE OF SERVICE
Document Available (#1062645137) TIFF    PDF

**08-12-2025  O**

ORDER DISMISSING PETITION IN ERROR
Document Available (#1062780637) TIFF    PDF

**08-12-2025  CTFREE**

CHESBRO, TODD: PETITIONER FAILED TO APPEAR; RESPONDENT REPRESENTED
BY GIL PILKINGTON, PRESENT; EMMALENE STRINGER PRESENT FOR DHS;
ORDER DISMISSING PETITION IN ERROR SIGNED

**194**

**08-15-2025   CTFREE**

LUDI LEITCH, DEBORRAH:
PETITIONER APPEARED NOT.
ATTORNEY GILBERT PILKINGTON JR. APPEARED FOR RESPONDENT.
HEARING ON APPLICATION FOR ATTORNEY FEES AND COSTS FOR CHILD SUPPORT
CONTEMPT STRICKEN FOR NO SERVICE ON PETITIONER.
HEARING ON APPLICATION FOR ATTORNEY FEES AND COSTS FOR RESPONDING
TO APPEAL FOR JURY TRIAL - CHILD SUPPORT STRICKEN FOR NO SERVICE ON
PETITIONER.

**08-15-2025   CTFREE**

LUDI LEITCH, DEBORRAH:
JUDGE SIGNED ORDER SETTING HEARING ON APPLICATION FOR ATTORNEY FEES
AND COSTS - CHILD SUPPORT CONTEMPT AND RESPONDING TO APPEAL FOR
JURY TRIAL - CHILD SUPPORT.
HEARING ON APPLICATION(S) SET 08/25/2025 @ 2:00 P.M.

**08-15-2025   TEXT**

SIGNED ORDER SETTING HEARING GIVEN TO ATTORNEY GILBERT PILKINGTON JR.
BY MINUTE CLERK.

**08-15-2025   CTFREE**

JUDGE LORETTA RADFORD: PETITIONER NOT PRESENT, PRO SE. RESPONDENT
NOT PRESENT, REPRESENTED BY GILBERT PILKINGTON, PRESENT.

CASE COMES ON FOR HEARING ON PETITIONER'S APPLICATION FOR ATTORNEY
FEES AND COSTS. THE HEARING WAS SET FOR 9:00 AM. HOWEVER, THE CASE
WASN'T CALLED UNTIL 9:40 AM. THE PETITIONER WAS PREVIOUSLY SERVED WITH
NOTICE OF THE HEARING AT THE MAIN COURTHOUSE, BUT NEVER APPEARED AT
FAULKNER LOCATION. COURT SIGNS ORDER AWARDING ATTORNEY FEES AND
COSTS FOR CHILD SUPPORT CONTEMPT ORDER ENTERED ON MAY 2025.

**08-15-2025   CTFREE**

JUDGE LORETTA RADFORD: FINDING OF FACT AND CONCLUSIONS OF LAW ON
ATTORNEY FEES FOR CHILD SUPPORT CONTEMPT - MAY 2025, ENTERED.

THE RESPONDENT IS GRANTED ATTORNEY FEES AND CSOTS IN THE AMOUNT OF
$4,394.90 AGAINST LINH STEPHENS. LINH STEPHENS IS ORDERED TO PAY
$4,394.90 AT THE RATE OF $250.00 PER MONTH STARTING SEPTEMBER 1, 2025,
UNTIL JUDGMENT IS SATISFIED. SAID JUDGEMENT TO EARN STATUTORY INTEREST.

**08-15-2025   TEXT**

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON ATTORNEY FEES FOR CHILD
SUPPORT CONTEMPT-MAY 2025
Document Available (#1062782149) TIFF    PDF

**08-15-2025   OSH**

ORDER SETTING HEARING RESPONDING TO APPEAL FOR APPLICATION FOR
ATTORNEY FEES AND COSTS- CHILD SUPPORT CONTEMPT, JURY TRIAL- CHILD
SUPPORT
Document Available (#1062782145) TIFF    PDF

**195**

| 08-17-2025 | CM | |
|---|---|---|
| | CERTIFICATE OF MAILING<br>Document Available (#1062917561) TIFF   PDF | |
| 08-20-2025 | MOACC | $ 33.00 |
| | APPLICATION FOR INDIRECT CONTEMPT CITATION, ATTORNEY FEES<br>Document Available (#1062801948) TIFF   PDF | |
| 08-20-2025 | OCISR | $ 25.00 |
| | OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND | |
| 08-20-2025 | OCJC | $ 1.55 |
| | OKLAHOMA COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND | |
| 08-20-2025 | OCASA | $ 5.00 |
| | OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES | |
| 08-20-2025 | CCADMIN0155 | $ 0.16 |
| | COURT CLERK ADMINISTRATIVE FEE ON $1.55 COLLECTION | |
| 08-20-2025 | SJFIS | $ 0.45 |
| | STATE JUDICIAL REVOLVING FUND - INTERPRETER AND TRANSLATOR SERVICES | |
| 08-20-2025 | DCADMIN155 | $ 0.23 |
| | DISTRICT COURT ADMINISTRATIVE FEE ON $1.55 COLLECTIONS | |
| 08-20-2025 | DCADMIN05 | $ 0.75 |
| | DISTRICT COURT ADMINISTRATIVE FEE ON $5 COLLECTIONS | |
| 08-20-2025 | CCRMPF | $ 10.00 |
| | COURT CLERK'S RECORDS MANAGEMENT AND PRESERVATION FEE | |
| 08-20-2025 | CCADMIN04 | $ 0.50 |
| | COURT CLERK ADMINISTRATIVE FEE ON COLLECTIONS | |
| 08-20-2025 | ADJUST | $ 1.92 |
| | ADJUSTING ENTRY: MONIES DUE TO AC09-CARD ALLOCATION | |
| 08-20-2025 | ACCOUNT | |
| | ADJUSTING ENTRY: MONIES DUE TO THE FOLLOWING AGENCIES REDUCED BY THE FOLLOWING AMOUNTS:<br>FD-2015-2228: AC01 CLERK FEES -$1.92 | |
| 08-20-2025 | ACCOUNT | |
| | RECEIPT # 2025-4811506 ON 08/20/2025.<br>PAYOR: PILKINGTON/GILBERT TOTAL AMOUNT PAID: $ 76.64.<br>LINE ITEMS:<br>FD-2015-2228: $74.72 ON AC01 CLERK FEES.<br>FD-2015-2228: $1.92 ON AC09 CARD ALLOCATIONS. | |

**196**

**08-21-2025   CTFREE**

CHESBRO, TODD: INDIRECT CONTEMPT CITATION SIGNED / ARRAIGNMENT SET 11/21/25 AT 10AM;
PAPERWORK PLACED IN ATTORNEY OUTBOX: GIL PILKINGTON

**08-25-2025   CTFREE**

LUDI LEITCH, DEBORRAH:
PETITIONER APPEARED NOT.
ATTORNEY GILBERT PILKINGTON JR. APPEARED FOR RESPONDENT.
JUDGE SIGNED FINDINGS OF FACT AND CONCLUSIONS OF LAW ON ATTORNEY FEES FOR RESPONDING TO APPEAL FOR JURY TRIAL - CHILD SUPPORT.

**08-25-2025   TEXT**

SIGNED FINDINGS OF FACT AND CONCLUSIONS OF LAW GIVEN TO ATTORNEY GILBERT PILKINGTON JR. BY MINUTE CLERK.

**08-25-2025   CTFREE**

LUDI LEITCH, DEBORRAH:
PETITIONER APPEARED NOT.
ATTORNEY GILBERT PILKINGTON JR. APPEARED FOR RESPONDENT.
JUDGE SIGNED FINDINGS OF FACT AND CONCLUSIONS OF LAW ON ATTORNEY FEES JURY TRIAL ON INDIRECT CONTEMPT - CHILD SUPPORT.

**08-25-2025   TEXT**

SIGNED FINDINGS OF FACT AND CONCLUSIONS OF LAW GIVEN TO ATTORNEY GILBERT PILKINGTON JR. BY MINUTE CLERK.

**08-25-2025   TEXT**

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON ATTORNEY FEES JURY TRIAL ON INDIRECT CONTEMPT-CHILD SUPPORT
Document Available (#1062791108) TIFF    PDF

**08-25-2025   TEXT**

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON ATTORNEY FEES FOR RESPONDING TO APPEAL FOR JURY TRIAL-CHILD SUPPORT
Document Available (#1062791112) TIFF    PDF

**09-05-2025   CTEMP**

INDIRECT CONTEMPT CITATION
Document Available (#1063129224) TIFF    PDF

**11-20-2025   CTFREE**

SPARKMAN, RODNEY: NO SERVICE ON THE RESPONDENT FOR INDIRECT CONTEMPT CITATION;
ALIAS CONTEMPT CITATION TO BE SUBMITTED;
NO PARTIES NEED APPEAR 11/21/25 AT 10AM



FEB 09 2024

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

**Appendix Y**

IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| In Re Marriage of: | ) **Case No. FD-2015-2228** |
| Linh Tran Stephens, an individual, a | ) Docket C, Special Judge April Seibert |
| natural living woman, | ) (family court) |
| *Petitioner/Mother,* | ) Presiding Judge Doug Drummond |
| vs. | ) deprived due process OAH No.: 23-00313-73 |
| ADAM SYLVESTER | ) fraudulent OK IV-D FGN: 000948641001 |
| STEPHENS, | |
| *Respondent/Father.* | |

## WRITTEN CLOSING ARGUMENT FROM MOTHER/PETITIONER

Linh Tran Stephens, **sui juris**, an individual and a living woman, a Vietnamese citizen,

hereafter "Movant"/"Petitioner"/"Mother" of G.L.S., *via her Special Entry of Appearance*

(related to *"Injunction; Motion to Dismiss with Prejudice; Challenging Subject Matter

Jurisdiction"* filed February 10, 2023, in Oklahoma Tulsa District Court and in Oklahoma

Supreme Court), with her *finalized* court-order/judgment of joint legal and physical custody

and child-support contract/order/decree in State of Oregon on *January 10, 2016. I* entered into

Oklahoma Court in 2017, asking for help to <u>enforce</u>, not modify, finalized court-order's

unhampered-parental-access-to-child and to protect child's rights to familial relations and her

Vietnamese culture. Father's refusal to abide by court ordered 50-50 parental time. I am now

requesting Sole custody. This will provide stability and consistency for G███ It will give

G███ access to her whole Vietnamese family as well as access to Adam. I will not deny access,

calls, or other forms of communications between child and Adam, nor have I ever.

At the initiation of case No. FD-2015-2228 in 2017, Father took child away from

Mother for period of 2 months against her wishes. Justin Huber who is Father's cousin even

testified to seeing Father's parenting during a period of 2 continuous months. Upon G███'s

return to her mother after enforcement by the courts, child's emotional and developmental

1

state has undergone an involuntary age regression causing urinary incontinence as well as debilitating separation anxiety. This required frequent treatment from therapist Dr. Jim Lovett, which required intense counseling to help child deal with separation anxiety and feelings of abandonment. Throughout this period. Father has failed to assist in medical care for child and insisted that child did not need it despite recommendations of professionals such as Dr. Lovett. Even more recently during the 06/01/2022 court hearing. there were court orders for Father to take child to see Amy Hollopeter for counseling. However, Father failed to do so and did not even so much as call Amy Hollopeter to even schedule for evaluation.

From the initiation of case No. Fd-2015-2228, Father has not complied with court recommendations and rules despite frequent contact with the courts, GALs, counsel and opposing counsel. Although Valeria Blackstock could not testify, her previous recommendations mentioned how Father historically did not show respect for court orders. How can Father then be expected to follow any court recommendations if he is allowed to relocate out of state? Already, Father restricts child and does not allow this 10 year old child to call her Mother nor does he allow Mother to call child. Father has attempted to limit interaction between child and Mother through protective orders, through warrants for arrest, and through false violations of protective orders. How could the court expect that Father will comply with any court recommendations to allow Mother and child to pursue any meaningful relationship when they are separated by vast distances. Father lives less than 20 minutes away from counseling and agreed-to locations for supervised visits and is routinely 15-45 minutes late. This is time taken away from my daughter and I and if Father is allowed to relocate child, I am concerned that I will never see my child again.

2

As can be seen in court and Father's overall priorities, he prioritizes money. Trying to extort money from Mother for time with child. Demanding Jeep as well as Jayco trailer as child support and then returning to court for more child support. Father wants to relocate to a different state for higher income. However, that would separate child from her mother, which would not prioritize the child's interests. Moving again has no benefit to the child as she has changed several schools since being in custody of Father. She has attended Miss Helen's, Owasso public schools, home schooled, and now attending a virtual school all within the span of 2 years. There is no stability with the frequent changes and as a result, it hinders child's ability to develop relationships with any school-aged friends. There is no stability in not being in contact with your childhood friends, cousins, or younger brother. Father has stated that moving to a bigger city means better opportunities for child but what opportunities has he taken to enrich the child's life? Surely things such as attending therapy for mental stability, getting needed surgeries, attending school regularly with the same teachers and friends, and having the freedom to reach out to Mother or Father without threat of reprimand or punishment contributes to one's stability and quality of life.

In Tulsa, Grace has friends, neighborhood girls of similar age, that ask about her and miss her. She has friends within the community that she has met through her cultural background of being Asian-Vietnamese that ask about her when there are cultural celebrations like Vietnamese New Year. She has her Vietnamese family as well as her Vietnamese in-laws. She has developed a positive and trusting relationship with two therapists, Dr Jim Lovett and Amanda Hall. As stated above, Father cannot be relied upon to take child to any kind of therapy on his own free will nor will he do so when there are court orders to do so. Father can not be relied upon to co-parent at any capacity

**200**

3

as he has failed to inform Mother of changes in address, changes in schools, or any health concerns for several years. Even with close oversight from the Tulsa courts, GALs, mediators, Father fails to co-parent. It is not hard to imagine the difficulty in co-parenting and/or the instability that child will experience again if allowed to relocate out of state.

In summer of 2020, a concerned citizen called DHS to report Father. This call was not from Mother. This call was from someone in the community that spurred an investigation into Father's concerning parenting behavior by DHS worker Maria Chico. Through the testimony of Miss Maria Chico, the DHS worker assigned to Grace's case in 2020, there was a forensic examination by FBI & DHS regarding father's numerous abuses vs. zero abuses against Mother. Miss Chico and her supervisor indicated <u>major concerns about Adam almost to the level of substantiation</u> that their report listed many recommendations regarding Adam. To date, none of these recommendations have been followed. None of Valeria Blackstock's recommendations have been followed. None of Dr. Jim Lovett's recommendations have been followed. None of the court's orders for Father for the benefit of child have been followed. As demonstrated, Father has a pattern of noncompliance to professional and court recommendations. Despite this, it is Mother who has to undergo supervised visitations with Ms. Cheryl Hall. Visitations where mother is limited in her contact with child, limited in the types of words, activities, limited in who she can talk to, and only allowing Mother only one amusement ride sitting next to child. Even Father's witness Ms. Donna Burger testified "*that it is abnormal to have supervisors give restrictions on the mother and on the child's speech, hugs, sitting next to each other on attraction rides, and that supervisor should just sit back and watch...*"

4

As the Mother of the child, I have shown that I am able to provide the more stable household. Neither Ms Blackstock, Maria Chico, nor Dr Lovett had any concerns about my parenting. I have moved a total of 1 time from the initiation of this case until now and it was for child's safety and due to increased crime in our previous house. Crimes including break-ins into the house, many attempted break-ins into our cars, grand theft auto, and attempted mugging in our garage. This is what prompted us to seek safer housing for the safety of my family and especially my children. In contrast, Father has moved 5 times that we are aware of and child has changed school settings 4 times while under Father's care. Additionally, Father is wanting to move again and to relocate child again.

I have shown that I have done my best to teach my child the skills needed to succeed in school during her weeks with me. It can be seen by previous evidence the lack of books read and the lack of attendance to virtual classes during Father's week. It was with my efforts that child did not fall behind in her education during the years following covid like many other children have experienced. In previous testimony from Father, he has even stated that my strength is in education and ability to teach my child. In 2017 when Father took child away for 2 months, child lost nearly all of her Vietnamese language and emotionally regressed and developed incontinence. In 2024, child has lost all of her Vietnamese language. As can be seen with the locations that Grace chooses for supervised visits with Mother and Cheryl Hall, she enjoys going to Asian restaurants such as Pan-Asia, Toyosu Buffett, Trang Le, and like all other kids she enjoys going to Incredible Pizza. She enjoys reading Japanese comics and watching Japanese cartoons. She is a child that is deprived of her culture and is trying to fill it with what little Asian-American cuisine and activities that she can. I have

5

shown that I am the parent that has placed my child's physical and mental well being as priorities in my life. As discussed in previous hearings, Father's refusal to bring child to dentist resulted in child needing surgery to repair her teeth and avoid further infection. Father refused to help with payment and to this day has not assisted in repayment for dental surgery for child. Father has refused to compensate for any mental health care that has been provided for child and has even testified to child not needing it. Ms Hollopeter testified to Father failing to schedule care for child. Jim Lovett has testified that child needed counseling despite Father's false belief that child is okay without care. Child's current therapist Amanda Hall has stated that regardless of the outcome of this hearing, she adamantly stated that she hopes child is able to continue with counseling at Anchored In Hope Therapy because child really needs it.

Since the beginning of case No. FD-2015-2228, Father has attempted to extort money for time with child, has taken child away for 2 months due to my refusal to pay him to see my child. He has received titles for two expensive vehicles and has returned to court to seek more money from me. He has made many attempts to place me in jail with several warrants for my arrest. He has made reports to CPS about me. He has made threats that "I will make sure you spend less time with your children". And I ask to what benefit is this to Grace? He has stated that he loves his daughter and will do anything for her but as discussed above, what has he done to benefit this child? These feel to be direct attacks on me without any attempt at benefiting child. Father has brought on issue after issue requiring GALs, mediators, lawyers, court hearings, which have drained over $140k in funds in the span of several years. I live in massive debt primarily due to spending all savings on legal bills. As can be seen, I can not afford a lawyer and I can no longer afford a health insurance premium.

6

I cannot afford to hire assistance at my clinic and am serving as clinic staff as well as provider in order to lower overhead. It takes several years for businesses to succeed but a combination of Covid and family court have greatly hampered any progress. Adam and his counsel previously made requests for the courts to punish me by taking away my medical license and again I ask, to what benefit is it to the child for them to attack my livelihood? As stated in previous testimony, Adam has gone to my husband Xuyen Ha's work to make false claims of HIPAA violations, which could result in the removal of his license and again to what benefit is it to child that he do this?

The burden of proof of any abuse by me to child was not met in this previous hearing. Bridget claimed that there were concerns for child porn and yet there was no criminal investigation into such serious allegations. There were severe concerns for emotional damage and yet Father has failed to bring child to any type of counseling or mental health care ever. These allegations of emotional damage came from Bridget who was caught selling alcohol to minors and resigned from DHS. I do not believe that it is coincidence that Bridget is no longer working for DHS. This person should never have been allowed to make any recommendations towards how families should act when she is giving alcohol to minor children. David Ballard who works for ValOur Investigation and Protection did an FBI standard digital screening on all devices of concern that was pointed out by Bridget and found that there was not one trace of child porn or even adult sexual material on them. At this juncture, what then is the reason for the separation between Mother and child other than defamatory statements from Father and opposing counsel? Evaluation of Mother's time with child is conditional to the Psychiatric Forensic Examination which is court ordered but why is it that only Mother's time is conditional and not Father's time for all of the orders and

7

recommendations that he has not followed? The Psych Forensic Exam by my board-certified primary care doctor at the onset of this case was clear, precise, and normal and was accepted into evidence on 12-20-2022 even though it was proffered previously 06-01-2022 and again this week.

Concerning Mr. Stephen Hales and Mr. Gil Pilkington's concerns for my mental health and hijacking this court case, I adamantly disagree. Mr. Hale has been provided copious amounts of concerns, concerns which were shared with both himself as well as Valarie Blackstock, yet he never addressed any of these concerns with Father nor wrote any recommendations until recent. It only took Adam bringing one concern for abuse that spurred Mr Hale to send a report to CPS, and yet no amount of concern from Mother was ever addressed for child's benefit. On the contrary, Mr. Hale became concerned for Mother's mental state because of her advocacy to the well being of her child. All of Mr Hale's concerns about Mother have been in stark contrast to evaluations by Maria Chico, people of the Tulsa community, Amanda Hall, Jim Lovett, and many others. The large amount of court filings is not an attempt to hijack or hold this case hostage but it is a way for me to show the inconsistencies of opposing counsel and Father. They frequently promise but do not deliver. They misquoted and have even completely altered what was ordered in court. If I do not bring in all that have been said in court and all that have been previously filed, how can I then prove to you that certain orders were said and recommended? I can not take the opposing counsel's word nor the words of any lawyer but the words that are written in court records cannot be easily altered. It is my attempt at preserving your orders as well as preserving the truth.

8

In summary, I again am requesting sole custody as any attempts at co-parenting with Father have been futile. Please be assured that she has family, friends, and loved ones waiting for her return. She has therapists that care for her and want to see her return to her happy self again. And she has a Mother that is not obsessed about attacking the other parent but just wants to see her child grow to be a beautiful young lady.

Respectfully submitted,

*Linh Stephens*
**Linh Tran Stephens,**
Defendant Pro Per, sui juris,
Attorney-in-fact, Agent, Acting as Fiduciary of LINH TRAN
STEPHENS; a natural living woman, dedicated mother,
I reserve all my rights without prejudice, UCC 1-308,
11063 S Memorial Dr, Ste D #235, Tulsa, OK 74133
LinhStephens7@gmail.com

9



 **Appendix Z**

FILED
COURT OF CIVIL APPEALS
STATE OF OKLAHOMA

## IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

MAR 13 2024

JOHN D. HADDEN
CLERK

| | | |
|---|---|---|
| LINH TRAN STEPHENS, | ) | |
| | ) | |
| Appellant/Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Supreme Court Case No. DF-120849** |
| ADAM SYLVESTER STEPHENS, | ) | **District Court Case No. FD-2015-2228** |
| | ) | |
| Appellee/Defendant. | ) | |

### AMENDED PETITION IN ERROR

_____ PETITION IN ERROR
____X__ AMENDED OR SUPPLEMENTAL PETITION
_____ CROSS PETITION
_____ COUNTER-PETITION
___X___ DATE FIRST PETITION IN ERROR FILED: <u>11/14/2022</u>

Received:
Docke...
Mars...
COA/OK...
COA/TU...

## I.  TRIAL COURT HISTORY

COURT/TRIBUNAL:      District Court
                     COUNTY:              Tulsa County
                     CASE NO.:            FD-2015-2228
                     JUDGE:               Judge April Siebert
                     NATURE OF CASE:      Divorce/Child Custody/Support

NAME OF PARTY OR PARTIES FILING THIS PETITION IN ERROR: Linh Tran Stephens.

THE APPEAL IS BROUGHT FROM:  (Check one)

_____X____    Judgment, Decree or Final order of District Court.
_____    Appeal from order granting summary judgment or motion to dismiss where
             motion filed after October 1, 1993 (Accelerated procedure under Rule 1.36).
_____    Appeal from Revocation of Driver's License [Rule 1.21(b)].
_____    Final Order of Other Tribunal. (Specify Corporation Commission, Insurance
Department, Tax Commission, Court of Tax Review, Banking Board or Banking Commissioner,
etc. _____ )
_____    Interlocutory Order Appealable by Right.

---

Petition in Error filed regarding FD-2015-2228                                        1

— Trial Court admonished opposing counsel for not hiring private investigator to bring DHS case worker Bridget O'brien, who was fired from OKDHS for other misconducts, yet still did not reverse wrongful substantiation of abuse by OKDHS against mother without Mother being allowed to confront accuser, therefore Father failed his burden of proof Trial Court has power to but did NOT. Trial Court continually violated court procedural processes and evidence rules, federal laws, constitutional rights, equal protection rights, substantive rights, ADA disability rights, parental rights, 14th amendment right, 1st amendment, 5th amendment right; committed double jeopardy and judicial estoppel, etc... too many to list all here, but some can be found in Exhibit C updated 03/12/2024,

(7)

**EXHIBIT E**

*1057415260*

FEB 09 2024

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

## IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
### STATE OF OKLAHOMA

In Re Marriage of:                                )    **Case No. FD-2015-2228**
Linh Tran Stephens, an individual, a        )    Docket   C,   Special   Judge   April   Seibert
natural living woman,                            )    (family                                                         court)
     *Petitioner/Mother,*                     )    Presiding Judge Doug Drummond
vs.                                                        )    deprived due process OAH No.: 23-00313-73
     ADAM SYLVESTER                         )    fraudulent OK IV-D FGN: 000948641001
     STEPHENS,
     *Respondent/Father.*

### WRITTEN CLOSING ARGUMENT FROM MOTHER/PETITIONER

    Linh Tran Stephens, **sui juris**, an individual and a living woman, a Vietnamese citizen,

hereafter "Movant"/"Petitioner"/"Mother" of G.L.S., *via her Special Entry of Appearance*

(related to *"Injunction; Motion to Dismiss with Prejudice; Challenging Subject Matter

Jurisdiction"* filed February 10, 2023, in Oklahoma Tulsa District Court and in Oklahoma

Supreme Court), with her *finalized* court-order/judgment of joint legal and physical custody

and child-support contract/order/decree in State of Oregon on *January 10, 2016. I* entered into

Oklahoma Court in 2017, asking for help to <u>enforce</u>, not modify, finalized court-order's

unhampered-parental-access-to-child and to protect child's rights to familial relations and her

Vietnamese culture. Father's refusal to abide by court ordered 50-50 parental time. I am now

requesting Sole custody. This will provide stability and consistency for Grace. It will give

Grace access to her whole Vietnamese family as well as access to Adam. I will not deny access,

calls, or other forms of communications between child and Adam, nor have I ever.

    At the initiation of case No. FD-2015-2228 in 2017, Father took child away from

Mother for period of 2 months against her wishes. Justin Huber who is Father's cousin even

testified to seeing Father's parenting during a period of 2 continuous months. Upon Grace's

return to her mother after enforcement by the courts, child's emotional and developmental

1

state has undergone an involuntary age regression causing urinary incontinence as well as debilitating separation anxiety. This required frequent treatment from therapist Dr. Jim Lovett, which required intense counseling to help child deal with separation anxiety and feelings of abandonment. Throughout this period, Father has failed to assist in medical care for child and insisted that child did not need it despite recommendations of professionals such as Dr. Lovett. Even more recently during the 06/01/2022 court hearing, there were court orders for Father to take child to see Amy Hollopeter for counseling. However, Father failed to do so and did not even so much as call Amy Hollopeter to even schedule for evaluation.

From the initiation of case No. Fd-2015-2228, Father has not complied with court recommendations and rules despite frequent contact with the courts, GALs, counsel and opposing counsel. Although Valeria Blackstock could not testify, her previous recommendations mentioned how Father historically did not show respect for court orders. How can Father then be expected to follow any court recommendations if he is allowed to relocate out of state? Already, Father restricts child and does not allow this 10 year old child to call her Mother nor does he allow Mother to call child. Father has attempted to limit interaction between child and Mother through protective orders, through warrants for arrest, and through false violations of protective orders. How could the court expect that Father will comply with any court recommendations to allow Mother and child to pursue any meaningful relationship when they are separated by vast distances. Father lives less than 20 minutes away from counseling and agreed-to locations for supervised visits and is routinely 15-45 minutes late. This is time taken away from my daughter and I and if Father is allowed to relocate child, I am concerned that I will never see my child again.

2

```
 1        IN THE DISTRI█ E█████████████████ COUNTY
                        ███████ ██ ███████OMA

 2
     In Re the marriage of          )
 3   LINH TRAN STEPHENS,            )
              Petitioner,           )
 4   v.                             )  Case No. FD-2015-2228
     ADAM SYLVESTER STEPHENS,       )
 5           Respondent.            )

 6                         *  *  *  *  *

 7           PORTIONS OF THE TESTIMONY OF ADAM STEPHENS

 8                         HAD ON THE

 9                   1ST DAY OF FEBRUARY, 2024

10            BEFORE THE HONORABLE APRIL SEIBERT

11                  TULSA COUNTY, OKLAHOMA

12                         *  *  *  *  *
     APPEARANCES:
13   FOR THE PETITIONER:
          MS. LINH STEPHENS, Appearing Pro Se
14        11063 South Memorial Drive, Suite D #235
          Tulsa, Oklahoma 74133
15
     FOR THE RESPONDENT:
16        MR. GIL PILKINGTON, Attorney-at-Law
          The Pilkington Law Firm, PLLC
17        601 South Boulder Avenue, Suite 600
          Tulsa, Oklahoma 74119
18
     FOR THE MINOR CHILD:
19        MS. MEGAN BECK, Attorney at Law
          320 South Boston Avenue, Suite 718
20        Tulsa, Oklahoma 74103

21   FOR OKDHS & CSS:
          MS. EMMALINE STRINGER, State's Attorney
22        P.O. Box 27068
          Tulsa, Oklahoma 74149
23

24

25   REPORTED BY:  Samantha S. Brown, CSR
```



# FEDERAL SINGLE AUDIT SHOWS UNPRECEDENTED MISMANAGEMENT

### "It is past time for Oklahoma to get its financial house in order."

**OKLAHOMA CITY, OK (August 27, 2025)**

Oklahoma State Auditor & Inspector (SAI) Cindy Byrd today released the Federal Single Audit of expenditures made during FY 2023. This annual audit is a federally-mandated examination of whether the State of Oklahoma spent federal grant money in compliance with federal regulations.

The audit report covers more than $14.9 Billion of expenditures which are audited through a formula provided by the federal government.

"For the last three years, I have been sounding the alarm that Oklahoma state government is mired in a culture of financial mismanagement," Auditor Byrd said. "Over the last three years, the problems have gotten progressively worse. The amount of money Oklahomans could be forced to repay to the federal government is concerning."

This year's audit found a record number of *questioned costs* totaling $93.4 Million. Questioned costs are any expenditures that do not comply with the law, cannot be documented, and/or appear unreasonable or unethical. The combined questioned costs from the last three Federal Single Audits stands at more than $186 Million.

"Every taxpayer in Oklahoma needs to understand what this means," said Auditor Byrd. "If this mismanagement continues, our federal taxes will go up, our state taxes will go up, and government services will plummet. The federal government can, and most likely will, demand millions of dollars back from the State of Oklahoma."

The latest audit reveals particular problems at the Office of Management and Enterprise Services (OMES) and at the Department of Human Services (DHS).

1

- OMES mismanaged more than \$21.8 Million in grant money earmarked to provide rental assistance to Oklahomans during the pandemic. As a result, an estimated 7,659 Oklahomans could have received rental assistance but were denied.

- DHS failed to put proper guardrails on expenditures for more than \$63.6 Million in federal grant money. This was for programs intended to expand childcare access, and welfare benefits.

"Government exists to provide services to its citizens," Auditor Byrd said. "Politicians can argue over which services the government should provide. But everyone can agree that fraud, waste, and abuse is unacceptable. It is past time for Oklahoma to get its financial house in order."

The full FY 2023 Federal Single Audit is now posted here on the Oklahoma State Auditor & Inspector's official website:  www.sai.ok.gov.

-------------------------------------

**To schedule an interview with Cindy Byrd, please contact Andrew Speno at 405-315-5924.**

2