

# Public Testimony Submission

**Date:** January 22nd, 2026
**Hearing Item:** Office of the Child's Representative (OCR) / Ombudsman
**Related Hearing Context:** SMART Government Act / Joint Rule 25 Oversight
**Subject:** Request for Legislative Sponsorship – **Full Disclosure Act (FDA)** & Oversight of Closed-Loop Court Systems

## Summary

The **Full Disclosure Act (FDA)** is fundamentally nonpartisan: transparency strengthens institutions and public trust regardless of ideology. When disclosure fails, secrecy becomes policy—and families are harmed. That is how the system took my son.

The **FDA** is a citizen-driven proposal to restore trust in government institutions through clear, uniform disclosure standards for individuals and entities that **(1)** receive public funds or **(2)** exercise public authority. It is not about targeting outcomes or institutions. It is about process—ensuring that when public money and public power are involved, citizens have timely, meaningful access to information needed to evaluate impartiality, accountability, and ethical governance.

The **FDA** builds upon existing transparency principles already embedded in **Ethics Acts, Sunshine laws, FOIA/CORA**, and **Constitutional** guarantees including due process and the right to petition government for redress. It seeks enforceable standards so transparency is not defeated through loopholes, confidentiality shields, procedural obstruction, or closed-loop systems.

This issue is not theoretical. The **FDA** was created after I experienced a process where key records were withheld, proceedings became opaque, and safeguards failed—while decisions with enormous consequences were made through systems the public could not meaningfully audit. The consequences of disclosure failures are not abstract: they impact liberty, credibility, and families.

**The FDA is supported by over 10,000 citizens, and growing, calling for greater transparency in courts and publicly funded court-adjacent systems.**

## Public Funding Carries Public Disclosure Obligations

Traditional ethics laws focus on financial conflicts. But modern institutional conflicts are frequently non-financial, including:

- private affiliations and loyalty networks,
- referral or contract-driven ecosystems,
- membership structures operating alongside public authority, and
- closed systems where power is exercised without meaningful auditability.

The FDA addresses a practical gap: if a person exercises public authority or is paid with public funds, relevant conflicts—financial and non-financial—should be disclosed in a uniform and auditable manner.

## Disclosure Standards Are Expanding Internationally

Across Western democracies, conflicts of interest are increasingly understood to include affiliations, not only money. Recent developments in the United Kingdom reflect that trend: hierarchical associations (including Freemasonry) have been treated within public institutions as **"declarable associations"** requiring disclosure due to impartiality and public trust concerns.

Colorado should not lag behind evolving transparency standards. Public trust increasingly depends on enforceable disclosure beyond strictly financial conflicts.

## The FDA Proposes Legislative Review In These Areas

### 1) Affiliation Disclosure (including private membership networks)

Require disclosure of relevant organizational, professional, or fraternal affiliations by individuals who:

- hold public office, or
- receive public funds while exercising decision-making authority.

This includes affiliations that may reasonably create an appearance of preferential treatment, insider deference, or conflicts affecting discretion—including private membership structures operating alongside public power. The **FDA** does not presume corruption; it mandates transparency.

### 2) Sunshine Principles in practice (not just on paper)

Modern governance often operates through informal networks and quasi-governmental ecosystems. The **FDA** supports review of how Sunshine principles apply when public authority is exercised indirectly through publicly-funded or court-adjacent systems.

### 3) FOIA/CORA enforcement and auditability

Open records laws exist to permit public evaluation of government action. The **FDA** proposes review of whether **FOIA/CORA** remains effective when access is denied through:

- confidentiality designations,
- procedural barriers,
- technical loopholes, or
- delayed disclosure that defeats meaningful review.

**4) Title IV-D / Title IV-E compliance integrity & fiscal exposure (budget risk)**

Colorado receives substantial federal **Title IV-D** and Title **IV-E** funding based on annual certifications and compliance representations. If due process is routinely denied in custody-adjacent systems through withheld records, blocked evidence access, opaque proceedings, and obstructed review, then compliance "on paper" may not reflect compliance in practice.

The **FDA** proposes legislative review of **Title IV-D / IV-E** compliance integrity, including whether certifications are accurate, complete, and auditable—and whether the State is exposed to:

- federal disallowances,
- corrective action plans,
- repayment demands, or
- funding reductions.

**5) Access and accountability**

Transparency mechanisms must be meaningful in practice, not merely technical. Minimum constitutional safeguards require citizens have timely, reliable access to records and evidence necessary for adjudication and review.

**6) Separation of powers and structural conflicts**

When law enforcement, prosecutors, courts, court contractors, and oversight bodies function as one mutually insulating ecosystem, transparency becomes the only remaining safeguard.

Colorado voters recently adopted **Amendment H (2024)** creating the Independent Judicial Discipline Adjudicative Board (JDAB), reflecting public concern about meaningful oversight and accountability. Oversight must include independence and public accountability—not the current arrangement of insiders reviewing insiders.

**OCR Example: Investigation Without Correction (Closed-Loop Risk)**

The OCR and its Court Liaisons/CLRs illustrate why enforceable transparency and accountability standards are necessary in publicly funded court-adjacent bodies.

OCR conducted an investigation involving my case and the assigned CLR, Kristen Tarrin (also a defendant in my civil rights action). During that process, my expert stated that, in her 20-year career, this was the first time she had been denied access to check on a child despite the importance of welfare monitoring. The CLR repeatedly asserted that evidence of harm existed, yet no such evidence was produced in a manner that could be meaningfully audited.

More than 90 days later, OCR has disclosed no corrective action, no replacement CLR has been assigned, no remedial timeline has been provided, and welfare monitoring remains blocked. Because related matters are active in federal court, I will not argue case-specific facts here.

**The point is structural:** when an oversight body can investigate serious concerns yet implement no visible remedy while harmful restrictions remain in place, the system becomes closed-loop and public trust collapses. I have observed the same pattern in judicial, legal, and therapeutic oversight bodies. Oversight that investigates but does not correct functions as institutional insulation—not accountability.

### Specific Oversight Requests (SMART Act / Joint Rule 25)

I respectfully request the Committee:

1. Require OCR to publish standardized corrective-action outcomes following investigations (redacted as appropriate, but auditable).
2. Require OCR to provide timelines for remedial actions when child welfare monitoring or access is obstructed.
3. Direct a legislative audit-style review of OCR oversight procedures and accountability standards.
4. Request data on frequency of denied access/welfare monitoring and the basis asserted for such denial.

### Formal Request for Legislative Sponsorship

The FDA seeks legislative sponsors willing to convene public hearings, request and review relevant data and disclosure practices, and evaluate whether existing ethics and transparency frameworks adequately protect:

- public confidence,
- due process, and
- federal compliance integrity.

Sponsorship does not imply a predetermined outcome. It reflects a commitment to oversight, study, and accountable governance.

*If History Teaches Us Anything, It's That Justice Requires Truth And Transparency*

Respectfully submitted pursuant to the SMART Government Act and Joint Rule 25.

---

**Stephen Theodore Gladstone**
Father/Founder, Full Disclosure Act (FDA)
**Website:** www.FullDisclosureAct.com
**Public Contact:** Truth@FullDisclosureAct.com
**Mail:** P.O. Box 6693 Breckenridge, CO 80424
**Phone:** (562) 716-0733

*WITHOUT RECOURSE without prejudice*
*linh-tran stephens*

**By: Linh Tran Stephens / Agent or attorney-in-fact, sui juris, natural living woman**
in care of: 1964 Ashley River Rd Ste B Unit 80112,
Charleston, South Carolina 00000 ZIP EXEMPT [near 29407]
without the United States District Columbia
Telephone: (843) 608-0294
Email: LinhStephens7@gmail.com
31 JAN 2026